1   COOLEY LLP
    PATRICK P. GUNN (172258)
2   (pgunn@cooley.com)
    KRISTINE A. FORDERER (278745)
3   (kforderer@cooley.com)
    EVAN G. SLOVAK (319409)
4   (eslovak@cooley.com)
    101 California Street
5   5th Floor
    San Francisco, California  94111-5800
6   Telephone:    +1 415 693 2000
    Facsimile:    +1 415 693 2222
7
    Attorneys for Defendants
8   E.VENTURE CAPITAL PARTNERS II,
    LLC and BV NGINX, LLC
9
    WILLKIE FARR & GALLAGHER LLP
10  BENEDICT Y. HUR (SBN # 224018)
    bhur@willkie.com
11  JAYVAN E. MITCHELL (SBN # 322007)
    jmitchell@willkie.com
12  One Front Street, 34th Floor
    San Francisco, CA 94111
13  Telephone:  (415) 858-7400
    Facsimile:  (415) 848-7599
14
    Attorneys for Defendant RUNA CAPITAL
15

16              UNITED STATES DISTRICT COURT

17            NORTHERN DISTRICT OF CALIFORNIA

18                SAN FRANCISCO DIVISION

19  LYNWOOD INVESTMENTS CY LIMITED,        Case No. 3:20-cv-03778-SK

20              Plaintiff,                 **DEFENDANTS E.VENTURE CAPITAL
                                           PARTNERS II, LLC, RUNA CAPITAL,**
21       v.                                **INC. AND BV NGINX, LLC'S NOTICE
                                           OF MOTION AND MOTION TO DISMISS**
22  MAXIM KONOVALOV, IGOR SYSOEV,          **PLAINTIFF'S COMPLAINT AND
    ANDREY ALEXEEV, MAXIM DOUNIN, GLEB     MEMORANDUM OF POINTS AND**
23  SMIRNOFF, ANGUS ROBERTSON, NGINX,      **AUTHORITIES**
    INC. (BVI), NGINX SOFTWARE, INC., NGINX,
24  INC. (DE), BV NGINX, LLC, RUNA CAPITAL,
    INC. E.VENTURE CAPITAL PARTNERS II
25  LLC and F5 NETWORKS, INC.,

26              Defendants.

27          **NOTICE OF MOTION AND MOTION TO DISMISS**

28

# TABLE OF CONTENTS

**Page**

Statement of Relief Sought ................................................................................................ 1

Statement of Issues to be Decided ..................................................................................... 1

Memorandum of Points and Authorities ............................................................................. 3

I.    Introduction ............................................................................................................ 3

II.   Statement of Facts .................................................................................................. 4

    A.    Development of the NGINX Software ............................................................ 5

    B.    The Outside Investors' Investment in NGINX ............................................... 5

    C.    BV NGINX, LLC ......................................................................................... 6

III.  Legal Standard ....................................................................................................... 6

IV.   Argument ............................................................................................................... 7

    A.    The Majority of Plaintiff's Claims Are Time-Barred. ...................................... 7

    B.    Plaintiff Fails to Plead Its Claims with the Particularity Required Under
        Rule 9(b). ...................................................................................................... 9

    C.    Plaintiff's Claims are Preempted. ................................................................ 10

    D.    Plaintiff's Individual Causes of Action Fail for Claim-Specific Reasons. .......... 11

        1.    The Complaint Does Not Adequately Plead a Conspiracy (Claim 1)....... 11

            a.    Plaintiff's Conspiracy "Claim" is Not Properly Pled................... 11

            b.    The Complaint Fails to Allege that Outside Investors and
                BV NGINX Knowingly Participated in a Conspiracy. ................. 12

        2.    The Complaint Fails to Plead that the Outside Investors Aided and
            Abetted the Former Employees' Breach of Duties to Rambler
            (Claim 8). ...................................................................................... 14

            a.    Plaintiff Does Not Allege Facts Showing the Outside
                Investors' Knowledge of any Breach of Duty............................. 14

            b.    Plaintiff Does Not Allege Facts Sufficient to Show
                "Substantial Assistance." .......................................................... 15

        3.    Plaintiff Cannot State a Claim for Tortious Interference with
            Contract (Claim 11)...................................................................... 16

        4.    Plaintiff Cannot State a Claim for Tortious Interference With
            Prospective Business Advantage (Claim 13). ................................. 17

        5.    Plaintiff's Copyright Infringement Claims Fail as a Matter of Law
            (Claims 15, 16, and 17). ............................................................... 18

            a.    Plaintiff's Direct Infringement Claim Fails (Claim 15)................ 18

            b.    Plaintiff Cannot State a Claim for Contributory Copyright
                Infringement (Claim 16). .......................................................... 19

            c.    Plaintiff Cannot State a Claim for Vicarious Copyright
                Infringement (Claim 17). .......................................................... 21

        6.    Plaintiff Fails to State a Claim for False Advertising (Claim 24)............ 21

**TABLE OF CONTENTS**
(continued)

Page

7.    Plaintiff Cannot State a Claim for Trademark Infringement (Claim 25). ........................................................................................ 22

8.    Plaintiff Has Not Stated a Claim for Unjust Enrichment (Claim 26). ...... 23

E.    Plaintiff Cannot State A Claim Against BV NGINX (Claim 1, 10, 13-17, 24-26). ................................................................................................ 24

F.    The Complaint Should be Dismissed with Prejudice as to BV NGINX and the Outside Investors. ........................................................................... 25

V.    Conclusion ........................................................................................................ 25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Aalmuhammed v. Lee*,
    202 F.3d 1227 (9th Cir. 2000).................................................................................... 8

*Alfus v. Pyramid Tech. Corp.*,
    745 F. Supp. 1511 (N.D. Cal. 1990) ......................................................................... 15

*ALS Scan, Inc. v. Steadfast Networks, LLC*,
    No. 18-cv-55615, 2020 WL 4038050 (9th Cir. July 17, 2020)................................. 20

*Am. Master Lease LLC v. Idanta Partners, Ltd.*,
    225 Cal. App. 4th 1451 (2014) ................................................................................... 7

*Andrew Smith Co. v. Paul's Pak, Inc.*,
    No. 08-cv-4802, 2009 WL 10675140 (N.D. Cal. July 29, 2009) .............................. 16

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
    7 Cal. 4th 503 (1994) ................................................................................................ 11

*AREI II Cases*,
    216 Cal. App. 4th 1004 (2013) .................................................................................. 11

*In re Arris Cable Modem Consumer Litig.*,
    No. 17-cv-1834, 2018 WL 288085 (N.D. Cal. Jan. 4, 2018)..................................... 23

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................... 7

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015)...................................................................................... 23

*Avago Techs. U.S. Inc. v. Nanoprecision Prods., Inc.*,
    No. 16-cv-3737, 2017 WL 412524 (N.D. Cal. Jan. 31, 2017)................................... 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................................... 7

*Benson v. JPMorgan Chase Bank, N.A.*,
    Nos. 09-cv-5272, et al., 2010 WL 1526394, at *4 (N.D. Cal. Apr. 15, 2010)...................... 16

*Bernson v. Browning-Ferris Indus. of Cal., Inc.*,
    7 Cal. 4th 926 (1994) .................................................................................................. 8

*Casey v. U.S. Bank Nat'l Ass'n*,
    127 Cal. App. 4th 1138 (2005) .................................................................................. 14

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Damabeh v. 7-Eleven, Inc.*,
  No. 12-cv-1739, 2013 WL 1915867 (N.D. Cal. May 8, 2013).................................... 17

*DC Comics v. Pac. Pictures Corp.*,
  938 F. Supp. 2d 941 (C.D. Cal. 2013) ...................................................................... 7

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
  11 Cal. 4th 376 (1995) ............................................................................................ 18

*Diaz v. Intuit, Inc.*,
  No. 15-cv-1778, 2017 WL 4386451 (N.D. Cal. Sept. 29, 2017) ...................... 15, 16

*Fiol v. Doellstedt*,
  50 Cal. App. 4th 1318 (1996) .................................................................................. 14

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
  76 F.3d 259 (9th Cir. 1996).................................................................................. 19, 21

*Fox v. Ethicon Endo–Surgery, Inc.*,
  35 Cal. 4th 797 (2005) .............................................................................................. 8

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*,
  462 F.3d 1072 (9th Cir. 2006)................................................................................. 19

*Hartford Cas. Ins. Co. v. J.R. Mktg., LLC*,
  61 Cal. 4th 988 (2015) ............................................................................................ 23

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
  456 U.S. 844 (1982) ................................................................................................ 23

*Jolly v. Eli Lilly & Co.*,
  44 Cal. 3d 1103 (1988) .............................................................................................. 8

*Karl Storz Endoscopy–Am., Inc. v. Surgical Techs., Inc.*,
  285 F.3d 848 (9th Cir. 2002)..................................................................................... 7

*Kline v. Turner*,
  87 Cal. App. 4th 1369 (2001) .................................................................................... 7

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) .......................................................................................... 18

*Lazar v. Super. Ct.*
  12 Cal. 4th 631 (1996) ............................................................................................ 24

*Luvdarts, LLC v. AT & T Mobility, LLC*,
  710 F.3d 1068 (9th Cir. 2013).................................................................................. 21

Cooley LLP
Attorneys at Law
San Francisco

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ............................................................................ 19, 21

4

*Micro/sys, Inc. v. DRS Techs., Inc.*,
    No. 14-cv-3441, 2015 WL 12748631 (C.D. Cal. Feb. 18, 2015) ........................................... 12

5

*Mintel Learning Tech., Inc. v. Beijing Kaidi Educ.*,
    No. 06-cv-7541, 2007 WL 2288329 (N.D. Cal. Aug. 9, 2007) ...................................... 11, 12

6

7

*Montz v. Pilgrim Films & Television, Inc.*,
    649 F.3d 975 (9th Cir. 2011) ...................................................................................... 10

8

9

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) .......................................................................................... 7

10

*Neilson v. Union Bank of Cal., N.A.*,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) ........................................................................ 14, 16

11

12

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ...................................................................................... 23

13

*Puri v. Khalsa*,
    674 F. App'x 679 (9th Cir. 2017) ............................................................................... 23

14

15

*Quelimane Co., Inc. v. Stewart Title Guar. Co.*,
    19 Cal. 4th 26 (1998) .................................................................................................. 17

16

17

*Ramona Manor Convalescent Hosp. v. Care Enters.*,
    177 Cal. App. 3d 1120 (1986) ...................................................................................... 24

18

*Reno Air Racing Ass'n, Inc. v. McCord*,
    452 F.3d 1126 (9th Cir. 2006) ...................................................................................... 22

19

20

*In re Rigel Pharms., Inc. Secs. Litig.*,
    697 F. 3d 869 (9th Cir. 2012) ........................................................................................ 7

21

22

*Rubke v. Capitol Bancorp Ltd.*,
    551 F. 3d 1156 (9th Cir. 2009) ...................................................................................... 7

23

*Saunders v. Super. Ct.*,
    27 Cal. App. 4th 832 (1994) ........................................................................................ 14

24

25

*Schulz v. Neovi Data Corp.*,
    152 Cal. App. 4th 86 (2007) ........................................................................................ 16

26

27

*Sharma v. Provident Funding Assocs., L.P.*,
    No. 09-cv-5968, 2011 WL 13243800 (N.D. Cal. June 20, 2011) ...................................... 10

28

**TABLE OF AUTHORITIES**
(continued)

Page

*Shirley v. Univ. of Idaho, Coll. of Law,*
    800 F.3d 1193 (9th Cir. 2015).............................................................................. 25

*Sloan v. Gen. Motors LLC,*
    No. 16-cv-7244, 2020 WL 1955643 (N.D. Cal. Apr. 23, 2020)................................. 8

*Spice Jazz LLC v. Youngevity Int'l, Inc.,*
    No. 19-cv-0583, 2019 WL 4573705 (S.D. Cal. Sept. 19, 2019)................................ 16

*Sugarfina, Inc. v. Sweet Pete's LLC,*
    No. 17-cv-4456, 2017 WL 4271133 (C.D. Cal. Sept. 25, 2017) .............................. 23

*Twelve Sixty, LLC v. Discovery, Inc.,*
    No. 18-cv-2285, 2018 WL 6038308 (C.D. Cal. June 12, 2018) ......................... 11, 12

*UMG Recordings, Inc. v. Bertelsmann AG,*
    222 F.R.D. 408 (N.D. Cal. 2004) ......................................................................... 20

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.,*
    117 F. Supp. 3d 1092 (C.D. Cal. 2015) ...................................................... 17, 19, 20

*UMG Recordings, Inc. v. Shelter Capital Partners LLC,*
    718 F.3d 1006 (9th Cir. 2013).................................................... 18, 19, 20, 21

*UMG Recordings, Inc. v. Veoh Networks Inc.,*
    No. 07-cv-5744, 2009 WL 334022 (C.D. Cal. Feb. 2, 2009) ........................... 20, 21

*Wallace v. SharkNinja Operating, LLC,*
    No. 18-cv-5221, 2020 WL 1139649 (N.D. Cal. Mar. 9, 2020)............................... 24

*Ward v. Litton Loan Servicing, LP,*
    No. 12-cv-0190, 2012 WL 13024081 (C.D. Cal. Apr. 10, 2012) ........................... 25

*Wasco Prods., Inc. v. Southwall Techs., Inc.,*
    435 F.3d 989 (9th Cir. 2006)................................................................................. 10

*Weatherly v. Universal Music Publ'g Grp.,*
    125 Cal. App. 4th 913 (2004) ................................................................................. 8

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.,*
    758 F.3d 1069 (9th Cir. 2014)........................................................................ 21, 22

*Wild Rivers Waterpark Mgmt. LLC v. Katy WP Grp., LLC,*
    No. 18-cv-6522, 2019 WL 6998669 (C.D. Cal. Feb. 26, 2019) .............................. 7

*Williams v. Gaye,*
    885 F.3d 1150 (9th Cir. 2018).............................................................................. 21

# TABLE OF AUTHORITIES
(continued)

**Page**

*Youst v. Longo*,
 43 Cal. 3d 64 (1987) ................................................................................................ 17

**Statutes**

15 U.S.C.
 § 1125(a)(1)(A) .......................................................................................................... 2
 § 1125(a)(1)(B) .......................................................................................................... 2

17 U.S.C. § 301(a) .......................................................................................................... 10

Cal. Civ. Proc. Code
 § 338(d) ....................................................................................................................... 8
 § 339(1) ....................................................................................................................... 7

California Uniform Trade Secrets Act ................................................................. 10, 11

Copyright Act of 1976 ........................................................................................ 10, 11, 19

Lanham Act ............................................................................................... 7, 12, 21, 22

**Other Authorities**

Federal Rules of Civil Procedure
 Rule 8(a) ...................................................................................................................... 3
 Rule 9(b) ............................................................................................................ *passim*
 Rule 11 ....................................................................................................................... 25
 Rule 12(b)(6) ............................................................................................................... 6

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vii

**E.VENTURE, RUNA, & BV NGINX MOTION
TO DISMISS COMPLAINT, CASE NO. 03778-SK**

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendants E.venture Capital Partners II, LLC ("e.ventures") and Runa Capital, Inc. ("Runa" and together with e.ventures, the "Outside Investors") and BV NGINX LLC ("BV NGINX") (collectively "Defendants"), will and hereby do move to dismiss Plaintiff's Complaint (ECF No. 1) as to Defendants. This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Kristine Forderer and exhibit thereto, pleadings and evidence on file in this matter, oral argument of counsel, and such other materials and argument as may be presented in connection with the hearing on the motion.

**STATEMENT OF RELIEF SOUGHT**

Defendants respectfully seek dismissal with prejudice of Plaintiff's first, eighth, tenth, eleventh, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, twenty-fourth, twenty-fifth, and twenty-sixth claims for relief, as to any or all Defendants.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether Plaintiff states a claim against the Outside Investors for civil conspiracy (First Claim for Relief).

2. Whether Plaintiff states a claim against the Outside Investors for aiding and abetting fraud and breach of duties of honesty and loyalty (Eighth Claim for Relief).

3. Whether Plaintiff states a claim against BV NGINX for tortious interference with contract (Tenth Claim for Relief).

4. Whether Plaintiff states a claim against the Outside Investors for tortious interference with contract (Eleventh Claim for Relief).

5. Whether Plaintiff states a claim against the Outside Investors and/or BV NGINX for tortious interference with prospective business advantage (Thirteenth Claim for Relief).

6. Whether Plaintiff states a claim against BV NGINX for fraud (Fourteenth Claim for Relief).

7. Whether Plaintiff states a claim against the Outside Investors and/or BV NGINX for Direct Copyright Infringement (Fifteenth Claim for Relief).

8. Whether Plaintiff states a claim against the Outside Investors and/or BV NGINX for Contributory Copyright Infringement (Sixteenth Claim for Relief).

9. Whether Plaintiff states a claim against the Outside Investors and/or BV NGINX for Vicarious Copyright Infringement (Seventeenth Claim for Relief).

10. Whether Plaintiff states a claim against the Outside Investors and/or BV NGINX for False Advertising under 15 U.S.C. § 1125(a)(1)(B) (Twenty Fourth Claim for Relief).

11. Whether Plaintiff states a claim against Outside Investors and/or BV NGINX for Infringement of the NGINX Trademark under 15 U.S.C. § 1125(a)(1)(A) (Twenty-Fifth Claim for Relief).

12. Whether Plaintiff states a claim against the Outside Investors and/or BV NGINX for Unjust Enrichment (Twenty Sixth Claim for Relief).


Dated: August 28, 2020                           COOLEY LLP


                                                 By: /s/ *Patrick P. Gunn*
                                                      Patrick P. Gunn

                                                 Attorneys for Defendants
                                                 BV NGINX, LLC and E.VENTURES
                                                 CAPITAL PARTNERS II, LLC


                                                 WILLKIE FARR & GALLAGHER LLP


                                                 By: /s/ *Benedict Y. Hur*
                                                      Benedict Y. Hur
                                                      Jayvan E. Mitchell

                                                 Attorneys for Defendant
                                                 RUNA CAPITAL, INC.

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3    Plaintiff's 140-page Complaint identifies a lengthy cast of defendants who allegedly

4  participated in an elaborate conspiracy to deprive Plaintiff's assignor, a Russian software company

5  called Rambler, of its ownership rights in software called NGINX.  But three of these defendants,

6  venture capital investors e.ventures ("e.ventures") and Runa Capital ("Runa") (together with

7  e.ventures, the "Outside Investors"), and e.ventures' investment vehicle, BV NGINX, LLC ("BV

8  NGINX"), were involved only as non-controlling investors, and cannot be liable for the alleged

9  wrongful acts committed by the NGINX companies and their founders.

10    Plaintiff alleges that, nearly a decade ago, the Outside Investors invested in a new business,

11  started by former Rambler employees to commercialize NGINX.  Every theory of liability against

12  the Outside Investors depends, in one way or another, on Plaintiff's facially untenable claim—pled

13  by conclusion—that the Outside Investors made their investments with affirmative *knowledge* that

14  Rambler was the true owner of NGINX and that their investments were thereby wrongful.  In fact,

15  other factual allegations in the Complaint reveal the opposite, stating, in multiple places, that the

16  Outside Investors took steps to avoid investing if there was any dispute as to ownership of NGINX,

17  including by insisting on a legal opinion to that effect as a closing condition.  Because Plaintiff

18  cannot and has not pled that the Outside Investors knowingly committed any wrongful act by

19  simply investing in NGINX, Inc., the Complaint must be dismissed as to these Defendants.  Indeed,

20  although the Complaint sounds in fraud and is thus subject to Federal Rule of Civil Procedure 9(b),

21  Plaintiff fails to meet either the Rule 8(a) or 9(b) standard.

22    Plaintiff's claims must also be dismissed because they are clearly time barred.  The

23  wrongful acts at issue took place almost a decade ago and Plaintiff has no excuse for its delay in

24  bringing this action.  In fact, Plaintiff admits that Rambler identified potential claims and assigned

25  them to Lynwood *five* years ago in 2015.  Moreover, nearly all of the events that give rise to

26  Plaintiff's claims are, and have been for many years, matters of public knowledge, e.g., the NGINX

27  founders' public formation of the companies and sale of NGINX products, the Outside Investors'

28  public investments, the founders' trademark applications, etc.  In other words, the purported

1   conspiracy that Plaintiff claims was designed to "deceive" Rambler operated in broad daylight.

2        Finally, while Plaintiff's untimeliness and failure to allege knowledge on the part of the

3   Outside Investors are independently dispositive of all of Plaintiff's claims, Plaintiff's causes of

4   action also fail, for multiple, claim-specific reasons as described herein.  All Plaintiff alleges is that

5   the Outside Investors participated in financing for NGINX, Inc., beginning in 2011, and that each

6   occupied a seat on the board of directors until the sale to F5 in 2019.  With respect to BV NGINX—

7   mentioned only briefly—Plaintiff does not allege it specifically took any action whatsoever.

8        For the reasons described herein, and regardless of the outcome on the claims against the

9   other defendants, Plaintiff has not and cannot state any claim against the Outside Investors or BV

10   NGINX, LLC and all claims must be dismissed with prejudice as to these Defendants.

11   **II.**   **STATEMENT OF FACTS**[1]

12        e.ventures is part of a global venture capital firm that invests in innovative software and

13   internet-based technology companies at all stages of development.  Runa Capital is a global venture

14   capital firm that invests in early stage software startup companies around the world.  The Complaint

15   alleges that, beginning in April 2011, e.ventures (formerly known as BV Capital) Runa and others,

16   invested in a software company called NGINX, Inc. (BVI) ("NGINX, Inc.") (Complaint

17   ("Compl.") ¶ 258.)[2]  In 2019, NGINX, Inc. was acquired in a nine-figure merger with Defendant

18   F5 Networks, Inc. ("F5").  (*Id.* ¶¶ 47, 404.)  Although the NGINX software has been available as

19   open source since 2004, and NGINX, Inc. has been a prominent software company since its

20   founding in 2011, Plaintiff Lynwood Investments CY Limited ("Plaintiff" or "Lynwood"),

21   purporting to act as assignee of Rambler Internet Holding LLC and its affiliates ("Rambler"), now,

22   a decade later, claims that Rambler is the true owner of the NGINX software, and seeks hundreds

23   of millions of dollars in damages from not only F5 and NGINX's creators, but also from each of

24   the former investors in NGINX, Inc..

25

26   [1] Defendants do not admit the truth of the allegations in the Complaint, but take them to be true for the purposes of this Motion.

27   [2] Although the defendant named in the Complaint is Eventure Capital Partners II, LLC and Defendants take the allegations in the Complaint as true for purposes of this Motion, this is not

28   the e.ventures entity which provided the capital for the NGINX BVI investment.  Similarly, Defendant Runa Capital, Inc. is not the Runa entity that provided capital for the investment.

### A. Development of the NGINX Software

The Complaint alleges that Defendant Igor Sysoev began developing NGINX in 2001. (Compl. ¶ 11.) NGINX is software used to receive requests for and deliver web pages to users as they are browsing the internet. (*Id*., ¶¶ 159-60.) Plaintiff alleges that NGINX is now "used by more than 450 million websites worldwide." (*Id*., ¶ 9.) At the time he first developed NGINX, Sysoev was employed by Rambler as a "systems engineer" and had worked at Rambler for approximately one year. (*Id*., ¶ 11.) Sysoev made the NGINX code free to all by publishing it in open source (i.e., publicly accessible) form in 2004, while still at Rambler. (*Id*., ¶ 21.) Rambler alleges that it did not authorize Sysoev to release the NGINX code, but does not allege that it ever objected or instructed Sysoev to remove it from the public domain. To the contrary, after Sysoev published NGINX in open source form, Rambler raised Sysoev's compensation and paid him bonuses. (*Id*., ¶¶ 21, 191.) Following this open source release, Plaintiff claims that NGINX's "popularity" "surged" among "operators of large Web sites in Russia" and shortly thereafter "around the world." (*Id*., ¶¶ 21, 28.) By 2010, the NGINX software "had six percent of the market share among all web servers." (*Id*., ¶ 173.) When Sysoev and his business partners later left Rambler and began to monetize NGINX by selling a premium (paid) version of NGINX with additional functionality called NGINX Plus, they were able to take advantage of the existing user base that had accessed the open source NGINX software. (*Id*., ¶ 24.)

### B. The Outside Investors' Investment in NGINX

The Complaint alleges that e.ventures first became involved with NGINX in 2010 when Alexander Korotkov solicited an investment from e.ventures partners Mathias Schilling and Thomas Geiselmann. (Compl. ¶ 245.) In an alleged communication with e.ventures, Korotkov described a plan to "commercializ[e] some of the NGINX advanced features" and "also build[] [a] more comprehensive infrastructure platform with several network layers around NGINX." (*Id*., ¶ 246.) In April 2011, the Outside Investors, as well as one other potential Series A investor, Greycroft Partners II L.P. ("Greycroft") signed a term sheet to invest $3 million (collectively) and thereafter began due diligence. (*Id*., ¶¶ 258, 263.)

Plaintiff admits that the Outside Investors, were "particularly concerned about" the

1  founders' "obligations to [] current/former employers" and sought a legal opinion regarding any

2  obligations as part of the diligence process before committing to the investment.  (Compl. ¶ 268.)

3  The Complaint emphasizes that "the Series A investors[] *demand[ed]* [] some assurances" that

4  Rambler would *not* assert a claim to the NGINX software.  (*Id*., ¶ 269 (emphasis added).)  This

5  included an express requirement that, as a condition of closing, the investors would be given: "[a]

6  legal opinion of the Company counsel, satisfactory to the Investors, . . . stating that the Founders'

7  activities with the Company *do not and will not conflict with any agreement, commitment or other*

8  *encumbrance placed on them by their current or former employer.*" (*Id*., ¶ 270 (emphasis added).)

9         Ultimately, Greycroft pulled out of the NGINX investment before closing.  (Compl. ¶ 278.)

10  Plaintiff speculates (but pleads no supporting facts) that Greycroft pulled out because of concerns

11  about possible ownership by Rambler.  (*Id*.)  The Outside Investors went forward with the

12  investment, which closed on October 23, 2011.  (*Id*., ¶¶ 278, 287.)  After the initial investment, the

13  Complaint alleges that the Outside Investors participated in later rounds of financing for NGINX,

14  Inc. in 2013, 2014, and 2016.  (*Id.*, ¶ 287.)  As is typical, representatives from the Outside Investors

15  each held board seats at NGINX, Inc. until the acquisition by F5 in 2019.  (*Id*.)

16         **C.     BV NGINX, LLC**

17         Although it is named separately as a Defendant, BV NGINX, LLC ("BV NGINX") is

18  mentioned in only a handful of paragraphs of the Compalint.  (*See, e.g.*, ¶¶ 66, 77 (venue and

19  jurisdiction allegations), 536 (alleging that the "Team"[3] formed BV NGINX on August 2, 2011),

20  631 (stating that "Konovalov also became the CEO of NGINX DE and BV NGINX when they were

21  incorporated in August 2011").  In fact, though Defendants take the allegations as true for purposes

22  of this motion, Plaintiff is mistaken about BV NGINX's origins: BV NGINX was formed by

23  e.ventures as a vehicle for its investment in NGINX, Inc.  BV NGINX was not formed by the

24  "Team," has never been directly associated with Konovalov, and it has never had a "CEO."

25  **III.    LEGAL STANDARD**

26         A court may dismiss a claim under Rule 12(b)(6) when "there is no cognizable legal theory

27

28  ───────────────
[3] Throughout the Complaint, Plaintiff uses the "Team" to refer to Defendants Konovalov, Sysoev, Smirnoff, Alexeev, and Dounin.  (Compl. ¶ 82.)

or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (citation omitted). As the Supreme Court has emphasized, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing and quoting *Twombly*, 550 U.S. at 556, 570). Where a plaintiff's complaint is "grounded in fraud" or "sounds in fraud," all claims in the complaint are subject to the heightened pleading standard under Rule 9(b). *See In re Rigel Pharms., Inc. Secs. Litig.,* 697 F. 3d 869, 885–86 (9th Cir. 2012); *Rubke v. Capitol Bancorp Ltd.,* 551 F. 3d 1156, 1161 (9th Cir. 2009). A complaint sounds in fraud if (i) the language and structure of complaint alleges a "'unified course of fraudulent conduct' and relies 'entirely on that course of conduct as the basis of a claim,'" *Rubke,* 551 F. 3d at 1161 (citation omitted), or (ii) the complaint employs the same factual allegations to support its fraud and non-fraud claims, *see id.*

## IV.    ARGUMENT

### A.    The Majority of Plaintiff's Claims Are Time-Barred.

The Outside Investors' alleged wrongful conduct commenced over nine years ago, in 2011, when they became Series A investors in NGINX, Inc. The statutes of limitation for all of Plaintiff's claims against the Outside Investors and BV NGINX, the longest of which is four years, have long since lapsed.[4] The only way for these claims to survive is if the limitations period is tolled through

---

[4] The statutes of limitation for the majority of Plaintiff's claims against the Outside Investors and BV NGINX are four years or fewer. *See DC Comics v. Pac. Pictures Corp.*, 938 F. Supp. 2d 941, 948 (C.D. Cal. 2013) (**tortious interference with contract**) ("The statute of limitations for tortious interference with contract in California is two years") (citing Cal. Civ. Proc. Code § 339(1)); *Wild Rivers Waterpark Mgmt. LLC v. Katy WP Grp., LLC*, No. 18-cv-6522, 2019 WL 6998669, at *8 (C.D. Cal. Feb. 26, 2019) (**tortious interference with prospective business advantage**) ("The statute of limitations for intentional interference with prospective economic advantage is two years in both Texas and California") (citing Cal. Civ. Proc. Code § 339(1)); *Karl Storz Endoscopy–Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 857 (9th Cir. 2002) (**false advertising and trademark infringement**) ("Lanham Act claims are subject to a three-year statute of limitations . . .") (citations omitted); *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1478 (2014) (**aiding and abetting breach of duty**) (statute of limitations for aiding and abetting breach of fiduciary duty is no more than four years; three years if the gravamen of the claim is deceit); *Kline*

application of California's delayed discovery rule or fraudulent concealment.  The delayed discovery rule "protects those who are ignorant of their cause of action through no fault of their own" and "permits delayed accrual until a plaintiff knew or should have known of the wrongful conduct at issue." *Weatherly v. Universal Music Publ'g Grp.,* 125 Cal. App. 4th 913, 918–19 (2004) (citations omitted).  But the discovery rule does not apply where a plaintiff has "reason to . . . suspect that a type of wrongdoing has injured them." *Fox v. Ethicon Endo–Surgery, Inc.,* 35 Cal. 4th 797, 807 (2005).  *See also Jolly v. Eli Lilly & Co.,* 44 Cal. 3d 1103, 1111 (1988) ("[s]o long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her.").  Fraudulent concealment, like the discovery rule, tolls the statute of limitations "only for that period during which the claim is undiscovered by plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it." *Bernson v. Browning-Ferris Indus. of Cal., Inc.*, 7 Cal. 4th 926, 931 (1994) (citation omitted).

Here, Plaintiff and Rambler had reason to suspect the alleged wrongdoing for well over four years before Plaintiff filed the Complaint.  The Complaint itself makes clear that Plaintiff (and Rambler) knew or should have known about the alleged wrongful conduct back in 2015 because *they identified possible claims against the Outside Investors and assigned them to Lynwood at that time.* (Compl. ¶ 471.)  Notwithstanding that admission, Plaintiff claims, incredibly, that until 2019, Rambler had no knowledge of NGINX's value (*Id*., ¶ 473) and no knowledge that Sysoev and the other founders developed NGINX while working *for Rambler* (*Id*., ¶ 472.)  This alleged ignorance is not only inconsistent with the assignment, it also runs counter to multiple other allegations in the Complaint.  For instance, elsewhere Lynwood alleges that between 2004-2011, Sysoev "regularly received enhanced compensation in the form of bonuses and outsized raises from Rambler *for his*

---

*v. Turner*, 87 Cal. App. 4th 1369, 1373–74 (2001) (**fraud**) ("An action for relief on the grounds of fraud or mistake must be commenced within three years") (citing Cal. Civ. Proc. Code § 338(d)); *Sloan v. Gen. Motors LLC*, No. 16-cv-7244, 2020 WL 1955643, at *20 (N.D. Cal. Apr. 23, 2020) (**unjust enrichment**) ("A three-year statute of limitations applies to unjust enrichment claims under California law.") (citation omitted).  With respect to copyright infringement, as explained in Defendant F5's Motion, all claims are time-barred because the three-year statute of limitations began to run in 2004 when Sysoev published the NGINX code as open source without Rambler's permission. (Compl. ¶ 21.)  *See Aalmuhammed v. Lee*, 202 F.3d 1227, 1230–31 (9th Cir. 2000) (three year statute begins to run with "plain and express repudiation" of ownership) (citation omitted).

E. Venture, Runa, & BV NGINX Motion
to Dismiss Complaint, Case No. 03778-SK

*work developing the NGINX Software for Rambler*[,] beginning in 2004 until his separation from Rambler in December 2011." (*Id.*, ¶ 191 (emphasis added).)  Further, Sysoev made the NGINX code available as open source software *sixteen* years ago, allegedly without permission from Rambler.  (*Id.*, ¶ 25.)  He then became "the NGINX Software guru and a worldwide technology celebrity" while he was still employed with Rambler.  (*Id.*)  By the time of Rambler's assignment of its claims to Lynwood in 2015, Sysoev's company, NGINX, Inc. had existed for four years, was selling the NGINX Plus software products, and had been the subject of multiple financing rounds.  (*Id.*, ¶ 287.)  Even the assignment to Lynwood was prompted by Rambler's awareness of public interviews Sysoev gave "in industry specific media outlets . . . concerning his authorship of the open-source NGINX Software."  (*Id.*, ¶ 471.)  Given all of these allegations, it is simply not tenable that, by 2015 (or well before), Plaintiff and Rambler failed even to *suspect* that Sysoev would assert ownership over the NGINX software and the premium NGINX products that his company was actively (and publicly) selling at the time.  Nor is there any allegation in the 140-page Complaint suggesting that the Outside Investors fraudulently concealed anything from Rambler or Lynwood.

The two, three, and four year statutes of limitation on Plaintiff's claims against the Outside Investors and BV NGINX have long since lapsed.  (*See, supra* note 4.)  There can be no application of the discovery rule under the circumstances alleged here.  Plaintiff's untimely claims must be dismissed.

**B.     Plaintiff Fails to Plead Its Claims with the Particularity Required Under Rule 9(b).**

Plaintiff fails the threshold requirement that it plead specific facts to support its claims against the Outside Investors and BV NGINX, all of which sound in fraud.  Plaintiff's Complaint sounds in fraud for two interrelated reasons.  In the section of the Complaint titled "Facts Common to All Counts," Plaintiff alleges what effectively amounts to a fraudulent scheme by the Outside Investors, BV NGINX and the other defendants to misappropriate NGINX from Rambler and monetize it.  (Compl., ¶¶ 79–523.)  Plaintiff subsequently restates, incorporates by reference, and relies on all of these allegations to plead each specific claim for relief, including the claims against the Outside Investors and BV NGINX.  Plaintiff also necessarily relies upon the same factual

allegations to support its explicitly fraud-related claims (Claims 8, 9, 14, 18-23) as it does for the other claims against Outside Investors and BV NGINX.[5]

Because Plaintiff's complaint sounds in fraud, Plaintiff "must aver sufficient details to establish the 'who, what, where, when and how' of the alleged tort[s]." *Sharma v. Provident Funding Assocs., L.P.*, No. 09-cv-5968, 2011 WL 13243800, at *3 (N.D. Cal. June 20, 2011). Plaintiff fails to meet this heightened pleading burden. Instead, it generally lumps the Defendants together, without alleging who specifically did or said what, what specifically was done, or when and how statements were made or actions taken. For example, Plaintiff alleges that the Outside Investors "took the lead in advising the Team on how" to avoid their contractual and fiduciary duties to Rambler and Rambler's ownership rights in NGINX. (Compl., ¶ 259.) However, the Complaint is devoid of any details about who at Runa or e.ventures was involved and what advice they provided. Plaintiff similarly alleges that the Outside Investors' leadership "became involved in the granular details of the Team's plans to misappropriate" NGINX from Rambler. (*Id.*, ¶ 260.) But Plaintiff provides no detail whatsoever regarding *what* the supposed misappropriation plan entailed or *how* the Outside Investors or BV NGINX were involved in the details of said plan. This dearth of required allegations permeates the entire Complaint and furnishes independent grounds to dismiss all claims against Outside Investors and BV NGINX.

### C.    Plaintiff's Claims are Preempted.

As described in F5's concurrently filed motion, Plaintiff's state law claims (Claims 8, 10, 11, 13, 14, and 26) are preempted by the Copyright Act and/or the California Uniform Trade Secrets Act ("CUTSA"). *See, e.g.*, *Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 979 (9th Cir. 2011) ("The Copyright Act of 1976 expressly preempts state claims where the plaintiff's work 'come[s] within the subject matter of copyright' and the state law grants 'legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright.'" (citing and quoting 17 U.S.C. § 301(a).); *Avago Techs. U.S. Inc. v. Nanoprecision Prods., Inc.*, No. 16-cv-

---

[5] Plaintiff's civil conspiracy claim (Claim 1) must also independently satisfy Rule 9(b) since Plaintiff alleges in effect that the object of the conspiracy was fraudulent. *See Wasco Prods., Inc. v. Southwall Techs., Inc.,* 435 F.3d 989, 990-92 (9th Cir. 2006). And the aiding and abetting fraud claim (Claim 8) is a claim for fraud and subject to Rule 9(b).

3737, 2017 WL 412524, at *5–6 (N.D. Cal. Jan. 31, 2017) (CUTSA "supersede[s] other civil remedies" and "preemption extends to claims based on the misappropriation of confidential and proprietary information, regardless of whether it qualifies as a trade secret.") (internal quotation and citations omitted).  All claims against the Outside Investors are based on the same theory that, by their investment, they knowingly violated intellectual property rights that (allegedly) belonged to Rambler.

### D.    Plaintiff's Individual Causes of Action Fail for Claim-Specific Reasons.

### 1.    The Complaint Does Not Adequately Plead Conspiracy (Claim 1).

### a.    Plaintiff's Conspiracy "Claim" is Not Properly Pled.

As an initial matter, Claim 1 must be dismissed because conspiracy is not a standalone cause of action, but a doctrine of vicarious liability.  *See, e.g.*, *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510–11 (1994) (conspiracy liability "imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration.") (citation omitted).  Conspiracy may not be pled as a separate cause of action, but rather, the conspiracy liability theory "*must be separately pled* as to each of the substantive causes of action."  *Mintel Learning Tech., Inc. v. Beijing Kaidi Educ.*, No. 06-cv-7541, 2007 WL 2288329, at *4 (N.D. Cal. Aug. 9, 2007) (citation omitted) (emphasis added).

Nowhere in the Complaint does Plaintiff indicate which causes of action it intends to assert against the Outside Investors and BV NGINX based on conspiracy.  There are, however, several causes of action that could *only* be pled through conspiracy because Plaintiff alleges no direct acts by the Outside Investors or BV NGINX, e.g., trademark infringement and false advertising.  With respect to other causes of action, e.g., copyright infringement, Plaintiff also alleges no direct acts by the Outside Investors or BV NGINX, but conspiracy liability is not applicable. *See Twelve Sixty, LLC v. Discovery, Inc.*, No. 18-cv-2285, 2018 WL 6038308, at *3 (C.D. Cal. June 12, 2018) (dismissing conspiracy to infringe copyright claim, and finding it preempted because "[t]he Copyright Act already 'recognizes the concepts of contributory infringement and vicarious copyright infringement[.]") (citation omitted).  With respect to BV NGINX, Plaintiff alleges no direct acts at all, and thus, presumably, all claims are based on conspiracy.

As conspiracy is not a separate cause of action and Plaintiff has not separately pled conspiracy liability as to any other cause of action, Claim 1 must be dismissed as well as Claim 10 (tortious interference with contract as to BV NGINX), Claim 11 (tortious interference with contract as to the Outside Investors); Claim 13 (tortious interference with business advantage as to the Outside Investors and BV NGINX), Claim 14 (fraud as to BV NGINX), Claim 24 (false advertising as to the Outside Investors and BV NGINX), Claim 25 (trademark infringement as to the Outside Investors and BV NGINX), and Claim 26 (unjust enrichment as to the Outside Investors and BV NGINX), because no direct acts by the Outside Investors and/or BV NGINX have been alleged to support any of these causes of action, or, as described below, the direct acts alleged are insufficient to support a direct claim.  Plaintiff's claims for direct copyright infringement (Claim 15) should also be dismissed as to the Outside Investors and BV NGINX because no direct infringement is alleged and conspiracy liability is unavailable.  *See Twelve Sixty*, 2018 WL 6038308, at *3.

### b.    The Complaint Fails to Allege that Outside Investors and BV NGINX *Knowingly* Participated in a Conspiracy.

Even if Plaintiff had properly pled a conspiracy claim, which it has not, as described above, conspiracy liability is unavailable against the Outside Investors and BV NGINX on substantive grounds because Plaintiff does not, and could not, based on the facts alleged, plead the required element of knowledge.  In order to establish that a conspiracy was formed, the plaintiff "must show that each member of the conspiracy acted in concert and *came to a mutual understanding to accomplish a common and unlawful plan*[.]"  *AREI II Cases*, 216 Cal. App. 4th 1004, 1022 (2013) (citation omitted) (emphasis added); *see also Mintel Learning Tech.*, 2007 WL 2288329, at *4 ("[e]ach member of the alleged conspiracy . . . must intend the success of the purpose of the conspiracy") (citation omitted); *Micro/sys, Inc. v. DRS Techs., Inc.*, No. 14-cv-3441, 2015 WL 12748631, at *3 (C.D. Cal. Feb. 18, 2015) (dismissing civil conspiracy claim where Lanham Act claims failed).

Here Plaintiff alleges that, by virtue of their investment in NGINX, Inc., the Outside Investors joined with the other Defendants in a conspiracy to defraud Rambler, infringe its intellectual property, and otherwise deprive it of the value of the NGINX software.  As Plaintiff's

theory goes, the Outside Investors "knew" that Rambler was the true owner of the NGINX software through diligence prior to their Series A investment and joined the conspiracy when they made the decision to invest in 2011.  (Compl. ¶¶ 278, 545.)  But Plaintiff's own factual allegations belie this theory.  In fact, far from joining a conspiracy to defraud Rambler, the Complaint admits that the Outside Investors actively *sought to avoid* making an investment if there was legal uncertainty surrounding ownership of the software.  Plaintiff alleges that the Outside Investors were "particularly" interested in ownership of NGINX and had expressed to Defendant Konovalov that, "[t]hey want to be sure that Rambler will claim no rights for nginx and derived products." (*Id*., ¶¶ 268-9.)  In fact, Plaintiff admits that the Outside Investors, specifically insisted, *as a condition to close*, that the Company provide a satisfactory legal opinion "that the Founders' activities with the Company *do not and will not conflict with any agreement, commitment or other encumbrance placed on them by their current or former employer.*" (*Id*., ¶¶ 270 (emphasis added).)  There is no plausible inference to be drawn from these allegations that the Outside Investors knowingly or intentionally entered a conspiracy to defraud Rambler—if anything, the inference is that the Outside Investors wanted to *avoid* an investment in NGINX, Inc., if Rambler had any claim to the software.

The only allegation in the Complaint that even conceivably supports the Outside Investors purported "knowledge" of any wrongdoing is the insinuation that *another investor*, Greycroft, pulled out because of "concerns" regarding obligations to Rambler, while Runa and e.ventures did not.  (Compl. ¶ 278.)  The Complaint states no facts to support Plaintiff's conjecture that Greycroft's exit was because of concerns about Rambler and not for another, unrelated, reason.  But, even if Greycroft's exit *was* due to information it received about Rambler's purported rights to NGINX, there is nothing in the Complaint that suggests what this information was or that the Outside Investors received the same information.  In fact, the Complaint alleges that the Outside Investors conducted "their own" due diligence *after* Greycroft pulled out.  (*Id*.)  Plaintiff's claim that the Outside Investors had knowledge of Rambler's purported ownership of NGINX before making its investment is baseless and implausible.

Because the Complaint does not allege facts sufficient to plead that the Outside Investors knowingly or intentionally participated in a conspiracy, as required by California law all other

claims against the Outside Investors based on conspiracy, listed above, must be dismissed.

### 2. The Complaint Fails to Plead that the Outside Investors Aided and Abetted the Former Employees' Breach of Duties to Rambler (Claim 8).

As with conspiracy liability, Plaintiff claims that the Outside Investors aided and abetted breaches of duty to Rambler, through their investment in NGINX, Inc. But, Plaintiff's allegations about the Outside Investors' investments are legally insufficient to state a claim for aiding and abetting. Under California law, one aids and abets a tort if that individual: "[(1)] knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or [(2)] gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325–26 (1996) (quoting *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 846 (1994)). As the Outside Investors have no alleged duty to Rambler independently, Plaintiff's only possible claim is based on the first test, which requires both (1) knowledge, and (2) substantial assistance. As discussed below, neither of these elements is adequately pled as to the Outside Investors in the Complaint.

### a. Plaintiff Does Not Allege Facts Showing the Outside Investors' Knowledge of Any Breach of Duty.

Plaintiff alleges that the Outside Investors had knowledge of NGINX, Inc.'s founders' alleged breach of duty to Rambler by virtue of general "diligence" preceding the Outside Investors' 2011 investment, but does not allege what information the Outside Investors actually received that disclosed the alleged breach. (Compl. ¶ 607.) A claim for aiding and abetting requires factual allegations supporting *actual* knowledge; constructive knowledge is not sufficient. *See Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1118–19 (C.D. Cal. 2003) ("California law requires that a defendant have actual knowledge of tortious activity before it can be held liable as an aider and abettor[.]"); *see also Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1152–53 (2005) (affirming dismissal of aiding and abetting claim where plaintiff's "general allegation[s]" of knowledge failed to specify a "primary wrong 'with knowledge of the object to be attained.'") (citation omitted). The conclusory allegations about diligence in the Complaint are not sufficient

1  to plead the Outside Investors' actual knowledge of a breach of duty.  (*See* Compl. ¶¶ 606-607

2  (alleging in a conclusory manner that "Runa Capital and BV Capital (now E.Ventures) conducted

3  extensive due diligence leading up to their Series A investment in October 2011" and "[a]s a result

4  of the due diligence, Runa Capital and BV Capital knew about the Disloyal Employees' obligations

5  to Rambler and the Team's fraudulent conduct against Rambler.").)  This is especially clear, where,

6  as here, the Complaint describes steps the Outside Investors' took during the diligence process to

7  *avoid* capitalizing a company if there was a third-party ownership claim.  (*Id*., ¶¶ 267-287.)

8      **b.**  **Plaintiff Does Not Allege Facts Sufficient to Show "Substantial**

9        **Assistance."**

10    Plaintiff also fails to allege facts sufficient to show any substantial assistance by the Outside

11  Investors in the alleged breach.  The element of substantial assistance requires "a significant and

12  active, as well as a knowing participation in the wrong[.]"  *Diaz v. Intuit, Inc.,* No. 15-cv-1778,

13  2017 WL 4386451, at *4 (N.D. Cal. Sept. 29, 2017) (substantial assistance requires a "significant

14  and active, as well as a knowing participation in the wrong") (quoting *Alfus v. Pyramid Tech. Corp.,*

15  745 F. Supp. 1511, 1520 (N.D. Cal. 1990).  Here, Plaintiff alleges, in a conclusory manner, that the

16  Outside Investors assisted in the NGINX founders' breach of duty in two ways: (1) by advising the

17  founders "on how to execute on their conspiracy for misappropriating the NGINX Enterprise from

18  Rambler beginning in March 2011" and later participation the board of directors and (2) by

19  supporting the conspiracy financially through investment.  (Compl. ¶ 611.)  Neither of these

20  allegations is sufficient to support an aiding and abetting claim.

21    ***First***, Plaintiff does not identify any advice, at all, that the Outside Investors gave to the

22  founders about how to successfully misappropriate Rambler's software.  The only allegations of

23  conversations between e.ventures and the founders pled in the Complaint are solicitations from the

24  founders *to* e.ventures that took place prior to March 2011, in the summer of 2010.  (*See, e.g.*,

25  Comp. ¶¶ 245-46; 250-51.)  And there are no allegations regarding any conversations between

26  Runa and the founders prior to April 11, 2011 when the Team signed the Term Sheet with the

27  Outside Investors. (*Id*., ¶ 258.)  Nor does the complaint allege any specific assistance that the

28  Outside Investors provided by virtue of their seats on the board of directors following their

investments. Lynwood's "mere conclusions" regarding advice and the the Outside Investors' board seats (*see, e.g.*, *id.*, ¶ 611) are not legally sufficient; "*facts* showing 'substantial assistance or encouragement'" are required. *Schulz v. Neovi Data Corp.*, 152 Cal. App. 4th 86, 97 (2007) (citation omitted) (emphasis added); *Neilson*, 290 F. Supp 2d. at 1132 (explaining that substantial assistance allegations must "be specific enough to give defendants notice of the particular misconduct[.]") (internal quotation and citations omitted).

**Second**, the Outside Investors' financial support for NGINX through their investment alone is not sufficient to plead substantial assistance, especially where, as here, the most plausible inference of the facts alleged is that the Outside Investors were *unaware* that the founders were (allegedly) in breach of their duties to Rambler and wanted to avoid investing if there was any such breach. (Compl. ¶ 270.) *Diaz*, 2017 WL 4386451, at *4 (insubstantial assistance requires "a knowing participation in the wrong"); *c.f. Benson v. JPMorgan Chase Bank, N.A.*, Nos. 09-cv-5272, et al., 2010 WL 1526394, at *4 (N.D. Cal. Apr. 15, 2010) ("substantial assistance" found only where Plaintiff took multiple knowing steps to aid the alleged fraud, including "allow[ing] [perpetrator] and his associates to deposit investor monies into the Nevada LLCs' accounts, permitting them to commingle funds within the Nevada LLCs' accounts, [etc.]").

Plaintiff cannot plead either element required for aiding and abetting as to the Outside Investors and Claim 8 should be dismissed.

### 3. Plaintiff Cannot State a Claim for Tortious Interference with Contract (Claim 11).

Plaintiff next claims that that the Outside Investors tortiously interfered with the individual Defendants' employment agreements with Rambler. Here, there can be no claim against the Outside Investors because there are no factual allegations supporting the requirement that the Outside Investors *knowingly* interfered with any of Plaintiff's or Rambler's contracts. *See Spice Jazz LLC v. Youngevity Int'l, Inc.*, No. 19-cv-0583, 2019 WL 4573705, at *5 (S.D. Cal. Sept. 19, 2019) (negligent interference with contract does not exist under California law); *see also Andrew Smith Co. v. Paul's Pak, Inc.*, No. 08-cv-4802, 2009 WL 10675140, at *3 (N.D. Cal. July 29, 2009) (plaintiff could not state a claim for tortious interference where conduct did not appear "designed

to cause a breach" of contract); *Quelimane Co., Inc. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 56 (1998) (plaintiff must allege that breach was "a necessary consequence" of defendant's interfering act). In this case, it is clear that the Outside Investors' investment was not designed to interfere with any contract. To the contrary, and as referenced above, the Outside Investors required assurances from the founders that they were *not* in breach of any obligation to Rambler before closing the transaction. (*See* Compl. ¶ 270.)

### 4. Plaintiff Cannot State a Claim for Tortious Interference With Prospective Business Advantage (Claim 13).

In addition to tortious interference with contract, Plaintiff also alleges that all Defendants, including the Outside Investors, are liable for tortious interference with a prospective business advantage related to Rambler's alleged economic interest in the NGINX software. (Compl. ¶ 666.) This claim fails as to the Outside Investors, as a matter of law, for multiple independent reasons.

***First***, to state a claim for interference with prospective business advantage, a plaintiff must identify specific business opportunities that were lost: "[a]llegations that a defendant interfered with a relationship with an 'as yet unidentified' customer will not suffice." *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc*., 117 F. Supp. 3d 1092, 1117–18 (C.D. Cal. 2015) (citation omitted); *see also Damabeh v. 7-Eleven, Inc.,* No. 12-cv-1739, 2013 WL 1915867, at *10 (N.D. Cal. May 8, 2013) (dismissing claims where "Plaintiff does not specifically identify . . . employees and customers" subject to the interference). Here, Plaintiff does not identify any specific "relationships or opportunities" with which the Outside Investors are "alleged to have interfered." *Damabeh*, 2013 WL 1915867, at *10. The Complaint alleges only generally that the NGINX software was valuable, and that the alleged interference deprived Rambler of that value. (*See* Compl. ¶¶ 666 ("Rambler[] had a prospective economic advantage in the form of the NGINX Enterprise" which "Rambler could have and would have sold for a massive profit"), 667 ("the NGINX Enterprise" was valuable and "could be sold for a massive profit").) These allegations are not sufficient to state a claim.

***Second***, Plaintiff does not, and cannot allege "*intentional* acts on the part of [defendant] *designed* to disrupt the relationship," which is an essential element of the claim. *See Youst v. Longo*, 43 Cal. 3d 64, 71 n.6. (1987) (citation omitted) (emphasis added). Again, the allegations in the

1    Complaint suggest that in performing diligence, the Outside Investors were looking to avoid any

2    interference with Rambler's rights. (Compl. ¶ 270.) These allegations cannot support an inference

3    that the Outside Investors *intended* to disrupt Rambler's prospective business advantage and or that

4    the Outside Investors knew an interference was "certain or substantially certain" to occur as a result

5    of their investment. *See Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1153 (2003)

6    (plaintiff must plead that "defendant knew that the interference was certain or substantially certain

7    to occur as a result of its action").

8        **Finally**, in order to state a claim for interference with prospective business advantage, a

9    plaintiff must allege "that the defendant's interference was wrongful 'by some measure beyond the

10   fact of the interference itself.'"  *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376,

11   392–93 (1995) (citation omitted).  Here, Plaintiff does not and could not allege that there was

12   anything independently wrongful about the Outside Investors' investments.

13       **5.    Plaintiff's Copyright Infringement Claims Fail as a Matter of Law
14            (Claims 15, 16, and 17).**

15       Although Plaintiff does not allege facts to suggest the Outside Investors did anything other

16   than invest in NGINX, Inc. and occupy board seat each, Plaintiff seeks to hold the Outside Investors

17   accountable for direct, contributory, and vicarious infringement of Rambler's alleged copyrights.

18   For the reasons articulated in F5's concurrently-filed motion to dismiss, Plaintiff has not pled a

19   valid copyright claim at all and these causes of action, including the claims for vicarious and

20   contributory liability, should be dismissed in their entirety.  *See UMG Recordings, Inc. v. Shelter*

21   *Capital Partners LLC*, 718 F.3d 1006, 1031 (9th Cir. 2013) ("Secondary liability for copyright

22   infringement does not exist in the absence of direct infringement[.]") (citation omitted).

23       Even if Plaintiff had adequately pled underlying infringement, it does not and cannot plead

24   such a claim as against the Outside Investors under any of the three theories for the additional

25   reasons described below.

26       **a.    Plaintiff's Direct Infringement Claim Fails (Claim 15).**

27       To survive a motion to dismiss, a claim of direct infringement must adequately plead "(1)

28   ownership of a valid copyright, and (2) copying of constituent elements of the work that are

original." *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006) (citation omitted). Even if Plaintiff had adequately pled ownership of a valid copyright, which Defendants do not concede, the Complaint does not allege that the Outside Investors directly copied or participated in any copying, only that they invested in NGINX, Inc. (Compl. ¶ 701 ("The venture capital investors such as Runa Capital and BV Capital *bought into the plan and funded it*[.]").) Further, there can be no claim through conspiracy because, as noted in section IV(D)(1)(a), *supra*, the Copyright Act preempts conspiracy liability.

> **b.   Plaintiff Cannot State a Claim for Contributory Copyright Infringement (Claim 16).**

Plaintiff also cannot state a claim for contributory infringement against the Outside Investors. To state a claim for contributory infringement, Plaintiff must allege both that the Outside Investors "induce[d], cause[d], or materially contribute[d] to" the alleged infringing conduct *and* knew "of the [alleged] infringing activity." *See UMG Recordings*, 718 F.3d at 1031–32 (*citing Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 930 (2005) and affirming dismissal of claim for contributory infringement on 12(b)(6) motion). Plaintiff does not, and could not, plead such facts here.

***First***, Plaintiff has not adequately alleged how, as investors, the Outside Investors induced, caused, or materially contributed to the alleged infringement. As the Ninth Circuit has directly held, "funding alone cannot satisfy the material assistance requirement." *UMG Recordings*, 718 F.3d at 1032. In the Ninth Circuit, courts rely on the so-called "site and facilities" test to determine if the allegations constitute material assistance. *Id.* Under the site and facilities test, contributory liability may be shown only where the defendant "actively strives to provide the environment and the market for counterfeit . . . sales to thrive." *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996).

When alleged against investor defendants like the Outside Investors, the critical question as to material assistance is whether the investor—or investors acting in concert—"could individually *control*" the infringing actor. *UMG Recordings*, 718 F.3d at 1032 (emphasis added). Here, Plaintiff alleges only that the Outside Investors invested in NGINX, Inc., occupied one seat on the Board

each, and participated in Board decisions typical of a designee. (Compl. ¶¶ 287, 731.) Nowhere does Plaintiff allege that the Outside Investors exercised control over the company, either individually or together.[6] *See UMG Recordings*, 718 F.3d at 1032 ("three investors individually acquiring one [board] seat apiece is not the same as agreeing to operate as a unified entity to obtain and leverage majority control"); *cf UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408, 412 (N.D. Cal. 2004) (allegations that defendant investor was Napster's "only available source of funding," and so "held *significant* power and control over Napster's operations" found to be sufficient) (emphasis added). Nor is the appointment of a board member sufficient for material assistance. Allegations amounting "to little more than what is legally and customarily required of corporate board members" cannot sustain a contributory infringement claim. (Civil Mins. – Gen. at 2, *UMG Recordings, Inc. v. Veoh Networks Inc.*, No. 07-cv-5744 (C.D. Cal. May 5, 2009) (ECF No. 434).[7] *See also UMG Recordings, Inc. v. Veoh Networks Inc.*, No. 07-cv-5744, 2009 WL 334022, at *3 (C.D. Cal. Feb. 2, 2009) (occupation of two board seats "did not constitute actual control" and "[t]o allow for derivative copyright liability" in such circumstances "could invite expansion of potential shareholder liability for corporate conduct, without meaningful limitation.").

**Second**, Plaintiff's contributory infringement claim fails because Plaintiff does not allege facts to support the Outside Investors' knowledge of the infringing activity. *ALS Scan, Inc. v. Steadfast Networks, LLC*, No. 18-cv-55615, 2020 WL 4038050, at *1 (9th Cir. July 17, 2020) (acknowledging that in the Ninth Circuit "actual knowledge of *specific* acts of infringement is required") (internal quotation and citations omitted). As with other claims, Plaintiff relies exclusively on allegations that the Outside Investors conducted diligence before investing to show their "knowledge" of the alleged infringement. These allegations suggest that the Outside Investors sought information about Rambler's rights, and assurances that the founders of NGINX, Inc. were not in breach of any duty to Rambler. (Compl. ¶¶ 268, 270) Courts have confirmed that an investor's inquiry into potential infringement, as is alleged here, does itself not amount to

---

[6] Even if Lynwood had alleged that Runa and e.ventures *jointly* controlled NGINX, Inc. (which it does not and could not), the panel in *UMG Recordings* opined that such an allegation would not necessarily satisfy "*Fonovisa*'s site and facilities requirement." 718 F.3d at 1032.

[7] This document is attached for the Court's convenience as Exhibit A to the Declaration of Kristine Forderer, filed concurrently herewith.

"knowledge."  For instance, in *UMG Recordings, Inc. v. Veoh Networks Inc.*, the court found that allegations that the board designees of investor defendants "considered copyright matters" suggested "that the investors were actively seeking to ensure that copyrights were not violated," and dismissed the infringement claim with prejudice accordingly.  (Forderer Decl., Ex. A at 7.)

### c.     Plaintiff Cannot State a Claim for Vicarious Copyright Infringement (Claim 17).

Finally, Plaintiff cannot state a claim for vicarious copyright infringement because the Complaint does not allege that that the Outside Investors had control of the alleged infringement or a "direct" financial interest.  *See Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1071 (9th Cir. 2013) (citing *Grokster,* 545 U.S. at  930) ("[v]icarious infringement occurs when one profits from direct infringement while declining to exercise a right to stop or limit it, and contributory infringement liability requires 'inducing or encouraging' direct infringement." )

In the Ninth Circuit, "control" requires a "formal, contractual, ability to control" the infringing conduct.  *Fonovisa*, 76 F.3d at 263; *Williams v. Gaye*, 885 F.3d 1150, 1177 (9th Cir. 2018) (control means the "exercise[] [of] control over a direct infringer when [vicarious infringer] has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so.") (citation omitted).  Here, apart from legal conclusions that are not entitled to weight, Plaintiff has not pled any *fact*s to suggest the Outside Investors had a legal or practical ability to dictate the founders' or NGINX, Inc.'s conduct by virtue of their investments and board seats.  Plaintiff has also not pled that the Outside Investors had a direct financial interest in the alleged infringement.  The Outside Investors' role as investors, alone, is not enough.  *See UMG Recordings, Inc. v. Veoh Networks Inc.,* No. 07-cv-5744, 2009 WL 334022, at *5–6 (C.D. Cal. Feb. 2, 2009), *aff'd sub nom. UMG Recordings*, 718 F.3d 1006 (dismissing vicarious infringement claim against investor and holding that benefitting from a sale or public offering is "too far removed from the alleged infringement" to constitute a "direct" financial interest).

### 6.     Plaintiff Fails to State a Claim for False Advertising (Claim 24).

The Complaint does not allege any false statement or omission by the Outside Investors, at all, and thus cannot state a claim for false advertising under the Lanham Act.  *See Wells Fargo &*

*Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (Lanham Act claim requires a plaintiff to prove: "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by lessening of the goodwill associated with its products.") (citation omitted).

Here, Plaintiff fails to identify any public-facing statement by the Outside Investors *at all* regarding the NGINX products, much less a statement that constitutes a "commercial advertisement" or is, in any manner, alleged to be false or misleading. As Plaintiff fails to plead even the most basic elements of its false advertising claim against the Outside Investors, and has not sufficiently alleged the Outside Investors' participated in a conspiracy to commit false advertising, as described above, Claim 24 must be dismissed. *See Wells Fargo*, 758 F.3d at 1071 (false advertising requires a false statement of fact *by the defendant* in a commercial advertisement that actually deceived or had a tendency to deceive a substantial segment of its audience).

### 7.  Plaintiff Cannot State a Claim for Trademark Infringement (Claim 25).

Absent liability as a co-conspirator which, as described above is not adequately pled (*see* section IV(D)(1) *supra*) Plaintiff's allegation of direct trademark infringement cannot lie against the Outside Investors. First, for the reasons described in Defendant F5's motion to dismiss, Plaintiff cannot establish ownership of a valid trademark. But, more glaringly, Plaintiff has not alleged any direct "use" of the trademark(s) *by the Outside Investors* sufficient to state a claim for direct infringement. *See Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006) (to establish a claim for trademark infringement under the Lanham Act, a plaintiff must demonstrate: "(1) ownership of a valid mark (i.e., a protectable interest), and (2) that the alleged infringer's use of the mark is likely to cause confusion, or to cause mistake, or to deceive consumers.") (internal quotation and citations omitted). As discussed throughout, Plaintiff alleges only that the Outside Investors invested in NGINX, Inc. and occupied board seats, not that the Outside Investors

themselves ever used the alleged infringing mark.  (*See* Compl. ¶ 859 (alleging generally that "Defendants have been using the NGINX trademark, NGINX (Stylized) trademark, NGINX PLUS trademark, NGINX UNIT trademark and NGINX CONTROLLER trademark in United States commerce in connection with the NGINX Software and related services in violation of Rambler's and now Lynwood's rights.").)  Plaintiff's direct trademark infringement claim as to the Outside Investors must be dismissed.[8]

### 8. Plaintiff Has Not Stated a Claim for Unjust Enrichment (Claim 26).

Plaintiff's final claim against the Outside Investors for unjust enrichment must be dismissed for two reasons.  Unjust enrichment, unless based in a quasi-contract theory, is not a valid cause of action under California law. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).  "Where the doctrine applies, the law implies a restitutionary obligation, even if no contract between the parties itself expresses or implies such a duty." *Hartford Cas. Ins. Co. v. J.R. Mktg., LLC*, 61 Cal. 4th 988, 998 (2015) (citation omitted).  Critically absent, however, are any allegations sufficient to overcome Rule 9(b)'s heightened pleading standards. *See Puri v. Khalsa*, 674 F. App'x 679, 690 (9th Cir. 2017).  Just as Plaintiff's causes of action addressed, *supra*, sound in fraud and are insufficiently particular, Lynwood fares no better alleging with specificity the nature of a quasi-contractual relationship between it and the Outside Investors.  *See In re Arris Cable Modem Consumer Litig.*, No. 17-cv-1834, 2018 WL 288085, at \*9 (N.D. Cal. Jan. 4, 2018). *See also, Sugarfina, Inc. v. Sweet Pete's LLC*, No. 17-cv-4456, 2017 WL 4271133, at \*6 (C.D. Cal. Sept. 25, 2017) (dismissing unjust enrichment cause of action because plaintiff's allegations were "inextricably intertwined" with their trademark claims such that they did not "give ruse to a separate theory of quasi-contract") (citation omitted).  Moreover, Plaintiff cannot evade the "the general principle of equity that equitable relief will not be afforded when the plaintiff's remedies at law are

---

[8] Plaintiff has not pled any claim for secondary trademark infringement against the Outside Investors.  *See Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 853–54 (1982) (articulating secondary trademark infringement test for allegations that "extend beyond those who *actually mislabel* goods with the mark of another") (emphasis added).  In any event, the "tests for secondary trademark infringement are even more difficult to satisfy than those required to find secondary copyright infringement," and Plaintiff's copyright infringement claims uniformly fail for the reasons discussed above.  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 806 (9th Cir. 2007) (citations omitted).

1   adequate to redress his or her injury." *Wallace v. SharkNinja Operating, LLC*, No. 18-cv-5221,

2   2020 WL 1139649, at *13 (N.D. Cal. Mar. 9, 2020) (citation omitted).  Here, Plaintiff's many other

3   causes of action—tortious interference with contractual relations, in particular—would allow it to

4   "obtain full redress for its" purported "lost profits."  *Ramona Manor Convalescent Hosp. v. Care*

5   *Enters.*, 177 Cal. App. 3d 1120, 1140 (1986).  Accordingly, Claim 26 must be dismissed.

6       **E.      Plaintiff Cannot State A Claim Against BV NGINX (Claim 1, 10, 13-17, 24-26).**

7            Although the Complaint contains almost no allegations about BV NGINX, Plaintiff asserts

8   a host of claims against it (along with, in each case, all Defendants, or other Defendants): (1) Civil

9   Conspiracy (Claim 1); (2) Tortious Interference with Contract (Claim 10); (3) Tortious Interference

10  with Prospective Business Advantage (Claim 13), (4) Fraud (Claim 14), (5) Direct, Contributory,

11  and Vicarious Copyright Infringement, (Claims 15, 16, and 17), False Advertising (Claim 24),

12  Trademark Infringement (Claim 25), and Unjust Enrichment (Claim 26).

13           The only two substantive factual allegations specific to BV NGINX alleged in the

14  Complaint are: (1) that BV NGINX was formed by members of the Team in 2011 (Compl. ¶ 536)

15  and (2) that Konovalov acted as its CEO for an undisclosed period of time (*id*., ¶ 631.)  Neither of

16  these allegations suggests that BV NGINX had knowledge sufficient to form a conspiracy (*see*

17  section IV(D)(1)(b), *supra*) or that it independently took any action in furtherance of the torts

18  alleged in the Complaint.  Plaintiff does not plead facts supporting any of the required elements of

19  fraud specifically as to BV NGINX, including: (1) misrepresentation or concealment, (2)

20  knowledge of the falsity of any misrepresentation or concealment, (3) intent to defraud, and (4)

21  reliance.  *Lazar v. Super. Ct.* 12 Cal. 4th 631, 638 (1996) (citations omitted).  As described above,

22  the Complaint fails to identify anything BV NGINX, specifically, did at all, much less a particular

23  misrepresentation and knowledge that such misrepresentation was false.  Similarly, none of the

24  allegations in the Complaint about BV NGINX state, or even suggest, an intent to defraud Rambler

25  (other than by virtue of Konovalov acting as CEO, but Konovalov is separately accused of fraud),

26  or reliance by Rambler, in any way on something that BV NGINX did or said.

27           The allegations in the Complaint are insufficient to state any cause of action against BV

28  NGINX, and BV NGINX should be dismissed entirely.

1

**F.    The Complaint Should be Dismissed with Prejudice as to BV NGINX and the Outside Investors.**

Where amendment is likely to be futile, a motion to dismiss should be granted with prejudice.  *See Ward v. Litton Loan Servicing, LP*, No. 12-cv-0190, 2012 WL 13024081, at *3 (C.D. Cal. Apr. 10, 2012).  Here, it is not likely that Plaintiff can amend its Complaint to properly plead any claim against the Outside Investors or BV NGINX.  First, Plaintiff's claims are untimely, barred by numerous statutes of limitations, and this cannot be cured through additional pleading. Further, each of Plaintiff's claims require some level of knowledge of wrongdoing or an affirmative act, which, as described herein are either not alleged, or are directly contradicted by the existing allegations.  *Cf. Shirley v. Univ. of Idaho, Coll. of Law*, 800 F.3d 1193, 1194 (9th Cir. 2015) (Konzinski, J., concurring) (explaining that while directly contradictory facts in an amended complaint are not a basis for dismissal, they are probative of a plaintiff's credibility, "including possible sanctions under Rule 11.")  Finally, Plaintiff's uniquely verbose 870 paragraph Complaint suggests that Plaintiff held little back in drafting its pleading and that, if Plaintiff had sufficient facts to state a claim against the Outside Investors or BV NGINX, it would have already done so. Because, as here, amendment is likely to be futile, the Outside Investors and BV NGINX respectfully request that the causes of action against them be dismissed with prejudice.

**V.    CONCLUSION**

For the reasons described herein, Defendants respectfully request that the Court dismiss all claims against the Outside Investors and BV NGINX, with prejudice.

Dated: August 28, 2020                    COOLEY LLP


By: /s/  *Patrick P. Gunn*
_____
      Patrick P. Gunn

Attorneys for Defendants
BV NGINX, LLC and E.VENTURES
CAPITAL PARTNERS II, LLC

*(Other counsel on following page)*

1    Dated: August 28, 2020                    WILLKIE FARR & GALLAGHER LLP

2

3                                              By: /s/ *Benedict Y. Hur*
                                                   _____
4                                                  Benedict Y. Hur
                                                   Jayvan E. Mitchell
5
                                               Attorneys for Defendant
6                                              RUNA CAPITAL, INC.

7

8

9        I, Patrick P. Gunn, am the ECF user whose identification and password are being used to

10   file this Motion to Dimiss Complaint.  In compliance with Civil Local Rule 5-1(i)(3), I hereby

     attest that all other signatories listed in this Motion concur in this filing.
11

12   August 28, 2020                           By: _*/s/Patrick P. Gunn*_____
                                                   Patrick P. Gunn
13

14

15

16   232955143

17

18

19

20

21

22

23

24

25

26

27

28