SHANE BRUN (SBN #179079)
sbrun@kslaw.com
QUYEN L. TA (SBN #229956)
qta@kslaw.com
JEANNE A. FUGATE (SBN #236341)
jfugate@kslaw.com
SAMUEL R. DIAMANT (SBN #288738)
sdiamant@kslaw.com
MATTHEW H. DAWSON (SBN #307350)
mdawson@kslaw.com
KING & SPALDING LLP
101 Second Street, Suite 1000
San Francisco, California 94105
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

BRUCE W. BABER (*Admitted Pro Hac Vice*)
bbaber@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30303-1763
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

*Attorneys for Defendants*
Maxim Konovalov, Igor Sysoev,
Andrey Alexeev, Maxim Dounin,
Gleb Smirnoff, and Angus Robertson

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| LYNWOOD INVESTMENTS CY LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>MAXIM KONOVALOV, IGOR SYSOEV, ANDREY ALEXEEV, MAXIM DOUNIN, GLEB SMIRNOFF, ANGUS ROBERTSON, NGINX, INC. (BVI), NGINX SOFTWARE, INC., NGINX, INC. (DE), BV NGINX, LLC, RUNA CAPITAL, INC., EVENTURE CAPITAL PARTNERS II LLC and F5 NETWORKS, INC.,<br><br>Defendants. | Case No. 5:20-cv-03778-LHK<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS BY DEFENDANTS MAXIM KONOVALOV, IGOR SYSOEV, ANDREY ALEXEEV, MAXIM DOUNIN, GLEB SMIRNOFF, ANGUS ROBERTSON; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  February 18, 2021<br>Time:  1:30 p.m.<br>Courtroom 8, 4th Floor<br>The Honorable Lucy H. Koh<br><br>COMPLAINT FILED: June 8, 2020 |

1

## <u>TABLE OF CONTENTS</u>

I.     STATEMENT OF ISSUES TO BE DECIDED ..................................................2

II.   INTRODUCTION ...................................................................................................2

III.  RELEVANT FACTUAL BACKGROUND............................................................2

IV.  LYNWOOD'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS UNDER CALIFORNIA, RUSSIAN, AND U.S. FEDERAL LAW AND SHOULD BE DISMISSED WITH PREJUDICE .........................................................................4

     A.     California and Federal Law Apply to the Analysis .................................4

     B.     All Claims Are Time-Barred Under California or Federal Law.............................5

           1.     All Claims Accrued by No Later Than 2011 ...............................5

           2.     Neither the Discovery Rule Nor Fraudulent Concealment Theories Can Save Lynwood's Stale Claims................................5

           3.     Lynwood Was on Notice by 2015 at the Latest and Failed to Exercise Reasonable Due Diligence .........................................6

V.     LYNWOOD HAS FAILED TO PLEAD ITS CLAIMS WITH PARTICULARITY ........8

VI.  EACH OF LYNWOOD'S INDIVIDUAL CLAIMS FAIL AS A MATTER OF LAW.....8

     A.     All of the Russian Law Claims Fail.......................................8

     B.     The Claims Also Fail Under California and Federal Law .......................9

           1.     Conspiracy (Count 1).................................................9

           2.     Aiding and Abetting (Count 7) Fails Under California Law ....................10

           3.     Lynwood Does Not Plead All of the Requisite Elements for Tortious Interference with Contract (Count 10) Under California Law ................................................10

           4.     Lynwood Does Not State a Claim for Tortious Interference with Prospective Advantage (Count 13) Under California Law.......................11

           5.     Lynwood's Copyright Claims Fail as a Matter of Law (Counts 15-17) ...................................................12

           6.     Lynwood's Lanham Act Claims Fail (Counts 24-25)..............................13

VII. THE INTERNATIONAL DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION ................................................14

i

A.      No General Jurisdiction Exists Because the International Defendants Are Not Domiciled in California ...................................................................................14

B.      No Specific Jurisdiction Exists nor Would the Exercise of Jurisdiction Be Reasonable ...............................................................................................................15

       1.      The Non-Resident Individual Defendants Did Not Purposefully Avail Themselves of, or Direct Activity to, California ...........................15

             a.      The Claims Do Not Arise from or Relate to Forum Contacts.........................................................................................17

             b.      The Exercise of Specific Jurisdiction Would Not Be Reasonable ................................................................................18

VIII.      CONCLUSION......................................................................................................21

ii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
    368 F.3d 1174 (9th Cir. 2004) .......................................................................................14, 17

*Am. Master Lease LLC v. Idanta Partners, Ltd.*,
    225 Cal. App. 4th 1451 (2014) ................................................................................................9

*Andrew Smith Co. v. Paul's Pak, Inc.*,
    No. 08-cv-4802, 2009 WL 10675140 (N.D. Cal. July 29, 2009) ...........................................11

*Anglo Irish Bank Corp., PLC v. Super. Ct.*,
    165 Cal. App. 4th 969 (2008) ................................................................................................18

*Asahi Metal Indus. Co. v. Super. Ct.*,
    480 U.S. 102 (1987) .........................................................................................................20, 21

*Aryeh v. Canon Bus. Sols., Inc.*,
    55 Cal. 4th 1185, 1192 (2013) ................................................................................................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................................2

*Bauman v. DaimlerChrysler Corp.*,
    644 F.3d 909 (9th Cir. 2011) .................................................................................................14

*Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Vill. Square Venture Partners*,
    52 Cal. App. 4th 867 (1997) ..................................................................................................11

*Bristol-Myers Squibb Co. v. Super. Ct.*,
    137 S. Ct. 1773 (2017) ...........................................................................................................19

*Calder v. Jones*,
    465 U.S. 783 (1984) ...............................................................................................................16

*Cline v. Reetz-Laiolo*,
    329 F. Supp. 3d 1000 (N.D. Cal. 2018) ................................................................................12

*CollegeSource, Inc. v. AcademyOne, Inc.*,
    653 F.3d 1066 (9th Cir. 2011) .........................................................................................15, 17

*Core-Vent Corp. v. Nobel Indus. AB*,
    11 F.3d 1482 (9th Cir. 1993) .................................................................................................21

*Credit Suisse Secs. (USA) LLC v. Simmonds*,
    566 U.S. 221, 227, (2012) .......................................................................................................6

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)..............................................................................................14

*Damabeh v. 7-Eleven, Inc.*,
    No. 12-cv-1739, 2013 WL 1915867 (N.D. Cal. May 8, 2013)................................11

*Daniels v. Select Portfolio Servicing, Inc.*,
    246 Cal. App. 4th 1150 (2016) ............................................................................10

*Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*,
    557 F.2d 1280 (9th Cir. 1977) ..............................................................................14

*Deutsch v. Turner Corp.*,
    324 F.3d 692 (9th Cir. 2003) ..................................................................................4

*Digby Adler Group LLC v. Image Rent A Car, Inc.*,
    79 F. Supp. 3d 1095 (N.D. Cal. 2015) ...................................................................13

*Doctors' Co. v. Super. Ct.*,
    49 Cal. 3d 39 (1989) ...............................................................................................9

*Dole Food Co. v. Watts*,
    303 F.3d 1104 (9th Cir. 2002) ...........................................................16, 17, 19, 21

*Dolin v. Facebook, Inc.*,
    C 18-0950 SBA, 2018 WL 2047766, at *5 (N.D. Cal. May 2, 2018) ....................12

*Erickson Productions, Inc. v. Kast*,
    921 F.3d 822 (9th Cir. 2019) ................................................................................13

*Fox v. Ethicon Endo-Surgery, Inc.*,
    35 Cal. 4th 797, 806 (2005) ....................................................................................5

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915, 924 (2011)......................................................................................14

*HK China Grp., Inc. v. Beijing United Auto. & Motorcycle Mfg. Corp.*,
    417 F. App'x 664 (9th Cir. 2011) ..........................................................................16

*Ins. Co. of N. Am. v. Marina Salina Cruz*,
    649 F.2d 1266 (9th Cir. 1981) ........................................................................19, 20

*Khan v. Specialized Loan Servicing LLC*,
    No. 20-CV-03608-LHK, 2020 WL 5257850 (N.D. Cal. Sept. 3, 2020)...................8

*Longhi v. Monawar*,
    No. 14-CV-04554-KAW, 2015 WL 7257996 (N.D. Cal. Nov. 17, 2015) ..............14

*Love v. Associated Newspapers, Ltd.*,
    611 F.3d 601 (9th Cir. 2010) ................................................................................14

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011) ................................................................................14, 17

*Mangini v. Aerojet–Gen. Corp.*,
    230 Cal. App. 3d 1125, 1150 (1991) ....................................................................................5

*Panavision Int'l, L.P. v. Toeppen*,
    141 F.3d 1316 (9th Cir. 1998) ...........................................................................................14

*Pereira v. Dow Chem. Co.*,
    129 Cal. App. 3d 865 (1982) ...............................................................................................5

*Quelimane Co., Inc. v. Stewart Title Guar. Co.*,
    19 Cal. 4th 26 (1998) .........................................................................................................11

*Richard B. LeVine, Inc. v. Higashi*,
    131 Cal. App. 4th 566 (2005) ............................................................................................10

*Rustico v. Intuitive Surgical, Inc.*,
    424 F. Supp. 3d 720 (N.D. Cal. 2019) (Koh, J.) ............................................................4, 5

*San Miguel v. HP Inc.*,
    317 F. Supp. 3d 1075 (N.D. Cal. 2018) .............................................................................11

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) .......................................................................................15, 17

*Sher v. Johnson*,
    911 F.2d 1357 (9th Cir. 1990) .....................................................................................14, 17

*Strasner v. Touchstone Wireless Repair & Logistics, LP*,
    5 Cal. App. 5th 215 (2016) ..........................................................................................16, 17

*Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.*,
    No. 17-cv-02191-SK 2018 WL (N.D. Cal. July 9, 2018) ..................................................11

*Theranos, Inc. v. Fuisz Pharma LLC*,
    876 F. Supp. 2d 1123, 1131 (N.D. Cal. 2012) ....................................................................4

*Terracom v. Valley Nat. Bank*,
    49 F.3d 555 (9th Cir. 1995) .........................................................................................19, 20

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,
    117 F. Supp. 3d 1092 (C.D. Cal. 2015) .............................................................................11

*Utterkar v. Ebix, Inc.*,
    No. 5:14-CV-02250-LHK, 2014 WL 5019921 (N.D. Cal. Oct. 6, 2014).............................5

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
    433 F.3d 1199 (9th Cir. 2006) ...........................................................................................15

v

*Yetter v. Ford Motor Co.*,
 428 F. Supp. 3d 210 (N.D. Cal. 2019) ................................................................5, 6

**Statutes**

Cal. Civ. Proc. Code § 410.10 ......................................................................14

**Authorities**

Federal Rule of Civil Procedure 12(b)(2) ......................................................2

NOTICE OF MOTION AND MOTION TO DISMISS                    CASE NO.  5:20-cv-03778-SK

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on February 18, 2021, at 1:30 p.m. or at such other date as may be agreed upon or ordered, in the United States District Court for the Northern District of California, before the Honorable Lucy H. Koh, United States District Judge, Northern District of California, San Jose Courthouse, Courtroom 8, 4th Floor, 280 South First Street, San Jose, CA, Defendants Maxim Konovalov, Igor Sysoev, Andrey Alexeev, Maxim Dounin, Gleb Smirnoff, and Angus Robertson (collectively, the "Individual Defendants"), will and hereby do move, pursuant to Rules 9(b), 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss with prejudice Counts 1-7, 10, 13-17 and 24-26 of the Complaint of Plaintiff Lynwood Investments CY Limited ("Lynwood") as asserted against them.

The Motion is based on (1) this Notice of Motion, Motion to Dismiss, and Memorandum of Points and Authorities; (2) the Complaint, Dkt. No. 1; (3) documents incorporated by reference in the Complaint (4) the Declarations of Maxim Konovalov, Igor Sysoev, Andrey Alexeev, and Maxim Dounin, filed concurrently herewith; (5) the Declaration of Russian law expert Alexander Muranov, filed concurrently herewith; (6) the Motion to Dismiss of Defendants F5 Networks, Inc., NGINX, Inc. (BVI) and NGINX Software, Inc. (the "F5 Motion") and the associated Request for Judicial Notice, Dkt. Nos. 88 & 89; (7) Defendants E.venture Capital Partners II, LLC, Runa Capital, Inc. and BV NGINX, LLC's Notice of Motion and Motion to Dismiss Plaintiff's Complaint (the "Outside Investors' Motion"), Dkt. No. 90; and (8) any information presented to the Court at hearing.

In addition, the Individual Defendants join in the F5 Motion, Dkt. No. 88, the F5 Request for Judicial Notice, Dkt. No. 89, and the Outside Investors' Motion, Dkt. No. 90.  Where possible, the Individual Defendants do not repeat applicable arguments already made.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   STATEMENT OF ISSUES TO BE DECIDED

1.   Whether Lynwood's claims against the Individual Defendants (Counts 1-7, 10, 13-17 and 24-26) are barred by the statute of limitations given that the claims date back to 2001 and that Lynwood had knowledge of those claims no later than January 2015?

2.   Whether Lynwood has pleaded its allegations against the Individual Defendants, which sound in fraud, with the particularity required by Rule 9(b)?

3.   Whether Lynwood has failed to state a claim against the Individual Defendants under Rule 12(b)(6) for Counts 1-7, 10, 13-17 and 24-26?

4.   Whether the Court lacks personal jurisdiction over Maxim Konovalov, Igor Sysoev, Andrey Alexeev, and Maxim Dounin (the "International Defendants") because the defendants are Russian citizens, the dispute is premised on conduct in Russia, and many of the claims are governed by Russian law?

## II.   INTRODUCTION

The Individual Defendants respectfully request that all of the claims brought against them be dismissed under Rules 9(b) and 12(b)(6) because: (1) the claims are time-barred, (2) the claims are not pleaded with particularity despite sounding in fraud, and (3) the individual claims do not state a claim under the applicable Russian, California, or federal law.[1]

The International Defendants—Maxim Konovalov, Igor Sysoev, Andrey Alexeev, and Maxim Dounin—also request dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2) because this Court cannot reasonably exercise personal jurisdiction over them.

## III.   RELEVANT FACTUAL BACKGROUND[2]

The claims against the Individual Defendants arise from Sysoev's creation of the NGINX Software, beginning in 2001, at a time when he was a systems administrator for Rambler.

---

[1]   Given the numerous claims filed by Lynwood, attached as Appendix A is a chart laying out which claims are asserted against which of the Individual Defendants and the relevant defenses to each claim.

[2]   The Individual Defendants do not admit the truth of the allegations in the Complaint, but take them to be true for purposes of this Motion where required to do so.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2

1   Compl. ¶ 11.  In 2004, while still at Rambler, Sysoev published NGINX as open source software,

2   making it free for anyone in the world to download.  *Id.* ¶ 21.  The open source license for the

3   NGINX software publicly released on October 4, 2004, unambiguously identifies Igor Sysoev as

4   the sole copyright holder.  Dkt. No. 89-1.[3]  Lynwood alleges that NGINX "was originally

5   created as a scaling tool for Rambler's Internet-related properties and services," and that the

6   open source release occurred "without authorization from Rambler."  Compl. ¶¶ 164-65.

7   Lynwood admits that the "open source NGINX Software *was not a secret*."  *Id.* ¶ 215.

8       After NGINX's public release, its popularity surged "among operators of large Web sites

9   in Russia" and "around the world."  Compl. ¶¶ 21, 28.  Lynwood alleges that Rambler

10  recognized the value of NGINX and paid Sysoev "bonuses and outsized raises" for his work

11  developing the popular software for Rambler.  *See id.* ¶ 191.  It also claims that the development

12  of NGINX required "extensive assistance from other Rambler employees, using Rambler

13  equipment and software."  *Id.* ¶ 13.

14      Despite Rambler's purported payments to Sysoev and despite the supposedly extensive

15  use of its resources, Lynwood claims that Sysoev and others concealed the development and

16  value of NGINX with the ultimate goal of selling it to a publicly traded company.  Compl. ¶ 2.

17  Sysoev and Konovalov separated from Rambler in 2011.  Despite the alleged conspiracy to

18  conceal the commercial value of NGINX, Lynwood states that Sysoev and Konovalov openly

19  informed Rambler that they were leaving "to form a new company that would provide support

20  services to the existing open source NGINX software."  Compl. ¶ 281.   Lynwood also alleges

21  that Konovalov, while separating from Rambler, submitted forms stating that Rambler did not

22  own NGINX and estimating that it was not a valuable investment.  *Id.* ¶¶ 289-90.

23      Rambler did not take any steps to protect its supposed ownership interests in the NGINX

24  Software until January 2015.  Then, "Sysoev appeared in industry specific media outlets to give

25  interviews concerning his authorship of the open-source NGINX Software."  Compl. ¶ 471.

26  Based on those public statements, Lynwood and Rambler entered into an Assignment Agreement

27

28  [3]   The Individual Defendants join in the F5 Entities' Request for Judicial Notice of the open
       source license for the NGINX Software.  (Dkt. No. 89.)

3

1   "assigning Rambler's employment and intellectual property rights to Lynwood." *Id.* ¶ 471.

2   Lynwood admits that the assignment was executed because of concerns that Sysoev or

3   Konovalov may "claim an ownership right to the NGINX software or had previously engaged in

4   any illicit or wrongful conduct vis-à-vis their employment obligations or Russian law as it

5   concerned Rambler." *Id.* ¶ 471.  Lynwood does not identify any other actions that it or Rambler

6   took to investigate their purported concerns or to enforce their claimed rights at that time.

7           More than four years later, in the spring of 2019, F5 Networks Inc. (a leading multi-cloud

8   application service company headquartered in Seattle) acquired the NGINX companies for $670

9   million.  Compl. ¶ 55, 404.  Lynwood claims that after the acquisition, in April 2019, a

10  "whistleblower" who had worked at Rambler from August 2007 to June 2009 provided

11  information to Lynwood about the claims in this lawsuit.  *Id.* ¶¶ 203-04, 455-467.  Only then did

12  Lynwood and Rambler supposedly undertake a forensic investigation of servers that had always

13  been in Rambler's possession.  *Id.* ¶ 475.  Lynwood filed this lawsuit on June 8, 2020.

14  **IV.   LYNWOOD'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS
          UNDER CALIFORNIA, RUSSIAN, AND U.S. FEDERAL LAW AND SHOULD BE
15        DISMISSED WITH PREJUDICE**

16          Based on Lynwood's *own allegations*, it was well aware of the claims at issue in this

17  lawsuit—and the central question of the ownership of the NGINX Software—by January 2015 at

18  the latest, when it entered into an assignment with Rambler for the right to pursue those claims.

19  Given this judicial admission, Lynwood's claims are time-barred under California, Russian, and

20  federal law and must be dismissed with prejudice.

21          **A.      California and Federal Law Apply to the Analysis**

22          As set forth in Appendix A, Lynwood alleges sixteen causes of action against the

23  Individual Defendants, some of which are expressly brought under Russian law.  Under the

24  applicable conflict-of-law analysis, however, the applicable statutes of limitations are supplied

25  by California law as to most of the claims and by federal law as to the copyright infringement

26  claims.  *Deutsch v. Turner Corp.*, 324 F.3d 692, 716-17 (9th Cir. 2003); *see also Rustico v.*

27  *Intuitive Surgical, Inc.*, 424 F. Supp. 3d 720, 728 (N.D. Cal. 2019) (Koh, J.) (quoting *Theranos,*

28  *Inc. v. Fuisz Pharma LLC*, 876 F. Supp. 2d 1123, 1131 (N.D. Cal. 2012)).

4

1

2

**B.      All Claims Are Time-Barred Under California or Federal Law**

**1.      All Claims Accrued by No Later Than 2011**

3

With respect to Lynwood's cause of action for copyright infringement, as explained in

4

Defendant F5's motion, all claims are time-barred under federal law because the three-year

5

statute began to run in 2004 when Sysoev published the NGINX code as open source without

6

permission, repudiating Rambler's ownership.  F5 Motion, Dkt. No. 88 at 19-20.  The other

7

claims accrued by no later than 2011, when Konovalov and Sysoev left Rambler and openly

8

stated that they intended to form their own company commercializing NGINX.  These claims,

9

none of which has longer than a four-year statute of limitations under California law,[4] expired

10

long before Lynwood filed this Complaint.

11

12

**2.      Neither the Discovery Rule Nor Fraudulent Concealment Theories Can Save Lynwood's Stale Claims**

13

14

Neither "the Discovery Rule" nor the doctrine of fraudulent concealment applies in this

case.  Both doctrines require the plaintiff to have undertaken a reasonable, diligent investigation.

15

16

"Under the discovery rule, the accrual of a cause of action is delayed 'until the plaintiff

discovers, or has reason to discover, the cause of action.'"  *Rustico*, 424 F. Supp. 3d at 737

17

(quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005)).  Under the discovery

18

rule, "[s]ubjective suspicion is not required.  If a person becomes aware of facts which would

19

make a reasonably prudent person suspicious, he or she has a duty to investigate further and is

20

charged with knowledge of matters which would have been revealed by such an investigation."

21

*Utterkar v. Ebix, Inc.*, No. 5:14-CV-02250-LHK, 2014 WL 5019921, at *6 (N.D. Cal. Oct. 6,

22

2014) (quoting *Mangini v. Aerojet–Gen. Corp.*, 230 Cal. App. 3d 1125, 1150 (1991)).  Whether

23

the discovery rule applies is a question of fact, but if "reasonable minds can draw only one

24

conclusion from the proffered evidence," the application of the discovery rule becomes a

25

question of law.  *Pereira v. Dow Chem. Co.*, 129 Cal. App. 3d 865, 874 (1982).

26

"The doctrine of fraudulent concealment tolls the statute of limitations where a

27

28

---

[4]    The Individual Defendants concur with the Outside Investors' analysis of the applicable limitations periods (Outside Investors' Motion, Dkt. No. 90 at 7-8, n. 4), and join in those arguments.

5

1   defendant, through deceptive conduct, has caused a claim to grow stale." *Yetter v. Ford Motor*

2   *Co*., 428 F. Supp. 3d 210, 222–23 (N.D. Cal. 2019) (quoting *Aryeh v. Canon Bus. Sols., Inc.*, 55

3   Cal. 4th 1185, 1192 (2013)).  Even if there were fraudulent concealment, "the tolling ceases

4   when those facts are, or should have been, discovered by the plaintiff." *Id.* (quoting *Credit*

5   *Suisse Secs. (USA) LLC v. Simmons*, 566 U.S. 221, 227, (2012)).

>        3.    **Lynwood Was on Notice by 2015 at the Latest and Failed to Exercise
>              Reasonable Due Diligence**

8   Based on the allegations in the Complaint and on the public statements by Igor Sysoev—

9   including an express assertion of his copyright in the software—Lynwood should have been

10  aware of its claims by 2015 at the absolute latest.  It failed to investigate the matter then, causing

11  the statute of limitations to cease tolling:

- **2004**:  Sysoev published the NGINX software as an open source work,
  supposedly without permission.  (Comp. ¶ 21.)  The open source license for
  the October 4, 2004 public release of the NGINX software contains a
  copyright notice identifying only Igor Sysoev as the holder:

```
/*
 * Copyright (C) 2002-2004 Igor Sysoev
 *
 * Redistribution and use in source and binary forms, with or without
 * modification, are permitted provided that the following conditions
 * are met:
 * 1. Redistributions of source code must retain the above copyright
 *    notice, this list of conditions and the following disclaimer.
 * 2. Redistributions in binary form must reproduce the above copyright
 *    notice, this list of conditions and the following disclaimer in the
 *    documentation and/or other materials provided with the
distribution.
```

    Dkt. No. 89-1.

- **2007**: NGINX had been "embrace[d]" by the open source community and it
  became viable as a web server solution.  Compl. ¶ 172.

- **2010**: NGINX Software had a six percent market share among web servers.
  Compl. ¶ 173.  Lynwood alleges that Rambler paid Sysoev bonuses and granted
  him "outsized raises" specifically in recognition of the value of NGINX.  Compl.
  ¶ 191.  Lynwood further alleges that Rambler provided Sysoev with "extensive
  support from other Rambler employees," equipment, and software to develop
  NGINX.  Compl. ¶ 13.

- **2011**:  Konovalov and Sysoev leave Rambler.  Compl. ¶ 83, 97.  By that time,
  Sysoev had authored ninety-seven percent of the NGINX Software.  *Id.* ¶ 174.

The companies NGINX Software, Inc. and NGINX, Inc. (BVI) are formed. *Id.* ¶ 273.  Lynwood alleges that, upon their departure from Rambler, Sysoev and Konovalov informed the company of their plans to commercialize NGINX. Compl. ¶ 281.  Konovalov also indicated that NGINX was not owned by Rambler.  Compl. ¶¶ 288-92.

- **2012**: Sysoev gives an interview about NGINX.  Compl. ¶ 184.  In the article reporting the interview, Sysoev is quoted as saying that in 2012 NGINX had "just started as a commercial entity," and that NGINX was "making our first money" from the software.  Dkt. No. 89-2.

- **January 2015**: "[A]fter Sysoev appeared in industry specific media outlets to give interviews concerning his authorship of the open-source NGINX Software," Lynwood and Rambler  entered into an Assignment Agreement.  Compl. ¶ 471. The Agreement assigned "Rambler's employment and intellectual property rights to Lynwood *for enforcement in the event Sysoev or Konovalov would ever claim an ownership right to the NGINX Software or had previously engaged in any illicit or wrongful conduct vis-à-vis their employment obligations or Russian law*."  *Id.* (emphasis added).

Thus, Lynwood and Rambler admit that, by no later than January 2015 (more than four years before Lynwood filed this lawsuit), they anticipated claims relating to the ownership of the NGINX software and Konovalov's and Sysoev's employment obligations.

Lynwood's claims of concealment do not suffice to toll the statute of limitations.  First, Lynwood's factual allegations establish that Rambler was aware of NGINX and its potential value.  Lynwood alleges that Rambler provided Sysoev "extensive assistance" in developing NGINX and provided Sysoev with salary increases and bonuses tied to NGINX.  Compl. ¶¶ 13, 191.  Lynwood also alleges that Sysoev and Konovalov told Rambler of their plans to commercialize NGINX independently and indicated in separation paperwork that NGINX was not owned by Rambler.  Compl. ¶¶ 281, 288-92.  The Individual Defendants dispute portions of those allegations, but Lynwood is bound by its allegations.  Second, Rambler's subjective awareness of NGINX is irrelevant.  By the time Lynwood and Rambler entered into the Assignment Agreement in January 2015, they were on notice of the very claims asserted in this lawsuit and should have conducted reasonable due diligence.  Their purported failure to investigate until after F5 purchased NGINX in a multi-million dollar deal indicates that Lynwood's delay in asserting these claims was not triggered by any "whistleblower," but by a desire to reap an undeserved windfall from the Individual Defendants' years of work.  Because

7

Lynwood can offer no allegations that could establish tolling or excuse the application of the relevant statutes of limitations, any amendment would be futile, and the Complaint should be dismissed with prejudice.  *E.g., Khan v. Specialized Loan Servicing LLC*, No. 20-CV-03608-LHK, 2020 WL 5257850, at *5 (N.D. Cal. Sept. 3, 2020).[5]

## V.   LYNWOOD HAS FAILED TO PLEAD ITS CLAIMS WITH PARTICULARITY

The Individual Defendants join in the arguments of the F5 Entities and Outside Investors that the Complaint sounds in fraud, that Lynwood must plead its claims with specificity, and that Lynwood has failed to do so.  F5 Motion at 3-7; Outside Investors' Motion at 9-10.  Thus, all of claims asserted against the Individual Defendants, namely Counts 1-7, 10, 13-17 and 24-26 fail to meet the heightened pleading standard of Rule 9(b).

## VI.   EACH OF LYNWOOD'S INDIVIDUAL CLAIMS FAIL AS A MATTER OF LAW

During the parties' Rule 26(f) conference, Lynwood's counsel agreed that Counts 2 through 6 were governed by Russian law, and that the copyright and trademark claims (Counts 15-17 and 24-25) were governed by U.S. federal law (except as to copyright ownership issues). The Individual Defendants further agree that there is no discernable conflict between Russian and California law with respect to unjust enrichment.  As to the remaining claims, Lynwood and the Individual Defendants do not agree regarding the governing law.  This dispute does not matter, however, as all claims should be dismissed under the laws of both jurisdictions.

### A.   All of the Russian Law Claims Fail

As described in the Declaration of Alexander Muranov ("Muranov Decl."), none of the following claims may proceed under Russian law.

- **Count 1 (Conspiracy)**: Not recognized under Russian law (Muranov Decl.¶¶ 18, 67-69, 74);

- **Counts 2 to 4 (Breach of Russian Employment Contracts)**: Employer (Rambler) cannot assign such claims to a third party (Lynwood) (*Id.*¶¶ 15, 20-25);

- **Counts 5-6 (Breach of Heightened Duty under the Russian Civil Code)**: Konovalov, Smirnoff, and Sysoev are not subject to such heightened duties under the governing statute, which is limited in scope (*Id.* ¶¶ 16, 26-51);

---

[5]   The claims are similarly barred under Russian law. Muranov Decl. ¶¶ 19, 90-116.

- **Count 7 (Aiding and Abetting), Count 10 (Tortious Interference with Contract); Count 13 (Tortious Interference with Prospective Economic Advantage), Count 14 (Fraud):** These claims, too, are not recognized under Russian law.  (*Id.* ¶¶ 17-18, 52-66, 70-89.)

### B. The Claims Also Fail Under California and Federal Law

For the reasons set forth in the other defendants' motions to dismiss, Lynwood fails to state a claim under California and Federal law as to each of the individual claims against the Individual Defendants.  *See* F5 Motion, Dkt. No. 88 at 7-35; Outside Investors' Motion, Dkt. No. 90 at 7-25.  The Individual Defendants join in those arguments where applicable and provide additional arguments as necessary concerning the specific allegations against them.

### 1. Conspiracy (Count 1)

Conspiracy is not a standalone cause of action.  In addition, Defendants Alexeev, Dounin, and Robertson cannot be liable for conspiring to breach a duty they did not owe.  *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1474 (2014); *Doctors' Co. v. Super. Ct.*, 49 Cal. 3d 39, 44 (1989) (noting that even participating in an agreement resulting in injury does not give rise to civil conspiracy if the participant "was not personally bound by the duty violated by the wrongdoing").  Lynwood's conspiracy claim as to Alexeev and Dounin, while not clearly pleaded, appears to be that they are in some way liable for the alleged breaches of employment-based duties that Konovalov, Sysoev, and Smirnoff owed to Rambler as employees. Compl. ¶¶ 530, 532, 542.  But Lynwood acknowledges that Alexeev was not a Rambler employee, but rather a "third-party acquaintance" of Konovalov, Sysoev, and Smirnoff.  Compl. ¶ 82.  Dounin left Rambler in 2007.  Compl. ¶ 82.  He thus owed no duty to Rambler by the time Konovalov allegedly began to organize the conspiracy in 2008.  *See* Compl. ¶¶ 219-20.  Neither Alexeev nor Dounin owed Rambler any fiduciary duty or duty of loyalty during the relevant time period and thus cannot be liable for conspiring to breach any such duties.  *Am. Master Lease*, 225 Cal. App. 4th at 1474.  As to Robertson, who joined NGINX in late 2012, Compl. ¶ 632, it is even less clear what acts Lynwood claims that he took in furtherance of the alleged conspiracy to have Konovalov, Sysoev, and Smirnoff breach their duties to Rambler.  Regardless, Lynwood does not contend that Robertson himself owed any duty to Rambler.  As a result, he cannot be

9

liable for conspiring to breach any such duty.

Further, Robertson cannot be liable for any torts that were allegedly committed before he joined the purported conspiracy.  *See Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1173 (2016) (granting demurrer to conspiracy claims with prejudice because alleged misrepresentations were made *before* defendants could have agreed to defraud plaintiffs). Lynwood's conspiracy allegations date back to 2008, but Lynwood admits that Robertson was not involved with NGINX until 2012.  Compl. ¶¶ 385, 530, 547.  Because Lynwood's conspiracy claim is premised on acts that occurred before 2012, Robertson cannot be liable for those acts.

### 2.   Aiding and Abetting (Count 7) Fails Under California Law

First, because the Rambler employees owed no heightened duty under Russian law, Lynwood cannot establish that they breached such duty.  *See Richard B. LeVine, Inc. v. Higashi*, 131 Cal. App. 4th 566, 574 (2005) (affirming that a claim premised on aiding and abetting a breach of fiduciary fails if it is determined that there was no breach of fiduciary duty).

Second, Alexeev and Dounin join in the arguments of the F5 Entities and Outside Investors that Lynwood cannot plead "aiding and abetting" liability against defendants whose only involvement is alleged to have occurred *after* the breaches took place.  F5 Motion, Dkt. No. 88 at 26-29; Outside Investors' Motion, Dkt. No. 90 at 13-16.  The only concrete actions by Alexeev and Dounin that Lynwood alleges occurred long after the others had left Rambler and already had committed their breaches.  Compl. ¶ 199 (Alexeev "focused on business development and infrastructure for the NGINX Enterprise") & ¶ 200 (Dounin "assisted Sysoev on NGINX-related software coding by contributing to the code base after Sysoev left Rambler").

### 3.   Lynwood Does Not Plead All of the Requisite Elements for Tortious Interference with Contract (Count 10) Under California Law

Lynwood alleges in cursory fashion that Sysoev had "ongoing obligations" to Rambler even after his departure from the company in 2011, that both Konovalov and Robertson had knowledge of Sysoev's obligations to Rambler under his employment agreement(s), that Sysoev breached his ongoing obligations, and that Rambler was harmed.  Compl. ¶¶ 628-30, 634, 639-40.  But "[a] cause of action for relief for intentional interference with contractual relations

1   requires an underlying enforceable contract" and more than non-conclusory facts showing

2   defendant was aware of the contract. *Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Vill.*

3   *Square Venture Partners*, 52 Cal. App. 4th 867, 879 (1997) (affirming dismissal of interference

4   claim where plaintiff failed to plead underlying enforceable contract); *Sun Grp. U.S.A. Harmony*

5   *City, Inc. v. CRRC Corp. Ltd.*, No. 17-cv-02191-SK 2018 WL, 10689420, at *11 (N.D. Cal. July

6   9, 2018) (dismissing interference claim where plaintiff failed to plead specific facts showing

7   defendants' knowledge of the contract).  Lynwood does not provide any factual support for the

8   allegations that Sysoev breached any ongoing obligations to Rambler or that Konovalov and

9   Robertson had knowledge of those ongoing obligations.  As a result, it cannot maintain this

10  claim.

11         Furthermore, Lynwood does not allege any "intentional acts" by Konovalov or Robertson

12  that were "designed to induce breach or disruption" of any contract.  *San Miguel v. HP Inc.*, 317

13  F. Supp. 3d 1075, 1094 (N.D. Cal. 2018); *see also Andrew Smith Co. v. Paul's Pak, Inc.*, No. 08-

14  cv-4802, 2009 WL 10675140, at *3 (N.D. Cal. July 29, 2009) (plaintiff could not state a claim

15  for tortious interference where conduct did not appear "designed to cause a breach" of contract).

16  Nor does Lynwood allege that any acts *caused* Sysoev to breach his employment agreement(s)

17  with Rambler.  *Quelimane Co., Inc. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 56 (1998)

18  (plaintiff must allege that breach was "a necessary consequence" of defendant's interfering act).

19         **4.      Lynwood Does Not State a Claim for Tortious Interference with**
20                 **Prospective Advantage (Count 13) Under California Law**

21         To state a claim for interference with prospective business advantage, a plaintiff must

22  identify *specific business opportunities* that were lost: "[a]llegations that a defendant interfered

23  with a relationship with an 'as yet unidentified' customer will not suffice." *UMG Recordings,*

24  *Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1117–18 (C.D. Cal. 2015) (citation

25  omitted); *see also Damabeh v. 7-Eleven, Inc.,* No. 12-cv-1739, 2013 WL 1915867, at *10 (N.D.

26  Cal. May 8, 2013) (dismissing claims where "Plaintiff does not specifically identify . . .

27  employees and customers" subject to the interference).  Lynwood does not identify any specific

28  "relationships or opportunities" with which any defendants are "alleged to have interfered."

NOTICE OF MOTION AND MOTION TO DISMISS                    CASE NO.  5:20-cv-03778-SK

*Damabeh*, 2013 WL 1915867, at *10.  The Complaint alleges only generally that the NGINX software was valuable, and that the alleged interference deprived Rambler of that value.  *See* Compl. ¶ 666 ("Rambler[] had a prospective economic advantage in the form of the NGINX Enterprise" which "Rambler could have and would have sold for a massive profit"); Compl. ¶ 667 ("the NGINX Enterprise" was valuable and "could be sold for a massive profit"). These allegations are not sufficient to state a claim.

A plaintiff bringing a claim for tortious interference with prospective economic advantage must also allege "the *probability* of future economic rewards."  *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1033 (N.D. Cal. 2018) (emphasis added); *see also Dolin v. Facebook, Inc.*, No. C 18-0950 SBA, 2018 WL 2047766, at *5 (N.D. Cal. May 2, 2018) (dismissing claim for tortious interference with prospective economic advantage without leave to amend where plaintiff alleged only "[aspiration] to form an economically beneficial relationship . . . in the future—not that one currently exists or is likely to come into existence").  While the Complaint cursorily recites some elements of tortious interference with prospective economic advantage, Lynwood has not alleged a *reasonable probability* of future economic rewards.  Lynwood has not alleged that it had an "existing relationship" with an identified buyer of NGINX.  *See Cline*, 329 F. Supp. 3d at 1033.  Indeed, Lynwood cannot allege that Rambler was even marketing NGINX or even investigating the possibility of selling NGINX.  To the contrary,  Lynwood states—despite numerous indications otherwise—that Rambler was not aware that NGINX had any value.  *See* Compl. ¶ 684 ("Rambler was never on notice, until the whistleblower came forward, that is had such a valuable suite of assets.").  The lack of any existing relationship with an identified buyer forecloses Lynwood's claim for tortious interference with prospective business opportunity.

### 5.   Lynwood's Copyright Claims Fail as a Matter of Law (Counts 15-17)

In addition to the deficiencies identified by the F5 Entities and the Outside Investors, Lynwood faces additional burdens when attempting to impose liability on individuals.  In order to assert a viable claim of liability for copyright infringement against the Individual Defendants, moreover, Lynwood must allege and prove that, as to each of the Individual Defendants, there is

a factual basis for imposing on him liability for the acts undertaken by or on behalf of the corporate entity defendants.  Such liability can be imposed in several different fact scenarios.  *See, e.g.*, *Erickson Productions, Inc. v. Kast*, 921 F.3d 822, 829 (9th Cir. 2019) (vacating verdict against individual who did not have both (1) right and ability to supervise infringing conduct and (2) a direct financial interest in infringing activity); *Digby Adler Group LLC v. Image Rent A Car, Inc.*, 79 F. Supp. 3d 1095, 1104 (N.D. Cal. 2015) (corporate officers and directors liable for torts they authorize or direct or in which they participate); *see generally* 3 Nimmer on Copyright § 12.04[A][1].  Lynwood, however, identifies in the Complaint no such basis—plausible or otherwise—for imposing personal liability on any of the six Individual Defendants for any acts of copyright infringement, let alone any alleged such acts within the three-year limitations period.  Compl. ¶¶ 713-21, 719-34, 742-46 (collective and generalized allegations of infringement by "Defendants").

### 6.   Lynwood's Lanham Act Claims Fail (Counts 24-25)

The F5 Motion outlines in detail the numerous deficiencies of Lynwood's Lanham Act claims, including the long delay in asserting such claims despite the NGINX entities' widespread public use of the NGINX mark and the lack of any use by Rambler or Lynwood of the mark.  F5 Motion, Dkt. No. 88 at 8-15.

In addition, as is true with respect to Lynwood's allegations of copyright infringement as to the Individual Defendants, Lynwood must allege facts that would support its claims of liability for trademark infringement and false advertising against the individuals personally.  As with copyright, liability for acts of trademark infringement committed by or on behalf of a corporate or other entity may be imposed on an individual only if there is an appropriate factual basis therefor.  *See generally, e.g.*, 4 McCarthy on Trademarks & Unfair Competition § 25:24 (5th ed.) ("To be personally liable, corporate officers or directors . . . must personally take part in infringing activities or specifically direct employees to do so.")  Lynwood's Complaint contains no allegations to support its claims of trademark infringement or false advertising against any of the six Individual Defendants, as to each of whom it is facially implausible that he personally "used" the NGINX marks.  Compl. ¶¶ 851-53, 859 (collective and generalized allegations of use

NOTICE OF MOTION AND MOTION TO DISMISS                    CASE NO.  5:20-cv-03778-SK

1    of NGINX marks and of infringement by "Defendants").

2    **VII.    THE INTERNATIONAL DEFENDANTS ARE NOT SUBJECT TO PERSONAL**
3    **        JURISDICTION**

4            Finally, the Court lacks personal jurisdiction over the four International Defendants.

5    Federal courts generally apply the jurisdictional law of the state in which the district court sits.

6    *See Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1320 (9th Cir. 1998).  The exercise of

7    jurisdiction must satisfy the applicable state long-arm statute and must comport with federal due

8    process.  *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 919 (9th Cir. 2011), *rev'd on other*

9    *grounds by Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014).  The California long-arm

10   statute is coextensive with federal due process requirements, and "permits the exercise of

11   personal jurisdiction to the full extent permitted by due process."  *Id.*; *see* Cal. Civ. Proc. Code

12   § 410.10.  The plaintiff bears the burden of demonstrating that jurisdiction is appropriate.  *Love*

13   *v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010).  The court "may not assume

14   the truth of allegations in a pleading which are contradicted by affidavit."  *Data Disc, Inc. v. Sys.*

15   *Tech. Assoc., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977); *accord Mavrix Photo, Inc. v. Brand*

16   *Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).  Ultimately, the plaintiff must establish

17   jurisdiction over each defendant, *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990), and over

18   each claim.  *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir.

19   2004).  This Court has neither general nor specific jurisdiction over the four International

20   Defendants.

21          **A.    No General Jurisdiction Exists Because the International Defendants Are Not**
            **      Domiciled in California**

22          The United States Supreme Court has recently clarified that "only a limited set of

23   affiliations with a forum will render a defendant amenable to" general jurisdiction.  *See Daimler*

24   *AG v. Bauman*, 571 U.S. 117, 137 (2014).  For individual defendants, as opposed to corporate

25   defendants, the "paradigm forum for the exercise of general jurisdiction is the individual's

26   domicile."  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quoting *Goodyear Dunlop Tires*

27   *Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).  Domicile is the "place where one resides

28   with the intent to remain indefinitely."  *Longhi v. Monawar*, No. 14-CV-04554-KAW, 2015 WL

                                                   14

7257996, at *3 (N.D. Cal. Nov. 17, 2015).

Lynwood alleges that Sysoev, Konovalov, Alexeev, and Dounin are "citizen[s] of the Russian Federation" who reside in Moscow, Russia.  *See* Compl. ¶¶ 58-61.  At present, three of the International Defendants—Sysoev, Konovalov, and Dounin—maintain residences in Russia and consider Russia to be their permanent home.  *See* Decl. of Igor Sysoev in Support of Motion to Dismiss ("Sysoev Decl.") ¶ 2; Decl. of Maxim Konovalov in Support of Motion to Dismiss ("Konovalov Decl.") ¶ 2; Decl. of Maxim Dounin in Support of Motion to Dismiss ("Dounin Decl.") ¶ 2.  The fourth International Defendant, Alexeev, resided in Russia at all relevant times but has since relocated to Germany.  *See* Decl. of Andrey Alexeev in Support of Motion to Dismiss ("Alexeev Decl.") ¶¶ 2.  Accordingly, all four are domiciled in jurisdictions other than California.  Exercising general jurisdiction over them would thus be inappropriate.

### B.   No Specific Jurisdiction Exists nor Would the Exercise of Jurisdiction Be Reasonable

In the absence of general jurisdiction, a court may still exercise specific jurisdiction over a claim if (1) the defendant purposefully directs his activities to or purposefully avails himself of the privilege of conducting activities in the forum; (2) the claim arises from the defendant's forum-related activities; *and* (3) the exercise of jurisdiction comports with fair play and substantial justice, *i.e.*, it must be reasonable.  *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205–06 (9th Cir. 2006).  If the plaintiff satisfies the first two prongs, the defendant may still establish that the exercise of jurisdiction would not be reasonable.  *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).  None of these three prongs are satisfied as to the International Defendants.

### 1.   The Non-Resident Individual Defendants Did Not Purposefully Avail Themselves of, or Direct Activity to, California

Specific jurisdiction is not appropriate because Lynwood cannot establish that the four International Defendants purposefully availed themselves of, or directed activity to, the State of California.

Claims sounding in contract are assessed under a "purposeful availment" analysis, which focuses on "evidence of the defendant's actions in the forum, such as executing or performing a

15

1    contract there." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

2    "The relevant time period for measuring the nature and quality of a nonresident defendant's

3    contacts with the forum for purposes of specific jurisdiction is at the time the plaintiff's cause of

4    action arose." *Strasner v. Touchstone Wireless Repair & Logistics, LP*, 5 Cal. App. 5th 215, 226

5    (2016).

6           First, Sysoev and Konovalov have had limited contact with the State of California—

7    particularly at the time the contract claims asserted against them arose.  Both Sysoev and

8    Konovalov are Russian citizens who resided in Russia at all relevant times.  *See* Compl. ¶¶ 58-

9    59; Sysoev Decl. ¶¶ 2, 4-6; Konovalov Decl. ¶¶ 2, 4-5.  Both were employed by Rambler in

10   Russia and were later employed by NGINX Ltd.—a Russian entity with its offices in Moscow,

11   Russia.  Sysoev Decl. ¶¶ 4-6; Konovalov Decl. ¶ 5.  Although both Sysoev and Konovalov

12   occasionally traveled to California for business, that travel predominantly occurred *after* they

13   separated from Rambler and after any alleged breach of their Rambler contracts would have

14   arisen.  Second, the contract claims against Sysoev and Konovalov arise from their various

15   employment agreements with Rambler.  *See* Compl. ¶¶ 559, 566 & n.2, 570.  Nothing about the

16   contracts, the parties' negotiations, or their course of dealing, establishes purposeful availment.

17   *HK China Grp., Inc. v. Beijing United Auto. & Motorcycle Mfg. Corp.*, 417 F. App'x 664, 666

18   (9th Cir. 2011); Sysoev Decl. ¶ 4; Konovalov Decl. ¶ 4.  Third, neither Sysoev nor Konovalov

19   deliberately availed themselves of California investors or customers as the Complaint suggests.

20   Once NGINX became sufficiently popular, investors independently sought out Sysoev.  Sysoev

21   Decl. ¶ 9; Konovalov Decl. ¶ 6.  NGINX had customers all over the world, a substantial portion

22   of which were international.  Konovalov Decl. ¶ 11.  In general, NGINX intended to target a

23   broad array of global customers, not customers in California specifically.  *See* Alexeev Decl. ¶¶

24   7, 12.  Accordingly, Sysoev and Konovalov did not purposefully avail themselves of California.

25          For claims sounding in tort, the purposeful availment requirement is analyzed under the

26   "effects" test derived from *Calder v. Jones*, 465 U.S. 783 (1984).  *Dole Food Co. v. Watts*, 303

27   F.3d 1104, 1111 (9th Cir. 2002).  "The 'effects' test requires that the defendant allegedly have

28   (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the

NOTICE OF MOTION AND MOTION TO DISMISS                    CASE NO.  5:20-cv-03778-SK

1   defendant knows is likely to be suffered in the forum state." *Id.*  First , Lynwood bears the

2   burden of establishing an intentional act by each International Defendant in relation to each

3   claim.  *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011); *Action*

4   *Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004); *Sher v.*

5   *Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990).  As above, the "relevant time period for

6   measuring the nature and quality of a nonresident defendant's contacts with the forum for

7   purposes of specific jurisdiction is at the time the plaintiff's cause of action arose." *Strasner v.*

8   *Touchstone Wireless Repair & Logistics, LP*, 5 Cal. App. 5th 215, 226 (2016).  Second,

9   Lynwood must show that the intentional act was "expressly aimed" at California.  *See*

10  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 807 (9th Cir. 2004).  That requirement

11  is satisfied when "the defendant is alleged to have engaged in wrongful conduct targeted at a

12  plaintiff whom the defendant knows to be a resident of the forum state." *Dole Food Co.*, 303

13  F.3d at 1111.  Neither Lynwood nor Rambler is a resident of the forum state.  There is also no

14  indication that Lynwood or Rambler conduct any business activities in California.  Third,

15  Lynwood must show that the intentional acts expressly aimed at California were likely to cause

16  harm suffered in the forum state.  Courts have routinely "relied in significant part on the location

17  of a corporation's principal place of business when determining the location of its economic

18  injury." *Id.* at 1113–14.  Neither Lynwood nor Rambler maintain a principal place of business in

19  California.  Courts have also recognized the possibility that harm may be suffered "where the

20  bad acts occurred." *Id.* at 1113.  In those instances, however, the plaintiff has generally

21  demonstrated a "jurisdictionally significant" and foreseeable harm to its business in the forum.

22  *See Mavrix Photo, Inc.*, 647 F.3d at 1222 (concluding that the plaintiff suffered foreseeable

23  economic loss in a jurisdiction other than its principal place of business because its "primary

24  business" of selling photographs to magazines was harmed in that jurisdiction).  Neither

25  Lynwood nor Rambler has alleged any business operations in California that were harmed by the

26  International Defendants' alleged conspiracy.  Accordingly, any harm to Lynwood or Rambler

27  from the International Defendants' actions was not suffered in California.

28
                      a.       **The Claims Do Not Arise from or Relate to Forum Contacts**

                                              17

1    Specific jurisdiction is also not appropriate because the claims asserted do not arise from

2 or relate to the International Defendants' forum contacts.  The claim "must bear a substantial

3 connection to the forum contacts" to render the exercise of jurisdiction appropriate.  *Anglo Irish*

4 *Bank Corp., PLC v. Super. Ct.*, 165 Cal. App. 4th 969, 979 (2008).  All of the claims against the

5 four International Defendants arise from conduct alleged to have occurred in Russia beginning

6 nearly twenty years ago, not their intermittent contacts with California.  The breach of contract

7 claims arise from Russian contracts, between Russian parties, that were negotiated, executed, and

8 performed in Russia.  *See supra* Part VII.B.1.  The breach of Russian statutory duties asserted

9 against Sysoev, Konovalov, and Smirnoff is premised on their actions when employed by

10 Rambler *in Russia*.  *See* Compl. ¶¶ 587-97.  Those duties terminated along with their

11 employment, Muranov Decl. ¶¶ 16, 50, rendering any subsequent conduct outside of Russia

12 irrelevant.  Any claims that Alexeev and Dounin "aided and abetted" those breaches must

13 therefore have occurred before Sysoev, Konovalov, and Smirnoff left Rambler as well, at which

14 point Dounin and Alexeev resided in Russia.  *See* Alexeev Decl. ¶ 2; Dounin Decl. ¶ 2.  Any

15 actionable fraud or concealment would similarly have occurred while Sysoev, Konovalov, and

16 others were employed by Rambler *in Russia.*  The only misrepresentation alleged with

17 specificity—Konovalov's purported rating of the NGINX Software as a "1"—occurred while he

18 was employed by Rambler in Russia.  *See* Compl. ¶ 289.  The gravamen of the intellectual

19 property claims is that Rambler, not Sysoev, supposedly owns the intellectual property

20 associated with NGINX under Russian law.  The remaining claims all lack a substantial

21 connection to California for similar reasons.

22         **b.    The Exercise of Specific Jurisdiction Would Not Be Reasonable**

23    Regardless of whether Lynwood can meet its burden on the first two elements, the

24 exercise of specific jurisdiction in this matter would not be reasonable.  Reasonableness is

25 assessed using a multi-factor test that includes:

26
27    (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the
     burden on the defendant of defending in the forum; (3) the extent of conflict with the
     sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the
28   dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of
     the forum to the plaintiff's interest in convenient and effective relief; and (7) the

                                                 18

1  existence of an alternative forum.

2  *Dole Food Co.*, 303 F.3d at 1114.  All seven factors must be balanced, *Terracom v. Valley Nat.*

3  *Bank*, 49 F.3d 555, 561 (9th Cir. 1995), although the "primary concern" is the burden on the

4  defendant.  *See Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1780 (2017).

5      *First*, as discussed above, Lynwood cannot prove purposeful availment, which "weighs

6  heavily" in the International Defendants' favor.  *Terracom*, 49 F.3d at 561.  Even should

7  sufficient "interjection" exist to establish purposeful availment, the degree of interjection must

8  still be weighed.  *Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981).

9  As a general matter, the International Defendants did not affirmatively target California investors

10  or the California market.  *See* Sysoev Decl. ¶ 9; Konovalov Decl. ¶¶ 6, 11; Alexeev Decl. ¶¶ 7,

11  12.  Sysoev and Konovalov were willing to consider investments from multiple sources when

12  organizing the original NGINX entities, and California was one of many markets in which they

13  were interested.  Sysoev Decl. ¶ 9; Konovalov Decl. ¶ 6.  The initial negotiations with investors

14  were conducted by Sysoev and Konovalov, primarily in Moscow.  Sysoev Decl. ¶ 9; Konovalov

15  Decl. ¶ 6.  Three NGINX entities were eventually formed in the British Virgin Islands, Russia,

16  and the United States (Delaware).  Sysoev Decl. ¶ 10; Konovalov Decl. ¶ 8.  The International

17  Defendants were employed by the Russian entity.  Sysoev Decl. ¶ 6; Konovalov Decl. ¶ 5;

18  Alexeev Decl. ¶ 6; Dounin Decl. ¶¶ 4.  The U.S. entity was initially headquartered in San

19  Francisco based on a request from an investor.  Sysoev Decl. ¶ 10; Konovalov Decl. ¶ 8.  At the

20  time, the California "office" was simply the investor's address with visiting NGINX employees

21  permitted to use a conference room.  Sysoev Decl. ¶ 10; Konovalov Decl. ¶ 9; Alexeev Decl. ¶ 9.

22  The degree of purposeful injection into California's affairs was low.

23      *Second*, the primary consideration is the burden imposed on the International Defendants

24  to participate in their defense in California.  All four individuals challenging personal jurisdiction

25  are Russian citizens and would be forced to travel substantial distances to effectively participate

26  in their defense.  The International Defendants would be required to defend themselves in an

27  unfamiliar legal system and, native speakers of Russian, would require interpreters to participate

28  effectively in proceedings in the United States.  Sysoev Decl. ¶ 17; Konovalov Decl. ¶ 13;

19

1    Alexeev Decl. ¶ 16; Dounin Decl. ¶ 15.  The United States Supreme Court itself has recognized

2    that costs, travel, and lack of familiarity with the American legal system constitute "severe" and

3    "unique" burdens on international defendants.  *See Asahi Metal Indus. Co. v. Super. Ct.*, 480

4    U.S. 102, 114 (1987).  This factor weighs heavily in favor of the International Defendants.

5            *Third*, with respect to conflicting sovereignty, the presence of an international defendant

6    "bears negatively" on the reasonableness of jurisdiction.  *Ins. Co. of N. Am.*, 649 F.2d at 1272.

7            *Fourth*, any interest of the forum state in adjudicating the dispute is "considerably

8    diminished" when the plaintiff is not a forum resident.  *See Asahi*, 480 U.S. at 114.  Lynwood is

9    headquartered in, and organized under the laws of, Cyprus.  Compl. ¶ 57.  The entities that

10   assigned the claims to Lynwood, Rambler and its associates, are located in Russia.  Compl. ¶ 58.

11   California's interest in litigating this lawsuit is thus substantially reduced.

12           *Fifth*, efficiency "is evaluated by looking at where the witnesses and the evidence are

13   likely to be located."  *Terracom*, 49 F.3d at 561.  The court may also consider choice-of-law

14   issues and the enforceability of a judgment.  *See Ins. Co. of N. Am.*, 649 F.2d at 1273.  The

15   primary dispute in this action is whether Igor Sysoev or Rambler owned the rights to various

16   NGINX software.  Lynwood alleges that the ownership issues must be resolved under Russian

17   law, analyzing Russian contracts, Rambler's internal policies, and Russian job responsibilities.

18   *See* Compl. ¶¶ 146-52, 499-501, 503, 509-12.  The witnesses with knowledge concerning the

19   development of NGINX, Sysoev's job responsibilities at Rambler, and Rambler's awareness of

20   NGINX will presumably be current or former Rambler employees who reside in Russia.

21   Documents relating to the development of NGINX, including materials from the recent Russian

22   criminal investigation that exonerated Sysoev and Konovalov of any crime, will also be located

23   primarily in Russia.  Most, if not all, of the witness statements and documents will also be

24   written in Russian and will require translation.  Furthermore, a judgment in the International

25   Defendants' favor may be unlikely to have preclusive effect in a Russian court, which would

26   leave Lynwood free to institute another lawsuit in Russia if it loses here.  2 International Secured

27   Transactions § 27:94 (instructing that "enforcement of court judgments obtained outside Russia

28   may be refused by the Russian court," because Russia does not have an enforcement treaty with

20

1   the United States).  All of these factors—the need to apply Russian law, the abundance of
2   witnesses and documents in Russia, the burden of translating documents into English, the
3   potential lack of finality resulting from a judgment in the United States—militate against the
4   exercise of personal jurisdiction.

5          *Sixth*, declining to exercise personal jurisdiction would have a limited effect on
6   Lynwood's interest in convenient and effective relief.  Even assuming otherwise, Lynwood's
7   "convenience is not of paramount importance."  *See Dole Food Co.*, 303 F.3d at 1116.

8          *Seventh*, the plaintiff bears the burden of proving the unavailability of an alternative
9   forum.  *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993), *holding*
10  *modified by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th
11  Cir. 2006).  Nothing precludes Lynwood from pursuing its claims in Russian courts.

12         In summary, the factors weigh heavily against exercising personal jurisdiction over the
13  International Defendants.  The substantial burden posed on the International Defendants, the
14  potential invasion of Russian sovereignty, the inefficiency of trying a Russian dispute under
15  Russian law, and the lack of any preclusive effect should Lynwood wish to relitigate in Russia, all
16  outweigh the minimal interests of California as the forum state and Lynwood's desire for
17  convenience.  *See Asahi*, 480 U.S. at 115 (requiring "[g]reat care and reserve . . . when extending
18  our notions of personal jurisdiction into the international field").  The Court should not exercise
19  personal jurisdiction, regardless of whether Lynwood can establish the other elements required for
20  specific jurisdiction.

21  ## VIII.   CONCLUSION

22         For the foregoing reasons, the Individual Defendants respectfully request that the Court
23  dismiss Lynwood's claims against them, as alleged in Counts 1-7, 10, 13-17 and 24-26 of the
24  Complaint without leave to amend.

25
26  Dated:  September 30, 2020                     Respectfully submitted,

    KING & SPALDING LLP
27
28  By: /s/  *Quyen Ta*
    QUYEN L. TA (SBN #229956)

                                        21