SHANE BRUN (SBN #179079)
sbrun@kslaw.com
QUYEN L. TA (SBN #229956)
qta@kslaw.com
JEANNE A. FUGATE (SBN #236341)
jfugate@kslaw.com
SAMUEL R. DIAMANT (SBN #288738)
sdiamant@kslaw.com
MATTHEW H. DAWSON (SBN #307350)
mdawson@kslaw.com
KING & SPALDING LLP
101 Second Street, Suite 1000
San Francisco, California 94105
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

BRUCE W. BABER (*Admitted Pro Hac Vice*)
bbaber@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30303-1763
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

*Attorneys for Defendants*
Maxim Konovalov, Igor Sysoev,
Andrey Alexeev, Maxim Dounin,
Gleb Smirnoff, and Angus Robertson

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| LYNWOOD INVESTMENTS CY LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>MAXIM KONOVALOV, IGOR SYSOEV, ANDREY ALEXEEV, MAXIM DOUNIN, GLEB SMIRNOFF, ANGUS ROBERTSON, NGINX, INC. (BVI), NGINX SOFTWARE, INC., NGINX, INC. (DE), BV NGINX, LLC, RUNA CAPITAL, INC., EVENTURE CAPITAL PARTNERS II LLC and F5 NETWORKS, INC.,<br><br>Defendants. | Case No. 5:20-cv-03778-LHK<br><br>**DECLARATION OF ALEXANDER MURANOV PURSUANT TO FED. R. CIV. P. 44.1 IN SUPPORT OF MOTION TO DISMISS COMPLAINT**<br><br>Date:  February 18, 2021<br>Time:  1:30 p.m.<br>Courtroom 8, 4th Floor<br>The Honorable Lucy H. Koh<br><br>COMPLAINT FILED: June 8, 2020 |

I, Alexander Muranov, hereby declare as follows:

1.      I am over 21 years of age.  This declaration is based upon my personal knowledge.  I am familiar with the contents of this declaration and could testify under oath to the facts set forth herein if called as a witness.

## I.      INTRODUCTION

2.      I have prepared this expert report in response to an instruction of King & Spalding LLP, the lawyers for Messrs Maxim Konovalov, Igor Sysoev, Andrey Alexeev, Maxim Dounin, Gleb Smirnoff, and Angus Robertson ("Defendants").  I have been asked to provide expert evidence to assist the U.S. District Court of the Northern District of California ("Court") in determining questions of Russian law arising in connection with proceedings brought by Lynwood Investments Cy Limited ("Lynwood").

3.      I have been instructed to comment on the following aspects of Russian law:

- **Question 1**.  Under Russian law, can claims by an employer against an employee over alleged violation of the employment relationship be assigned to a third party?

- **Question 2**.  Under Russian law, (a) did Maxim Konovalov, Igor Sysoev, and Gleb Smirnoff owe duties to Rambler Internet Holding LLC ("Rambler") under Articles 53 and 53.1 of the Russian Civil Code, and (b) would any such statutory duties continue after the termination of employment?

- **Question 3**.  Under Russian law, do the theories of (a) civil conspiracy, (b) aiding and abetting, (c) tortious interference with contract, (d) tortious interference with prospective business advantage, or (e) fraudulent misrepresentation and/or fraudulent concealment form standalone causes of action?

- **Question 4**.  If it is established that an entity (Rambler) believed that it had a civil law claim against defendants no later than 2015 and entered into an agreement assigning the relevant claim to plaintiff (Lynwood), would a complaint filed in 2020 be time-barred under Russian law?

DECLARATION OF ALEXANDER MURANOV (FRCP 44.1)                    CASE NO.  5:20-cv-03778-LHK

4.     I have analyzed the above questions under Russian law only (and not under the laws of any other jurisdictions).

5.     For the purposes of my analysis, I have been provided with the Complaint filed by Lynwood with the Court on 8 June 2020.

6.     In accordance with my instructions, I have focused on identifying and discussing the relevant content of Russian law in statutes, court judgments and other authorities (sources of law), and on explaining (where relevant) how a Russian court would approach the question at issue.  I have not attached the underlying sources but will make them available to the Court upon request.

7.     Regarding translations of the provisions of the Civil Code of the Russian Federation ("Russian Civil Code") from Russian into English, I have prepared them myself, but they are predominantly based on the use of the following edition:  *Civil Code of the Russian Federation. Parts 1–4 / Private Law Research Centre under the President of the Russian Federation named after S.S. Alexeev; introductory article by Pavel V. Krasheninnikov; Transl. and ed. by Peter B. Maggs and Alexei N. Zhiltsov. — Moscow: Statut, 2020.*

8.     All underlining in the quotations is made by me, unless expressly specified otherwise.

## II.     QUALIFICATIONS

9.     I am a qualified Russian lawyer (advocate), currently practicing law as the managing partner of Muranov, Chernyakov & Partners Law Firm (Moscow) and lecturing as an associate professor on conflict of laws, international litigation and international commercial arbitration at the Moscow State Institute of International Relations (MGIMO University) of the Russian Ministry of Foreign Affairs in Moscow.

10.    I have been practicing law in Russia since 1994.  I have acted as an arbitrator in more than 60 cases of the International Commercial Arbitration Court at the Chamber of Commerce and Industry of the Russian Federation, as well of the Maritime Arbitration Commission at the same Chamber (both since 2009).  I also have acted as an arbitrator, counsel and expert on Russian law issues in different Russian and foreign arbitrations (including under

2

the Rules of ICC, SCC, SIAC, and UNCITRAL).  I have prepared approximately 30 expert reports (legal opinions) on different issues of Russian law (including on intellectual property matters) and international regulations for courts and arbitral tribunals in the UK, the USA, the BVI, the Netherlands, the United Arab Emirates, Switzerland, Sweden, Greece, Cyprus, Singapore and Australia.

11. I have authored over 100 research papers and several books covering different issues of Russian law, including on conflict of laws, civil law, private international law, international litigation and international commercial arbitration.

12. The Legal 500, Chambers & Partners and Best Lawyers, as well as key Russian rankings, recommended me as one of the leading Russian dispute resolution specialists, including in the areas of litigation and/or international arbitration.

13. I have extensive experience working with different Russian and foreign law firms and lawyers, including barristers, and engaging them for my clients.

14. I have set out a more detailed account of my professional training, qualifications and experience to provide an expert report on matters of Russian law in Annex 1 to this declaration.

### III.    SUMMARY OF CONCLUSIONS

15. Under Russian law, claims by an employer against an employee over alleged violation of the employment relationship cannot be validly assigned to a third party.  This is because the position of Russian courts is that assignment is a mechanism of civil law only and cannot extend to an employment relationship and, further, the relationship between the employer and the employee is of such type that the personality of one party is inseparably connected with the other party.

16. Under Russian law, Maxim Konovalov, Igor Sysoev and Gleb Smirnoff would not owe duties to Rambler under Article 53 and Article 53.1 of the Civil Code of the Russian Federation, specifically:

- Any conduct occurring before 2014 would be governed by the prior version of Article 53 (with due regard to the Supreme Arbitrazh Court resolution No. 62

3

after 30 July 2013), which does not impose duties on employees occupying the positions held by Mr. Konovalov, Mr. Smirnoff, or Mr. Sysoev,

- The current versions of Article 53 and Article 53.1 would not be applicable to Mr. Konovalov, Mr. Smirnoff, and Mr. Sysoev because none were employed by Rambler in 2014,

- Even assuming otherwise, the current versions of Article 53 and 53.1 do not impose duties on employees occupying the positions held by Mr. Konovalov, Mr. Smirnoff, or Mr. Sysoev and

- Any such duties would have ended when their employment with Rambler terminated.

17.     Russian courts would not accept tortious interference with contract or tortious interference with prospective business advantage as a standalone cause of action.

18.     Russian courts would accept conspiracy, aiding and abetting, fraudulent misrepresentation and/or fraudulent concealment as standalone causes of action in a limited number of situations strictly stipulated by law, but those situations are inapplicable to the facts of the Complaint.

19.     If, by no later than in 2015, Rambler believed that it had a civil law claim against the defendants and entered into an agreement assigning the relevant claim to Lynwood, but it did nothing to assert its rights against such defendants and eventually brought a complaint against such defendants in 2020, a Russian Court would likely find that such claims would be time-barred under Russian law.

## IV.     EXPERT CONCLUSIONS

**Question 1. Under Russian law, can claims by an employer against an employee over an alleged violation of the employment relationship be assigned to a third party?**

**Short Answer: No.**

20.     Russian courts have found that claims over alleged violations of an employment relationship are not assignable because assignments are possible in civil law relations only and

4

the rules of the Russian Civil Code do not apply in the context of an employment relationship.

21.     For instance, in the appeal ruling of Saint-Petersburg City Court dated 23 January 2020 No. 33-587/2020 it was stated as follows:

> "On November 30, 2017 <u>Obuv Kom LLC entered into an assignment agreement with Palitron LLC, according to which Palitron LLC assigned the right to claim receivables</u> against 589 debtors in the total amount of 439 115 120 rubles, including to S. in the amount of RUB 235,539 75 kopecks, in this connection, LLC "Palitron" applied to the court with a present claim to recover the specified amount from the defendant [employee]. <. . .>

> As the court of first instance correctly pointed out, the right of the employer to demand from the employee compensation for property damage caused to the employer, and the corresponding obligation of the employee to compensate for the damage, does not correspond to the definition of the civil obligation enshrined in Art. 307 of the Civil Code of the Russian Federation, since labour legal relations in this area are not regulated by the norms of this [Civil] Code.

> <u>Given the nature of the disputed legal relationship, which boils down to compensation for property damage caused to the employer</u>, the norms of labour legislation shall be applied, since, within the meaning of Art. 5 of the Labour Code of the Russian Federation, <u>labour relations are not regulated by the norms of civil legislation</u>, which also follows from the explanations given in clause 9 of the Resolution of the Plenum of the Supreme Court of the Russian Federation of March 17, 2004 No. 2 'On the Application by the Courts of the Russian Federation of the Labour Code of the Russian Federation,' <u>taking into account which there are no grounds for applying the analogy of rules of statute or law to the disputed employment relationship and, as a result, the conclusion of the agreement on the assignment of the right to claim.</u>

> <u>Thus, since the parties to the employment contract are the employee and the employer, the right to claim compensation for damage caused by the employee as a result of the performance of the employment contract belongs only to the employer, which is not the plaintiff.</u>"

22.     Further examples are (a) the resolution of the Presidium of Stavropol Regional Court dated 1 November 2018 No. g-464/18 (44G-181/2018) (in which reasoning similar to the above-mentioned Saint-Petersburg City Court case was used) and (b) the appeal ruling of the Altay Territory Court dated 24 February 2016 in case No. 33-2014-16:

> "Submitting claims against the defendant, the plaintiff, in support of the right to claim, referred to the terms of the agreement concluded on 03/20/2014 between Kedr LLC (assignor) and Sibstar LLC (assignee) on the assignment of the right of claim, under which the assignor assigns the assignee the right to claim the debt defendant in the amount of <. . .>.

*Refusing to satisfy the claim, <u>the court of first instance pointed out that the replacement of a party in the obligation to compensate for material damage caused by the employee in the performance of labour duties, on the basis of an assignment agreement as a civil transaction is not allowed. The damage caused to the employer cannot be the object of the assignment</u>. The appellate instance finds the indicated conclusion of the court based on the provisions of the law. <. . .>*

*At the same time, labour legislation does not provide for the possibility of applying civil law norms to labour and other relations directly related to them, directly or by analogy.*

*If the employee causes damage to the employer, the employee is liable to the employer in the amount of full or limited material liability.*

*<u>By dismissing the claim, the court correctly pointed out that the agreement on assignment of the right of claim submitted by the plaintiff dated April 20, 2014 is contrary to the law and cannot mean the filing of this claim by the proper plaintiff.</u>"*

23.     The above line of reasoning is also confirmed by arbitrazh (i.e. commercial) courts, for example in the resolution of the Seventh Arbitrazh Appellate Court dated 30 July 2008 No. 07AP-4032/08 in the case No. A03-4411/2008-30.

24.     It should be noted that some courts use different reasoning, but the result is the same: assignment of claims by an employer against an employee is not possible.  Courts rely on Article 383 of the Russian Civil Code stipulating in the relevant part that *"[t]he passage to another person of rights inseparably connected with the personality of the creditor, in particular of claims for support and for compensation for harm caused to life or health, shall not be allowed"* and conclude that the relationship between the employer and the employee is of such type that the personality of one party is inseparably connected with the other party.  For example, in the appeal ruling of Kaliningrad Regional Court dated 26 February 2014 in the case No. 33-753/2014 the following position was set out:

*"Thus, the said decision established that the right of claim of A., which existed on the basis of a court decision that entered into legal force, to claim from LLC "M." for the payment of funds was <u>inextricably linked with her personality</u>, since the relationship between the indicated parties arose from an employment contract with the employee's obligation to personally perform the labour function imposed on him, and <u>therefore such a claim could not be assigned in accordance with Art. 382 of the Civil Code of the Russian Federation.</u>"*

25.     **CONCLUSION:** It is my expert opinion that claims by an employer against an employee arising from an employment relationship are not assignable to a third party as a matter

of Russian law.


**Question 2. Under Russian law, (a) did Maxim Konovalov, Igor Sysoev and Gleb Smirnoff owe heightened fiduciary duties to Rambler (as per Articles 53 and 53.1 of the Russian Civil Code), and (b) would any such duties remain after the termination of employment?**

**Short Answer: No.**


26.     The Russian legal system distinguishes between various independent branches of law:  labour law, civil law, administrative law, criminal law, *etc.*  One of these independent branches, according to a number of authoritative experts, is corporate law.[1]

27.     Articles 53 and 53.1 of the Russian Civil Code are important articles in the field of corporate law.

28.     Article 53 of the Russian Civil Code (as amended by Federal law No. 99-FZ dated 5 May 2014) provides in the relevant part:

> *"3. A person that, by virtue of a statute, other legal act, or the founding document of a legal person, is authorized to act in its name must act in the interests of the legal person represented by him in good faith and reasonably. Members of the collegial bodies of a legal person (of the supervisory or other board, of the management, etc.) shall bear the same obligation."*

29.     Article 53.1 of the Russian Civil Code (as adopted by Federal law No. 99-FZ dated 5 May 2014) provides in the relevant part:

> *"1. A person that by virtue of a statute, other legal act, or the founding document of a legal person is authorized to act in its name (Paragraph 3 of Article 53) shall have the duty to compensate, on demand of the legal person or of its founders (or participants) acting in the interests of the legal person for losses caused by his fault to the legal person.*
>
> *A person that by virtue of a statute, other legal act, or the founding document of a legal person is authorized to act in its name shall bear liability if it is shown that in exercising his rights and performing his duties he acted in bad faith or*

---

[1] For example: Corporate law: Textbook for University Students Studying in the Field of Law (ed. by I.S. Shitkina), 2007; *Laptev V.* Corporate law: Legal Organization of Corporate Systems. Monograph — Moscow: Prospekt Publishing House, 2019.

DECLARATION OF ALEXANDER MURANOV (FRCP 44.1)          CASE NO.  5:20-cv-03778-SK

*unreasonably, including if his actions (or inaction) did not correspond to the usual conditions of civil commerce or to usual entrepreneurial risk.*

*2. The liability provided by Paragraph 1 of the present Article shall be borne also by members of the collegial bodies of the legal person with the exclusion of those of the members that voted against the decision that entailed causing losses to the legal person or, acting in good faith, did not take part in the voting.*

*3. A person having the de facto possibility of determining the actions of a legal person, including the possibility of giving instructions to the persons named in Paragraphs 1 and 2 of the present Article shall have the duty to act in the interests of the legal person reasonably and in good faith and shall bear liability for losses caused due to his fault to the legal person."*

30.     Pursuant to Article 53 and Article 53.1(1) of the Russian Civil Code, the duty to act in good faith and reasonably vest only in those persons who are "authorized to act in [the] name" of the legal entity. Further, such duties also vest with:

- Members of collegial management bodies of the legal entity;

- Persons who de facto can determine the operations of the legal entity (Article 53.1(3) of the Russian Civil Code).

31.     The duty to act in good faith and reasonably, as set forth in Article 53 and Article 53.1 of the Russian Civil Code, and the liability arising for the failure to perform such duty, extend only to persons who participate in the management of the legal entity or give instructions which may impact management decisions.

32.     It should be noted that the detailed provisions dealing with the concept and scope of the duty to act in good faith and reasonably were introduced into the Russian Civil Code comparatively recently (as mentioned above, in 2014) and do not apply retroactively.  There are no indications in Russian court practice that the scope of Article 53 and 53.1 can be expanded to persons who are not expressly mentioned therein.

33.     In this regard, Doctor of Law O.V. Gutnikov indicates that *"[c]orporate liability in the broadest sense should be understood as civil liability stemming from relations <u>connected with the management</u> of a legal entity, which can either arise for the unlawful actions of the relevant person, or in the form of 'quasi-corporate liability' that is not related to misconduct. <u>Therefore, any corporate liability is in any way conditioned on participation in relations</u>*

8

*connected with the management of a legal entity."*[2]  Thus, a person must in some respect participate in the management of the legal entity in order to be subject to the specific provisions on corporate liability.

34.     Corporate liability is characterized by the principle of "specialization."  It means that in corporate law the liability should be only for those violations which are expressly (*expressis verbis*) specified in the statute, the corporate documents of a legal entity or the relevant corporate contract.[3]  Thus, only those persons who are indicated in Article 53 and Article 53.1 (*i.e.*, the persons who can influence the management of the legal entity) have the relevant duty to act reasonably and good faith and can potentially be held liable for its violation.

35.     In the resolution of the Plenum of the Supreme Arbitrazh Court of the Russian Federation dated 30 July 2013 No. 62:  "On certain issues of compensation of damages by the persons being members of bodies of legal entities" (the "Resolution No. 62") (that largely served as the basis for drafting the current Articles 53 and 53.1, which were enacted in 2014) the following persons were listed as persons who owe to the relevant legal entity the duties to act in good faith and reasonably:

- The sole executive body (director, CEO), temporary sole executive body, the management organization performing such functions or other person being the head of the economic entity;

- The members of the collegial body of the legal entity (by "collegial," I mean the board of directors, supervisory board, management board, directorate, *etc.*).

36.     Later on, the resolution of the Plenum of the Supreme Court of the Russian Federation dated 23 June 2015 No. 25:  "On application by courts of certain provisions of part I

---

[2] *Gutnikov O.* Corporate responsibility in civil law: monograph // CONTRACT. – 2019.

[3] *Ibid.*: *"<. . .> corporate liability, in contrast to contractual or tort liability, is characterized by specialization and cannot have a 'general' nature.  If the contractual liability arises in whole for any violation of contractual rights, and tort for any damage to person or property, and the principle of generality is used (any breach of contract or any tort triggers liability), in corporate law, in contrast, there should be a principle of specialization (the liability can be only for those violations based on and under the conditions expressly (expressis verbis) specified in the statute, constituent documents of the legal entity or the corporate contract)."*

of the Civil Code of the Russian Federation" specified the following (again, quite limited) range of persons subject to the corporate duties to act in good faith and reasonably:

- Persons authorized to act on behalf of a legal entity;

- Members of the collegial bodies of legal entities;

- Individuals that determine the actions of the legal entity.

37.     The practice of the Constitutional Court of the Russian Federation also shows that the range of persons covered by Article 53.1 of the Russian Civil Code is limited.  For example, in the resolution of the Constitutional Court of the Russian Federation dated 28 February 2019 No. 331-O it was established:

> *"These legal provisions [Article 53.1 of the Russian Civil Code]. . . are aimed, inter alia, at restoring the property status of a legal entity that suffered losses, in particular, by the head of the legal entity acting in bad faith and unreasonably in the exercise of his rights and in the performance of his duties."*

38.     For better understanding of terminology, note that Article 53 and Article 53.1 of the Russian Civil Code establish exactly the duty of the relevant persons involved in the management of the legal entity to act in good faith and reasonably and do not use the term "fiduciary duties."  In Russian regulations this term is used not very often and is not well developed.[4]

39.     Article 53 and Article 53.1 of the Russian Civil Code were introduced by Federal Law dated 5 May 2014 and entered into force effective 1 September 2014.  Before that time, Article 53.1 did not exist at all and Article 53 was formulated, in relevant part, even in an even

---

[4] Limited examples of the use of the term "fiduciary duties" can be found in some regulations:

- In the decree of the Federal Agency for the Management of State Property dated 21 November 2013 No. 357 "On the Adoption of Methodological Recommendations on the Organisation of Work of the Board of Directors in a Joint-Stock Company:" *"fiduciary duties . . .: to act in good faith and reasonably in the interests of all shareholders, understood as a sustainable increase in the value of share capital in the long term.*

- In the information letter of the Bank of Russia dated 28 February 2018 No. IN-06-28/18 "On the Guidance for the Members of the Board of Directors (Supervisory Board) of a Financial Organization:" *"In Russian corporate law the relations between board members, owners and a company is based on the concept of directors' fiduciary responsibilities.  In accordance with Article 53(3) of the Civil Code of the Russian Federation, members of governing bodies in exercising their rights and in performing their duties must act in the interests of a company and fulfill their duties in good faith and reasonably."*

DECLARATION OF ALEXANDER MURANOV (FRCP 44.1)                    CASE NO.  5:20-cv-03778-SK

more restrictive fashion, limiting its scope only to the persons acting on its behalf (*e.g.* chief executive officers):

> *3.  A person who, by virtue of a law or the constituent document of a legal entity acts on its behalf, must act in the interests of the legal entity it represents in good faith and reasonably. Such person is obliged, at the request of the founders (stakeholders) of the legal entity, unless otherwise provided by law or agreement, to compensate the losses caused by it to the legal entity."*

40.     Accordingly, Article 53 (in the current version) and Article 53.1 of the Russian Civil Code apply only to circumstances that arise after 1 September 2014.

41.     From 31 July 2013 to 31 August 2014 the previous version of Article 53 applied to the range of persons as indicated in the Resolution No. 62.

42.     Under Russian law, the task of the courts is to apply law and not to establish new rules: the latter is the primary prerogative of the Russian parliament and the Russian government. Thus, under Russian law, Russian courts would be very reluctant to extend Article 53 and Article 53.1 of the Russian Civil Code to any persons not directly mentioned in them.

43.     With regard to Mr. Konovalov, according to Paragraphs 12 and 84 of the Complaint, he carried out job responsibilities of Chief Technology Officer (CTO). In Russian practice, this position is usually named as "Technical Director" or "Chief Engineer."

44.     Whilst a CTO is an important position for the company in terms of coordinating and supervising the technical and engineering activities of such company, CTOs do not necessarily have authority to act on behalf of such company, form part of such company's management or otherwise influence the company's management.

45.     The Complaint contains no allegations that Mr. Konovalov, as CTO, was authorized to act on behalf of Rambler on the basis of a power of attorney or otherwise, was a member of Rambler's collegiate bodies or had any powers to give instructions to the management of Rambler.

46.     With regard to Mr. Smirnoff, he carried out job responsibilities as Head of Rambler's Network Operations Center and reported directly to Mr. Konovalov. (Compl. ¶ 142.) Thus, it follows that Mr. Smirnoff's responsibility was limited to heading only one of the

11

departments in Rambler and did not have authority to take managerial decisions regarding the actions of the entire corporation itself.

47.     With regard to Mr. Sysoev, he carried out job responsibilities of Programmer, System Administrator, Lead System Administrator.  (Compl. ¶¶ 98, 103, 105.)  Thus, Mr. Sysoev performed the labour function of an ordinary employee and was only charged with technical tasks.  The facts in the Complaint do not indicate that Mr. Sysoev has the right to manage or influence the management of Rambler.  Money and bonuses (even if particularly high ones) paid to Mr. Sysoev are salary and other remuneration for the work performed, which fully complies with the requirements of the Labour Code of the Russian Federation and does not by itself mean that Mr. Sysoev had any managerial powers.  Further, Mr. Sysoev was subordinate to Mr. Konovalov and Mr. Smirnoff, who themselves were not involved in the management of Rambler.

48.     Messrs Konovalov, Smirnoff and Sysoev would therefore not be subject to liability under either the more recent Article 53 and Article 53.1.

49.     In addition, Messrs Konovalov, Smirnoff and Sysoev were employees of Rambler before 2014, when the previous version of Article 53 of the Russian Civil Code was in force (with due regard to the Resolution No. 62).  That statute provided an even more limited regulation (see para 39) that would not apply to any of the positions identified in the Complaint.

50.     Even if Messrs Konovalov, Smirnoff and Sysoev owed duties to Rambler under Article 53 of the Russian Civil Code, any such duties ended when their employment terminated. This is because from the moment of termination of such employment, Messrs Konovalov, Smirnoff and Sysoev lost the relevant positions which could arguably fall within the scope of Article 53 of the Russian Civil Code.  This is not to say that Messrs Konovalov, Smirnoff and Sysoev lost any duties to Rambler at all: some duties as per the employment contracts may have remained, but those were contractual duties, and not statutory duties under Article 53 of the Russian Civil Code.

51.     **CONCLUSION:** It is my expert opinion that (a) any conduct occurring before 2014 would be governed by the prior version of Article 53 (with due regard to the Resolution

No. 62 after 30 July 2013), which does not impose duties on employees occupying the positions held by Mr. Konovalov, Mr. Smirnoff, or Mr. Sysoev, (b) the current versions of Article 53 and Article 53.1 would not be applicable to Mr. Konovalov, Mr. Smirnoff, and Mr. Sysoev because none were employed by Rambler in 2014, (c) even assuming otherwise, the current versions of Article 53 and 53.1 do not impose duties on employees occupying the positions held by Mr. Konovalov, Mr. Smirnoff, or Mr. Sysoev, and (d) any such duties would have ended when their employment with Rambler terminated.

**Question 3. Under Russian law, do (a) civil conspiracy, (b) aiding and abetting, (c) tortious interference with contract, (d) tortious interference with prospective business advantage or (e) fraudulent misrepresentation and/or fraudulent concealment form standalone causes of action?**

**Short Answer: No.**

### A.  *General considerations*

#### 1.  <u>Contractual claims v. tortious claims under Russian law</u>

52.     Russian law draws a clear distinction between contractual claims and tortious claims.

53.     The well-established approach in Russian law is that where a party has a claim arising from non-performance or improper performance of contractual obligations, Russian courts would apply the legal provisions regulating contractual liability to such claim and not the legal provisions regulating tort liability.  As a prominent Soviet scholar O.S. Ioffe indicated, *"[i]f the parties are bound by a contract, the violation of which gave rise to a dispute, the counterparty can only bring a contractual claim, and not any other claim."*[5]

54.     This position is broadly supported by Russian courts at the highest levels.

55.     For example, in the ruling of the Supreme Court of the Russian Federation dated 18 May 2015 No. 305-ES14-6511, it was stated:

---

[5] *Ioffe O.S.* Law on Obligations. – Moscow, 1975. Page 865.

DECLARATION OF ALEXANDER MURANOV (FRCP 44.1)          CASE NO.  5:20-cv-03778-SK

*"The court of cassation instance drew the correct conclusion on significant distinction between the legal nature of the obligations depending on the basis of their occurrence: out of contract or out of tort.  Where harm arose as a result of non-performance or improper performance of contractual obligation, the norms on liability for tort shall not be applied and harm shall be compensated in accordance with the rules on liability for non-performance of contractual obligation or in accordance with the terms and conditions of the contract concluded between the parties."*

56.     A similar position was taken in (a) the resolution of Presidium of the Supreme Arbitrazh (Commercial) Court of the Russian Federation dated 18 June 2013 No. 1399/13 and (b) the resolution of the Presidium of the Supreme Arbitrazh (Commercial) Court of the Russian Federation dated 3 June 2014 No. 2410/14.

57.     There are some exceptions from the rule of non-competition of claims that are not relevant in this case, *e.g.* consumer relations as provided in Article 1095 of the Russian Civil Code.

58.     This clear distinction between contractual claims and tortious claims, and the rule of non-competition of claims are important when determining the issue of how a Russian court would approach a claim based on facts that may be classified as "conspiracy," "aiding and abetting," "fraudulent misrepresentation," or "fraudulent concealment."

59.     If there is a contract between the parties which deals with issues of "conspiracy," "aiding and abetting," "fraudulent misrepresentation," or "fraudulent concealment" and such contract expressly prohibits such violations, then the relevant aggrieved party would be entitled to file a contractual claim, not a tortious claim.  By contrast, if between the parties there is no contract which deals with "conspiracy," "aiding and abetting," "fraudulent misrepresentation," or "fraudulent concealment," then the relevant aggrieved party would be entitled to file a tortious claim.

60.     The Complaint does not allege that the relevant employment contracts contain any provisions on "conspiracy," "aiding and abetting," "fraudulent misrepresentation," or "fraudulent concealment."  In the absence of such provisions, any such contractual claim would not be available to Lynwood.

61.     Further, as I explain below, Russian law recognizes only a limited number of

14

tortious causes of action relating to the concepts of "conspiracy," "aiding and abetting," "fraudulent misrepresentation," or "fraudulent concealment," which are not applicable to the facts of the Complaint.

62.     As for "tortious interference with contract" and "tortious interference with prospective business advantage," Russian law does not recognize such causes of action at all.

63.     I should also note that, as a matter of Russian legal practice, Russian courts tend to take formalistic approaches and follow the letter of the law and the concepts directly outlined in written statutes, but they are reluctant to apply doctrines not expressly covered by legislation unless the application of such doctrines is prescribed or allowed by the Supreme Court.

### 2.   The rule of "general tort" in Russian law

64.     Unlike common law, Russian law does not set forth separate *corpus delicti* for each type of tortious offense.

65.     Russian tort law is based on the rule of so-called "general tort" (sometimes also translated as "causing harm offense"), which encompasses all possible types of tortious offenses. This rule is set forth in Article 1064 of the Russian Civil Code.

66.     In practice, however, the standards of proof of the elements of "general tort" are rather high. In the absence of at least one element proven, the claim for recovery of damages because of tort shall be dismissed.[6]


**Question 3.1. Does civil conspiracy and/or aiding and abetting form a standalone cause of action under Russian law?**

**Short Answer: No.**

67.     The concept of **"conspiracy"** (*"сговор"*) is virtually not used in Russian civil law.

68.     The word "conspiracy" is only used once in the Russian Civil Code, in Article 174(2), which provides that a transaction (contract) which was concluded on behalf of a

---

[6] For example, Ruling of the Supreme Court of the Russian Federation dated 27 February 2018 No. 307-ES17-23513 in case No. A56-82341/2015.

legal entity by its representative and which was detrimental to such legal entity may be held invalid by the court upon a claim of such legal entity or other relevant persons filing such claim in the interests of such legal entity, including in situations where the other party to such transaction (contract) conspired with the representative who concluded such transaction (contract) on behalf of such legal entity.

69.     Thus, the facts falling under Article 174(2) of the Russian Civil Code would probably form the only possible standalone cause of action under the concept of conspiracy.  The allegations in the Complaint do not state a claim under Article 174(2).

70.     The concept of **"aiding and abetting"** (*"подстрекательство и пособничество"*) is also not used independently in Russian civil law.  Not relevant to my analysis, these concepts are more developed in Russian criminal and anti-monopoly (competition) law.

71.     The only concepts that might resemble "aiding and abetting" are found in the following articles of the Russian Civil Code:

- Article 60.1, which in the relevant part stipulates: *"Persons who, in bad faith, aided the adoption of the decision on reorganization that was declared invalid by a court shall have the duty jointly and severally to compensate for the losses of a participant in the reorganized legal person that voted against the adoption of a decision on reorganization or did not take part in voting, and also of creditors of the reorganized legal person;*

- Article 147.1, which in the relevant part stipulates: *"The right holder of a commercial paper or security who has lost it as the result of unlawful acts shall have the right to demand from a person who obtained it from a third person regardless of whether or not such a third person was a good-faith or bad-faith acquirer or has been declared a lawful holder, the return of the commercial paper or security or payment of its market value if this acquirer from whom the commercial paper or security is being recovered, by his deceptive or other unlawful actions aided the loss of rights of the lawful holder of the commercial paper or security or as a previous holder knew or should have known of the existence of rights of other persons to the commercial paper or security;*

16

- Article 179, which in the relevant part stipulates: *"A transaction made under the influence of deception of the victim by a third party may be declared invalid on suit of the victim on the condition that the other party or the person to whom a unilateral transaction was directed knew or should have known of the deception.  It shall be considered, in particular, that a party knew of deception if a third person guilty of deception was its representative or employee, or aided him in making the transaction."*

72.     None of these concepts apply to the conduct alleged in the Complaint. Furthermore, the above situations are not classic examples of "aiding and abetting" in common law countries.

73.     Thus, the concept of "aiding and abetting" is only sporadically encountered in Russian civil law and as such can be applied only in a limited number of circumstances.  .

74.     **CONCLUSION:** It is my expert opinion that, under Russian law, conspiracy and aiding and abetting would constitute standalone causes of action only in a limited range of specific cases, which are not alleged in the Complaint.

**Question 3.2: Does tortious interference with contract or tortious interference with prospective business advantage form a standalone cause of action under Russian law?**

**Short Answer: No.**

75.     Russian private law does not directly provide for application of the concept of "tortious interference with contract" or "tortious interference with prospective business advantage."

76.     Russian legislation *expressis verbis* provides that rights and duties under a contract are created only for the parties thereto. Article 308(3) of the Russian Civil Code, being a provision applicable to obligations in general and, consequently, to contractual obligations in particular, illustrates the generally known principle *pacta tertiis nec nocent nec prosunt*, and states as follows:

> *"An obligation does not create duties for persons who are not participants in it as parties (for third persons)."*

77.     Thus, it is generally considered in Russian law, court practice, and doctrine that third parties are alien as regards the parties to a contract and hence cannot have any rights and duties towards them.

78.     There are no examples of the concept of tortious interference being applied in Russian court practice, either at the level of the Supreme Court or at the level of the lower courts. Current Russian court practice does not support the possibility of bringing a tort claim against a third party that interfered in the contractual relations of others.

79.     For example, in one case, the claim was brought by a tenant of premises against a third party that had destroyed the premises.  The courts held in favour of the restrictive interpretation of Article 1064 of the Russian Civil Code and did not recognize the tenant's right to claim.  The arbitrazh (commercial) court of cassation noted the following:[7]

> "*The claim for recovery of damages, brought against the entities with which the company [the plaintiff] does not have contractual relationship, is a claim arising out of tort.  By virtue of Article 1064 of the Civil Code of the Russian Federation, harm caused to the person or property of a citizen and also harm caused to the property of a legal person shall be subject to compensation in full by the person who has caused the harm.  But the action for protection of violated property rights arising out of non-contractual obligations can be brought by the owner of the property or another person holding the property on the basis of a right in rem. <. . .>*
>
> "*Given that the tenant holds the heat network pursuant to a lease contract, the courts justifiably noted that a tenant cannot be regarded as a person having the right to bring an action for recovery of damage caused to the leased property.  It is the owner of the heat network that is empowered to bring such an action.*"

80.     The decision of the court of cassation was later upheld by the Supreme Arbitrazh (Commercial) Court of the Russian Federation.[8]

81.     In the above cited case, although the defendant, being a third party not bound by the lease contract, obviously undermined the contractual relationship between the lessor and the tenant under the lease contract, the claims of the injured party, *i.e.* the tenant in the contract, were

---

[7] Resolution of Federal Arbitrazh (Commercial) Court of the North Caucasian Circuit dated 3 March 2009 in case No. A63-1526/08-S1-19.

[8] Ruling of the Supreme Arbitrazh (Commercial) Court of the Russian Federation No. VAS-5311/09 dated 15 May 2009 in case No. A63-1526/08-S1-19.

DECLARATION OF ALEXANDER MURANOV (FRCP 44.1)                    CASE NO.  5:20-cv-03778-SK

not satisfied.  Thus, the concept of tortious interference, which could possibly allow for compensating the damages to the tenant, was not applied, either expressly or implicitly.

82.     Similar conclusions were made earlier in a case with a similar factual background;[9] the commercial court of cassation instance held as follows:

> "The case materials show that the Plaintiff is not the owner of the specified semi-trailer, but is the tenant thereof.
>
> "It follows from the content of Article 1064 of the Civil Code of the Russian Federation that the right to claim recovery of damages is accorded to the owner of a property; as a result, the conclusions of the court instances that the tenant is not empowered to claim compensation of harm caused to the leased property are legitimate."

83.     This example additionally confirms that it is solely a violation of an absolute right, not a right under a contract, which Russian courts see as a basis for a tort claim.

84.     For similar reasons, Russian law does not provide for the concept of tortious interference with prospective business advantage. Nor am I aware of any practice where such concept was applied by courts.

85.     **CONCLUSION:** My expert opinion is that tortious interference with contract and with prospective business advantage would not constitute a standalone cause of action under Russian law.


**Question 3.3:  Does fraudulent misrepresentation and/or fraudulent concealment form a standalone cause of action under Russian law?**

**Short Answer: No.**

86.     Russian law recognizes only three possible specific causes of action in the situation where a party committed fraud or misrepresentation and they all are connected with the entry into a contractual relationship:

- Article 178 of the Russian Civil Code[10] provides for possibility to challenge (invalidate)

---

9 Resolution of Federal Arbitrazh (Commercial) Court of Volga Circuit dated 10 November 2008 in case No. A06-7231/2007-18.

10 "*1. A transaction made under the influence of a misrepresentation may be declared invalid by a court on suit of a party that acted under the influence of a misrepresentation if the misrepresentation was so*

19

a transaction (contract) on the ground that it was entered into because of substantial

misrepresentation;

- Article 179 of the Russian Civil Code[11] provides for possibility to challenge (invalidate) a transaction (contract) on the ground that it was entered into because of fraud (including intentional concealment of important circumstances);

- Article 431.2 of the Russian Civil Code[12] provides for possibility to recover damages from the contractual counter-party in a situation where such counter-party gave untrue representations which had significance for the entry into the contract and were given by it when concluding the contract.

87.     At the same time, if fraudulent misrepresentation and/or fraudulent concealment is not connected with the entry into a contractual relationship, there would be no specific cause of action under Russian law.

88.     Based on the above, it is my expert opinion that fraud or misrepresentation can form a standalone cause of action in three situations:

- The party entered into a contract because of misrepresentation by the other party (Article 178 of the Russian Civil Code) and is claiming to invalidate such contract or related damages;

---

*essential that this party, reasonably and objectively evaluating the situation, would not have made a transaction if it had known of the actual state of affairs. <. . .>*
*A party on whose suit a transaction is declared invalid shall have the right to demand from the other party compensation of the damages caused to it if it shows that the misrepresentation arose as a result of circumstances for which the other party is responsible."*

[11] *"2.  A transaction made under the influence of deception may be declared invalid by a court on suit of the victim.  Intentional silence on circumstances on which a person should have communicated with such good faith as was required of him by circumstances of commerce shall also be considered deception. <...> In addition, the losses caused to the victim shall be compensated to him by the other party. The other party to the transaction shall bear the risk of accidental loss of the object of the transaction."*

[12] *"1.  A party that on the conclusion of a contract or before or after its conclusion gave the other party inaccurate assurances on circumstances having significance for the conclusion of a contract, its performance or termination (including relating to the subject of the contract, powers for its conclusion, correspondence of the contract to the law applicable to it, the presence of the necessary licenses and permissions, its financial condition or relating to a third person) shall have the duty to compensate the other party on its demand for the losses caused by the inaccuracy of such assurances or to pay the penalty provided by the contract. <. . .>"*

20

- The party entered into a contract because of fraud by the other party (Article 179 of the Russian Civil Code) and is claiming to invalidate such contract or related damages;

- The party entered into a contract because of untrue representations by the other party (Article 431.2 of the Russian Civil Code) and is seeking damages on such basis.

89.     **CONCLUSION:** It is my expert opinion that the Russian courts would not accept that fraudulent misrepresentation and/or fraudulent concealment can constitute a standalone cause of action based on the facts in the Complaint**.**

**Question 4. If it is established that an entity (Rambler) believed that it had a civil law claim against defendants no later than 2015 and entered into an agreement assigning the relevant claim to plaintiff (Lynwood), would a complaint filed in 2020 be time-barred under Russian law?**

**Short Answer: Yes, it would be time-barred**.

***A.   General legal provisions***

90.     The general rule for limitation period in civil relations is set forth in Article 196(1) of the Russian Civil Code, which states as follows:

> *"The general period of limitation of actions shall be <u>three years</u> from the day determined in accordance with Article 200 of the present Code."*

91.     Article 200(1) of the Russian Civil Code provides as follows:

> *"Unless otherwise established by a statute, the running of the period of limitation of actions shall begin from the day when a person learnt or should have learnt of the violation of his right and of who was the proper defendant for a suit for the protection of this right."*

92.     The above cited rule of Article 200(1) of the Russian Civil Code in this particular wording has been in force since 1 September 2013. It applies to claims which were not time-barred as of 1 September 2013.[13] For the claims which had already been time-barred by 1 September 2013, the previous version of Article 200(1) applies (see below).

93.     It is also worth noting that the previous version of Article 200(1) of the Russian

---

13 Article 3(9) of the Federal Law dated 7 May 2013 No. 100-FZ.

21

Civil Code did not establish the necessity to know the exact violator of the plaintiff's rights (the starting point was when a person learnt or should have learnt of the violation of his right). It provided as follows (in force until 1 September 2013):

> *"The running of the period of limitation of actions shall begin from the day when a person learnt or should have learnt of the violation of his right <. . .>."*

94.     In relation to the claims arising from employment contracts, Article 392 of the Labour Code of the Russian Federation sets forth a reduced limitation period:

> *"<. . .> The employer has the right to apply to the court in disputes for compensation by the employee of damage caused to the employer within <u>one year</u> from the date of discovery of the damage caused.*
>
> *"If, for valid reasons, the deadlines established by parts one, two and three of this article are missed, they may be restored by the court."*

95.     Russian legal practice treats the rules for limitation periods in the context of relevant circumstances.  Courts can determine the time "when a person learnt or should have learnt of the violation" differently depending on the facts of each specific case.  In its several resolutions[14] the Court for Intellectual Rights, relying on the position of the Constitutional Court of the Russian Federation, noted as follows:

> *"The provision of Article 200(1) of the Russian Civil Code is worded in such a way that endows the court with necessary powers for determining the start of the running of limitation period based on the factual circumstances of the case, which was expressed in official clarifications contained in the rulings of the Constitutional Court of the Russian Federation dated 29 March 2016 No. 516-O, 20 October 2011 No. 1442-O-O, 25 January 2012 No. 183-O-O, 16 February 2012 No. 314-O-O, 21 November 2013 No. 1723-O, 23 June 2015 No. 1509-O, 22 December 2015 No. 2933-O."*

96.     Further, it is worth noting that Russian courts, when determining the time "*when a person learnt or should have learnt of the violation*" pay attention to whether the aggrieved party acted in good faith and exercised due care (due diligence) in inquiring about the violation of its right. In other words, courts assess when a reasonable person, acting with due caution, could have detected the violation and should have learnt about it.  The important issue here is whether

---

[14] For instance, resolution of the Court for Intellectual Rights dated 6 August 2019 in the case No. A40-104616/2017, resolution of the Court for Intellectual Rights dated 24 July 2019 in the case No. A46-4234/2018, resolution of the Court for Intellectual Rights dated 20 May 2019 in the case No. A40-181141/2018.

DECLARATION OF ALEXANDER MURANOV (FRCP 44.1)          CASE NO.  5:20-cv-03778-SK

1   the person had an opportunity to become aware of such violation.  This was the approach taken

2   in a number of cases heard by the Supreme Court and arbitrazh (commercial) courts.[15]

3       97.    The importance of the test *"should have learnt"* cannot be underestimated.  The

4   running of the limitation periods depends on this test, which is an objective one and does not

5   depend on the subjective intentions of the relevant aggrieved party.  The use of this objective test

6   (*"should have learnt"*) is thus necessary to make the running of the limitation period more

7   uniform and to provide more stability and predictability for the civil relations.

8       98.    A similar position has consistently been expressed in Russian doctrine, according

9   to which the purposes of the limitation periods are: (i) ensuring timely exercise of the right to a

10   claim, with a view to maintaining a degree of certainty in civil relations; and (ii) inhibiting

11   persons having the right to claim from arbitrary and undue delay of enforcement of their civil

12   rights.[16]

13       99.    Such rules governing limitation periods are of importance in civil law because

14   they are aimed at providing more stability and foreseeability of the relations between civil law

15   actors — individuals and legal entities. Thus, the rules of limitation periods serve to balance the

16   interests of the parties and meet their reasonable expectations: claims that are "too old" should be

17   time barred and can be deemed to have been "abandoned" by a person who has refrained from

18   filing a claim for a long period of time and who could have discovered and filed the claim with

19   due diligence and care.

20       100.    Based on the allegations of the Complaint, as a matter of Russian law, a Russian

21   court would most likely hold that Rambler / Lynwood should have learnt about the alleged

22   violations of its rights (of any) by no later than 2015.

---

[15] For instance, ruling of the Supreme Court of the Russian Federation dated 20 May 2019 No. 310-ES19-5960 in case No. A09-11160/2017; ruling of the Supreme Court of the Russian Federation dated 3 August 2020 No. 309-ES20-9739 in case No. A47-15364/2018; resolution of the Arbitrazh (Commercial) Court of Moscow Circuit dated 19 June 2020 No. F05-6848/2020 in case No. A40-113944/2019; resolution of the Arbitrazh (Commercial) Court of Central Circuit dated 11 November 2014 in case No. A62-1978/2014; resolution of the Arbitrazh (Commercial) Court of Ural Circuit dated 27 January 2020 No. F09-8414/19 in case No. A50-39303/2018.

[16] Krasheninnikov E.A. The Notion and Subject Matter of Limitation of Actions. Yaroslavl, 1997. P. 34–35.

DECLARATION OF ALEXANDER MURANOV (FRCP 44.1)    CASE NO.  5:20-cv-03778-SK

101.    At para. 471 of the Complaint the Plaintiff states as follows:

*"In January 2015, after Sysoev appeared in industry specific media outlets to give interviews concerning his authorship of the open-source NGINX Software, which was gaining popularity, Rambler and Lynwood prophylactically entered into an Assignment Agreement, dated January 15, 2015 and amended on January 23, 2015 (the "2015 Assignment"), which assigned Rambler's employment and intellectual property rights to Lynwood for enforcement in the event Sysoev or Konovalov would ever claim an ownership right to the NGINX Software or had previously engaged in any illicit or wrongful conduct vis-à-vis their employment obligations or Russian law as it concerned Rambler and its proprietary information and products."*

102.    Given that in January 2015 Rambler could believe that there were certain indications of the violations of its rights, as a reasonable commercial actor, in good faith and with due care and diligence, Rambler could have launched the relevant investigation in order to establish for sure whether any violation indeed had taken place.  Therefore, applying the due care (due diligence) and good faith tests, a Russian court could hold that Rambler and Lynwood should have learnt about the violations (if any) in January 2015 or shortly thereafter.

103.    When I say "shortly thereafter," I mean the following possible approach which may be taken by a Russian court.  As it follows from paras. 477 and 478 of the Complaint, it took approximately a year (from April 2019 to April 2020) for Rambler and Lynwood to conduct the relevant investigation several years later.  On this basis, it can be assumed that, had Rambler and Lynwood started such investigation at the time when they learnt about the existence of likely alleged violations (January 2015), the investigation would have been over in January 2016.

104.    Thus, the limitation period for filing their civil law claims expired three years later*, i.e.* in January 2018 or shortly thereafter (in January 2019) at the latest (as per Articles 196 and 200 of the Russian Civil Code), and the limitation period for filing their employment law claims expired one year later, *i.e.* in January 2016 or shortly thereafter (in January 2017) at the latest (as per Article 392 of the Labour Code).

105.    The assignment of claims from Rambler to Lynwood does not affect the running of the limitation period since the civil law assignment cannot influence the running of the limitation period. This follows from Article 201 of the Russian Civil Code:

DECLARATION OF ALEXANDER MURANOV (FRCP 44.1)          CASE NO.  5:20-cv-03778-SK

*"The change of persons in an obligation shall not entail a change in the time period of limitation of actions nor the procedure for calculating it."*

106.    In addition, it should be noted that there is some practice of Russian courts that relates to so-called "continuing infringements," holding that where the infringement is continuing until a specific point of time, the limitation period should not start running before such point of time.

107.    It should be stressed that the "continuing infringements" approach is not enshrined in written statutes, it is rather a creation of the practice of Russian courts, and it is applied by courts depending on particular circumstances of each case. This approach does not deny the rules of the Russian Civil Code on the limitation period but is used by the courts to describe the features of specific situations.  In applying such approach, due regard should also be had to the balance of interests of the parties, good faith, due care and the stability of civil relations.  As I show in examples of cases below, in many situations relating to copyrights claims, Russian courts do not apply the "continuing infringements" approach.

108.    For example, there is a recent case where the plaintiff asserted its rights to a certain proprietary font used in product labelling.  The matter was heard in three instances and the courts consistently found that, based on the evidence, the plaintiff had known of the use of that font by the defendant for over three years before the claim was brought, and for that reason, the claim was dismissed as brought beyond the limitation period.  Importantly, the plaintiff attempted to argue that there were product lots produced and marketed under the disputable labelling within such three-year term, but the courts rejected that argument (Court for Intellectual Rights resolution dated 14 July 2020 in the case No. A40-319237/2018).

109.    Another example is a case in which the plaintiff argued that it became aware of the infringement of its right to certain software upon the completion of criminal proceedings in Russia, but the court held that the actual knowledge of facts constituting the alleged infringement was formed much earlier, in the process of disclosure of documents as part of the criminal investigation (Court for Intellectual Rights resolution dated 20 December 2016 in case No. A43-28258/2015).  This case shows that it is not possible to apply the "continuing infringements"

approach to situations where the interested person initially had some knowledge about a possible violation but such violation was confirmed some time later *e.g.* by a court, an administrative body, *etc.*  In such situations the court would determine the moment when the interested person should have learnt about the violation as the moment when the person first got knowledge about possible violation and not from a later date when such violation was confirmed. This is because even at the moment when the person first got knowledge about a possible violation such person could have exercised due care and made the relevant investigations.

110.    In a further case (ruling of Ulyanovsk Regional Court dated 12 January 2010 No. 33-***/2010, the full number of the case is not publicly available)[17] the courts established that a monument pursuant to the design made by the claimant was installed in 2005, but the claimant applied to the court for an alleged violation of his copyright only in 2009, thus passing the three year limitation period.  Despite the fact that the claimant was relying on the "continuing infringement" approach, the court disagreed and held that the limitation period had lapsed because the claimant should have been aware of the relevant facts in 2005.

111.    Thus, the application of the "continuing infringement" approach is very fact-specific.  In my opinion, given that, as I indicated above, Rambler and Lynwood should have been aware of the relevant alleged violations in 2015–2016, the Russian court would most likely not apply the "continuing infringement" approach and hold that the limitation period lapsed in 2018–2019.

***The principle of good faith and its possible application in the context of the limitation period***

112.    Russian law also recognizes the general principle that all parties in civil relations must act in good faith and not abuse their rights.

113.    Article 1 of the RF CC provides:

"*3.    In the establishment, exercise and protection of civil rights and in the performance of civil obligations, participants in civil legal relations must act in good faith.*

*4.  No one has the right to take advantage of its illegal or dishonest behavior.*"

---

[17] http://www.uloblsud.ru/index.php?option=3&id=90&idCard=15093

114.     Article 10 of the RF CC further clarifies:

"*1. Exercise of civil rights solely with the intention of causing harm to another person, actions in circumvention of the law for an unlawful purpose, as well as other knowingly unfair exercise of civil rights (abuse of right) are not allowed. The use of civil rights in order to restrict competition, as well as abuse of a dominant position in the market, is not allowed.*

*2. In the event of non-compliance with the requirements provided for in paragraph 1 of this article, the court, commercial court or arbitral tribunal, taking into account the nature and consequences of the abuse committed, shall refuse to protect the person's right in whole or in part, and also apply other measures provided for by law.*

*3. In the event that the abuse of the right is expressed in the commission of actions circumventing the law with an unlawful purpose, the consequences provided for by paragraph 2 of this article shall apply, unless other consequences of such actions are established by this Code.*

*4. If the abuse of the right entailed a violation of the rights of another person, such person shall have the right to demand compensation for the losses caused by this.*

*5. The good faith of the participants in civil relations and the reasonableness of their actions are presumed.*"

115.     Russian courts can analyze the limitations period and Article 10 at the same time. If a party was on notice that its rights may have been infringed, but for years did nothing to investigate the matter or to assert its rights until after the alleged infringer successfully commercialized the technology, that may be regarded by the court as an act of bad faith.  In such situation, the claim would thus be time-barred.

116.     **Conclusion:** It is my expert opinion that if, by no later than in 2015, Rambler believed that it had a civil law claim against the defendants and entered into an agreement assigning the relevant claim to Lynwood, but it did nothing to assert its rights against such defendants and eventually brought a complaint against such defendant in 2020, a Russian Court would likely find that such claims would be time-barred under Russian law.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  This declaration was executed in Moscow, Russia on September 30, 2020.

Dated:  September 30, 2020                    By: _____

                                                                      Alexander Muranov

27

DECLARATION OF ALEXANDER MURANOV (FRCP 44.1)                    CASE NO.  5:20-cv-03778-SK

# ANNEX 1

## Summary of the Training, Qualifications and Experience
## of Alexander Muranov

I summarize below briefly my professional training, qualifications and experience to give an expert report on the matters of Russian law.

### <u>Professional Legal Education and Achievements</u>

I graduated *cum laude* from the International Law Faculty, the Moscow State Institute of International Relations (MGIMO University) of the Russian Ministry of Foreign Affairs in 1994. From 1994 until 1996, I was an internal postgraduate with the Department of Private International and Civil Law at MGIMO University and began lecturing in this department in November 1996, becoming a senior lecturer in August 1998. Since August 2000 I am an associate-professor of the Department of Private International and Civil Law at MGIMO University.

In May 1999, I defended my Ph.D. thesis *"Fraus Legi Issue in Substantive Law and in the Conflict of Laws"* in MGIMO University. In July 2002 I was awarded the academic degree of the Associate-Professor in Private International and Civil Law by the Russian Ministry of Education.

In addition, since 2009 till 2019 I have been a professor of law at the Department of Private International Law in the Russian School of Private Law with the Research Centre of Private Law at the President of the Russian Federation.

I specialize in my academic research on such issues of the Russian law as international commercial arbitration, conflict of laws, international civil litigation and international trade law.

I am also editor-in-chief of the Russian scholar journal *"International Commercial Arbitration Review"* (www.arbitrationreview.ru).

Since early 2000s I have been frequently and actively involved for several years in drafting and editing legislative texts. I have, *inter alia*, taken part in:

- consulting in elaborating the draft Concept of development of Moscow as international financial center and on particular amendments to Russian legislative texts for implementation of this project;

- drafting Section VI *"Private International Law"* of Part Three of the Russian Civil Code and have been a member of the Working Group formed to consider reforms of this area (2009–2013);

- reform of legislation on currency operations regulations;

- reform of legislation on international and domestic arbitration;

1

- preparing draft federal law on mediation and judicial conciliation;

- a large-scale legal evaluation of Russian commitments under WTO law and of the degree of compliance of Russian domestic law with WTO law (with emphasis on international trade in legal services);

- developing amendments to the law *"On Chambers of Commerce and Industry of the Russian Federation"*;

- preparing methodical recommendations of the Federal Chamber of Attorneys of the Russian Federation for application of the Hague Conventions on the issues of private international law and international civil procedure;

- development (participation in developing) upon requests of the clients of:

✓ amendments to the draft law on insider information;

✓ amendments to the draft law *"On Limited Liability Companies"*;

✓ draft amendments to the Federal Law *"On Joint-Stock Companies"*;

✓ making amendments to the draft law *"On Amendments to Specific Legislative Acts of the Russian Federation in terms of Improvement of the Mechanism for Exercising the Economic Companies Members' Rights to Information"*;

✓ amendments to the legislation on production sharing agreements;

✓ amendments to different decrees of the Russian Government.

- reform of legislation on legal services, legal assistance and judicial representation and elaboration of a draft federal law *"On Qualified Legal Assistance in the Russian Federation"*.

### Legal Practice in Russia

I have been practising law in Russia since 1994 and have been managing partner of Muranov, Chernyakov and Partners Law Firm of the city of Moscow since 2003.

Since 2009 I have acted as arbitrator in more than 60 international commercial cases of the International Commercial Arbitration Court at the Chamber of Commerce and Industry of the Russian Federation, as well as of the Maritime Arbitration Commission at the same Chamber (both since 2009). I also have acted as arbitrator and counsel in different foreign arbitrations (including under the Rules of ICC, SCC, SIAC).

My practice of law includes, but is not limited to, representing client companies (international and Russian) in international commercial arbitration, civil law, contractual, corporate, private international law and other matters. As part of my practice, I have appeared before numerous Russian courts, including the Supreme Arbitrazh (Commercial) Court of the

2

Russian Federation, the Supreme Court of the Russian Federation, the Constitutional Court of the Russian Federation.

I am or have been also:

(a) a member of the Moscow Chamber of Attorneys (registration number 77/4281);

(b) a member of the Central Council of the Lawyers' Association of Russia (since 2005 till 2011);

(c) counsel of the President of the Federal Chamber of Advocates of the Russian Federation on international matters (in 2008–2010);

(d) a member of the Council (top executive body) of the Federal Chamber of Advocates of the Russian Federation (the top authority for the regulated legal profession in Russia) (in 2010–2012).

In 2010, I was announced the winner of the top Russian legal prize "Femida" ("Themis") in the category of nomination "The Bar".

*The Legal 500, Chambers & Partners* and *Best Lawyers*, as well as key Russian rankings, have recommended me as one of the leading Russian dispute resolution specialists, including in the areas of litigation and/or international arbitration.

I have extensive experience of working with different Russian and foreign law firms and lawyers, including barristers, and of engaging them for my clients. As a member of the Board of the Federal Chambers of Advocates I have been involved in discussing various issues with regards to providing legal services in Russia by foreign law firms and international trade in legal services.

### Academic Research and Expert Reports

I have authored over 100 research papers and books covering different issues of Russian law, including international commercial arbitration, conflict of laws, international civil litigation, international trade law, civil law.

I have prepared approximately 30 expert reports (legal opinions) on different issues of Russian law and international regulations for courts and arbitral tribunals in the UK, the USA, the BVI, the Netherlands, the United Arab Emirates, Switzerland, Sweden, Greece, Cyprus, Singapore and Australia.

Alexander Muranov

17 June 2020

3