Douglas W. Dal Cielo (CA Bar No. 157109)
ddalcielo@bwslaw.com
Patricia L. Peden (CA Bar No. 206440)
ppeden@bwslaw.com
Brian M. Affrunti (CA Bar No. 227072)
baffrunti@bwslaw.com
**BURKE, WILLIAMS & SORENSEN, LLP**
60 South Market Street, Suite 1000
San Jose, CA  95113
Telephone: (408) 606-6300
Fax: (408) 606-6333

Alexander D. Pencu (*pro hac vice*)
adp@msf-law.com
Christopher J. Major (*pro hac vice*)
cjm@msf-law.com
Jeffrey P. Weingart (*pro hac vice*)
jpw@msf-law.com
**MEISTER SEELIG & FEIN LLP**
125 Park Avenue, 7ᵗʰ Floor
New York, NY 10017
Telephone: (212) 655-3500
Fax: (646) 539-3649

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNWOOD INVESTMENTS CY LIMITED,<br><br>Plaintiff,<br><br>vs.<br><br>MAXIM KONOVALOV, *et al.*,<br><br>Defendants. | Case No. 3:20-CV-03778-LHK<br><br>**DECLARATION OF**<br>**ALEXANDER CHRISTOPHOROFF** |

Burke, Williams &
Sorensen, LLP
Attorneys At Law
San Jose

I, ALEXANDER CHRISTOPHOROFF, under the penalties of perjury, pursuant to 28 U.S. Code § 1746 declare:

1.    I am a Partner, Advocate, and Patent Attorney with Gowling WLG (International) Inc. in Moscow, Russia.

2.    I have prepared this expert foreign law declaration in response to an instruction from Meister Seelig & Fein LLP, the counsel for Plaintiff Lynwood Investments CY Limited ("Lynwood").  I have been asked to provide an expert foreign law opinion to assist the United States District Court of the Northern District of California ("Court") in determining questions of Russian law in connection with an action brought by Lynwood.

3.    I respectfully submit this declaration in connection with Lynwood's opposition to the motion to dismiss filed by defendants Maxim Konovalov ("Konovalov"), Igor Sysoev ("Sysoev"), Andrey Alexeev ("Alexeev"), Maxim Dounin ("Dounin"), Gleb Smirnoff ("Smirnoff"), and Angus Robertson ("Robertson," or collectively with Konovalov, Sysoev, Alexeev, Dounin, and Smirnoff, the "Individual Defendants").

4.    My qualifications as a Russian law expert are contained in my curriculum vitae, which is attached hereto as Appendix A.

5.    I have read the Complaint filed by Lynwood on June 8, 2020 (the "Complaint"), and the Declaration of Alexander Muranov dated September 30, 2020 ("Muranov Declaration"). In addition, I have read the Notice of Motion and Motion to Dismiss by the Individual Defendants, dated September 30, 2020.

**I.    The Russian Legal System**

**Sources of Law**

6.    Russia is a civil law country. Russia's body of law includes both the Civil Code and the Labor Code. The statutes and codes are legally superior to subordinate regulations, such as presidential decrees and government orders. International law is part of the Russian legal system.

7.    Judgments and rulings of the Constitutional Court of the Russian Federation (hereinafter – the Constitutional Court) that contain interpretations of statutory law bind all

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

DECLARATION OF
ALEXANDER CHRISTOPHOROFF                        - 2 -                        CASE NO. 3:20-CV-03778-LHK

courts and state authorities. Resolutions of the Plenary Session (Plenum) or the Presidium of the Supreme Court (*Verkhovniy Sud*) of the Russian Federation (hereinafter – the Supreme Court) also bind all courts.

8.    Being the primary source of law, legislation has an internal hierarchy and is briefly described below in descending hierarchical order.

9.    The Constitution is the basic Russian legislative act with supreme judicial force and direct application in the entire territory of the Russian Federation.  The Constitution is the legal framework for the Russian Federation, setting forth the general principles of the Russian state structure, human rights, and the creation and functioning of the state bodies. The Constitution has direct jurisdiction over legal relationships between the parties.

10.    International treaties to which Russia is a party are an integral part of the Russian legal system. However, International treaties and decisions of international authorities based on such treaties are not enforceable in Russia if they contradict the Constitution.

11.    Federal constitutional laws are legislative acts adopted since 1994 on the issues specifically provided for in the Constitution, including the state language and the state symbols, the powers of the government and judicial authorities, imposing a state of emergency, and the introduction of changes in the status of the constituent territories (i.e., the so-called "subjects of the federation"). All other Russian laws must not contravene the federal constitutional laws.

12.    The federal laws are the most common type of legislative acts enacted since 1994. They apply in the entire territory of Russia.  Federal Laws cannot contravene the Constitution or the federal constitutional laws.

13.    The federal laws are passed on the issues under the sole jurisdiction of the Russian Federation, as well as under the joint jurisdiction of the Russian Federation and the constituent territories (i.e., subjects) of the Russian Federation. Those jurisdictions are explicitly defined by the Constitution.

14.    A similar type of the laws adopted before 1994 was referred to as the laws of the Russian Federation. They keep their legal force unless replaced.

15.    Some federal laws are called Codes. The Codes provide specific rules for various

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

DECLARATION OF
ALEXANDER CHRISTOPHOROFF

- 3 -

CASE NO. 3:20-CV-03778-LHK

areas of law. Currently, there are 21 codes, including the Civil Code, the Labor Code, the Customs Code and the Tax Code, the Code for Administrative Offenses, and the Criminal Code.

16.     The President issues decrees and orders which are mandatory for fulfillment in the entire territory of Russia. Those decrees and orders may not run counter to the Constitution, the federal constitutional laws, and the federal laws.

17.     To implement the Constitution, the federal laws, and decrees of the President, the Government and other state executive bodies issue regulations, decisions and orders, all of which are obligatory throughout the Russian territory but inferior to the Constitution, federal constitutional laws, and the federal laws.

18.     The constituent territories of the Russian Federation may adopt regional laws and regulations on issues subject to joint jurisdiction with the Russian Federation or the exclusive jurisdiction of the constituent territories. Regional laws and regulations must comply with the Constitution, the federal constitutional laws and federal laws.

19.     The judicial power is self-dependent and is exercised by the courts solely and independently from the legislative and the executive powers. Justice is administered in the forms of constitutional, civil, administrative and criminal proceedings.

20.     On the municipal level, the local bodies are entitled to adopt municipal legal acts on the issues within their authority. Such acts are applicable in a particular municipality and cannot contradict the laws and regulations adopted on the federal level and the level of the subjects of the federation.

21.     Local regulations of an enterprise are internal acts adopted by an employer which are binding on all employees. For the violation of the local regulations of an employer, employees bear disciplinary responsibility and liability for damages.

22.     The local regulations which contravene the prevailing laws and regulations are void. For example, the Labor Code requires that the employer adopt local regulations on certain issues including: compensation and benefit policy, data protection regulations, employment policies and procedures, and job safety regulations.  Pursuant to the requirements of the Federal Law On Commercial Secrecy, which governs the protection of commercial information

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

DECLARATION OF
ALEXANDER CHRISTOPHOROFF                    - 4 -                    CASE NO. 3:20-CV-03778-LHK

including know-how, employers also adopt commercial secrecy regulations which obligate the employees to protect such information.

23.     Individual legal acts such as hiring orders or bonus payment orders are not considered to be local regulations.

24.     The Russian judicial system is composed of the following courts:

- Constitutional Court *(Konstitutsionnyy Sud)*
- Supreme Court  *(Verkhovniy Sud)*
- Federal courts of general jurisdiction
- Federal commercial courts (also known as "arbitrazh"[1] courts); and
- Magistrate courts (or trial courts).

25.     The Constitutional Court *(Konstitutsionnyy Sud)* considers the compliance of the federal laws and other legal acts with the Constitution. In addition, the Constitutional Court *(Konstitutsionnyy Sud)* can determine whether a law has been applied in compliance with the Constitution, where persons file complaints for the violation of their constitutional rights or individual freedoms. The Constitutional Court *(Konstitutsionnyy Sud)* invalidates the laws and legal acts that it considers incompatible with the Constitution.

26.     The Supreme Court *(Verkhovniy Sud)* heads the systems of the courts of general jurisdiction and the commercial courts.  In 2014, the former Supreme Commercial ("Arbitrazh") Court *(Vysshiy Arbitrazhnyy Sud)* was liquidated and its functions were transferred to the Supreme Court *(Verkhovniy Sud)*, which is now the highest court for civil, administrative, criminal cases, cases on the resolution of economic disputes and other cases. Court acts by the former Supreme Commercial Court *(Vysshiy Arbitrazhnyy Sud)* still keep their authority unless replaced by later acts by the Supreme Court or become outdated due to development of legislation.

27.     As a highest judicial instance, the Supreme Court *(Verkhovniy Sud)* exercises control over the activities of lower courts, and provides the lower courts with clarifications on

---

[1] The title "arbitrazh court" is not related to arbitration tribunals, but originates from an old Soviet tradition whereby disputes between state enterprises were resolved by the so-called "State Arbitrazh" – a quasi-judicial state authority.

Burke, Williams &
Sorensen, LLP
Attorneys At Law
San Jose

DECLARATION OF
ALEXANDER CHRISTOPHOROFF                                      - 5 -                          CASE NO. 3:20-CV-03778-LHK

the law and issues of judicial practice in order to guarantee a uniform application of legislation.

28.     Federal courts include the commercial courts that resolve economic disputes and courts of general jurisdiction that handle all other cases. By jurisdiction, commercial courts and the courts of general jurisdiction are divided into four main tiers:

- *1st Tier (courts of first instance):* magistrate and district courts and commercial courts of the regions.
- *2nd Tier (courts of appeal):* courts of the regions and commercial courts of appeal.
- 3rd Tier *(courts of cassation)*: courts of the regions and circuit commercial courts.
- 4th Tier *(supervisory jurisdiction)*: the Supreme Court *(Verkhovniy Sud)*.

29.     The Intellectual Property Court *(Sud Po Intellektual'nym Pravam)*, which is part of commercial courts system, resolves disputes solely in the intellectual property sphere as the court of first and cassation instance, or only as a cassation instance, depending on the type of the case.

30.     The dispute resolution rules in the Russian courts is governed by procedural legislation including the Civil, Commercial (Arbitrazh), Criminal and Administrative Procedure Codes.

**Case Law in Russia**

31.     Contrary to common law systems such as England and the United States, judicial acts of the Russian courts are generally not regarded as a source of law. However, precedents are seen as informational and explanatory.

32.     Due to the special powers granted to the Constitutional Court *(Konstitutsionnyy Sud)* and the Supreme Court, decisions by these courts are regarded as a *de facto* source of law, or the official guidance on interpretation of the statutory provisions for lower courts as well as legal practitioners.

33.     Rulings of the Constitutional Court *(Konstitutsionnyy Sud)* are considered sources of law as they have power to invalidate legislative acts on the basis of their non-

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

DECLARATION OF
ALEXANDER CHRISTOPHOROFF                    - 6 -                    CASE NO. 3:20-CV-03778-LHK

compliance with the Constitution. Therefore, courts, as well as all other public authorities, are legally bound by the resolutions of the Constitutional Court *(Konstitutsionnyy Sud)*.

34.     Resolutions of the Presidium of the Supreme Court *(Verkhovniy Sud)* or the former Supreme Commercial Court *(Vysshiy Arbitrazhnyy Sud)* as well as decisions by the Plenary Session (Plenum) of the Supreme Court  *(Verkhovniy Sud)* or the former Supreme Commercial Court *(Vysshiy Arbirazhnyy Sud)* are binding on the lower courts to ensure uniformity of legal practice.

35.     Under the Civil Procedure Code and the Commercial Procedure Code, a court's failure to comply with the statutory construction given by the Supreme Court *(Verkhovniy Sud)* constitutes a ground to reverse a lower court's decision. As a result, the courts often refer to the positions of the Presidium of the Supreme Court *(Verkhovniy Sud)* or the Plenary Session of the Supreme Court *(Verkhovniy Sud)*.

36.     Although each judge is free to issue an independent decision based on the statutes only (with due regard to positions of the Presidium and the Plenary Session of the Supreme Court *(Verkhovniy Sud)*), in practice, courts also follow and sometimes cite the decisions by the Supreme Court *(Verkhovniy Sud)*, reviews issued by the presidium of the Intellectual Property Court *(Sud Po Intellektual'nym Pravam)*, and in some cases courts check how a higher court of the respective region solved a similar case but do not necessarily cite the higher court's decision in the written judgment.

II.     **Rambler's Claims Against its Former Employees are Assignable**

37.     Rambler's claims against Messrs. Konovalov, Sysoev and Smirnoff in Counts 2-6 of the Complaint are assignable under Russian law to third-parties such as Lynwood.  Mr. Muranov's Declaration provides an inaccurate recitation of Russian law by incorrectly limiting the substantive analysis of the nature of the claims and their assignability to only the Russian Labor Code, when Russian law requires that other applicable federal laws be considered and analyzed regarding the nature of the claims and their assignability, such as the Russian Civil Code chapters on transfer of claims, corporate law and intellectual property law.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

DECLARATION OF
ALEXANDER CHRISTOPHOROFF                    - 7 -                    CASE NO. 3:20-CV-03778-LHK

**The Civil Code (Not the Labor Code) Applies to the Issue of the Assignability to a Third-Party of Rambler's Claims Contained in Counts 2-6 of the Complaint**

38.     As explained below, when determining the particular Russian statutes that apply to a legal action, Russian law requires the courts to examine the core and substantive issues in dispute and then apply the corresponding articles or federal laws.  The Russian Labor Code governs issues concerning compensation, wages and reimbursement obligations between employers and employees, which are not the nature of the allegations in the Lynwood Complaint against Messrs. Konovalov, Sysoev and Smirnoff let alone core allegations made against them.

39.     To the contrary, Counts 2-6 of the Complaint contain monetary claims against Rambler's former officers and employees for the concealment and subsequent misappropriation of valuable Rambler assets and intellectual property as well as the destruction of Rambler property and proprietary information.  These claims are governed by Russian substantive corporate and intellectual property law as well as labor relations laws, which brings the assignability of Rambler's claims against Messrs. Konovalov, Sysoev and Smirnoff under the purview of the Russian Civil Code, not the Labor Code.

40.     In the Russian legal system, the statutory law is the primary body of law as described above in the general chapter of this declaration. Therefore, I first analyze the relevant statutory law, and then proceed with an analysis of the relevant court practice.

41.     The fundamental act of the corporate law as well as of the intellectual property law and the civil law in general is the Civil Code of the Russian Federation. The Russian Federation's general civil law and corporate law provisions are contained in Part I of the Civil Code, which was enacted by the federal law of November 30, 1994 No. 51-FZ and became effective January 1, 1995, with subsequent amendments. The Civil Code's intellectual property law provisions are mostly contained in Part IV, which was enacted by the federal law of December 18, 2006 No. 230-FZ and became effective January 1, 2008, with subsequent amendments. Between 1992 and January 1, 2008, the intellectual property law in Russia was regulated by specific laws of the Russian Federation on patents, trademarks, copyright and related rights, software, etc.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

DECLARATION OF
ALEXANDER CHRISTOPHOROFF

- 8 -

CASE NO. 3:20-CV-03778-LHK

42.     Some provisions of corporate law are contained in federal laws on specific types of institutions and procedures. For example, Rambler Internet Holding LLC is a Limited Liability Company so it is regulated by the federal law "On Limited Liability Companies" of December 8, 1998 No. 14-FZ, with subsequent amendments.

43.     The fundamental labor law act is the Labor Code of the Russian Federation, which was enacted by the federal law of December 30, 2001 No. 197-FZ, with subsequent amendments. The Labor Law governs contract-based labor relations between an employee and an employer, relations on the financial responsibility of employers and employees in the labor sphere, and individual and collective labor disputes.

44.     The conduct regulated by the Labor Code and other legal acts containing labor law provisions shape the scope and applicability of labor law. However, the degree to which the Labor Law applies depends on the facts and circumstances of each case.  For example, a case initiated by an employee for unpaid wages to an employer may be governed exclusively by the Labor Code but a complex commercial dispute involving the alleged misappropriation of intellectual property by an employee from an employer will fall outside of the Labor Code, which does not extend its laws to regulate this type of conduct or dispute.

45.     In the absence of the Russian labor laws' applicability to specific conduct, one must look at other branches of Russian law. These circumstances are commonplace particularly in commercial disputes since disputes between an employer and former employees often do not exist in a legal vacuum and the scope and applicability of the labor relations laws are interconnected with other branches of law.

46.     Currently, Russian doctrine of law recognizes the interdisciplinary relationship between civil and labor law. This is because labor law in one way or another regulates issues of financial relations between the employer and employee based on the principles of autonomy of will, equality of the parties and the independence of the participants, which are relevant to the establishment of an employment relationship. The Civil Code does not explicitly prohibit the regulation of such (seemingly purely labor) conduct.  At the same time, however, Russian labor

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

DECLARATION OF
ALEXANDER CHRISTOPHOROFF

- 9 -

CASE NO. 3:20-CV-03778-LHK

relations laws do not contain a direct prohibition on the application of Russian civil law to labor relations.

47.     Moreover, Russian doctrine of law recognizes the interdisciplinary relationship between civil and labor law due to their similar core legal principles used in regulating conduct (e.g., freedom of contract, judicial protection of violated rights), which enables the application of civil legislation to cover gaps in conduct that the labor legislation has left unaddressed.

48.     The Civil Code of the Russian Federation also regulates certain elements of labor relations, both directly and indirectly. For example, Article 1109 of the Civil Code prohibits the recoupment of overpayments of wages and other compensation based on a claim of unjust enrichment in the absence of a finding of an employee's bad faith or accounting error. In addition, the Labor Code of the Russian Federation contains a number of references and blanket provisions that are based on provisions in the Civil Code. True and correct copies of Article 1109 of the Russian Civil Code in Russian and Certified English Translation is attached as **Exhibit 1**.

49.     The validity and legality of an employer's assignment of rights and claims against an employee is not governed by the Russian Labor Code, which has no such prohibition (as also evidenced by Mr. Muranov's failure to cite any article from the Labor Code imposing such a prohibition).

50.     Moreover, due to the peculiarities of the legal relationships between a legal entity and its management (who are not only employees, but also the corporate bodies and key decision-makers), the substantive issues concerning management's responsibilities, duties and the rights legal entities have against their corporate officers are regulated not only by the labor laws but also by special provisions of civil law (e.g., Articles 53, 53.1 Civil Code).

51.     This is another fundamental error in Mr. Muranov's opinion as he fails to evaluate the nature of the claims in Counts 2-6 of Lynwood's Complaint.  As previously explained, a Russian court is obligated to evaluate the underlying facts in a dispute since the applicability of certain Russian statutes and federal laws depends on the nature and substance of the conduct in issue and not simply by the generic name of a claim.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

DECLARATION OF
ALEXANDER CHRISTOPHOROFF

- 10 -

CASE NO. 3:20-CV-03778-LHK

52.     Mr. Muranov's opinion ignores the actual nature of the claims in Counts 2-6 even though he concedes in Section 2 of his Declaration, for example, that Counts 5-6 (for the individual defendants' breaches of Article 53 duties) are claims arising out of Russian corporate law, not labor relations laws.  *See* Muranov Declaration ¶¶ 26-27.   Notwithstanding his admission that Article 53 claims arise from the Civil Code, not the Labor Code and despite Lynwood's allegations against Messrs. Konovalov, Sysoev and Smirnoff for violations of statutory duties of good-faith, honesty and fairness owed to Rambler under Russian corporate law, Mr. Muranov opines (wrongly) that they are subject to a non-existent prohibition under the Labor Code that prevents the assignment of these claims from Rambler to Lynwood.  This is wrong because not only does the Labor Code not contain any such prohibition on the assignment of these claims, but it is the Civil Code that provides the substantive law to these claims and governs their assignability, which as discussed below is authorized under Russian law.

53.     Relatedly, Lynwood's claims in Counts 2-4 allege contractual breaches of the individual defendants' employment agreements, separation agreements and various corporate policies that were subsumed in those agreements such as Rambler Regulations and Code of Ethics (as defined in the Complaint). *See* Complaint ¶¶ 11-20, 23, 47, 83-152, 175, 178-182, 222, 480-523, 554-586. The Complaint alleges that Messrs. Konovalov, Sysoev and Smirnoff breached their agreements with Rambler because they misappropriated a business built on the intellectual property in the form of software owned by Rambler as a result of the software being work for hire. *Id.* at ¶¶ 3-5, 9, 14-20, 22-23, 30-32, 43-44, 192-306, 480-586.  Unlike a dispute over unpaid wages or benefits, for example, the claims in Counts 2-4 do not fall exclusively within a Russian Labor Code claim as they cross-over into Russian corporate and intellectual property laws (i.e., Russian Civil Code), which govern the rights of employers to pursue employees who violate the employers' intellectual property or misappropriate proprietary information. *See e.g.,* The Judgment of the Commercial Court of Moscow Circuit (*Arbitrazhnyy Sud Moskovskogo Okruga*) on case *No. A40-153460/19*, dated July 7, 2020, which sat as a court of cassation and reversed the lower courts' application of the labor laws to a dispute between the corporate employer and its general director (CEO) because the applicable substantive law

Burke, Williams &
Sorensen, LLP
Attorneys At Law
San Jose

DECLARATION OF
ALEXANDER CHRISTOPHOROFF                    - 11 -                    CASE NO. 3:20-CV-03778-LHK

concerning the general director's actions including the allegations of financial misconduct and dishonesty were governed by the substantive law of Russian corporate law (i.e. Article 53) contained in the Civil Code and not the Labor Code.  This court is the forum court in the judicial district where Rambler's headquarters are located.  A true and correct copy of this judgment in Russian and Certified English Translation is attached hereto as **Exhibit 2.**

> *"Article 1295. Service Work*
>
> *[...] 2. The employer has an exclusive right to a service work, unless otherwise envisaged by the labor contract or civil law contract between the employer and the author." "*
>
> *Article 1470. A Service Production Secret*
>
> *1. The exclusive right to a production secret created by an employee in the line of duty or on a specific assignment of the employer (service production secret) is owned by the employer.*
>
> *2. A citizen who has learned a production secret in connection with his carrying out labor duties or a specific assignment of the employer shall keep the confidential nature of the information so received until the termination of the exclusive right to the production secret."*

True and correct copies of Paragraph 2 of Article 1295 and Article 1470 of the Russian Civil Code in Russian and Certified English Translation are attached as **Exhibits 3 and 4**.

54.     Therefore, the central inquiry on the assignability of Counts 2-6 of Lynwood's Complaint rests on whether the Russian Civil Code permits an assignment of those claims.  As explained below, the answer is unequivocally yes.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

DECLARATION OF
ALEXANDER CHRISTOPHOROFF

- 12 -

CASE NO. 3:20-CV-03778-LHK

**The Russian Civil Code Authorizes the Assignment to a Third-Party of Rambler's Claims Contained in Counts 2-6 of the Complaint and Article 383 Is Inapplicable**

55.     The Russian Civil Code permits the general transfer of claims, including by assignment.   Specifically, Paragraph 1 of Article 382 of the Civil Code of the Russian Federation provides as follows:

*"1. Right (demand), belonged to the creditor on the ground of obligation, can be transferred to another person under a contract (assignment of the right) or can be transferred under a law."*

56.     Russian law does include a prohibition on the transfer of claims in a specific circumstance.  This circumstance is described in Article 383 of the Civil Code of the Russian Federation, which reads as follows:

*"Article 383. Rights Which May Not Pass to Another Person*

*Assignment to the other person of the rights intimately connected with creditor's identity, particularly, regarding claims about alimonies and recovery of harm caused to life or health is not allowed."*

True and correct copies of Articles 382 and 383 of the Russian Civil Code in Russian and Certified English Translation are attached as **Exhibits 5 and 6**.

57.     The prohibitions against assignment of claims under Article 383 often apply to alimony, personal injury and wrongful death claims.   A minority of Russian courts have at times extended Article 383 to a limited number of other circumstances, such as unpaid wage claims by an employee against an employer and other purely labor relations disputes.

58.     Despite its irrelevance to the claims asserted by Lynwood against Messrs. Konovalov, Sysoev & Smirnoff in Counts 2-6 of the Complaint, Mr. Muranov makes a sweeping statement that Article 383 prohibits assignment of claims by an employer against an employee.  *See* Muranov Declaration ¶ 24.  Mr. Muranov is wrong.  Article 383 provides no such blanket prohibition on the assignment of claims arising from the parties' labor relations.  Civil Code Article 383's prohibition on the assignment of claims is very narrow and does not apply to disputes that raise hybrid obligations and claims for relief under Russian corporate,

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

DECLARATION OF
ALEXANDER CHRISTOPHOROFF                    - 13 -                    CASE NO. 3:20-CV-03778-LHK

intellectual property and labor relations law such as those asserted in Counts 2-6 of the Lynwood Complaint.

59.     Furthermore, assignments of claims are more specifically regulated by Paragraph 1 of Article 388 of the Civil Code of the Russian Federation, which provides as follows:

*"1. Assignment of the claim by the creditor (cedent) to another person (cesionariy) is allowed unless prohibited by the law.*

*2. It is not allowed to assign the claim in obligation, where personality of the creditor has substantial importance for the debtor, without consent of the debtor.*

*3. Agreement between debtor and creditor about restriction or prohibition of the assignment of the monetary claim does not mean invalidity of such assignment and cannot be a ground for cancelation of the contract, from which claim arised, but the creditor is not waived from liability before the debtor for this violation of the agreement.*

*(revised by Federal Law dated 08/03/2015, No.42-FZ)*

*4. Right to get non-monetary execution can be assigned without consent of the debtor, unless assignment makes execution of obligation to be significantly harder for him.*

*By the agreement between debtor and creditor it is possible to prohibit or limit assignment of the right to get non-monetary execution.*

*If agreement prohibits assignment of the right to get non-monetary execution, assignment contract can be declared invalid on the basis of the debtor's claim to the court, only if it is proved that the other party of the contract knew or should know about mentioned prohibition.*

*(paragraph introduced by Federal Law dated 26/07/2017 N 212-FZ)*

*5. A joint creditor is entitled to assign the claim to a third person with consent of other creditors, unless otherwise is agreed by the contract."*

True and correct copies of Article 388 of the Russian Civil Code in Russian and Certified English Translation are attached as **Exhibit 7**.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

60.     Therefore, Paragraph 1 of Civil Code Article 388 authorizes the assignment of claims unless prohibited by law.  Although Mr. Muranov does not even raise or identify Article 388's exceptions or limitations, for the avoidance of doubt and for purposes of completeness, none of the exceptions enumerated in Paragraphs 2-5 of Article 388 apply to Lynwood's claims in Counts 2-6 of the Complaint.

61.     For example, the Supreme Court explained that Paragraph 2 of Article 388, which deals with the material significance of the creditor's personality for the debtor should be established based on the substance of the right.  *See* Paragraph 10 of the Resolution by the Plenary Session of the Supreme Court of December 21, 2017 No. 54.  True and correct copies of the Supreme Court's Resolution in Russian and Certified English Translation are attached as **Exhibit 8**.

62.     This means that it is the substance of the transferred right that is relevant under Article 388, not the origin of the substantive right.  Rambler's claims by their substance are standard monetary claims against Messrs. Konovalov, Sysoev and Smirnoff as opposed to those limited categories of claims enumerated in Article 383 that are deemed personal in nature. Therefore, Rambler's claims are assignable.

63.     A recent appellate decision from the Thirteenth Commercial Court of Appeal *(Trinadtsatyy Arbitrazhnyy Appellysatsyonnyy Sud)* on the case of *No. A56-76815/2019*, dated June 3, 2020 provides extensive analysis concerning the assignability of an employer's claims against an employee to a third-party with specific reference to the recent Supreme Court's Resolution No. 54 referenced above.  In case *No. A56-76815/2019*, the corporate employer assigned to a third-party its claims against an employee (the general director/CEO) for his misappropriation of the employer's funds.  The employee counterclaimed against the third-party alleging that the assignment of claims was invalid because those claims were personal to the employer based on the labor relationship between the employer and employee.  The Russian court of first instance awarded judgment in favor of the third-party and denied the employee's counterclaim seeking the invalidation of the assignment agreement.  On appeal, the Russian court of appeal affirmed the court of first instance's decision and found that the employer's

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

DECLARATION OF
ALEXANDER CHRISTOPHOROFF                    - 15 -              CASE NO. 3:20-CV-03778-LHK

claim was assignable to a third-party.  In doing so, the Russian court of appeal analyzed Article 388's paragraphs 1 & 2 along with the Supreme Court's Resolution No. 54 and reaffirmed that the substance of the rights or claims are what determines whether they are assignable or whether they fall within the narrow exceptions deemed "personal" and unassignable.  The court of appeal held that because the employer's claims against the employee were monetary claims seeking damages for the employee's wrongful conduct, they were assignable to a third-party because "the identity of the creditor" (i.e., the identity of the specific claimant) was not "material" to the legal action seeking damages from the employee and the employer was free to assign those claims if it so decided.   A true and correct copy of the Russian and English Certified Translation is attached hereto as **Exhibit 9.**

64.     The vast majority of the Russian courts have found employer's monetary claims against employees or former employees to be assignable especially when those claims contain substantive elements from the Russian civil law such as corporate law and intellectual property as is the case with respect to Lynwood's claims in Counts 2-6.

65.     For example, the Lipetsk Regional Court (*Lipetskiy Oblastnoi Sud*) on the case of *No. 33-2387a/2017*, dated July 5, 2017 upheld the validity of an assignment agreement that assigned to a third-party the employer's claims against its employee for an unjust enrichment claim arising from the employee's misuse or theft of the employer's monetary assets.  The employee sought to vacate the lower courts' findings against him and challenged the third-party's right to pursue the unjust enrichment claim under the assignment agreement by claiming, as Mr. Muranov does in his Declaration, that Article 383 prohibits the assignment of an employer's claims against an employee to a third-party.  The Russian court rejected the defendant employee's argument after undertaking an extensive analysis of the applicable Russian Civil Code Articles and held that the narrow exceptions to assignability under Article 383 (e.g., alimony or personal injury) of an employer's claims against an employee did not apply since the nature of the assigned claim sought monetary damages against the employee for the defendant employee's misappropriation of his employer's assets.  True and correct copies of this judgment in Russian and Certified English Translation are attached hereto as **Exhibit 10.**

Burke, Williams &
Sorensen, LLP
Attorneys At Law
San Jose

DECLARATION OF
ALEXANDER CHRISTOPHOROFF

- 16 -

CASE NO. 3:20-CV-03778-LHK

66.     The decision from the Khabarovsk Regional Court (*Khabarovskiy Kraevoy Sud*) on the case of *No. 33-6577*, dated October 22, 2014 is also instructive.  In this case, the corporate employer assigned to a third-party its claims against the former general director (CEO in Russian parlance) for a variety of alleged wrongdoing including the misappropriation of company assets including sizable loan proceeds intended for the benefit of the employer.  The defendant employee sought to invalidate the assignment agreement on the basis of Article 383 arguing that the employer was prohibited from assigning these claims to a third-party because they were core or personal labor relations claims that only the employer could enforce against the employee because the claims arose from their employment relationship.  The Russian court rejected the defendant employee's arguments and upheld the assignment agreement.  In doing so, the Russian court recounted the limited exceptions under Article 383 to the assignability of an employer's claims against an employee to a third-party.  Moreover, the Russian court highlighted the hybrid nature of the assigned claims and that they sounded in both labor and corporate law (i.e., Article 53 duties) because the defendant employee was also the employer's general director (CEO) and had been accused of not only breaching his employment agreement but also of breaching his Article 53 statutory duties to act in good-faith, honestly and fairly on behalf of his corporate employer.  Separately, the Russian court further held that the claims against the employee that carried potential liability to the employee were properly assignable to a third-party and were not "personal" to the employer/employee relationship because the claims sought monetary damages against the employee for wrongful conduct (i.e., the misappropriation of employer assets) and the identity of the claimant (i.e., the employer or third-party assignee) had no bearing on the issue of the employee's potential liability for his actions.  As a result, the Russian court held that the assignment of the employer's claims to the third-party was valid and enforceable against the defendant employee under Russian Civil Code Article 382.  True and correct copies of this judgment in Russian and English Certified Translation are attached hereto as **Exhibit 11**.

67.     Other courts that have rejected precisely the opinion advanced by Mr. Muranov include the Moscow Region Court (*Moskovskiy Oblastnoi Sud*) on the case of *No. 33-*

Burke, Williams &
Sorensen, LLP
Attorneys At Law
San Jose

*25996/2018*, dated August 27, 2018, which upheld a judgment in favor a third-party assignee of an employer's claims against the former general director (CEO) for his misappropriation of corporate assets and accounting irregularities.  True and correct copies of this judgment in Russian and English Certified Translation are attached as **Exhibit 12**.

68.     It is important to note that the Russian courts in the judicial district where Rambler's headquarters is located in Moscow also recognize an employer's right to assign its claims against an employee to a third-party and have issued judgments in favor of the third-party.  For example, the Moscow City Court (*Moskovskiy Gorodskoi Sud*) on the case of *No. 33-38329/18*, dated September 26, 2018 also affirmed a judgment obtained by a third-party assignee of an employer's claims against a former employee (the Head of the Department of Warehousing and Transportation) who had breached his employment obligations to maintain accurate inventory records and misappropriated the employer's assets.  True and correct copies of his judgment in Russian and English Certified Translation are attached as **Exhibit 13**.

69.     By way of another example, the Moscow City Court (*Moskovskiy Gorodskoi Sud*) on the case of *No. 33-32570/2016,* dated October 18, 2016 also affirmed the judgment obtained by the third-party assignee of an employer's claims against a former employee who was a cashier accountant that had falsified bookkeeping records and misappropriated rent payments from her employer (a property management company).  True and correct copies of this judgment in Russian and English Certified Translation are attached hereto as **Exhibit 14**.

70.     In summary, Russian law allows an employer to assign to a third-party its claims against existing or former employees.  The extremely limited exceptions to the general rule permitting the assignment of claims contained in Article 383 do not apply to Lynwood's claims in Counts 2-6 of the Complaint.

71.     None of the four cases cited by Mr. Muranov in his Declaration are relevant either factually or legally to Lynwood's Complaint against the three individual defendants.  Two of Mr. Muranov's cited cases dealt with the non-assignability of employees' claims for unpaid wages against their employers based on Article 383.  *See* Muranov Declaration ¶¶ 23 & 24 (citing cases *No. A03-4411/2008-30* and *No. 33-753/2014*).  Mr. Muranov's third case involved

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

DECLARATION OF
ALEXANDER CHRISTOPHOROFF                    - 18 -                    CASE NO. 3:20-CV-03778-LHK

a claim by an employer against its employee for property damage to a leased motor vehicle that the employee damaged during the course of his employment. *See Id.* ¶ 22 (citing case *No. 44G-181/2018*).  The Russian court in *No. 44G-181/*2018 held that the claim for the reimbursement of the vehicle's property damage against the employee could not be assigned to a third-party because at its core the claim affected the employee's compensation vis-à-vis the employer and therefore could not be assigned. True and correct copies of these judgments in Russian and English Certified Translation are attached hereto as **Exhibits 15, 16 and 17**.

72.      Mr. Muranov's last cited case is also highly questionable and against the weight of Russian law.  *See Id.* ¶ 21 (citing case *No. 33-587/2020*).  Case *No. 33-587/2020* involved the assignment to a third-party of an employer's claim against a retail employee in a shopping mall who failed to properly account for store inventory.  Although none of the parties challenged the validity of the assignment agreement, the Russian court *sua sponte* invalidated the assignment agreement in a seemingly deliberate effort to vacate the lower judgment against the employee by finding that the dispute over the missing inventory was personal to the employer/employee relationship and fell squarely within the Labor Code (as opposed to the Civil Code).  Notably, the Russian court recognized that Russian court practice varies and that the courts' decisions (therefore, including decision of this court) were non-binding on other Russian courts (pages 12-13 of Exhibit 18).  True and correct copies of this judgment in Russian and English Certified Translation are attached hereto as **Exhibit 18**.

73.      The cases relied upon by Mr. Muranov are distinguishable.  None of the cases are from the Moscow judicial district and none of them concerned claims involving mixed elements of corporate, intellectual property and labor law as the claims in Counts 2-6 in the Complaint assert.

74.      In conclusion, my opinion is that Rambler's claims against Messrs. Konovalov, Sysoev and Smirnoff identified as Counts 2-6 in the Lynwood Complaint are assignable to a third-party such as Lynwood.  Moreover, none of the limited exceptions prohibiting an employer from assigning his or her claims against an employee to a third-party apply to the circumstances surrounding the claims in Counts 2-6 of the Lynwood Complaint.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

DECLARATION OF
ALEXANDER CHRISTOPHOROFF                    - 19 -                    CASE NO. 3:20-CV-03778-LHK

III.     **Russian Civil Code Article 53 & 53.1; Law on Limited Liability Companies**

75.     Mr. Muranov's summary of Articles 53 and 53.1 provides an incomplete and inaccurate recitation of the Russian law surrounding the statutory obligations for corporate directors, officers and other persons (whether corporate shareholders, officers and employees) who have been entrusted with significant managerial authority and discretion to act honestly, fairly and in good-faith on behalf of their corporation.

76.     Contrary to Mr. Muranov's stated opinion, Russian law is not rigid when evaluating the scope and applicability of Articles 53 and 53.1 to a particular individual.  Mr. Muranov is incorrect in his opinion that Russian Courts adhere to a static and simplistic bright-line test when evaluating the applicability of Articles 53 and 53.1 to a specific individual defendant.  To the contrary, Russian Courts both before and after Article 53 was amended (effective September 2014) determined that the scope of the statute's applicability to an individual is based on practical considerations such as the individual's authority or corporate responsibilities rather than a formal title.  Of course, a company's board director or general director (CEO in Russian parlance) falls within the scope of Article 53 but those individuals are not the only individuals subject to Article 53 duties to act honestly, in good-faith and fairly on behalf of their company.

77.     The Russian Civil Code establishes the duty of a controlling person of legal entities (e.g., limited liability companies) to act in a bona fide and reasonable manner and imposes civil liability for the damages caused to the company through his or her actions. For example, an individual who falls within Article 53's purview and is found to have concealed material information from his or her company regarding the value of a corporate asset, misappropriated a corporate asset, failed to return corporate property/information or destroyed such property/information would be liable for a violation of Article 53 duties.

78.     Russian Civil Code Article 53 in effect prior to September 1, 2014 stated:

*"Article 53. The Legal Entity's Bodies*

*[…] 3. A person, who pursuant to the laws or constituent documents of the legal entity, shall reasonable and in good faith act in the interests of the legal entity*

Burke, Williams &
Sorensen, LLP
Attorneys At Law
San Jose

DECLARATION OF
ALEXANDER CHRISTOPHOROFF                - 20 -                CASE NO. 3:20-CV-03778-LHK

*represented. It shall upon request of incorporators (members) of the legal entity, unless otherwise is stipulated by the laws or contract, recover losses incurred to the legal entity."*

True and correct copies of Article 53 of the Russian Civil Code in effect prior to September 1, 2014 is attached hereto in both Russian and Certified English Translation as **Exhibit 19.**

79.     In parallel with Article 53 of the Civil Code, the issue of duty and liability of the corporate bodies is regulated by Article 44 the Federal Law On Limited Liability Companies of 08.02.1998 No. 14-FZ ("Law on Limited Liability Companies"). The Law on Limited Liability Companies is a specialized law, which supplements the Civil Code's provisions. The translated excerpt from Article 44 is:

*"Article 44. Responsibility of members of the board of directors (supervisory board) of the company, the sole executive body of the company, members of the collegial executive body of the company and the managing director.*

*1. Members of the board of directors (supervisory board) of the company, the sole executive body of the company, members of the collegial executive body of the company, as well as the managing director in the exercise of their rights and performance of duties shall act in the interests of the company in a bona fide and reasonable manner.*

*2. Members of the board of directors (supervisory board) of the company, the sole executive body of the company, members of the collegial executive body of the company, as well as the managing director shall be liable to the company for losses caused to the company by their guilty actions (inaction), unless other grounds and amount of responsibility are established by federal laws. At the same time, the members of the board of directors (supervisory board) of the company, members of the collegial executive body of the company, who voted against the decision that caused losses to the company, or did not participate in the voting, are not liable.*

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

*3. When determining the grounds and scope of liability of members of the board of directors (supervisory board) of the company, the sole executive body of the company, members of the collegial executive body of the company, as well as the managing director, the ordinary business practices and other circumstances that are relevant to the case must be taken into account."*

True and correct copies of Article 44 are attached hereto in both Russian and Certified English Translation as **Exhibit 20**.

80.     An amendment to the Civil Code became effective on September 1, 2014 and codified a new Article 53.1 addressing issues of civil liability for persons falling within Article 53's purview.  Paragraph 3 of Article 53.1 provides a definition of "controller," namely a person who actually (as opposed to by virtue of a law or another legal act or the constitutive document) has the possibility of determining the actions of a company. The translated quotation from the Articles 53 and 53.1 is given below (emphasis added):

*"Article 53. The Legal Entity's Bodies*

*[…] 3. **A person, which pursuant to the laws, other judicial deed or constituent document of the legal entity, is authorized to act in its name, shall act in the interests of the legal entity represented in good faith and reasonably. The same obligation is born by members of the collective bodies of the legal entity (supervisory or other board, management, etc.)."***

*"Article 53.1. Responsibility of the Person Authorized to Act in the Name of the Legal Entity, Members of Collective Bodies of the Legal Entity and Persons Directing Actions of the Legal Entity (enacted by Federal Law dated 05/05/2014 No.99-FZ)*

*1. A person, who pursuant to the laws, other judicial deed or constituent document of the legal entity, is authorized to act in his/her name (paragraph 3 of Article 53), shall recover upon request of the legal entity, its incorporators (members), acting in the interests of the legal entity, losses incurred through his/her fault to the legal entity.*

*A person, who pursuant to the laws, other judicial deed or constituent document of the legal entity, is authorized to act in its name, shall bear responsibility, unless*

Burke, Williams &
Sorensen, LLP
Attorneys At Law
San Jose

DECLARATION OF
ALEXANDER CHRISTOPHOROFF                    - 22 -                    CASE NO. 3:20-CV-03778-LHK

*otherwise is proved that while exercising his/her rights and discharge his/her obligations the person acted unfair or unreasonably, including if his/her actions (omissions) didn't correspond to common terms of business practice or ordinary business risk.*

*2. Responsibility, stipulated by paragraph 1 of this Article, shall be also borne by members of the collective bodies of the legal entity, except for those, who voted against resolution, which caused infliction to the legal entity of the losses or, acting in good faith, didn't participate in the voting.*

*3. A person, **having actual possibility to direct actions of the legal entity**, including possibility to give instructions to the persons stated in paragraphs 1 and 2 of this Article, shall act in the interests of the legal entity in good faith and reasonably, and shall bear responsibility forthe losses incurred through his/her fault to the legal entity."*

True and correct copies of the current versions of Articles 53 and 53.1 are attached hereto in both Russian and Certified English Translation as **Exhibit 21.**

81.     Beginning with the adoption of the Russian Civil Code Chapter 1 on January 1, 1995, the Russian courts do not draw  a bright line excluding the reach of Article 53 liability (either before or after the statute was amended effective September 1, 2014) to individuals who wielded decision-making authority or managerial influence over a company simply because the individual was neither the general director (CEO) or a member of the board of directors.  In fact, Russian courts have applied Article 53 duties of good-faith, honesty, and fairness to non-directors and non-general directors (CEOs) for conduct that transpired before the statute was amended.

82.     For example, in a recent decision from the Commercial Court of Moscow Circuit (*Arbitrazhnyy Sud Moskovskogo Okruga*), the forum court in the location of Rambler's headquarters, on the case of *No. A40-15432/2016*, dated September 1, 2019, a Russian company through its bankruptcy receiver sued its general director (CEO) and a shareholder for damages caused to the company as a result of the defendants' misconduct in submitting fraudulent and incomplete information including tax records to Russian tax authorities in the time period of

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

DECLARATION OF
ALEXANDER CHRISTOPHOROFF                    - 23 -                    CASE NO. 3:20-CV-03778-LHK

2013-2014 (i.e. before Article 53 was amended).  This fraudulent conduct resulted in the Russian tax authorities levying heavy fines, which contributed to further losses to the company. The Russian Court imposed liability against the company's general director (CEO) as well as the shareholder even though the shareholder was not a member of the board of directors but nevertheless maintained sufficient decision-making authority to bind the company to certain contracts and retained sufficient discretion to interface with the Russian tax authorities and to provide relevant information to regulators.  True and correct copies of this decision in Russian and a Certified English Translation are attached hereto as **Exhibit 22**.

83.     In another recent case from the Commercial Court of Moscow Circuit (*Arbitrazhnyy Sud Moskovskogo Okruga*)[2] on the case of *No. A40-14034/2015*, dated September 11, 2019, the receiver of a debtor company sued the general director (CEO) and a shareholder whom the receiver alleged maintained the requisite degree of control over the company so as to bind the company to a series of fraudulent transactions that resulted in the company sustaining damages.  The defendant shareholder was not a member of the board of directors but was alleged by the receiver to have a certain degree of control over the company to bind the company to contracts and transactions.  The Court of Cassation reversed the Court of First Instance and the Appellate Court's finding of no liability and remanded the action to the lower court with instructions to evaluate the evidentiary record, including the potential involvement of another minority shareholder (who also was not on the company's board of directors) but whom the Court of Cassation concluded was possibly involved in the scheme and fell within the purview of Article 53 based on her ability to control certain business decisions and bind the company to certain monetary obligations.  Notably, all five of the allegedly fraudulent contracts were procured by the defendants between June 2013 – September 2013 (i.e. before Article 53 was amended) but the Russian courts nevertheless found that Article 53 liability would fall on the defendant shareholders (non-board members) if the evidence upon reconsideration demonstrated their participation in the scheme.  True and correct copies of this decision in Russian and a Certified English Translation are attached hereto as **Exhibit 23.**

---

[2]  This Court is also the forum court in the district where Rambler's headquarters is located.

84.     A recent action from the Commercial Court of Central Circuit (*Arbitrazhnny Sud Tsentralnogo Okruga*) acting as a court of cassation in the case of *No. A48-3332/2018*, dated October 4, 2019 further shows that senior corporate officers who are not the general director or board members also fall within the scope of Article 53 and maintain duties of honesty, reasonableness and good-faith and Russian courts will impose liability on said individuals for breaches of those duties, including for offenses committed before the statute was amended (September 1, 2014) if the evidence demonstrates that they maintained a sufficient degree of control and responsibility at the company and acted in a manner detrimental to the company's interests.  In the case of *No. A48-3332/2018*, the plaintiff company sued some of its former officers and alleged that the Chief Accountant, Deputy General Director (deputy CEO) and the General Director breached their Article 53 duties for entering into and performing a number of questionable transactions in 2013 with third-parties (i.e., before Article 53 was amended) that resulted in losses for the company.  The Court of Cassation affirmed the lower courts' findings of no liability as to all three defendants based on a review of the evidentiary record following a trial, which showed a lack of culpability by the defendants for the transactions in issue.  Notably, the court examined the legal test of Article 53 for the conduct of each defendant and affirmed that Article 53 duties and corresponding liability focuses on whether an individual defendant exerted the requisite degree of control over the company, not whether the defendant falls inside or outside a particular corporate office position..   Later a Justice of the Supreme Court found no grounds for reconsideration of this case and upheld the lower courts' position (Ruling No. 310-ES19-26169 dated February 3, 2020). True and correct copies of these decisions in Russian and a Certified English Translation are attached hereto as **Exhibit 24 and 25.**

85.     Lynwood's Complaint against Konovalov pleads detailed allegations that Konovalov was responsible for all of Rambler's technology departments, including all product development (Compl. ¶¶ 27, 84, 207-208).  The Complaint therefore alleges that Konovalov led and maintained autonomy over the most important departments for a technology company and reported only to the General Director (CEO) of Rambler. (*Id.* ¶¶ 27, 208, 288-291).   The Complaint alleges enough facts to demonstrate that Rambler took instruction from him and that

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

DECLARATION OF
ALEXANDER CHRISTOPHOROFF                     - 25 -                     CASE NO. 3:20-CV-03778-LHK

he materially affected its decisions. (*Id.* ¶¶ 23, 207-208, 225, 288-291, 464-465).  For example, the Chief Accountant sought Konovalov's input on the value of NGINX software code for Rambler's accounting purposes and Konovalov gave it a zero value on which the company relied and took no further action to explore monetization.  (*Id.* ¶¶ 288-292).

86.     The Complaint further pleads that Konovalov had autonomy and decision-making authority for not only product development and resource allocations but also personnel decisions, which was one of the key ways in which Konovalov was able to protect Sysoev and keep their conspiracy undetected (i.e. by keeping Sysoev and Smirnoff and their work within the NOC Department free from oversight).  (Compl. ¶¶ 12, 23, 30, 207-209, 213-214, 225, 293, 303, 464-465, 473).  These pleadings allege sufficient facts to bring Konovalov within Article 53's purview and impose liability for concealing the value of the NGINX Enterprise (as defined in the Complaint) and usurping Rambler's corporate opportunities (as discussed further below).

87.     Moreover, although the Complaint more than adequately pleads factual allegations detailing Konovalov's management role at Rambler and his ability to influence management (see above), he also had Powers of Attorney authorizing him to act on behalf of Rambler, which provides a separate and independent basis for conferring Article 53 duties and liability – a point that even Mr. Muranov concedes.  *See* Muranov Declaration ¶¶ 44-45.

88.     I have inspected the Power of Attorney dated April 13, 2010 provided by Rambler to Konovalov and it is quite broad and extremely discretionary in both scope and the fact that Konovalov maintained a very high ceiling on his authorization to bind Rambler to contractual obligations or to enter into transactions.  A copy of the Power of Attorney issued by Rambler in favor of Konovalov is attached hereto as **Exhibit 26** in both Russian and Certified English Translations.

89.     For example, it provided Konovalov with discretion to enter into contracts on behalf of Rambler with values of up to 1 million Rubles,  which is a quite high threshold even for a large Russian technology company and he had the authority to sign on behalf of Rambler all source documentation related to resources or equipment for the company's entire technology department (such as certificates of commissioning).  For comparison purposes, Rambler's Chief

Financial Officer ("CFO"), which is another high-level corporate position in Russia had the exact 1 million Rubles limit in his Power of Attorney for purposes of binding Rambler to financial matters with third-parties.  Copies of the Power of Attorney issued by Rambler in favor of the CFO is attached hereto as **Exhibit 27** in both Russian and Certified English Translation.

90.     Under Russian law, the Powers of Attorney provide an independent basis (separate from the allegations in the Complaint) indicating that Konovalov falls within the scope of Article 53 duties and liability if the allegations in the Complaint are proven at trial.  *See* Judgments of Commercial Court of Moscow Circuit (*Arbitrazhnyy Sud Moskovskogo Okruga*) in case *No. A41-31311/2014*, dated October 23, 2019 and Judgment of Commercial Court of Moscow Circuit (*Arbitrazhnyy Sud Moskovskogo Okruga*) in case *No. A40-123852/2017*, dated August 13, 2018 (both holding that a "controlling person" of a company is someone who has the opportunity to define actions of the company, inter alia, based on a Power of Attorney).  Both of these decisions were issued from the Russian court in the district where Rambler's headquarters are located.  True and correct copies of these decisions in Russian and Certified English Translations are attached hereto as **Exhibits 28** and **29**.

91.     Mr. Muranov's opinion that Article 53 does not apply to Defendants Smirnoff and Sysoev is incorrect because he presupposes that the Russian Civil Code explicitly prohibits individuals whom he deems to be of inferior seniority within a corporate organization.  *See* Muranov Declaration ¶¶ 46-47.  There is no such explicit prohibition in the Russian statutes (Civil Code Articles 53 or 53.1 or Article 44 of the Law on Limited Liability Companies).  To the contrary and as indicated above, Russian courts will (unless the individual defendants are members of the board of directors or general directors) scrutinize the particular roles the individual defendants maintained within their companies.  It is important to underscore for this Court that Mr. Muranov's opinion as to Article 53 does not include any citations to actual cases delineating this artificial restriction on the applicability of Civil Code Article 53, 53.1 or Article 44 of the Law on Limited Liability Companies.  In fact, Mr. Muranov has not cited a single case applying Civil Code Articles 53, 53.1 or Article 44 of the Law on Limited Liability Companies to any set of fact patterns for this Court to understand the statutes' inherently fact specific nature.

Burke, Williams &
Sorensen, LLP
Attorneys At Law
San Jose

DECLARATION OF
ALEXANDER CHRISTOPHOROFF                - 27 -                CASE NO. 3:20-CV-03778-LHK

92.     The only citations provided by Mr. Muranov with respect to Articles 53 and 53.1 are the Resolutions of the Plenum of the Supreme Arbitrazh (Commercial) Court (*Vysshiy Arbitrazhnyy Sud*) of the Russian Federation, dated July 30, 2013 No. 62 and the Plenum of the Supreme Court, June 23, 2015 No. 25.  *See* Muranov Declaration ¶¶ 35-36. These Plenum resolutions are analogous to "abstract explanations" from the highest courts in the Russian Federation on certain areas of the law and are, of course, important.   However, the two Resolutions cited by Mr. Muranov are not court decisions applying the Russian statutes to a specific set of facts such as whether defendants in similarly situated positions as Messrs. Smirnoff and Sysoev would owe Rambler Article 53 duties.  Moreover, the two Resolutions do not restrict the scope or applicability of Article 53 or 53.1 so as to exclude a particular category of corporate employees or agents.  This is made clear by the subsequent Russian Court decisions I referenced above applying Article 53 to individual defendants who were not members of the board of directors or general directors.   All of those decisions were adjudicated and issued following the release of these two Resolutions.  True and correct copies of the aforementioned Resolutions in Russian and English Certified Translations are attached hereto as **Exhibits 30** and **31**.

93.     Mr. Muranov also cites to a Resolution from the Constitutional Court (*Konstitutsionnyy Sud*) of the Russian Federation, dated February 28, 2019, No. 331-0 in support of his opinion artificially restricting the scope of Article 53 and 53.1.  *See* Muranov Declaration ¶ 37.  Once again, however, this decision is not relevant to the issue of Article 53 or 53.1's scope and applicability to particular categories of individual defendants.  In fact, the Constitutional Court's decision concerned a constitutional issue on an appeal brought before it by an activist shareholder who challenged the constitutionality of a Russian law that provided a company director with the evidentiary presumption of acting in good-faith if that director obtained his board position as a result of a crime.  The Constitutional Court's decision did not address let alone issue a ruling on the range of potential individuals who may fall within Article 53 and 53.1's purview or be automatically excluded by virtue of their positions within their

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

DECLARATION OF
ALEXANDER CHRISTOPHOROFF                    - 28 -                    CASE NO. 3:20-CV-03778-LHK

companies.  A true and correct copy of the aforementioned Constitutional Court decision in Russian and Certified English Translation is attached hereto as **Exhibit 32**.

94.     In my opinion, Lynwood could maintain an Article 53 claim against both Smirnoff and Sysoev based on the factual allegations in the Complaint.  For example, the Complaint alleges that Sysoev while not a senior officer at Rambler, maintained an extraordinary level of importance for the company and was able to draw upon the Rambler resources in all respects (monetary, infrastructure and personnel) at will to develop and then improve the NGINX code for the company's internal use to solve technical issues.  *See* Complaint ¶¶ 11-13, 97-98, 100-101, 105, 108, 593.  The Complaint's allegations as to Smirnoff also identify that he was the Head of the NOC Programming Department, one of the most important software development departments at Rambler.  According to the Complaint, Smirnoff was senior enough at Rambler that he only reported to Konovalov who in turn only reported to the Rambler General Director.  *Id.* at ¶¶ 142, 594.  A Rambler corporate organizational chart indicating Smirnoff's senior position within Rambler is attached hereto as **Exhibit 33**. Accordingly, the Complaint has alleged sufficient facts to plead a claim for the violation of an Article 53/53.1 duty under Russian law as to both Sysoev and Smirnoff.

95.     Finally, Messrs. Konovalov, Smirnoff and Sysoev's Article 53/53.1 duties owed to Rambler did not expire at the conclusion of their employment with Rambler.  Russian law does not permit a company's former director, general director or other company employee who falls within Article 53 (as a result of his or her control or decision-making authority over the company) to take actions that are in breach of trust of the former employee's corporate position and result in financial injury to the company.  Mr. Muranov's opinion appears to suggest that individuals placed in a position of trust and confidence at their corporate employer and who owe their company Article 53 duties can abuse their position and misappropriate assets, information and corporate opportunities so long as they first orchestrate a separation from the company.

96.     This is not a recognized defense under Russian law, and Mr. Muranov has not cited any such case or authority.  To the contrary, Russian courts have found that Article 53

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

DECLARATION OF
ALEXANDER CHRISTOPHOROFF

- 29 -

CASE NO. 3:20-CV-03778-LHK

duties exist post-employment.   *See* Judgment of Commercial Court of Moscow Circuit (*Arbitrazhnyy Sud Moskovskogo Okruga*), the forum court in the district where Rambler's headquarters are located dated, August 31, 2018 in case *N A40-191563/2017* (Russian court found liability against director who violated Article 53 duties after he "separated from the company because the defendant former director hid information on the contract, did not transfer documents after removal and acted against the interests of the company"); *see also* Judgment of Commercial Court of the North Caucasus Circuit (*Arbitrazhnyy Sud Severo Kavkazskogo Okruga*), dated May 7, 2018 in *N A32-44515/2016* (Russian court affirmed lower courts in granting plaintiff Article 53 claim for relief against defendant because the lower courts properly decided that under Article 10, 53, 53.1 of Civil Code of the Russian Federation, Article 44 of Law N 14-FZ [On Limited Liability Companies], the defendant former director was obliged to transfer to the interim director the stamp, company's constitutional documents, accounting books and other documentation of the company after he was removed from his position, because he had not performed his duty to transfer information after his removal).  True and correct copies of the two aforementioned Russian court judgments are attached as **Exhibits 34 and 35** in both Russian and English Certified Translations.

97.     Lynwood's Complaint similarly alleges that Messrs. Konovalov, Sysoev and Smirnoff continued to breach their Article 53 duties after they separated from Rambler by withholding Rambler information that belonged to the company including the proprietary NGINX code and value of the NGINX Enterprise.   The Complaint further alleges that Konovalov and Sysoev after they separated from Rambler not only failed to return Rambler property and information but explicitly directed Smirnoff to destroy said information by wiping Rambler emails and removing Rambler servers hosting NGINX work product.  *See* Complaint ¶¶ 286, 296-304, 589-590, 595-596.  In sum, under Russian law, Messrs. Konovalov, Sysoev and Smirnoff would not be exculpated from Article 53's duties or liability by virtue of their separation from Rambler.

98.     In conclusion, Messrs. Konovalov, Sysoev and Smirnoff are subject to Article 53/ 53.1 duties and liability based on the Complaint's allegations irrespective of the amendment

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

DECLARATION OF
ALEXANDER CHRISTOPHOROFF                     - 30 -                     CASE NO. 3:20-CV-03778-LHK

date of the statute.  In addition, Russian law does not afford the individual defendants a legal defense against Article 53 liability by virtue of their separation from Rambler.

## IV.    <u>Russian Statutes of Limitation</u>

99.    The Russian law includes different limitation period for civil law disputes and labor relations disputes as explained below.

**Statute of Limitation in the Russian Civil Law**

100.    The general limitation period established by Article 196 of Civil Code is three years from the date defined in accordance with Article 200. True and correct copies of Article 196 of the Russian Civil Code are attached as **Exhibit 36** in both Russian and English Certified Translations.

101.    According to the paragraph 1 of Article 200 of the Civil Code, unless otherwise established by law, the term of the limitation of actions shall start from the day (a) when the person learned or should have learned about the violation of his right and (b) who is the proper defendant in respect of the claim for protection of this right). The edition of this paragraph valid before September 1, 2013 did not include the second mandatory requirement to establishment of the term: knowing who is the proper defendant.

| Article 200(1) (before September 1, 2013) | Article 200(1) (current version – enacted September 1, 2013) |
|---|---|
| *"The term of the limitation of actions shall start from the day when the person learned or should have learned about the violation of his right. Exceptions to this rule are established by this Code and other laws".* | *"Unless otherwise established by law, the statute of limitation shall begin from the day when the person has learned or should have learned of the violation of his or her right and who is the appropriate defendant in the claim on protection of this right.".* |

True and correct copies of Article 200 of the Russian Civil Code – version before September 1, 2013 and the current version - are attached as **Exhibits 37 and 38** in both Russian and English Certified Translations.

Burke, Williams &
Sorensen, LLP
Attorneys At Law
San Jose

102.    For the individual kinds of claims, the law may establish special terms of the limitation of actions, reduced or extended as compared to the general term (Article 197 of the Civil Code). However, none of these kinds of claims are raised in Lynwood's Complaint, therefore, their further discussion is omitted.

103.    Article 207 of the Civil Code lists the claims to which the limitations are not applicable, e.g. claims on protection of non-material benefits. True and correct copies of Articles 197 and 207 of the Russian Civil Code are attached as **Exhibits 39 and 40** in both Russian and English Certified Translations.

104.    According to the paragraph 2 of Article 196 of the Civil Code, the term of limitation may not exceed ten years from the date of violation (also known as the "objective term of limitation") of the right, for the protection of which this period is established, with the exception of the cases established by Federal Law On Countering Terrorism No. 35-FZ of March 6, 2006 (i.e. anti-terrorism cases).

105.    In the present case, the current version of Article 200 of the Civil Code should apply as it follows directly from the Federal Law On amendments to subsections 4 and 5 of section I of part one and article 1153 of part three of the Civil Code of the Russian Federation No. 100 dated May 7, 2013:

> *"Rules stated by the current version of Civil Code (as amended by this Federal Law) for limitation period and calculation of limitation period are applied to claims which periods were regulated by the previous versions of Civil Code and did not expire before September 1, 2013".*

106.    In the circumstances where the defendants concealed their misconduct from the plaintiff, which resulted in delayed discovery of their wrongdoings, the limitation period starts at the day when defendants discovered or should have discovered such misconduct. This conclusion is supported by the practice of the Russian courts.

107.    As an example, in the case A40-72258/10-134-547, which started in the Commercial Court of the City of Moscow (*Arbitrazhnyi sud goroda Moskvy*), in the same region where Rambler is both incorporated and having its headquarters, the defendant, CEO of the

Burke, Williams &
Sorensen, LLP
Attorneys At Law
San Jose

DECLARATION OF
ALEXANDER CHRISTOPHOROFF          - 32 -          CASE NO. 3:20-CV-03778-LHK

plaintiff, sold the corporate property and concealed transactions from the accountants and his employer. The misconduct was revealed only in the course of criminal proceedings against the defendant in a separate case later on. The court found that, in this case, the limitation period starts from the day the criminal sentence is issued against the CEO, where his misconduct was described (Ruling of the second appeal instance - Federal Commercial Court of Moscow Circuit (*Federal'nyi arbitrazhnyi sud Moskovskogo okruga*) dated July 2, 2012, upheld by the Ruling of Supreme Commercial Court of the Russian Federation dated October 31, 2012). Similar reasoning was used by the Presidium of Supreme Commercial Court as the supervisory instance in the case No. A40-99191/10-113-875, which also started in the Commercial Court of the City of Moscow (*Arbitrazhnyi sud goroda Moskvy*), where property of the plaintiff was stolen in the course of fraudulent actions by its former CEO (the defendant). The court held that the limitation period started since the criminal sentence was issued against the defendant. True and correct copies of the two aforementioned Russian court judgments are attached as **Exhibits 41 and 42** in both Russian and English Certified Translations.

In case No. A54-5153/2008/C16, the shareholders of the plaintiff lost corporate control over the company and were not able to bring action against the defendant until they recovered it. Here, the Presidium of the Supreme Commercial Court *(Vysshiy Arbitrazhniy Sud)* as the supervisory instance found the lower courts' refusal to apply limitation period appropriate as the meaning [thereof] refers to paragraph 2 of article 10 of Civil Code of the Russian Federation and in this case works as sanction for abuse of the right (Ruling dated November 22, 2011). True and correct copy of Article 10 is attached as **Exhibit 43** in both Russian and English Certified Translation.

108.    The Presidium added:

*"… As any other approach would contravene to the main fundamentals of the civil laws, established by Article 1 of the Civil Code, particularly: equality of the parties within the relations regulated by the Code; inviolability of property; provision of recovery of the rights violated, their legal protection; the rule about non-admission of actions of the citizens and legal entities acting exclusively with an intention to cause harm to the other*

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

*person, abuse of rights in other forms…"*.

True and correct copy of the aforementioned Russian court judgment is attached as **Exhibit 44** in both Russian and English Certified Translation.

109.    In a more recent case No. A40-128337/15, which also started in the Commercial Court of the City of Moscow (*Arbitrazhnyi sud goroda Moskvy*), the Commercial Court of Moscow Circuit (*Arbitrazhnyi sud Moskovskogo okruga*), which is a new name of the Federal Commercial Court of Moscow Circuit (*Federal'nyi arbitrazhnyi sud Moskovskogo okruga*) as the second appeal instance also refused to apply limitation period as a sanction for the abuse of right by the defendant. In its ruling of July 3, 2017, the court followed the same logic and cited the Supreme Commercial Court ruling in case No. A54-5153/2008/C16. True and correct copies of the aforementioned Russian court judgment is attached as **Exhibit 45** in both Russian and English Certified Translation.

110.    The court practice shows that the Russian courts are open to studying and evaluating the respective proof and acknowledge, as a matter of fact, that the purposeful actions of a defendant that led to concealment of his wrongdoing prevents that defendant from using statute of limitation in his defense, and allows plaintiff to calculate the limitation term from the later date when he knew or had the possibility to know about the violation of his right.

111.    As seen from Paragraphs 9, 235, 254 and 477 of the Complaint, Lynwood claims that Rambler was not aware of the damage caused by the individual defendants due to them hiding and destroying the information, which could have revealed their actions in misappropriating the NGINX software, NGINX Plus and the NGINX Enterprise. In his interviews in 2012 and 2015 Sysoev claimed only the authorship of NGINX Software (Complaint ¶¶ 184, 304, 471), and Rambler only knew about the open source, i.e. free software (NGINX Software). Since no evidence of the violation of rights was found at the time, Rambler was not in a position to bring the matter to the court's attention and only entered in the agreement with Lynwood for prophylactic purposes (*Id.* ¶ 471).

112.    Only in 2019, after being tipped off by Mr. Korotkov on the location of the concealed data, Rambler conducted a forensic investigation and became aware from the forensic

Burke, Williams &
Sorensen, LLP
Attorneys At Law
San Jose

DECLARATION OF
ALEXANDER CHRISTOPHOROFF
- 34 -
CASE NO. 3:20-CV-03778-LHK

investigation report that NGINX Plus and the business idea of NGINX Enterprise were conceived and developed in the course of individual defendants' employment at Rambler.

113.   Therefore, the presented circumstances allege that neither Lynwood nor Rambler was or could be aware of the circumstances giving rise to its damages prior to late 2019 when it received an investigation report confirming the actions of the individual defendants in respect of NGINX Software, NGINX Plus and NGINX Enterprise. Lynwood or Rambler also did not and could not have identified the proper defendants in respect of the claims for protection of its copyright.

114.   Consequently, the limitation period for the claims arising from the Russian Civil Law, e.g. claims based on Article 53/53.1 of the Civil Code, should commence from the date when the forensic investigation report was received.

**Statute of Limitation for Continuous Infringement**

115.   The violation of intellectual property rights is characterized by the fact that these relations are often of a continuing nature. However, there is a number of gaps in the civil law on the application of limitation period, including the question of calculation of the limitation period in relation to continuing infringement. The practical answers to this question can be partially found in the practice of Russian courts.

116.   In judicial practice, a special approach has been formed to the application of the provisions of civil legislation on the limitation periods in relation to continuing violations. In particular, the Supreme Court has developed a position according to which limitations of Art. 196 of the Civil Code may not be applicable in such cases (Ruling of April 13, 2012 No. 6-V12-1, which was about non-providing municipal flat), therefore the violated right should be defended by the court regardless of expiration of the three year term from the date when the violation started even if the plaintiff had knowledge. True and correct copy of the aforementioned Russian court judgment is attached as **Exhibit 46** in both Russian and English Certified Translation.

117.   The Intellectual Property Court upheld the position of the courts of first and appeal instances, which rejected the defendant's argument that the plaintiff had missed the

Burke, Williams &
Sorensen, LLP
Attorneys At Law
San Jose

statute of limitations with reference to the continued nature of the violation of exclusive rights (Decision of January 20, 2017 in case *No. A21-10484/2015*).

118. As noted by the Intellectual Property Court in in case *No. A15-3968/2014* (Ruling dated October 16, 2015), the fact that the offense in question is continuing does not preclude the application of the statute of limitations to the claim for the recovery of monetary compensation for those periods of misuse of the trademark that are beyond the statute of limitations. True and correct copies of the two aforementioned Russian court judgments are attached as **Exhibits 47 and 48** in both Russian and English Certified Translations.

119. Having analyzed the judicial practice, I must conclude that the limitation for a continuing violation allows enforcement of the violated right as long as the complaint is filed no later than three years after the day when the violation ends.

**Consideration of Statute of Limitation Is Fact-Specific and Requires Factual Analysis**

120. It should be highlighted that, in civil proceedings, which would be applied to the present case if it was heard in Russia, the defendant's statement that the plaintiff missed the limitation period is an independent basis for refusing the claim. Therefore, the limitation term is considered by the Russian courts and the evidence related to the limitation is evaluated before the case is heard on the merits of the claim and all other evidence is given due assessment.

121. According to Part 6 of Article 152 of the Civil Procedural Code of the Russian Federation, the defendant's objection regarding the plaintiff's omission of the limitation period for the protection of rights established by federal law may be considered in a preliminary court hearing.[3] True and correct copies of Article 152 of the Russian Civil Procedural Code is attached as **Exhibit 49** in both Russian and English Certified Translation.

122. This position was formulated in clause 15 of the Resolution of the Plenum of the Supreme Court of September 29, 2015 No. 43 "On some issues related to the application of the norms of the Civil Code of the Russian Federation on the limitation period." True and correct copies of the aforementioned resolution is attached as **Exhibit 50** in both Russian and English Certified Translation.

---

[3] In Russian court, the preliminary hearing takes place before the case is heard on merits.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

123.    In this regard, the statement in paragraph 100 of Mr. Muranov's Declaration appears to be unjustified as it is an attempt to evaluate the evidence rather than to explain the law. As application of the statute of limitation is fact-specific, a Russian court would first consider and evaluate the evidence, in particular the one related to Lynwood's statement that neither Lynwood nor Rambler knew or should have known about violation of the right before late 2019 due to some of the defendants' willful concealment of the critical evidence.

**Statute of Limitation in Russian Labor Law**

124.    The Labor Code sets individual limitation periods for disputes stemming from the employment relations. Part 3 of Article 392 of the Labor Code provides that the employer has the right to apply to the court for compensation of damage caused by the employee within one year <u>from the date of discovery of the damage</u>. If the term is missed for valid reasons, it can be reinstated by the court (Part 4 Article 392 Labor Code). True and correct copies of Article 392 of the Russian Labor Code is attached as **Exhibit 51** in both Russian and English Certified Translation.

125.    According to clause 3 of the Resolution of the Plenum of the Supreme Court of November 16, 2018 No. 52 "On application of legislation regulating financial liability of employees for the damage caused to the employer", valid reasons in this regard are exceptional circumstances not depending on the employer's will, which prevented filing of a complaint. True and correct copies of the Resolution of the Plenum of the Supreme Court of November 16, 2018 No. 52 is attached as **Exhibit 52** in both Russian and English Certified Translation.

126.    These rules seem self-explanatory. They are applied by Russian courts in a number of cases, which do not give any further guidance.

127.    In summary, the application of the Russian Federation's statutes of limitation depends upon the facts and circumstances of the case, including when the limitation period begins to accrue and when the plaintiff learned of the claim.

//

//

//

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

1    I declare under penalty of perjury under the laws of the United States of America that

2    the foregoing is true and correct.

3        Executed on the 10th day of December 2020 in Moscow, Russia.

4

5                                    Alexander Christophoroff

6                                    ALEXANDER CHRISTOPHOROFF

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE