1   Douglas W. Dal Cielo (CA Bar No. 157109)
    ddalcielo@bwslaw.com
2   Patricia L. Peden (CA Bar No. 206440)
    ppeden@bwslaw.com
3   Brian M. Affrunti (CA Bar No. 227072)
    baffrunti@bwslaw.com
4
    **BURKE, WILLIAMS & SORENSEN, LLP**
5   60 South Market Street, Suite 1000
    San Jose, CA  95113
6   Telephone: (408) 606-6300
    Fax: (408) 606-6333
7

8   Alexander D. Pencu (*pro hac vice*)
    adp@msf-law.com
9   Christopher J. Major (*pro hac vice*)
    cjm@msf-law.com
10  Jeffrey P. Weingart (*pro hac vice*)
    jpw@msf-law.com
11  **MEISTER SEELIG & FEIN LLP**
12  125 Park Avenue, 7th Floor
    New York, NY 10017
13  Telephone: (212) 655-3500
    Fax: (646) 539-3649
14

15  *Attorneys for Plaintiff*

16                  UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF CALIFORNIA
17

18                                          Case No. 5:20-CV-03778-LHK

19                                          **PLAINTIFF'S MEMORANDUM OF**
                                            **POINTS AND AUTHORITIES IN**
20                                          **OPPOSITION TO DEFENDANTS**
                                            **MAXIM KONOVALOV, IGOR**
21  LYNWOOD INVESTMENTS CY LIMITED,         **SYSOEV, ANDREY ALEXEEV, MAXIM**
                                            **DOUNIN, GLEB SMIRNOFF, AND**
22              Plaintiff,                   **ANGUS ROBERTSON'S MOTION TO**
                                            **DISMISS (Dkt. No. 106)**
23          vs.

24  MAXIM KONOVALOV, et al.,                Date:  February 18, 2021
                                            Time:  1:30 p.m.
25              Defendants.                 Courtroom 8, 4th Floor
                                            The Honorable Lucy H. Koh
26

27

28

Burke, Williams &
Sorensen, LLP
Attorneys At Law
San Jose

                                            CASE NO. 5:20-CV-03778-LHK
                            PLAINTIFF'S MEMO PTS. AND AUTHS. IN
                               OPPOSITION TO MOTION TO DISMISS

1

2

**TABLE OF CONTENTS**

3

## Contents

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND .............................................................................................. 1

ARGUMENT ...................................................................................................................... 3

   **A.**   **California and U.S. Copyright Statutes of Limitations Law Apply** ........................... 3

   **B.**   **The Statute of Limitations Accrued No Earlier Than the Merger Closing** ............... 4

     1.   The limitations period starts upon any conspirators' last overt act ............................... 4

     **2.**   **IDs engaged in a continuing violation** .................................................................. 5

     **3.**   **IDs' accrual argument lacks merit** ...................................................................... 5

   **C.**   **Lynwood's Claims Are Timely Due to IDs' Fraudulent Concealment** ...................... 6

   **D.**   **The Discovery Rule Delays Accrual** ........................................................................ 7

   E.   IDs' Arguments Against Tolling and Delayed Accrual Lack Merit ............................... 8

**II.**   **Only Counts 2 Through 6 are Governed by Russian Law** .......................................... 9

   **A.**   **IDs Fail to Establish Material Differences in Law** .................................................. 10

   **B.**   **California has the greater interest than Russia in applying its law** ......................... 10

   **C.**   **The Comparative Impairment Factor Favors California Law** ................................... 11

**III.**   **Lynwood Pleads Claims Upon Which Relief May Be Granted** ............................... 12

   **A.**   **Lynwood's Civil Conspiracy Claim is Valid (Count 1)** ........................................... 12

   **B.**   **Lynwood States a Claim for Aiding and Abetting (Count 7)** .................................. 13

   **C.**   **Lynwood Pleads a Tortious Interference with Contract Claim (Count 10)** ............. 15

   **D.**   **Lynwood Pleads Tortious Interference with Prospective Advantage (Count 13)** ...... 16

   **E.**   **Lynwood's Copyright Claims are Valid (Counts 15-17)** ......................................... 17

   **F.**   **Lynwood's Lanham Act Claims are Valid (Counts 24-25)** ...................................... 18

**IV.**   **The Court Has Personal Jurisdiction Over the Russian Individual Defendants** ....... 18

   A.   California's Long-Arm Statute Supports Specific Jurisdiction Over RDs ..................... 18

   **B.**   **RDs Purposefully Directed Conduct To, and Availed Themselves of, California** ..... 19

     **1.**   **RDs purposefully directed action at California** .................................................. 19

     **2.**   **RDs Purposefully Availed Themselves of Doing Business in California** ................ 21

   **B.**   **Lynwood's Claims Arise Out of RDs' Activities in California** ................................. 22

   **C.**   **Personal Jurisdiction Over RDs is Reasonable** ..................................................... 23

   **D.**   **In the Alternative, the Court Should Grant Jurisdictional Discovery** ...................... 24

**V.**   **In the Alternative, the Court Should Grant Lynwood Leave to Amend** ...................... 24

**VI.**   **The Court Should Strike IDs' Improper Appendix & Parts of Muranov's Declaration** ..................................................................................................................... 24

**CONCLUSION** ............................................................................................................... 25

Burke, Williams &
Sorensen, LLP
Attorneys At Law
San Jose

- ii -

CASE NO. 5:20-CV-03778-LHK
PLAINTIFF'S MEMO PTS. AND AUTHS. IN
OPPOSITION TO MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Burke, Williams &
Sorensen, LLP
Attorneys At Law
San Jose

- iii -

CASE NO. 5:20-CV-03778-LHK
PLAINTIFF'S MEMO PTS. AND AUTHS. IN
OPPOSITION TO MOTION TO DISMISS

# TABLE OF AUTHORITIES

## Cases

.  *Grateful Dead Prods. v. Sagan*, 2008 WL 11389542, *6 (N.D. Cal. 2008) ............................... 16

.  *H.B. Filmes, Ltd.*, 98 Fed. App'x. at 598 ................................................................................. 8

."  *H.B. Filmes, Ltd. v. CBS, Inc.*, 98 Fed. App'x. 596, 598 (9th Cir. 2004) ................................... 7

."  *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1197 (9th Cir. 1988). .................................... 18

*AirWair Int'l Ltd. v. Schultz*, 73 F. Supp. 3d 1225, 1233 (N.D. Cal. 2014). ................................. 19

*AirWair Int'l Ltd. v. Schultz*, 73 F. Supp. 3d 1225, 1234 (N.D. Cal. 2014). ................................. 20

*also Twentieth Century Fox Int'l Corp. v. Scriba*, 385 F. App'x 651, 653 (9th Cir. 2010) .......... 24

*Am. Licorice Co. v. Total Sweeteners, Inc.*, 2013 WL 4396778, at *5 (N.D. Cal. 2013) .............. 10

*Andrew Smith & Co. v. Paul's Pak, Inc.*, 2009 WL 10675140, *3 (N.D. Cal. Jul. 29, 2009), ...... 16

*Animation Workers II*, 123 F. Supp. 3d at 1194 ................................................................................. 7

*Animation Workers II*, 123 F. Supp. 3d at 1203 ................................................................................. 6

*Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 1672493, at *11 (N.D. Cal. May 14, 2012) ............ 14

*Berdux v. Project Time & Cost, Inc.*, 669 F. Supp. 2d 1094, 1101 (N.D. Cal. 2009) ................... 22

*Bowoto v. Chevron Corp.*, 2006 WL 2455761, *9-10 (N.D. Cal. Aug. 22, 2006) ........................ 11

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)) ........................................................ 23

*Cantran Grp., Inc. v. Cups, LLC*, 2020 WL 4873564, *3-4 (C.D. Cal. Jul. 1, 2020) ................... 12

*Channell Commercial Corp. v. Wilmington Mach. Inc.*, 2016 WL 7638180, at *7 (C.D. Cal. 2016). ............................................................................................................................................ 10

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1080 (9th Cir. 2011) .......................... 23

*Comm. for Idaho's High Desert v. Yost*, 92 F.3d 814 (9th Cir. 1996), " ....................................... 17

*CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1143 (9th Cir. 2010). .............................................. 4

*Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1173 (Cal. App. 2016), ....... 13

*de Vries v. Brumback*, 53 Cal. 2d 643, 648, 349 P.2d 532, 535-37 (Cal.1960) ............................ 13

*Diamond Multimedia Sys., Inc. v. Superior Court*, 968 P.2d 539, 557 (CA 1999). ....................... 11

*Digby Adler Group LLC v. Image Rent A Car, Inc.*, 79 F. Supp. 3d 1095, 1104 (N.D. Cal. ........ 17

*Dish Network, L.L.C. v. Jadoo TV, Inc.*, 2020 WL 5816579, *3 (N.D. Cal. Sep. 30, 2020 .......... 17

*Erickson Productions, Inc. v. Kast*, 921 F.3d 822, 829-832 (9th Cir. 2019), ................................ 17

*Favila v. Katten Muchin Rosenman LLP*, 188 Cal. App. 4th 189, 206, 211 (Cal. App. 2010), .... 13

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*, 61 F. Supp. 3d 372, 375, n. 13 (S.D.N.Y. 2014) .......................................................................................................................... 14

*Flo & Eddie, Inc. v. Pandora Media, Inc.*, 851 F.3d 950, 955 (9th Cir. 2017). ............................ 11

*Forcellati v. Hyland's*, 2014 WL 1410264, *3 (C.D. Cal. Apr. 9, 2014). ...................................... 11

*Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005), cited by IDs (Br. 5), ................ 9

*Free FreeHand Corp. v. Adobe Sys. Inc.*, 852 F. Supp.2d 1171, 1188 (N.D. Cal. 2012) ............... 9

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 602 (9th Cir. 2018). ......... 19

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020) ........................................................................................................................... 18

*Google Inc. v. Rockstar Consortium U.S. LP*, 2014 WL 1571807, *10 (N.D. Cal. Apr. 17, 2014). ................................................................................................................................................... 11

*Hansen v. United States*, 3 F. App'x 592, 593 (9th Cir. 2001) ...................................................... 24

*Huntair, Inc. v. Gladstone*, 774 F. Supp. 2d 1035, 1041 (N.D. Cal. 2011). ................................. 21

*In re Animation Workers Antitrust Litig.* ("*Animation Workers II*"), 123 F. Supp. 3d 1175, 1194 (N.D. Cal. 2015). ........................................................................................................................ 6

*In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1170 (N.D. Cal. 2019). .......... 4

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 8669891, at *5, n.1 (N.D. Cal. Aug. 22, 2016) ............................................................................................................................................ 7

*In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 782 F. Supp. 487, 489 (C.D. Cal. 1991). .................................................................................................................. 6

*In re Glumetza Antitrust Litig.*, -- F.Supp.3d --,  2020 WL 1066934, *6-7 (N.D. Cal. Mar. 5, 2020) ............................................................................................................................................ 7

*In re Pacific Fertility Center Litigation*, 2019 WL 3753456, *6 (N.D. Cal. Aug. 8, 2019) (granting leave to amend the dismissed claims). ......................................................................... 24

Burke, Williams &
Sorensen, LLP
Attorneys At Law
San Jose

- iv -

CASE NO. 5:20-CV-03778-LHK
PLAINTIFF'S MEMO PTS. AND AUTHS. IN
OPPOSITION TO MOTION TO DISMISS

*Ins. Co. of N. Am. v. Fed. Exp. Corp.*, 189 F.3d 914, 921 (9th Cir. 1999) ...................................... 3
*Ins. Co. of N. Am. v. Fed. Exp. Corp.*, 189 F.3d 914, 921 (9th Cir. 1999), ................................. 10
*Krish v. Balasubramaniam*, 2006 WL 2884794, *3 (E.D. Cal. Oct. 10, 2006)............................. 25
*Livett v. F.C. Fin. Assocs.*, 124 Cal. App. 3d 413, 415 (Ct. App. 1981)......................................... 5
*Lyons v. Michael & Assocs.*, 824 F.3d 1169, 1170 (9th Cir. 2016) (r ............................................ 7
Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008). ..................... 3
*Martinez v. Knight Transportation, Inc*, 2018 WL 6308110, *9 (E.D. Cal. Dec. 3, 2018) ........... 10
*Mavrix Photo, Inc. v. Brand Techs.. Inc*., 647 F.3d 1218, 1223 (9th Cir. 2011). ......................... 19
*MVP Asset Mgmt. (USA) LLC v. Vestbirk*, 2011 WL 4407560, *2 (E.D. Cal. 2011).................... 14
*NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 827 (N.D. Cal. 2014). ........................ 19
*Philips v. Ford Motor Co.*, 2015 WL 4111448, *7 (N.D. Cal. Jul. 7, 2015). .................................. 6
*Quelimane Co. v. Stewart Title Guaranty Co*., 19 Cal. 4th 26, 56 (Cal. 1998), ............................ 16
*R & R Sails, Inc. v. Ins. Co. of State of Pennsylvania*, 610 F. Supp. 2d 1222 (S.D. Cal. 2009), ... 11
*Raceway Properties, LLC v. LSOF Carlsbad Land L.P.*, 157 F. App'x 959 (9th Cir. 2005).......... 5
*Reiser v. Marriott Vacations Worldwide Corp.*, 2018 WL 2762024, *4 (E.D. Cal. Jun. 8, 2018).. 5
*Rivera v. Saul Chevrolet, Inc.*, No. 2017 WL 3267540, *6 (N.D. Jul. 31, Cal. 2017)................... 10
*Rustico v. Intuitive Surgical, Inc.*, 424 F. Supp. 3d 720, 726 (N.D. Cal. 2019),............................. 4
*S.A.R.L. v. Samaraneftegaz*, 592 F. App'x 28 (2d Cir. 2015), ...................................................... 15
*Sacramento E.D.M., Inc. v. Hynes Aviation Industries, Inc*., 761 Fed. App'x 678, 680 (9th Cir. 2019) ............................................................................................................................................... 5
*SEA Metropolitan S.A. v. DGM Commodities Corp.*, No. 13CV01521, 2013 WL 1816153, at ¶109 (E.D.N.Y. Mar. 22, 2013). ......................................................................................................... 15
*See Jonna Corp. v. City of Sunnyvale*, 2017 WL 2617983, *2, n. 4 (N.D. Cal. Jun. 16, 2017). ... 25
*Synopsys, Inc. v. Magma Design Automation, Inc.*, 2005 WL 8177857, *5 (N.D. Cal. May 18, 2005). ........................................................................................................................................... 8
*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 2013 WL 4530470, *11 (N.D. Cal. 2013). ... 10
*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 2013 WL 4530470, at *11 (N.D. Cal. 2013).. 3
*Utah v. McKesson Corp*., 2011 WL 2884922 (N.D. Cal. 2011)....................................................... 5
*Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 919 (2001)................................ 10
*Wyatt v. Union Mortg. Co*., 24 Cal. 3d 773, 786 (1979)................................................................... 4
*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006). ............................................................................................................................................ 19
*Yukos Capital S.A.R.L. v. OAO Samaraneftegaz*, 2014 WL 81563, *5 (S.D.N.Y. Jan. 9, 2014) .. 15

**Statutes**
*Mosier v. S. California Physicians Ins. Exch.*, 63 Cal. App. 4th 1022, 1048 (1998). .................. 12
Rule 9(b). Br. 8 ................................................................................................................................ 12
*Wu v. Oregon Trail Corp.*, 2019 WL 6603172, *3 (C.D. Cal. Jul. 31, 2019) ............................... 12
*Wu*, 2019 WL 6603172, *2. ........................................................................................................... 12

**Other Authorities**
Articles 53.1 and 53 ........................................................................................................................ 13
Russian Civil Code, and Article 44 of the Law on Limited Liability Companies ......................... 13

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

- v -

CASE NO. 5:20-CV-03778-LHK
PLAINTIFF'S MEMO PTS. AND AUTHS. IN
OPPOSITION TO MOTION TO DISMISS

ABBREVIATIONS AND GLOSSARY OF TERMS

| TERM | DEFINITION/MEANING |
|---|---|
| 2019 Merger | Merger transaction entered into on or about March 9, 2019 by F5N and NGINX BVI. *See* Compl. ¶389. |
| Alexeev | Defendant Andrey Alexeev, a co-founder of Defendant NGINX BVI. |
| Affiliates | Third-party users and companies who download copies of the NGINX Software and purchase, from Defendants, fee-based subscriptions and licenses to NGINX Plus and other commercial components of the Copyrighted Works. *See* Compl. ¶729. |
| BV NGINX | Defendant BV NGINX, LLC |
| Christophoroff | Alexander Christophoroff, Gowling WLG (International), Inc., Russian Law Expert for Lynwood |
| Complaint or Compl. | Lynwood's Complaint (ECF No. 1) |
| Copyrighted Works | The (i) the open source NGINX Software conceived and/or developed from 2001 until the end of 2011; (ii) all NGINX Plus software modules conceived and/or developed before the end of 2011; (iii) all of the foregoing software, in source code and executable form, to the extent that such software comprises, or is included in, any or all post-2011 versions, releases, improvements and/or derivations of: (a) the open source NGINX Software; and/or (b) any commercial products licensed or sold by the Defendants, including without limitation, NGINX Plus, NGINX Amplify, NGINX Controller, and NGINX Unit; and (iv) all copyright rights and other intellectual property rights inherent therein or appurtenant thereto. *See* Compl. ¶702 |
| CUTSA | California Uniform Trade Secrets Act |
| Defendants | Defendants Konovalov, Sysoev, Alexeev, Dounin, Smirnoff, Robertson, F5, Eventures, Runa, NGINX BVI, NGINX Software, Inc., BV NGINX, and NGINX DE. |
| Disloyal Employees | Defendants Konovalov, Sysoev and Smirnoff, formerly employed by Rambler, and later by Defendant NGINX BVI. Konovalov and Sysoev are now employed by Defendant F5 Networks. *See* Compl. ¶82 |

Burke, Williams & Sorensen, LLP
Attorneys At Law
San Jose

- vi -

CASE NO. 5:20-CV-03778-LHK
PLAINTIFF'S MEMO PTS. AND AUTHS. IN
OPPOSITION TO MOTION TO DISMISS

| | |
|---|---|
| Dounin | Defendant Maxim Dounin, a Rambler employee from 2004 to 2007, and later an employee of Defendant NGINX BVI. |
| Eventures | Defendant E.Venture Capital Partners II, LLC, a venture capital firm. |
| F5 Defendants | Defendants F5 Networks, Inc., NGINX BVI and NGINX Software, Inc. |
| F5 | Defendant F5 Networks, Inc., which acquired NGINX BVI and NGINX Software, Inc. in 2019 for $670 million. |
| Konovalov | Defendant Maxim Konovalov, a Rambler employee from 2008 to 2011, and a co-founder of Defendant NGINX BVI, who is now employed by Defendant F5 Networks. |
| Korotkov | Non-Party Alexander Korotkov, a former Rambler employee and described in the Complaint as the Whistleblower |
| Lynwood | Plaintiff Lynwood Investments CY Limited |
| Muranov | Alexander Muranov, Muranov, Chernyakov and Partners, Russian Law Experts for the Individual Defendants |
| NGINX BVI | Defendant NGINX, Inc. (BVI) |
| NGINX Conspirators | Defendants NGINX BVI, NGINX Software, Inc., BV NGINX, LLC and NGINX, Inc. (DE) |
| NGINX DE | Defendant NGINX, Inc. (DE) |
| NGINX Enterprise | The NGINX Software, commercial (paid) derivatives and extensions thereof, including NGINX PLUS, the NGINX Trademarks, the NGINX brand, associated goodwill and name recognition, installed user base, and related business opportunities *See* Compl. ¶¶22, 51, 213, 229, 257, 284, 294, 378, 387, 379, 426, 523, 377, 378. |
| NGINX Plus | A commercial version/derivation of the NGINX Software with added features and functionality for paying subscribers. *See* Compl. ¶31. |
| NGINX Software | Web server software developed by Defendant Sysoev as a work made for hire while he was employed by Rambler from 2000 through 2011 with the assistance of other Rambler employees, and using Rambler facilities and resources, as part of his job responsibilities. *See* Compl. |

Burke, Williams & Sorensen, LLP
Attorneys At Law
San Jose

- vii -

CASE NO. 5:20-CV-03778-LHK
PLAINTIFF'S MEMO PTS. AND AUTHS. IN
OPPOSITION TO MOTION TO DISMISS

¶11.

| | |
|---|---|
| NGINX Software, Inc. | Defendant NGINX Software, Inc. |
| NGINX trademark | The NGINX trademark |
| NGINX Trademarks | The trademarks NGINX, NGINX (Stylized), NGINX PLUS, NGINX CONTROLLER and NGINX UNIT. |
| Plaintiff or Lynwood | Plaintiff Lynwood Investments CY Limited |
| Rambler | Rambler Internet Holding LLC, a Russian media company and former employer of the Disloyal Employees that assigned its ownership rights in the NGINX Enterprise to Plaintiff Lynwood. |
| Robertson | Defendant Angus Robertson, NGINX BVI's former CEO, who is now employed by Defendant F5 Networks. |
| Runa | Defendant Runa Capital, Inc., a venture capital firm. |
| Smirnoff | Defendant Gleb Smirnoff, a Rambler employee from 2006 to 2012 and subsequently a NGINX BVI employee. |
| Sysoev | Defendant Igor Sysoev, the primary author of NGINX and NGINX Plus, a Rambler employee from 2000 to 2011, and a co-founder of NGINX BVI, who is now employed by Defendant F5 Networks. |
| Team | Defendants Sysoev, Konovalov, Smirnoff, Alexeev and Dounin. *See* Compl. ¶82. |
| VCs | Defendants Runa and Eventures. |

Burke, Williams & Sorensen, LLP
Attorneys At Law
San Jose

- viii -

CASE NO. 5:20-CV-03778-LHK
PLAINTIFF'S MEMO PTS. AND AUTHS. IN
OPPOSITION TO MOTION TO DISMISS

1

2

### INTRODUCTION

3  Defendants Konovalov, Sysoev, Alexeev, Dounin, Smirnoff, and Robertson ("IDs")

4  financed and operated the NGINX Enterprise[1] stolen by the Team in California, and achieved the

5  object of their conspiracy – selling the NGINX Enterprise to F5 – in California.  The Disloyal

6  Employees actively and fraudulently concealed their scheme from Rambler.  It was only when the

7  Team's jettisoned co-conspirator Korotkov blew the whistle on the Team in mid-2019, and

8  explained to Rambler how the Disloyal Employees destroyed evidence to cover their tracks, that

9  Rambler had reason and the means to investigate Defendants' wrongdoing.  Rambler immediately

10  undertook an extensive investigation, including the forensic recovery of data unlawfully deleted by

11  the Disloyal Employees.  The investigation concluded in early 2020, and Lynwood, as Rambler's

12  assignee, promptly filed this action on June 8, 2020.  Thus, Lynwood timely sued IDs in this Court,

13  which has jurisdiction because the unlawful acts occurred in California.

14  The extensive and detailed allegations in the Complaint state valid claims against the IDs,

15  who were central to the architecture and execution of the conspiracy to steal Rambler's NGINX

16  Enterprise.  Faced with these allegations, IDs resort to mischaracterizing Lynwood's claims and

17  relying on a discredited and self-contradicting Russian lawyer – Muranov – to improperly resolve

18  factual disputes to argue for pre-discovery dismissal.  The Court should reject IDs' improper

19  motion, and permit this case to proceed to a merits-based adjudication.

20

### FACTUAL BACKGROUND

21  Sysoev developed the NGINX Software as a work for hire at Rambler's direction and for

22  Rambler's benefit, using Rambler infrastructure, resources and personnel, as part of his duties while

23  employed by Rambler for a decade, beginning in 2000. ¶¶1, 15, 113, 224, 392-393, 396-398, 480-

24  523.[2]  After Konovalov joined Rambler as its Chief Technology Officer in 2008, the Disloyal

25  Employees recognized the NGINX Enterprise's tremendous value as the centerpiece of a business

26  enterprise that would include commercial NGINX Software derivatives and extensions, such as

27  [1] Capitalized terms not defined in the brief are defined in the preceding glossary.

28  [2] Unless otherwise noted, all cited paragraphs are to the Complaint (Dkt. No. 1).

Burke, Williams &
Sorensen, LLP
Attorneys At Law
San Jose

CASE NO. 5:20-CV-03778-LHK
PLAINTIFF'S MEMO PTS. AND AUTHS. IN
OPPOSITION TO MOTION TO DISMISS

NGINX Plus, related service offerings, the NGINX trademark and brand, a large installed user base, associated goodwill, and related business opportunities – the NGINX Enterprise. ¶¶26, 219-230, 247, 254-57.  Instead of apprising Rambler about the valuable NGINX Enterprise, the Team concealed the NGINX Enterprise from Rambler and subsequently monetized it for themselves. ¶¶13, 20, 26, 27, 44, 192, 251, 637, 704.  The Disloyal Employees affirmatively misrepresented to Rambler that the NGINX Software had zero value, hid Sysoev's development of NGNIX Plus and other commercial derivatives, concealed the existence and value of the NGINX Enterprise, covertly made plans with venture capitalists, and destroyed evidence of their wrongdoing as they exited Rambler in 2011 and 2012.  ¶¶4, 5, 9, 12, 44-45, 284, 201, 214, 221, 223, 284, 288-303, 463, 584.

The Disloyal Employees were shopping the NGINX Enterprise to VCs and projecting that they stood to earn $30 million from two rounds of financing while Konovalov was representing to Rambler that the NGINX Software was worthless.  In presentations, the Team articulated the end goal of the conspiracy to be a sale to a large United States technology company, including, specifically, F5.  Dkt. No. 106-6, p. 20.  The Team even formed corporate entities, headquartered in California, and filed U.S. trademark applications for the NGINX trademark while still employed by Rambler, all in violation of the Disloyal Employees' employment agreements with Rambler and Rambler's internal written policies. ¶¶185-86, 194, 212, 254-78, 307-332, 473, 535.

The Team, under the stewardship of Robertson, who joined as NGINX BVI's CEO in 2012, grew Rambler's NGINX Enterprise into a highly valuable business, raising $100 million in seed capital. ¶¶385-388.  The Team purposefully and strategically headquartered the NGINX Enterprise in the Northern California technology hub, taking advantage of the credibility and cache of being a U.S. start-up. ¶¶249, 318.  The Team successfully (and covertly) stole the NGINX Enterprise and, within roughly twenty-one months of Sysoev's departure from Rambler, introduced their first commercial NGINX Plus products, which consisted of purloined commercial NGINX code initially conceived of and covertly developed by Sysoev while he was employed by Rambler. ¶¶247, 281, 701.  In March 2019, the Team sold the NGINX Enterprise to F5 for $670 million in a transaction entered into in San Francisco.  Ex. 2 to Declr. Of Alexander Pencu ("PD").  The transaction closed in May 2019 (¶¶389-417), and the NGINX Enterprise remains headquartered in San Francisco as a

subsidiary of F5, with Robertson, Konovalov, Sysoev, and Dounin still at the helm.  ¶¶409-414.

In the spring of 2019, Korotkov—who was formerly employed by Rambler and participated with the Team's preparation to exploit the NGINX Enterprise until he was jettisoned by the Team— blew the whistle and informed Rambler that the Team had misappropriated the NGINX Enterprise from Rambler and explained how the Team had concealed their activity from Rambler. ¶¶455-465. Korotkov's disclosure sparked an extensive investigation into his accusations, including forensic recovery of data illegally deleted by the Disloyal Employees. ¶466. The investigation revealed that the Team had covertly misappropriated the NGINX Enterprise from Rambler and destroyed evidence of their wrongful acts. ¶467.  In April 2020, Rambler assigned the NGINX Enterprise to Lynwood (¶¶478-79), and on June 8, 2020, Lynwood timely filed this action.  *See* Dkt. No.  1.

## ARGUMENT

On a motion to dismiss, courts must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

**I.    Lynwood's Claims are Timely**

**A.    California and U.S. Copyright Statutes of Limitations Law Apply**

IDs concede California and U.S. Copyright law supply the statutes of limitations rules for this case. Br. 4.[3]  IDs maintain that Russian law and California law are similar. Br., 8 n. 5.  Thus, there is "no need to engage in a lengthy exegesis of" foreign law because IDs have not even given "perfunctory attention to the substantive differences between the laws of California" and Russia. *Ins. Co. of N. Am. v. Fed. Exp. Corp.*, 189 F.3d 914, 921 (9th Cir. 1999) (finding "no true conflict" of laws).  "The proponent of the other forum's law bears the burden of establishing that the other forum's law differs materially from California's, and demonstrat[ing] how applying that law will further the interest of that jurisdiction." *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 2013 WL 4530470, at *11 (N.D. Cal. 2013).  In fact, IDs establish that there is no conflict between Russian law and U.S. law.  IDs' expert Muranov concedes that Russian law (like California law)

---

[3] Dkt. No. 106 ("Br.").

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

- 3 -

CASE NO. 5:20-CV-03778-LHK
PLAINTIFF'S MEMO PTS. AND AUTHS. IN
OPPOSITION TO MOTION TO DISMISS

encompasses the discovery rule, delayed accrual, and even judicial discretion for extending statutes of limitation. Dkt. No. 106-7 ¶¶91, 93-95, 106, 112-114. Muranov also concedes that a Russian court would not hesitate to toll the running of the limitations period until after a plaintiff completed a one-year investigation "in order to establish for sure whether any violation [of its rights] indeed had taken place." *Id.* ¶102; *see also* ¶¶103-104. For completeness, Lynwood's Russian legal expert, Christophoroff, has submitted expert opinion evidence regarding Russian law on limitations in his Declaration ("CD") ¶¶99-127, which also establishes that Russian law is no different than California law on the accrual and tolling of statutes of limitation. As there is no conflict of law identified by any party, the Court should apply California law.[4] *See CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1143 (9th Cir. 2010).[5]

### B.   The Statute of Limitations Accrued No Earlier Than the Merger Closing

IDs' assertion that Lynwood's claims accrued in 2011 is baseless, and ignores the continuing nature of Defendants' wrongdoing.[6]

#### 1.   The limitations period starts upon any conspirators' last overt act

"When a civil conspiracy is properly alleged and proved, the statute of limitations does not begin to run on any part of a plaintiff's claims until the last overt act pursuant to the conspiracy has been completed." *Wyatt v. Union Mortg. Co.*, 24 Cal. 3d 773, 786 (1979) (holding the trial judge properly declined to give an SOL instruction in a mortgage fraud case because "the last overt act was appellants' collection a few weeks before trial of the final payment on the 1970 loan"). Under

---

[4] "[I]t is premature to conduct a detailed choice-of-law analysis at this stage of the litigation. Courts have declined to conduct such an analysis at the motion to dismiss stage where further development of the record is necessary to properly decide the choice-of-law question." *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1170 (N.D. Cal. 2019).

[5] IDs' citation to *Rustico v. Intuitive Surgical, Inc.*, 424 F. Supp. 3d 720, 726 (N.D. Cal. 2019), is misplaced. The Court found the plaintiffs "fail[ed] to demonstrate that the instant case represents one of the 'rare exceptions' in which the [foreign] statute of limitations, rather than the California statute of limitations, applies." *Id.* at 728. The *Rustico* court found that the conflict of laws was "false," because even though the applicable statutes of limitations of California and Connecticut differed, Connecticut had no interest in the application of its statute. *Id.* at 729.

[6] IDs state they concur with VCs' arguments. Br. 5, n. 4. IDs also reference F5's argument regarding the statute of limitations for Copyright claims, but make no such argument themselves. Br. 5. Lynwood incorporates by reference its arguments in response to VCs and F5's motions. Dkt. 116, pp. 6-13; Dkt. 115, pp. 20-22.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

- 4 -

CASE NO. 5:20-CV-03778-LHK
PLAINTIFF'S MEMO PTS. AND AUTHS. IN
OPPOSITION TO MOTION TO DISMISS

California law, acts of purposeful concealment after the object of the conspiracy is finally achieved further delays the accrual of the SOL. *See Livett v. F.C. Fin. Assocs.*, 124 Cal. App. 3d 413, 415 (Ct. App. 1981) (reversing grant of summary judgment because the "facts presented by the plaintiff are susceptible of inferences which could lead a trier of fact to conclude that tortious acts were committed within the statutory period"). The *Livett* court ruled that the "nature and scope of the conspiracy in this case requires factual analysis" and "resolution by trial." *Id.* at 421; *see also Utah v. McKesson Corp.*, 2011 WL 2884922 (N.D. Cal. 2011) (denying MTD because the lawsuit was filed less than two years after the last overt act, which was an act of concealment); *Raceway Properties, LLC v. LSOF Carlsbad Land L.P.*, 157 F. App'x 959 (9th Cir. 2005) ("Improbable though it may be, we cannot say that the statute of limitations has run as a matter of law on the fraud claim given the averment that the last overt act occurred within the statutory period").

## 2. IDs engaged in a continuing violation

"[T]he continuing violation doctrine aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them." *Reiser v. Marriott Vacations Worldwide Corp.*, 2018 WL 2762024, *4 (E.D. Cal. Jun. 8, 2018) (applying the continuing violation doctrine to find complaint timely, where plaintiffs described a "multi-year, ongoing pattern of conduct" by defendants that destroyed plaintiffs' interest in condominium units and supported claims for breach of fiduciary duty and breach of contract); *see also Sacramento E.D.M., Inc. v. Hynes Aviation Industries, Inc.*, 761 Fed. App'x 678, 680 (9th Cir. 2019) (applying the continuing violation doctrine to find a complaint timely, where the alleged constructive fraud and breach of fiduciary duty occurred over a period of years). The wrongful conduct in this case spanned years, but IDs' wrongful acts were not a series of discrete, independently actionable wrongs. Thus, Lynwood's claims did not accrue until, at the earliest, 2019.

## 3. IDs' accrual argument lacks merit

Without addressing the accrual date applicable in a conspiracy or the continuing wrong doctrine, and without citing a single case, IDs argue that all of Lynwood's claims accrued in 2011. Br. 5. IDs ignore the continuing nature of their wrongful conduct, which consisted of concealing

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

- 5 -

CASE NO. 5:20-CV-03778-LHK
PLAINTIFF'S MEMO PTS. AND AUTHS. IN
OPPOSITION TO MOTION TO DISMISS

the NGINX Enterprise from Rambler, operating it in California, and then selling it to F5.  ¶¶1-55, 82, 185, 192-230, 244-266, 282-285, 288-305.  Moreover, IDs' assertion that Lynwood's claims accrued in 2011 "when Konovalov and Sysoev left Rambler and openly stated that they intended to form their own company commercializing NGINX" (Br. 5) mischaracterizes the Complaint. Lynwood alleges that during their employment, the Disloyal Employees concealed from Rambler the existence, value, and utility of the NGINX Enterprise and that NGINX Plus was in development. ¶¶31-46, 194-195, 209, 213, 215, 225, 282, 284, 398, 457-462. Upon their separation from Rambler they represented to Rambler that they would be merely providing support services for the NGINX open source software, which Konovalov had always told Rambler was worthless. ¶281.

### C.    Lynwood's Claims Are Timely Due to IDs' Fraudulent Concealment

The doctrine of fraudulent concealment "tolls the statute of limitations where a defendant, through deceptive conduct, has caused a claim to grow stale." *Philips v. Ford Motor Co.*, 2015 WL 4111448, *7 (N.D. Cal. Jul. 7, 2015). It applies where "the defendant fraudulently concealed the existence of a cause of action in such a way that the plaintiff, acting as a reasonable person, did not know of its existence.'" *In re Animation Workers Antitrust Litig.* ("*Animation Workers II*"), 123 F. Supp. 3d 1175, 1194 (N.D. Cal. 2015).  "Ordinarily, a defendant has an extremely difficult burden to show that [fraudulent concealment allegations are] barred as a matter of law." *In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 782 F. Supp. 487, 489 (C.D. Cal. 1991).  A plaintiff sufficiently alleges "affirmative acts" of concealment where, as here, it asserts that defendants made false statements and engaged in efforts to destroy evidence and keep their conspiracy secret. *See, e.g., Animation Workers II*, 123 F. Supp. 3d at 1203.  Moreover, "silence may be sufficient to show fraudulent concealment where there is an affirmative duty to disclose, e.g., a fiduciary duty." *Id.* at 1198, n. 13.

Lynwood pleads with particularity facts that require tolling of the statute of limitations for all claims based on the fraudulent concealment doctrine (¶¶288-306, 455-467, 683-684), namely that "(1) the defendant[s] took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have actual or constructive knowledge of the facts giving rise to its claim[s]; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim[s]." *Animation Workers II*, 123 F.

Burke, Williams & Sorensen, LLP
Attorneys At Law
San Jose

- 6 -

CASE NO. 5:20-CV-03778-LHK
PLAINTIFF'S MEMO PTS. AND AUTHS. IN
OPPOSITION TO MOTION TO DISMISS

Supp. 3d at 1194.  The Team took extensive steps to conceal Rambler's causes of action.  ¶¶18-19, 47, 68-69, 288-303, 557-558, 579, 601.  Indeed, the Team went so far as to destroy evidence, which would have made it impossible for Rambler to investigate potential claims until after Korotkov came forward and revealed ID's destruction of evidence and concealment such that Rambler could conduct a forensic data recovery with Korotkov's roadmap.  ¶¶296-304, 457-465.  Korotkov's roadmap allowed Rambler and Lynwood to promptly and extensively investigate, which they did.  ¶¶466-467.

"[T]he question of constructive knowledge and inquiry notice generally 'presents a question for the trier of fact.'"  *Animation Workers II*, 123 F. Supp. 3d at 1204. A plaintiff's "[m]ere suspicion is not enough" to show "the plaintiff is aware of <u>facts</u>." *In re Cathode Ray Tube (CRT) Antitrust Litig*., 2016 WL 8669891, at *5, n.1 (N.D. Cal. Aug. 22, 2016) (emphasis in original); *see also In re Glumetza Antitrust Litig.*, -- F.Supp.3d --,  2020 WL 1066934, *6-7 (N.D. Cal. Mar. 5, 2020) (while though "plaintiffs were on notice of two key aspects of the pharmaceutical pay-for-delay scheme," the court denied defendants' motions to dismiss because "at least at this stage, the complaint plausibly shows that knowledge of [a concealed term of a settlement agreement] was necessary to excite the curiosity of the reasonable person."

### D.     The Discovery Rule Delays Accrual

"Under California law, the discovery rule may postpone accrual of an applicable statute of limitations until a party either (1) actually discovered his injury or (2) could have discovered the injury and cause through the exercise of reasonable diligence." *H.B. Filmes, Ltd. v. CBS, Inc*., 98 Fed. App'x. 596, 598 (9th Cir. 2004) (reversing grant of summary judgment on SOL grounds because the discovery rule presented "a triable issue of fact").  "[T]he discovery rule applies to statutes of limitation in federal litigation" such "that a limitations period begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Lyons v. Michael & Assocs*., 824 F.3d 1169, 1170 (9th Cir. 2016) (reversing dismissal order based on the discovery rule). "Ordinarily, the question of when a plaintiff had actual or constructive knowledge of a fraud is a question of fact for the jury." *Utah*, 2011 WL 2884922 at *3.

Lynwood extensively alleges the Team carried out their conspiracy covertly. ¶¶12, 13, 20,

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

- 7 -

CASE NO. 5:20-CV-03778-LHK
PLAINTIFF'S MEMO PTS. AND AUTHS. IN
OPPOSITION TO MOTION TO DISMISS

23, 26, 30, 209, 212, 215, 224, 230, 533, 534, 635, 639.  Rambler lacked knowledge of the claims, and the steps taken by the Disloyal Employees to conceal the claims, including destruction of evidence. ¶¶288-306, 455-467, 472-77, 683-684.  It was only after Korotkov came forward that Rambler and Lynwood had sufficient information to conduct an effective investigation that uncovered the scheme (¶¶455-77), including because Korotkov told Rambler about the Disloyal Employees' evidence destruction which sparked the forensic investigation and data recovery operation that yielded incriminating information. ¶¶463, 466-67.  Rambler's discovery of its claims was only possible after Korotkov blew the whistle, and thus the timing of this lawsuit is reasonable.

### E.   IDs' Arguments Against Tolling and Delayed Accrual Lack Merit

To bar application of the discovery rule, a plaintiff must have had knowledge of the injury and that the defendant caused the injury. *See Synopsys, Inc. v. Magma Design Automation, Inc.*, 2005 WL 8177857, *5 (N.D. Cal. May 18, 2005).  Moreover, plaintiff must know the specific facts that give rise to its pleaded claim.  *H.B. Filmes, Ltd.*, 98 Fed. App'x. at 598.  IDs impermissibly ask the Court to decide disputed facts and prematurely adjudicate application of the discovery rule.  IDs argue that Rambler knew about Sysoev's development of the NGINX opensource software such that Rambler should have investigated the Disloyal Employees' conduct in 2015.  Br. 6-7.  This is the same argument rejected by the Ninth Circuit in *H.B. Films*: "However, those documents do not indicate whether H.B. was specifically aware that CBS was packaging Kiss with allegedly less valuable titles while attributing the same amount of profit to each title in the package; only the Complaint filed in the present litigation makes any such allegation."  *Id*.  The facts underlying Plaintiff's claims were not known, and could not have been known, until late 2019 at the earliest.

IDs ignore several key facts Lynwood pleads in the Complaint.  Lynwood pleads that Sysoev intentionally only asserted authorship of the NGINX opensource code (¶¶304-306), "but was always silent on the subject of ownership" (¶304) "to avoid a confrontation with Rambler over the NGINX Software ownership rights." ¶305.  This is material, because Russian law distinguishes between authorship and ownership of copyrights such that it is common for employees to be identified as authors while the employer is the owner of the copyright.  ¶¶306, 482-489.  In addition, Lynwood pleads substantial concealment by the Disloyal Employees of their conspiracy; the

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

- 8 -

CASE NO. 5:20-CV-03778-LHK
PLAINTIFF'S MEMO PTS. AND AUTHS. IN
OPPOSITION TO MOTION TO DISMISS

existence, value, and utility of the NGINX Enterprise; the covert development of NGINX Plus while at Rambler, and Rambler's causes of action, including by destroying evidence.  ¶¶31-46, 194-195, 281-285, 288-303.  The assignment agreement in 2015 was entered into "prophylactically" in connection with a restructuring of Rambler's ownership to assign rights to Lynwood in the event any wrongdoing occurred in the future or past misconduct came to light. ¶¶281, 468-472.

IDs' argument that the assignment executed in 2015 proves Rambler's knowledge of its claims also lacks merit.  Br. 7. Lynwood pleads that as of the 2015 assignment Rambler was unaware of its potential claims, and it was only when Korotkov blew the whistle on the Disloyal Employees' fraudulent concealment that Rambler could have investigated and discovered the wrongdoing – exactly what Rambler and Lynwood did in 2019. ¶¶471-77.  Moreover, as *Fox v. Ethicon Endo-Surgery, Inc*., 35 Cal. 4th 797, 807 (2005), cited by IDs (Br. 5), makes clear, constructive knowledge is only chargeable if, at the time of alleged suspicion, the plaintiff could have uncovered the evidence anchoring its claims.  Here, the Disloyal Employees evidence destruction made it impossible for Rambler to investigate until Korotkov came forward. ¶¶463, 466-67.  The factual dispute concerning Rambler's knowledge cannot be resolved at this stage of the case. *See Free FreeHand Corp. v. Adobe Sys. Inc*., 852 F. Supp.2d 1171, 1188 (N.D. Cal. 2012) (denying dismissal because "it does not appear beyond doubt that Plaintiffs can prove no set of facts that would establish the timeliness of their claim").

## II.   Only Counts 2 Through 6 are Governed by Russian Law

Only Counts 2-6 are governed by Russian law. A substantial portion of Defendants' misconduct occurred in California, and California is where the Team achieved the object of their conspiracy by selling Rambler's NGINX Enterprise to F5. California applies the three-step governmental interest analysis: "(1) begins by determining whether the laws of each relevant jurisdiction differ on the applicable points of law; then (2) examines each jurisdiction's interest in the application of its own law to the circumstances in the case; and (3) finally weighs the interests of the various jurisdictions to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state." *Tasion Commc'ns, Inc. v. Ubiquiti Networks,*

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

- 9 -

CASE NO. 5:20-CV-03778-LHK
PLAINTIFF'S MEMO PTS. AND AUTHS. IN
OPPOSITION TO MOTION TO DISMISS

*Inc.*, 2013 WL 4530470, *11 (N.D. Cal. 2013).  IDs perform no governmental interest analysis, and thus have completely failed their burden.  The Court should not permit IDs to try it for the first time on reply.  *Rivera v. Saul Chevrolet, Inc.*, No. 2017 WL 3267540, *6 (N.D. Jul. 31, Cal. 2017).

### A.    IDs Fail to Establish Material Differences in Law

Where "[t]he proponent of the other forum's law" cannot meet its burden to establish "material differences in the laws of the different jurisdictions, the trial court may apply California law."  *Am. Licorice Co. v. Total Sweeteners, Inc.*, 2013 WL 4396778, at *5 (N.D. Cal. 2013) (holding that "[s]ince no party has pointed to a relevant difference between the law of California and the law of either Illinois or Oregon, the Court applies California law as an initial matter").  In such situations, "the case presents no true conflict," "California is entitled to apply its own law," *Ins. Co. of N. Am. v. Fed. Exp. Corp.*, 189 F.3d 914, 921 (9th Cir. 1999), and "[t]he choice of law inquiry therefore ends with step one, as the laws of the two states do not differ." *Channell Commercial Corp. v. Wilmington Mach. Inc.*, 2016 WL 7638180, at *7 (C.D. Cal. 2016).

### B.    California has the greater interest than Russia in applying its law

The proponent of a foreign state's law "must demonstrate" that applying foreign law "will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it." *Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 919 (2001).  Even "[d]espite materially different laws, there is still no problem in choosing the applicable rule of law where only one of the states has an interest in having its law applied.  This means the trial court may properly find California law applicable without proceeding to the third step in the analysis if the foreign law proponent fails to identify any actual conflict or to establish the other state's interest in having its own law applied." *Washington Mut. Bank, FA*, 24 Cal. 4th at 920.  Here, IDs have failed to establish Russia's interest in having its own law applied and therefore have not met their burden.  *See Martinez v. Knight Transportation, Inc*, 2018 WL 6308110, *9 (E.D. Cal. Dec. 3, 2018)* ("[b]ecause defendant has failed to satisfy its burden as to the second prong of the governmental interest test, the court need go no further in its analysis").  Nor should the Court permit IDs to now raise these arguments on reply where Lynwood would be unable to respond.  *Rivera*, 2017 WL 3267540 at *6.

Burke, Williams &
Sorensen, LLP
Attorneys At Law
San Jose

- 10 -

CASE NO. 5:20-CV-03778-LHK
PLAINTIFF'S MEMO PTS. AND AUTHS. IN
OPPOSITION TO MOTION TO DISMISS

"California has a legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices." *Diamond Multimedia Sys., Inc. v. Superior Court*, 968 P.2d 539, 557 (CA 1999).  California also has a strong interest in adjudicating other tortious conduct, including civil conspiracies to commit torts, such as the conspiracy at issue here. *See, e.g., Bowoto v. Chevron Corp.*, 2006 WL 2455761, *9-10 (N.D. Cal. Aug. 22, 2006) (where Nigerian law did not recognize civil conspiracy cause of action, and "a true conflict exists between California law and Nigerian law" on that cause of action, court held that California law should apply to it and several other tort claims; otherwise California's "interest in ensuring that its corporations behave in an appropriate manner" would otherwise be "significantly impaired" and Nigeria did not have a "legitimate" interest in "depriving the plaintiffs of a mechanism to recover").

"As an incubator of … technological innovation, California has a significant interest in" resolving issues concerning application of "California's common law of property or tort" to protect copyright owners." *Flo & Eddie, Inc. v. Pandora Media, Inc*., 851 F.3d 950, 955 (9th Cir. 2017). Courts in this district have "compelling interests" in "protecting intellectual property rights that stem from research and development in Silicon Valley," and in adjudicating claims that "call into question the work and reputation of several individuals residing in or conducting business in this community." *Google Inc. v. Rockstar Consortium U.S. LP*, 2014 WL 1571807, *10 (N.D. Cal. Apr. 17, 2014).  Thus, California has a strong interest in this dispute.

### C. The Comparative Impairment Factor Favors California Law

*As IDs failed to conduct an analysis of the relative government interests, the Court need not* weigh this factor and can simply reject IDs' assertion that Russian law applies to Counts 7, 10, 13, and 14.  *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, *3 (C.D. Cal. Apr. 9, 2014).  Should the Court analyze this factor, it dictates that California law applies.  In *R & R Sails, Inc. v. Ins. Co. of State of Pennsylvania*, 610 F. Supp. 2d 1222 (S.D. Cal. 2009), the court rejected defendant's argument, made after discovery, that Australian law should apply, noting that "The laws of California and Australia are materially different, making the choice of law analysis a matter of great importance in this case." *Id.,* 1227-28.  Here, given California's significant interest in having its law applied, its interest and policies would be severely impaired if contrary law were applied.  *See*

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

- 11 -

CASE NO. 5:20-CV-03778-LHK
PLAINTIFF'S MEMO PTS. AND AUTHS. IN
OPPOSITION TO MOTION TO DISMISS

*Cantran Grp., Inc. v. Cups, LLC*, 2020 WL 4873564, *3-4 (C.D. Cal. Jul. 1, 2020).  On the other hand, to the extent Russia seeks to deter fraud and wrongdoing, its interests would be served – not impaired – by the application of California law to punish the IDs.

### III.   Lynwood Pleads Claims Upon Which Relief May Be Granted

As an initial matter, the Court should reject IDs' assertion, made without any argument, that Lynwood did not comply with Rule 9(b). Br. 8.[7]  The Complaint is detailed and specific.

### A.   Lynwood's Civil Conspiracy Claim is Valid (Count 1)

IDs make three unsuccessful conspiracy arguments.   First, while Lynwood recognizes that conspiracy is not an independent cause of action but rather a claim for relief in the form of joint and several liability, it can be pled as a standalone claim. *Wu*, 2019 WL 6603172, *2.

Second, while IDs make no arguments for Konovalov, Sysoev, and Smirnoff, IDs contend Dounin, Alexeev, and Robertson cannot be conspirators because Dounin separated from Rambler in 2007 and Alexeev and Robertson did not work for Rambler.  Br. 9.  IDs propose a fiction that Lynwood's conspiracy claim merely asserts a conspiracy to breach the Disloyal Employees' fiduciary duties to Rambler.  Br. 9.  In reality, the conspiracy alleged in the Complaint is far broader than the Disloyal Employees' breach of their duties.   ¶¶525-553.   IDs' participation in the conspiracy led to them ultimately cashing out in a $670,000,000 merger with F5 (¶404), as well as fraudulently registering and purporting to assign valuable trademarks in furtherance of the conspiracy. ¶¶307-332, 540.  Moreover, California recognizes an exception to "the general rule … that a party who is not personally bound by the duty violated may not be held liable for civil conspiracy even though it may have participated in the agreement underlying the injury." *Mosier v. S. California Physicians Ins. Exch.*, 63 Cal. App. 4th 1022, 1048 (1998). That exception "exists when the participant acts in furtherance of its own financial gain," as IDs are accused of doing here. *See, e.g., Wu v. Oregon Trail Corp.*, 2019 WL 6603172, *3 (C.D. Cal. Jul. 31, 2019) (applying exception to deny motion to dismiss civil conspiracy claim).

---

[7] IDs also generally join in F5's and VC's arguments without identifying the claims, issues or arguments in which they purport to join, instead citing to essentially the entire briefs.  Br. 9.  The Court should reject IDs' request or, alternatively, the Court should consider Lynwood's arguments in response to F5's and VCs' motions.  Dkt. No. 115, No. 116.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

- 12 -

CASE NO. 5:20-CV-03778-LHK
PLAINTIFF'S MEMO PTS. AND AUTHS. IN
OPPOSITION TO MOTION TO DISMISS

Third, IDs assert that Robertson is not part of the conspiracy because he did not join NGINX BVI until 2012.  Br. 10.[8]  Here, Robertson was integral and active for years of wrongdoing – Robertson ran Rambler's stolen NGINX Enterprise and was integral to achieving the ultimate object of the conspiracy to sell the NGINX Enterprise to F5.  ¶¶385-388, 547-551.  Robertson personally profited from the merger, and remains the leader of the NGINX Enterprise.  ¶¶409, 413. Moreover, it has long been "the settled rule that to render a person civilly liable for injuries resulting from a conspiracy of which he was a member, it is not necessary that he should have joined the conspiracy at the time of its inception; everyone who enters into such a common design is in law a party to every act previously or subsequently done by any of the others in pursuance of it."  *de Vries v. Brumback*, 53 Cal. 2d 643, 648, 349 P.2d 532, 535-37 (Cal.1960); *see also Favila v. Katten Muchin Rosenman LLP*, 188 Cal. App. 4th 189, 206, 211 (Cal. App. 2010), *as modified on denial of reh'g* (2010) (whether defendant "was not involved at the outset of the purported fraudulent scheme is irrelevant" because the defendant is still "responsible for all acts done as part of the conspiracy if [he] knowingly agreed to commit fraud and intended to aid its commission").

### B.    Lynwood States a Claim for Aiding and Abetting (Count 7)

IDs make only two arguments of their own. First, IDs contend that Alexeev and Dounin cannot be liable for aiding and abetting because IDs assert, without any argument in their brief, that the Disloyal Employees did not owe heightened duties to Rambler.  Br. 10.  As Lynwood's expert establishes with extensive authority, the Disloyal Employees did owe Rambler heightened duties under Russian law (CD¶¶75-98), and confirms their duties survived separation from Rambler. CD¶95.  Articles 53.1 and 53 of the Russian Civil Code, and Article 44 of the Law on Limited Liability Companies provide the statutory basis for the Disloyal Employees' heightened duties. CD¶¶75-80.  Christophoroff also details Russian case law supporting Lynwood's claims against IDs (CD¶¶81-84, 90, 96), and details the errors made by Muranov. CD¶¶91-93.

To the contrary, IDs' expert Muranov failed to support his conclusions regarding the Disloyal Employees duties, and failed to provide any translated Russian legal authority.  *Apple Inc.*

---

[8] IDs cite *Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1173 (Cal. App. 2016), which merely held that the agreement to conspire must occur before the wrongdoing occurs.

*v. Samsung Elecs. Co.*, 2012 WL 1672493, at *11 (N.D. Cal. May 14, 2012) ("Although, pursuant to Rule 44.1, courts may ascertain foreign law through numerous means, expert testimony accompanied by extracts from foreign legal materials has been and will likely continue to be the basic mode of proving foreign law"); *see also MVP Asset Mgmt. (USA) LLC v. Vestbirk*, 2011 WL 4407560, *2 (E.D. Cal. 2011) ("While the Court can take judicial notice of the laws of a foreign country, the Court will not take judicial notice of those laws as interpreted by the declarant").   It has been Muranov's prior practice to submit translated Russian legal authority.   *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*, 61 F. Supp. 3d 372, 375, n. 13 (S.D.N.Y. 2014) (referencing Muranov's declaration Dkt. No. 64 of 14-cv-0712 and the docket reveals sixty-three exhibits), *aff'd in part, vacated in part, remanded on other grounds*, 809 F.3d 737 (2d Cir. 2016).

In *Spirits International*, the court heavily criticized Muranov for rendering an opinion without sufficient support in Russian case law and the [Russian] Civil Code." *Id.* at 387 (noting that "[t]he problem for Muranov and [plaintiff] FTE … is that there is little or no support in case law and other provisions of the Civil Code for [the] distinction" on which Muranov's argument "hinge[d]," and finding that "the context of [Russian] Law undermines Muranov's argument"). The *Spirits International* court further found "no concrete evidence, case law, or statutory language supporting Muranov's stance on the purpose of [an] Amendment" to the Russian Civil Code.   *Id.* at 388.   Rather, Muranov made "an unsupported leap" and unpersuasively insisted that the "only official Russian legal position" relevant to the dispute that was "published after the Amendment took effect" – by "an arm of the Russian Federation" – was "mistaken."   *Id.* at 388, n.82.   The court noted that "Muranov attempt[ing] to cherry-pick language" but failed to "point to any case or provision of the Civil Code" to support it.   *Id.* at 389.[9]   It is not surprising, given this experience,

---

[9] Other courts and tribunals around the world have found Muranov's testimony to be unsupported or self-contradictory.  In 2013, in *VTB Capital plc*, the Eastern Caribbean Supreme Court, Territory of the Virgin Islands, issued a judgment concerning the proper forum for a dispute, and observed that Muranov had relied upon a case that was presented to the court in an "internally inconsistent" translation, and which was not of "sufficient weight to trump [the opposing expert's] cogently argued position."  PD Ex. 3, ¶ 25.  Muranov had asserted that the case with the "internally inconsistent translation" was "a fraud case," but the court could not even reach that conclusion.  *Id.* The court noted that, "[a]s to the other cases relied upon by Dr Muranov, I consider that [the opposing expert] is right when he says that they are not … on all fours with the type of complaint

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

- 14 -          CASE NO. 5:20-CV-03778-LHK
PLAINTIFF'S MEMO PTS. AND AUTHS. IN
OPPOSITION TO MOTION TO DISMISS

1   that Muranov ceased his practice of attaching translated legal authorities.  Nor is it surprising that

2   IDs make no argument about Muranov's opinions of Russian law. Given Christophoroff's robust

3   analysis regarding the Disloyal Employees' duties to Rambler, and IDs' flimsy submission, the

4   Court should reject IDs' argument that the Disloyal Employees owed no underlying duties.

5         Second, IDs again ignore the ongoing nature of the wrongful conduct and falsely claim

6   Alexeev and Dounin joined the Disloyal Employees in the conspiracy after the Disloyal

7   Employees' breached their duties to Rambler. Br. 10. The Disloyal Employees' breaches continued

8   as they stole Rambler's NGINX Enterprise, operated it, and then sold it to F5.  The Complaint

9   alleges Alexeev participated in the Team's covert capital raising efforts in March and April 2011

10  while all three Disloyal Employees were working for Rambler.   ¶254. Alexeev admits this fact.

11  Dkt. No. 106-5 ¶¶4-6.  Dounin concedes he started working at NGINX BVI in 2011, while Sysoev

12  was still employed at Rambler. Dkt. No. 106-4 ¶4.  Dounin also worked closely with Sysoev in the

13  development of the NGINX Software while he was employed at Rambler (¶¶187-190), he knew

14  about the Disloyal Employees' obligations to Rambler and Rambler's ownership of the NGINX

15  Enterprise (¶600), and yet he provided substantial assistance in breaching their duties to Rambler.

16  ¶601.  Thus, IDs' argument fails on the law and the facts.

17        **C.     Lynwood Pleads a Tortious Interference with Contract Claim (Count 10)**

18        IDs raise three cursory arguments against Count 10 in the face of Lynbrook's detailed

19  allegations.   Br. 11. First, IDs assert that there are no allegations that Sysoev breached any

20  contractual obligations owed to Rambler or that Konovalov and Robertson knew about the

21  _____

made in this case." *Id.*  Also in 2013, in a final arbitral award, a three-arbitrator panel noted that
22  Muranov wavered in his initial and supplemental reports as to whether a Russian Veterinary Service
     order prohibited cargo from being discharged from a vessel.  *See SEA Metropolitan S.A. v. DGM*
23  *Commodities Corp.*, No. 13CV01521, 2013 WL 1816153, at ¶109 (E.D.N.Y. Mar. 22, 2013).  The
     panel observed that Muranov's initial report said the order's effect was "designed to prevent the
24  Cargo from leaving the vessel," but "[i]n his supplementary report he expressed the view that the
     Veterinary Service's order did not prevent discharge from the Vessel. Then in cross-examination,
25  Mr. Muranov sought to qualify that…"  *Id.*  In *Yukos Capital S.A.R.L. v. OAO Samaraneftegaz*,
     2014 WL 81563, *5 (S.D.N.Y. Jan. 9, 2014), *vacated and remanded on other grounds sub*
26  *nom. Yukos Capital S.A.R.L. v. Samaraneftegaz*, 592 F. App'x 28 (2d Cir. 2015), *as amended* (Mar.
27  2, 2015), the court rejected arguments made by respondent that were based on Muranov's
     declaration (his fourth in the case) as "strained and entirely unsubstantiated," "recycl[ed]" from
28  "prior arguments," and "a transparent attempt to escape paying the Judgment."  *Id.*

Burke, Williams &
Sorensen, LLP
Attorneys At Law
San Jose

- 15 -

CASE NO. 5:20-CV-03778-LHK
PLAINTIFF'S MEMO PTS. AND AUTHS. IN
OPPOSITION TO MOTION TO DISMISS

obligations. Br. 11. IDs' argument is specious. Lynwood pleads extensive breaches by Sysoev of the contractual obligations he owed to Rambler. ¶¶570-574. Lynwood also pleads that Sysoev's contractual obligations to Rambler were ongoing. ¶¶114-115, 131, 135. Lynwood also pleads that both Konovalov and Robertson knew about Sysoev's contractual obligations to Rambler. ¶¶207, 386-388, 627-634. Second, Lynwood extensively pleads intentional interference with Rambler's contractual rights by Konovalov and Robertson. ¶¶207-211, 213-214, 219, 225, 263, 269, 387-388, 635-639. Third, Lynwood also pleads that it suffered damages as a result of Konovalov and Robertson's tortious interference. ¶¶210-214, 219, 634-639. Konovalov was the driving factor who recognized the value of the NGINX Enterprise that could be cultivated and then sold to a large U.S. technology company (¶¶206-207, 210, 213, 219), and Robertson was an experienced professional facilitating the cultivation and sale of Rambler's NGINX Enterprise. ¶¶386-388, 636-639. Thus, Sysoev's breach was a necessary consequence of Konovalov's and Robertson's interference.[10]

### D.    Lynwood Pleads Tortious Interference with Prospective Advantage (Count 13)

IDs' lone argument is that Lynwood must identify a specific business opportunity it lost. Br. 11-12. While a plaintiff is "not required to plead a specific economic relationship between itself and a third party," Lynwood has adequately done so. *Grateful Dead Prods. v. Sagan*, 2008 WL 11389542, *6 (N.D. Cal. 2008) (denying motion to dismiss counterclaim for tortious interference with prospective economic advantage, where counter-claimants asserted, *inter alia*, an economic relationship with "legions of fans," and an "economic advantage … through their ownership of … rare and cherished memorabilia"). Rambler owned the Disloyal Employees' work for hire. For example, pursuant to the Rambler Code of Ethics, Rambler had an economic right to – and thus an economic relationship with – opportunities that its management (including Konovalov) "discovered through the use of corporate property, information or position …." ¶94.

---

[10] IDs' caselaw is wholly unsupportive of their argument. Br. 11. In *Quelimane Co. v. Stewart Title Guaranty Co*., 19 Cal. 4th 26, 56 (Cal. 1998), the court sustained a claim for tortious interference because "interference that is incidental to the actor's independent purpose and desire but known to him to be a necessary consequence of his action" is actionable. In *Andrew Smith & Co. v. Paul's Pak, Inc*., 2009 WL 10675140, *3 (N.D. Cal. Jul. 29, 2009), the court merely held no claim for negligent interference exists under California law.

Burke, Williams &
Sorensen, LLP
Attorneys At Law
San Jose

- 16 -

CASE NO. 5:20-CV-03778-LHK
PLAINTIFF'S MEMO PTS. AND AUTHS. IN
OPPOSITION TO MOTION TO DISMISS

Moreover, "[a]ny special knowledge … applied not only in production, but also in other areas of entrepreneurial activity … having commercial value …."  ¶¶49, 87, 113, 145.  By virtue of these rights, Rambler owned and had an economic relationship with the NGINX Enterprise.  ¶666-667. IDs interfered with that right, and their argument fails.

### E.    Lynwood's Copyright Claims are Valid (Counts 15-17)

IDs wrongly assert Lynwood fails to allege any basis for imposing personal liability on IDs for copyright infringement.  Br. 12-13.  However, corporate officers and directors may be held liable for copyright infringement under two theories.  Under the elemental approach, set forth in the Copyright Act, "…a corporate officer can be held liable by personally satisfying each element for direct, contributory, or vicarious infringement." *Dish Network, L.L.C. v. Jadoo TV, Inc.*, 2020 WL 5816579, *3 (N.D. Cal. Sep. 30, 2020).  Under the second theory, as articulated in *Comm. for Idaho's High Desert v. Yost*, 92 F.3d 814 (9th Cir. 1996), "'[a] corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf.'" *Dish Network*, 2020 WL 5816579, *4 (*quoting Yost*, 92 F.3d at 823).  This second theory is referred to as the *Yost* rule. IDs substantially participated in the ongoing infringement of the Copyrighted Works, as alleged in the Complaint.  ¶¶11, 13, 20, 22, 25, 26, 28, 31, 32, 34, 35, 38, 41, 43-55, 82, 153, 154, 164-174, 175, 218, 219, 220, 229, 245, 246, 247, 248, 254, 256, 258, 271, 271, 288, 303, 305, 389-407, 424-437, 702, 710, 713, 714, 715, 716, 717, 718-726, 729-736, and 741-746. Therefore, IDs may be held personally liable for copyright infringement under the elemental approach and the *Yost* rule. *Id.* *3; *see also Perfect 10 Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007).[11]

---

[11] IDs cases do not support their argument.  Br. 13.  In *Erickson Productions, Inc. v. Kast*, 921 F.3d 822, 829-832 (9th Cir. 2019), the court upheld a jury verdict imposing personal liability on an individual defendant for contributory copyright infringement, and only vacated the jury's verdict of personal liability for vicarious copyright infringement because no direct financial benefit to the defendant was proven at trial.  In, *Digby Adler Group LLC v. Image Rent A Car, Inc.*, 79 F. Supp. 3d 1095, 1104 (N.D. Cal. 2015), the court denied the parties' summary judgment motions on the issue of whether the individual defendant could be held liable as an alter ego of the corporate defendants because doing so would require "…drawing inferences from the evidence and weighing the credibility of the evidence and witnesses. At this point, all inferences must be drawn in favor of the non-moving party, and it is inappropriate to determine credibility." *Digby*, 79 F. Supp. 3d at 1107-08.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

- 17 -

CASE NO. 5:20-CV-03778-LHK
PLAINTIFF'S MEMO PTS. AND AUTHS. IN
OPPOSITION TO MOTION TO DISMISS

### F.    Lynwood's Lanham Act Claims are Valid (Counts 24-25)

The allegations in Lynwood's Complaint support claims of personal liability for business torts they committed.  *Dish Network, L.L.C.*, 2020 WL 5816579, *4 (N.D. Cal. 2020) ("A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf").  The wrongful actions of IDs are exactly the type of activities for which shareholders and directors of companies have been found directly liable for violations of the Lanham Act.  *See AECOM Energy & Construction, Inc. v. Ripley*, 2019 WL 316631, *10 (C.D. Cal. Jan. 24, 2019) (finding defendants jointly and severally liability for false advertising, trademark infringement and other claims where they not only served as officers but each "Defendant was instrumental in the formation of at least one of the Corporate Defendants and their subsequent, collective takeover of the MK marks and brand").

## IV.    The Court Has Personal Jurisdiction Over the Russian Individual Defendants

Konovalov, Sysoev, Alexeev, and Dounin ("RDs") are Russian citizens. RDs assert that they do not reside in the United States, and are therefore not subject to personal jurisdiction.  Br. 14.  However, RDs purposefully and profitably availed themselves of California.

### A.    California's Long-Arm Statute Supports Specific Jurisdiction Over RDs

California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution, and thus this Court has jurisdiction so long as "exercising jurisdiction comports with due process."  *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020).  Courts employ a three-prong test: First, "the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1197 (9th Cir. 1988).  Second, the claims, in whole or in part, must "arise out of or relate to the [non-resident's] forum-related activities." *Id.* The third prong of the analysis asks whether exercising jurisdiction is reasonable. *Id.*  A plaintiff

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

- 18 -

CASE NO. 5:20-CV-03778-LHK
PLAINTIFF'S MEMO PTS. AND AUTHS. IN
OPPOSITION TO MOTION TO DISMISS

has the burden of establishing the first two prongs, and "the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* At this phase, Lynwood need only make a *prima facie* showing of jurisdictional facts. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). "Uncontroverted allegations in the complaint must be taken as true, and factual disputes are construed in the plaintiff's favor." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 602 (9th Cir. 2018).

## B.   RDs Purposefully Directed Conduct To, and Availed Themselves of, California

Courts analyze the first prong under two distinct, but related, concepts—purposeful direction and purposeful availment. *Glob.*, 972 F.3d at 1107. "When both contract and tort claims are at issue, both tests are relevant." *Id.* Regardless, "both purposeful availment and purposeful direction ask whether defendants have voluntarily derived some benefit from their interstate activities" *Glob.*, 972 F.3d at 1107. "[T]he key focus is "the extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to those contacts." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006). A plaintiff need only establish purposeful direction or purposeful availment to establish jurisdiction over all claims. *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 827 (N.D. Cal. 2014).

### 1.   RDs purposefully directed action at California

For action to be directed at the forum state, "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix*, 647 F.3d at 1228 (quoting *Calder v. Jones*, 465 U.S. 783 (1984)). Under the first prong of the *Calder* test, "an intentional act is an external manifestation of the actor's intent to perform an actual, physical act in the real world." *AirWair Int'l Ltd. v. Schultz*, 73 F. Supp. 3d 1225, 1233 (N.D. Cal. 2014). Where, as here, defendants commit an intentional tort within the forum state, in whole or in part, jurisdiction over the defendants is proper. *Freestream*, 905 F.3d at 604; *see also, Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) ("[T]he 'purposeful availment' requirement is satisfied if the defendant has taken deliberate action within the forum state …"). RDs tellingly do not address this prong in their

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

- 19 -

CASE NO. 5:20-CV-03778-LHK
PLAINTIFF'S MEMO PTS. AND AUTHS. IN
OPPOSITION TO MOTION TO DISMISS

motion.  Br. 15-17.  Moreover, RDs do not deny that they carried out this conduct, at least in part, in California.  Dkt. No. 106-2, ¶¶ 8, 10-12; No. 106-3, ¶ 10; No. 106-4, ¶ 13; No. 106-5, ¶¶ 4, 12. RDs participated in the marketing of the NGINX Enterprise and raised capital from investors in California (¶¶194, 212, 249, 254, 279, 308); made numerous trips to California in furtherance of their scheme (Dkt. No. 106-2, ¶¶8, 9, 12; No. 106-3; ¶¶9, 10; No. 106-4, ¶13; No. 106-5, ¶¶12, 13); hired attorneys based in California to help them form entities to be headquartered in California, help the Disloyal Employees attempt to maneuver around Rambler's rights to the NGINX Enterprise, and to assist them in filing fraudulent Trademark applications (¶¶261-262, 269, 314); formed one or more corporations to facilitate their misappropriation of the NGINX Enterprise (¶¶63, 64, 274); headquartered the NGINX Enterprise in an office in San Francisco (¶274); and then sold the NGINX Enterprise to F5 in San Francisco.  PD Ex. 2.  Lynwood easily satisfies the low threshold on the first prong of the *Calder* test.

The second *Calder* factor asks "whether the defendant expressly aimed its act at the forum state." *AirWair Int'l Ltd. v. Schultz*, 73 F. Supp. 3d 1225, 1234 (N.D. Cal. 2014).  RDs incorrectly assert that this prong requires the defendant to target a plaintiff "whom the defendant knows to be a resident of the forum state."  Dkt. No. 106, p. 17.  RDs misstate the law.  "[W]hile the fact that the plaintiff is a resident of the forum state may be *sufficient* for purposes of specific personal jurisdiction, it is not a *necessary* one." *AirWair*, 73 F. Supp. 3d at 1236 (emphasis in original).

In *Mavrix*, the Ninth Circuit held that a defendant's "exploitation of the California market for its own commercial gain" is sufficient to confer jurisdiction. *Mavrix*, 647 F.3d at 1229.  RDs targeted California to carry out their scheme.  While RDs now falsely claim in their self-serving declarations that headquartering the NGINX Enterprise in California was their investors' idea (Dkt. No. 106-2, ¶ 10), this is a factual dispute.  The truth is on June 6, 2010, Syseov and Korotkov wrote: "Igor wants NGINX to be a purely US, Silicon Valley Start-Up with its full potential realized in the US market." ¶249; *see also* PD Ex. 1.  RDs targeted California because they were eyeing a Silicon Valley exit strategy.  Dkt. No. 106-6, p. 20. California was fundamental to RDs' entire scheme, and their acts were sufficiently aimed at California. *See, e.g., Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1179 (N.D. Cal. 2015) (holding that non-resident's use of plaintiff's

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE
- 20 -
CASE NO. 5:20-CV-03778-LHK
PLAINTIFF'S MEMO PTS. AND AUTHS. IN
OPPOSITION TO MOTION TO DISMISS

1   copyrighted works in order to solicit sales constituted "an intentional act, expressly aimed at
2   California, that caused harm in California").

3       Third, RDs' operation and sale of the NGINX Enterprise in California unquestionably
4   harmed Rambler in California.  The fact that a plaintiff may have also suffered harm in another
5   jurisdiction in addition to California is immaterial to the third prong of the *Calder* test.  "[T]he
6   'brunt' of the harm need not be suffered in the forum state.  If a jurisdictionally sufficient amount
7   of harm is suffered in the forum state, it does not matter that even more harm might have been
8   suffered in another state." *Yahoo!*, 433 F.3d at 1207.  The fact that neither Rambler nor Lynwood
9   is a resident of California is not dispositive of the third prong of the *Calder* test.  *See Dole Food*
10  *Co. v. Watts*, 303 F.3d 1104, 1113 (9th Cir. 2002) ("a corporation can suffer economic harm both
11  where the bad acts occurred and where the corporation has its principal place of business . . . the
12  existence of jurisdiction in one forum does not necessarily negate the existence of jurisdiction in
13  another forum"); *see also*; *AirWair*, 73 F. Supp. 3d at 1237 ("a plaintiff need not be a resident of
14  the forum state in order to suffer foreseeable harm there").

15      In *Mavrix*, the court found that the defendant's misappropriation and use of the Florida-
16  based plaintiff's copyrighted materials harmed the plaintiff in California because "a jurisdictionally
17  significant amount of [the plaintiff's] economic harm took place in California." *Mavrix*, 647 F.3d
18  at 1232; *see also, LiveCareer Ltd v. Su Jia Techs. Ltd.*, 2015 WL 1448505, *5 (N.D. Cal. 2015)
19  (defendant's assertion that a Bermuda corporation can only be injured in Bermuda was "without
20  foundation"). RDs relocated the NGINX Enterprise away from Rambler to California and then sold
21  Rambler's NGINX Enterprise here, thus inflicting jurisdictionally-significant harm in California.

22          **2.      RDs Purposefully Availed Themselves of Doing Business in California**

23      "[T]he purposeful availment test . . . asks whether the defendant has performed some type
24  of affirmative conduct which allows or promotes the transaction of business within the forum state."
25  *Luxul*, 78 F. Supp. 3d at 1178.  "By purposefully availing itself of the privilege of conducting
26  activities within the forum State, thus invoking the benefits and protections of its laws, a defendant
27  must – as a quid pro quo – submit to the burdens of litigation in that forum." *Huntair, Inc. v.*
28  *Gladstone*, 774 F. Supp. 2d 1035, 1041 (N.D. Cal. 2011).  RDs specifically targeted California to

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

- 21 -

CASE NO. 5:20-CV-03778-LHK
PLAINTIFF'S MEMO PTS. AND AUTHS. IN
OPPOSITION TO MOTION TO DISMISS

help attract investment and to maximize the value of the NGINX Enterprise for themselves.  ¶¶227, 249.  RDs obtained investment from investors headquartered in California. ¶68.  RDs headquartered the NGINX Enterprise in California (¶318), engaged California professionals to aid the creation and operation of the business (¶¶261-262), and to file fraudulent Trademark applications (¶¶313-314), and gained their first customer, Netflix, Inc., which is headquartered in California. ¶279.  RDs sold the NGINX Enterprise in California.  PD Ex. 2.   None of these facts are controverted in RDs' declarations and, therefore are deemed true for purposes of deciding the issue of jurisdiction. *Freestream*, 905 F.3d at 602.  RDs admit they collectively traveled to California from 2010 through 2019 to further the business interests of the stolen NGINX Enterprise no less that fifty times.  Specifically, while in California, RDs attended meetings with potential and existing customers of NGINX products and services, NGINX summits and conferences, NGINX-related management meetings, NGINX BVI board meetings, meetings with existing and potential NGINX BVI investors, interviews with potential NGINX recruits, and meetings with NGINX BVI employees and executives. Dkt. No. 106-2, ¶¶8, 9, 12; No. 106-3, ¶¶9, 10; 11; No. 106-56, ¶¶12, 13; No. 106-4, ¶13.   These facts establish RDs purposefully availed themselves of the privilege of doing business in California, and they "should have reasonably anticipated being brought into court in California." *Sinatra*, 854 F.2d at 1197 ("Here, the misappropriation is properly viewed as an event within a sequence of activities designed to use California markets for the defendant's benefit").[12]

## B.    Lynwood's Claims Arise Out of RDs' Activities in California

Demonstrating that claims arise out of the defendant's activities in the forum is essentially a "but for" test.  *See, e.g., Luxul*, 78 F. Supp. 3d at 1179.  While some of RDs' wrongful acts occurred in Russia, those acts would not have led to viable causes of action but for RDs' wrongful acts in California.  Lynwood's claims arise out of IDs' California activities damaging Rambler here, including moving the NGINX Enterprise to California where they monetized and sold it.

---

[12] There is no merit to RDs' assertion that their contracts with Rambler in Russia impact jurisdiction in this case.  Br. 16.  "[T]he place where a contract is executed is of far less importance than where the consequences of performing that contract come to be felt."  *Berdux v. Project Time & Cost, Inc.*, 669 F. Supp. 2d 1094, 1101 (N.D. Cal. 2009).

Burke, Williams &
Sorensen, LLP
Attorneys At Law
San Jose

- 22 -

CASE NO. 5:20-CV-03778-LHK
PLAINTIFF'S MEMO PTS. AND AUTHS. IN
OPPOSITION TO MOTION TO DISMISS

1

**C.**      **Personal Jurisdiction Over RDs is Reasonable**

2

There is a "heavy burden on both domestic and foreign defendants in proving a 'compelling

3

case' of unreasonableness to defeat jurisdiction." *Dole Food*, 303 F.3d at 1117.  RDs must "present

4

a compelling case that the presence of some other considerations would render jurisdiction

5

unreasonable." *Id.* at 1114.  RDs' have failed to meet their burden under the seven reasonableness

6

factors.  *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

7

The first factor, purposeful availment of California by RDs, weighs heavily in favor of

8

jurisdiction. RDs operated the disputed NGINX Enterprise in California for eight years and then

9

sold it in California for $670 million.  RDs' direct and strategic targeting of the California market

10

is precisely the type of activity that satisfies the first prong.  *See, e.g., CollegeSource, Inc. v.*

11

*AcademyOne, Inc.*, 653 F.3d 1066, 1080 (9th Cir. 2011) (finding purposeful availment where

12

defendants "solicited California business by phone, email, and in-person marketing").

13

The second factor, the burden on RDs, does not carry significant weight. "With the advances

14

in transportation and telecommunications and the increasing interstate practice of law, any burden

15

of litigation in a forum other than one's residence is substantially less than in days past."

16

*CollegeSource*, 653 F.3d at 1080.  RDs were required to present evidence of the extent of the burden

17

they will face to defend themselves in this Court.  *Ballard,* 65 F.3d at 1501 (denying defendant's

18

motion to dismiss because, among other reasons, the defendant did not "presented any evidence on

19

the extent of the burden").  RDs have provided the Court with nothing more than conclusory and

20

unsupported allegations regarding their alleged burden.

21

The third factor, the extent of the sovereignty of Russia, also carries no weight here because

22

RDs have failed to make any meaningful argument, instead just noting the presence of international

23

defendants bears negatively.  Br. 20.  However, this fact alone is insufficient to tip the third prong

24

in their favor. *AirWair*, 73 F. Supp. 3d at 1240.

25

The fourth factor, the forum's interest in adjudicating the dispute, weighs heavily in favor

26

of jurisdiction. RDs reference to Lynwood's non-resident status (Br. 20) is unavailing.  *AirWair*,

27

73 F. Supp. 3d at 1240 (California has a "strong interest in discouraging trademark infringement

28

injuries that occur within the state" despite the fact that the plaintiff there was not a forum resident).

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

- 23 -

CASE NO. 5:20-CV-03778-LHK
PLAINTIFF'S MEMO PTS. AND AUTHS. IN
OPPOSITION TO MOTION TO DISMISS

Given the serious wrongdoing in California, and the forum's interest in protecting the integrity of California's world-famous tech industry, this factor strongly favors jurisdiction.

The fifth factor, the most efficient judicial resolution, weighs very heavily in favor of jurisdiction. California is the only jurisdiction where all defendants would be subject to jurisdiction. *AirWair*, 73 F. Supp. 3d at 1240 (noting that this factor "is no longer weighed heavily given the modern advances in communication and transportation" and finding that, where some of the other defendants are located in the forum state, this factor weighs in favor of reasonableness).

The sixth factor, the importance of the forum to Lynwood's interest in convenient and effective relief, favors jurisdiction so the dispute can be resolved in one forum.

The seventh factor, "[w]hether another reasonable forum exists becomes an issue only when the forum state is shown to be unreasonable." *CollegeSource*, 653 F.3d at 1080.  As RDs completely failed their burden under the *Burger King* factors, the Court can disregard the seventh factor and find the assertion of jurisdiction over RDs to be reasonable.

### D.      In the Alternative, the Court Should Grant Jurisdictional Discovery

"[W]here pertinent facts bearing on the question of jurisdiction are in dispute, discovery should be allowed." *Hansen v. United States*, 3 F. App'x 592, 593 (9th Cir. 2001); *see also Twentieth Century Fox Int'l Corp. v. Scriba*, 385 F. App'x 651, 653 (9th Cir. 2010) (vacating the lower court's dismissal and remanding with instructions to permit jurisdictional discovery). RDs have only submitted self-serving declarations with no documentary or other support, and there can be no doubt all RDs had significant contacts with California justifying, at a minimum, discovery.

## V.      In the Alternative, the Court Should Grant Lynwood Leave to Amend

While Lynwood maintains that its claims are sustainable as pled, if the Court disagrees Lynwood respectfully requests leave to amend.  *In re Pacific Fertility Center Litigation*, 2019 WL 3753456, *6 (N.D. Cal. Aug. 8, 2019) (granting leave to amend the dismissed claims).

## VI.     The Court Should Strike IDs' Improper Appendix & Parts of Muranov's Declaration

IDs unsuccessfully applied for an enlargement of their brief page limit. Dkt. 101, 102.  They did it anyway.  IDs included an "Appendix" which is a chart of baseless legal argument which if it

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

- 24 -

CASE NO. 5:20-CV-03778-LHK
PLAINTIFF'S MEMO PTS. AND AUTHS. IN
OPPOSITION TO MOTION TO DISMISS

were in brief form would have been nearly ten more pages and prejudices Lynwood's use of its space.  The Court should reject this obvious attempt to evade the Court's rules and strike the Appendix and any references to it in IDs' brief.  *See Jonna Corp. v. City of Sunnyvale*, 2017 WL 2617983, *2, n. 4 (N.D. Cal. Jun. 16, 2017).

In addition, IDs imbed improper arguments in the discredited Muranov's Declaration, which IDs do not argue in their brief, where Muranov flagrantly invades the province of the Court and ultimately the jury by misstating Russian law, failing to cite and attach legal authorities, and applying misstated law to his inaccurate recitation of the facts Lynwood pleads.  "[E]vidence from foreign law experts submitted pursuant to [FRCP] Rule 44.1 is admissible only to aid a court's understanding of foreign law; foreign law experts may not opine as to the ultimate application of the foreign law to the facts of the case."  *Krish v. Balasubramaniam*, 2006 WL 2884794, *3 (E.D. Cal. Oct. 10, 2006) (sustaining objections to foreign lawl expert's "legal opinion on the merits of Plaintiff's case").  In response to a Muranov's baseless claim that Counts 2-6 are not assignable under Russian law, a point IDs view so dismissively that they do not even argue it in their brief and therefore is not worthy of the Court's consideration, for the sake of completeness Christophoroff establishes with extensive Russian legal authority that Counts 2-6 are assignable in Russia.  CD¶¶37-74.  Thus, the Court should strike ¶¶ 20-25, 42-50, 90-116 of Muranov's Declaration.  In fact, as IDs make no conflict of law arguments in their brief, the Court should disregard Muranov completely and disregard Section VI.A on p. 8 and l. 11 on p. 18 of IDs' brief – the only mentions of Muranov.

## CONCLUSION

The Court should deny IDs' motion to dismiss or, alternatively, grant leave to amend.

Dated:   December 10, 2020          BURKE, WILLIAMS & SORENSEN, LLP

By:   /s/  Brian M. Affrunti
    Douglas W. Dal Cielo
    Patricia L. Peden
    Brian M. Affrunti

    *Attorneys for Plaintiff*

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

- 25 -

CASE NO. 5:20-CV-03778-LHK
PLAINTIFF'S MEMO PTS. AND AUTHS. IN
OPPOSITION TO MOTION TO DISMISS