QUYEN L. TA (SBN #229956)
qta@kslaw.com
JEANNE A. FUGATE (SBN #236341)
jfugate@kslaw.com
SAMUEL R. DIAMANT (SBN #288738)
sdiamant@kslaw.com
MATTHEW H. DAWSON (SBN #307350)
mdawson@kslaw.com
KING & SPALDING LLP
101 Second Street, Suite 1000
San Francisco, California 94105
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

BRUCE W. BABER (*Admitted Pro Hac Vice*)
bbaber@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30303-1763
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

*Attorneys for Defendants*
Maxim Konovalov, Igor Sysoev,
Andrey Alexeev, Maxim Dounin,
Gleb Smirnoff, and Angus Robertson

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| LYNWOOD INVESTMENTS CY LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>MAXIM KONOVALOV, IGOR SYSOEV, ANDREY ALEXEEV, MAXIM DOUNIN, GLEB SMIRNOFF, ANGUS ROBERTSON, NGINX, INC. (BVI), NGINX SOFTWARE, INC., NGINX, INC. (DE), BV NGINX, LLC, RUNA CAPITAL, INC., EVENTURE CAPITAL PARTNERS II LLC and F5 NETWORKS, INC.,<br><br>Defendants. | Case No. 5:20-cv-03778-LHK<br><br>**DEFENDANTS MAXIM KONOVALOV, IGOR SYSOEV, ANDREY ALEXEEV, MAXIM DOUNIN, GLEB SMIRNOFF, ANGUS ROBERTSON'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS**<br><br>Date:  February 18, 2021<br>Time:  1:30 p.m.<br>Courtroom 8, 4th Floor<br>The Honorable Lucy H. Koh<br><br>COMPLAINT FILED: June 8, 2020 |

## TABLE OF CONTENTS

I.     LYNWOOD'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS ........1

    A.    The Last Overt Act Doctrine Does Not Save Lynwood's Claims ...........................2

    B.    Fraudulent Concealment Allegations Do Not Save Lynwood's Claims ................3

    C.    The Delayed Discovery Rule Does Not Save Lynwood's Claims .........................4

II.    THE CLAIMS AGAINST THE INDIVIDUALS ARE DEFICIENT ...............................4

    A.    Mr. Muranov Is Fully Qualified to Provide Guidance on Russian Law .................4

    B.    The Labor and Employment Claims (Claims 2-6) Fail Under Russian Law ...........5

    C.    The Tort Claims (Claims 1, 7, 10, 13 and 14) Fail Under Russian or California Law .........................................................................................................5

        1.    The Court Should Not Apply California Law By Default .........................5

        2.    Russian Law Properly Applies To Claims 1, 7, 10, 13, and 14 .................6

    D.    The IP Claims (Claims 15-17, 24-25) Fail Against the Individuals .......................8

III.    THE FOREIGN INDIVIDUALS ARE NOT SUBJECT TO JURISDICTION .................8

    A.    Lynwood Does Not Establish Specific Jurisdiction Over Its Claims .....................8

    B.    Lynwood Does Not Otherwise Establish Personal Jurisdiction ............................9

        1.    Lynwood's Claims Do Not Arise from Forum Activities ..........................9

        2.    Lynwood Does Not Establish Purposeful Availment for Contracts ..........10

        3.    Lynwood Does Not Establish *Calder* Purposeful Direction for Tort ........11

    C.    The Exercise of Jurisdiction Would Not Be Reasonable .....................................13

    D.    Jurisdictional Discovery Should Not Be Permitted .............................................15

IV.    CONCLUSION .............................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abogados v. AT&T, Inc.*,
   223 F.3d 932 (9th Cir. 2000) ...................................................................7

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
   368 F.3d 1174 (9th Cir. 2004) .................................................................9

*AirWair v. Schultz*
   73 F. Supp. 3d 1235, 1237 (N.D. Cal. 2014) ....................................13, 14

*In re Animation Workers Antitrust Litig.*,
   123 F. Supp. 3d 1204 (N.D. Cal. 2015) ...................................................3

*In re Animation Workers Antitrust Litig.*,
   87 F. Supp. 3d 1195 (N.D. Cal. 2015) .....................................................2

*Apple v. Samsung Elecs. Co.*,
   No. 11-CV-01846, 2012 WL 1672493 (N.D. Cal. May 14, 2012)............5n

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*,
   7 Cal. 4th 503 (1994) .............................................................................2

*Aryeh v. Canon Bus. Sols., Inc.*,
   55 Cal. 4th 1185 (2013) ........................................................................3n

*Asahi Metal Indus. Co. v. Super. Ct.*,
   480 U.S. 102 (1987)..........................................................................13, 14

*Aryeh v. Canon Bus. Sols., Inc.*,
   55 Cal. 4th 1185 (2013) ..........................................................................3

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
   874 F.3d 1064 (9th Cir. 2017) ...............................................................11

*Ballard v. Savage*,
   65 F.3d 1495 (9th Cir. 1995) .................................................................14

*Bristol-Myers Squibb Co. v. Super. Ct.*,
   137 S. Ct. 1773 (2017)...........................................................................13

*Berdux v. Project Time & Cost, Inc.*,
   669 F. Supp. 2d 1094 (N.D. Cal. 2009) .................................................10

*Brodsky v. Apple Inc.*,
   445 F. Supp. 3d 110 (N.D. Cal. 2020) .................................................4, 5

ii

*CollegeSource, Inc. v. AcademyOne, Inc.*,
    653 F.3d 1066 (9th Cir. 2011) ............................................................9, 14, 14n

*Credit Suisse Secs. (USA) LLC v. Simmonds*,
    566 U.S. 221, 227 (2012) ............................................................................4

*Days Inns Worldwide, Inc. v. Patel*,
    445 F.3d 899 (6th Cir. 2006) .......................................................................9

*De La Torre v. Icenhower*,
    No. 09CV1161 BTM (BLM), 2010 WL 11508658 (S.D. Cal. Feb. 2, 2010)...........................3

*DeFontbrune v. Wofsy*,
    838 F.3d 992 (9th Cir. 2016) .......................................................................5

*Dole Food Co. v. Watts*,
    303 F.3d 1104 (9th Cir. 2002) ...........................................................11, 12, 13, 15

*DP Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd.*,
    268 F.3d 829 (9th Cir. 2001) .......................................................................6

*E-Fab, Inc. v. Accountants, Inc. Servs.*,
    153 Cal. App. 4th 1308 (2007) ....................................................................4

*Freestream v. AeroLaw Group*,
    905 F.3d 597 (9th Cir. 2018) .....................................................................11n

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,
    972 F.3d 1101 (9th Cir. 2020) ....................................................................11

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
    328 F.3d 1122 (9th Cir. 2003) ...................................................................8, 9

*H.B. Filmes, Ltd. v. CBS, Inc.*,
    98 Fed. App'x. 596, 598 (9th Cir. 2004) .........................................................4n

*Head v. Las Vegas Sands, Ltd. Liab. Corp.*,
    760 F. App'x 281 (5th Cir. 2019) ................................................................8, 9

*Hexcel Corp. v. Ineos Polymers, Inc.*,
    681 F.3d 1055, 1060 (9th Cir. 2012)...............................................................3

*HK China Grp., Inc. v. Beijing United Auto. & Motorcycle Mfg. Corp.*,
    417 F. App'x 664 (9th Cir. 2011) .................................................................10

*Howard v. Superior Court*,
    2 Cal. App. 4th 745 (1992) ........................................................................7

iii

*Ins. Co. of N. Am. v. Marina Salina Cruz*,
    649 F.2d 1266 (9th Cir. 1981) ................................................................14

*Lambert v. Saul*,
    980 F.3d 1266 (9th Cir. 2020) ............................................................11n

*Livett v. F. C. Fin. Assocs.*,
    124 Cal. App. 3d 413 (1981) ................................................................2

*Love v. Associated Newspapers, Ltd.*,
    611 F.3d 601 (9th Cir. 2010) ................................................................8

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011) ......................................................11, 13

*McCann v. Foster Wheeler LLC*,
    48 Cal. 4th 68 (2010) ......................................................................6, 7

*Medimpact Healthcare Sys., Inc. v. IQVIA Holdings Inc.*,
    No. 19CV1865-GPC(LL), 2020 WL 1433327 (S.D. Cal. Mar. 24, 2020) ...............9

*Nguyen v. Nissan N. Am., Inc.*,
    No. 16-CV-05591-LHK, 2020 WL 5517261 (N.D. Cal. Sept. 13, 2020)................4

*Pac. Atl. Trading Co. v. M/V Main Exp.*,
    758 F.2d 1325 (9th Cir. 1985) ............................................................14

*Panavision Int'l, L.P. v. Toeppen*,
    141 F.3d 1316 (9th Cir. 1998) ............................................................10

*Paracor Fin., Inc. v. GE Capital Corp.*,
    96 F.3d 1151 (9th Cir. 1996) ................................................................6

*Parnell Pharm., Inc. v. Parnell, Inc.*,
    No. 5:14-CV-03158-EJD, 2015 WL 5728396 (N.D. Cal. Sept. 30, 2015)................9

*Picot v. Weston*,
    780 F.3d 1206 (9th Cir. 2015) ............................................................10

*Plumlee v. Pfizer, Inc.*,
    No. 13-CV-00414-LHK, 2014 WL 695024 (N.D. Cal. Feb. 21, 2014)................4

*Raceway Properties v. LSOF Carlsbad Land L.P.*,
    157 F. App'x 959 (9th Cir. 2005) ........................................................3n

*Reiser v. Mariott Vacations Worldwide Corp.*,
    No. 2:16-cv-00237-MCE-CKD, 2018 WL 2762024 (E.D. Cal. June 8, 2018) ...........3n

*Rivera v. Saul Chevrolet, Inc.*,
    No. 16-CV-05966-LHK, 2017 WL 3267540 (N.D. Cal. July 31, 2017)................6

iv

*Rocke v. Canadian Auto. Sport Club,*
    660 F.2d 395 (9th Cir. 1981) ...................................................................................14

*Sacramento E.D.M., Inc. v. Hynes Aviation Industries, Inc.,*
    761 F. App'x 678 (9th Cir. 2019) ...........................................................................3n

*SEA Metropolitan v. DGM Commodities,*
    No. 13CV01521, 2013 WL 1816153 (E.D.N.Y. Mar. 22, 2013) ..........................4, 5

*Sinatra v. Nat'l Enquirer, Inc.,*
    854 F.2d 1191 (9th Cir. 1988) ................................................................................11

*Schwarzenegger v. Fred Martin Motor Co.,*
    374 F.3d 797 (9th Cir. 2004) ..............................................................................9, 10

*Strasner v. Touchstone Wireless Repair & Logistics, LP,*
    5 Cal. App. 5th 215 (2016) .....................................................................................10

*Utah v. McKesson,*
    No. C 10–04743 SI, 2011 WL 2884922 (N.D. Cal. July 19, 2011) ........................3n

*Utterkar v. Ebix, Inc.,*
    No. 5:14-CV-02250-LHK, 2014 WL 5019921 (N.D. Cal. Oct. 6, 2014)...................4

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,*
    433 F.3d 1199 (9th Cir. 2006) .........................................................................11, 11n

*Yetter v. Ford Motor Co.,*
    428 F. Supp. 3d 210 (N.D. Cal. 2019) ....................................................................3, 4

*Yukos Capital v. OAO Samaraneftegaz,*
    No. 10-civ-6147, 2014 WL 81563 (S.D.N.Y. Jan. 9, 2014)...................................5n

*Wash. Mut. Bank, FA v. Superior Court,*
    24 Cal. 4th 906 (2001) ..............................................................................................6

*Wells Fargo & Co. v. Wells Fargo Exp. Co.,*
    556 F.2d 406 (9th Cir. 1977) ...................................................................................15

*Wyatt v. Union Mortg. Co.,*
    24 Cal. 3d 773 (1979) ............................................................................................2, 3

*Zeiger v. WellPet LLC,*
    304 F. Supp. 3d 837 (N.D. Cal. 2018) .......................................................................9

v

1    Lynwood's rambling complaint asserts against six individuals (collectively, the

2  "Individuals") sixteen claims that are time-barred and fail to state a claim.

3    Lynwood admits that Sysoev developed the open source NGINX software beginning in the

4  early 2000s, *see* Compl. ¶ 215, and alleges that Sysoev and Konovalov notified Rambler in 2011

5  of their intention "to form a new company that would provide [NGINX] support services." *See id.*

6  ¶¶ 281, 283.  Lynwood further admits that Rambler assigned its purported rights to Lynwood in

7  2015 in advance of a potential dispute.  *See id.* ¶ 471.  Lynwood was on notice of its claims by

8  January 2015 at the latest.  Its conclusory recitation of tolling doctrines does not save its case.

9    Lynwood attacks the Individuals' experienced and widely respected Russian law expert,

10  Alexander Muranov.  Muranov's declaration establishes that Claims 1-7, 10, 13, and 14 cannot

11  proceed *as a matter of law* under Russian law.  Lynwood's own expert, Christophoroff, fails to

12  rebut Muranov's conclusion that four tort claims are not recognized under Russian law.  Even if

13  California law applies, Lynwood still fails to state a claim against the Individuals.

14    Konovalov, Sysoev, Alexeev, and Dounin (the "Foreign Individuals") are not subject to

15  jurisdiction in this Court for a dispute that arose prior to 2011 in Russia.  Lynwood does not

16  establish jurisdiction over each individual, and forcing them to defend themselves in the United

17  States presents an insurmountable burden.  As Lynwood itself has noted (*see* Dkt. 24), Russia no

18  longer cooperates with the United States under the Hague Convention.  The Foreign Individuals

19  would thus be deprived of the central evidence to this case—documents and testimony from

20  current and former Rambler employees confirming that Sysoev developed NGINX independently.

21  **I.    LYNWOOD'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS**

22    Lynwood's claims arise from NGINX software developed by Sysoev in Russia beginning

23  nearly *twenty years ago* and the purported theft of that software *nine years ago*.  Lynwood alleges

24  that Sysoev and Konovalov notified Rambler of their intent "to form a new company that would

25  provide support services" for NGINX in 2011.  *See* Compl. ¶ 281.  Lynwood admits that it had

26  constructive knowledge of its claims in January 2015:

27    In January 2015, . . . Rambler and Lynwood prophylactically entered into the Assignment
   Agreement . . . which assigned Rambler's employment and intellectual property rights to
28    Lynwood for enforcement *in the event Sysoev or Konovalov would ever claim an*

*ownership right to the NGINX software or had previously engaged in any illicit or wrongful conduct vis-à-vis their employment obligations or Russian law.*

*Id.* ¶ 471 (emphasis added).  By the time Lynwood and Rambler entered into the January 2015 Agreement, in direct response to Sysoev's public statements, both were on notice of the claims in this lawsuit.  No doctrine allows a litigant to lie in wait for five years with knowledge of its claims.[1]

### A.    The Last Overt Act Doctrine Does Not Save Lynwood's Claims

The last overt act doctrine only applies "when a civil conspiracy is properly alleged and proved." *Wyatt v. Union Mortg. Co.*, 24 Cal. 3d 773, 786 (1979).  "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994).  Lynwood improperly pleads civil conspiracy as a cause of action.  It also does not specify which subsequent causes of action give rise to conspiracy liability or which actors are conspirators.  *See* Compl. ¶¶ 524-53.  These pleading deficiencies render the last overt act doctrine inapplicable.

Even assuming otherwise, the underlying alleged tort was completed no later than 2011 when Sysoev and Konovalov left Rambler.  *See* Compl. ¶ 281.  Conspiracy cannot be alleged against any of the other Individuals for participating in later events.  *See* Mot. at 9:11-28.  As Lynwood's authorities acknowledge, it must identify "the substantive offense which is the primary object of the conspiracy." *Livett v. F. C. Fin. Assocs.*, 124 Cal. App. 3d 413, 419 (1981).  "Once this offense has been completed, the statute of limitations on the conspiracy commences running, and subsequent conduct related to the conspiracy, such as flight or concealment, does not constitute 'overt acts.'" *Id.*  The last overt act of the alleged conspiracy was completed no later than 2011. The subsequent 2019 sale of the NGINX business to F5 is not tortious conduct that can support a conspiracy claim.  *See In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195, 1213 (N.D. Cal. 2015) (Koh, J.) ("Plaintiffs have failed to sufficiently allege that Defendants took any overt

---

[1] Contrary to Lynwood's suggestion, the California and Russian limitations periods are not the same.  *See* Mot. Appendix A1-A4; Muranov Decl. ¶¶ 90, 94, 104.  The Individuals establish that all claims asserted are time-barred regardless of which limitations period applies.  *See* Mot. 4-8.

2

1   act that would restart the statute of limitations").[2]

2       *Wyatt* does not apply.  *Wyatt* concerned a mortgage company defrauding its borrowers, and

3   the "continuing wrong" doctrine tolled the statute of limitations only "for so long as the sheer

4   economic duress or undue influence embedded in the fraud continues to hold the victim in place."

5   *Wyatt*, 24 Cal. 3d at 788.  Lynwood was not "held in place" by "sheer economic duress or undue

6   influence."  It was on notice of potential "illicit or wrongful conduct" by January 2015 and delayed

7   pursuit of its claims until June 2020.  Its claims are thus untimely.  *See De La Torre v. Icenhower*,

8   No. 09CV1161 BTM (BLM), 2010 WL 11508658 at *2 (S.D. Cal. Feb. 2, 2010) ("[A]fter the

9   fraud is discovered, statute tolled only if the 'sheer economic duress or undue influence embedded

10  in the fraud continues to hold the victim in place.'") (quoting *Wyatt*, 24 Cal. 3d at 788).[3]

11      **B.**    **Fraudulent Concealment Allegations Do Not Save Lynwood's Claims**

12      Fraudulent concealment requires that the plaintiff "did not have 'actual or constructive

13  knowledge of the facts giving rise to its claim'" and that it "acted diligently in trying to uncover the

14  facts giving rise to [its] claims."  *In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d at 1204

15  (quoting *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012)).  Contrary to any

16  claims of concealment, Lynwood alleges that Sysoev was paid "bonuses and outsized raises" (Compl.

17  ¶ 191) for his work on NGINX.  Lynwood has also pleaded knowledge of Sysoev's public statements

18  in January 2015, which Lynwood admits put it on notice of supposedly illegal conduct by Sysoev and

19  Konovalov.  *See* Compl. ¶ 471.  Lynwood's actual, or at least constructive, knowledge of its claims by

20  January 2015 renders fraudulent concealment inapplicable.  *See Yetter*, 428 F. Supp. 3d at 222-23

21

22  [2] Lynwood's other authorities do not change the analysis.  In *Utah v. McKesson*, the concealment
23  occurred at the same time as the tortious conduct, not afterward.  *See* 2011 WL 2884922 at *7
    (N.D. Cal. July 19, 2011).  In *Raceway Properties*, there was no alleged concealment after the
24  completion of the conspiracy.  *See* 157 F. App'x 959 (9th Cir. 2005) (unpublished and not
    precedential under Ninth Circuit Rule 36-3).

25  [3] Lynwood's other citations regarding the "continuing violation" doctrine, (*see* Opp. at 5:13-24),
26  do not support tolling.  *Reiser* concerned allegations that were not independently actionable but
    had cumulative actionable effect.  *See* 2018 WL 2762024 at *4.  *Reiser* applied *Aryeh v. Canon
27  Bus. Sols., Inc.*, 55 Cal. 4th 1185 (2013), which confirms that the doctrine does not apply when
    "[t]he complaint identifies a series of discrete, independently actionable alleged wrongs."  *Id.* at
28  1198.  Lynwood alleges that various actions by the Individuals were fraudulent and actionable.
    *Sacramento E.D.M.* simply affirmed with no analysis of the continuing violation doctrine.

1    ("[T]olling ceases when those facts are, or should have been, discovered by the plaintiff.") (quoting

2    *Credit Suisse Secs. (USA) LLC v. Simmons*, 566 U.S. 221, 227 (2012)).[4]

3           **C.    The Delayed Discovery Rule Does Not Save Lynwood's Claims**

4           The delayed discovery rule requires the specific pleading of facts that show (1) the time

5    and manner of discovery and (2) the inability to have made earlier discovery despite reasonable

6    diligence. *E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal. App. 4th 1308, 1319 (2007). "The

7    burden is on the plaintiff to show diligence, and conclusory allegations will not withstand a motion

8    to dismiss." *Plumlee v. Pfizer, Inc.*, No. 13-CV-00414-LHK, 2014 WL 695024 at *8 (N.D. Cal.

9    Feb. 21, 2014) (Koh, J.). The doctrine cannot delay accrual, as Lynwood affirmatively pleads

10   notice of its alleged claims—or at the least, knowledge that illegal activity may have occurred—

11   no later than January 2015. *See Utterkar*, 2014 WL 5019921 at *6 ("If a person becomes aware

12   of facts which would make a reasonably prudent person suspicious, he or she has a duty to

13   investigate further.") (Koh, J.). Facially deficient invocations of the discovery rule should be

14   dismissed. *See, e.g.*, *Plumlee*, 2014 WL 695024 at *8; *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110,

15   138 (N.D. Cal. 2020) (Koh, J.).[5]

16   **II.    THE CLAIMS AGAINST THE INDIVIDUALS ARE DEFICIENT**

17          **A.    Mr. Muranov Is Fully Qualified to Provide Guidance on Russian Law**

18          Mr. Muranov is well qualified to opine on the aspects of Russian law at issue. He has

19   served as an arbitrator in more than 60 international arbitration cases and prepared 30 expert

20   reports on issues regarding Russian law and international regulations. Dkt. 106-7 at 31-32.

21   Lynwood's four "discrediting" cases do no such thing. There is no finding that Muranov was not

22   qualified to opine on Russian law and no finding that his opinions were unreasonable or not well-

23   founded. In at least one of Lynwood's opinions, the three-arbitrator panel *adopted* Muranov's

24   opinion and concluded "there did not seem to be a  significant difference between the experts."

25   *SEA Metropolitan v. DGM Commodities*, 2013 WL 1816153 at ¶¶ 110, 133. Read *most* critically

26

27   _____

     4  Short-form citations are used herein for cases cited in the Individuals' Motion, Dkt. 106, with
     complete citations in the Table of Authorities.

28   5  In the unpublished and non-citeable *H.B. Filmes* decision, a document created a factual dispute.
     Here, Lynwood admits the facts proving its actual or constructive knowledge.

toward Muranov, the other triers of fact Lynwood relies on simply decided an issue against him. That hardly discredits an expert who provided expert services in nearly one hundred proceedings.[6]

Lynwood's expert fails to address or rebut Muranov's opinion that Claims 1, 7, 10, 13, and 14 are not cognizable under Russian law.  Lynwood objects that the Court was not provided with translations of the thirty-six cited authorities, but the Ninth Circuit has held that the Rule 44.1 determination of foreign law is intended a flexible and informal process and that such material and testimony may be considered "at any time, whether or not submitted by a party." *DeFontbrune v. Wofsy*, 838 F.3d 992, 997-98 (9th Cir. 2016).  The Individuals provided Muranov's initial and reply declarations (filed concurrently herewith), which contain extracts of the authorities on which he relies, and are prepared to provide any translated authorities that the Court would like to review—as Muranov expressly offered in his initial declaration.[7]

### B.   The Labor and Employment Claims (Claims 2-6) Fail Under Russian Law

Lynwood concedes that Claims 2 through 6 are governed by Russian law.  *See* Opp. at 9. These claims must be dismissed because: (1) claims 2 through 4 are for breach of labor contracts and are not assignable from the employer (Rambler) to a third party (Lynwood); and (2) Lynwood has not properly alleged that Konovalov, Sysoev, and Smirnoff owed to Rambler the requisite fiduciary duties for Claims 5 and 6.  *See* Muranov Decl. ¶¶ 20-51.

### C.   The Tort Claims (Claims 1, 7, 10, 13 and 14) Fail Under Russian or California Law

Russian law should also apply to Claims 1, 7, 10, 13, and 14 because Russia has a greater interest in the application of its law to these claims.  As Muranov opines—and Christophoroff fails to rebut—Russian law does not recognize *any* of the asserted tort claims.

#### 1.   The Court Should Not Apply California Law By Default

The Court need not conduct a formal choice of law analysis.  The claims should be

---

[6] In *Yukos Capital v. OAO Samaraneftegaz*, the court took issue with the *party's* arguments, not Muranov's opinion. 2014 WL 81563 at *5 (S.D.N.Y. Jan. 9, 2014).  That district court opinion was vacated because it failed to support its conclusions.  The final opinion merely concluded that the tribunal found the other expert's analysis more persuasive.  Dkt. 125-03 at ¶ 25.

[7] In *Apple v. Samsung Elecs. Co.*, 2012 WL 1672493 (N.D. Cal. May 14, 2012) (Koh, J.), the experts did not attach translations, but instead (as Muranov did) included translated extracts of foreign authorities within their declarations.  *See Apple* Dkt. Nos. 405-4 & 522.

5

1    dismissed under both California and Russian law.  Lynwood is not entitled to the application of

2    California law because the Individuals' opening brief did not include a choice-of-law analysis.

3        There is no requirement that foreign law issues be decided at the pleadings stage.  *See, e.g.*,

4    *DP Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd.*, 268 F.3d 829, 848 (9th Cir. 2001)

5    ("[N]otice of issues of foreign law that reasonably would be expected to be part of the proceedings

6    should be provided in the pretrial conference.").  Lynwood agrees; it argues that "it is premature

7    to conduct a detailed choice-of-law analysis [on limitations] at this stage of the litigation."  Opp.

8    at 4 n.4.  To avoid default application of forum law, the Individuals were only required to identify

9    the differences between California and Russian law—as they did in the motion, the Muranov

10   declaration, and a detailed Appendix A.  *See* Mot. 8-9, Muranov Decl. ¶¶ 17-18, 52-66, 67-69, 70-

11   89; *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 919 (2001) ("[T]he foreign law

12   proponent must identify the applicable rule of law in each potentially concerned state and must

13   show it materially differs from the law of California").  Lynwood cites no authority prohibiting

14   further governmental interest analysis in a reply; its primary citation dealt with the submission of

15   improper reply evidence in a situation unrelated to choice-of-law analysis.  *See Rivera v. Saul

16   Chevrolet, Inc.*, No. 16-CV-05966-LHK, 2017 WL 3267540 at *6 (N.D. Cal. July 31, 2017).  The

17   Individuals properly identified the differences between California and Russian law and argued that

18   all claims are properly dismissed regardless of which law the Court applies.

19                    **2.    Russian Law Properly Applies To Claims 1, 7, 10, 13, and 14**

20       Should a formal choice-of-law analysis be required, Russian law applies to Claims 1, 7,

21   10, 13, and 14.  "In a federal question action where the federal court is exercising supplemental

22   jurisdiction over state claims, the federal court applies the choice-of-law rules of the forum state."

23   *Paracor Fin., Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996).  California uses the

24   "governmental interest" approach.  *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 87–88 (2010).

25       **Conspiracy (Claim 1):**  The majority of the conspiracy allegations concern events in

26   Russia.  *E.g.*, Compl. ¶ 533 ("Konovalov fraudulently represented to Rambler"); *id.* ¶ 535 ("The

27   Team concealed their activity by . . . fraudulently misrepresenting to Rambler").  The purported

28   result of the conspiracy, the sale years later to F5, does not bring the conspiracy under California

INDIVIDUALS' REPLY ISO MOTION TO DISMISS                    CASE NO.  5:20-cv-03778-SK

1  law.  F5 is a *Washington* company.  Russia, which does not acknowledge claims for civil

2  conspiracy, has a stronger interest in the application of its law.  *McCann*, 48 Cal. 4th at 87–88.

3      **Aiding and Abetting (Claim 7):**  Lynwood admits that Claims 5 and 6 for alleged breaches

4  of Article 53.3 of the Russian Civil Code are governed by Russian law, yet it claims that Count 7

5  for alleged aiding and abetting of those breaches by Alexeev and Dounin are governed by

6  California law.  For aiding and abetting, "[a] plaintiff's object in asserting such a theory is to hold

7  those who aid and abet in the wrongful act responsible as joint tortfeasors for all damages ensuing

8  from the wrong."  *Howard v. Superior Court*, 2 Cal. App. 4th 745, 749 (1992).  Alexeev and

9  Dounin were based in Russia during the relevant period.  Lynwood fails to explain how Russian

10  law governs the underlying breach of Article 53.3 that took place in Russia, but that California law

11  would apply to the derivative tort that is also based on Russian actions and actors.

12      **Tortious Interference with Contract (Claim 10):**  Lynwood alleges that Konovalov and

13  Robertson interfered with Sysoev's contractual obligations to Rambler, which it concedes are

14  governed by Russian law.  In *Abogados v. AT&T, Inc.*, 223 F.3d 932 (9th Cir. 2000), the court

15  considered whether New York or Mexico law should apply, where New York recognized an action

16  for tortious inference with contract and Mexico did not.  The Ninth Circuit found that Mexico's

17  interest was significant and that "[i]t is nonsensical to suggest that Mexico has no interest in

18  regulating conduct that affects contracts made in Mexico."  *Id.* at 935.  In this case, any

19  "interference" would affect contracts made in Russia and is properly governed by Russian law.

20      **Tortious Interference with Prospective Business Advantage (Claim 13):**  This claim

21  alleges no connection to California on its face, and incorporates various other claims in a

22  scattershot manner.  *See* Compl. ¶ 668.  For the reasons stated above, Russia has a stronger interest

23  in the application of its law to these claims.

24      **Fraud (Claim 14):**  While Claim 14 contains references to the headquartering of NGINX

25  Software, Inc. in San Francisco, Compl. ¶¶ 677-680, nothing regarding those acts is alleged to be

26  fraudulent.  The alleged destruction of Rambler servers has no connection to California.  *See*

27  Compl. ¶ 681.  The Complaint contains no allegations of material misstatements or actionable

28  omissions occurring in California that could bring Claim 14 within the scope of California's

INDIVIDUALS' REPLY ISO MOTION TO DISMISS                    CASE NO.  5:20-cv-03778-SK

1    interests.  Russian law properly applies to this claim.

2        Given Christophoroff's implicit admission that none of the tort claims can proceed under

3    Russian law, all should be dismissed without leave to amend.[8]

4        **D.    The IP Claims (Claims 15-17, 24-25) Fail Against the Individuals**

5        Lynwood makes a half-hearted effort to defend its copyright and trademark claims as

6    pleaded against the Individuals.  On the copyright claims, Lynwood cites to general legal principles

7    and then relies on a blanket cite to more than 115 paragraphs of the Complaint.  None identify any

8    specific acts of copyright infringement by the Individuals within the three-year limitations period

9    or any facts justifying personal liability or vicarious liability on their part.  They do not mention

10   Robertson at all and only mention Dounin and Smirnoff when referring to events years ago and

11   defining the "Team" and the "Disloyal Employees."  Lynwood takes the opposite approach on the

12   trademark claims: it does not cite a single paragraph of the Complaint and summarily states that

13   the Individuals' actions are wrongful—without offering any facts to show how any of the six

14   Individuals would be personally liable.  Both arguments fail to show any basis in the pleading for

15   assessing the viability of Lynwood's claims against each of the six Individuals.

16   **III.    THE FOREIGN INDIVIDUALS ARE NOT SUBJECT TO JURISDICTION**

17       Lynwood does not assert general personal jurisdiction.  Because Lynwood bears the burden

18   of establishing jurisdiction, *see Love*, 611 F.3d at 608, general jurisdiction is foreclosed.

19       **A.    Lynwood Does Not Establish Specific Jurisdiction Over Its Claims**

20       Lynwood's burden of establishing the basis for jurisdiction, *see Love*, 611 F.3d at 608;

21   Opp. at 18:28-19:1, includes establishing jurisdiction over each defendant separately, *Harris*

22   *Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003), by

23   submitting "evidence supporting personal jurisdiction over each defendant without grouping them

24   together."  *Head v. Las Vegas Sands, Ltd. Liab. Corp.*, 760 F. App'x 281, 284 (5th Cir. 2019).

25       Lynwood refers to Sysoev, Konovalov, Alexeev, and Dounin collectively as the "RDs" and

26   impermissibly aggregates their conduct, *see* Opp. at 20:1-12, 21:22-22:18, overstating each

27

28   _____

     [8]  The claims also fail under California law for the reasons discussed in greater detail in the other
     defendants' motions to dismiss and in the Individuals' opening memorandum of law.

defendant's contacts with California.  For example, it incorrectly asserts that the "RDs" marketed NGINX in California, Opp. at 20:3-4, but Dounin was not involved in any marketing.  *See* Dkt. 106-4 ¶ 9.  Lynwood alleges that the "RDs" organized various corporations and sold them to F5 in San Francisco, *see* Opp. at 20:9-11, but only Konovalov traveled to San Francisco for the sale. *See* Dkt. 106-2 ¶ 16; Dkt. 106-3 ¶ 11; Dkt. 106-4 ¶ 14; Dkt. 106-5 ¶ 14.  Lynwood also suggests that the Court should exercise jurisdiction based on the number of times that "RDs . . . collectively traveled to California."  *See* Opp. at 22:8-9.  Such summary analysis is improper.  *See Harris Rutsky*, 328 F.3d at 1130; *see also Head*, 760 F. App'x at 284; *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 904 (6th Cir. 2006).  Because Lynwood does not identify jurisdictional facts specific to each Foreign Individual, the claims against them should be dismissed.  *See Medimpact Healthcare Sys., Inc. v. IQVIA Holdings Inc.*, No. 19CV1865-GPC(LL), 2020 WL 1433327 at *5 (S.D. Cal. Mar. 24, 2020) (dismissing two defendants because plaintiff improperly "lumped defendants together" and did not "specifically isolate the jurisdictional facts amongst the different . . . entities"); *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 849 (N.D. Cal. 2018); *Parnell Pharm., Inc. v. Parnell, Inc.*, No. 5:14-CV-03158-EJD, 2015 WL 5728396 at *4 (N.D. Cal. Sept. 30, 2015).

Lynwood also must establish jurisdiction over each claim.  *See Action Embroidery*, 368 F.3d at 1180.  Lynwood fails to address how each defendant's contacts give rise to jurisdiction over its claims.  *NetApp, Inc. v. Nimble Storage, Inc.*, in which this Court applied the doctrine of pendent personal jurisdiction, *see* 41 F. Supp. 3d 816, 827 (N.D. Cal. 2014), does not absolve it of that burden.  The doctrine only applies in certain circumstances and its application (which Lynwood does not request) is ultimately discretionary.  *See Action Embroidery*, 368 F.3d at 1181.

### B.  Lynwood Does Not Otherwise Establish Personal Jurisdiction

Lynwood must establish that (1) each of the defendants purposefully availed himself of, or directed activity to, California, and (2) the claims arise from his forum-related activities.  *See CollegeSource*, 653 F.3d at 1076; *see also* Opp. at 18:21-19:1.

#### 1.  Lynwood's Claims Do Not Arise from Forum Activities

With respect to the latter prong, the claims must arise out of the defendant's forum-related activities.  *Schwarzenegger*, 374 F.3d at 802.  Lynwood argues that the court must determine if the

1   plaintiff would not have been injured "but for" the defendant's California conduct, *see* Opp. at 22;

2   *Panavision*, 141 F.3d at 1322, but Lynwood would still have been injured "but for" the Foreign

3   Individuals' contacts with California.  Even if the Foreign Individuals had no contacts with

4   California, they still allegedly developed and misappropriated NGINX while working in Russia

5   for a Russian company.  *See* Compl. ¶¶ 12-30.  Lynwood cannot meet its burden to establish "but

6   for" causation as concerning the forum state.

### 2. Lynwood Does Not Establish Purposeful Availment for Contracts

8   Turning to the first prong, the analysis differs for contract and tort claims.  *Picot v. Weston*,

9   780 F.3d 1206, 1212 (9th Cir. 2015).

10   Claims 2 and 3 assert contract-based claims against Konovalov and Sysoev.  *See* Compl.

11   ¶¶ 554-75.   Claims sounding in contract require a plaintiff to prove that each defendant

12   purposefully availed himself of the forum.  *Picot*, 780 F.3d at 1212.  To determine purposeful

13   availment, the Court should evaluate—among other factors—the terms of the contracts, the

14   parties' actual course of dealing, their prior negotiations, and any contemplated future

15   consequences.  *See HK China Grp.*, 417 F. App'x at 666.  The forum contacts to be evaluated are

16   those that existed at the time the cause of action arose.  *Strasner*, 5 Cal. App. 5th at 226.  As

17   explained in the Individuals' opening brief, neither Sysoev nor Konovalov had sufficient contacts

18   with California at the time the breach-of-contract claims first arose in 2011, when they supposedly

19   breached their employment obligations.  *See* Opening Br. 16:6-24.

20   Lynwood does not identify any significant purposeful availment.  Its authorities recognize

21   the location of contract performance as "the most important factor for determining jurisdiction."

22   *See Berdux v. Project Time & Cost, Inc.*, 669 F. Supp. 2d 1094, 1100-01 (N.D. Cal. 2009); Opp.

23   at 22 n.12.  The relevant Russian employment contracts were not expected to be performed in

24   California.  The California contacts discussed by Lynwood are mostly irrelevant—some because

25   they occurred after 2011, others because they involve defendants other than Sysoev or Konovalov.

26   *See* Opp. at 21:23-22:18.  Lynwood's citation to *Sinatra* is inapposite.  *Sinatra* considered

27   jurisdiction over a tort claim, relied in part on the *Calder* effects test applicable to tort claims, and

28   premised jurisdiction on its conclusion that "the center of [the plaintiff's] business is in California."

10

INDIVIDUALS' REPLY ISO MOTION TO DISMISS                    CASE NO.  5:20-cv-03778-SK

1  *See Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1192, 1197 (9th Cir. 1988).  Neither Lynwood

2  nor Rambler has identified any business operations by them in California.  Lynwood has not met

3  its burden of establishing purposeful availment by Sysoev or Konovalov.

### 3.    Lynwood Does Not Establish *Calder* Purposeful Direction for Tort

5        For claims sounding in tort, Lynwood must satisfy the *Calder* effects test, which requires

6  it to establish that each defendant "(1) committed an intentional act, (2) expressly aimed at the

7  forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."

8  *Dole Food*, 303 F.3d at 1111.  The test applies "whether or not the actions themselves occurred

9  within the forum."[9]  *Yahoo!*, 433 F.3d at 1206; *accord Mavrix*, 647 F.3d at 1228.

10        Although the relevant considerations for acts aimed at the forum have recently been

11  expanded, *see Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017), the

12  Foreign Individuals' individual contacts with California are insufficient to establish jurisdiction.

13  Sysoev and Konovalov sought financing from a variety of international investors, Dkt. 106-3 ¶ 6,

14  and eventually obtained financing from the entities identified in the complaint after meeting in

15  Moscow.  Dkt. 106-2 ¶ 9.  At the time, Konovalov understood Greycroft to be based in New York,

16  e.ventures to be an international fund, and Runa to have offices in Moscow.  Dkt. 106-3 ¶ 6.  Three

17  NGINX entities were eventually formed, only one of which was organized under Delaware law

18  and initially headquartered in California, *see, e.g.*, Dkt. 106-2 ¶ 10, with the California office

19  maintained at the investors' request.  *Id*.  That one of the NGINX entities maintained a principal

20  place of business in California cannot be imputed to corporate employees as a jurisdictional

21  contact.  *See Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d

22  1101, 1109 (9th Cir. 2020).  The Foreign Individuals were employed in Russia by NGINX Ltd.,

23  which is not named as a defendant.  *See* Dkt. 106-2 ¶ 6; Dkt. 106-3 ¶ 5; Dkt. 106-4 ¶ 4; Dkt. 106-

24  5 ¶ 6.  While all four defendants acknowledge traveling to California at various times over the

---

26  [9]  Lynwood argues that jurisdiction is proper when an intentional tort occurs in forum.  Opp. at

27  19:23-25.  *Freestream v. AeroLaw Group*, however, acknowledges contrary language in prior
Ninth Circuit opinions—including the *en banc Yahoo!* decision cited above.  905 F.3d 597, 605-

28  06 (9th Cir. 2018).  *Freestream* cannot overturn prior published authority.  *See Lambert v. Saul*,
980 F.3d 1266, 1274 (9th Cir. 2020).

INDIVIDUALS' REPLY ISO MOTION TO DISMISS                    CASE NO.  5:20-cv-03778-SK

1   course of a decade, most of the travel was sporadic; for example, Dounin recalls traveling to

2   California only twice.   Dkt. 106-4 ¶ 13.   Business development opportunities were pursued

3   globally, with a substantial portion of NGINX customers located in Eastern Europe, Latin

4   America, and China.   Dkt. 106-5 ¶ 8.   Konovalov was the only individual who traveled to San

5   Francisco in connection with the F5 sale.   *See* Dkt. 106-2 ¶ 16; Dkt. 106-3 ¶ 11; Dkt. 106-4 ¶ 14;

6   Dkt. 106-5 ¶ 14.   Lynwood has not shown a continuous attempt to exploit the California market.

7           None of the documents cited by Lynwood reflect such an attempt.   The June 6, 2010 email,

8   which is not attached to the opposition, refers to realizing NGINX's full potential "in the US

9   market."   *See* Opp. at 20:23-25.   It does not reflect NGINX's eventual corporate structure, which

10  consisted of three separate entities organized in three different countries.   *See* Dkt. 106-3 ¶ 8.   The

11  translations of Konovalov's blog posts, *see* Dkt. 125-1, Ex. 1, do not indicate that the defendants

12  were continually exploiting the California market, and the NGINX pitch materials cited by

13  Lynwood do not reflect a "Silicon Valley exit strategy."   *See* Opp. at 20:25-26.   The materials,

14  which Lynwood incorporated into the pleadings by reference, identify potential exit sales to more

15  than a dozen different companies headquartered in California, Washington (F5, Parallels), New

16  Jersey (Radware), Israel (Radware), Florida (Citrix), New York (IBM), Texas (AT&T), Colorado

17  (Level 3), Pennsylvania (Comcast), and Massachusetts (Akami).   *See* Dkt. 106-6, Ex. 1 at 20.

18  Lynwood has not shown any intentional acts expressly aimed at California.

19          Lynwood also has not established the third prong of the *Calder* test.   The intentional acts

20  aimed at California must cause "harm that the defendant knows is likely to be suffered in the forum

21  state."   *Dole Food*, 303 F.3d at 1111.   Courts rely "in significant part" on a corporation's principal

22  place of business to determine where harm occurs.   *See id.* at 1113–14.   Neither Lynwood nor

23  Rambler is located in California.   Harm can be suffered in other jurisdictions, such as the forum

24  where the alleged "bad acts" occurred.   Lynwood's authorities, however, are premised on findings

25  that the plaintiff maintained business operations in the forum state that would be harmed.   In

26  *Mavrix*, the plaintiff's "primary business" consisted of selling photographs to celebrity news

27  publications and it worked with celebrities in California, maintained a California office, employed

28  California-based photographers, registered an agent for service of process in California, and paid

1  fees to the California Franchise Tax Board.  *See Mavrix*, 647 F.3d at 1221-22.  The court therefore

2  concluded that Mavrix would foreseeably suffer harm in California.  *Id.* at 1231-32.  In *AirWair v.*

3  *Schultz*, this Court recognized that if a plaintiff uses its trademark in a state, and the defendant

4  infringes that trademark in the same state, injury would felt mainly in that state.  73 F. Supp. 3d

5  1235, 1237 (N.D. Cal. 2014).  Neither Lynwood nor Rambler has used the NGINX trademarks in

6  California.  Lynwood cannot establish any foreseeable harm suffered in California.

7  　　　　**C.　　　The Exercise of Jurisdiction Would Not Be Reasonable**

8  　　　　Even assuming that Lynwood met its burden of establishing jurisdiction, the exercise of

9  jurisdiction would not be reasonable under the applicable seven-factor test.

10  　　　　*First*, even if Lynwood met its burden of establishing purposeful availment for *each*

11  defendant, the low degree of purposeful injection weighs against jurisdiction.  *Dole Food*, 303

12  F.3d at 1114-15 (level of purposeful injection could support a finding of purposeful availment,

13  "yet still weigh[] against the reasonableness of jurisdiction").  The Foreign Individuals worked in

14  Russia; Sysoev developed NGINX in Russia; he obtained investments for an NGINX company

15  from Moscow; only one of the three NGINX entities was organized in the U.S.; that entity initially

16  maintained only a "virtual office" in San Francisco at the behest of investors; all four Foreign

17  Individuals were employed by a Russian entity and were based in Russia; NGINX's customer base

18  was global; and NGINX was eventually sold to a non-California company.

19  　　　　Second, the burden on the Foreign Individuals is of "primary concern" and the Court must

20  "consider practical problems resulting from litigating in the forum."  *See Bristol-Myers Squibb*,

21  137 S. Ct. at 1780.  Costs, travel, and lack of familiarity with the American legal system impose

22  high burdens on international defendants.  *See Asahi Metal*, 480 U.S. at 114.  Each of the Foreign

23  Individuals affirms that his native language is not English and they would all require translators to

24  participate effectively in formal legal proceedings.  *See* Dkt. 106-2 ¶ 17; Dkt. 106-3 ¶ 13; Dkt.

25  106-4 ¶ 15; Dkt. 106-5 ¶ 16.  Most importantly, discovery in this matter is expected to entail

26  extensive document collection from and depositions of Russian witnesses.  The core dispute in this

27  matter—ownership of NGINX—will be decided exclusively based on evidence located in Russia.

28  All of the documents will require translation, a significant expense and a time-consuming

13

process.[10]  The Foreign Individuals cannot "present evidence on the extent of this burden," given that they have not yet incurred the costs.  Ultimately, despite advancements in technology, the Ninth Circuit recognizes that this factor militates against jurisdiction—especially when discovery would be centered abroad.  *See, e.g.*, *Rocke v. Canadian Auto. Sport Club*, 660 F.2d 395, 399 (9th Cir. 1981).  Even the cases cited by Lynwood found that this factor favored the defendant.  *See CollegeSource*, 653 F.3d at 1080; *Ballard v. Savage*, 65 F.3d 1495, 1501 (9th Cir. 1995).[11]

Third, the potential for conflicts with Russia's sovereignty weighs against jurisdiction.  The inclusion of international defendants is a factor, *see Ins. Co. of N. Am.*, 649 F.2d at 1272, as Lynwood's authorities confirm.  *See AirWair*, 73 F. Supp. 3d at 1240.  The claims that will determine the key issue of ownership—those concerning Sysoev's and Konovalov's alleged obligations to Rambler and copyright ownership—are expressly pleaded under Russian law.  *See* Compl. ¶¶ 587-97, 690-95.  These Russian claims, and the need for the application of Russian law, weigh against jurisdiction.  *See AirWair*, 73 F. Supp. 3d at 1240.

Fourth, the Supreme Court instructs that the forum state's interest in adjudicating a dispute is "considerably diminished" when the plaintiff is not a forum resident.  *See Asahi Metal*, 480 U.S. at 114.  Lynwood does not provide any controlling authority to the contrary, and this Court's *AirWair* decision is not to the contrary.  *AirWair* concluded that a non-resident plaintiff established harm in California because it used the trademark at issue in California and that California therefore had an interest in redressing the alleged injuries.  *See AirWair*, 73 F. Supp. 3d at 1238, 1240.  Neither Lynwood nor Rambler used the NGINX trademarks in California or conducted business in California.  There is no harm for California to remedy and no corresponding interest in the suit.

Fifth, the location of the evidence and witnesses are a critical concern.  "The site where the injury occurred and where evidence is located usually will be the most efficient forum."  *Pac. Atl. Trading Co. v. M/V Main Exp.*, 758 F.2d 1325, 1331 (9th Cir. 1985).  This dispute is over the ownership of NGINX.  The documents and witnesses proving that Rambler was not involved in

---

[10] Lynwood itself has previously acknowledged similar concerns to the Court, citing the "need for interpreters in many of the depositions."  See Dkt. 119 at 24:7-9.

[11] *CollegeSource* involved a Philadelphia defendant.  *See* 653 F.3d at 1080.

INDIVIDUALS' REPLY ISO MOTION TO DISMISS                    CASE NO.  5:20-cv-03778-SK

the development of NGINX are located almost exclusively in Russia.  As Lynwood has previously explained to the Court, however, Russia does not cooperate with U.S. requests under the Hague Convention.   Dkt. 35 at 8-15.   Exercising jurisdiction over Sysoev and the other Foreign Individuals would leave them unable to guarantee the testimony of key witnesses in their defense.  Lynwood does not address this issue, which has not been remedied by "modern advances in communication or transportation."  *See* Opp. at 24:3-7.  Combined with the other issues identified in the Individuals' opening brief, this factor weighs heavily against jurisdiction.

Sixth, as noted in prior briefing, Lynwood's convenience "is not of paramount importance."  *See Dole Food*, 303 F.3d at 1116.

Seventh, Lynwood bears the burden of proving that an alternate forum is unavailable.  Lynwood declined to address this factor.  There is no dispute that Lynwood could pursue its claims against the Foreign Individuals in Russia if it had any valid such claims.

### D.   Jurisdictional Discovery Should Not Be Permitted

Jurisdictional discovery is only warranted if significant jurisdictional facts are controverted or if a more satisfactory showing of facts is necessary.  *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977).  No significant facts are controverted, and Lynwood has not identified any specific information that additional discovery would produce.  Jurisdiction would not be reasonable regardless of whether the Foreign Individuals purposefully availed themselves of or directed activities to California.  Discovery therefore need not be permitted.

## IV.   CONCLUSION

The Individual Defendants respectfully request that the Court dismiss Lynwood's claims against them without leave to amend.  Further, Lynwood's request to strike should be denied. [12]

Dated:  January 11, 2021

Respectfully submitted,

KING & SPALDING LLP

By: /s/  *Quyen Ta*
QUYEN L. TA (SBN #229956)

---

[12] The Individuals provided Appendix A for the Court's convenience, similar to the three-page glossary that Lynwood supplied.  Dkt. 126 at vi-vii.  Appendix A merely summarizes which claims are asserted against which Individuals and the defenses relevant to each claim.

15