1   SHANE BRUN (SBN #179079)
    sbrun@kslaw.com
2   QUYEN L. TA (SBN #229956)
    qta@kslaw.com
3   JEANNE A. FUGATE (SBN #236341)
    jfugate@kslaw.com
4   SAMUEL R. DIAMANT (SBN #288738)
    sdiamant@kslaw.com
5   MATTHEW H. DAWSON (SBN #307350)
    mdawson@kslaw.com
6   KING & SPALDING LLP
    101 Second Street, Suite 1000
7   San Francisco, California 94105
    Telephone: (415) 318-1200
8   Facsimile: (415) 318-1300

9   BRUCE W. BABER (*Admitted Pro Hac Vice*)
    bbaber@kslaw.com
10  KING & SPALDING LLP
    1180 Peachtree Street, N.E.
11  Atlanta, GA 30303-1763
    Telephone: (404) 572-4600
12  Facsimile: (404) 572-5100

13
    *Attorneys for Defendants*
14  Maxim Konovalov, Igor Sysoev,
    Andrey Alexeev, Maxim Dounin,
15  Gleb Smirnoff, and Angus Robertson

16

17                  **UNITED STATES DISTRICT COURT**

18                 **NORTHERN DISTRICT OF CALIFORNIA**

19                      **SAN JOSE DIVISION**

20  LYNWOOD INVESTMENTS CY LIMITED,          Case No. 5:20-cv-03778-LHK

21                                           **REPLY DECLARATION OF**
                                             **ALEXANDER MURANOV PURSUANT**
22              Plaintiff,                   **TO FRCP 44.1 IN SUPPORT OF**
            v.                               **MOTION TO DISMISS COMPLAINT**
23  MAXIM KONOVALOV, IGOR SYSOEV,
    ANDREY ALEXEEV, MAXIM DOUNIN,
24  GLEB SMIRNOFF, ANGUS ROBERTSON,
    NGINX, INC. (BVI), NGINX SOFTWARE,       Date:  February 18, 2021
25  INC., NGINX, INC. (DE), BV NGINX, LLC,   Time:  1:30 p.m.
    RUNA CAPITAL, INC., EVENTURE             Courtroom 8, 4th Floor
26  CAPITAL PARTNERS II LLC and F5           The Honorable Lucy H. Koh
    NETWORKS, INC.,
27                                           COMPLAINT FILED: June 8, 2020
                Defendants.
28

---

I, Alexander Muranov, hereby declare as follows:

1.       I am over 21 years of age.  This declaration is based upon my personal knowledge. I am familiar with the contents of this declaration and could testify under oath to the facts set forth herein if called as a witness.

2.       I have reviewed the declaration of Alexander Christophoroff (Dkt. 124) ("**AC Declaration**") and exhibits thereto and provide the following declaration ("**this Declaration**") with regard to the Individual Defendants' Reply in Support of their Motion to Dismiss.

3.       As a preliminary point, I note that it is normal practice either to submit sources and translations on which expert relies or to make them available upon the Court's request.  As I noted in my Declaration dated 30 September 2020 ("my First Declaration"), the sources on which I rely (including their English translations) will be made available to the Court at first request.

4.       My qualifications are set out at Paragraphs 9–14 and in Annex 1 to my First Declaration.

5.       The purpose of this Declaration is to provide comment on the main points of the AC Declaration.  I also conclude below that nothing in AC Declaration has caused me to change my views expressed in the answers to Questions One, Two, Three and Four in my First Declaration.

**QUESTION ONE:** **UNDER RUSSIAN LAW, CAN CLAIMS BY AN EMPLOYER AGAINST AN EMPLOYEE OVER ALLEGED VIOLATIONS OF THE EMPLOYMENT RELATIONSHIP BE ASSIGNED TO A THIRD PARTY?**

**A.       My analysis is limited to Lynwood Claims No. 2–4 (Lynwood Claims No. 5 and 6 are addressed in Question Two below)**

6.       I have analyzed this issue only for Lynwood Claims No. 2–4.[1]  Those claims were expressly pleaded by Lynwood as "breach of employment obligations" under labor contracts between employer and employee.

7.       As for Lynwood Claims No. 5 and 6, I explained that, on the facts known to me, Articles 53 and 53.1 of the Russian Civil Code were not applicable to Messrs Konovalov, Smirnoff

---

[1] Paragraphs 20–25 of my First Declaration.

DECLARATION OF ALEXANDER MURANOV (FRCP 44.1)            CASE NO.  5:20-cv-03778-LHK

or Sysoev.[2]   Therefore, I did not analyze whether Lynwood Claims No. 5 and 6 would hypothetically be assignable.

8.      Even if Lynwood Claims No. 2–4 were construed to include allegations of theft of intellectual property, it is likely that a competent Russian court would decide that the rules of Section XI (titled "Property Liability of the Parties to the Employment Contract") of the Russian Labor Code, being broadly formulated, cover Lynwood Claims No. 2–4.

9.      Contrary to Mr. Christophoroff's opinion, the scope of the Russian Labor Code is much broader than *"the issues concerning compensation, wages and reimbursement obligations between employers and employees."*

10.      Section XI of the Russian Labor Code addresses property (*i.e.,* financial) liability of the party to an employment contract for any damage caused to the other party.  Such damage can include damage because of concealment and misappropriation of intellectual property as well as destruction of property and information if such damage was caused in connection with the employee's violation of the employment contract.

11.      Notably, Article 243 of the Russian Civil Code (being part of Section XI of the Russian Labor Code) and Paragraph 1 of the resolution of the Supreme Court Plenum dated 16 November 2006 No. 52 "On the Application by the Courts of the Legislation Governing Property Liability of Employees for Harm Caused to Employer," stipulates that employee shall be liable for harm caused to employer per Section XI of the Russian Labor Code also in situations where such harm was caused *"not during the performance . . . of labor duties."*

12.      For instance, in the cassation[3] ruling of Kirov Regional Court dated 7 December 2010 in the case No. 33-3777, the employer sued its former employee (engineer-programmer) who had developed certain software but did not provide the employer with full information about the technical aspects of that software and later deleted such information from the relevant storage device.  The company claimed compensation of damage from that employee.  Notably, the Kirov

---

[2] Paragraphs 26–51 of my First Declaration.

[3] "Cassation" courts are the third instance level of courts (whilst the "appeal" courts are the second level); only the Supreme Court is superior to the "cassation" courts.

DECLARATION OF ALEXANDER MURANOV (FRCP 44.1)          CASE NO.  5:20-cv-03778-LHK

Regional Court applied to the facts of the case the provisions of Section XI of the Labor Code on employee liability and not the provisions of the Civil Code on civil liability or liability for intellectual property violations.

**B.     Russian courts censure attempts to change of jurisdiction by committing bad faith actions (this approach can be applied to assignment)**

13.     In addition, I note that generally, as a matter of Russian law, assignment cannot influence jurisdiction, because normally lawsuits must be brought to the court at the place where the individual defendant resides or a legal entity is located.[4]

14.     Assignment could possibly influence jurisdiction in a situation where lawsuits were to be brought to the court at the place of residence of a new creditor as a plaintiff, but such situations are limited (*e.g.*, consumer relations) and are not relevant for the purposes of my present analysis.

15.     At the same time, it is worth noting that the Russian courts have developed a general approach that where a party committed actions in bad faith with the purpose to change the jurisdictional rules, as described below, the relevant dispute would be referred to the court which would be competent to hear such dispute had the party not committee such actions.

16.     Article 1 of the RF CC provides:

> "3. In the establishment, exercise and protection of civil rights and in the performance of civil obligations, participants in civil legal relations must act in good faith.
>
> 4. No one has the right to take advantage of its illegal or dishonest behavior."

17.     Article 10 of the RF CC further clarifies:

> "1. Exercise of civil rights solely with the intention of causing harm to another person, actions in circumvention of the law for an unlawful

---

[4] This rule is equally applicable irrespective of whether the dispute is decided by the court of general jurisdiction (Article 28 of the Civil Procedure Code) or the arbitrazh court (Article 35 of the Arbitrazh (Commercial) Procedure Code).

DECLARATION OF ALEXANDER MURANOV (FRCP 44.1)          CASE NO.  5:20-cv-03778-LHK

*purpose, as well as other knowingly unfair exercise of civil rights (abuse of right) are not allowed. The use of civil rights in order to restrict competition, as well as abuse of a dominant position in the market, is not allowed.*

*2. In the event of non-compliance with the requirements provided for in paragraph 1 of this article, the court, commercial court or arbitral tribunal, taking into account the nature and consequences of the abuse committed, shall refuse to protect the person's right in whole or in part, and also apply other measures provided for by law.*

*3. In the event that the abuse of the right is expressed in the commission of actions circumventing the law with an unlawful purpose, the consequences provided for by paragraph 2 of this article shall apply, unless other consequences of such actions are established by this Code.*

*4. If the abuse of the right entailed a violation of the rights of another person, such person shall have the right to demand compensation for the losses caused by this.*

*5. The good faith of the participants in civil relations and the reasonableness of their actions are presumed."*

18.    As a matter of Russian law, if a Russian court establishes that a party undertook certain actions in bad faith with the purpose to change the jurisdiction, a Russian court is entitled to transfer the case involving such party to that other Russian court which would have been in charge of the case but for such bad faith actions.  In my opinion, this approach would be applied by Russian courts in a hypothetical situation where a Russian court found that an assignment was made in bad faith with the purpose to change jurisdiction.

**C.    The issue is not that Labor Code *prohibits* assignment, but that Labor Code does not allow it**

19.    Nothing in my First Declaration suggested that the Russian Labor Code prohibited the assignment of employer's claims.  Rather, as I explained in my First Declaration, with

4

references to the relevant Russian courts' decisions,[5] most Russian courts take the approach (to which I concur) that the very nature of employment relationship does not allow the application of civil law tools, such as assignment, to claims arising from such relationship.  Importantly, as regards assignment in particular, whereas Mr. Christophoroff relied on decisions of appeal courts, I relied also on a decision of a cassation court, which is a higher court.[6]

20.    I agree with Mr. Christophoroff that there exists certain interdisciplinary relationships between civil law and labor law, like between other branches of law.  Still, civil law and labor law are different legal branches and their legal principles are not identical.  If the concept of assignment is known to civil law, it does not mean *per se* that the same concept should exist, or should exist to the similar extent, in labor law.

21.    For example, Article 4 of the Russian Family Code expressly provides the general rule that to the property and non-property relations between the members of the family which relations are not regulated by the Russian Family Code, the civil legislation (the Russian Civil Code) shall apply to the extent it does not contradict the essence of family relations.  Article 4 reads as follows:

> *"To the property and non-property relations between the members of the family (listed in Article 2 of this Code) which relations are not regulated by the family legislation (Article 3 of this Code), the civil legislation shall apply to the extent it does not contradict the essence of family relations."*

22.    This means that the Russian legislature has generally allowed application of civil law concepts to family relations, but such application is possible only "to the extent it does not contradict the essence of family relations."

23.    Notably, in the Russian Labor Code there is no general rule similar to Article 4 of the Russian Family Code.  This means that generally application of civil law concepts to employment relations is not possible.  Courts should exercise care when applying the provisions of the Civil Code to employment relations (by analogy).  As regards assignment, most Russian

---

[5] Paragraphs 20–23 of my First Declaration.
[6] Paragraph 22 of my First Declaration.

5

courts take the approach that assignment of employment claims is not possible.

**D.   Mr. Christophoroff cites no authority that would allow an employment (not a corporate) claim (unconfirmed by a judgment) to be assigned**

24.    Mr. Christophoroff relies on cases involving corporate (not strictly employment) claims in the following Russian courts' decisions:

    a.    Paragraph 53:  **Case No. A40-153460/2019** concerns a claim by employer against its former general director (CEO).  The corporate (civil) law nature of the CEO's liability as a managing body of the company follows from the Russian Civil Code and Federal Law "On Limited Liability Companies." The ruling dated 7 July 2020, among other things, quoted the resolution of the Plenum of the Supreme Arbitrazh (Commercial) Court of the Russian Federation of 30 July 2013 No. 62 referenced at Paragraph 35 of my First Declaration regarding the corporate bodies and officers who may be liable under Article 53 of the Civil Code.  Case No. A40-153460/2019 does not concern assignment at all.

    b.    Paragraph 63:  **Case No. A56-76815/2019** (like the above case) addresses claims against a former CEO that are treated differently from claims against non-executive employees and raise corporate (civil) liability in addition to employment issues.   It is noteworthy that the Thirteenth Arbitrazh (Commercial) Court of Appeal also referred, among other things, to the resolution of the Plenum of the Supreme Arbitrazh (Commercial) Court of the Russian Federation dated 30 July 2013 No. 62 referenced at Paragraph 35 of my First Declaration.

    c.    Paragraph 66:  **Case No. 33-6577** (like the above cases) concerned the corporate (civil) liability of the general director (CEO) with application of Article 53 of the Civil Code and Federal Law "On Limited Liability Companies."

    d.    Paragraph 67: **Case No. 33-25996/2018** is described by Mr. Christophoroff

as the one which "upheld a judgment in favor a third-party assignee of an employer's claims against the former general director (CEO) for his misappropriation of corporate assets and accounting irregularities."  In that case, the assignment of right to receive the amounts already awarded to the former employer by court took place after the case was tried in the first instance, thus, the nature of assignment was substantially different from the Rambler–Lynwood case.  Once again, this is a case concerning former CEO, governed by special provisions of corporate (civil) law.

25.    Further, at Paragraph 68, Mr. Christophoroff relies on **Case No. 33-38329/2018**. That case concerned a rather complex factual situation.  There were two levels of relationship between the plaintiff and the defendant, *i.e.*, that arising from employment contract (until 4 August 2015, when the defendant was the employee) and, separately, the relationship governed by the Russian Civil Code provisions on storage agreements (after 5 August 2015, when the defendant was an individual entrepreneur).  Per the appeal ruling of the Moscow City Court dated 26 September 2018, the compensation for the damage caused by the defendant during the employment relationship had been awarded within the framework of the criminal case where the defendant, as employee, was held liable for misappropriation.  The ruling of the Moscow City Court dealt only with damage caused by the defendant during the period where he already was an individual entrepreneur.  The assignment and assignability of the employment claim (separately from the civil law claim against the defendant as individual entrepreneur) was not specifically analyzed.

26.    Lastly, Mr. Christophoroff relies on cases involving claims assigned after there was a judgment on finding of liability (which is a situation different from Rambler–Lynwood case):

a.    Paragraph 65:  **Case No. 33-2387a/2017** was tried and resolved between the actual employer and the employee, and the assignment agreement concluded later concerned the right to claim the amount awarded, which is different compared to claims never asserted and/or brought to a Russian court by the employer.  In this regard, it should be noted that in light of Article 8 of the Russian Civil Code a court judgment (on recovery of

DECLARATION OF ALEXANDER MURANOV (FRCP 44.1)          CASE NO.  5:20-cv-03778-LHK

1   monies) gives rise to new civil rights and obligations.  Such rights and

2   obligations can be assigned (as opposed to employment claims).

3       b.   Paragraph 67:  **Case No. 33-25996/2018**. See information at Paragraph 24.d

4   of this Declaration.  In addition, as I understand from the judgment, the

5   assignment was not challenged by the defendant in that case.

6       c.   Paragraph 69:  **Case No. 33-32570/2016** (similar to the above cases)

7   concerned an assignment agreement entered into after the damages were

8   awarded to the employer by the court of the first instance, thus, the

9   circumstances are substantially different from the Rambler–Lynwood case.

10   Although in that case the appeal court (which was hearing the case after the

11   assignment took place) recognized that the defendant had not been property

12   notified of the first instance proceedings and the dispute was tried anew by

13   the appeal court, it does not follow from the appeal ruling that the defendant

14   challenged the assignability of the claim, which is, again, a circumstance

15   different from the Lynwood claims.

16       27.   Further, Mr. Christophoroff's point that some of cases he cites are the cases

17   considered by Moscow courts as courts where Rambler's headquarters are located is of no

18   relevance because, as I noted at Paragraph 13 of this Declaration, normally lawsuits must be

19   brought to the court at the place where the *defendant* (not the plaintiff or its alleged predecessor)

20   resides (if an individual) / is located (if a legal entity).

21       28.   In addition, in response to the points raised at Paragraphs 71–73 of AC Declaration,

22   I note that Mr. Christophoroff did not question the relevance of one of my cases (Case No. 33-

23   2014-16).  The Cases No. A03-4411/2008-30 and No. 33-753/2014 concerned assignment of

24   claims for unpaid wages (employment claims), but Mr. Christophoroff did not explain why the

25   same approach should not apply to Lynwood's claims, which, as I set out at Paragraphs 8-12 of

26   this Declaration, even if construed to include allegations of theft of intellectual property, would be

27   likely decided that under the Russian Labor Code, i.e. as employment claims.  As for the Case No.

28   44G-181/2018, although it was different *factually*, Mr. Christophoroff did not question its *legal*

relevance.  As for the Case No. 33-587/2020, Mr. Christophoroff did not effectively question its

relevance even *factually*.  As for the *legal* relevance, Mr. Christophoroff noted that the Russian

court challenged the assignment *sua sponte*.  Even if that was done *sua sponte*, it nonetheless

indicates that the issue of validity of assignment of employment claims is of importance for

Russian courts.

**QUESTION TWO: UNDER RUSSIAN LAW, (A) DID MAXIM KONOVALOV, IGOR SYSOEV, AND GLEB SMIRNOFF OWE HEIGHTENED FIDUCIARY DUTIES TO RAMBLER (AS PER ARTICLES 53 AND 53.1 OF THE RUSSIAN CIVIL CODE), AND (B) WOULD ANY SUCH DUTIES REMAIN AFTER THE TERMINATION OF EMPLOYMENT?**

**A.     In my First Declaration, I did not seek to create bright line rule based on employee's position or title**

29.     It appears that Mr. Christophoroff has misunderstood my reasoning.  Mr. Christophoroff's states that my opinion is that *"Russian Courts adhere to a static and simplistic bright-line test when evaluating the applicability of Articles 53 and 53.1 to a specific individual defendant."*  This is, of course, incorrect.

30.     In my First Declaration, I did not indicate that Russian courts apply simplistic approaches.  Rather, I indicated that only those persons who are expressly included within the ambit of Articles 53 and 53.1 of the Civil Code can be held liable for breach of the relevant fiduciary duties.

31.     Indeed, I did indicate that *"[p]ersons who de facto can determine the operations of the legal entity"*[7] or, in other words, *"[i]ndividuals that determine the actions of the legal entity"*[8] can be held liable.  Those persons (individuals) do include any person (individual) who *de facto* can determine the managerial decisions / policies of the company, such as *e.g.* shareholders, "shadow" (unofficial) directors, *etc*.  I have never opined that the applicability of Articles 53 and 53.1 of the Civil Code should depend on, or is determined by courts on the basis of, *solely* the formal position or title.

32.     For this reason, Mr. Christophoroff is simply wrong that I did not encompass the

---

[7] Paragraph 30 of my First Declaration.
[8] Paragraph 36 of my First Declaration.

DECLARATION OF ALEXANDER MURANOV (FRCP 44.1)        CASE NO.  5:20-cv-03778-LHK

1   so called *"controlling persons"* (or, as Mr. Christophoroff also refers to them, *"controllers"*[9]).

2       33.      In fact (see below), cases mentioned by Mr. Christophoroff confirm that the range

3   of *"controlling persons"* for the purposes of corporate liability (under Articles 53 and 53.1 of the

4   Civil Code) is fairly limited in practice and Russian courts normally do not show readiness to

5   overly expand it.

6

7       **B.      Cases relied on by Mr. Christophoroff are irrelevant or confirm my opinion**

8       34.      Mr. Christophoroff relies on several cases which are irrelevant or confirm my

9   opinion that Russian courts are reluctant to hold liable persons who are not company's executives

10  or formal or *de facto* managers, but are inferior officers.  Specifically:

11          a.  Paragraph 82:  **Case No. A40-15432/2016** concerned the liability of the

12              CEO (*i.e.*, the person vested with the broadest executive powers in a Russian

13              company and the only one who can generally act on behalf of the company

14              without a POA) and controlling shareholder.  Moreover, the claims were

15              brought within the framework of bankruptcy proceedings.   Russian

16              bankruptcy legislation is separate from civil legislation, and many

17              approaches developed by the Russian Supreme Court and other courts as

18              regards bankruptcy disputes do not apply to non-bankruptcy disputes.

19              Noteworthy, Russian bankruptcy legislation expressly sets a broader range

20              of controlling persons compared to Articles 53 and 53.1 of the Civil Code.

21              Pursuant to Article 61.10 of the Federal Law "On Insolvency

22              (Bankruptcy)," the notion of "controlling persons" for the purposes of

23              bankruptcy legislation also expressly includes *e.g.* relatives of the directors

24              and managers, chief accountants or financial directors, persons who exerted

25              pressure on the decision-makers.   Given the difference between the

26              corporate law approach and the bankruptcy law approach, references to

27              bankruptcy cases for the purposes of illustrating how Articles 53 and 53.1

28  ---
    [9] Paragraph 80 of AC Declaration.

DECLARATION OF ALEXANDER MURANOV (FRCP 44.1)          CASE NO.  5:20-cv-03778-LHK

of the Civil Code apply, should be treated with substantial degree of caution.

    b.   Paragraph 83:  **Case No. A40-14034/2015** also involved the former CEO and shareholder who influenced the company's managerial decisions and concerned claims brought within the framework of bankruptcy proceedings.

    c.   Paragraph 84:  **Case No. A48-3332/2018** involved the CEO, the deputy CEO and the chief accountant.  The case confirms that while a company may bring claims against its executives and officers (chief accountant), the court in each case assesses the actual ability of such directors and officers (chief accountant) to control the operations of the company and whether any damage was caused to the company by their unlawful actions.

    d.   Paragraph 96: **Case No. A40-191563/2017** concerned the CEO's liability. The statement that the court found violation of Article 53 after the CEO "separated from the company" is not accurate.  All core circumstances giving rise to the claim (allegedly unreasonable waiver of a valuable right for the benefit of a counterparty, concealment from the shareholder of an important contract) took place when the CEO was discharging his duties as such, but he also did not pass the relevant documents to the company at the moment of his departure (which he was obliged to do).

    e.   Paragraph 96:  **Case No. A32-44515/2016** concerned CEO's liability. Again, all core circumstances giving rise to the claim (conclusion of suspicious loan agreements, concealment / failure to keep the texts of those agreements) took place while the CEO was discharging his duties as such, but he also did not pass the relevant documents to the company at the moment of his dismissal from office.

35.    As seen, the court decisions Mr. Christophoroff relied upon are limited to instances of imposing corporate liability on directors (deputy directors) and shareholders.  These cases, as well as the fact that Mr. Christophoroff has not cited any directly relevant cases (regarding liability of inferior officers), show that Russian courts are very reluctant to impose corporate liability on

1    persons other than company's executives, managers or shareholders.

2        36.    At Paragraph 92 of AC Declaration, Mr. Christophoroff indicates that I have not

3    cited "court decisions applying the Russian statutes to a specific set of facts such as whether

4    defendants in similarly situated positions as Messrs. Smirnoff and Sysoev would owe Rambler

5    Article 53 duties."  At the same time, Mr. Christophoroff has not cited such cases either.  The

6    absence of such cases means that plaintiffs in Russia are reluctant even to try to argue applicability

7    of Articles 53 and 53.1 in similar situations.  As for Mr. Christophoroff's statement that the

8    relevant Supreme Court resolutions do not restrict the scope of Articles 53 and 53.1 to other

9    employees, I can comment that those resolutions do not restrict the scope of Articles 53 and 53.1

10   to other employees only to the extent such employees control company's management or policies.

11   Moreover, I note (and Mr. Christophoroff agrees) that the Supreme Court resolutions occupy a

12   higher place in the hierarchy of sources of law than decisions in individual cases.

13       37.    As for Mr. Christophoroff's comment at para 93 of AC Declaration, I note that my

14   point was only that the Constitutional Court did not treat the range of persons covered by Articles

15   53 and 53.1 of the Russian Civil Code broadly.

16
     **C.     I disagree with Mr. Christophoroff's analysis of allegations against Mr.**
17   **        Konovalov**

18       38.    Paragraphs 85–86 of AC Declaration mentions the allegations which I reviewed

19   prior to issuing my First Declaration.  The facts, as pleaded by Lynwood, indicate that Mr.

20   Konovalov may have had some operational powers, but they do not show that Mr. Konovalov was

21   allowed to determine Rambler's policies or managerial activities.  The key criterion for Mr.

22   Konovalov's corporate liability is lacking: that Mr. Konovalov could determine Rambler's

23   managerial decisions or policies and that he committed any violations in connection with his

24   alleged managerial or policymaking powers.

25       39.    As regards Paragraphs 87–90 of AC Declaration and exhibits 26–27, containing

26   Mr. Konovalov's power of attorney and Rambler's financial director's power of attorney, I was

27   not asked to review those documents when working on my First Declaration since, as I understood,

28   they were not attached to Lynwood Complaint and not available to the Individuals.

DECLARATION OF ALEXANDER MURANOV (FRCP 44.1)          CASE NO.  5:20-cv-03778-LHK

40.    I have now reviewed those documents and they confirm my opinion.  Specifically:

a.    Compared to the power of attorney issued to Rambler's financial director, the power of attorney issued to Mr. Konovalov was much narrower and contained a lot of limitations;

b.    The power of attorney explicitly limited Mr. Konovalov's powers to a range of specific company activities;

c.    The power of attorney explicitly limited Konovalov's powers to signing contracts within "the approved departmental/divisional budget," which obviously is not the same as Rambler's overall budget;

d.    The power of attorney explicitly stated that Mr. Konovalov could sign contracts which "passed the approval procedure," *i.e.*, not on his own;

e.    The power of attorney explicitly limited Konovalov's said powers to maximum RUB 1,000,000.  The official USD/RUR exchange rate set by the Central Bank of Russia for 13 April 2010 (the date of one of the powers of attorney) was 1:28.9428, so the amount of RUB 1,000,000 corresponded to approximately USD 34,550.91, which is a fairly small amount for such a large organization as Rambler.

41.    The cases relied on by Mr. Christophoroff are not relevant:

a.    **Case No. A41-31311/2014** involved claims against, *inter alia*, a deputy CEO in the bankruptcy proceedings.[10]  The power of attorney analyzed in that case was issued to the deputy CEO and effectively gave him the executive powers equal to those of the CEO, including representation before state authorities and organizations; opening any bank accounts for the company; signing any agreements on behalf of the company; signing payment instructions; hiring and terminating employees; signing, receiving and submitting any other documents.  The power of attorney issued to Mr. Konovalov by Rambler was not even near such scope of executive powers.

---

[10] As to the bankruptcy proceedings, see also Paragraph 34.a of this Declaration.

DECLARATION OF ALEXANDER MURANOV (FRCP 44.1)                CASE NO.  5:20-cv-03778-LHK

b. **Case No. A40-123852/2017** involved claims against *inter alia* a financial director who acted under a power of attorney and upon instructions of the chairman of the board of directors.  Thus, the case at issue does not demonstrate a broad application of the Russian Civil Code provisions on officers' liability.

**QUESTION THREE: UNDER RUSSIAN LAW, DO (A) CIVIL CONSPIRACY, (B) AIDING AND ABETTING, (C) TORTIOUS INTERFERENCE WITH CONTRACT, (D) TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE, OR (E) FRAUDULENT MISREPRESENTATION AND/OR FRAUDULENT CONCEALMENT FORM STANDALONE CAUSES OF ACTION?**

42.     Mr. Christophoroff does not address this question.

**QUESTION FOUR: IF IT IS ESTABLISHED THAT AN ENTITY (RAMBLER) BELIEVED THAT IT HAD A CIVIL LAW CLAIM AGAINST DEFENDANTS NO LATER THAN 2015 AND ENTERED INTO AN AGREEMENT ASSIGNING THE RELEVANT CLAIM TO PLAINTIFF (LYNWOOD), WOULD A COMPLAINT FILED IN 2020 BE TIME-BARRED UNDER RUSSIAN LAW?**

43.     Mr. Christophoroff's explanations of Russian law at Paragraphs 100 to 109 of AC Declaration stand for the proposition, which I set forth in my First Declaration, that in determining whether claims are time-barred, Russian courts have to carefully look into the issue of when the claimant actually became aware or should have become aware of the facts giving rise to the claim.

44.     As regards the "continuous infringement" approach, nothing in AC Declaration disproves my opinion set out at Paragraphs 106–111 of my First Declaration.  In particular:

a. Paragraph 116: **Case No. 6-V12-1** — the Supreme Court considered a situation where a plaintiff (individual) filed a claim against the relevant state authority for the compensation of damages for the failure to provide a flat to the plaintiff due to his social status as an orphan.  The Supreme Court held that the failure to improve the plaintiff's dwelling conditions was a continuous infringement not subject to limitation periods.  This was not a business case.  Lynwood's claims are thoroughly different.  It should be noted that, as a matter of practice, Russian judges treat commercial cases

14

1    and cases involving social protection issues very differently, therefore the

2    approaches used in the latter cases cannot be straightforwardly applied to

3    the former ones. This consideration should be borne in mind given that, as

4    Mr. Christophoroff says (and I agree with him), the application of the

5    provisions on limitation periods is always fact-specific.

6       b.  Paragraphs 117 and 118: **Case No. A21-10484/2015** and **Case No. A15-**

7    **3968/2014** did not relate to copyright claims, or employment claims, or

8    claims for violation of heightened fiduciary duties (Articles 53 and 53.1 of

9    the Russian Civil Code).

10    45.   Mr. Christophoroff's explanations of Russian law at Paragraphs 120 to 123 of AC

11    Declaration stand for the proposition, which I set forth in my First Declaration, that the application

12    of Russian limitation periods is fact-specific.

13                             ***

14    46.   For the above reasons, I conclude that nothing in AC Declaration has caused me to

15    change my views expressed in the answers to Questions One, Two, Three and Four in my First

16    Declaration.

17

18       I declare under penalty of perjury under the laws of the United States of America that the

19    foregoing is true and correct. This declaration was executed in Moscow, Russia on January 11,

20    2021.

21

22    Dated: January 11, 2021          By: _____

23                                    Alexander Muranov

24

25

26

27

28

15