1
2
3
4
5
6
7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

12
13

LYNWOOD INVESTMENTS CY
LIMITED,

Plaintiff,

14

v.

15

MAXIM KONOVALOV, et al.,

16

Defendants.

17

18

19

20

21

22

23

24

Case No. 20-CV-03778-LHK

**ORDER GRANTING MOTIONS TO
DISMISS WITH LEAVE TO AMEND**

Re: Dkt Nos. 88, 90

Plaintiff Lynwood Investments CY Limited ("Lynwood") sues Defendants Maxim

Konovalov; Igor Sysoev; Andrey Alexeev; Maxim Dounin; Gleb Smirnoff; Angus Robertson; F5

Networks, Inc.; NGINX, Inc. (BVI); NGINX Software, Inc.; E. Venture Capital Partners II LLC;

Runa Capital, Inc.; BV NGINX, LLC; and NGINX, Inc. (DE) (collectively, "Defendants").

Before the Court are two motions to dismiss the instant case: (1) a motion to dismiss filed

by F5 Networks, Inc.; NGINX, Inc. (BVI); and NGINX Software, Inc., ECF No. 88;[1] and (2) a

motion to dismiss filed by E. Venture Capital Partners II LLC; Runa Capital, Inc.; and BV

25

26

27

28

---

[1] This motion contains a notice of motion paginated separately from the memorandum of points
and authorities in support of the motion. Civil Local Rule 7-2(b) provides that
the notice of motion and points and authorities must be contained in one document with the
same pagination.

1

NGINX, LLC, ECF No. 90.[2] Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS the motions to dismiss with leave to amend.

## I.   BACKGROUND

### A.   Parties

Plaintiff Lynwood is a Cyprus limited company with its principal place of business in Limassol, Cyprus. ECF No. 1 ("Compl.") ¶ 56.

Lynwood sues Defendants F5 Networks, Inc. ("F5"); NGINX Software, Inc.; NGINX, Inc. (BVI) ("NGINX BVI") (collectively, the "F5 Entities"); and NGINX, Inc. (DE) ("NGINX DE"). Defendant F5 is a corporation incorporated in Washington and headquartered in Seattle, Washington. *Id*. ¶ 70. Defendant NGINX Software, Inc. is a Delaware corporation headquartered in San Francisco, California. *Id*. ¶ 64. NGINX BVI is a British Virgin Islands corporation headquartered in San Francisco, California. *Id*. ¶ 63. NGINX DE is a Delaware corporation headquartered in San Francisco, California. *Id*. ¶ 65.

Lynwood also sues Defendants E. Venture Capital Partners II LLC ("E. Ventures"); Runa Capital, Inc. ("Runa Capital"); and BV NGINX, LLC ("BV NGINX") (collectively, the "Outside Investors"). Defendant E. Ventures is a Delaware limited liability company headquartered in San Francisco, California. *Id*. ¶ 69. Defendant Runa Capital is a Delaware corporation headquartered in Palo Alto, California. *Id*. ¶ 68. Defendant BV NGINX is a Delaware limited liability company headquartered in San Francisco, California. *Id*. ¶ 66.

Finally, Lynwood sues Defendants Maxim Konovalov ("Konovalov"), Igor Sysoev ("Sysoev"), Andrey Alexeev ("Alexeev"), Maxim Dounin ("Dounin"), Gleb Smirnoff ("Smirnoff"), and Angus Robertson ("Robertson") (collectively, the "Individual Defendants"). Konovalov, Sysoev, Alexeev, and Dounin (collectively, the "International Defendants") are citizens of the Russian Federation who reside in Moscow, Russia. *Id*. ¶¶ 58–61. Smirnoff is a

---

[2] Maxim Konovalov, Igor Sysoev, Andrey Alexeev, Maxim Dounin, Gleb Smirnoff, and Angus Robertson also filed a motion to dismiss the instant case, ECF No. 106. The Court will address that motion in a separate order.

Case No. 20-CV-03778-LHK
ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND

1    citizen of the Russian Federation who resides in Los Gatos, California. *Id*. ¶ 62. Robertson is a

2    citizen of Florida who resides in Miami Beach, Florida. *Id*. ¶ 67.

3    **B. The Creation of the NGINX Software**

4         Lynwood's complaint alleges that "Defendants Igor Sysoev and Maxim Konovalov, along

5    with their co-conspirators, brazenly stole an entire web server enterprise ["the NGINX

6    Enterprise"] from their former employer, Rambler Internet Holding LLC ["Rambler"], in Russia,

7    where the computer software, known as NGINX (pronounced 'Engine-X') was conceived,

8    developed as a work for hire, and first publicly deployed." *Id*. ¶ 1. Lynwood is the assignee of any

9    rights Rambler has to the NGINX Enterprise as the result of a 2015 agreement between Rambler

10   and Lynwood. *Id*. ¶ 471.

11        On November 14, 2000, Sysoev began his employment as a System Administrator for

12   Rambler. *Id*. ¶ 97. During the course of Sysoev's employment with Rambler, he entered into

13   several agreements with Rambler, which supplemented Rambler's own code of ethics and

14   regulations. *Id*. ¶¶ 110–140, 627 (alleging that "Sysoev and Rambler were parties to and bound by

15   the Sysoev Employment Agreement, the Sysoev Separation Agreement, the Rambler Code of

16   Ethics and the Rambler Regulations"). During the time that Sysoev was employed at Rambler,

17   Rambler was "the largest technology company and search engine in Russia." *Id*. ¶ 80.

18        According to Lynwood, "[o]ne of Sysoev's primary employment responsibilities as a

19   Rambler employee was to develop the NGINX Software as a key component of Rambler

20   infrastructure." *Id*. ¶ 175. Sysoev was allegedly working on the NGINX Software "to solve

21   problems with Rambler's utilization of the widely used open source web server known as

22   Apache." *Id*. ¶ 155. Web servers like Apache and NGINX are server programs that allow web

23   pages to "serve" a web page to a visitor who requests it; server programs help to enable efficient

24   access to websites even as the number of visitors increases. *Id*. ¶¶ 158, 162.

25        On October 23, 2001, Sysoev wrote the first line of code for the NGINX Software. *Id*. ¶

26   154. Lynwood alleges that "Sysoev spent nine years of his Rambler employment working

27

28

Case No. 20-CV-03778-LHK
ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1    primarily on the NGINX Software and related development." *Id*. ¶ 178. In 2004, Sysoev first

2    released the open source portion of the NGINX Software without authorization from Rambler. *Id*.

3    ¶ 164.

4            Following the open source release of the NGINX Software, Sysoev allegedly "spent the

5    next seven years, during the time he was employed at Rambler . . . working on further developing,

6    testing, improving and releasing the NGINX Software all with the assistance of other Rambler

7    engineers, using Rambler resources, infrastructure and Rambler Internet traffic, during regular

8    Rambler business hours." *Id*. ¶ 169. "During that time, Sysoev received significant and ongoing

9    technical assistance in this NGINX-focused endeavor to continuously test and improve the code

10   from a number of senior Rambler computer/network department heads, software engineers and

11   other technical staff." *Id*. ¶ 170. Moreover, "Rambler paid Sysoev regular outsized bonuses on

12   either a quarterly or semi-annual basis in recognition of his work in developing the NGINX

13   Software for Rambler and the software code's utility in solving the company's various issues at

14   that time." *Id*. ¶¶ 101, 191.

15       **C.  The Alleged Conspiracy to Steal the NGINX Enterprise**

16           Following the open source release of the NGINX Software, the NGINX Software gained

17   popularity. Initially, the NGINX Software was mostly used in conjunction with Apache. *Id*. ¶ 166.

18   However, as the NGINX Software evolved, "websites began employing the NGINX Software in

19   lieu of Apache." *Id*. According to Lynwood, the NGINX Enterprise (like other similar software)

20   has become lucrative by offering a proprietary version of its software, known as NGINX Plus,

21   which has enhanced features. *Id*. ¶¶ 161, 167.

22           Seeking to capitalize on the NGINX Software's popularity and the financial opportunities

23   the NGINX Software presented, Sysoev and two other Rambler employees, Konovalov and

24   Smirnoff (collectively, the "Disloyal Employees") allegedly worked together with two others,

25   Alexeev and Dounin (collectively, the "Team") to steal the NGINX Enterprise from Rambler and

26   monetize it for their own gain by selling it to a third party. *Id*. ¶¶ 82, 192. The Team also received

27

28

United States District Court
Northern District of California

4

assistance from Alexander Korotkov ("Korotkov"), who eventually became a whistleblower and revealed information about the alleged conspiracy to Rambler. *Id*. ¶ 202.

According to Lynwood, each member of the Team had a specific role. "Sysoev was the programming genius and lead architect of the NGINX Software, and worked on publicizing the NGINX Software and later meeting with potential investors." *Id*. ¶ 197. Konovalov, who was the Chief Technology Officer of Rambler, "was the chief executive and mastermind of the plot." *Id*. ¶¶ 198, 213. "Alexeev was charged with business development and establishing relationships with potential investors." *Id*. ¶ 198. "Dounin was the senior developer," who "assisted Sysoev on NGINX-related software coding." *Id*. ¶¶ 198, 200. Smirnoff, who "was left behind at Rambler for approximately eleven months after Sysoev resigned from Rambler by December 2011," "was the Team's 'clean-up guy' charged with evidence destruction, including the wiping of electronic data at Rambler that contained evidence of the Team's conspiracy and misconduct." *Id*. ¶ 201.

Lynwood also alleges that all three Disloyal Employees concealed their conspiracy from Rambler. According to Lynwood, "all of Konovalov's emails related to NGINX's formation were deleted," "[t]he vast majority of Sysoev's email folders were deleted," and "[t]he vast majority of Smirnoff's emails were deleted." *Id*. ¶¶ 297–99. Moreover, Lynwood alleges that "following their separation from Rambler, Sysoev and Konovalov instructed Smirnoff to destroy the servers containing Sysoev's NGINX Software work product." *Id*. ¶ 303.

"Even though Konovalov and the rest of the Disloyal Employees were fixated on misappropriating the NGINX Enterprise, which they viewed as a highly valuable business," the Disloyal Employees allegedly misrepresented to Rambler that the NGINX Enterprise was worthless. *Id*. ¶ 289. For example, in mid-April 2011, Konovalov "fraudulently declined to identify the NGINX Software as Rambler-owned software" and "ranked all NGINX software programs" as having "insignificant or no tangible value or importance." *Id*. ¶ 291.

### D.  Outside Investment in the NGINX Enterprise

Lynwood alleges that the Disloyal Employees began their efforts to steal the NGINX

5

Enterprise while they were still employed with Rambler. *Id.* ¶¶ 211–212. Lynwood traces the independent promotion of the NGINX Enterprise to February 2010. On February 20, 2010, Korotkov first registered the Internet domain name NGINXPLUS.com. *Id.* ¶ 232. Korotkov later stated in a trademark filing that the first use of the NGINX mark occurred on February 1, 2010, and the first use in commerce was on March 1, 2011. *Id.* ¶ 241.

Around this time, the Team (Sysoev, Konovalov, Alexeev, Dounin, and Smirnoff) allegedly began to contact outside investors. In June 2010, Korotkov allegedly solicited investors from BV Capital, now known as E. Ventures. *Id.* ¶ 245. Korotkov was then ejected by the Team, and Alexeev and Konovalov continued to contact investors. *Id.* ¶ 252. In March and April 2011, Alexeev, Sysoev, and Konovalov made a slide presentation to attract investors. *Id.* ¶ 254.

On April 6, 2011, "the Team signed a funding term sheet with United States-based venture capital firms Greycroft Partners II L.P. . . ., BV Capital and affiliates . . . and Runa Capital." *Id.* ¶ 258. Furthermore, the funding term sheet allegedly stated as follows: "A legal opinion of the Company counsel, satisfactory to the Investors, shall be delivered to the Investors stating that the Founders' activities with the Company do not and will not conflict with any agreement, commitment, or other encumbrance placed on them by their current or former employer." *Id.* ¶ 270.

According to Lynwood, Greycroft pulled out of the financing deal shortly before it was scheduled to close in October 2011. *Id.* ¶ 277. Lynwood alleges that, "[u]pon information and belief, Greycroft pulled out of the closing because its concerns over Rambler's ownership of the NGINX Software, NGINX Plus, and more generally, the NGINX Enterprise remained unsatisfactorily addressed. *Id.* ¶ 278.

The two remaining investors, BV Capital and Runa Capital, allegedly "went forward . . . after conducting their own due diligence, with full knowledge that Rambler was the legal owner of the entire NGINX Enterprise and assuming the risk that one day there would be a dispute over the ownership of the NGINX Enterprise." *Id.* Following the first round of financing, BV Capital and

Case No. 20-CV-03778-LHK
ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1  Runa Capital participated in additional rounds of financing in October 2013, December 2014, and

2  April 2016. *Id.* ¶ 287. BV Capital and Runa Capital allegedly "became involved in the granular

3  details of the Team's plans to misappropriate the NGINX Enterprise from Rambler and launch it

4  under the banner of a new company formed by the Team and funded by their capital partners." *Id.*

5  ¶ 260.

6          Following the signing of the funding term sheet, on May 4, 2011, the Team formed

7  NGINX Software, Inc. *Id.* ¶ 273. On July 6, 2011, the Team formed NGINX BVI. *Id.* In August

8  2011, the Team formed NGINX DE. *Id.* In 2012, Robertson became the CEO of NGINX

9  Software, Inc.; NGINX DE; and NGINX BVI. *Id.* ¶ 385. Lynwood alleges that "Robertson gained

10  in-depth knowledge that the NGINX Software, and all proprietary software modules developed to

11  enhance its functionality, including the commercial code known as NGINX Plus, that Sysoev

12  developed during his employment with Rambler, as well as the NGINX Enterprise and all related

13  business opportunities, belonged to, and were stolen from, Rambler." *Id.* ¶ 387.

14          Furthermore, following the signing of the funding term sheet, each of the Disloyal

15  Employees resigned from Rambler. Konovalov resigned from Rambler effective April 29, 2011.

16  *Id.* ¶ 211. "On July 18, 2011, Sysoev announced to his list service recipients that he was going to

17  'establish nginx as a company to fully dedicate [himself] to the [nginx] project.'" *Id.* ¶ 276.

18  Sysoev later separated from Rambler in December 2011. *Id.* Eleven months after Sysoev left,

19  Smirnoff separated from Rambler. *Id.* ¶ 201.

20          According to Lynwood, "Sysoev and Konovalov each misrepresented to Rambler that they

21  were separating from Rambler to form a new company that would provide support services to the

22  existing open source NGINX Software for third-parties." *Id.* ¶ 281. "Sysoev and Konovalov

23  fraudulently concealed from Rambler that they were contemplating the prospect of potentially

24  providing add-on services to the NGINX Software in the future." *Id.* ¶ 283. "In an attempt to avoid

25  triggering suspicion at Rambler, Sysoev and Konovalov couched their statements as aspirational

26  and deeply protective in nature." *Id.*

27      **E.  The Merger with F5**

28
Case No. 20-CV-03778-LHK
ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND

On March 9, 2019, F5 entered into a Merger Agreement, pursuant to which NGINX BVI became a wholly-owned subsidiary of F5. *Id.* ¶ 389. As part of this agreement, each member of the Team was given a position at F5. *Id.* ¶¶ 410–414. In the Merger Agreement, NGINX BVI represented and warranted that "no employee or independent contractor of the Company or any Subsidiary is in breach of any Contract with any former employer or other Person concerning Intellectual Property Rights or confidentiality." *Id.* ¶ 415.

According to Lynwood, prior to the merger, F5 "conducted extensive due diligence concerning the NGINX Software and its proprietary companion code and their origins, which of course revealed that Sysoev developed the NGINX Software and NGINX Plus modules for Rambler and with Rambler's resources while he was employed there." *Id.* ¶ 391. According to Lynwood, "F5 reviewed and analyzed the NGINX Software and NGINX Plus software itself, and therefore F5 knew that Sysoev wrote much of the NGINX Software and NGINX Plus software during normal working hours while employed by Rambler." *Id.* ¶ 392.

After the merger with F5, Korotkov allegedly approached Rambler and "blew the whistle on the conspiracy and scheme." *Id.* ¶ 456. Korotkov allegedly informed Rambler that "the Disloyal Employees conspired to conceal from Rambler": (1) "that NGINX Software and NGINX Plus were developed by Sysoev and the Disloyal Employees while they were still employed at Rambler and at Rambler's expense"; (2) "the value of the NGINX Software and NGINX Plus and more generally the NGINX Enterprise"; (3) "the commercialization and monetization they recognized for the NGINX Software and NGINX Plus." *Id.* ¶¶ 457–461.

Lynwood alleges that, "[p]rior to Korotkov's disclosures, Rambler did not have reason to, and did not, understand the scope or value of the Disloyal Employees' work on the NGINX Software and NGINX Plus code." *Id.* ¶ 464. "Immediately after Korotkov's disclosures, Rambler and Lynwood conducted extensive investigations regarding the whistleblower's assertions." *Id.* ¶ 466. "Rambler and Lynwood's extensive investigations confirmed the veracity of the whistleblower's assertions, and this lawsuit followed." *Id.* ¶ 467.

**F.  The Instant Case**

8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

On June 8, 2020, Plaintiff filed the instant case against Defendants Maxim Konovalov; Igor Sysoev; Andrey Alexeev; Maxim Dounin; Gleb Smirnoff; Angus Robertson; F5, Inc.; NGINX, Inc. (BVI); NGINX Software, Inc.; E. Venture Capital Partners II LLC; Runa Capital, Inc.; BV NGINX, LLC; and NGINX, Inc. (DE) (collectively, "Defendants"). Compl.

Plaintiff brought 26 claims: (1) civil conspiracy among the Team, Robertson, Runa Capital, E. Ventures, NGINX BVI, NGINX DE, NGINX Software, Inc. and BV NGINX; (2) breach of employment obligations owed by Konovalov to Rambler; (3) breach of employment obligations owed by Sysoev to Rambler; (4) breach of employment obligations owed by Smirnoff to Rambler; (5) breach of Konovalov's duty to act fairly and honestly with Rambler; (6) breach of the duty to act fairly and honestly with Rambler as to Sysoev and Smirnoff; (7) aiding and abetting by Alexeev and Dounin of the Disloyal Employees' breaches of their duties of honesty and loyalty to Rambler; (8) aiding and abetting by Runa Capital and E. Ventures of the Team's fraud and the Disloyal Employees' breaches of their duties of honesty and loyalty to Rambler; (9) aiding and abetting by F5 of the Team's fraud and the Disloyal Employees' breaches of their duties of honesty and loyalty to Rambler; (10) tortious interference with contract against Konovalov, Robertson, NGINX Software, Inc., NGINX BVI, NGINX DE, and BV NGINX; (11) tortious interference with contract against Runa Capital and E. Ventures; (12) tortious interference with contract against F5; (13) tortious interference with prospective business advantage against all defendants; (14) fraud against the Disloyal Employees, NGINX Software, Inc., NGINX DE, NGINX BVI, and BV NGINX; (15) direct copyright infringement against all Defendants; (16) contributory copyright infringement against all Defendants; (17) vicarious copyright infringement against all Defendants; (18) cancellation of NGINX Trademark Registration and payment of damages for fraud as to NGINX Software, Inc. and F5; (19) cancellation of NGINX (Stylized) Trademark Registration and payment of damages for fraud as to NGINX Software, Inc. and F5; (20) cancellation of NGINX PLUS Trademark Registration and payment of damages for fraud as to NGINX DE, NGINX BVI, and F5; (21) cancellation of NGINX Trademark Registration and

1  payment of damages for fraud as to NGINX BVI and F5; (22) cancellation of NGINX

2  CONTROLLER Trademark Registration and payment of damages as to NGINX BVI and F5; (23)

3  cancellation of NGINX UNIT Trademark Registration and payment of damages for fraud as to

4  NGINX BVI and F5; (24) false advertising as to all defendants; (25) infringement of the NGINX

5  Trademark as to all defendants; and (26) unjust enrichment as to all defendants. ECF No. 1 ¶¶

6  524–873.

7       On October 1, 2020, the Court ordered Lynwood to select 10 claims to litigate through

8  trial. ECF No. 107. On October 22, 2020, Lynwood selected the following claims: (1) civil

9  conspiracy among the Team, Robertson, Runa Capital, E. Ventures, NGINX BVI, NGINX DE,

10  NGINX Software, Inc. and BV NGINX; (2) breach of employment obligations owed by

11  Konovalov to Rambler; (3) breach of employment obligations owed by Sysoev to Rambler; (5)

12  breach of Konovalov's duty to act fairly and honestly with Rambler; (8) aiding and abetting by

13  Runa Capital and E. Ventures of the Team's fraud and the Disloyal Employees' breaches of their

14  duties of honesty and loyalty to Rambler; (9) aiding and abetting by F5 of the Team's fraud and

15  the Disloyal Employees' breaches of their duties of honesty and loyalty to Rambler; (10) tortious

16  interference with contract against Konovalov, Robertson, NGINX Software, Inc., NGINX BVI,

17  NGINX DE, and BV NGINX; (13) tortious interference with prospective business advantage

18  against all defendants; (14) fraud against the Disloyal Employees, NGINX Software, Inc., NGINX

19  DE, NGINX BVI, and BV NGINX; and (15) direct copyright infringement against all Defendants.

20  ECF No. 110.

21       On September 28, 2020, the F5 Entities filed a motion to stay discovery pending this

22  Court's ruling on their motion to dismiss, ECF No. 103, and a motion to shorten time on the

23  motion to stay discovery, ECF No. 104. On November 3, 2020, the Court granted the motion to

24  shorten time and the motion to stay discovery. ECF No. 117.

25       On August 28, 2020, Defendants F5, NGINX (BVI), and NGINX Inc. ("the F5 Entities")

26  filed a motion to dismiss the instant case, ECF No. 88 ("F5 Mot."), and an associated request for

27

28

10

Case No. 20-CV-03778-LHK
ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND

1     judicial notice, ECF No. 89. That same day, Defendants E. Venture Capital Partners II LLC; Runa

2     Capital, Inc.; and BV NGINX, LLC ("the Outside Investors") filed a motion to dismiss the instant

3     case, ECF No. 90 ("Outside Investors Mot."). On October 30, 2020, Lynwood filed an opposition

4     to both motions. ECF Nos. 115 ("Opp'n to F5 Mot."), 116 (Opp'n to Outside Investors Mot."). On

5     December 3, 2020, the F5 Entities and the Outside Investors filed replies in support of their

6     motions. ECF Nos. 121 ("F5 Reply"), 123 ("Outside Investors' Reply").

7          On September 30, 2020, Defendants Maxim Konovalov, Igor Sysoev, Andrey Alexeev,

8     Maxim Dounin, Gleb Smirnoff, and Angus Robertson ("the Individual Defendants") filed a

9     motion to dismiss the instant case, ECF No. 106. On December 10, 2020, Lynwood filed an

10     opposition. ECF Nos. 124, 125, 127. On January 11, 2021, the Individual Defendants filed a reply.

11     ECF No. 129.

12          The F5 Entities request that the Court conclude that the Complaint incorporated by

13     reference the open source license for the public release of the NGINX open source software,

14     which was released on October 4, 2004. ECF No. 89. A document can be properly incorporated by

15     reference into the complaint where "the contents of the document are alleged in a complaint, the

16     document's authenticity is not in question and there are no disputed issues as to the document's

17     relevance." *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *accord Khoja*

18     *v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (concluding that a document

19     was incorporated by reference into the complaint where the complaint refers extensively to a

20     document). The Complaint alleges the contents of the open source license and refers to the open

21     source license extensively. *See* Compl. ¶¶ 22, 42, 305–06, 483, 680, 683, 697, 702, 729.

22     Moreover, no party has called the document's authenticity into question or disputed its relevance.

23     Accordingly, the Court concludes that the open source license is incorporated by reference into the

24     complaint.

25          The F5 Entities also request judicial notice of the transcript of an interview of Igor Sysoev

26     given on or about January 5, 2012. ECF No. 89. The Court may take judicial notice of matters that

27

28

United States District Court
Northern District of California

11

Case No. 20-CV-03778-LHK
ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND

are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). However, to the extent any facts in documents subject to judicial notice are subject to reasonable dispute, the Court will not take judicial notice of those facts. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Courts have held that news articles, such as this interview, are proper subjects of judicial notice. *See, e.g.*, *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1990) (holding that it is proper to take judicial notice of a news article). Moreover, this interview appears on a publicly available website and is thus a proper subject of judicial notice. *See Brown v. Google LLC*, 2021 WL 949372, at *5 (N.D. Cal. Mar. 12, 2021) (granting judicial notice of publicly available webpages). Accordingly, the Court GRANTS the F5 Entities' request for judicial notice, ECF No. 89.

## II.  LEGAL STANDARD

### A.  Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

United States District Court
Northern District of California

1    The Court, however, need not accept as true allegations contradicted by judicially

2    noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look

3    beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6)

4    motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir.

5    1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in

6    the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per

7    curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere

8    "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

9    dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

10   **B.  Leave to Amend**

11       If the Court determines that a complaint should be dismissed, it must then decide whether

12   to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend

13   "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule

14   15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v.*

15   *Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks

16   omitted). When dismissing a complaint for failure to state a claim, "'a district court should grant

17   leave to amend even if no request to amend the pleading was made, unless it determines that the

18   pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal

19   quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing

20   amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the

21   moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532

22   (9th Cir. 2008).

23   **III.  DISCUSSION**

24       As discussed above, Lynwood selected ten claims to litigate through trial. ECF No. 110.

25   Seven of Lynwood's ten selected claims are against F5 Networks, Inc.; NGINX, Inc. (BVI); and

26   NGINX Software, Inc. (collectively, the "F5 Entities") and E. Venture Capital Partners II LLC;

27

28

United States District Court
Northern District of California

13

Case No. 20-CV-03778-LHK
ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND

Runa Capital, Inc.; and BV NGINX, LLC (collectively, "the Outside Investors"). *Id.* The F5
Entities and the Outside Investors move to dismiss all seven claims, which are: (1) civil
conspiracy among Sysoev, Konovalov, Alexeev, Dounin, and Smirnoff (collectively, "the Team"),
Robertson, Runa Capital, E. Ventures, NGINX BVI, NGINX DE, NGINX Software, Inc. and BV
NGINX; (8) aiding and abetting by Runa Capital and E. Ventures of the Team's fraud and Sysoev,
Konovalov, and Smirnoff's (collectively, the "Disloyal Employees") breaches of their duties of
honesty and loyalty to Rambler; (9) aiding and abetting by F5 of the Team's fraud and the
Disloyal Employees' breaches of their duties of honesty and loyalty to Rambler; (10) tortious
interference with contract against Konovalov, Robertson, NGINX Software, Inc., NGINX BVI,
NGINX DE, and BV NGINX; (13) tortious interference with prospective business advantage
against all defendants; (14) fraud against the Disloyal Employees, NGINX Software, Inc., NGINX
DE, NGINX BVI, and BV NGINX; and (15) direct copyright infringement against all Defendants.

The F5 Entities and the Outside Investors move to dismiss these claims for many reasons.
Below the Court dismisses these claims for three reasons and thus need not reach all of the reasons
set forth in the instant motions to dismiss. The Court dismisses these claims with leave to amend.
In any amended complaint, Lynwood must cure all the deficiencies identified in the F5 Entities'
and the Outside Investors' motions to dismiss. Otherwise, the Court will dismiss the deficient
claims with prejudice.

Below the Court dismisses these claims for the following three reasons. First, these claims
are untimely because they stem from the Team's alleged theft of the NGINX Enterprise from
Rambler, which occurred in 2011, nearly a decade ago. Second, the allegations of a fraudulent
scheme to steal the NGINX Enterprise from Rambler, which underlie all these claims, do not
satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Third, each of
these claims fails to state a claim. The Court addresses each reason in turn.

### A. Statutes of Limitations

The F5 Entities and the Outside Investors contend that Lynwood's claims are barred by the

14

Case No. 20-CV-03778-LHK
ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND

statutes of limitations. Because Lynwood's claims stem from the alleged theft of the NGINX Enterprise from Rambler in 2011, the Court agrees with the F5 Entities and the Outside Investors that Lynwood's claims are barred by the statutes of limitations.

"A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). "[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Id.* (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995)).

Each of Lynwood's claims has a limitations period of between two and three years. *See* 17 U.S.C. § 507(b) (stating that copyright infringement actions must be filed "within three years after the claim accrued"); *DC Comics v. Pac. Pictures Corp.*, 938 F. Supp. 3d 941, 948 (C.D. Cal. 2013) ("The statute of limitations for tortious interference with contract in California is two years") (citing Cal. Civ. Proc. Code § 339(1)); *Wild Rivers Waterpark Mgmt. LLC v. Katy WP Grp.*, LLC, 2019 WL 6998669, at *8 (C.D. Cal. Feb. 29, 2019) ("The statute of limitations for intentional interference with prospective economic advantage is two years . . . .") (citing Cal. Civ. Proc. Code § 339(1)); *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1471, 1478 (2014) (stating that the statute of limitations for aiding and abetting breach of fiduciary duty is four years if the breach is nonfraudulent and three years if the breach is fraudulent); *Kline v. Turner*, 87 Cal. App. 1369, 1373–74 (2001) ("An action for relief on the grounds of fraud or mistake must be commenced within three years.") (citing Cal. Civ. Proc. Code § 338(d)).

Lynwood filed its complaint on June 8, 2020. Compl. However, Lynwood's claims stem from the alleged theft of the NGINX Enterprise from Rambler in 2011, nearly a decade before Lynwood filed its complaint. *See* Section I, *supra;* Compl. ¶¶ 192–388 (alleging a fraudulent scheme to steal the NGINX Enterprise from Rambler). Accordingly, Lynwood's claims are

United States District Court
Northern District of California

15

1    untimely.

2         Lynwood contends that its claims are timely for four reasons. First, Lynwood argues that

3    the statutes of limitations started to run when the merger between F5 and NGINX closed in 2019

4    because the merger was the last overt act in furtherance of the alleged conspiracy. Second,

5    Lynwood contends that the 2019 merger started the running of the statutes of limitations because

6    Defendants were engaged in a series of continuing wrongs, the last of which was the merger.

7    Third, Lynwood argues that the statutes of limitations were tolled by the fraudulent concealment

8    doctrine. Finally, Lynwood contends that the statutes of limitations were tolled by the delayed

9    discovery doctrine. The Court addresses each argument in turn.

10       **1.  Last Overt Act**

11        "When a civil conspiracy is properly alleged and proved, the statute of limitations does not

12   begin to run on any part of a plaintiff's claims until the last overt act pursuant to the conspiracy

13   has been completed." *Wyatt v. Union Mortg. Co.*, 24 Cal. 3d 773, 786 (1979). "For an act to be an

14   overt act delaying the commencement of the limitations period, it must be performed in

15   furtherance of the conspiracy." *Risk v. Kingdom of Norway*, 707 F. Supp. 1159 (N.D. Cal. 1989).

16   However, California law distinguishes between "acts which are properly classifiable as 'overt

17   acts' in furtherance of the conspiracy" and "activities of conspirators . . . which may evidence the

18   prior conspiracy." *Livett v. F.C. Financial Assoc.*, 124 Cal. App. 3d 413, 419 (1981).

19        Lynwood argues that the statutes of limitations started to run when the merger closed in

20   2019 because the merger was the last overt act in furtherance of the conspiracy. Opp'n to Outside

21   Investors Mot. at 6–7. However, Lynwood's argument is unpersuasive for two reasons. First, as

22   explained below, Lynwood has not alleged a conspiracy. *See* Section III(C)(6), *infra*. Second,

23   Lynwood has not plausibly alleged a large, decades-long conspiracy whose object was to sell off

24   the NGINX Enterprise to a third party. Rather, the primary object of the alleged conspiracy was to

25   steal the NGINX Enterprise from Rambler, an object that was completed when the NGINX

26   Enterprise was incorporated separately in 2011. *See* Compl. ¶ 536 (alleging that NGINX Software,

27

28       16

United States District Court
Northern District of California

Inc., NGINX BVI, NGINX DE, and BV NGINX were incorporated in 2011). Accordingly, the Court is not persuaded that the 2019 merger between NGINX and F5, which occurred nearly a decade after the NGINX Enterprise was allegedly stolen, was the overt act in furtherance of the conspiracy.

### 2.  Continuing Wrongs

"The continuing violation doctrine aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them." *Aryeh v. Canon Business Solutions, Inc.*, 55 Cal. 4th 1185, 1192 (2013).

Lynwood contends that the 2019 merger started the running of the statutes of limitations because Defendants were engaged in a series of continuing wrongs, and the last of those continuing wrongs was the 2019 merger. Opp'n to Outside Investors Mot. at 12. However, Lynwood's argument is unpersuasive because Lynwood does not plausibly allege that Defendants engaged in a series of continuing wrongs for nearly two decades—from the time that Sysoev wrote the first line of the NGINX Software in 2001 until the F5 merger in 2019. Indeed, Lynwood does not explain why the series of continuing wrongs was not complete in 2011, when the NGINX Enterprise was allegedly stolen from Rambler. *See* Compl. ¶ 536 (alleging that NGINX Software, Inc., NGINX BVI, NGINX DE, and BV NGINX were incorporated in 2011). Thus, the Court is not persuaded that the 2019 merger, which occurred nearly a decade after the NGINX Enterprise was allegedly stolen, was the last of a series of continuing wrongs.

### 3.  Fraudulent Concealment

"The purpose of the fraudulent concealment doctrine is to prevent a defendant from 'concealing a fraud . . . until such a time as the party committing the fraud could plead the statute of limitations to protect it.'" *In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1194 (N.D. Cal. 2015) (quoting *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 349 (1874)) [hereinafter "*In re Animation Workers*"]. "A statute of limitations may be tolled if the defendant fraudulently

United States District Court
Northern District of California

1    concealed the existence of a cause of action in such a way that the plaintiff, acting as a reasonable

2    person, did not know of its existence." *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060

3    (9th Cir. 2012). The plaintiff bears the burden of pleading fraudulent concealment. *In re*

4    *Animation Workers*, 123 F. Supp. 3d at 1194. "Moreover, allegations of fraudulent concealment

5    must be pled with particularity." *Id.* (citing *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d

6    499, 502 (9th Cir. 1988)); *see* Section III(B), *infra* (outlining heightened pleading standard for

7    allegations of fraud). "However, 'it is generally inappropriate to resolve the fact-intensive

8    allegations of fraudulent concealment at the motion to dismiss stage.'" *Id.* (quoting *In re Rubber*

9    *Chemicals Antitrust Litig.*, 504 F. Supp. 2d 777, 789 (N.D. Cal. 2007)).

10          Lynwood contends that the statutes of limitations were tolled by the fraudulent

11   concealment doctrine. Opp'n to Outside Investors Mot. at 7–10. "To plead fraudulent

12   concealment, the plaintiff must allege that: (1) the defendant took affirmative acts to mislead the

13   plaintiff; (2) the plaintiff did not have 'actual or constructive knowledge of the facts giving rise to

14   its claim'; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its

15   claim." *Id.* (quoting *Hexcel*, 681 F.3d at 1060). The Court addresses each requirement in turn.

16          **a.   Affirmative Acts**

17          "The Ninth Circuit and other courts in this District have consistently required that a

18   plaintiff allege 'affirmative acts' of concealment." *In re Animation Workers*, 123 F. Supp. 3d at

19   1197. "These acts must be 'affirmative steps to mislead' that are more than mere 'passive[]

20   conceal[ment]." *Id.* (quoting *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1416 (9th Cir. 1987)).

21   However, "silence may be sufficient to show fraudulent concealment where there is an affirmative

22   duty to disclose, e.g., a fiduciary duty." *Id.* at 1198 n. 13.

23          In the instant case, Lynwood contends that it has alleged affirmative acts based on its

24   allegations that Defendants "made false statements and engaged in efforts to destroy evidence and

25   keep their conspiracy secret." Opp'n to Outside Investors Mot. at 8. However, as explained below,

26   *infra* Section III(B), Lynwood never pleads these allegations with the particularity required by

27

28   Case No. 20-CV-03778-LHK
     ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

18

1   Rule 9(b). *See In re Animation Workers*, 123 F. Supp. 3d at 1194 (stating that "allegations of

2   fraudulent concealment must be pled with particularity"). Accordingly, Lynwood has not alleged

3   affirmative acts that support the application of the fraudulent concealment doctrine.

### b. Actual or Constructive Knowledge

5        The plaintiff must also allege that the plaintiff did not have "actual or constructive

6   knowledge of the facts giving rise to its claim." *In re Animation Workers*, 123 F. Supp. 3d at 1205

7   (quoting *Hexcel*, 681 F.3d at 1060)."[T]he question of constructive knowledge and inquiry notice

8   generally 'presents a question for the trier of fact.'" *Id.* at 1205.

9        In the instant case, Lynwood has not plausibly alleged that it did not have actual or

10   constructive notice of the facts giving rise to its claim. Lynwood alleges that Rambler was

11   unaware of the existence and value of the NGINX Enterprise. *See, e.g.*, *id.* ¶ 35 ("Rambler could

12   have incubated the NGINX Enterprise if only the conspirators had informed Rambler of its

13   existence").

14        However, the Complaint's allegations support the conclusion that, as early as 2001,

15   Rambler was aware of the value of the NGINX Enterprise. Indeed, Lynwood alleges that, as of

16   2001, "[o]ne of Sysoev's primary employment responsibilities as a Rambler employee was to

17   develop the NGINX Software as a key component of Rambler infrastructure." *Id.* ¶ 175. Rambler

18   was the largest technology company and search engine in Russia at the time of Sysoev's

19   employment. *Id.* ¶ 80. Moreover, Lynwood alleges that, during Sysoev's employment at Rambler,

20   "Rambler paid Sysoev regular outsized bonuses on either a quarterly or semi-annual basis in

21   recognition of his work in developing the NGINX Software for Rambler and the software code's

22   utility in solving the company's various issues at that time." *Id.* ¶ 101. Furthermore, Sysoev's

23   work on NGINX allegedly made Sysoev into "a worldwide technology celebrity." *Id.* ¶ 25. These

24   facts suggest that Rambler recognized the value of the NGINX Software nearly two decades

25   before Lynwood filed the instant case.

26        Second, Lynwood alleges that Rambler was not aware that Sysoev, Konovalov, and the

27

28

Case No. 20-CV-03778-LHK
ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1    Team would exercise ownership rights over NGINX. However, the Complaint's allegations

2    support the conclusion that, as of 2011, Rambler was aware that Sysoev, Konovalov, and the

3    Team would exercise ownership rights over NGINX. Indeed, in 2011, the Team formed NGINX

4    Software, Inc.; NGINX BVI; and NGINX DE through public filings. *Id*. ¶ 273. The Team also

5    registered several trademarks. Furthermore, Konovalov and Sysoev separated from Rambler in

6    2011. *Id*. ¶¶ 211, 276. When they separated, both Konovalov and Sysoev announced an intention

7    to separate "to form a new company." *Id*. ¶ 281. "On July 18, 2011, Sysoev announced to his list

8    service recipients that he was going to 'establish nginx as a company to fully dedicate [himself] to

9    the [nginx] project.'" *Id*. ¶ 276. Moreover, between 2013 and 2019, the F5 Entities have

10   introduced 20 or more versions of NGINX Plus. *Id*. ¶ 717. These facts demonstrate that, far from

11   flying under the radar, the NGINX Enterprise was operating in Rambler's plain sight.

12   Accordingly, Rambler was on notice in 2011, nearly a decade before Lynwood filed the instant

13   case, that Sysoev, Konovalov, and the Team would exercise ownership rights over NGINX.

14        Furthermore, the Assignment Agreement between Rambler and Lynwood demonstrates

15   that Rambler was on notice of these claims. On January 15, 2015, more than five years before

16   Lynwood filed the instant case, Rambler and Lynwood entered into an Assignment Agreement,

17   "which assigned Rambler's employment and intellectual property rights to Lynwood for

18   enforcement in the event Sysoev or Konovalov would ever claim an ownership right to the

19   NGINX Software or had previously engaged in any illicit or wrongful conduct . . . as it concerned

20   Rambler and its proprietary information and products." Compl. ¶ 471. This Assignment

21   Agreement demonstrates that Lynwood was on notice that Sysoev and Konovalov might claim an

22   ownership right to the NGINX Software and might have engaged in wrongful conduct with

23   respect to Rambler. *Id*. Otherwise, there would have been no reason for Lynwood and Rambler to

24   execute the assignment. Thus, Lynwood cannot plausibly allege that it did not have "actual or

25   constructive knowledge of the facts giving rise to its claim." *In re Animation Workers*, 123 F.

26   Supp. 3d at 1205 (quoting *Hexcel*, 681 F.3d at 1060).

27        **c.  Diligence**

28

20

Case No. 20-CV-03778-LHK
ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND

Lastly, the plaintiff must also demonstrate that the plaintiff diligently pursued the facts giving rise to the cause of action. "Where a plaintiff's suspicions have been or should have been excited, there can be no fraudulent concealment where he [or she] 'could have then confirmed his [or her] earlier suspicion by a diligent pursuit of further information." *In re Animation Workers*, 123 F. Supp. 3d at 1205 (quoting *Conmar*, 858 F.2d at 504).

As explained above, Rambler's and Lynwood's suspicions should have been excited long before the filing of the instant case. Indeed, as early as 2001, Rambler was aware of the value of the NGINX Software because Rambler had assigned Sysoev the responsibility to develop the NGINX Software. Compl. ¶ 175. Moreover, as of 2011, the NGINX Enterprise was incorporated through public filings and became the owner of several trademarks. *Id.* ¶ 273. That same year, Konovalov and Sysoev separated from Rambler and announced an intention to separate "to form a new company." *Id.* ¶ 281. Rambler then assigned its employment and intellectual property rights with respect to the NGINX Enterprise to Lynwood pursuant to a January 15, 2015 Assignment Agreement. Compl. ¶ 471. Based on these circumstances, Rambler and Lynwood should have acted diligently in investigating whether there was a cause of action. However, rather than investigating, Rambler and Lynwood waited until 2019, after F5 purchased the NGINX Enterprise for $670 million and when Korotkov, the whistleblower, approached Rambler. There is no excuse for Rambler's and Lynwood's delay. Accordingly, Lynwood cannot show that it diligently pursued its rights. In sum, Lynwood cannot meet any of the three requirements for application of the fraudulent concealment doctrine.

### 4. Delayed Discovery

"Under California law, the discovery rule may postpone accrual of an applicable statute of limitations until a party either (1) actually discovered his injury or (2) could have discovered the injury and cause through the exercise of reasonable diligence." *H.B. Filmes, Ltd. v. CBS, Inc.*, 98 F. App'x 596, 598 (9th Cir. 2004). Similarly, federal law provides that "a limitations period begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the

Case No. 20-CV-03778-LHK
ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1    action." *Lyons v. Michael & Assoc.*, 824 F.3d 1169, 1170 (9th Cir. 2016).

2         Lynwood argues that the statutes of limitations were tolled by the delayed discovery

3    doctrine. Opp'n to Outside Investors Mot. at 10–12. However, as explained above, Lynwood has

4    not plausibly alleged that it did not have notice of the injury which gives rise to the causes of

5    action. *See* Section III(A)(3), *supra*. Accordingly, Lynwood's reliance on the

6    delayed discovery doctrine is misplaced. Thus, the Court GRANTS the instant motions to dismiss

7    Lynwood's claims because they are barred by the statutes of limitations. The Court does so with

8    leave to amend because amendment would not be futile, unduly prejudice the opposing parties, or

9    cause undue delay, and Lynwood has not acted in bad faith. *See Leadsinger*, 512 F.3d at 532.

10   **B. Rule 9(b)'s Heightened Pleading Standard**

11        The F5 Entities and the Outside Investors also contend that Lynwood's claims fail to

12   satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b). The Court

13   agrees.

14        Federal Rule of Civil Procedure 9(b) requires that a plaintiff alleging fraud "must state

15   with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford*

16   *Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). These requirements apply to allegations of fraud,

17   claims that are grounded in fraud, and complaints that are grounded in fraud. *See Vess*, 317 F.3d at

18   1106 ("When an entire complaint . . . is grounded in fraud and its allegations fail to satisfy the

19   heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint.").

20        To satisfy this heightened standard, the allegations must be "specific enough to give

21   defendants notice of the particular misconduct which is alleged to constitute the fraud charged so

22   that they can defend against the charge and not just deny that they have done anything wrong."

23   *Bly-Magee v. California*, 236 F. 3d 1014, 1019 (9th Cir. 2001) (quoting *Neubronner v. Milken*, 6

24   F.3d 666, 672 (9th Cir. 1993)). Thus, claims sounding in fraud must allege "an account of the time,

25   place, and specific content of the false representations as well as the identities of the parties to the

26   misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). In other words,

27

28

Case No. 20-CV-03778-LHK
ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1    "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the

2    misconduct charged." *Vess*, 317 F.3d at 1106 (quoting *Cooper*, 137 F.3d at 627).

3         Lynwood's entire Complaint alleges a fraudulent scheme by the Team to steal the NGINX

4    Enterprise from Rambler and conceal Rambler's causes of action against them. *See* Compl. ¶¶

5    192–388 (alleging a fraudulent scheme to steal the NGINX Enterprise from Rambler). Moreover,

6    the alleged fraudulent scheme is the basis for Lynwood's claims against the F5 Entities and the

7    Outside Investors. *See* Compl. ¶¶ 533–35 (conspiracy claim); *id.* ¶¶ 607–12 (aiding and abetting

8    against Runa Capital and E. Ventures); *id.* ¶¶ 618–22 (aiding and abetting against F5); *id.* ¶ 636

9    (tortious interference claim); *id.* ¶ 668 (tortious interference with prospective economic

10   advantage); *id.* ¶ 675–84 (fraud); *id.* ¶ 695–701 (copyright infringement). However, Lynwood has

11   not pled the alleged fraudulent scheme with particularity because Lynwood has not "identified 'the

12   who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106 (quoting

13   *Cooper*, 137 F.3d at 627).

14        The Court comes to this conclusion for three reasons. First, Lynwood does not plead the

15   alleged false statements with particularity because Lynwood does not provide the time, place,

16   speaker, and specific content of the alleged false statements. Second, Lynwood does not plead the

17   alleged destruction and theft of evidence with particularity because Lynwood does not state who

18   was responsible for the alleged destruction and theft of evidence, what actions were taken, what

19   evidence was stolen or destroyed, and when the evidence was stolen or destroyed. Finally,

20   Lynwood does not plead its allegations against the Outside Investors with particularity because

21   Lynwood does not specify how and when the Outside Investors became involved in the alleged

22   conspiracy. The Court addresses each reason in turn.

23        First, Lynwood alleges that the Disloyal Employees made various misleading statements to

24   Rambler regarding their work on the NGINX Enterprise, the value of the NGINX Enterprise, and

25   their plans upon their separation from Rambler. *See, e.g.*, Compl. ¶¶ 5, 283–89, 683. However,

26   Lynwood only restates the content of these statements in general terms. *See, e.g.*, *id.* ¶ 289 ("Even

27

28

Case No. 20-CV-03778-LHK
ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

though Konovalov and the rest of the Disloyal Employees were fixated on misappropriating the NGINX Enterprise, which they viewed as a highly valuable business," the Disloyal Employees allegedly misrepresented to Rambler that the NGINX Enterprise was worthless). Furthermore, Lynwood does not provide the time and place of the statements. *See, e.g., id.* Moreover, Lynwood fails to identify the specific speaker who made the statements, instead grouping multiple speakers together. *See, e.g., id.* ¶ 281 ("Sysoev and Konovalov each misrepresented to Rambler that they were separating from Rambler to form a new company that would provide support services to the existing open source NGINX Software for third-parties."); *id.* ¶ 283 ("Sysoev and Konovalov fraudulently concealed from Rambler that they were contemplating the prospect of potentially providing add-on services to the NGINX Software in the future"). Accordingly, Lynwood's allegations regarding the false statements fail to meet Rule 9(b)'s heightened pleading standard. See *Swartz*, 476 F.3d at 764 (holding that Rule 9(b) requires the plaintiff to provide "the time, place, and specific content of the false representations").

Second, Lynwood alleges that the Disloyal Employees and the NGINX Conspirators engaged in fraud by deleting emails and stealing and destroying Rambler's servers that contained evidence of the unlawful conduct. Compl. ¶¶ 5, 682. According to Lynwood, "all of Konovalov's emails related to NGINX's formation were deleted," "[t]he vast majority of Sysoev's email folders were deleted," and "[t]he vast majority of Smirnoff's emails were deleted." *Id.* ¶¶ 297–99. However, Lynwood makes its allegations in the passive tense without identifying who in particular was responsible for the deletion of the emails and when they deleted the emails. *Id.* Moreover, as to the servers, Lynwood fails to specify what, if any, actions the F5 Entities or the Outside Investors took to direct the theft or destructions of the servers, when those actions were taken, when each server was stolen or destroyed, where each server was stolen from, and how each server was stolen or destroyed. Accordingly, Lynwood has not pled its allegations regarding destruction of evidence with the particularity required by Rule 9(b). *See Vess*, 317 F.3d at 1106 ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the

United States District Court
Northern District of California

misconduct charged.") (quoting *Cooper*, 137 F.3d at 627).

Third, Lynwood alleges that BV Capital and Runa Capital allegedly "became involved in the granular details of the Team's plans to misappropriate the NGINX Enterprise from Rambler and launch it under the banner of a new company formed by the Team and funded by their capital partners." Compl. ¶ 260. However, Lynwood never explains how BV Capital and Runa Capital "became involved in the granular details of the Team's plans." *Id.*[3] Accordingly, Lynwood allegations regarding the Outside Investors cannot meet the heightened pleading standard provided by Rule 9(b). *See Vess*, 317 F.3d at 1106 ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.") (quoting *Cooper*, 137 F.3d at 627).

Thus, the Court GRANTS the instant motions to dismiss Lynwood's claims because these claims have failed to meet the heightened pleading standard of Rule 9(b). The Court does so with leave to amend because amendment would not be futile, unduly prejudice the opposing parties, or cause undue delay, and Lynwood has not acted in bad faith. *See Leadsinger*, 512 F.3d at 532.

**C. Failure to State a Claim**

The F5 Entities and the Outside Investors assert that each of Lynwood's claims fails to state a claim. The Court addresses each of these claims in turn.

**1. Claims 8 and 9: Aiding and Abetting of the Team's fraud and Disloyal Employees' breaches of their duties of honesty and loyalty to Rambler**

To state a claim for aiding and abetting a tort under California law, the plaintiff must allege that the defendant had actual knowledge of the tort. *See Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1118 –19 (C.D. Cal. 2003) ("California law requires that a defendant have actual knowledge of tortious activity before it can be held liable as an aider and abettor[.]"); *see also Casey v. U.S. Bank Nat. Ass'n*, 127 Cal. App. 4th 1138, 1146 (2005) (holding that

---

[3] Moreover, the Complaint's allegations suggest that, to the contrary, BV Capital and Runa Capital did not want to involve themselves in the alleged venture if the NGINX Enterprise was misappropriated from Rambler. *Id.* ¶ 270. (alleging that the funding term sheet required that the company counsel provide a legal opinion that the Founder's activities "do not and will not conflict with any agreement, commitment, or other encumbrance placed on them by their current or former employer").

Case No. 20-CV-03778-LHK
ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND

1    "[k]nowledge is the crucial element" of an aiding and abetting claim because "a defendant can

2    only aid and abet another's tort if the defendant knows what 'that tort is'"). Conclusory allegations

3    that the defendant knew of the tort are insufficient. *See Namer v. Bank of Am.*, *N.A.*, 2017 WL

4    1180193, at *5 (S.D. Cal. Mar. 30, 2017) (granting motion to dismiss aiding and abetting breach

5    of fiduciary duty claim because the plaintiff's allegations were "conclusory" and "fail[ed] to

6    plausibly establish that [the defendant] had actual knowledge of the alleged wrongful conduct");

7    *see also Casey*, 127 Cal. App. 4th at 1152–53 (affirming dismissal of aiding and abetting claim

8    because the plaintiff's "general allegation" that the defendants knew of "'wrongful and illegal

9    conduct' does not constitute sufficient pleading that the [defendants] had actual knowledge" of the

10   torts).

11        In the instant case, Lynwood claims that F5, E. Ventures, and Runa Capital aided and

12   abetted the Team's fraud and the Disloyal Employees' breaches of their duties of honesty and

13   loyalty to Rambler. *See* Compl. ¶¶ 605–615, 616–625. However, even assuming that Lynwood has

14   stated tort claims against the Team, Lynwood has not plausibly alleged that F5, E. Ventures, and

15   Runa Capital had actual knowledge of the Team's torts. Rather, Lynwood only makes conclusory

16   allegations with respect to these defendants' knowledge of the Team's torts. The Court addresses

17   F5 and then addresses E. Ventures and Runa Capital.

18        First, Lynwood makes conclusory allegations that F5 knew "about the Disloyal

19   Employees' obligations to Rambler and the Team's fraudulent conduct against Rambler." Compl.

20   ¶ 618. Lynwood alleges that F5 had knowledge of the Disloyal Employees' obligations to Rambler

21   and the Team's fraudulent conduct against Rambler "[a]s a result of [F5's] due diligence" prior to

22   the merger, and "[a]s a sophisticated entity with international offices." *Id*. ¶¶ 618–19. However,

23   these allegations do not plausibly establish that F5 had knowledge of the alleged theft of the

24   NGINX Enterprise that occurred in 2011, years before the 2019 merger. These allegations are

25   especially insufficient because other allegations suggest that F5 believed the Disloyal Employees

26   had not engaged in fraudulent conduct with respect to Rambler. *Id*. ¶ 415 (stating that the Merger

27

28

Case No. 20-CV-03778-LHK
ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

Agreement "represents and warrants . . . that 'no employee or independent contractor of the Company or any Subsidiary is in breach of any Contract with any former employer or other Person concerning Intellectual Property Rights or confidentiality'"). Thus, Lynwood's allegations are conclusory and do not plausibly allege that F5 knew about the Disloyal Employees' employment obligations and the Team's alleged fraud.

Lynwood's allegations about E. Ventures and Runa Capital are similarly conclusory. Lynwood alleges that BV Capital, which is now known as E. Ventures, and Runa Capital "knew about the Disloyal Employees' obligations to Rambler and the Team's fraudulent conduct against Rambler" based on their "extensive due diligence leading up to their . . . investment in October 2011." *Id.* ¶¶ 606–07. Just like Lynwood's allegations about F5's knowledge, Lynwood's allegations about BV Capital and Runa Capital are conclusory and do not plausibly establish that BV Capital and Runa Capital knew about the Team's alleged fraudulent conduct. Lynwood's allegations are especially insufficient in light of other allegations that suggest that BV Capital and Runa Capital believed the Disloyal Employees had not engaged in fraudulent conduct with respect to Rambler. *Id.* ¶ 270. (alleging that the funding term sheet required that the company counsel provide a legal opinion that the Founder's activities "do not and will not conflict with any agreement, commitment, or other encumbrance placed on them by their current or former employer"). Accordingly, Lynwood's allegations are conclusory and do not plausibly allege that BV Capital and Runa Capital knew about, much less assisted, the Team's alleged fraudulent conduct. Thus, the Court GRANTS the instant motions to dismiss Claims 8 and 9. The Court does so with leave to amend because amendment would not be futile, unduly prejudice the opposing parties, or cause undue delay, and Lynwood has not acted in bad faith. *See Leadsinger*, 512 F.3d at 532.

### 2. Claim 10: Tortious Interference with Contract against Konovalov, Robertson, NGINX Software, Inc., NGINX BVI, NGINX DE, and BV NGINX

To state a claim for interference with contract under California law, the plaintiff must allege: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this

27

United States District Court
Northern District of California

United States District Court
Northern District of California

contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990). Accordingly, the plaintiff must allege facts showing that the defendant was aware of the existence of the contract. *Id.*; *see also Spice Jazz LLC v. Youngevity Int'l, Inc.*, 2019 WL 4573705, at *5 (S.D. Cal. Sept. 19, 2019) (holding that California law does not provide a cause of action for negligent interference with contract). Conclusory allegations that the defendant was aware of the contract are insufficient to state a claim. *See Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.*, 2018 WL 10689420, at *11 (N.D. Cal. July 9, 2018) (granting motion to dismiss claim for interference with contractual relations where the plaintiff "fail[ed] to plead any non-conclusory facts to show that any of these Defendants were aware of the [contract]").

In the instant case, Lynwood has failed to allege that the F5 Entities were aware of the existence of any contracts between the Disloyal Employees and Rambler. Lynwood alleges that Konovalov was aware of the contracts between Sysoev and Rambler, the Rambler Code of Ethics, and the Rambler Regulations. Compl. ¶¶ 628–630. However, Lynwood never alleges that any of the other defendants were aware of the contracts between the Disloyal Employees and Rambler. The only allegation that Lynwood makes on this point is that "Konovalov's knowledge concerning Sysoev's ongoing obligations to Rambler is imputed onto the NGINX Conspirators and/or the NGINX Conspirators otherwise knew of Sysoev's ongoing obligations." *Id.* ¶ 633. However, this allegation is conclusory and does not demonstrate that the other entities knew about any contracts between the Disloyal Employees and Rambler. Thus, Court GRANTS the instant motion to dismiss Claim 10 as to the F5 Entities. The Court does so with leave to amend because amendment would not be futile, unduly prejudice the opposing parties, or cause undue delay, and Lynwood has not acted in bad faith. *See Leadsinger*, 512 F.3d at 532.

### 3. Claim 13: Tortious Interference with Prospective Business Advantage against all Defendants

To state a claim for intentional interference with prospective business advantage, the

plaintiff must allege "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of that relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 521–22, 524 (1996) (quotation omitted). Accordingly, a plaintiff who alleges a lost opportunity but does not allege an economic relationship with a third party cannot state a claim for tortious interference with economic advantage. *Id.* at 527 (affirming dismissal of claim for interference with prospective economic advantage because, "[w]ithout an existing relationship with an identifiable buyer, [the plaintiff's] expectation of a future sale was 'at most a hope for an economic relationship and a desire for future benefit'") (quotation omitted); *accord UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1117–18 (C.D. Cal. 2015) ("Allegations that a defendant interfered with a relationship with an 'as yet unidentified' customer will not suffice.").

Lynwood alleges that Rambler lost an opportunity to gain a massive profit from a sale it could have made to a hypothetical buyer. *See* Compl. ¶ 666 (alleging that Rambler "had a prospective economic advantage in the form of the NGINX Enterprise that, but for Defendants' unlawful conduct detailed herein, Rambler could have and would have sold for a massive profit"). However, Lynwood failed to plead an existing economic relationship with an identifiable buyer. Thus, the Court GRANTS the instant motions to dismiss Claim 13. The Court does so with leave to amend because amendment would not be futile, unduly prejudice the opposing parties, or cause undue delay, and Lynwood has not acted in bad faith. *See Leadsinger*, 512 F.3d at 532.

### 4. Claim 14: Fraud against the Disloyal Employees, NGINX Software, Inc., NGINX DE, NGINX BVI, and BV NGINX

"[T]he elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally

29

concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Hahn v. Mirda*, 147 Cal. App. 4th 740, 748 (2007) (quotation omitted). A duty can arise from (1) a fiduciary relationship between the parties or (2) a transactional relationship between the parties where the facts were known only to the defendant, were actively concealed, or were misrepresented by omission. *Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178, 1187 (2014).

In the instant case, Lynwood has not pled a duty that NGINX Software, Inc., NGINX BVI, or BV NGINX owed to Rambler. Indeed, NGINX Software, Inc., NGINX BVI, and BV NGINX were all competitors of Rambler with no fiduciary or transactional ties to Rambler. Thus, the Court GRANTS the instant motion to dismiss Claim 14. The Court does so with leave to amend because amendment would not be futile, unduly prejudice the opposing parties, or cause undue delay, and Lynwood has not acted in bad faith. *See Leadsinger*, 512 F.3d at 532.

### 5.  Claim 15: Direct Copyright Infringement against All Defendants

To plead copyright infringement, a plaintiff must allege: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Inc.*, 499 U.S. 340, 361 (1991).

In the instant case, the F5 Entities contend that Lynwood cannot allege ownership of a valid copyright. F5 Mot. at 16–18. However, even assuming that Lynwood could do so, Lynwood has failed to plausibly allege that the F5 Entities and the Outside Investors copied the constituent elements of the work. To state a claim for copyright infringement, the plaintiff must "identify which Defendant is alleged to have infringed which particular copyright." *Iglesia Ni Cristo*, 2018 WL 4674603, at *7; *see also Bravado Int'l Grp. Merch. Servs. v. Cha*, 2010 WL 2650432, at *6 (C.D. Cal. June 30, 2010) (dismissing case where "Plaintiff does not demonstrate which groups infringed which trademarks and copyrights"). In the instant case, Lynwood does not identify

30

which defendants allegedly infringed its copyright. Instead, Lynwood lumps all the defendants together without stating which entity or person copied the work. *See* Compl. ¶¶ 713–19 (grouping the defendants together without alleging which entity or person copied the work). Moreover, some of Lynwood's allegations belie the notion that all defendants copied the work. *See, e.g.*, Compl. ¶ 701 (alleging that BV Capital and Runa Capital "bought into the plan and funded it" rather than alleging that BV Capital and Runa Capital copied the work). Accordingly, the Court GRANTS the instant motions to dismiss Claim 15. The Court does so with leave to amend because amendment would not be futile, unduly prejudice the opposing parties, or cause undue delay, and Lynwood has not acted in bad faith. *See Leadsinger*, 512 F.3d at 532.

### 6. Claim 1: Civil Conspiracy among the Team, Robertson, Runa Capital, E. Ventures, NGINX BVI, NGINX DE, NGINX Software, Inc. and BV NGINX

Under California law, civil conspiracy is not a standalone cause of action, but rather is a theory of liability for an underlying tort. *See Applied Equip. Corp. v. Litton Saudia Arabia Ltd.*, 7 Cal. 4th 503, 510–11 (Cal. 1994) ("Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration."); *accord Entm't Research Grp., Inc. v. Genesis Creative  Grp., Inc.*, 122 F.3d 1211, 1228 (9th Cir. 1997) ("Under California law, there is no separate and distinct tort cause of action for civil liability."); *Meyer v. Capital All. Grp.*, 2017 WL 5138316, at *17 (S.D. Cal. Nov. 6, 2017) (dismissing a claim for civil conspiracy because "[t]he law could not possibly be more clear that civil conspiracy is a legal theory of liability, not an independent, actionable claim"); *Mintel Learning Tech., Inc. v. Beijing Kaidi Educ.*, 2007 WL 2288329, at *4 (N.D. Cal. Aug. 9, 2007) (dismissing a claim for civil conspiracy because civil conspiracy "is not a separate and distinct cause of action under California law," and "civil conspiracy allegations must be separately pled as to each of the substantive causes of action"). Accordingly, a civil conspiracy claim requires an underlying tort.

Moreover, a civil conspiracy claim requires "that each member of the conspiracy acted in concert and came to a mutual understanding to accomplish a common and unlawful plan." *AREI II*

Case No. 20-CV-03778-LHK
ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1  *Cases*, 216 Cal. App. 4th 1004, 1022 (2013) (citation omitted); *see Mintel Learning Tech.*, 2007

2  WL 2288329, at *4 ("Each member of the alleged conspiracy . . . must intend the success of the

3  purpose of the conspiracy.") (citation omitted). Thus, each member of the conspiracy must have

4  the same object.

5  In the instant case, Lynwood has failed to state a civil conspiracy claim for two reasons.

6  First, Lynwood has not stated a claim for the underlying torts that the Team, Robertson, Runa

7  Capital, E. Ventures, NGINX BVI, NGINX DE, NGINX Software, Inc. and BV NGINX allegedly

8  conspired to commit. *See* Sections III(C)(1)–III(C)(5), *supra*. Indeed, Lynwood has not even

9  specified the torts that the defendants allegedly conspired to commit. In response, Lynwood points

10 to a district court case, *Wu v. Oregon Trail Corporation*. 2019 WL 6603172, at *1 (C.D. Cal. July

11 31, 2019). However, in *Wu*, the plaintiff had "alleged the underlying torts of fraud and conversion

12 against all Defendants," and the conspiracy claim "expressly incorporate[d] all previous

13 allegations, including the allegations alleging the substantive torts of fraud and conversion." *Id*. at

14 *3. Accordingly, the court concluded that "these allegations are fairly read to assert a claim for

15 conspiracy to commit fraud and conspiracy to commit conversion against all Defendants." *Id*. at

16 *3. By contrast, in the instant case, Lynwood has not stated a claim for an underlying tort, and

17 Lynwood's civil conspiracy claim does not specifically identify the torts that the Team, Robertson,

18 Runa Capital, E. Ventures, NGINX BVI, NGINX DE, NGINX Software, Inc. and BV NGINX

19 allegedly conspired to commit. Compl. ¶¶ 524–553.

20 Second, Lynwood fails to allege that the Team, Robertson, Runa Capital, E. Ventures,

21 NGINX BVI, NGINX DE, NGINX Software, Inc. and BV NGINX had a common plan. As

22 explained above, Lynwood has failed to plausibly allege that the Outside Investors knew about the

23 alleged fraudulent conduct. *See* Section III(C)(1), *supra*. Thus, the Court GRANTS the instant

24 motions to dismiss Claim 1. The Court does so with leave to amend because amendment would

25 not be futile, unduly prejudice the opposing parties, or cause undue delay, and Lynwood has not

26 acted in bad faith. *See Leadsinger*, 512 F.3d at 532.

27

28  32

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motions to dismiss with leave to amend. Lynwood shall file any amended complaint within 30 days of the Court's forthcoming order on the Individual Defendants' motion to dismiss, ECF No. 106. Failure to do so, or failure to cure deficiencies identified herein or identified in the instant motions to dismiss or the Individual Defendants' motion to dismiss, will result in dismissal of the deficient claims with prejudice. Lynwood may not add new causes of action or add new parties without stipulation or leave of the Court. Lynwood is directed to file a redlined complaint comparing the complaint to any amended complaint as an attachment to Lynwood's amended complaint.

**IT IS SO ORDERED.**

Dated: March 25, 2021

_Lucy H. Koh_
_____
LUCY H. KOH
United States District Judge

Case No. 20-CV-03778-LHK
ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND