1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

12

LYNWOOD INVESTMENTS CY LIMITED,

13

Plaintiff,

14

v.

15

MAXIM KONOVALOV, et al.,

16

Defendants.

17

Case No. 20-CV-03778-LHK

**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**

Re: Dkt. No. 106

18

Plaintiff Lynwood Investments CY Limited ("Lynwood") sues Defendants Maxim

19

Konovalov; Igor Sysoev; Andrey Alexeev; Maxim Dounin; Gleb Smirnoff; Angus Robertson; F5

20

Networks, Inc.; NGINX, Inc. (BVI); NGINX Software, Inc.; e.venture Capital Partners II LLC;

21

Runa Capital, Inc.; BV NGINX, LLC; and NGINX, Inc. (DE) (collectively, "Defendants"). Before

22

the Court is a motion to dismiss filed by Maxim Konovalov, Igor Sysoev, Andrey Alexeev,

23

Maxim Dounin, Gleb Smirnoff, and Angus Robertson (collectively, "the Individual Defendants").

24

Having considered the parties' submissions, the relevant law, and the record in this case, the Court

25

GRANTS the Individual Defendants' motion to dismiss with leave to amend.

26

On March 25, 2021, the Court granted the motions to dismiss of F5 Networks, Inc.;

27

NGINX, Inc. (BVI); and NGINX Software, Inc. (collectively, "the F5 Entities") and e.venture

28

Capital Partners II LLC; Runa Capital, Inc.; and BV NGINX, LLC (collectively, "the Outside Investors"). ECF No. 134 ("the March 25, 2021 Order"). In the March 25, 2021 Order, the Court dismissed Lynwood's claims against the F5 Entities and the Outside Investors because Lynwood's claims were barred by the statutes of limitations, Lynwood failed to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), and Lynwood failed to state a claim. *Id.* at 14–32. Although the causes of action addressed in the March 25, 2021 Order do not overlap perfectly with the causes of action at issue here, the deficiencies identified in the March 25, 2021 Order apply equally here. For example, as the Court discusses below, *infra* Section III(B), Lynwood's claims are barred by the statutes of limitations. Moreover, Lynwood has failed to plead its allegations with the particularity required by Federal Rule of Civil Procedure 9(b). In any amended complaint, Lynwood must correct all the defects identified in the March 25, 2021 Order, this Order, the F5 Entities' motion to dismiss, the Outside Investors' motion to dismiss, and the instant motion to dismiss. Otherwise, the Court will dismiss the deficient claims with prejudice.

## I.   BACKGROUND

### A.   Parties

Plaintiff Lynwood is a Cyprus limited company with its principal place of business in Limassol, Cyprus. ECF No. 1 ("Compl.") ¶ 56.

Lynwood sues Defendants F5 Networks, Inc. ("F5"); NGINX Software, Inc.; NGINX, Inc. (BVI) ("NGINX BVI") (collectively, the "F5 Entities"); and NGINX, Inc. (DE) ("NGINX DE"). Defendant F5 is a corporation incorporated in Washington and headquartered in Seattle, Washington. *Id.* ¶ 70. Defendant NGINX Software, Inc. is a Delaware corporation headquartered in San Francisco, California. *Id.* ¶ 64. NGINX BVI is a British Virgin Islands corporation headquartered in San Francisco, California. *Id.* ¶ 63. NGINX DE is a Delaware corporation headquartered in San Francisco, California. *Id.* ¶ 65.

Lynwood also sues Defendants e.venture Capital Partners II LLC ("e.ventures"); Runa Capital, Inc. ("Runa Capital"); and BV NGINX, LLC ("BV NGINX") (collectively, the "Outside Investors"). Defendant e.ventures is a Delaware limited liability company headquartered in San

Case No. 20-CV-03778-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1  Francisco, California. *Id.* ¶ 69. Defendant Runa Capital is a Delaware corporation headquartered

2  in Palo Alto, California. *Id.* ¶ 68. Defendant BV NGINX is a Delaware limited liability company

3  headquartered in San Francisco, California. *Id.* ¶ 66.

4  Finally, Lynwood sues Defendants Maxim Konovalov ("Konovalov"), Igor Sysoev

5  ("Sysoev"), Andrey Alexeev ("Alexeev"), Maxim Dounin ("Dounin"), Gleb Smirnoff

6  ("Smirnoff"), and Angus Robertson ("Robertson"). Konovalov, Sysoev, Alexeev, and Dounin

7  (collectively, the "International Defendants") are citizens of the Russian Federation. *Id.* ¶¶ 58–61.

8  Konovalov, Sysoev, and Dounin reside in Moscow, Russia. *Id.* Alexeev resides in Germany.

9  Alexeev Decl. ¶ 2. Smirnoff is a citizen of the Russian Federation who resides in Los Gatos,

10  California. Compl. ¶ 62. Robertson is a citizen of Florida who resides in Miami Beach, Florida. *Id.*

11  ¶ 67.

12  **B.   The Creation of the NGINX Software**

13  Lynwood's complaint alleges that "Defendants Igor Sysoev and Maxim Konovalov, along

14  with their co-conspirators, brazenly stole an entire web server enterprise ["the NGINX

15  Enterprise"] from their former employer, Rambler Internet Holding LLC ["Rambler"], in Russia,

16  where the computer software, known as NGINX (pronounced 'Engine-X') was conceived,

17  developed as a work for hire, and first publicly deployed." *Id.* ¶ 1. Lynwood is the assignee of any

18  rights Rambler has to the NGINX Enterprise as the result of a 2015 agreement between Rambler

19  and Lynwood. *Id.* ¶ 471.

20  On November 14, 2000, Sysoev began his employment as a System Administrator for

21  Rambler. *Id.* ¶ 97. During the course of Sysoev's employment with Rambler, he entered into

22  several agreements with Rambler, which supplemented Rambler's own code of ethics and

23  regulations. *Id.* ¶¶ 110–140, 627 (alleging that "Sysoev and Rambler were parties to and bound by

24  the Sysoev Employment Agreement, the Sysoev Separation Agreement, the Rambler Code of

25  Ethics and the Rambler Regulations"). During the time that Sysoev was employed at Rambler,

26  Rambler was "the largest technology company and search engine in Russia." *Id.* ¶ 80.

27

28

Case No. 20-CV-03778-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

United States District Court
Northern District of California

According to Lynwood, "[o]ne of Sysoev's primary employment responsibilities as a Rambler employee was to develop the NGINX Software as a key component of Rambler infrastructure." *Id.* ¶ 175. Sysoev was allegedly working on the NGINX Software "to solve problems with Rambler's utilization of the widely used open source web server known as Apache." *Id.* ¶ 155. Web servers like Apache and NGINX are server programs that allow web pages to "serve" a web page to a visitor who requests it; server programs help to enable efficient access to websites even as the number of visitors increases. *Id.* ¶¶ 158, 162.

On October 23, 2001, Sysoev wrote the first line of code for the NGINX Software. *Id.* ¶ 154. Lynwood alleges that "Sysoev spent nine years of his Rambler employment working primarily on the NGINX Software and related development." *Id.* ¶ 178. In 2004, Sysoev first released the open source portion of the NGINX Software without authorization from Rambler. *Id.* ¶ 164.

Following the open source release of the NGINX Software, Sysoev allegedly "spent the next seven years, during the time he was employed at Rambler . . . working on further developing, testing, improving and releasing the NGINX Software all with the assistance of other Rambler engineers, using Rambler resources, infrastructure and Rambler Internet traffic, during regular Rambler business hours." *Id.* ¶ 169. "During that time, Sysoev received significant and ongoing technical assistance in this NGINX-focused endeavor to continuously test and improve the code from a number of senior Rambler computer/network department heads, software engineers and other technical staff." *Id.* ¶ 170. Moreover, "Rambler paid Sysoev regular outsized bonuses on either a quarterly or semi-annual basis in recognition of his work in developing the NGINX Software for Rambler and the software code's utility in solving the company's various issues at that time." *Id.* ¶¶ 101, 191.

**C.  The Alleged Conspiracy to Steal the NGINX Enterprise**

Following the open source release of the NGINX Software, the NGINX Software gained popularity. Initially, the NGINX Software was mostly used in conjunction with Apache. *Id.* ¶ 166.

4

United States District Court
Northern District of California

However, as the NGINX Software evolved, "websites began employing the NGINX Software in lieu of Apache." *Id*. According to Lynwood, the NGINX Enterprise (like other similar software) has become lucrative by offering a proprietary version of its software, known as NGINX Plus, which has enhanced features. *Id*. ¶¶ 161, 167.

Seeking to capitalize on the NGINX Software's popularity and the financial opportunities the NGINX Software presented, Sysoev and two other Rambler employees, Konovalov and Smirnoff (collectively, the "Disloyal Employees") allegedly worked together with two others, Alexeev and Dounin (collectively, the "Team") to steal the NGINX Enterprise from Rambler and monetize it for their own gain by selling it to a third party. *Id*. ¶¶ 82, 192. The Team also received assistance from Alexander Korotkov ("Korotkov"), who eventually became a whistleblower and revealed information about the alleged conspiracy to Rambler. *Id*. ¶ 202.

According to Lynwood, each member of the Team had a specific role. "Sysoev was the programming genius and lead architect of the NGINX Software, and worked on publicizing the NGINX Software and later meeting with potential investors." *Id*. ¶ 197. Konovalov, who was the Chief Technology Officer of Rambler, "was the chief executive and mastermind of the plot." *Id*. ¶¶ 198, 213. "Alexeev was charged with business development and establishing relationships with potential investors." *Id*. ¶ 198. "Dounin was the senior developer," who "assisted Sysoev on NGINX-related software coding." *Id*. ¶¶ 198, 200. Smirnoff, who "was left behind at Rambler for approximately eleven months after Sysoev resigned from Rambler by December 2011," "was the Team's 'clean-up guy' charged with evidence destruction, including the wiping of electronic data at Rambler that contained evidence of the Team's conspiracy and misconduct." *Id*. ¶ 201.

Lynwood also alleges that all three Disloyal Employees concealed their conspiracy from Rambler. According to Lynwood, "all of Konovalov's emails related to NGINX's formation were deleted," "[t]he vast majority of Sysoev's email folders were deleted," and "[t]he vast majority of Smirnoff's emails were deleted." *Id*. ¶¶ 297–99. Moreover, Lynwood alleges that "following their separation from Rambler, Sysoev and Konovalov instructed Smirnoff to destroy the servers

5

containing Sysoev's NGINX Software work product." *Id.* ¶ 303.

"Even though Konovalov and the rest of the Disloyal Employees were fixated on misappropriating the NGINX Enterprise, which they viewed as a highly valuable business," the Disloyal Employees allegedly misrepresented to Rambler that the NGINX Enterprise was worthless. *Id.* ¶ 289. For example, in mid-April 2011, Konovalov "fraudulently declined to identify the NGINX Software as Rambler-owned software" and "ranked all NGINX software programs" as having "insignificant or no tangible value or importance." *Id.* ¶ 291.

**D. Outside Investment in the NGINX Enterprise**

Lynwood alleges that the Disloyal Employees began their efforts to steal the NGINX Enterprise while they were still employed with Rambler. *Id.* ¶¶ 211–212. Lynwood traces the independent promotion of the NGINX Enterprise to February 2010. On February 20, 2010, Korotkov first registered the Internet domain name NGINXPLUS.com. *Id.* ¶ 232. Korotkov later stated in a trademark filing that the first use of the NGINX mark occurred on February 1, 2010, and the first use in commerce was on March 1, 2011. *Id.* ¶ 241.

Around this time, the Team (Sysoev, Konovalov, Alexeev, Dounin, and Smirnoff) allegedly began to contact outside investors. In June 2010, Korotkov allegedly solicited investors from BV Capital, now known as e.ventures. *Id.* ¶ 245. Korotkov was then ejected by the Team, and Alexeev and Konovalov continued to contact investors. *Id.* ¶ 252. In March and April 2011, Alexeev, Sysoev, and Konovalov made a slide presentation to attract investors. *Id.* ¶ 254.

On April 6, 2011, "the Team signed a funding term sheet with United States-based venture capital firms Greycroft Partners II L.P. . . ., BV Capital and affiliates . . . and Runa Capital." *Id.* ¶ 258. Furthermore, the funding term sheet allegedly stated as follows: "A legal opinion of the Company counsel, satisfactory to the Investors, shall be delivered to the Investors stating that the Founders' activities with the Company do not and will not conflict with any agreement, commitment, or other encumbrance placed on them by their current or former employer." *Id.* ¶ 270.

Case No. 20-CV-03778-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

According to Lynwood, Greycroft pulled out of the financing deal shortly before it was scheduled to close in October 2011. *Id.* ¶ 277. Lynwood alleges that, "[u]pon information and belief, Greycroft pulled out of the closing because its concerns over Rambler's ownership of the NGINX Software, NGINX Plus, and more generally, the NGINX Enterprise remained unsatisfactorily addressed. *Id.* ¶ 278.

The two remaining investors, BV Capital and Runa Capital, allegedly "went forward . . . after conducting their own due diligence, with full knowledge that Rambler was the legal owner of the entire NGINX Enterprise and assuming the risk that one day there would be a dispute over the ownership of the NGINX Enterprise." *Id.* Following the first round of financing, BV Capital and Runa Capital participated in additional rounds of financing in October 2013, December 2014, and April 2016. *Id.* ¶ 287. BV Capital and Runa Capital allegedly "became involved in the granular details of the Team's plans to misappropriate the NGINX Enterprise from Rambler and launch it under the banner of a new company formed by the Team and funded by their capital partners." *Id.* ¶ 260.

Following the signing of the funding term sheet, on May 4, 2011, the Team formed NGINX Software, Inc. *Id.* ¶ 273. On July 6, 2011, the Team formed NGINX BVI. *Id.* In August 2011, the Team formed NGINX DE. *Id.* In 2012, Robertson became the CEO of NGINX Software, Inc.; NGINX DE; and NGINX BVI. *Id.* ¶ 385. Lynwood alleges that "Robertson gained in-depth knowledge that the NGINX Software, and all proprietary software modules developed to enhance its functionality, including the commercial code known as NGINX Plus, that Sysoev developed during his employment with Rambler, as well as the NGINX Enterprise and all related business opportunities, belonged to, and were stolen from, Rambler." *Id.* ¶ 387.

Furthermore, following the signing of the funding term sheet, each of the Disloyal Employees resigned from Rambler. Konovalov resigned from Rambler effective April 29, 2011. *Id.* ¶ 211. "On July 18, 2011, Sysoev announced to his list service recipients that he was going to 'establish nginx as a company to fully dedicate [himself] to the [nginx] project.'" *Id.* ¶ 276.

United States District Court
Northern District of California

Sysoev later separated from Rambler in December 2011. *Id.* Eleven months after Sysoev left, Smirnoff separated from Rambler. *Id.* ¶ 201.

According to Lynwood, "Sysoev and Konovalov each misrepresented to Rambler that they were separating from Rambler to form a new company that would provide support services to the existing open source NGINX Software for third-parties." *Id.* ¶ 281. "Sysoev and Konovalov fraudulently concealed from Rambler that they were contemplating the prospect of potentially providing add-on services to the NGINX Software in the future." *Id.* ¶ 283. "In an attempt to avoid triggering suspicion at Rambler, Sysoev and Konovalov couched their statements as aspirational and deeply protective in nature." *Id.*

**E.  The Merger with F5**

On March 9, 2019, F5 entered into a Merger Agreement, pursuant to which NGINX BVI became a wholly-owned subsidiary of F5. *Id.* ¶ 389. As part of this agreement, each member of the Team was given a position at F5. *Id.* ¶¶ 410–414. In the Merger Agreement, NGINX BVI represented and warranted that "no employee or independent contractor of the Company or any Subsidiary is in breach of any Contract with any former employer or other Person concerning Intellectual Property Rights or confidentiality." *Id.* ¶ 415.

According to Lynwood, prior to the merger, F5 "conducted extensive due diligence concerning the NGINX Software and its proprietary companion code and their origins, which of course revealed that Sysoev developed the NGINX Software and NGINX Plus modules for Rambler and with Rambler's resources while he was employed there." *Id.* ¶ 391. According to Lynwood, "F5 reviewed and analyzed the NGINX Software and NGINX Plus software itself, and therefore F5 knew that Sysoev wrote much of the NGINX Software and NGINX Plus software during normal working hours while employed by Rambler." *Id.* ¶ 392.

After the merger with F5, Korotkov allegedly approached Rambler and "blew the whistle on the conspiracy and scheme." *Id.* ¶ 456. Korotkov allegedly informed Rambler that "the Disloyal Employees conspired to conceal from Rambler": (1) "that NGINX Software and NGINX

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Plus were developed by Sysoev and the Disloyal Employees while they were still employed at

2   Rambler and at Rambler's expense"; (2) "the value of the NGINX Software and NGINX Plus and

3   more generally the NGINX Enterprise"; (3) "the commercialization and monetization they

4   recognized for the NGINX Software and NGINX Plus." *Id.* ¶¶ 457–461.

5       Lynwood alleges that, "[p]rior to Korotkov's disclosures, Rambler did not have reason to,

6   and did not, understand the scope or value of the Disloyal Employees' work on the NGINX

7   Software and NGINX Plus code." *Id.* ¶ 464. "Immediately after Korotkov's disclosures, Rambler

8   and Lynwood conducted extensive investigations regarding the whistleblower's assertions." *Id.* ¶

9   466. "Rambler and Lynwood's extensive investigations confirmed the veracity of the

10  whistleblower's assertions, and this lawsuit followed." *Id.* ¶ 467.

11  **F.  The Instant Case**

12      On June 8, 2020, Plaintiff filed the instant case against Defendants Maxim Konovalov;

13  Igor Sysoev; Andrey Alexeev; Maxim Dounin; Gleb Smirnoff; Angus Robertson; F5, Inc.;

14  NGINX, Inc. (BVI); NGINX Software, Inc.; E. Venture Capital Partners II LLC; Runa Capital,

15  Inc.; BV NGINX, LLC; and NGINX, Inc. (DE) (collectively, "Defendants"). Compl.

16      Plaintiff brought 26 claims: (1) civil conspiracy among the Team, Robertson, Runa

17  Capital, e.ventures, NGINX BVI, NGINX DE, NGINX Software, Inc. and BV NGINX; (2) breach

18  of employment obligations owed by Konovalov to Rambler; (3) breach of employment obligations

19  owed by Sysoev to Rambler; (4) breach of employment obligations owed by Smirnoff to Rambler;

20  (5) breach of Konovalov's duty to act fairly and honestly with Rambler; (6) breach of the duty to

21  act fairly and honestly with Rambler as to Sysoev and Smirnoff; (7) aiding and abetting by

22  Alexeev and Dounin of the Disloyal Employees' breaches of their duties of honesty and loyalty to

23  Rambler; (8) aiding and abetting by Runa Capital and e.ventures of the Team's fraud and the

24  Disloyal Employees' breaches of their duties of honesty and loyalty to Rambler; (9) aiding and

25  abetting by F5 of the Team's fraud and the Disloyal Employees' breaches of their duties of

26  honesty and loyalty to Rambler; (10) tortious interference with contract against Konovalov,

27

28

9

Robertson, NGINX Software, Inc., NGINX BVI, NGINX DE, and BV NGINX; (11) tortious interference with contract against Runa Capital and e.ventures; (12) tortious interference with contract against F5; (13) tortious interference with prospective business advantage against all defendants; (14) fraud against the Disloyal Employees, NGINX Software, Inc., NGINX DE, NGINX BVI, and BV NGINX; (15) direct copyright infringement against all Defendants; (16) contributory copyright infringement against all Defendants; (17) vicarious copyright infringement against all Defendants; (18) cancellation of NGINX Trademark Registration and payment of damages for fraud as to NGINX Software, Inc. and F5; (19) cancellation of NGINX (Stylized) Trademark Registration and payment of damages for fraud as to NGINX Software, Inc. and F5; (20) cancellation of NGINX PLUS Trademark Registration and payment of damages for fraud as to NGINX DE, NGINX BVI, and F5; (21) cancellation of NGINX Trademark Registration and payment of damages for fraud as to NGINX BVI and F5; (22) cancellation of NGINX CONTROLLER Trademark Registration and payment of damages as to NGINX BVI and F5; (23) cancellation of NGINX UNIT Trademark Registration and payment of damages for fraud as to NGINX BVI and F5; (24) false advertising as to all defendants; (25) infringement of the NGINX Trademark as to all defendants; and (26) unjust enrichment as to all defendants. ECF No. 1 ¶¶ 524–873.

On October 1, 2020, the Court ordered Lynwood to select 10 claims to litigate through trial. ECF No. 107. On October 22, 2020, Lynwood selected the following claims: (1) civil conspiracy among the Team, Robertson, Runa Capital, e.ventures, NGINX BVI, NGINX DE, NGINX Software, Inc. and BV NGINX; (2) breach of employment obligations owed by Konovalov to Rambler; (3) breach of employment obligations owed by Sysoev to Rambler; (5) breach of Konovalov's duty to act fairly and honestly with Rambler; (8) aiding and abetting by Runa Capital and e.ventures of the Team's fraud and the Disloyal Employees' breaches of their duties of honesty and loyalty to Rambler; (9) aiding and abetting by F5 of the Team's fraud and the Disloyal Employees' breaches of their duties of honesty and loyalty to Rambler; (10) tortious

Case No. 20-CV-03778-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

interference with contract against Konovalov, Robertson, NGINX Software, Inc., NGINX BVI, NGINX DE, and BV NGINX; (13) tortious interference with prospective business advantage against all defendants; (14) fraud against the Disloyal Employees, NGINX Software, Inc., NGINX DE, NGINX BVI, and BV NGINX; and (15) direct copyright infringement against all Defendants. ECF No. 110.

On September 28, 2020, the F5 Entities filed a motion to stay discovery pending this Court's ruling on their motion to dismiss, ECF No. 103, and a motion to shorten time on the motion to stay discovery, ECF No. 104. On November 3, 2020, the Court granted the motion to shorten time and the motion to stay discovery. ECF No. 117.

On August 28, 2020, the F5 Entities filed a motion to dismiss the instant case, ECF No. 88, and an associated request for judicial notice, ECF No. 89. That same day, the Outside Investors filed a motion to dismiss the instant case, ECF No. 90. On October 30, 2020, Lynwood filed an opposition to both motions. ECF Nos. 115, 116. On December 3, 2020, the F5 Entities and the Outside Investors filed replies in support of their motions. ECF Nos. 121, 123.

On March 25, 2021, the Court granted the F5 Entities and the Outside Investors' motions to dismiss seven of Lynwood's selected claims for three reasons. ECF Nos. 134. First, the Court concluded that Lynwood's claims were untimely. *Id.* at 14–22. Second, the Court held that Lynwood's claims failed to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *Id.* at 22–25. Third, the Court held that Lynwood's claims failed to state a claim. *Id.* at 25–32. The Court granted Lynwood leave to amend. *Id.* at 33.

On September 30, 2020, the Individual Defendants filed the instant motion to dismiss the instant case, ECF No. 106 ("Mot."). On December 10, 2020, Lynwood filed an opposition. ECF Nos. 124 ("Opp'n"), 125, 127. On January 11, 2021, the Individual Defendants filed a reply. ECF No. 129 ("Reply").

## II. LEGAL STANDARD

### A. Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(2)

In a motion challenging personal jurisdiction under Federal Rule of Civil Procedure

11

1    12(b)(2), the plaintiff, as the party seeking to invoke the jurisdiction of the federal court, has the

2    burden of establishing that jurisdiction exists. *See In re Boon Global Ltd.*, 923 F.3d 643, 650 (9th

3    Cir. 2019). "Where, as here, the defendant's motion is based on written materials rather than an

4    evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts to

5    withstand the motion to dismiss.'" *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015)

6    (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011)).

7            However, this standard "is not toothless," and the party asserting jurisdiction "cannot

8    simply rest on the bare allegations of its complaint." *In re Boon Global Ltd.*, 923 F.3d at 650

9    (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). Thus,

10   courts may consider declarations and other evidence outside the pleadings to determine whether it

11   has personal jurisdiction. *See id.* At this stage of the proceeding, "uncontroverted allegations in

12   plaintiff's complaint must be taken as true, and '[c]onflicts between parties over statements

13   contained in affidavits must be resolved in the plaintiff's favor.'" *Id.* (quoting *Schwarzenegger*,

14   374 F.3d at 800). On the other hand, courts "may not assume the truth of allegations in a pleading

15   which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218,

16   1223 (9th Cir. 2011).

17   **B. Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

18           Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to include "a short

19   and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

20   A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil

21   Procedure 12(b)(6). Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief

22   that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim

23   has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

24   reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556

25   U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it

26   asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal

27

28

Case No. 20-CV-03778-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1   quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s]

2   factual allegations in the complaint as true and construe[s] the pleadings in the light most

3   favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025,

4   1031 (9th Cir. 2008).

5        The Court, however, need not accept as true allegations contradicted by judicially

6   noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look

7   beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6)

8   motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir.

9   1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in

10  the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per

11  curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere

12  "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

13  dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

14      **C. Leave to Amend**

15       If the Court determines that a complaint should be dismissed, it must then decide whether

16  to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend

17  "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule

18  15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v.*

19  *Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks

20  omitted). When dismissing a complaint for failure to state a claim, "'a district court should grant

21  leave to amend even if no request to amend the pleading was made, unless it determines that the

22  pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal

23  quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing

24  amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the

25  moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532

26  (9th Cir. 2008).

27  **III. DISCUSSION**

28

Case No. 20-CV-03778-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1    As discussed above, Lynwood selected ten claims to litigate through trial. ECF No. 110.

2    Eight of Lynwood's ten selected claims are against Sysoev, Konovalov, Alexeev, Dounin,

3    Smirnoff, and Robertson (collectively, "the Individual Defendants"). *Id.* The Individual

4    Defendants move to dismiss all eight claims for many reasons, including the lack of personal

5    jurisdiction and the statutes of limitations time bars.

6        Below, the Court first addresses the argument of Sysoev, Konovalov, Alexeev, and Dounin

7    (collectively, "the International Defendants") that the Court lacks personal jurisdiction over them.

8    The Court addresses this argument first because "[a] federal court generally may not rule on the

9    merits of a case without first determining that it has jurisdiction over the category of claim in suit

10   (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v.*

11   *Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007). The Court concludes that personal

12   jurisdiction exists over the International Defendants.

13       The Court then addresses the statutes of limitations and concludes that Lynwood's claims

14   are barred by the statutes of limitations. Thus, the Court need not reach the Individual Defendants'

15   remaining reasons for dismissal.

16       Because of the statutes of limitations, the Court dismisses with leave to amend the

17   following eight claims against the Individual Defendants: (1) civil conspiracy among Sysoev,

18   Konovalov, Alexeev, Dounin, and Smirnoff (collectively, "the Team"), Robertson, Runa Capital,

19   e.ventures, NGINX BVI, NGINX DE, NGINX Software, Inc. and BV NGINX; (2) breach of

20   employment obligations owed by Konovalov to Rambler; (3) breach of employment obligations

21   owed by Sysoev to Rambler; (5) breach of Konovalov's duty to act fairly and honestly with

22   Rambler; (10) tortious interference with contract against Konovalov, Robertson, NGINX

23   Software, Inc., NGINX BVI, NGINX DE, and BV NGINX; (13) tortious interference with

24   prospective business advantage against all defendants; (14) fraud against Sysoev, Konovalov, and

25   Smirnoff (collectively, "the Disloyal Employees"), NGINX Software, Inc., NGINX DE, NGINX

26   BVI, and BV NGINX; and (15) direct copyright infringement against all defendants.

27   **A. Personal Jurisdiction**

14

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    In the instant case, Lynwood contends that the International Defendants are subject to

2  personal jurisdiction under California's long arm statute. Opp'n at 18–24. California's long arm

3  statute, Cal. Civ. Proc. Code § 410.10, is co-extensive with federal due process requirements, and

4  therefore the jurisdictional analyses under California law and federal due process merge into one.

5  *See* Cal. Civ. Proc. Code § 410.10 ("[A] court of this state may exercise jurisdiction on any basis

6  not inconsistent with the Constitution of this state or of the United States."); *Mavrix Photo, Inc. v.*

7  *Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) ("California's long-arm statute . . . is

8  coextensive with federal due process requirements, so the jurisdictional analyses under state law

9  and federal due process are the same.").

10    For a court to exercise personal jurisdiction over a defendant consistent with due process,

11  that defendant must have "certain minimum contacts" with the relevant forum "such that the

12  maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

13  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457,

14  463 (1940)). In addition, "the defendant's 'conduct and connection with the forum State' must be

15  such that the defendant 'should reasonably anticipate being haled into court there.'" *Sher v.*

16  *Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (quoting *World-Wide Volkswagen Corp. v.*

17  *Woodson*, 444 U.S. 286, 297 (1980)).

18    Courts "recognize[] two types of personal jurisdiction: 'general' (sometimes called 'all-

19  purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers*

20  *Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1779 (2017) (quoting

21  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011)). "[O]nly a limited

22  set of affiliations with a forum will render a defendant amenable to" general jurisdiction. *Daimler*

23  *AG v. Bauman*, 571 U.S. 117, 137 (2014). For individual defendants, the "paradigm forum for the

24  exercise of general jurisdiction is the individual's domicile." *Goodyear*, 564 U.S. at 924. "A

25  person's domicile is her permanent home, where she resides with the intention to remain or to

26  which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

27

28

15

1   Konovalov, Sysoev, and Dounin reside in Russia, and Alexeev resides in Germany. Compl. ¶¶ 58–

2   61; Alexeev Decl. ¶ 2. Accordingly, Lynwood does not argue that general jurisdiction is proper in

3   the instant case.

4        Rather, Lynwood contends that the Court has specific jurisdiction over the International

5   Defendants. Opp'n at 18–24. Specific jurisdiction is proper when a suit "aris[es] out of or relate[s]

6   to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*,

7   466 U.S. 408, 414 n.8 (1984). Whether a court has specific jurisdiction over a nonresident

8   defendant "focuses on the relationship among the defendant, the forum, and the litigation," and

9   "the defendant's suit-related conduct must create a substantial connection with the forum."

10  *Walden v. Fiore*, 571 U.S. 277, 285 (2014). "When there is no such connection, specific

11  jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."

12  *Bristol-Myers*, 137 S. Ct. at 1781; *see Goodyear*, 564 U.S. at 931 n.6 ("[E]ven regularly occurring

13  sales of a product in a State do not justify the exercise of jurisdiction over claims *unrelated to*

14  *those sales*." (emphasis added)).

15       For specific jurisdiction, the Ninth Circuit has adopted a three-part test that requires the

16  plaintiff to show that: (1) the defendant purposefully directed its activities at residents of the forum

17  or purposefully availed itself of the privilege of doing business in the forum; (2) the plaintiff's

18  claim arises out of or relates to those activities; and (3) the assertion of personal jurisdiction is

19  reasonable and fair. *Schwarzenegger*, 374 F.3d at 802. It is the plaintiff's burden to plead

20  allegations satisfying the first two prongs. *Id.* If the plaintiff does so, the burden shifts to the

21  defendant to show why the exercise of personal jurisdiction would not be reasonable and fair. *Id.*

22  The Court now considers each element of the three-part test.

23       **1.   Purposeful Availment or Purposeful Direction**

24       The plaintiff must first show that the defendant purposefully directed its activities at

25  residents of the forum or purposefully availed itself of the privilege of doing business in the

26  forum. *Id.* The Court generally applies "the purposeful availment test when the underlying claims

27

28

Case No. 20-CV-03778-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

arise from a contract, and the purposeful direction test when they arise from alleged tortious

conduct." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017).

In the instant case, Lynwood's claims arise from alleged tortious conduct—specifically, an

alleged fraudulent scheme to steal the NGINX Enterprise from Rambler. *See* Compl. ¶¶ 192–388

(alleging a fraudulent scheme to steal the NGINX Enterprise from Rambler). However, some of

Lynwood's claims also arise from the employment contracts between Rambler and the Disloyal

Employees. *See id.* ¶¶ 554–586 (claiming that Sysoev, Konovalov, and Smirnoff breached their

employment obligations to Rambler). Accordingly, both the purposeful direction and the

purposeful availment tests are relevant. *See Global Commodities Trading Grp., Inc. v. Beneficio*

*de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020) ("When both contract and tort

claims are at issue, both tests are relevant."). The Court first discusses purposeful direction and

then discusses purposeful availment.

### a.  Purposeful Direction

The purposeful direction test, "often referred to as the 'effects' test, derives from the

United States Supreme Court's opinion in *Calder v. Jones*, 465 U.S. 783 (1984)." *Axiom Foods*,

874 F.3d at 1069. To satisfy the purposeful direction test, "[t]he defendant must have (1)

committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the

defendant knows is likely to be suffered in the forum state." *Id.* (internal quotation marks omitted).

"Failing to sufficiently plead any one of these three elements is fatal to Plaintiff's attempt to show

personal jurisdiction." *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1163 (N.D. Cal. 2014) (citing

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128-29 (9th Cir. 2010). The Court

addresses each element in turn.

### i.  Intentional Act

In the context of the *Calder* test, an intentional act is "an external manifestation of the

actor's intent to perform an actual, physical act in the real world." *A-Z Sporting Goods*, 704 F.3d

at 674; *see Schwarzenegger*, 374 F.3d at 806 (an intentional act "refers to an intent to perform an

17

Case No. 20-CV-03778-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1    actual, physical act in the real world."). Under Ninth Circuit case law, the "threshold of what

2    constitutes an intentional act is relatively low." *AirWair*, 73 F. Supp. 3d at 1233.

3         The Court concludes that Lynwood has plausibly alleged that the International Defendants

4    committed intentional acts in California. First, Lynwood alleges that the International Defendants

5    formed three corporate entities that were headquartered in San Francisco, California. *See* Compl.

6    ¶¶ 63–65 (alleging that NGINX BVI; NGINX Software, Inc.; and NGINX DE are headquartered

7    in San Francisco, California). Forming entities with their headquarters in this district is an

8    intentional act that can support personal jurisdiction. For example, in *Chassin Holdings Corp. v.*

9    *Formula VC Ltd.*, another court in this district concluded that the defendant had committed an

10   intentional act where he "formed three entities . . . and established this District as their principal

11   place of business." Case No. 15-CV-02294-MEJ, 2016 WL 1569986, at *5 (N.D. Cal. Apr. 19,

12   2016). The International Defendants have allegedly taken the exact same actions in the instant

13   case. *See* Compl. ¶¶ 63–65

14         Second, Lynwood alleges that the International Defendants marketed the NGINX

15   Enterprise to, and raised capital from, California investors. *Id.* ¶¶ 66–69 (alleging that e.ventures is

16   based in San Francisco, California; Runa Capital is based in Palo Alto, California; and BV

17   NGINX is based in San Francisco, California); Alexeev Decl. ¶¶ 5, 12 (stating that Alexeev,

18   Sysoev, and Konovalov made presentations to potential investors, including e.ventures, and that

19   Alexeev traveled to California to meet with potential investors). In *Chassin Holdings Corp. v.*

20   *Formula VC Ltd.*, another court in this district concluded that meeting with potential investors is

21   an intentional act that supports personal jurisdiction. 2016 WL 1569986, at *5 (concluding that the

22   defendant had committed an intentional act where the defendant "met with Plaintiff's

23   representatives to discuss a potential investment"). So too here.

24         Third, the International Defendants made trips to California and engaged with NGINX

25   personnel in person and virtually. *See* Sysoev Decl. ¶¶ 10, 12 (stating that Sysoev traveled to

26   California approximately twice a year between August 2011 and June 2019 to meet with NGINX

27

28

investors and personnel); Konovalov Decl ¶ 10 (stating that Konovalov traveled to California approximately twice a year between August 2011 and June 2019 to meet with NGINX personnel); Alexeev Decl. ¶ 12 (stating that Alexeev traveled to California approximately five to eight times a year between mid-2011 and late 2013 to meet with potential investors in NGINX and interview NGINX personnel); Dounin Decl. ¶ 12 (stating that Dounin traveled to California in 2014 and 2015 and communicated with NGINX employees in California a few times per year). Travel into the jurisdiction is a relevant contact that can support personal jurisdiction. *See, e.g.*, *Apple, Inc. v. VoIP-Pal.com, Inc.*, 2020 WL 7319352, at *11 (N.D. Cal. Dec. 11, 2020) (concluding that personal jurisdiction existed where the defendant had traveled into the forum to meet with a representative of plaintiff).

Fourth, the International Defendants engaged a California-based attorney law firm as counsel for NGINX BVI. Compl. ¶ 764; Sysoev Decl. ¶ 15; Konovalov Decl. ¶ 7; Alexeev Decl. ¶ 10. Courts have concluded that hiring an attorney in the forum can support a finding of personal jurisdiction. *See, e.g.*, *VoIP-Pal.com, Inc.*, 2020 WL 7319352, at *11 ("Courts have found that defendants purposefully directed their enforcement activities to the forum state by hiring lawyers from that state to prosecute their infringement actions.").

Fifth, Lynwood alleges that the International Defendants registered five trademarks with the U.S. PTO and maintained those registrations. Compl. ¶¶ 753, 773, 789, 817, 830. Courts have held that a defendant's act of filing a trademark registration is an intentional act that supports personal jurisdiction. *See Alejandro Fernandez Tinto Pesquera, S.I. v. Fernandez Perez*, Case No. 20-CV-02128-LHK, 2021 WL 254193, at *10 (concluding that registering a trademark with the U.S. PTO and maintaining the registration for thirty years constituted an intentional act under the purposeful direction test); *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, Case No. C 12-2582 CW, 2012 WL 2343670, at *11 (N.D. Cal. June 20, 2012) ("Kung's filing a trademark registration application for the word 'UBIQUITI' in the United States . . . is an intentional act of purposeful direction . . . .").

Case No. 20-CV-03778-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

Considering the International Defendants' "entire 'course of dealing,'" including setting up three corporate entities headquartered in San Francisco, soliciting California-based investors, traveling to California, engaging a California-based law firm, and registering five trademarks in the United States, the Court concludes that the Individual Defendants took intentional acts that support the exercise of personal jurisdiction. *Sher v. Johnson*, 911 F.2d 1357, 1363–64 (9th Cir. 1990) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475, 479 (1985)).

### ii. Express Aiming

Lynwood must next demonstrate that the International Defendants' acts were expressly aimed at the forum state. "Express aiming is an ill-defined concept that we have taken to mean 'something more' than 'a foreign act with foreseeable effects in the forum state.'" *Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 577 (9th Cir. 2018) (quoting *Bancroft*, 223 F.3d at 1087). "'[R]andom, fortuitous, or attenuated contacts' are insufficient to create the requisite connection to the forum." *Mitchell v. Berwyn Partners, Inc.*, 2018 WL 3328220, at *5 (N.D. Cal. July 6, 2018) (quoting *Morrill*, 873 F.3d at 1142).

To meet the express aiming requirement, it is not enough that a defendant causes harm to a plaintiff while knowing that the plaintiff resides in the forum. *Walden*, 571 U.S. at 282, 290. Indeed, courts "must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum." *Axiom Foods*, 874 F.3d at 1070 (quoting *Walden*, 571 U.S. at 289). For this reason, "mere injury to a forum resident is not a sufficient connection to the forum." *Walden*, 571 U.S. at 290. "Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Id.*

In the instant case, Lynwood has plausibly alleged that the International Defendants' acts were expressly aimed at the forum state. Lynwood alleges that Sysoev, who wrote the NGINX Software, stated that he wanted "NGINX to be a purely US, Silicon Valley Start-Up with its full potential realized in the US market." Compl. ¶ 249. Moreover, Lynwood alleges that the

20

International Defendants pursued the goal of making NGINX a Silicon Valley-based start-up by establishing the headquarters of the NGINX entities in San Francisco, California; soliciting California-based investors; traveling to California; and engaging a California-based law firm. *See* Section III(A)(1)(a)(i), *supra*. Accordingly, the Court concludes that the International Defendants' acts were expressly aimed at California.

### iii. Foreseeable Harm

The third and final prong of the purposeful direction inquiry is whether the defendant knew the brunt of the harm is likely to be suffered in the forum. *Dole Food Co.*, 303 F.3d at 1111. Foreseeable harm is the third prong of the purposeful direction inquiry. "Harm suffered in the forum state is a necessary element in establishing purposeful direction." *Morrill*, 873 F.3d at 1144. There is foreseeable harm when a jurisdictionally sufficient amount of harm is suffered in the forum state. *Yahoo!*, 433 F.3d at 1207. However, "the 'brunt' of the harm need not be suffered in the forum state." *Id.*

The Court concludes that Lynwood has plausibly alleged that a jurisdictionally sufficient amount of harm was suffered in California. Indeed, the International Defendants allegedly stole the NGINX Enterprise and moved it to California. *See* Section III(A)(1)(a)(i), *supra*. Accordingly, Lynwood has plausibly alleged that a jurisdictionally sufficient amount of harm was suffered in California. Thus, Lynwood can demonstrate purposeful direction in the instant case.

### b. Purposeful Availment

The Court next discusses purposeful availment. The parties dispute whether the International Defendants purposefully availed themselves of the privilege of conducting business in California. *See* Mot. at 16; Opp'n at 21–22. However, "[t]he Court need not resolve this dispute because 'a court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction.'" *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 827 (N.D. Cal.

21

2014) (quoting *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180–81 (9th Cir. 2004)). In the instant case, Lynwood's claims all arise out of a common nucleus of operative facts—the alleged fraudulent scheme to steal the NGINX Enterprise. *See* Compl. ¶¶ 192–388 (alleging a fraudulent scheme to steal the NGINX Enterprise from Rambler). Accordingly, the Court concludes that specific jurisdiction is appropriate over Lynwood's contract claims. *See NetApp*, 41 F. Supp. at 827 (concluding that specific jurisdiction was appropriate over the plaintiff's contract claims where the defendant had purposefully directed his conduct to California and all the claims stemmed from a common nucleus of operative facts). Thus, Lynwood has fulfilled the first prong of the specific jurisdiction test.

### 2. Claim Arising Out of Forum-Related Activities

The second prong of the specific jurisdiction test requires that the plaintiff's claims arise out of defendant's forum-related activities. *Schwarzenegger*, 374 F.3d at 802. To determine whether the plaintiff's claims arise out of the defendant's forum-related activities, courts use a traditional "but for" causation analysis. *Bancroft*, 223 F.3d at 1088.

In the instant case, the Court concludes that Lynwood's claims arise out of the International Defendants' forum-related activities. Indeed, the International Defendants allegedly stole the NGINX Enterprise from Rambler and brought it to California, where they established the headquarters of the NGINX entities, solicited California-based investors, and hired California-based attorneys. *See* Section III(A)(1)(a)(i), *supra*. The instant case arises out of the International Defendants' alleged efforts to steal the NGINX Enterprise from Rambler and establish it as an independent company in California. Thus, Lynwood's claims arise out of the International Defendants' forum-related activities.

### 3. Reasonableness

Once a plaintiff has met its burden on the first two prongs of the specific personal jurisdiction inquiry, the burden shifts to the defendant to show why the exercise of jurisdiction would not be reasonable and fair. *Schwarzenegger*, 374 F.3d at 802. Generally, a defendant must

Case No. 20-CV-03778-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

United States District Court
Northern District of California

"'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King*, 471 U.S. at 476-78).

In analyzing reasonableness, the Ninth Circuit considers seven factors: "(1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Id.* at 1323 (citing *Burger King*, 471 U.S. at 476-77). The Court discusses each of these factors in turn.

### a.  Extent of Purposeful Interjection

With regard to the first factor, "[e]ven if there is sufficient 'interjection' into the state to satisfy the [purposeful direction prong], the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the [reasonableness prong]." *Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981). "The smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise." *Id.*

In the instant case, the International Defendants engaged in several intentional acts in California. Specifically, the International Defendants established the headquarters of three NGINX entities in California, solicited California-based investors, traveled to California and communicated with California-based personnel, and engaged a California-based law firm. *See* Section III(A)(1)(a)(i), *supra*. Accordingly, the Court does not conclude that the extent of purposeful interjection into California is minimal. Thus, the Court concludes that this factor neither weighs for nor against the exercise of jurisdiction.

### b.  Defendant's Burden in Litigating

The second factor, the burden on the defendant, addresses the logistical challenges for a defendant to litigate in the forum state. "The unique burdens placed upon one who must defend

23

oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003) (quoting *Asahi Metal Ind. v. Superior Court*, 480 U.S. 102, 114 (1987)). However, "[m]odern means of communication and transportation have tended to diminish the burden of defense of a lawsuit in a distant forum." *Ins. Co.*, 649 F.2d at 1271.

Litigating the instant case would likely impose a burden on the International Defendants to defend themselves in the United States court system. Indeed, the International Defendants reside in Russia and Germany and do not speak English. Compl. ¶¶ 58–61 (stating that Sysoev, Konovalov, and Dounin reside in Russia); Sysoev Decl. ¶ 17 (stating that Sysoev is a native Russian speaker and would require translation to participate in proceedings in the United States); Konovalov Decl. ¶ 13 (same as to Konovalov); Dounin Decl. ¶ 15 (same as to Dounin); Alexeev Decl. ¶ 16 (same as to Alexeev).

However, the Court concludes that the International Defendants would likely be able to shoulder the burden of litigating in California. Indeed, the International Defendants allegedly established three corporations, two of which were incorporated in Delaware and all of which were headquartered in California. Compl. ¶¶ 66–69. Moreover, the International Defendants filed applications for five trademarks with the U.S. PTO. Compl. ¶¶ 753, 773, 789, 817, 830. Furthermore, the International Defendants allegedly engaged a California-based law firm to assist with the formation of the three corporations, funding documents, due diligence, and registration of the trademarks. *See* Compl. ¶¶ 261, 764; Sysoev Decl. ¶ 15; Konovalov Decl. ¶ 7; Alexeev Decl. ¶ 10. Finally, the International Defendants traveled repeatedly to California. *See* Sysoev Decl. ¶¶ 10, 12 (stating that Sysoev traveled to California approximately twice a year between August 2011 and June 2019 to meet with NGINX investors and personnel); Konovalov Decl ¶ 10 (stating that Konovalov traveled to California approximately twice a year between August 2011 and June 2019 to meet with NGINX personnel); Alexeev Decl. ¶ 12 (stating that Alexeev traveled to California

United States District Court
Northern District of California

Case No. 20-CV-03778-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

1    approximately five to eight times a year between mid-2011 and late 2013 to meet with potential

2    investors in NGINX and interview NGINX personnel); Dounin Decl. ¶ 12 (stating that Dounin

3    traveled to California in 2014 and 2015 and communicated with NGINX employees in California

4    a few times per year).

5            These actions suggest that the International Defendants would be able to litigate the instant

6    case in California. *See Dole Food Co.*, 303 F.3d at 1115 (concluding that, although it would be

7    "expensive and inconvenient" for European defendants to defend themselves in California, the

8    burden was mitigated by the fact that both defendants "have traveled to the United States on

9    several occasions in the past for business"); *Harris Rutsky*, 328 F.3d at 1132–33 (concluding that,

10   although litigating in California "no doubt . . . imposes a burden on [the defendant], it could hardly

11   be overwhelming" because the defendant's associates "frequently travel to California on

12   business"). Thus, the Court concludes that this factor weighs slightly against the exercise of

13   jurisdiction. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1080 (9th Cir. 2011)

14   (concluding that the exercise of jurisdiction was not unreasonable despite the fact that some

15   important witnesses resided outside the forum).

16           **c.   Sovereignty**

17           The third factor, sovereignty, "concerns the extent to which the district court's exercise of

18   jurisdiction in California would conflict with the sovereignty of [Spain], [Defendant's] state of

19   domicile." *Panavision*, 141 F.3d at 1323. "Litigation against an alien defendant creates a higher

20   jurisdictional barrier than litigation against a citizen from a sister state because important

21   sovereignty concerns exist." *Harris Rutsky*, 328 F.3d at 1133 (quoting *Sinatra v. National*

22   *Enquirer*, 854 F.2d 1191, 1199 (9th Cir. 1988)). However, this factor is not controlling. *Id.*

23           In the instant case, the International Defendants are citizens of Russia. Compl. ¶¶ 58–61.

24   However, the International Defendants have not identified any specific ways in which this Court's

25   adjudication of the instant case might conflict with Russian sovereignty or the decision of a

26   Russian court. *See* Mot. at 20. Accordingly, the Court concludes that this factor neither weighs for

27

28

Case No. 20-CV-03778-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

United States District Court
Northern District of California

1   nor against the exercise of jurisdiction. *See Dole Food Co.*, 303 F.3d at 1115 (concluding that

2   "[t]he extent of conflict with a foreign state's interest in adjudicating this suit is unclear," so "this

3   factor only weakly favors defendants if at all); *see also CE Distribution, LLC v. New Sensor*

4   *Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004) (concluding that the sovereignty factor favored the

5   exercise of personal jurisdiction because "[n]othing in the record indicates that litigation of this

6   matter in Arizona would create a conflict with the sovereignty of the State of New York").

7              **d.  Forum State's Interest**

8          Next, the Court considers the forum state's interest in adjudicating the case. *Panavision*,

9   141 F.3d at 1323. As the International Defendants point out, neither Lynwood nor Cyprus are

10  residents of California. Compl. ¶ 56. However, the Court concludes that California has a

11  significant interest in adjudicating the instant case for two reasons.

12         First, the instant case concerns whether the NGINX Enterprise was stolen from Rambler.

13  *Id.* ¶¶ 192–388. Accordingly, the instant case implicates the ownership of the NGINX Enterprise,

14  which allegedly includes three entities with their headquarters in San Francisco, California:

15  NGINX Software, Inc.; NGINX BVI; and NGINX DE. *Id.* ¶¶ 63–65. California has an interest in

16  the ownership of three resident corporations.

17         Second, in the instant case, Lynwood alleges that injury occurred within California, where

18  the International Defendants established three corporations, solicited California-based investors,

19  and allegedly used five trademarks. *See* Section III(A)(1)(a)(iii), *supra*. California has a strong

20  interest in discouraging injuries that occur within the state, including these injuries. *AirWair*, 73 F.

21  Supp. 3d at 1240 (holding that California has a "strong interest in discouraging trademark

22  infringement injuries that occur within the state," even where the plaintiff does not reside in

23  California). Accordingly, the Court holds that this factor weighs in favor of exercising jurisdiction.

24              **e.  Efficient Resolution**

25         The next factor, efficient resolution, "focuses on the location of the evidence and

26  witnesses. It is no longer weighed heavily given the modern advances in communication and

27

28  Case No. 20-CV-03778-LHK
    ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1    transportation." *Panavision*, 141 F.3d at 1324.

2         In the instant case, some key witnesses, including three of the International Defendants,

3    reside in Russia. However, a significant number of key witnesses reside in California or the United

4    States. For example, Smirnoff resides in Los Gatos, California, and Robertson resides in Miami

5    Beach, Florida. Compl. ¶¶ 62, 67. Moreover, the witnesses associated with the Outside Investors

6    are likely located in San Francisco, California, where each of the Outside Investors are

7    headquartered. *Id.* ¶¶ 66–69. Furthermore, the witnesses associated with F5 are likely located in

8    Seattle, Washington, where F5 has its headquarters. *Id.* ¶ 70.

9         As with key witnesses, key evidence is likely split between Russia and California. At its

10   core, the instant case concerns an alleged fraudulent scheme to steal the NGINX enterprise from

11   Rambler and bring it to California. *See id.* ¶¶ 192–388 (alleging a fraudulent scheme to steal the

12   NGINX Enterprise from Rambler). On the one hand, the Team allegedly crafted its fraudulent

13   scheme to steal the NGINX Enterprise while the Disloyal Employees were employed in Russia.

14   On the other hand, the Team allegedly solicited investors in California, incorporated NGINX

15   entities in the United States and headquartered them in California, and filed registrations for five

16   trademarks in the United States. Thus, key evidence in the instant case is likely split between

17   Russia and California. Because some key evidence in the instant case is in Russia, the Court

18   concludes that this factor weighs slightly against the exercise of jurisdiction.

19         **f.   Convenient and Effective Relief for Plaintiff**

20        The next factor requires the Court to consider "the plaintiff's interest in obtaining

21   convenient and effective relief." *Ins. Co.*, 649 F.2d at 1273 (internal quotation marks omitted).

22   However, the Ninth Circuit has cautioned that this factor should not weigh heavily in the analysis.

23   *See Harris Rutsky*, 328 F.3d at 1133; *Panavision*, 141 F.3d at 1324.

24        In the instant case, Lynwood has an interest in obtaining convenient and effective relief in

25   this forum. Although Lynwood is from Cyprus, Lynwood chose to litigate in this forum. Indeed,

26   as Lynwood points out, California is the only forum where many of the defendants, including the

27

28
                                                    27

F5 Entities and the Outside Investors, would be subject to jurisdiction. *See* Compl. ¶¶ 63–69. Accordingly, the Court concludes that this factor weighs in favor of exercising jurisdiction. *See Dole Food Co.*, 303 F.3d at 1116 (concluding that this factor weighed in the plaintiff's favor because, "[i]f California is not a proper forum, then Dole would be required, in all likelihood, to litigate separate suits in at least two different countries, for there does not appear to be any other single forum that could exercise personal jurisdiction over both [defendants]").

### g.  Alternative Forum

Finally, the Court "must determine whether an adequate alternative forum exists." *Harris Rutsky*, 328 F.3d at 1133-34. However, this factor "becomes an issue only when the forum state is shown to be unreasonable." *CollegeSource, Inc.*, 653 F.3d at 1080 (quotation omitted).

In the instant case, the Court cannot conclude that the International Defendants have shown that the forum state is unreasonable. Looking at all the factors, two factors weigh slightly against the exercise of jurisdiction (the defendant's burden in litigating and the efficient resolution), two factors are neutral (the degree of purposeful interjection and sovereignty), and two factors weigh in favor of the exercise of jurisdiction (the plaintiff's interest in obtaining convenient and effective relief and the forum state's interest). Evaluating these factors, the International Defendants have not met their burden to demonstrate that the exercise of jurisdiction would not be reasonable in the instant case. Accordingly, the Court DENIES the International Defendants' motion to dismiss the instant case based on lack of personal jurisdiction.

### B.  Statutes of Limitations

The Individual Defendants contend that Lynwood's claims are barred by the statutes of limitations. Because Lynwood's claims stem from the alleged theft of the NGINX Enterprise from Rambler in 2011, the Court agrees with the Individual Defendants that Lynwood's claims are barred by the statutes of limitations.

"A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the

28

1   complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir.

2   2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). "[A]

3   complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of

4   facts that would establish the timeliness of the claim." *Id.* (quoting *Supermail Cargo, Inc. v.

5   United States*, 68 F.3d 1204, 1206 (9th Cir. 1995)).

6        Each of Lynwood's claims has a limitations period of between two and four years. *See* 17

7   U.S.C. § 507(b) (stating that copyright infringement actions must be filed "within three years after

8   the claim accrued"); Cal. Civ. Proc. Code § 337(1) (setting a four year statute of limitations for

9   breach of written contract); Cal. Civ. Proc. Code § 343 (setting a four year statute of limitations

10  for breach of fiduciary duty); *DC Comics v. Pac. Pictures Corp.*, 938 F. Supp. 3d 941, 948 (C.D.

11  Cal. 2013) ("The statute of limitations for tortious interference with contract in California is two

12  years") (citing Cal. Civ. Proc. Code  § 339(1)); *Wild Rivers Waterpark Mgmt. LLC v. Katy WP

13  Grp.*, LLC, 2019 WL 6998669, at *8 (C.D. Cal. Feb. 29,  2019) ("The statute of limitations for

14  intentional interference with prospective economic advantage is two years . . . .") (citing Cal. Civ.

15  Proc. Code  § 339(1)); *Kline v. Turner*, 87 Cal. App. 1369, 1373–74 (2001) ("An action for relief

16  on the grounds of fraud or mistake must be commenced within three years.") (citing Cal. Civ.

17  Proc. Code § 338(d)).[1]

---

[1] The parties agree that California law and federal law, not Russian law, supply the statutes of limitations in the instant case. Mot. at 4; Opp'n at 3. The Court agrees. "In a federal question action where the federal court is exercising supplemental jurisdiction over state claims, the federal court applies the choice-of-law rules of the forum state." *Paracor Fin., Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996). California uses the "governmental interest" framework to resolve choice of law issues. *Kearney v. Salomen Smith Barney, Inc.*, 39 Cal. 4th 95, 107 (2006). "Where the conflict concerns a statute of limitations, the governmental interest approach generally leads California courts to apply California law." *Deutsch v. Turner Corp.*, 324 F.3d 692, 716 (9th Cir. 2003). This is "especially so where California's statute would bar a claim." *Id.* Accordingly, the Court applies California law and federal law to determine the statutes of limitations in the instant case. However, even under Russian law, Lynwood's claims would be untimely. *See* Muranov Decl. ¶¶ 90, 94, 116 (conclusion of Russian law expert that Lynwood's claims would be untimely under Russian law, which imposes a three year statute of limitations for general civil claims and a one year statute of limitations for employment claims).

Case No. 20-CV-03778-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

1    Lynwood filed its complaint on June 8, 2020. Compl. However, Lynwood's claims stem

2    from the alleged theft of the NGINX Enterprise from Rambler in 2011, nearly a decade before

3    Lynwood filed its complaint. *See* Section I, *supra;* Compl. ¶¶ 192–388 (alleging a fraudulent

4    scheme to steal the NGINX Enterprise from Rambler). Accordingly, Lynwood's claims are

5    untimely.

6    Lynwood contends that its claims are timely for four reasons. First, Lynwood argues that

7    the statutes of limitations started to run when the merger between F5 and NGINX closed in 2019

8    because the merger was the last overt act in furtherance of the alleged conspiracy. Second,

9    Lynwood contends that the 2019 merger started the running of the statutes of limitations because

10   Defendants were engaged in a series of continuing wrongs, the last of which was the merger.

11   Third, Lynwood argues that the statutes of limitations were tolled by the fraudulent concealment

12   doctrine. Finally, Lynwood contends that the statutes of limitations were tolled by the delayed

13   discovery doctrine. The Court addresses each argument in turn.

14   **1. Last Overt Act**

15   "When a civil conspiracy is properly alleged and proved, the statute of limitations does not

16   begin to run on any part of a plaintiff's claims until the last overt act pursuant to the conspiracy

17   has been completed." *Wyatt v. Union Mortg. Co.*, 24 Cal. 3d 773, 786 (1979). "For an act to be an

18   overt act delaying the commencement of the limitations period, it must be performed in

19   furtherance of the conspiracy." *Risk v. Kingdom of Norway*, 707 F. Supp. 1159 (N.D. Cal. 1989).

20   However, California law distinguishes between "acts which are properly classifiable as 'overt

21   acts' in furtherance of the conspiracy" and "activities of conspirators . . . which may evidence the

22   prior conspiracy." *Livett v. F.C. Financial Assoc.*, 124 Cal. App. 3d 413, 419 (1981).

23   Lynwood argues that the statutes of limitations started to run when the merger closed in

24   2019 because the merger was the last overt act in furtherance of the conspiracy. Opp'n at 4–5.

25   However, Lynwood's argument is unpersuasive. Lynwood has not plausibly alleged a large,

26   decades-long conspiracy whose object was to sell off the NGINX Enterprise to a third party.

27

28

Case No. 20-CV-03778-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

Rather, the primary object of the alleged conspiracy was to steal the NGINX Enterprise from Rambler, which was completed when the NGINX Enterprise was incorporated separately in 2011. *See* Compl. ¶ 536 (alleging that NGINX Software, Inc., NGINX BVI, NGINX DE, and BV NGINX were incorporated in 2011). Accordingly, the Court is not persuaded that the 2019 merger between NGINX and F5, which occurred nearly a decade after the NGINX Enterprise was allegedly stolen, was the overt act in furtherance of the conspiracy.

### 2.   Continuing Wrongs

"The continuing violation doctrine aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them." *Aryeh v. Canon Business Solutions, Inc.*, 55 Cal. 4th 1185, 1192 (2013).

Lynwood contends that the 2019 merger started the running of the statutes of limitations because Defendants were engaged in a series of continuing wrongs, and the last of those continuing wrongs was the 2019 merger. Opp'n at 5. However, Lynwood's argument is unpersuasive because Lynwood does not plausibly allege that Defendants engaged in a series of continuing wrongs for nearly two decades—from the time that Sysoev wrote the first line of the NGINX Software in 2001 until the F5 merger in 2019. Indeed, Lynwood does not explain why the series of continuing wrongs was not complete in 2011, when the NGINX Enterprise was allegedly stolen from Rambler. *See* Compl. ¶ 536 (alleging that NGINX Software, Inc., NGINX BVI, NGINX DE, and BV NGINX were incorporated in 2011). Thus, the Court is not persuaded that the 2019 merger, which occurred nearly a decade after the NGINX Enterprise was allegedly stolen, was the last of a series of continuing wrongs.

### 3.   Fraudulent Concealment

"The purpose of the fraudulent concealment doctrine is to prevent a defendant from 'concealing a fraud . . . until such a time as the party committing the fraud could plead the statute of limitations to protect it.'" *In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1194

31

(N.D. Cal. 2015) (quoting *Bailey v. Glover*, 88 U.S. (21 Wall) 342, 349 (1874)) [hereinafter "*In re Animation Workers*"]. "A statute of limitations may be tolled if the defendant fraudulently concealed the existence of a cause of action in such a way that the plaintiff, acting as a reasonable person, did not know of its existence." *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012). The plaintiff bears the burden of pleading fraudulent concealment. *In re Animation Workers*, 123 F. Supp. 3d at 1194. "Moreover, allegations of fraudulent concealment must be pled with particularity." *Id.* (citing *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 502 (9th Cir. 1988)); *see* Section III(B), *infra* (outlining heightened pleading standard for allegations of fraud). "However, 'it is generally inappropriate to resolve the fact-intensive allegations of fraudulent concealment at the motion to dismiss stage.'" *Id.* (quoting *In re Rubber Chemicals Antitrust Litig.*, 504 F. Supp. 2d 777, 789 (N.D. Cal. 2007)).

Lynwood contends that the statutes of limitations were tolled by the fraudulent concealment doctrine. Opp'n at 6–7. "To plead fraudulent concealment, the plaintiff must allege that: (1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have 'actual or constructive knowledge of the facts giving rise to its claim'; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim." *Id.* (quoting *Hexcel*, 681 F.3d at 1060). The Court addresses each requirement in turn.

### a. Affirmative Acts

"The Ninth Circuit and other courts in this District have consistently required that a plaintiff allege 'affirmative acts' of concealment." *In re Animation Workers*, 123 F. Supp. 3d at 1197. "These acts must be 'affirmative steps to mislead' that are more than mere 'passive[] conceal[ment].'" *Id.* (quoting *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1416 (9th Cir. 1987)). However, "silence may be sufficient to show fraudulent concealment where there is an affirmative duty to disclose, e.g., a fiduciary duty." *Id.* at 1198 n. 13.

In the instant case, Lynwood contends that it has alleged affirmative acts based on its allegations that the defendants made false statements and destroyed evidence. Opp'n at 7.

32

United States District Court
Northern District of California

However, as the Court explained at greater length in its Order on the F5 Entities and Outside Investors' motions to dismiss, ECF No. 134 at 22–25, Lynwood has failed to plead its allegations with the particularity required by Rule 9(b). The Court comes to this conclusion for two reasons. First, Lynwood does not plead the alleged false statements with particularity because Lynwood does not provide the time, place, speaker, and specific content of the alleged false statements. *See, e.g.*, Compl. ¶ 289 ("Even though Konovalov and the rest of the Disloyal Employees were fixated on misappropriating the NGINX Enterprise, which they viewed as a highly valuable business," the Disloyal Employees allegedly misrepresented to Rambler that the NGINX Enterprise was worthless); *see Swartz*, 476 F.3d at 764 (holding that Rule 9(b) requires the plaintiff to provide "the time, place, and specific content of the false representations"). Second, Lynwood does not plead the alleged destruction and theft of evidence with particularity because Lynwood does not state who was responsible for the alleged destruction and theft of evidence, what actions were taken, what evidence was stolen or destroyed, and when the evidence was stolen or destroyed. *See, e.g.*, Compl. ¶¶ 297–99 (alleging that "all of Konovalov's emails related to NGINX's formation were deleted," "[t]he vast majority of Sysoev's email folders were deleted," and "[t]he vast majority of Smirnoff's emails were deleted")*; see Vess*, 317 F.3d at 1106 ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.") (quoting *Cooper*, 137 F.3d at 627). Because Lynwood has not pled its affirmative acts with particularity, Lynwood has not alleged affirmative acts that support the application of the fraudulent concealment doctrine.

### b. Actual or Constructive Knowledge

The plaintiff must also allege that the plaintiff did not have "actual or constructive knowledge of the facts giving rise to its claim." *In re Animation Workers*, 123 F. Supp. 3d at 1205 (quoting *Hexcel*, 681 F.3d at 1060)."[T]he question of constructive knowledge and inquiry notice generally 'presents a question for the trier of fact.'" *Id.* at 1205.

In the instant case, Lynwood has not plausibly alleged that it did not have actual or

United States District Court
Northern District of California

1    constructive notice of the facts giving rise to its claim. Lynwood alleges that Rambler was

2    unaware of the existence and value of the NGINX Enterprise. *See, e.g.*, *id*. ¶ 35 ("Rambler could

3    have incubated the NGINX Enterprise if only the conspirators had informed Rambler of its

4    existence").

5          However, the Complaint's allegations support the conclusion that, as early as 2001,

6    Rambler was aware of the value of the NGINX Enterprise. Indeed, Lynwood alleges that, as of

7    2001, "[o]ne of Sysoev's primary employment responsibilities as a Rambler employee was to

8    develop the NGINX Software as a key component of Rambler infrastructure." *Id*. ¶ 175. Rambler

9    was the largest technology company and search engine in Russia at the time of Sysoev's

10   employment. *Id*. ¶ 80. Moreover, Lynwood alleges that, during Sysoev's employment at Rambler,

11   "Rambler paid Sysoev regular outsized bonuses on either a quarterly or semi-annual basis in

12   recognition of his work in developing the NGINX Software for Rambler and the software code's

13   utility in solving the company's various issues at that time." *Id*. ¶ 101. Furthermore, Sysoev's

14   work on NGINX allegedly made Sysoev into "a worldwide technology celebrity." *Id*. ¶ 25. These

15   facts suggest that Rambler recognized the value of the NGINX Software nearly two decades

16   before Lynwood filed the instant case.

17         Second, Lynwood alleges that Rambler was not aware that Sysoev, Konovalov, and the

18   Team would exercise ownership rights over NGINX. However, the Complaint's allegations

19   support the conclusion that, as of 2011, Rambler was aware that Sysoev, Konovalov, and the

20   Team would exercise ownership rights over NGINX. Indeed, in 2011, the Team formed NGINX

21   Software, Inc.; NGINX BVI; and NGINX DE through public filings. *Id*. ¶ 273. The Team also

22   registered five trademarks. Furthermore, Konovalov and Sysoev separated from Rambler in 2011.

23   *Id*. ¶¶ 211, 276. When they separated, both Konovalov and Sysoev announced an intention to

24   separate "to form a new company." *Id*. ¶ 281. "On July 18, 2011, Sysoev announced to his list

25   service recipients that he was going to 'establish nginx as a company to fully dedicate [himself] to

26   the [nginx] project.'" *Id*. ¶ 276. Moreover, between 2013 and 2019, the F5 Entities have

27

28

34

introduced 20 or more versions of NGINX Plus. *Id.* ¶ 717. These facts demonstrate that, far from flying under the radar, the NGINX Enterprise was operating in Rambler's plain sight. Accordingly, Rambler was on notice in 2011, nearly a decade before Lynwood filed the instant case, that Sysoev, Konovalov, and the Team would exercise ownership rights over NGINX.

Furthermore, the Assignment Agreement between Rambler and Lynwood demonstrates that Rambler was on notice of these claims. On January 15, 2015, more than five years before Lynwood filed the instant case, Rambler and Lynwood entered into an Assignment Agreement, "which assigned Rambler's employment and intellectual property rights to Lynwood for enforcement in the event Sysoev or Konovalov would ever claim an ownership right to the NGINX Software or had previously engaged in any illicit or wrongful conduct . . . as it concerned Rambler and its proprietary information and products." Compl. ¶ 471. This Assignment Agreement demonstrates that Lynwood was on notice that Sysoev and Konovalov might claim an ownership right to the NGINX Software and might have engaged in wrongful conduct with respect to Rambler. *Id.* Otherwise, there would have been no reason for Lynwood and Rambler to execute the assignment. Thus, Lynwood cannot plausibly allege that it did not have "actual or constructive knowledge of the facts giving rise to its claim." *In re Animation Workers*, 123 F. Supp. 3d at 1205 (quoting *Hexcel*, 681 F.3d at 1060).

### c.  Diligence

Lastly, the plaintiff must also demonstrate that the plaintiff diligently pursued the facts giving rise to the cause of action. "Where a plaintiff's suspicions have been or should have been excited, there can be no fraudulent concealment where he [or she] 'could have then confirmed his [or her] earlier suspicion by a diligent pursuit of further information." *In re Animation Workers*, 123 F. Supp. 3d at 1205 (quoting *Conmar*, 858 F.2d at 504).

As explained above, Rambler's and Lynwood's suspicions should have been excited long before the filing of the instant case. Indeed, as early as 2001, Rambler was aware of the value of the NGINX Software because Rambler had assigned Sysoev the responsibility to develop the

Case No. 20-CV-03778-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1    NGINX Software. Compl. ¶ 175. Moreover, as of 2011, the NGINX Enterprise was incorporated

2    through public filings and became the owner of five trademarks. *Id*. ¶ 273. That same year,

3    Konovalov and Sysoev separated from Rambler and announced an intention to separate "to form a

4    new company." *Id*. ¶ 281. Rambler then assigned its employment and intellectual property rights

5    with respect to the NGINX Enterprise to Lynwood pursuant to a January 15, 2015 Assignment

6    Agreement. Compl. ¶ 471. Based on these circumstances, Rambler and Lynwood should have

7    acted diligently in investigating whether there was a cause of action. However, rather than

8    investigating, Rambler and Lynwood waited until 2019, after F5 purchased the NGINX Enterprise

9    for $670 million and when Korotkov, the whistleblower, approached Rambler. There is no excuse

10   for Rambler's and Lynwood's delay. Accordingly, Lynwood cannot show that it diligently

11   pursued its rights. In sum, Lynwood cannot meet any of the three requirements for application of

12   the fraudulent concealment doctrine.

13        **4.  Delayed Discovery**

14        "Under California law, the discovery rule may postpone accrual of an applicable statute of

15   limitations until a party either (1) actually discovered his injury or (2) could have discovered the

16   injury and cause through the exercise of reasonable diligence." *H.B. Filmes, Ltd. v. CBS, Inc.*, 98

17   F. App'x 596, 598 (9th Cir. 2004). Similarly, federal law provides that "a limitations period begins

18   to run when the plaintiff knows or has reason to know of the injury which is the basis of the

19   action." *Lyons v. Michael & Assoc.*, 824 F.3d 1169, 1170 (9th Cir. 2016).

20        Lynwood argues that the statutes of limitations were tolled by the delayed discovery

21   doctrine. Opp'n at 7–8. However, as explained above, Lynwood has not plausibly alleged that it

22   did not have notice of the injury which gives rise to the causes of action in the instant case. *See*

23   Section III(B)(3), *supra*. Accordingly, Lynwood's reliance on the delayed discovery doctrine is

24   misplaced. Thus, the Court GRANTS the instant motion to dismiss Lynwood's claims because

25   they are barred by the statutes of limitations. The Court does so with leave to amend because

26   amendment would not be futile, unduly prejudice the opposing parties, or cause undue delay, and

27

28   Case No. 20-CV-03778-LHK
     ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1    Lynwood has not acted in bad faith. *See Leadsinger*, 512 F.3d at 532.

2    **IV. CONCLUSION**

3         For the foregoing reasons, the Court GRANTS the Individual Defendants' motion to

4    dismiss with leave to amend. Lynwood shall file any amended complaint within 30 days of this

5    Order. Failure to do so, or failure to cure deficiencies identified in this Order, the Court's Order on

6    the F5 Entities' and Outside Investors' motions to dismiss, the instant motion to dismiss, or the F5

7    Entities' and Outside Investors' motions to dismiss, will result in dismissal of the deficient claims

8    with prejudice. Lynwood may not add new causes of action or add new parties without stipulation

9    or leave of the Court. Lynwood is directed to file a redlined complaint comparing the complaint to

10   any amended complaint as an attachment to Lynwood's amended complaint.

11   **IT IS SO ORDERED.**

12

13   Dated: March 30, 2021

14                                                      *Lucy H. Koh*
                                                        _____
15                                                      LUCY H. KOH
                                                        United States District Judge
16