1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6        FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    LYNWOOD INVESTMENTS CY                  Case No.  20-cv-03778-MMC
     LIMITED,
9                                            **ORDER GRANTING MOTION TO**
                 Plaintiff,                  **DISMISS**
10
            v.                               Re: Dkt. No. 144
11
     MAXIM KONOVALOV, et al.,
12
                 Defendants.
13

14        Before the Court is defendants Maxim Konovalov ("Konovalov"), Igor Sysoev

15   ("Sysoev"), Andrey Alexeev ("Alexeev"), Maxim Dounin ("Dounin"), Gleb Smirnoff

16   ("Smirnoff"), Angus Robertson ("Robertson"), NGINX, Inc. (BVI) ("NGINX BVI"), NGINX

17   Software, Inc., BV NGINX, LLC ("BV NGINX"), Runa Capital, Inc. ("Runa Capital"),

18   E.venture Capital Partners II, LLC ("E. Ventures"), and F5 Networks, Inc. ("F5")'s

19   Consolidated Motion, filed May 27, 2021, "to Dismiss Plaintiff's Amended Complaint"

20   ("AC").  Plaintiff, Lynwood Investments CY Limited ("Lynwood"), has filed opposition, to

21   which defendants have replied.  The Court, having considered the papers filed in support

22   of and in opposition to the motion, rules as follows.

**I.  BACKGROUND**

24        Lynwood alleges it is a "Cyprus limited liability company . . . prosecuting this action

25   in its capacity as the assignee of all rights and interests" of Rambler Internet Holding LLC

26   ("Rambler"), "one of the largest media companies and web portals in Russia."  (See AC

27   ¶¶ 73-74, 97.)  Lynwood further alleges Sysoev was "a programming talent at Rambler"

28   who, in order to "solve Rambler-specific issues related to handling large volumes of web

United States District Court
Northern District of California

server traffic," developed "the popular web server software[1] that has become known worldwide as Open Source NGINX."  (See AC ¶¶ 23-24.)  In particular, Lynwood alleges "Sysoev wrote his first line of NGINX-related software code" on October 23, 2001 (see AC ¶ 23), and then spent "nine years of his Rambler employment working primarily on Open Source NGINX" (see AC ¶ 195).

According to Lynwood, although "Sysoev first publicly released . . . Open Source NGINX in 2004, without authorization from Rambler," Rambler "made a business decision to permit Sysoev to continue releasing Open Source NGINX . . . because such releases highlighted the technical achievements of Rambler and its employee Sysoev, which inured to Rambler's benefit for attracting top software programmers."  (See AC ¶¶ 34, 210.)  Lynwood further alleges Rambler's Chief Technology Officer ("CTO"), Konovalov, "repeatedly misrepresented to [Rambler] that Open Source NGINX had no independent commercial value or prospects for monetization" (see AC ¶ 17) and "that its only use for Rambler was to solve Rambler's internal technical issues . . . and to burnish Rambler's reputation as a worldwide leader in technology innovation" (see AC ¶ 16).  As a result, Lynwood alleges, "Rambler never undertook efforts to monetize or commercialize Open Source NGINX" (see AC ¶ 319) and "did not object to Konovalov and Sysoev earning an income off of Open Source NGINX" when they later separated from Rambler in 2011 (see AC ¶ 324).

Allegedly unbeknownst to Rambler, however, Sysoev and eight other Rambler software programmers, while "work[ing] together in a tight-knit department devoted to product development within Rambler known as the Network Operation Center ('NOC') that was ring-fenced from the rest of the company" and overseen by Konovalov, along with Popov, Rambler's Deputy Chief Technology Officer, and Smirnoff, Head of the NOC Department (see AC ¶¶ 10-11), were "secretly develop[ing] proprietary, commercial

---

United States District Court
Northern District of California

[1] As explained by Lynwood, "web server software" is a type of software that analyzes requests to visit "a given web address" and "then 'serves' the requested web page back to the visitor."  (See AC ¶ 175.)

2

versions of NGINX software code," which they called "NGINX Plus" (see AC ¶¶ 15, 215).

Lynwood alleges that, at some point in time, Konovalov, Sysoev, and Smirnoff (collectively, the "Disloyal Employees"), along with their "third-party acquaintances" Alexeev and Dounin (all five, collectively, the "Team") (see AC ¶ 99) "agreed that together they would start their own company in San Francisco, California[,] to commercialize Open Source NGINX by commercializing NGINX Plus and other proprietary Open Source NGINX extensions, and then achieve their multimillion dollar 'exit' or 'payday' by selling the entire NGINX Enterprise[2] to a large U.S. technology company" (see AC ¶ 214).  Lynwood alleges that, in connection therewith, the Disloyal Employees "orchestrated their resignations from Rambler" (see AC ¶¶ 25, 160), and that, "by early April, 2011, when Konovalov and Sysoev were still employed by Rambler," the Team secured "venture funding" from Runa Capital and E. Ventures (see AC ¶ 20), then formed "NGINX Software, Inc. on May 4, 2011[,] NGINX BVI on July 6, 2011[,] and NGINX DE in August 2011" (see AC ¶ 550), and thereafter "achieved the ultimate object of their conspiracy when they sold Rambler's NGINX Enterprise to F5 through [a] [m]erger [with NGINX BVI] for $670 million" (see AC ¶ 568), which merger agreement "closed on May 8, 2019" (see AC ¶ 217).  Lynwood alleges Robertson, who had "joined NGINX [Software, Inc.] as CEO in 2012" (see AC ¶ 84), "joined F5 as a result of the merger between F5 and NGINX BVI" (hereinafter, "2019 Merger") (see AC ¶ 365).

Based on the above allegations, Lynwood in its AC, asserts twenty-five claims, sixteen of which have been stayed by prior order,[3] leaving the following nine claims

---

[2] As alleged in the AC, the "NGINX Enterprise" comprises "the purloined NGINX-related business opportunities and enterprise, proprietary NGINX software (including NGINX Plus), Open Source NGINX, and related intellectual property and goodwill."  (See AC ¶ 19.)

[3] By order filed October 1, 2020, the Honorable Lucy H. Koh, to whom the above-titled action previously was assigned, ordered Lynwood to select from the initial Complaint, filed June 8, 2020, ten claims to litigate through trial, and stayed the remaining claims pending resolution of the ten selected claims.  (See Order re: Case Narrowing, Dkt. No. 107.)  In its AC, Lynwood does not re-assert one of the ten selected claims, namely, the initial Complaint's First Claim for Relief, titled "Civil Conspiracy Among the Team, Robertson, Runa Capital, E. Ventures, NGINX BVI, NGINX DE,

United States District Court
Northern District of California

subject to challenge by the instant motion: (1) First Claim for Relief, titled "Breach of Employment Obligations Owed by Konovalov to Rambler," (2) Second Claim for Relief, titled "Breach of Employment Obligations Owed by Sysoev to Rambler," (3) Fourth Claim for Relief, titled "Breach of Konovalov's Duty to Act Fairly and Honestly With Rambler," (4) Seventh Claim for Relief, titled "Aiding and Abetting by Runa Capital and E. Ventures of the Disloyal Employees' Fraud and Breaches of Their Duties of Honesty and Loyalty to Rambler," (5) Eighth Claim for Relief, titled "Aiding and Abetting by F5 of the Disloyal Employees' Fraud and Breaches of Their Duties of Honesty and Loyalty to Rambler," (6)

---

NGINX Software, Inc., and BV NGINX." (See Compl., Dkt. No. 1.)  The following sixteen claims, as now listed in the AC, have been stayed: (1) Third Claim for Relief, titled "Breach of Employment Obligations Owed by Smirnoff to Rambler," (2) Fifth Claim for Relief, titled "Breach of the Duty to Act Fairly and Honestly With Rambler As To Sysoev and Smirnoff," (3) Sixth Claim for Relief, titled "Aiding and Abetting by Alexeev and Dounin of the Disloyal Employees' Breaches of Their Duties of Honesty and Loyalty to Rambler," (4) Tenth Claim for Relief, titled "Tortious Interference with Contract Against Runa Capital and E. Ventures," (5) Eleventh Claim for Relief, titled "Tortious Interference with Contract Against F5," (6) Fifteenth Claim for Relief, titled "Berne Convention for the Protection of Literary and Artistic Works and the Copyright Act (17 U.S.C. § 101, et seq.) based on Contributory Copyright Infringement Against Defendants Runa Capital and E. Ventures," (7) Sixteenth Claim for Relief, titled "Berne Convention for the Protection of Literary and Artistic Works and the Copyright Act (17 U.S.C. § 101, et seq.) based on Vicarious Copyright Infringement Against Defendants NGINX BVI, NGINX Software, Inc. and F5," (8) Seventeenth Claim for Relief, titled "Cancellation of NGINX Trademark Registration, U.S. Reg. No. 4,196,757, and Payment of Damages for Fraud, 15 U.S.C. §§ 1064, 1119, 1120, as to NGINX Software, Inc. and F5," (9) Eighteenth Claim for Relief, titled "Cancellation of NGINX (Stylized) Trademark Registration, U.S. Reg. No. 4,200,791 and Payment of Damages for Fraud, 15 U.S.C. §§ 1064, 1119, 1120 as to NGINX Software, Inc. and F5," (10) Nineteenth Claim for Relief, titled "Cancellation of NGINX PLUS Trademark Registration, U.S. Reg. No. 4,837,175 and Payment of Damages for Fraud, 15 U.S.C. §§ 1064, 1119, 1120 as to NGINX DE, NGINX BVI and F5," (11) Twentieth Claim for Relief, titled "Cancellation of NGINX Trademark Registration, U.S. Reg. No. 5,973,515 and Payment of Damages for Fraud, 15 U.S.C. §§ 1064, 1119, 1120 as to NGINX BVI and F5," (12) Twenty-First Claim for Relief, titled "Cancellation of NGINX CONTROLLER Trademark Registration, U.S. Reg. No. 5,973,527 and Payment of Damages, 15 U.S.C. §§ 1064, 1119, 1120, as to NGINX BVI and F5," (13) Twenty-Second Claim for Relief, titled "Cancellation of NGINX UNIT Trademark Registration, U.S. Reg. No. 5,978,630 and Payment of Damages for Fraud, 15 U.S.C. §§ 1064, 1119, 1120 as to NGINX BVI and F5," (14) Twenty-Third Claim for Relief, titled "False Advertising, 15 U.S.C. § 1125(a)(1)(B) as to All Defendants," (15) Twenty-Fourth Claim for Relief, titled "Infringement of the NGINX, NGINX (Stylized) and NGINX PLUS Trademarks, 15 U.S.C. §§ 1125(a)(1)(A) as to All Defendants," and (16) Twenty-Fifth Claim for Relief, titled "Unjust Enrichment as to All Defendants." (See Pl. Lynwood Invest. CY Limited's Submission in Compliance with Order re: Case Narrowing, Dkt. No. 110.)

1  Ninth Claim for Relief, titled "Tortious Interference with Contract Against Konovalov,

2  Robertson, NGINX Software, Inc., NGINX BVI, and NGINX DE," (7) Twelfth Claim for

3  Relief, titled "Tortious Interference with Prospective Business Advantage Against All

4  Defendants," (8) Thirteenth Claim for Relief, titled "Fraud Against the Disloyal Employees,

5  NGINX Software, Inc., NGINX DE and NGINX BVI," and (9) Fourteenth Claim for Relief,

6  titled "Berne Convention for the Protection of Literary and Artistic Works and the

7  Copyright Act (17 U.S.C. § 101, et seq.) based on Direct Copyright Infringement Against

8  Defendants Konovalov, Sysoev, Alexeev, Dounin, Smirnoff, NGINX BVI, NGINX

9  Software, Inc., NGINX DE, Robertson and F5."

10  **II. LEGAL STANDARD**

11       Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be

12  based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

13  under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696,

14  699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of

15  the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v.

16  Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a

17  complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

18  allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his

19  entitlement to relief requires more than labels and conclusions, and a formulaic recitation

20  of the elements of a cause of action will not do." See id. (internal quotation, citation, and

21  alteration omitted).

22       In analyzing a motion to dismiss, a district court must accept as true all material

23  allegations in the complaint and construe them in the light most favorable to the

24  nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To

25  survive a motion to dismiss, a complaint must contain sufficient factual material, accepted

26  as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S.

27  662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be

28  enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555.

United States District Court
Northern District of California

Courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

## III.  DISCUSSION

By the instant motion, defendants seek an order dismissing, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, each of the nine non-stayed claims.  In support thereof, defendants argue "Lynwood's amended claims remain barred by the applicable statutes of limitations," "still fail to satisfy Rule 9(b)'s heightened pleading requirements," and "also fail[] to state a claim against defendants."  (See Defs.' Mot. at 2-3.)  As set forth below, the Court finds Lynwood's claims are either barred by the applicable statutes of limitations or fail to state a claim, or both, and does not address herein defendants' remaining argument.

### A.  Time-Barred

#### 1.  Statutes of Limitations[4]

"A plaintiff must bring a cause of action within the limitations period after accrual of the cause of action."  See River Colony Ests. Gen. P'ship v. Bayview Fin. Trading Grp., Inc., 287 F. Supp. 2d 1213, 1221 (S.D. Cal. 2003).  Generally, a cause of action accrues at "the time when, under the substantive law, the wrongful act is done, or the wrongful result occurs, and the consequent liability arises."  See Norgart v. Upjohn Co., 21 Cal. 4th 383, 397 (1999) (internal quotation, citation, and alteration omitted).  In other words, the statute of limitations typically begins to run "when the cause of action is complete with all of its elements."  See id.

"A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when the running of the statute is apparent on the face of the complaint," see Von Saher v. Norton Simon Museum of Art at Pasadena,

---

[4] As noted in a prior order filed March 30, 2021, "[t]he parties agree that California law and U.S. federal law, not Russian law, supply the statutes of limitations in the instant case."  (See Order Granting Mot. to Dismiss with Leave to Amend ("March 30 Order") at 29:20, Dkt. No. 135.)

United States District Court
Northern District of California

592 F.3d 954, 969 (9th Cir. 2010) (internal quotation and citation omitted), only if "it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim," see Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1207 (9th Cir. 1995).

As noted, Lynwood filed the instant action on June 8, 2020.

### a. First and Second Claims for Relief – Breach of Employment Obligations Owed to Rambler

In its First Claim for Relief, Lynwood alleges Konovalov "breached his [contractual] obligations to Rambler under the Konovalov Employment Agreement, the Rambler Code of Ethics, [and] the Rambler Regulations" by "lying to Rambler about the value and utility of Open Source NGINX . . . [,] by concealing from Rambler the Team's scheme to steal and then sell the NGINX Enterprise . . . [,] by encouraging, assisting, and persuading Sysoev and Smirnoff to breach their obligations to Rambler . . . [,] by failing to protect Rambler's rights in the various intellectual property associated with Rambler's NGINX Enterprise," and "by selling Rambler's NGINX Enterprise for his own ill-gotten profits at the exclusion of Rambler."  (See AC ¶¶ 576-80.)[5]

In its Second Claim for Relief, Lynwood alleges Sysoev, by the same above-referenced acts, "breached his [contractual] obligations to Rambler under the Sysoev Employment Agreement, Sysoev Separation Agreement, the Rambler Code of Ethics, the Rambler Regulations."  (See AC ¶¶ 587-91.)[6]

The statute of limitations for breach of contract is four years, see Cal. Civ. Proc. Code § 337, and, a cause of action for breach of contract "generally accrues at the time

---

[5] Lynwood does not allege the specific contractual provisions assertedly breached by the above-referenced conduct.  Rather, Lynwood alleges Konovalov "owed Rambler duties of loyalty and honesty" (see AC ¶ 574), possibly relying on a provision in the Rambler Code of Ethics that "Management must conduct themselves honestly and ethically" (see AC ¶ 109) and its allegation that Konovalov, as CTO, was "part of Management" and signed a copy of the Code of Ethics (see AC ¶ 107).

[6] Lynwood does not, however, allege Sysoev was "part of Management" or that he signed a copy of the Code of Ethics.

United States District Court
Northern District of California

1    of the breach, regardless of whether any damage is apparent or whether the injured party

2    is aware of its right to sue," see Intermedics, Inc. v. Ventritex, Inc., 775 F. Supp. 1258,

3    1266 (N.D. Cal. 1991).  As alleged in the AC, Konovalov and Sysoev breached their

4    contractual obligations "[b]y early 2010," when "execution of [their] covert scheme was

5    well underway" (see AC ¶ 43), or, at the latest, in 2011, when they incorporated entities

6    from which they sold the NGINX Enterprise.

7        Accordingly, in the absence of an exception, the First and Second Claims for

8    Relief are barred by the applicable statute of limitations.

9        **b.  Fourth Claim for Relief – Breach of Konovalov's Duty to Act
          Fairly and Honestly with Rambler**

10

11       In its Fourth Claim for Relief, Lynwood alleges Konovalov, "by virtue of his senior

12   management position as CTO of Rambler," owed Rambler "a heightened duty under . . .

13   Articles 53.1 and 53.3 of the Russian Civil Code . . . to act fairly and honestly vis-à-vis

14   Rambler and refrain from misappropriating corporate opportunities and assets such as

15   the NGINX Enterprise and to disclose any harmful actions he undertook to the detriment

16   of Rambler."  (See AC ¶¶ 605-06.)  Lynwood alleges Konovalov "breached his duties . . .

17   by concealing from Rambler the scope of the NGINX Enterprise . . . , by participating in

18   the conspiracy with the Team whereby the Team misappropriated Rambler's NGINX

19   Enterprise[,] and by covering up their actions through the destruction of evidence."  (See

20   AC ¶ 608.)  Lynwood further alleges "Konovalov's Article 53.1 and 53.3 duties continued

21   after he left the employment of Rambler."  (See AC ¶ 606.)

22       The parties agree Russian law governs the merits of this claim.[7]  They disagree,

23   however, as to whether heightened duties under Russian statutory law apply to

24   Konovalov.  Further, defendants argue that, even if Konovalov owed Rambler any

25

26   ───────────────

27       [7] Pursuant to Rule 44.1 of the Federal Rules of Civil Procedure, a district court, in
     determining foreign law, "may consider any relevant material or source, including
     testimony, whether or not submitted by a party or admissible under the Federal Rules of
28   Evidence."  See Fed. R. Civ. P. 44.1.

heightened duties, "those duties ended with the termination of his employment with Rambler" (see Defs.' Mot. at 24:15-16), whereas Lynwood contends Konovalov's "duties survived separation from Rambler" (see Pl.'s Opp'n at 23-15-16).

In support of Lynwood's argument, Lynwood's expert asserts "Russian law does not permit a company's former . . . employee who falls within Article 53 . . . to take actions that are in breach of trust of the former employee's corporate position and result in financial injury to the company," and, in support thereof, cites two Russian cases in which a former director was found to have acted in bad faith for failing to return the company's loan documents upon separating from the company.  (See Decl. of Alexander Christophoroff ("Christophoroff Decl.") ¶¶ 95-96, Dkt. No. 124.)  As defendants' expert points out, however, neither case stands for the broad proposition Lynwood argues here, that Article 53 imposes on former employees a continuing "legal duty to act fairly and honestly" (see AC ¶ 606) but, rather, are predicated on acts committed prior to departure from the company and specific requirements pertaining to the maintaining of documents under Russian law.

Accordingly, even assuming, arguendo, Konovalov owed Rambler heightened duties under Russian statutory law, the Court finds the existence of any such duty would have ended in April 2011 when Konovalov left Rambler.

The statute of limitations for breach of fiduciary duty, however, is three years, where, as here, the "gravamen of the complaint is that defendant's acts constituted actual or constructive fraud."  See Thomson v. Canyon, 198 Cal. App. 4th 594, 606-07 (2011) (finding statute of limitations for breach of fiduciary duty is three years if breach is fraudulent and four years if breach is nonfraudulent) (citing Cal. Civ. Proc. Code §§ 343, 338(d)).

Accordingly, in the absence of an exception, the Fourth Claim for Relief likewise is barred by the applicable statute of limitations.

//

//

9

### c. Seventh, Eighth, and Thirteenth Claims for Relief – Aiding and Abetting of the Disloyal Employees' Fraud and Breaches of Their Duties of Honesty and Loyalty to Rambler; Fraud

In its Seventh Claim for Relief, Lynwood alleges Runa Capital and E. Ventures "had actual knowledge of the Disloyal Employees' fraudulent conduct and breaches of their Article 53 duties" (see AC ¶ 627) but nonetheless provided the Disloyal Employees "with substantial assistance in achieving the ultimate goal of their conspiracy – the misappropriation of Rambler's NGINX Enterprise and its ultimate sale to F5 for their own ill-gotten profits at the exclusion of Rambler" (see AC ¶ 631).

In its Eighth Claim for Relief, Lynwood alleges F5 similarly knew about the Disloyal Employee's fraudulent conduct and breaches of duties, but nonetheless provided them with substantial assistance in achieving their conspiracy.

In its Thirteenth Claim for Relief, Lynwood alleges the Disloyal Employees "intentionally misrepresented to Rambler the value of Open Source NGINX and related business opportunities" (see AC ¶ 713), "fraudulently concealed from Rambler the existence of the lucrative business opportunities associated with Open Source NGINX and NGINX Plus" as well as "the existence and ongoing development" of NGINX Plus (see AC ¶¶ 714-15), and "fraudulently induced Rambler to continue investing resources in Open Source NGINX and NGINX Plus" (see AC ¶ 716). Lynwood further alleges the Disloyal Employees, along with NGINX Software, Inc., NGINX DE, and NGINX BVI, "direct[ed] the theft of Rambler's equipment and destruction of evidence." (See AC ¶ 718.)

The statute of limitations for fraud, see Cal. Civ. Proc. Code § 338(d), as well as the statute for aiding and abetting fraud or a fraudulent breach of fiduciary duty, is three years, see Am. Master Lease LLC v. Idanta Partners, Ltd., 225 Cal. App. 4th 1451, 1478 (2014) (noting "statute of limitations for a cause of action for aiding and abetting a tort generally is the same as the underlying tort"), running from the date of "discovery, by the aggrieved party, of the facts constituting the fraud," see Cal. Civ. Proc. Code § 338(d).

Any of the above-referenced alleged fraudulent conduct, however, could not have

occurred later than November 2012, when Smirnoff, the last Disloyal Employee

remaining at Rambler, left the company, as "[a] fraud claim based upon the suppression

or concealment of a material fact must involve a defendant who had a legal duty to

disclose the fact," see Hoffman v. 162 N. Wolfe LLC, 228 Cal. App. 4th 1178, 1186

(2014), and the Disloyal Employees no longer owed Rambler any such duty once they

left its employ.  (See id. at 1187 (noting a duty arises if there is "a fiduciary relationship

between the parties" or "some sort of transaction between the parties," e.g., "between

seller and buyer, employer and prospective employee, doctor and patient, or parties

entering into any kind of contractual agreement").)

Accordingly, whether the Seventh, Eighth, and Thirteenth Claims for Relief are

barred by the appliable statute of limitations is, absent an exception, dependent on

Lynwood's showing with respect to discovery.

### d. Ninth Claim for Relief – Tortious Interference with Contract

In its Ninth Claim for Relief, Lynwood alleges "Sysoev and Rambler were parties to

and bound by the Sysoev Employment Agreement, the Sysoev Separation Agreement,

the Rambler Code of Ethics and the Rambler Regulations" (see AC ¶ 650), and

Konovalov, Robertson, NGINX Software, Inc., NGINX BVI, and NGINX DE, "through

2019, . . . actively encouraged and persuaded Sysoev to breach his obligations to

Rambler" (see AC ¶¶ 658-59).

The statute of limitations for tortious interference with contract is two years, see

DC Comics v. Pac. Pictures Corp., 938 F. Supp. 2d 941, 948 (C.D. Cal. 2013) (citing Cal.

Civ. Proc. Code § 339(1)), running from the "discovery of the loss or damage suffered by

the aggrieved party," see Cal. Civ. Proc. Code § 339(1).

Here, however, any breach of the above-referenced contracts would have

occurred, at the latest, by 2011.  See supra Section III.A.1.a.  Consequently, any cause

of action for tortious interference would have occurred, at the latest, by that time as well.

See Trembath v. Digardi, 43 Cal. App. 3d 834, 836 (Ct. App. 1974) (noting "the accrual

date [for tortious interference with contract] could not be later than the actual breach of

the contract by the party who was wrongfully induced to breach").

Accordingly, whether the Ninth Claim for Relief is barred by the applicable statute of limitations is, absent an exception, dependent on Lynwood's showing with respect to discovery.

### e.  Twelfth Claim for Relief – Tortious Interference with Prospective Business Advantage

In its Twelfth Claim for Relief, Lynwood alleges Rambler "had a prospective economic advantage in the form of the NGINX Enterprise that, but for [d]efendants' unlawful conduct detailed [in the AC], Rambler could have and would have sold for a massive profit."  (See AC ¶ 692; see also AC ¶ 694 (alleging unlawful conduct "includ[ed], without limitation, breaches of the Disloyal Employees' duties of honesty and loyalty to Rambler; aiding and abetting those breaches; fraud; aiding and abetting fraud; fraud on the USPTO; tortious interference with contract; false advertising; [and] copyright infringement").)

The statute of limitations for tortious interference with prospective business advantage is two years, see Wild Rivers Waterpark Mgmt. LLC v. Katy WP Grp., LLC, 2019 WL 6998669, at *8 (C.D. Cal. Feb. 29, 2019) (citing Cal. Civ. Proc. Code § 339(1)), running from the "discovery of the loss or damage suffered by the aggrieved party," see Cal. Civ. Proc. Code § 339(1).

Although some of the above-cited allegations set forth conduct that, as discussed above, could not have occurred later than the Disloyal Employees' respective dates of departure from Rambler, some of those allegations set forth conduct that is within two years of the filing of the initial Complaint.  (See, e.g., AC ¶ 759 (alleging "from 2013 through the present, the Direct Copyright Infringement Defendants . . . have introduced 20 or more commercial releases of NGINX Plus . . . based on . . . the Pre-2012 NGINX Software").)

Accordingly, it is not apparent from the face of the AC that the Twelfth Claim for Relief is barred by the statute of limitations.

//

**f.  Fourteenth Claim for Relief – Direct Copyright Infringement**

In its Fourteenth Claim for Relief, Lynwood alleges it is "the owner by assignment, of all right, title and interest in and to NGINX Plus and Open Source NGINX, in both source code and executable form, conceived and/or developed before the end of 2011, when Sysoev left the employ of Rambler (collectively, 'Pre-2012 NGINX Software'), including all copyright rights inherent therein or appurtenant thereto."  (See AC ¶ 745.)

The statute of limitations for copyright infringement is three years, see 17 U.S.C. § 507(b), and where, as here, "creation rather than infringement is the gravamen of an authorship claim, the claim accrues on account of creation, not subsequent infringement, and is barred three years from 'plain and express repudiation' of authorship," see Aalmuhammed v. Lee, 202 F.3d 1227, 1230-31 (9th Cir. 2000); see also Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013) (noting "as distinct from claims of infringement," where "each new infringing act causes a new claim to accrue," claims of ownership "accrue only once").  Further, "an untimely ownership claim will bar a claim for copyright infringement where the gravamen of the dispute is ownership, at least where . . . the parties are in a close relationship."  See id. at 1258; see also id. at 1256-57 (finding parties in close relationship where they enter into a business "deal" or "agreement").

Repudiation requires "an act that is adverse to the party whose ownership is being repudiated."  See Zahedi v. Miramax, LLC, 2021 WL 6882408, at *7 (C.D. Cal. Nov. 24, 2021); see also Aalmuhammed, 202 F.3d at 1231 (finding "movie credits plainly and expressly repudiated authorship, by listing [plaintiff] far below the more prominent names").  Here, defendants argue Sysoev plainly and expressly repudiated Rambler's ownership of copyright when he released Open Source NGINX in 2004 "without authorization" from Rambler and "with a copyright notice containing a clear claim that he held copyright in the software as its author—'Copyright (C) 2002-2004 Igor Sysoev'" (see Defs.' Mot. at 8:19-22), which notice, defendants argue, was an "unequivocal act of ownership" (see id. at 8:21-22).  In response, Lynwood argues "[d]efendants never plainly

United States District Court
Northern District of California

and expressly repudiated Rambler's ownership of the Open Source NGINX," because "Sysoev's copyright notice on Open Source NGINX reflected Sysoev's authorship, not ownership[,] which is distinct under Russian law."  (See Pl.'s Opp'n at 24:15-16, 20-21.) The parties disagree as to whether such dispute is to be determined under Russian law or federal law.

As the Court has federal question jurisdiction in this case, "federal common law applies to the choice-of-law inquiry."  See Abram v. C.R. England, Inc., 2020 WL 5077365, at *5 (C.D. Cal. Apr. 15, 2020).  "Federal common law follows the Restatement (Second) of Conflict laws," see id., which provides that the law of the jurisdiction with "the most significant relationship" to the property and parties determines the parties' interests in that property, see Restatement (Second) of Conflict of Laws § 222 (1971). Consequently, the law of the country with "the most significant relationship" to a work controls the issue of ownership.  See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 153 F.3d 82, 90 (2d Cir. 1998) (noting "[c]opyright is a form of property").  In determining which country has "the most significant relationship" to a work, courts consider as relevant factors "the nationality of the author and the place of initial creation or publication."  See O'Reilly v. Valley Ent., Inc., 2011 WL 13258234, at *8 (N.D. Cal. Jan. 4, 2011), R. & R. adopted, 2011 WL 13260734 (N.D. Cal. Feb. 16, 2011); see also Lahiri v. Universal Music & Video Distrib., Inc., 513 F. Supp. 2d 1172, 1176 n.4 (C.D. Cal. 2007) (finding Indian law controlled issue of copyright ownership where work was "created in India"); Itar-Tass, 153 F.3d at 90 (finding Russian law controlled issue of copyright ownership where works were "created by Russian nationals and first published in Russia").  Here, the author of the software is Sysoev, a Russian national, and the place of initial creation is Russia.  Consequently, Russia has the most significant relationship to the work, and, accordingly, Russian law governs the above-referenced issue.

Although, under federal law, a copyright notice consists of the © symbol, the year of first publication, and "the name of the owner of the copyright," see 17 U.S.C. § 401(b), under Russian law, a copyright notice consists of the © symbol, the year of first

publication, and "the name of the author or copyright owner," see Irina Ozolina & Anastasia Zalesova, Copyright: Russia, 11 (2022) (emphasis added).  Here, as Lynwood points out, the license terms below Sysoev's copyright notice twice refer to the software's "author," as opposed to the "copyright holder."  (See AC ¶ 376; see also Req. for Judicial Notice ("RJN") Ex. A, Dkt. No. 89.)  Under such circumstances, the Court cannot determine from the face of the AC that Sysoev's copyright notice constituted a clear and express repudiation of Rambler's ownership.

Defendants next argue that "[e]ven without the copyright notice, . . . Rambler's alleged ownership was plainly repudiated no later than . . . 2012" by Sysoev's public statements in an interview published in Free Software Magazine.  (See Def.'s Mot. at 8:24-25, 9:2-6.)  Repudiation of ownership, however, must be "communicated to the claimant," and Lynwood does not allege Rambler or Lynwood ever saw the 2012 interview.  See Scorpio Music (Black Scorpio) S.A. v. Willis, 2013 WL 790940, at *2, *6 (S.D. Cal. Mar. 4, 2013) (denying motion to dismiss copyright ownership claim where plaintiffs failed to show defendant "had actual notice" of copyright registrations and record labels that allegedly constituted plain and express repudiation).

Accordingly, it is not apparent from the face of the AC that the Fourteenth Claim for Relief is barred by the statute of limitations.

### 2.  Delayed Accrual

In opposing the instant motion, Lynwood, as before, does not dispute the above-listed limitations periods.  Rather, again relying on theories that (1) the "2019 Merger was the last overt act" in furtherance of an alleged conspiracy (see Pl.'s Opp'n at 2:24), (2) its claims are "timely under the continuing violation doctrine" (see id. at 16:21), (3) defendants' "fraudulent concealment" delayed accrual (see id. at 11:4), and (4) its claims are "timely under the discovery rule" (see id. at 16:17-18), it contends those periods began to run at the time of the 2019 Merger and, in support thereof, has added new factual allegations.

The Court discusses in turn below each such newly stated argument.

United States District Court
Northern District of California

### a. Last Overt Act

Under California law, civil conspiracy "is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." See Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 510-11 (1994).

"[W]hen a civil conspiracy is properly alleged and proved, the statute of limitations does not begin to run on any part of a plaintiff's claims [based thereon] until the 'last overt act' pursuant to the conspiracy has been completed." See Wyatt v. Union Mortg. Co., 24 Cal. 3d 773, 786 (1979); see also Kenworthy v. Brown, 248 Cal. App. 2d 298, 301 (Ct. App. 1967) (noting "[a] cause of action based on a civil conspiracy accrues on the date of the commission of the last overt act in pursuance of the conspiracy"). "For an act to be an overt act delaying the commencement of the limitations period," however, "it must be performed in furtherance of the conspiracy," see Risk v. Kingdom of Norway, 707 F. Supp. 1159, 1170 (N.D. Cal. 1989), aff'd, 936 F.2d 393 (9th Cir. 1991), and, as relevant to that determination, California law distinguishes "acts which are properly classifiable as 'overt acts' in furtherance of the conspiracy" from "activities of conspirators after perpetration of the principal object of the conspiracy which may evidence the prior conspiracy," see Livett v. F.C. Financial Assoc., 124 Cal. App. 3d 413, 419 (1981).

By order filed March 25, 2021, Judge Koh found Lynwood had not "alleged a conspiracy," let alone "a large, decades-long conspiracy whose object was to sell off the NGINX Enterprise to a third party." (See Order Granting Mots. to Dismiss with Leave to Amend ("March 25 Order") at 16:22, Dkt. No. 134.) In that regard, Judge Koh, noting a "civil conspiracy claim requires an underlying tort," found Lynwood "ha[d] not stated a claim for the underlying torts" and "ha[d] not even specified the torts that the defendants allegedly conspired to commit." (See id. at 31:25, 32:6, 8-9.)

In the AC, Lynwood now alleges Konovalov, Sysoev, Alexeev, Dounin, Smirnoff, Robertson, NGINX BVI, NGINX Software, Inc., NGINX DE, Runa Capital, and E. Ventures "conspired to breach the Disloyal Employees' duties to Rambler, to tortiously

1   interfere with Rambler's contractual rights, to tortiously interfere with Rambler's

2   prospective business advantage, and to defraud Rambler."  (See AC ¶¶ 569-70.)  The

3   foregoing allegation does not specify the particular causes of action to which Lynwood

4   seeks to apply a theory of conspiracy and, for that reason alone, its reliance on the last

5   overt act doctrine is unavailing.

6          In any event, given that a conspiracy terminates "when the substantive offense

7   underlying [the] conspiracy [i]s completed," see People v. Williams, 97 Cal. App. 3d 382,

8   389 (Ct. App. 1979),[8] and, given that, as previously discussed, the conduct on which the

9   Fourth,[9] Seventh, Eighth, Ninth, and Thirteenth Claims for Relief are based could not

10  have occurred later than the Disloyal Employees' respective dates of departure from

11  Rambler, see supra Sections III.A.1.b-d, any conspiracy relating to said claims could not

12  have extended past November 2012, when Smirnoff, the last Disloyal Employee

13  remaining at Rambler, left the company.[10]

14         Accordingly, to the extent Lynwood relies on the last overt act doctrine, it fails to

15  show its claims are not barred by the applicable statutes of limitations.

16                      **b.  Continuing Violation Doctrine**

17         "The continuing violation doctrine aggregates a series of wrongs or injuries for

18  purposes of the statute of limitations, treating the limitations period as accruing for all of

_____

20         [8] Although People v. Williams dealt with a criminal conspiracy, "[t]he differences between civil and criminal conspiracies," for purposes of statutes of limitations, are, as characterized by the California Supreme Court, essentially "beside the point."  See Wyatt, 24 Cal. 3d at 787; see also Livett, 124 Cal. App. 3d at 419 (finding "conclusions" regarding last overt act doctrine in "case [that] dealt with a criminal conspiracy . . . applicable as well to a civil conspiracy").

23         [9] As to the Fourth Claim for Relief, the only defendants that potentially could be held liable as co-conspirators are Sysoev and Smirnoff, as they are the only defendants whom Lynwood alleges owed the same duties as Konovalov to Rambler.  See Applied Equip., 7 Cal. 4th at 511 (holding "liability arising from conspiracy presupposes that the coconspirator is legally capable of committing the tort, i.e., that he or she owes a duty to plaintiff recognized by law and is potentially subject to liability for breach of that duty").

27         [10] The First and Second Claims for Relief are not considered in the above analysis, as they are not tort claims, but, rather, breach of contract claims.  (See Christophoroff Decl. ¶ 53 (stating both claims "allege contractual breaches").)

United States District Court
Northern District of California

1   them upon commission or sufferance of the last of them."  See Aryeh v. Canon Bus.

2   Sols., Inc., 55 Cal. 4th 1185, 1192 (2013).

3          In the March 25 and March 30 Orders, Judge Koh found "Lynwood d[id] not

4   plausibly allege that [d]efendants engaged in a series of continuing wrongs for nearly two

5   decades—from the time that Sysoev wrote the first line of the NGINX Software in 2001

6   until the F5 merger in 2019" (see, e.g., March 25 Order at 17:13-15), and that "Lynwood

7   d[id] not explain why the series of continuing wrongs was not complete in 2011, when the

8   NGINX Enterprise was allegedly stolen from Rambler" (see, e.g., id. at 31:18-19).

9          In its opposition, the only argument Lynwood makes for the proposition that its

10  claims are timely under the continuing violation doctrine is that "[d]efendants' violations

11  continued through F5's misrepresentations to the United States Patent and Trademark

12  Office ('USPTO') in December 2019."  (See Pl.'s Opp'n at 16:19-21.)  As noted earlier

13  herein, however, all claims relating to trademark violations, specifically, the Seventeenth

14  through Twenty-Second, and Twenty-Fourth Claims for Relief, have been stayed, and the

15  claims presently under consideration allege "a series of discrete, independently verifiable

16  and actionable wrongs," see Aryeh, 55 Cal. 4th at 1198, all, as Judge Koh noted, ending

17  in 2011.

18         Accordingly, to the extent Lynwood relies on the continuing violation doctrine, it

19  fails to show its claims are not barred by the applicable statutes of limitations.

20                          **c.  Fraudulent Concealment**

21         "The purpose of the fraudulent concealment doctrine is to prevent a defendant

22  from concealing a fraud until such a time as the party committing the fraud could plead

23  the statute of limitations to protect it."  See In re Animation Workers Antitrust Litig., 123 F.

24  Supp. 3d 1175, 1194 (N.D. Cal. 2015) (internal quotation, citation, and alteration omitted);

25  see also id. at 1200 (finding defendants concealed fraud where they "made misleading,

26  pretextual statements and took affirmative steps to keep the alleged conspiracy a

27  secret").  Consistent therewith, "[a] statute of limitations may be tolled if the defendant

28  fraudulently concealed the existence of a cause of action in such a way that the plaintiff,

acting as a reasonable person, did not know of its existence." See Hexcel Corp. v. Ineos Polymers, Inc., 681 F.3d 1055, 1060 (9th Cir. 2012).

"The plaintiff bears the burden of pleading and proving fraudulent concealment." See In re Animation Workers, 123 F. Supp. 3d at 1194. To plead fraudulent concealment, "a plaintiff must show that defendant affirmatively misled it, and that plaintiff had neither actual nor constructive knowledge of the facts giving rise to its claim despite its due diligence in trying to uncover those facts." See In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig., 782 F. Supp. 487, 489 (C.D. Cal. 1991) (internal quotation, citation, and alteration omitted). "A plaintiff's lack of knowledge of its claim is essential to establish fraudulent concealment," and "[o]nce the plaintiff has knowledge or constructive knowledge of all the operative facts underlying its claim, the statute begins to run." See In re Cathode Ray Tube (CRT) Antitrust Litig., 2016 WL 8669891, at *5 (N.D. Cal. Aug. 22, 2016). "Constructive knowledge exists when a plaintiff should have been alerted to facts that, following duly diligent inquiry, could have advised it of its claim." See Petroleum Products, 782 F. Supp. at 493 (internal quotation and citation omitted); see also Conmar Corp. v. Mitsui & Co. (U.S.A.), 858 F.2d 499, 502 (9th Cir. 1988) (noting "[a]ny fact that should excite [plaintiff's] suspicion is the same as actual knowledge of his entire claim").

In the March 25 and March 30 Orders, Judge Koh found "Lynwood ha[d] not plausibly alleged that it did not have actual or constructive notice of the facts giving rise to its claim" (see, e.g., March 25 Order at 19:9-10), in that the initial Complaint's "allegations support[ed] the conclusion that, as early as 2001, Rambler was aware of the value of the NGINX Enterprise" (see, e.g., id. at 19:14-15) and that "as of 2011, Rambler was aware that Sysoev, Konovalov, and the Team would exercise ownership rights over NGINX" (see, e.g., id. at 20:2-3).

In the AC, Lynwood adds allegations that "Rambler and Lynwood located an aging, non-descript server," called the "Yam Server," which was "located in an offsite Rambler server farm that had been disconnected and had its data deleted," and which

United States District Court
Northern District of California

"the conspirators had commandeered for communicating between themselves and . . . had never been integrated with Rambler's company-wide email systems." (See AC ¶¶ 13-14.) Additionally, Lynwood now alleges that "Rambler was previously unaware of the existence of the Yam Server," which "contained a massive number of emails and other materials" revealing the alleged conspiracy, and that it located said server "only after one of the co-conspirators, Alexander Korotkov, came forward in 2019[,] blew the whistle to Rambler and Lynwood concerning the conspirators scheme" (see AC ¶¶ 13-15), and "disclosed to Rambler and Lynwood where to investigate" (see AC ¶ 445).

Pointing to said allegations, Lynwood argues that "because the Disloyal Employees used separate servers," including the Yam Sever, "to carry out their conspiracy and had wiped and stolen those severs" (see Pl.'s Opp'n at 14:12-13), Rambler "could not have uncovered the conspirators' scheme until Korotkov blew the whistle in 2019" (see id. at 13:22-23). Irrespective of the allegedly "ring-fenced nature of the Yam Server" (see AC ¶ 345) and the NOC department, however, other allegations in the AC support the conclusion that Rambler had at least constructive knowledge of sufficient facts giving rise to its claims long before 2019.

In particular, even if "Sysoev and Konovalov fraudulently concealed from Rambler that they were contemplating the prospect of providing proprietary products such as NGINX Plus" (see AC ¶ 323), both Sysoev and Konovalov, in their respective exit interviews in April 2011, informed Rambler, that, upon resigning, they would be "earning an income off of Open Source NGINX" (see AC ¶ 324), a statement that, given Konovalov's "repeated[] misrepresent[ation] to [Rambler] that Open Source NGINX had no independent commercial value or prospects for monetization" (see AC ¶ 17), should have put Rambler on inquiry notice that Sysoev's and Konovalov's representations that they were not working on anything having commercial value were untrue.[11]

---

[11] As Lynwood acknowledges, Rambler is "one of the largest media companies and web portals in Russia" (see AC ¶ 97), and "web server software like . . . Open Source NGINX," while "provided on an open-source basis," is typically "commercialized by offering proprietary fee-based enhanced enterprise features, functionality and services

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

Moreover, Lynwood alleges that the Team shortly thereafter proceeded to form, through public filings, "NGINX Software, Inc. on May 4, 2011[,] NGINX BVI on July 6, 2011[,] and NGINX DE in August 2011" (see AC ¶ 550), that, starting in 2011, those entities registered six different trademarks containing "NGINX" (see AC ¶¶ 803, 826, 851, 875, 895, 913), and that, starting in 2013, Sysoev and Konovalov, along with other defendants, introduced "20 or more commercial releases of NGINX Plus and related extensions" (see AC ¶ 759).

Additionally, Lynwood alleges, Sysoev, in a January 2012 interview with an online magazine, publicly described NGINX, Inc. as a "commercial entity" that was "going to produce a set of paid extensions on top of the [O]pen [S]ource NGINX that would constitute a viable commercial software product" (see RJN Ex. B at 4), and thereafter, on August 22, 2013, "[t]he first formal announcement of the general commercial availability of the initial release of NGINX Plus . . . was issued," which stated, "NGINX Plus is the fully supported, commercial version of NGINX" (see AC ¶ 740).

Under all of the above circumstances, even if Rambler did not have actual knowledge of the defendants' wrongdoing, it had sufficient information "to warrant an investigation which, if reasonably diligent, would have led to the discovery" of the facts on which the instant claims are based, namely, Konvalov and Sysoev's development of NGINX Plus while employed by Rambler and exercise of ownership rights therein. See Hexcel, 681 F.3d at 1060 (noting "[f]ull knowledge often awaits discovery, and the very notion of 'inquiry notice' implies something less than that"); see also Conmar, 858 F.2d at 504 (noting "there can be no fraudulent concealment where," a plaintiff whose "suspicions have been or should have been excited, . . . could have then confirmed his earlier suspicion by a diligent pursuit of further information"). In sum, Lynwood had constructive knowledge of the facts giving rise to its claims by 2011 or at least by 2013 but failed to act diligently in discovering its claims.

––––––––––––––––––––

relating to the web server software" (see AC ¶ 178) (emphasis added).

1   Accordingly, to the extent Lynwood relies on fraudulent concealment, it fails to

2   show its claims are not barred by the applicable statutes of limitations.

3   **d. Discovery Rule**

4   Under California law, the discovery rule "postpones accrual of a cause of action

5   until the plaintiff discovers, or has reason to discover, the cause of action." See Norgart,

6   21 Cal. 4th at 389.  As discussed earlier herein, the discovery rule applies by statute to

7   the accrual of causes of action predicated on fraud, see Cal. Civ. Proc. Code § 338(d), as

8   well as to causes of action predicated on tortious interference with contract and

9   prospective business advantage, see Cal. Civ. Proc. Code § 339(1).  Additionally, the

10  discovery rule has been held to apply to causes of action predicated on breach of

11  contract and breach of fiduciary duty.  See Apr. Enterprises, Inc. v. KTTV, 147 Cal. App.

12  3d 805, 830 (Ct. App. 1983) (noting California courts apply discovery rule to breach of

13  contract actions involving fraud or misrepresentation); see id. at 827 (noting "[i]t is well-

14  settled that the discovery rule applies to causes of action involving the breach of a

15  fiduciary relationship").

16  "A plaintiff discovers the cause of action the moment he at least suspects a *factual*

17  *basis*, as opposed to a *legal theory*, for the elements of the claim—in other words, when

18  [such] plaintiff suspects that someone has done something wrong to him." See DC

19  Comics, 938 F. Supp. 2d at 951 (explaining "a plaintiff need not suspect facts supporting

20  *each specific legal element of a particular cause of action*"; noting "California courts look

21  to whether the plaintiffs have reason to at least suspect that a *type* of wrongdoing has

22  injured them") (internal quotation, citation, and alteration omitted) (emphases in original).

23  A plaintiff "has reason to suspect when he has notice or information of circumstances to

24  put a reasonable person on inquiry." See Norgart, 21 Cal. 4th at 398 (internal quotation

25  omitted).  "So long as a suspicion exists, it is clear that the plaintiff must go find the facts;

26  [he] cannot wait for the facts to find [him]." See DC Comics, 938 F. Supp. 2d at 951.

27  In its opposition, Lynwood argues "[t]he facts establishing fraudulent concealment

28  also render [its] claims timely under the discovery rule."  (See Pl.'s Opp'n at 16:17-18.)

22

1   As explained above, however, Lynwood had reason to discover its claims by 2011 or at

2   least by 2013, the year the initial release of NGINX Plus was announced, but sat on its

3   rights until 2020, filing the instant action only after NGINX BVI was sold for $670 million in

4   2019.  See supra Section III.A.2.c.

5       Accordingly, to the extent Lynwood relies on the discovery rule, it fails to show its

6   claims are not barred by the applicable statutes of limitations.

7           **3.  Conclusion: Timeliness**

8       As discussed above, all of the non-stayed claims, with the exception of the Twelfth

9   and Fourteenth Claims for Relief, are barred by the applicable statutes of limitations and,

10  accordingly, will be dismissed on that ground.

11      Further, as set forth below, the Twelfth and Fourteenth Claims for Relief are

12  subject to dismissal for failure to state a claim, and, even if the Seventh, Eighth, Ninth,

13  and Thirteenth Claims for Relief were not time-barred, those claims with limited

14  exception[12] are subject to dismissal on that ground as well.

15  **B.  Failure to State a Claim**

16          **1.  Seventh Claim for Relief – Aiding and Abetting by Runa Capital and E.
17          Ventures of the Disloyal Employees' Fraud and Breaches of Their
            Duties of Honesty and Loyalty to Rambler**

18      Lynwood contends California law governs this claim.  Defendants contend Russian

19  law governs,[13] but argue that even under California law, the claim fails.

20      Under California law, "[l]iability may be imposed on one who aids and abets the

21  commission of an intentional tort if the person (a) knows the other's conduct constitutes a

22  breach of duty and gives substantial assistance or encouragement to the other to so act

23  or (b) gives substantial assistance to the other in accomplishing a tortious result and the

24  _____

25      [12] The one exception is the Thirteenth Claim for Relief as alleged against the
    Disloyal Employees.

26      [13] There is no dispute that under Russian law, a "standalone cause[] of action" for
27  "aiding and abetting" does not exist.  (See Reply Decl. of Alexander Muranov Pursuant to
    FRCP 44.1 in Support of Mot. to Dismiss Compl. ("Muranov Reply Decl.") ¶ 42, Dkt. No.
28  129-1.)

United States District Court
Northern District of California

1   person's own conduct, separately considered, constitutes a breach of duty to the third

2   person."  See Casey v. U.S. Bank Nat. Assn., 127 Cal. App. 4th 1138, 1144 (2005)

3   (internal quotation, citation, and alteration omitted).  Here, Lynwood proceeds on the first

4   of the above two theories.  (See AC ¶¶ 627, 631; see also Pl.'s Opp'n at 20:13-14

5   (arguing Runa Capital and E. Ventures "knew about the Disloyal Employees' tortious

6   conduct and willingly aided and abetted it").)

7         "To satisfy the knowledge element, an aider and abettor must have actual

8   knowledge of the specific primary wrong the defendant substantially assisted."  See Diaz

9   v. Intuit, Inc., 2018 WL 2215790, at *6 (N.D. Cal. May 15, 2018); see also Casey, 127

10  Cal. App. 4th at 1147 (noting "suspicion and surmise do not constitute actual

11  knowledge").  Moreover, for purposes of pleading, "[b]oilerplate and conclusory

12  allegations are insufficient to establish that a [defendant] had actual knowledge."  See

13  Namer v. Bank of Am., N.A., 2017 WL 1180193, at *5 (S.D. Cal. Mar. 30, 2017) (granting

14  motion to dismiss aiding and abetting breach of fiduciary duty claim; finding plaintiff's

15  "conclusory" allegations "fail[ed] to plausibly establish [defendant] had actual knowledge

16  of the alleged wrongful conduct"); see also Casey, 127 Cal. App. 4th at 1148, 1152

17  (affirming dismissal of aiding and abetting claim; finding "general allegation the

18  [defendant] banks knew the [fiduciaries] were involved in 'wrongful or illegal conduct' d[id]

19  not constitute sufficient pleading that the banks had actual knowledge the [fiduciaries]

20  were *misappropriating funds*," the "*specific primary violation*" (emphases in original)).

21        By the March 25 Order, Judge Koh dismissed this claim, finding Lynwood's

22  allegations were "conclusory" and "d[id] not plausibly establish" that Runa Capital and E.

23  Ventures "knew about the [Disloyal Employees'] alleged fraudulent conduct."  (See March

24  25 Order at 27:11-12.)  Specifically, Judge Koh characterized as conclusory Lynwood's

25  allegation that Runa Capital and E. Ventures "'knew about the Disloyal Employees'

26  obligations to Rambler and the Team's fraudulent conduct against Rambler' based on

27  their 'extensive due diligence leading up to their . . . investment in October'" (see id. at

28  27:7-10), and found such allegation "especially insufficient in light of other allegations that

United States District Court
Northern District of California

24

suggest[ed] that [Runa Capital and E. Ventures] believed the Disloyal Employees had not engaged in fraudulent conduct," specifically, allegations that Runa Capital and E. Ventures' funding term sheet required a legal opinion by the company's counsel that Konovalov, Sysoev, and Alexeev's "activities 'do not and will not conflict with any agreement, commitment or other encumbrance placed on them by their current or former employer'" (see id. at 27:16-18).

In the AC, Lynwood repeats the above conclusory allegation as to Runa Capital's and E. Ventures' knowledge, which, as Judge Koh found, is insufficient, and its new allegations, which make reference only to Runa Capital, fare no better. In that regard, to establish Runa Capital's knowledge, Lynwood now alleges Runa Capital in February 2011 hired Rambler's Director of Strategic Development, Dmitry Galperin ("Galperin") "explicitly for the purpose of encouraging and assisting Sysoev and Konovalov and coordinating with them to carry out the conspirators' common plan (i.e., the misappropriation and subsequent sale of the NGINX Enterprise)." (See AC ¶ 61; see also, e.g., AC ¶ 60 (alleging "Galperin left Rambler's employment in furtherance of the conspiracy"), ¶ 561 (alleging Runa Capital "hired [Galperin] in a deliberate move to gain influence over the Team going forward"), ¶ 561 (alleging "Galperin provided Runa Capital with detailed information of Rambler's inner workings and the Team's conspiracy").) None of those new allegations, however, are supported by factual allegations.

Accordingly, the Court finds Lynwood fails to state a claim against Runa Capital and E. Ventures for aiding and abetting of the Disloyal Employees' fraud and breaches of their duties of honesty and loyalty.

### 2. Eighth Claim for Relief – Aiding and Abetting by F5 of the Disloyal Employees' Fraud and Breaches of Their Duties of Honesty and Loyalty to Rambler

As with the Seventh Claim for Relief, the parties disagree as to whether California law or Russian law governs the Eighth, and defendants again argue that even under California law, the claim fails.

By the March 25 Order, Judge Koh dismissed this claim, finding Lynwood "ha[d]

not plausibly alleged that F5 . . . had actual knowledge" of the Disloyal Employees' torts. (See March 25 Order at 26:14-16.)  Specifically, Judge Koh found Lynwood's "conclusory" allegations that "F5 had knowledge of the Disloyal Employees' obligations and the Team's fraudulent conduct against Rambler 'as a result of F5's due diligence' prior to the [2019] [M]erger, and 'as a sophisticated entity with international offices,' . . . d[id] not plausibly establish that F5 had knowledge of the alleged theft of the NGINX Enterprise that occurred in 2011, years before the 2019 [M]erger" (see id. at 26:18-24), and were "especially insufficient because other allegations suggest[ed] that F5 believed the Disloyal Employees had not engaged in fraudulent conduct with respect to Rambler," namely, allegations that the merger agreement "represents and warrants that 'no employee or independent contractor of the Company or any Subsidiary is in breach of any Contract with any former employer or other Person concerning Intellectual Property Rights or confidentiality'" (see id. at 26:25-27:3).

In the AC, Lynwood repeats the above-referenced conclusory allegation as to F5's knowledge, and adds allegations that F5 conducted a "review of the Disloyal Employees' past employment and separation agreements with Rambler" (see AC ¶ 639), an "analysis of Open Source NGINX and NGINX Plus along with the other proprietary NGINX commercial add-on software developed from the purloined NGINX Enterprise" (see AC ¶ 639), and a "review of the Disloyal Employees' contemporaneous electronic communications from the time when the Disloyal Employees were scheming to lift the NGINX Enterprise out of Rambler" (see AC ¶ 640).  According to Lynwood, the above-referenced due diligence "revealed that the code commits by Sysoev for [Open Source NGINX and NGINX Plus] were performed while he was a Rambler employee."  (See AC ¶ 639.)  In support thereof, Lynwood alleges that "a significant number of modifications to Open Source NGINX," namely, "2174 changes were committed . . . by Sysoev during a standard business-hours workday window at Rambler."  (See AC ¶ 196.)  The AC contains no similar allegation as to NGINX Plus, however, and as discussed earlier herein, defendants never concealed that they were working on Open Source NGINX.

26

1    Moreover, even if such allegations suggest F5 may have had some suspicion as

2    to the development of NGINX Plus, actual knowledge requires "more than a vague

3    suspicion of wrongdoing," see In re First All. Mortg. Co., 471 F.3d 977, 993 n.4 (9th Cir.

4    2006), and Lynwood fails to plausibly demonstrate F5 actually concluded or otherwise

5    knew the Disloyal Employees breached their duties or defrauded Rambler.  See Casey,

6    127 Cal. App. 4th at 1149 (finding allegations that defendant banks knew fiduciaries

7    "were withdrawing money . . . with . . . forged checks," and "carrying large, unreported

8    amounts of cash out of the bank in unmarked duffel bags" to "essentially allege[] the

9    banks knew *something* fishy was going on" (emphasis in original); finding such

10   allegations insufficient to establish banks knew fiduciaries were misappropriating funds).

11   Further, as Judge Koh found, Lynwood's allegations are "especially insufficient"

12   (see March 25 Order at 26:25) given Lynwood's other allegations indicating F5

13   reasonably acted on the assumption that the Disloyal Employees had not breached their

14   duties or defrauded Rambler.  (See AC ¶ 403 (alleging merger agreement "contain[ed] a

15   number of representations and warranties" that Disloyal Employees were not in breach of

16   any contract with any former employer concerning intellectual property matters).)

17   Although Lynwood now alleges F5's "negotiating an indemnity from NGINX BVI for any

18   breaches in NGINX BVI's representations and warranties regarding the NGINX

19   intellectual property" shows F5 had "actual knowledge" that the "NGINX Enterprise was

20   owned by Rambler" (see AC ¶ 406), such conclusory allegation constitutes no more than

21   speculation and, consequently, its reliance thereon is unavailing.

22   Moreover, all of the above allegations pertain to knowledge allegedly acquired

23   seven to eight years after the Disloyal Employees allegedly breached their duties to act

24   fairly and honestly with Rambler, which duties and allegedly fraudulent conduct, as

25   discussed earlier herein, would have ended when Konovalov, Sysoev, and Smirnoff

26   resigned from Rambler in, respectively, April 2011, December 2011, and November

27   2012.  See supra Sections III.A.1.b-c.

28   Accordingly, the Court finds Lynwood fails to state a claim against F5 for aiding

United States District Court
Northern District of California

and abetting of the Disloyal Employees' fraud and breaches of their duties of honesty and loyalty.

### 3. Ninth Claim for Relief – Tortious Interference with Contract Against Konovalov, Robertson, NGINX Software, Inc., NGINX BVI, and NGINX DE

Lynwood contends California law governs this claim.  Defendants contend Russian law governs,[14] but argue that even under California law, the claim fails.

To state a claim for tortious interference with contract under California law, a plaintiff must allege: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."  See Pac. Gas & Elec. Co. v. Bear Stearns & Co., 50 Cal. 3d 1118, 1126 (1990).  Conclusory allegations that the defendant was aware of the contract are insufficient to state a claim.  See Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd., 2018 WL 10689420, at *11 (N.D. Cal. July 9, 2018) (granting motion to dismiss claim for interference with contractual relations where plaintiff "fail[ed] to plead any non-conclusory facts to show that any of the[] [d]efendants were aware of the [contract]").

By the March 25 Order, Judge Koh dismissed this claim as to NGINX Software, Inc. and NGINX BVI,[15] finding Lynwood "never allege[d] that [they] were aware of the contracts between [Sysoev] and Rambler."  (See March 25 Order at 28:15-16.)[16] Specifically, Judge Koh found "[t]he only allegation that Lynwood makes on this point is that 'Konovalov's knowledge concerning Sysoev's ongoing obligations to Rambler is

---

[14] There is no dispute that under Russian law, a "standalone cause[] of action" for tortious interference with contract does not exist.  (See Muranov Reply Decl. ¶ 42.)

[15] At the time Judge Koh issued her order, NGINX DE was in default and, to date, remains so.

[16] By the March 30 Order, Judge Koh dismissed this claim as to Konovalov and Robertson as untimely, but did not go on to address those defendants' argument that Lynwood also failed to state a claim.

United States District Court
Northern District of California

1  imputed onto the NGINX Conspirators[17] and/or the NGINX Conspirators otherwise knew

2  of Sysoev's ongoing obligations,'" which allegation she described as "conclusory."  (See

3  id. at 28:17-20.)

4          In the AC, Lynwood repeats the above-referenced conclusory allegation (see AC

5  ¶ 656) and, in support thereof, citing Herzog v. Cap. Co., 27 Cal. 2d 349, 353 (1945),

6  asserts that "[u]nder California law, the knowledge of an agent is imputed to the

7  principal."  (See Pl.'s Opp'n at 22:6-7.)  In Herzog, however, the court found it was "clear"

8  that the agent "was acting within the scope of his authority" when he engaged in the

9  allegedly tortious acts, see Herzog, 27 Cal. 2d at 353, whereas here, the AC includes no

10  factual allegations upon which such a finding could be based in that, as discussed below,

11  the AC contains no allegations specifying the acts constituting the alleged tortious

12  interference.  Consequently, as to NGINX Software, Inc., NGINX BVI, and NGINX DE,

13  Lynwood fails to state a claim for tortious interference with contract.

14          Next, as to Konovalov and Robertson, Lynwood fails to allege any "intentional acts

15  designed to induce a breach" of Sysoev's contractual obligations.  See Jenni Rivera

16  Enterprises, LLC v. Latin World Ent. Holdings, Inc., 36 Cal. App. 5th 766, 788-89 (2019)

17  (where manager of celebrity, by disclosing information to producers of TV series based

18  on celebrity's life, allegedly breached agreement restricting disclosure of celebrity's

19  personal information, TV series producers' intentional acts of "making payments" to

20  manager as executive producer of series, and "marketing [series] to promote [his] role in

21  its production" sufficed to support reasonable inference that producers induced manager

22  to breach nondisclosure agreement by participating in series production) (internal

23  quotation, citation, and alteration omitted).  Although Lynwood sets forth in the AC

24  various acts committed by Sysoev in breach of his contractual obligations, Lynwood's

25  only allegation as to Konovalov and Robertson is that they "intended to cause Sysoev to

26

27          [17] In the initial Complaint, NGINX BVI, NGINX Software, Inc., BV NGINX, and
NGINX DE are collectively referred to as the "NGINX Conspirators."  (See Compl. ¶ 538,
28  Dkt. No. 1.)

breach his obligations to Rambler" (see AC ¶ 660) and "actively encouraged and persuaded Sysoev to breach his obligations to Rambler" (see AC ¶¶ 658-59), which conclusory allegations, absent factual support, are insufficient.

Accordingly, the Court finds Lynwood fails to state a claim for tortious interference with contract.

### 4. Twelfth Claim for Relief – Tortious Interference with Prospective Business Advantage Against All Defendants

Lynwood contends California state law applies to this claim.  Defendants contend Russian law governs,[18] but argue that even under California law, the claim fails.

To state a claim for tortious interference with prospective business advantage, a plaintiff must allege: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant."  See Westside Ctr. Assocs. v. Safeway Stores 23, Inc., 42 Cal. App. 4th 507, 521–22 (1996).  To plead such a claim for tortious interference, "it is essential that the plaintiff allege facts showing that the defendant interfered with the plaintiff's relationship with a particular individual."  See UMG Recordings, Inc. v. Glob. Eagle Ent., Inc., 117 F. Supp. 3d 1092, 1117 (C.D. Cal. 2015).

By the March 25 Order, Judge Koh dismissed this claim as to NGINX BVI, NGINX Software, Inc, BV NGINX, E. Ventures, Runa Capital, and F5, finding "Lynwood failed to plead an existing economic relationship with an identifiable buyer."  (See March 25 Order at 29:19-20.)[19]

---

[18] There is no dispute that under Russian law, a "standalone cause[] of action" for tortious interference with prospective business advantage does not exist.  (See Muranov Reply Decl. ¶ 42.)

[19] By the March 30 Order, Judge Koh dismissed this claim as to Konovalov, Sysoev, Alexeev, Dounin, Smirnoff, and Robertson as untimely, but did not go on to

United States District Court
Northern District of California

United States District Court
Northern District of California

1    In the AC, Lynwood now lists a number of companies the Team had identified in

2 early 2011 as potential buyers of the NGINX Enterprise.  (See AC ¶ 697 (alleging "the

3 Team identified the following potential purchasers of the fully financed and developed

4 NGINX Enterprise . . .").)  Lynwood fails to allege, however, the Team had a relationship

5 with any of those companies, let alone that Rambler had such a relationship.  Rather,

6 Lynwood alleges Rambler "would have had many options" and "the same or similar

7 opportunities" to sell the NGINX Enterprise (see AC ¶¶ 696, 699), which allegations do

8 not suffice to allege Rambler had "an existing economic relationship with an identifiable

9 buyer."  (See March 25 Order at 29:19); Westside, 42 Cal. App. 4th at 523 (dismissing

10 claim where plaintiff alleged defendant "interfered not with a particular sale but with

11 [plaintiff's] 'opportunity' to sell the property for its true value"); see also UMG Recordings,

12 117 F. Supp. 3d at 1117 (finding "[a]llegations that a defendant interfered with a

13 relationship with an as yet unidentified customer will not suffice") (internal quotation and

14 citation omitted).[20]

15    Lynwood's allegations that Rambler had relationships with an American company,

16 "Google AdWords," since 2013, and two Russian companies, "Yandex" and "Mail.ru,"

17 since 2015 (see AC ¶¶ 703-04), likewise are unavailing, as a claim for tortious

18 interference with prospective business advantage requires "knowledge of the existence of

19 a relationship on the part of the defendant," see Westside, 42 Cal. App. 4th at 526, and

20 Lynwood fails to allege defendants knew of Rambler's purported relationships with any of

21 the aforementioned companies.

22    Accordingly, the Court finds Lynwood fails to state a claim for tortious interference

23

24    _____

address those defendants' argument that Lynwood also failed to state a claim.

25    [20] Although Lynwood argues "the NGINX Enterprise was owned by Rambler and

26 therefore Lynwood can rely on the relationships between the NGINX Enterprise and third
parties for purposes of its tortious interference claim" (see Pl.'s Opp'n at 22:20-22),

27 Lynwood cites no authority for such proposition, and, in any event, Lynwood, as noted,
does not allege any defendant or "the NGINX Enterprise" actually had a relationship with

28 any 2011 buyer, only that potential buyers had been identified.

with prospective business advantage.

### 5. Thirteenth Claim for Relief – Fraud Against the Disloyal Employees, NGINX Software, Inc., NGINX DE and NGINX BVI

Lynwood contends California state law applies to this claim.  Defendants contend Russian law governs,[21] but argue that even under California law, the claim fails.

To state a claim for fraud under California law, a plaintiff must allege: "(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage."  See Hoffman, 228 Cal. App. 4th at 1185-86.  In addition, as noted, "[a] fraud claim based upon the suppression or concealment of a material fact must involve a defendant who had a legal duty to disclose the fact."  See id. at 1186.

By the March 25 Order, Judge Koh dismissed this claim as to NGINX BVI and NGINX Software, Inc., finding "Lynwood ha[d] not pled a duty that [those entities] owed to Rambler."  (See March 25 Order at 30:9-10.)[22]  In that regard, Judge Koh noted said defendants were "competitors of Rambler with no fiduciary or transactional ties to Rambler."  (See id. at 30:10-11.)

In the AC, Lynwood again fails to plead NGINX Software, Inc., NGINX BVI, and NGINX DE owed any duty to Rambler.  Rather, Lynwood now alleges that, because Sysoev and Smirnoff were "principals" of NGINX Software, Inc., NGINX BVI, and NGINX DE, their "duties to disclose their fraudulent conduct were imputed" to those entities. (See AC ¶ 722.)  In support of said proposition, Lynwood, citing In re Tesla, Inc. Sec. Litig., 477 F. Supp. 3d 903, 926 (N.D. Cal. 2020), argues "a corporation can be liable for the fraud committed by its officers, so long as the officer commits it within the scope of

---

[21] There is no dispute that under Russian law, a "standalone cause[] of action" for "fraudulent misrepresentation and/or fraudulent concealment" does not exist.  (See Muranov Reply Decl. ¶ 42.)

[22] By the March 30 Order, Judge Koh dismissed this claim as to the Disloyal Employees as untimely, but did not go on to address those defendants' argument that Lynwood also failed to state a claim.

United States District Court
Northern District of California

1   his or her employment" (see Pl.'s Opp'n at 22:26-28) and, similarly, citing Bank of New

2   York v. Fremont Gen. Corp., 523 F.3d 902, 911 (9th Cir. 2008), argues "an employee's

3   knowledge will generally be imputed to the corporation so long as the employee is acting

4   within the scope of his or her employment" (see Pl.'s Opp'n at 23:3-4).  In both those

5   cases, however, there was no question that the corporate officer, when engaged in the

6   allegedly wrongful conduct, was acting in the scope of his employment with the corporate

7   defendant and that the corporate defendant itself owed a duty to the plaintiff therein,

8   namely, a duty under the Securities Exchange Act of 1934, see In re Tesla, 477 F. Supp.

9   3d at 921, and a duty under a written contract, see Bank of New York, 523 F.3d at 911.

10      Here, by contrast, the alleged wrongful conduct on the part of Sysoev and

11  Smirnoff, namely, false representations and concealment, was committed in the scope of

12  their employment at Rambler, not in the scope of their employment at NGINX Software,

13  Inc., NGINX BVI, and NGINX DE, and Lynwood cites no case supporting its contention

14  that their duty to Rambler, as employees of Rambler, can be imputed to an entity that

15  owes no such duty.

16      Accordingly, the Court finds Lynwood fails to state a claim for fraud as alleged

17  against NGINX Software, Inc., NGINX BVI, and NGINX DE.  Although the Court has not

18  found Lynwood fails to state a claim for fraud as alleged against the Disloyal Employees,

19  that claim, as discussed earlier herein, is time-barred.  See supra Section III.A.3.

20          **6.  Fourteenth Claim for Relief – Direct Copyright Infringement Against**
            **Defendants Konovalov, Sysoev, Alexeev, Dounin, Smirnoff, NGINX**
21          **BVI, NGINX Software, Inc., NGINX DE, Robertson and F5**

22      To state a claim for copyright infringement, a plaintiff must allege: "(1) ownership

23  of a valid copyright, and (2) copying of constituent elements of the work that are original."

24  See Feist Publications, Inc. v. Rural Tel. Serv. Inc., 499 U.S. 340, 361 (1991).  Further, a

25  plaintiff "must identify with specificity which work or works were copied" and specify

26  "which [d]efendant is alleged to have infringed which particular copyright."  See Iglesia Ni

27  Cristo v. Cayabyab, 2018 WL 4674603, at *6-7 (N.D. Cal. Sept. 26, 2018).

28      By the March 25 Order, Judge Koh dismissed this claim as to NGINX BVI, NGINX

United States District Court
Northern District of California

Software, Inc., BV NGINX, Runa Capital, E. Ventures, and F5, finding Lynwood "failed to plausibly allege" that they "copied the constituent elements of the work." (See March 25 Order at 30:21-22.)[23]  Specifically, Judge Koh, noting a plaintiff "must identify which [d]efendant is alleged to have infringed which particular copyright," found Lynwood "lump[ed] all the defendants together without stating which entity or person copied the work." (See id. at 30:22-23, 31:1-2.)  Moreover, Judge Koh found Lynwood's allegations that Runa Capital and E. Ventures "bought into the plan and funded it," rather than "copied the work," to "belie the notion that all defendants copied the work." (See id. at 31:4-6.)

The Court first notes that Lynwood fails to adequately identify in the AC which particular work or works were copied.[24]  Lynwood now identifies the copyrighted work as "Pre-2012 NGINX Software," which it defines as "NGINX Plus and Open Source NGINX, in both source code and executable form, conceived and/or developed before the end of 2011, when Sysoev left the employ of Rambler." (See AC ¶ 745; see also AC ¶ 15 (defining "NGINX Plus" as "proprietary NGINX software code"); ¶ 9 (defining "Open Source NGINX" as "NGINX software released to the public as 'open source' code").)  Although Lynwood argues "the term 'Pre-2012 NGINX Software' is precise because it identifies the specific iterations of Open Source NGINX and NGINX Plus that Sysoev wrote as works for hire under Russian law while he was employed by Rambler" (see Pl.'s Opp'n at 25:5-7 (citing AC ¶¶ 25, 191)), no such specific iterations can be identified from the paragraphs Lynwood cites in support of such allegation. (See AC ¶ 25 (alleging

_____

[23] By the March 30 Order, Judge Koh dismissed this claim as to Konovalov, Sysoev, Alexeev, Dounin, Smirnoff, and Robertson as untimely, but did not go on to address those defendants' argument that Lynwood also failed to state a claim.

[24] Although Judge Koh did not reach the issue in connection with her assessment of the initial Complaint, inadequacy of identification was raised as a ground for dismissal at that time. (See Mot. to Dismiss, filed Sept. 30, 2020, by Defs. Maxim Konovalov, Igor Sysoev, Andrey Alexeev, Maxim Dounin, Gleb Smirnoff, Angus Robertson at 12:25-26, Dkt. No. 106; Mot. to Dismiss, filed Aug. 28, 2020, by Defs. F5 Networks, Inc., NGINX, Inc. (BVI) and NGINX Software, Inc. at 16:11-18:8, Dkt. No. 88.)

United States District Court
Northern District of California

1   Sysoev "claims to have written ninety-seven (97) percent of Open Source NGINX"); ¶ 191

2   (alleging Sysoev "has maintained that he authored ninety-seven percent of Open Source

3   NGINX as of 2011").)  Moreover, Lynwood's definition fails for the additional reason that it

4   includes software "conceived" but not developed at Rambler.  See L. v. Sony Music Ent.,

5   Inc., 448 F.3d 1134, 1140 (9th Cir. 2006) (noting "[c]opyright protects original works of

6   authorship fixed in any tangible medium of expression").

7          Equally, if not more, importantly, Lynwood, in alleging infringement, again lumps

8   together all defendants against whom the claim is brought, in this instance, Konovalov,

9   Sysoev, Smirnoff,  Alexeev, Dounin, NGINX Software, Inc., NGINX BVI, NGINX DE,

10  Robertson, and F5, i.e., the newly named "Direct Copyright Infringement Defendants."

11  (See, e.g., AC ¶ 755 (alleging "[t]he Direct Copyright Infringement Defendants have

12  engaged in and are engaging in reckless, blatant, willful, and repeated infringement of

13  [p]laintiff's copyright rights"); ¶ 759 (alleging "[t]he Direct Copyright Infringement

14  Defendants . . . have introduced 20 or more commercial releases of NGINX Plus").)

15  Such collective allegations do not suffice to plead a viable infringement claim.  See

16  Bravado Int'l Grp. Merch. Servs. v. Cha, 2010 WL 2650432, at *6 (C.D. Cal. June 30,

17  2010) (dismissing claim where plaintiff "lumped all [d]efendants together" and "d[id] not

18  demonstrate which groups infringed which . . . copyrights"; noting "it is not the [c]ourt's

19  responsibility to sort them out for [p]laintiff").

20         Accordingly, the Court finds Lynwood fails to state a claim for copyright

21  infringement.

22  **IV.  CONCLUSION**

23         For the reasons set forth above, defendants' motion to dismiss the AC is hereby

24  GRANTED, and the First, Second, Fourth, Seventh, Eighth, Ninth, Twelfth, Thirteenth,

25  and Fourteenth Claims for Relief are hereby DISMISSED without further leave to amend.

26  (See March 25 Order at 33:4-6 (warning "failure to cure deficiencies identified herein or

27  identified in the instant motions to dismiss or the Individual Defendants' motion to

28  dismiss, will result in dismissal of the deficient claims with prejudice"; dismissing claims in

1  initial Complaint corresponding to Seventh, Eighth, Ninth, Twelfth, Thirteenth, and

2  Fourteenth Claims for Relief); March 30 Order at 37:5-8 (warning "failure to cure

3  deficiencies identified in this Order, the [March 25 Order], the instant motion to dismiss,

4  or the F5 Entities' and Outside Investors' motions to dismiss, will result in dismissal of the

5  deficient claims with prejudice"; dismissing claims in initial Complaint corresponding to

6  First, Second, Fourth, Ninth, Twelfth, Thirteenth, and Fourteenth Claims for Relief).)[25]

7

8  **IT IS SO ORDERED.**

9

10  Dated: August 16, 2022

MAXINE M. CHESNEY
United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24  _____

[25] Although NGINX DE is, as noted, in default and has not moved to dismiss the
25  AC (see Clerk's Notice of Entry of Default Against Def. NGINX, Inc. (DE), Dkt. No. 71),
the Court also dismisses as to NGINX DE those claims that are asserted against it,
26  specifically, the Ninth, Twelfth, Thirteenth, and Fourteenth Claims for Relief.  See
Silverton v. Dept of Treasury, 644 F.2d 1341, 1345 (9th Cir. 1981) (holding, where court
27  grants motion to dismiss complaint as to moving defendants, court may dismiss
complaint against non-moving defendant "in a position similar to that of moving
28  defendants").