MICHAEL A. JACOBS (CA SBN 111664)
JESSICA L. GRANT (CA SBN 178138)
ERIC AKIRA TATE (CA SBN 178719)
JOYCE LIOU (CA SBN 277720)
COOPER J. SPINELLI (CA SB 299299)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522
MJacobs@mofo.com; JGrant@mofo.com
ETate@mofo.com; JLiou@mofo.com

BENJAMIN J. FOX (CA SBN 193374)
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California 90017-3543
Telephone: 213.892.5200
Facsimile: 213.892.5454
BFox@mofo.com

PAUL GOLDSTEIN (CA SBN 79613)
Stanford Law School
559 Nathan Abbott Way
Stanford, California 94305-8610
Telephone: 650.723.0313
Facsimile: 650.327.0811
paulgold@stanford.edu

*Attorneys for Defendants*
F5, INC., NGINX, INC. (BVI),
and NGINX SOFTWARE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LYNWOOD INVESTMENTS CY LIMITED,

Plaintiff,

vs.

MAXIM KONOVALOV, IGOR SYSOEV, ANDREY ALEXEEV, MAXIM DOUNIN, GLEB SMIRNOFF, ANGUS ROBERTSON, NGINX, INC. (BVI), NGINX SOFTWARE, INC., NGINX, INC. (DE), BV NGINX, LLC, RUNA CAPITAL, INC., EVENTURE CAPITAL PARTNERS II LLC and F5 NETWORKS, INC.,

Defendants.

No. 20-CV-03778-MMC

**F5 ENTITIES' NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES; MEMORANDUM OF POINTS AND AUTHORITIES**

Date: December 2, 2022
Time: 9:00 a.m.
Courtroom 7, 19th Floor
The Honorable Maxine M. Chesney

## TABLE OF CONTENTS

**Page**


NOTICE OF MOTION AND MOTION TO DISMISS ... 1
STATEMENT OF ISSUES TO BE DECIDED ... 1
MEMORANDUM OF POINTS AND AUTHORITIES ... 1
FACTUAL BACKGROUND AND PROCEDURAL HISTORY ... 3
A. Lynwood Alleged Overreaching Claims Based on Open Source Software ... 3
B. After Failing in Its Criminal Referral in Russia, Lynwood Files an Unmanageably Large Complaint Here ... 4
C. Despite Warnings That the Case Would Likely Be Narrowed Or Dismissed, Lynwood Propounds Excessive Discovery Escalating Defendants' Costs ... 5
D. The Court Orders Lynwood to Narrow Its Case and Grants Defendants' Motion to Stay Discovery ... 5
E. The Court Grants Defendants' Motions to Dismiss Lynwood's Selected Claims in the Original Complaint ... 6
F. Lynwood Files Its Amended Complaint, Even More Prolix And Deficient Than Its First, and the Court Dismisses It With Prejudice ... 6
ARGUMENT ... 7
I. THE COURT SHOULD AWARD ATTORNEY'S FEES TO THE F5 ENTITIES FOR DEFENDING AGAINST LYNWOOD'S MERITLESS COPYRIGHT INFRINGEMENT CLAIM ... 7
A. Lynwood's Pursuit of Its Lawsuit Was Objectively Unreasonable ... 8
B. Defendants Achieved Complete Success in Defending the Lawsuit ... 10
C. Considerations of Compensation and Deterrence and the Remaining *Kirtsaeng* Factors Also Favor a Fee Award ... 11
a. Defendants' successful defenses furthered the purposes of the Copyright Act. ... 11
b. Lynwood's motivation for the lawsuit also weighs in favor of a fee award. ... 13
II. ATTORNEY'S FEES SHOULD ALSO BE AWARDED FOR THE F5 ENTITIES' DEFENSE OF ALL "RELATED CLAIMS" DISMISSED BY THE COURT WITHOUT LEAVE TO AMEND ... 14
III. FEES AND COSTS TOTALING $837,602.15 SHOULD BE AWARDED ... 16
A. The F5 Entities Incurred at Least $705,711.05 in Fees Defending Against Lynwood's Claims of Direct Copyright Infringement ... 16

**TABLE OF CONTENTS**
**(continued)**

**Page**

B. The F5 Entities Incurred at Least $131,891.10 in Additional Fees Responding to Related Claims That Turned on Whether F5 Acquired, Further Developed, and Published Allegedly Infringing Software ..... 18

CONCLUSION ..... 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
No. 18-cv-00933-MMC, 2020 WL 1877707 (N.D. Cal. Apr. 15, 2020) .... 9

*Chestang v. Yahoo Inc.*,
No. 2:11-cv-00989-MCE-KJN PS, 2012 WL 3915957 (E.D. Cal. Sept. 7, 2012) .... 8

*Choyce v. SF Bay Area Indep. Media Ctr.*,
No. 13-cv-01842-JST, 2014 WL 5597274 (N.D. Cal. Nov. 3, 2014) .... 10, 11

*Cobbler Nev., LLC v. Gonzales*,
901 F.3d 1142 (9th Cir. 2018) .... 10

*Doc's Dream, LLC v. Dolores Press, Inc.*,
959 F.3d 357 (9th Cir. 2020) .... 11

*Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*,
No. LA CV16-00339 JAK (FFMx), 2017 WL 8236267 (C.D. Cal. Dec. 5, 2017) .... 11, 14

*Gregorini v. Apple Inc.*,
No. CV 20-406-JFW (JCx), 2020 U.S. Dist. LEXIS 258275 (C.D. Cal. July 21, 2020) .... 10

*Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*,
152 F. Supp. 3d 503 (E.D. Va. 2015) .... 14

*Iglesia Ni Cristo v. Cayabyab*,
No. 18-cv-00561-BLF, 2018 WL 4674603 (N.D. Cal. Sept. 26, 2018) .... 8, 9

*Kernel Records Oy v. Mosley*,
No. 09-21597-CIV, 2013 U.S. Dist. LEXIS 99094 (S.D. Fla. July 16, 2013) .... 11

*Kirtsaeng v. John Wiley & Sons, Inc.*,
579 U.S. 197 (2016) .... 7, 8, 12, 13

*Mattel, Inc. v. MGA Entm't, Inc.*,
705 F.3d 1108 (9th Cir. 2013) .... 8, 11, 12, 14

*McCown v. City of Fontana*,
565 F.3d 1097 (9th Cir. 2009) .... 15

*McHenry v. Renne*,
84 F.3d 1172 (9th Cir. 1996) .... 10

*Oracle USA, Inc. v. Rimini St., Inc.*,
209 F. Supp. 3d 1200 (D. Nev. 2016) ....................18

*Oracle USA, Inc. v. Rimini St., Inc.*,
783 Fed. Appx. 707 (9th Cir. 2019) ....................15

*Perfect 10, Inc. v. Giganews, Inc.*,
No. CV 11-07098-AB (SHx), 2015 WL 1746484
(C.D. Cal. Mar. 24, 2015) ....................8, 12, 16

*Perfect 10, Inc. v. Giganews, Inc.*,
847 F.3d 657 (9th Cir. 2017)....................8

*Scott v. Meyer*,
No. CV 09-6076 ODW (RZx), 2010 WL 2569286
(C.D. Cal. June 21, 2010)....................12, 13

*Shame on You Prods. v. Banks*,
893 F.3d 661 (9th Cir. 2018).................... *passim*

*Tresóna Multimedia, LLC v. Burbank High School Vocal Music Ass'n*,
953 F.3d 638 (9th Cir. 2020)....................10

*Washington v. Viacomcbs, Inc.*,
No. 2:30-cv-00435-CBM-PJW, 2021 U.S. Dist. LEXIS 243658
(C.D. Cal. Dec. 9, 2021) ....................10, 17

*White v. Broadus*,
748 Fed. Appx. 131 (9th Cir. 2019) ....................12

*Wild v. NBC Universal*,
No. CV 10-3615 GAF (AJWx), 2011 WL 12877031
(C.D. Cal. July 18, 2011) ....................13

**Statutes and Rules**

17 U.S.C. § 1....................4

17 U.S.C. § 505 .................... *passim*

28 U.S.C. § 1920 ....................8

Fed. R. Civ. P. 9(b) ....................5, 6, 7

Civil L.R. 54-5(b) ....................16

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on December 2, 2022, at 9:00 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Maxine M. Chesney, United States District Court, Northern District of California, San Francisco Courthouse, Courtroom 7, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, defendants F5, Inc.; NGINX, Inc. (BVI); and NGINX Software, Inc. (the "F5 Entities") will and hereby do move the Court pursuant to 17 U.S.C. § 505 for an award of attorney's fees incurred in defending against plaintiff Lynwood Investments CY Limited's ("Lynwood") claims for direct copyright infringement and related claims that were dismissed by the Court's order dated August 16, 2022, dismissing the claims without leave to amend. ECF 162. The F5 Entities seek $837,602.15 in fees. (Jacobs Decl. ¶¶ 3-5.)

This motion is based on the Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the Request for Judicial Notice previously filed and granted (ECF 89, 134 at 11-12); the concurrently filed Declaration of Michael A. Jacobs; the papers and records on file in this action, and such other written and oral argument as may be presented to the Court.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether attorney's fees should be awarded to the F5 Entities for defending against Lynwood's claims for direct copyright infringement, because the claims were objectively unreasonable, the F5 Entities achieved complete success, Lynwood pursued the claims for the improper purpose of extracting money from the F5 Entities (and others) based on the publicly disclosed purchase price for the NGINX software, and a fee award would advance considerations of compensation and deterrence. *See* 17 U.S.C. § 505.

2. Whether attorney's fees should be awarded to the F5 Entities for defending against "related claims" dismissed by the Court's order granting their motion to dismiss with prejudice (ECF 162) because the dismissed claims "involve a common core of facts *or* are based on related legal theories," including that the F5 Entities acquired and published allegedly infringing software. *Shame on You Prods., Inc. v. Banks*, 893 F.3d 661, 669 (9th Cir. 2018) (emphasis in original).

## MEMORANDUM OF POINTS AND AUTHORITIES

An award of reasonable attorney's fees incurred by the F5 Entities in defending against the

claims for relief dismissed by the Court's order granting their motion to dismiss without leave to amend is warranted here. ECF 162.[1]

All the factors to be considered in evaluating a fee request pursuant to 17 U.S.C. § 505 favor a fee award. Lynwood pursued objectively unreasonable positions in this litigation, failing even to plead a copyright infringement claim by identifying with specificity the works on which it sued, the constituent elements of the open source software that were original to Lynwood or its predecessor, Rambler, and which defendant allegedly infringed which work. Lynwood pursued decade-old claims, the untimeliness of which it sought to obscure through a 167-page complaint that was so prolix and confusing it required charts and addenda to decipher. Plaintiff multiplied the F5 Entities' fees and costs incurred by demanding responses to 1,200-plus document requests, by forcing discovery motion practice, and by insisting on going forward with its claims even after the Court expressed its doubts that the pleading defects could be cured by amendment.

Lynwood's motivation in pursuing the lawsuit was opportunistic at best. It asserted its claims only after public reports that F5 Inc. had purchased the NGINX software for $670 million in an arm's length transaction. Its lawsuit aimed to compel the deletion of all copies of NGINX computer code—including an open source project used by millions worldwide—which would have significantly impeded creative works and potentially disrupted a significant portion of web serving across the worldwide web. Lynwood should have known it faced attorney fee exposure in pursuing its copyright claims: it is a sophisticated offshore holding company backed by a Russian oligarch.

All the reasons for awarding fees incurred directly in defending against Lynwood's claims for copyright infringement apply to the other claims dismissed without leave to amend by the Court's order dated August 16, 2022. As the Ninth Circuit explained in *Shame on You Productions, Inc. v. Banks*, 893 F.3d 661 (9th Cir. 2018), attorney's fees are properly awarded on the copyright claim and all "related claims" that "involve a common core of facts *or* are based on related legal theories." *Id.* at 669 (quotations omitted) (emphasis in original). The additional claims against the

[1] Consistent with the parties' stipulation, Defendants do not seek fees incurred in connection with the non-prioritized, previously stayed claims that Lynwood voluntarily dismissed on September 9, 2022. ECF 166.

F5 Entities that were dismissed by the Court's August 16, 2022 Order rested upon Lynwood's core allegation that F5 acquired, further developed, and published NGINX software that was substantially similar to software in which Lynwood claimed a copyright. As to F5, no other theory could have been put forward: F5 did nothing other than purchase a company offering a suite of software products for fair value. That business decision did not warrant two years of litigation. An award of attorney's fees is justified to lessen the harm caused by Lynwood and to deter overreaching positions by future litigants.

For the reasons explained herein and in the declaration of Michael A. Jacobs, an award to the F5 Entities of $837,602.15 in attorney's fees is warranted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Lynwood Alleged Overreaching Claims Based on Open Source Software

NGINX is the world's most popular web server and is used by hundreds of millions of individuals and businesses worldwide. Amended Complaint ("AC") ¶ 419. Lynwood, a Cypriot holding company affiliated with Russian billionaire Alexander Mamut, pursued this lawsuit with the stated aim of effecting the destruction of the NGINX software. AC ¶¶ 73, 452 & Prayer for Relief ¶ G ("ordering Defendants to destroy all copies of such works [open source NGINX and NGINX Plus], and all derivative works thereof"). Defendants' successful defense stopped them.

By Lynwood's admission, Igor Sysoev wrote the first line of code for the NGINX software in 2001. AC ¶ 23. In 2004, Sysoev published NGINX as open source software, making it free for anyone in the world to download, use, and contribute to. AC ¶¶ 34-35. After NGINX's public release, NGINX's popularity surged "among operators of large Web sites in Russia" and "around the world." AC ¶ 34. Lynwood acknowledges the open source software "was not a secret" (*id.* at ¶ 229), but nevertheless claims the open sourcing of the code was part of a "covert scheme" to "brazenly" steal the NGINX software from Rambler in a "massive heist" that supposedly went undetected for years. *Id.* ¶¶ 1, 33, 460. The supposedly "covert scheme" involved Sysoev and Maxim Konovalov informing Rambler in 2011 of their intent to found a company to provide services to, and earn income from, NGINX. *Id.* ¶¶ 315, 324. They then spent the next few years doing just that, growing a successful company they named NGINX, Inc., publicly releasing

proprietary versions called NGINX Plus in 2013, and then selling the company to F5 in 2019 for $670 million. *Id.* ¶¶ 305, 453, 550, 740.

In response, Rambler Internet Holding LLC ("Rambler") assigned its purported rights in the NGINX software to Lynwood for "enforcement" purposes, yet neither took legal action for years. *Id.* ¶ 457. Lynwood waited until 2019, when F5 acquired NGINX in a $670 million deal. *Id.* ¶¶ 390-392; *see also* Compl., ECF 1. Several months later, Lynwood made a referral to Russian authorities to launch a criminal investigation in Russia against Sysoev and other individual defendants here. Russian security forces armed with automatic weapons raided Sysoev's and the others' homes and offices and seized their laptops and mobile devices. *See, e.g.*, ECF 103-2 (document requests from Lynwood referencing the "Russian Criminal Investigation" "initiated on December 4, 2019"); Jacobs Decl. Ex. B. Following international outcry, the case collapsed; Russian authorities found no evidence to support Lynwood's claims and declined to prosecute it. Jacobs Decl. Ex. B. Lynwood then filed this lawsuit. ECF 1.

### B. After Failing in Its Criminal Referral in Russia, Lynwood Files an Unmanageably Large Complaint Here

Lynwood filed its original complaint on June 8, 2020, seeking over $750 million and permanent destruction of all copies of NGINX, both proprietary and open source. Compl. at 138. The complaint contained 140 pages, 873 paragraphs, and 26 claims for relief against 12 defendants. The crux of Lynwood's complaint was that it owned the copyright in NGINX, and that Defendants, beginning in 2011 or earlier, infringed the copyright by "purloing[ing]," reproducing, and then eventually selling the software. *Id.* ¶¶ 1-10, 71 ("This action arises under the Copyright Laws of the United States, 17 U.S.C. §§ 1, *et seq*.). Lynwood claimed that it discovered a "smoking gun" computer server in 2019 containing code and meta data that revealed Sysoev had "developed proprietary, commercial versions of NGINX software code" at Rambler. *Id.* ¶ 9; AC ¶¶ 9, 15. Lynwood further alleged that source code for the open source NGINX was available on Rambler's own servers. AC ¶ 734. Yet despite this supposed evidence—and notwithstanding 140 pages and 873 paragraphs of allegations—Lynwood failed to specifically identify the copyrighted works, which elements were original to Rambler, or which defendant infringed which copyrighted work.

*See, e.g.*, ECF 134 at 30-31 (Court's order dated March 25, 2021, explaining Lynwood's copyright pleading defects). Instead, Lynwood identified its works-in-suit as including all versions of NGINX software created over a 10-year period, including open source software that had been free for all to use since 2004, pleaded the works in the alternative (by use of "and/or"), and included unidentified "derivations" of any NGINX software *as well as ideas* "conceived" but not reduced to writing. Compl. ¶ 702; *see also* ECF 88 at 16-18; ECF 134. It then lumped all Defendants together without identifying which defendant copied which original elements. Compl. ¶¶ 713-715.

In August and October 2020, all Defendants moved to dismiss the complaint in its entirety, explaining *inter alia* that Lynwood's claims were time barred, sounded in fraud but failed to satisfy Rule 9(b), and otherwise failed to state a claim. ECF 88, 90, 106.

### C. Despite Warnings That the Case Would Likely Be Narrowed Or Dismissed, Lynwood Propounds Excessive Discovery Escalating Defendants' Costs

In August 2020, Defendants warned Lynwood that its complaint was defective and would likely be narrowed or dismissed (ECF 103-1, ¶ 2) and twice requested (in August and September 2020) that Lynwood agree to a stay of discovery pending resolution of the motions to dismiss. ECF 103-1, ¶¶ 2-9. Lynwood refused, declining even to grant an extension of time, and sought to pursue over 1,200 document requests served on Defendants, including 462 requests to the F5 Entities alone. *Id.* The bulk of Lynwood's discovery requests were grossly disproportionate and improper and included requests for F5's future product lines, tax and other financial records, the identities of all F5's customers and all communications with those customers, all iterations of NGINX source code, and even information regarding Rambler. ECF 103. The F5 Entities moved to stay discovery on September 28, 2020, arguing that their motion to dismiss was likely to dispose of or narrow the case. *Id.* Lynwood opposed, arguing that it was "clear" the motion to dismiss would not dispose of or "significantly reduce the number of claims." ECF 112.

### D. The Court Orders Lynwood to Narrow Its Case and Grants Defendants' Motion to Stay Discovery

On October 1, 2020, the Court found Lynwood's complaint "unmanageably large" and ordered Lynwood to select 10 claims to be litigated through trial, with the remaining claims stayed

pending resolution of the selected claims. ECF 107. Lynwood selected the claims to be prioritized—presumably to advance its best claims—including direct copyright infringement and related claims of aiding and abetting, fraud, and tortious interference that arose from the same core operative facts that supported the copyright infringement theory. ECF 110; *see* Section II, *post*.

Following the Court's case-narrowing order, Defendants again requested that Lynwood agree to a stay of discovery. ECF 112-1, Ex. A. Lynwood again refused. *Id.* On November 3, 2020, the Court granted Defendants' motion to stay discovery. ECF 117.

### E. The Court Grants Defendants' Motions to Dismiss Lynwood's Selected Claims in the Original Complaint

In March 2021, the Court granted Defendants' motions to dismiss Lynwood's selected claims on the grounds that they were time-barred, sounded in fraud but did not satisfy Rule 9(b), and failed to state a claim. ECF 134, 135. As to the copyright infringement claim, the Court found that Lynwood improperly "lump[ed] all the defendants together without stating which entity or person copied the work" and "failed to plausibly allege that the F5 Entities and the Outside Investors copied the constituent elements of the work." ECF 134 at 30. The Court further found that Lynwood's claims were "untimely because they stem from the Team's alleged theft of the NGINX Enterprise from Rambler" in 2011 and "Lynwood cannot plausibly allege that it did not have 'actual or constructive knowledge of the facts giving rise to its claim.'" *Id.* at 20.

The Court granted leave to amend, but warned Lynwood by case management order that it was "unsure whether Lynwood will be able to cure all of the deficiencies identified" in the Court's orders. ECF 136 at 2. Defendants put Lynwood on notice that Lynwood faced exposure to Defendants' fees incurred if they did not dismiss the complaint voluntarily. *See, e.g.*, ECF 137, 145. Lynwood refused.

### F. Lynwood Files Its Amended Complaint, Even More Prolix and Deficient Than Its First, and the Court Dismisses It With Prejudice

Lynwood filed its amended complaint in April 2021. The pleading was 25 pages longer than the first, but no better in its key allegations. Lynwood again failed to specifically identify the copyrighted works on which it sued, alleging that the "Copyrighted Works" were "derivative of"

and "heavily reliant" on "Open Source NGINX" and that 75 percent of the "Open Source NGINX" is the open source software released online and used by "450 million websites" worldwide—without stating which elements were original to or copyrighted by Rambler or Lynwood. AC ¶¶ 9, 37, 425, 520, 737. Lynwood then paradoxically alleged, inconsistent with its other allegations and the terms of the "BSD-style" open source license cited in the complaint, that Sysoev's release of NGINX as open source software "did not contravene Rambler's ownership rights." *Id.* ¶¶ 209, 324. Defendants again moved to dismiss. ECF 144.

On August 16, 2022, the Court granted Defendants' consolidated motion to dismiss Lynwood's non-stayed claims without leave to amend. ECF 162. On the copyright claim, the Court found that Lynwood again failed to meet its threshold pleading burden to identify with specificity which works were copied and which defendant infringed which particular copyright. *Id.* at 33-35. On the claims against the F5 Entities for aiding and abetting, tortious interference, and fraud, the Court held that Lynwood failed to satisfy Rule 9(b), that the claims were time-barred, and that the complaint failed to properly plead a claim. *Id.* at 10-12, 25-33.

Following the Court's August 16 order, Lynwood stated it intended to proceed with the non-stayed claims, then reversed course one day before the case management conference, indicating that it wished to dismiss the non-stayed claims with prejudice. ECF 165, 166. The Court entered judgment in favor of Defendants on September 9, 2022. ECF 168.

## ARGUMENT

### I. THE COURT SHOULD AWARD ATTORNEY'S FEES TO THE F5 ENTITIES FOR DEFENDING AGAINST LYNWOOD'S MERITLESS COPYRIGHT INFRINGEMENT CLAIM

The Copyright Act vests courts with discretion to award attorney's fees to the prevailing party. 17 U.S.C. § 505; *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 197-98 (2016). There is no "precise rule or formula" to be applied. *Kirtsaeng*, 579 U.S. at 197, 202. Courts should consider nonexclusive factors that include: (1) the degree of success obtained by the prevailing party; (2) the objective unreasonableness of the losing party's positions (both in the factual and legal components); (3) the losing party's motivation for bringing or maintaining the action; (4) the need to advance considerations of compensation and deterrence; and (5) whether a chilling effect

from attorney's fees award may be too great or impose an inequitable burden. *Id.*; *see also Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 675 (9th Cir. 2017).

In applying these factors, courts "view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals." *Kirtsaeng*, 579 U.S. at 209. "The Act's 'ultimate aim is . . . to stimulate artistic creativity for the general public good.'" *Mattel, Inc. v. MGA Ent., Inc.*, 705 F.3d 1108, 1111 (9th Cir. 2013) (quoting *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975)). No single factor is determinative. "Indeed, courts have awarded costs for copyright claims based on a single factor." *Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 1746484, at *2 (C.D. Cal. Mar. 24, 2015) (quotations and brackets omitted), *aff'd*, 847 F.3d at 675. Here, all of the factors weigh in favor of an award of attorney's fees.

### A. Lynwood's Pursuit of Its Lawsuit Was Objectively Unreasonable

The objective unreasonableness of Lynwood's claims is reflected by its repeated failure to do the minimum to state a copyright claim. Identifying the copyrighted work and which defendant is alleged to have infringed which particular copyright is fundamental to any pre-suit investigation and to pleading a claim for infringement. *See, e.g.*, *Iglesia Ni Cristo v. Cayabyab*, 2018 WL 4674603, at *6 (N.D. Cal. Sept. 26, 2018); *Chestang v. Yahoo Inc.*, 2012 WL 3915957, at *3 (E.D. Cal. Sept. 7, 2012) ("Plaintiff must, at a minimum, identify the copyrighted material at issue with specificity sufficient to put defendant on notice of what he claims was infringed."); ECF 162 at 33-35. Yet Lynwood failed in these basic steps. ECF 162 at 33-35. As the Court recognized, Lynwood twice improperly identified the copyrighted works as "Pre-2012 NGINX Software," without specifying which elements were original to Rambler or Lynwood and which were created by the thousands of contributors to the NGINX open source software project. *Id.*; *see also* ECF 134 at 30. Instead of identifying the copyrighted works with specificity, Lynwood offered an argumentative "razor/razor-blade" analogy, and a potpourri of defined terms and cross-references that, when unpackaged, boiled down to allegations of "open source" and "proprietary" NGINX software "conceived and/or developed before the end of 2011." AC ¶¶ 15, 39, 230, 745. Lynwood also failed to specify "which Defendant . . . infringed which particular copyright" (ECF 162 at 33) and made no real effort to plead facts reflecting that Defendants "copied the constituent [original]

elements of the work." ECF 162 at 34. These hurdles should have been obvious at the outset given Lynwood's allegations that the open source software was licensed freely for all the world to use and had thousands of contributors. *See, e.g.*, *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, 2020 WL 1877707, at *6 (N.D. Cal. Apr. 15, 2020) (dismissing copyright infringement claim for failure to "adequately allege Cytek exceeded the scope of the license agreements for the software works and thus fails to show its copyrights in those works were infringed"). Indeed, the defects should have been obvious from a pre-filing investigation, and doubly plain when identified by the Court's order dismissing the original complaint in March 2022. ECF 134.

Lynwood's failures were not for lack of opportunity. Lynwood claimed to have "smoking gun" evidence that showed Sysoev developed proprietary NGINX software at Rambler. AC ¶¶ 9, 15, 449. Following this supposed discovery, Lynwood took more than another year to prepare its pleading, and nearly another full year between the filing of its original and amended complaints. *Id.* at ¶ 7. If facts existed to support its pleading, Lynwood needed to disclose them. *Iglesia Ni Cristo*, 2018 WL 4674603, at *6. Lynwood had access to the abundant case law and examples reflecting the minimum standards for pleading a copyright infringement claim in the Ninth Circuit.

In these circumstances, Lynwood's actions reflect objectively unreasonable litigation conduct. Again, Lynwood either had "smoking gun" evidence or it didn't. If Lynwood did, it should have identified which elements of the copyright work were original to Rambler and which defendant infringed which copyright. If did not, then it should have not claimed otherwise or wasted the Court's and Defendants' resources on this case. Despite ample opportunity, Lynwood failed to do the minimum needed to state a copyright claim. ECF 162 at 33-35.

Lynwood's lawsuit was objectively unreasonable in nearly every other respect as well. It launched its suit based on decades-stale claims and implausible allegations. *See* ECF 134, 162. It filed two prolix, convoluted complaints containing *873* and *963* paragraphs, respectively. ECF 1, 144; *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996) ("[p]rolix, confusing complaints such as the ones plaintiffs filed in this case impose unfair burdens on litigants and judges" and affirming dismissal of 53-page, 150-paragraph complaint). Lynwood then repeatedly failed to heed the Court's and Defendants' warnings that its claims were defective. It rebuffed Defendants' warnings

in August 2020 that its case would likely be narrowed or dismissed, and it did not materially amend its allegations notwithstanding the Court's orders signaling serious doubts about Lynwood's theories. ECF 103-1 ¶¶ 2-9; ECF 107 (narrowing case because it was "unmanageably large"); ECF 117 (granting motion to stay discovery); ECF 134-135 (granting motions to dismiss); ECF 136 (order expressing doubt Lynwood could cure its deficiencies). Instead, Lynwood escalated Defendants' fees and costs incurred in defending the copyright and related claims. It also tried to bury Defendants with more than one thousand document requests. ECF 103-1 ¶¶ 2-9, Exs. A-B.

### B. Defendants Achieved Complete Success in Defending the Lawsuit

The degree of success Defendants achieved was total. Because of the meritorious defenses Defendants advanced, all of Lynwood's claims were dismissed at the pleading stage with prejudice. That the case was resolved on the pleadings further supports a fee award. *See, e.g., Shame on You Prods.*, 893 F.3d at 669-70; *Cobbler Nev., LLC v. Gonzales*, 901 F.3d 1142, 1149-50 (9th Cir. 2018) (affirming fee award following motion to dismiss in copyright Internet subscriber infringement suit); *Washington v. Viacomcbs, Inc.*, 2021 U.S. Dist. LEXIS 243658, at *9-16 (C.D. Cal. Dec. 9, 2021) (awarding $283,833.75 in fees following successful motions to dismiss, including fees incurred during settlement discussions in the interim); *Gregorini v. Apple Inc.*, 2020 U.S. Dist. LEXIS 258275, at *3 (C.D. Cal. July 21, 2020) (awarding defendants' attorney's fees following grant of motion to dismiss based on ruling parties' works were not substantially similar).

A ruling on the "merits" of a copyright defense is not required to warrant fees: victory on a procedural or pleading issue is sufficient. *See, e.g.*, *Tresóna Multimedia, LLC v. Burbank High School Vocal Music Ass'n*, 953 F.3d 638, 654-55 (9th Cir. 2020) (reversing denial of fee award where district court concluded dismissal based on standing and qualified immunity was unrelated to purposes of copyright). As other courts have noted in awarding fees, the "Court did not order a pleading error corrected, it dismissed the claim with prejudice." *Choyce v. SF Bay Area Indep. Media Ctr.*, 2014 WL 5597274, at *4 (N.D. Cal. Nov. 3, 2014) (awarding fees to copyright defendant where plaintiff failed to plead facts establishing registration, even though plaintiff argued against fees on the ground that "have not litigated any defenses on its merits; rather, they have simply pointed out a . . . pleading error."), *aff'd*, 669 Fed. Appx. 863 (9th Cir. 2016); *Gold Value*

*Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 2017 WL 8236267, at *4 (C.D. Cal. Dec. 5, 2017) ("Where a defendant has prevailed on a technical defense, courts have considered whether the defendant remains subject to future claims by the plaintiff or whether the plaintiff's claims were dismissed with prejudice").

Nor is Lynwood's failure to obtain a U.S. copyright registration for any NGINX work an impediment to awarding fees to the F5 Entities for their successful defense.[2] As *Doc's Dream, LLC v. Dolores Press, Inc.*, 959 F.3d 357 (9th Cir. 2020), explained:

> The fee-shifting provision of § 505 applies to 'any civil action under' the Copyright Act. We hold that any action that turns on the existence of a valid copyright and whether that copyright has been infringed sufficiently invokes the Copyright Act as to allow for the discretionary award of attorney's fees.

*Id.* at 363; *see also Kernel Records Oy v. Mosley*, 2013 U.S. Dist. LEXIS 99094, at *33 (S.D. Fla. July 16, 2013) (awarding attorney's fees to defendant that prevailed on statute of limitations defense to copyright claim, including as to unregistered works).

A fee award is warranted based on Defendants' degree of success.

### C. Considerations of Compensation and Deterrence and the Remaining *Kirtsaeng* Factors Also Favor a Fee Award

Defendants' success in defending against Lynwood's claims furthered the purposes of the Copyright Act and warrants an award of fees. Lynwood's motivation in prosecuting this case deserves deterrence, and the equities generally do not support a different result.

#### a. Defendants' successful defenses furthered the purposes of the Copyright Act.

"The most important factor in determining whether to award fees under the Copyright Act, is whether an award will further the purposes of the Act." *Mattel*, 705 F.3d at 1111. It would here for several reasons.

Defendants' successful defense ensured that the world will continue to have access to a

[2] If Lynwood had applied for a U.S. copyright registration, it would have been required to deposit the specific copyrighted work with the Copyright Office, or otherwise to identify it with specificity. Here, too, Lynwood's failure to identify the work was an obvious red flag.

copyrightable work that powers the modern Internet and serves hundreds of millions. *Kirtsaeng*, 579 U.S. at 204 (the Copyright Act "ultimately serves the purpose of enriching the general public through access to creative works"). NGINX is the world's most widely used web server. By Lynwood's own admission, the open source version alone helps power over half of the world's web applications and more than 400 million websites. AC ¶¶ 419, 421, 933. Millions of people and businesses rely on it, and NGINX Inc. has operated it for the last decade. Yet Lynwood sought through this lawsuit to compel destruction of all copies of open source and proprietary NGINX code, a result that would have stifled commerce and smothered creativity. By preventing that outcome, Defendants furthered the purpose of the Act. *Kirstaeng*, 579 U.S. at 204.

Where, as here, "defendants 'advance[d] a variety of meritorious copyright defenses'," they also furthered "[t]he Act's ultimate aim . . . to stimulate artistic creativity for the general public good." *Mattel*, 705 F.3d at 1111; *White v. Broadus*, 748 Fed. Appx. 131, 133 (9th Cir. 2019) (affirming attorney's fee award because defendants prevailed on motion to dismiss by advancing a "meritorious copyright defense[]" such as statute of limitations).

Such defenses (and successes) are even more important given Lynwood's conduct in this case and leading up to it, which sought to extort payments to which it is not entitled. Lynwood filed this lawsuit only after F5—a publicly traded U.S. company (AC ¶ 2)—acquired NGINX for $670 million in 2019. AC ¶¶ 390-392; *see Scott v. Meyer*, 2010 WL 2569286, at *3 (C.D. Cal. June 21, 2010) ("Deterring non-meritorious lawsuits against defendants seen as having 'deep pockets' and compensating parties that must defend themselves against meritless claims are both laudible ends"). Lynwood pursued an "over-aggressive copyright prosecution" seeking $750 million and destruction of all copies of NGINX software. *Perfect 10*, 2015 WL 1746484, at *7 ("even in absence of frivolous or unreasonable claims, successful defense furthered the interests of the copyright act by defeating an 'over-aggressive copyright prosecution' exemplified by 'pursuit of grossly overbroad monetary and injunctive relief'"); *see* AC ¶¶ 165-166; ECF 103-1; ECF 107. And Lynwood forced Defendants to continue defending the copyright (and related) claims even after they and the Court pointed out the serious flaws from which the pleading suffered. ECF 103-1. *Scott*, 2010 WL 2569286, at *3 (awarding fees where "Defendants were forced to defend against

Plaintiff's claims even after pointing out the fatal flaws from which her lawsuit suffered").

An award of fees here would help deter over-reaching litigation in future cases.

**b. Lynwood's motivation for the lawsuit also weighs in favor of a fee award.**

Lynwood's motivation for bringing suit also weighs in favor of awarding fees. *Kirtsaeng*, 579 U.S. at 202; *Wild v. NBC Universal*, 2011 WL 12877031, at *2 (C.D. Cal. July 18, 2011) ("'Courts generally hold that a finding of bad faith can be based on 'not only the actions that led to [the] lawsuit, but also [] the conduct of the litigation.'"). The actions leading up to the filing of the lawsuit and Lynwood's litigation positions reflect improper and unreasonable motivations:

- In response to Sysoev's public activities, Rambler assigned its rights in the NGINX software to Lynwood in 2015 for "enforcement" purposes. AC ¶ 457. Yet Lynwood took no legal action for years and acted only when F5 acquired NGINX for $670 million. *Id.* ¶¶ 390-392.

- Lynwood first referred its claims to Russian authorities, seeking to intimidate Sysoev and Konovalov into surrendering their rights to NGINX. Russian government officials ultimately declined to find that Lynwood's allegations were supported.

- Once Lynwood's efforts in Russia failed, Lynwood burdened the Court and Defendants with an unnecessarily complex and unwieldy 140-page complaint with 873 paragraphs and 26 claims, against 12 different defendants, based on alleged events that occurred more than a decade ago, and by reciting allegations of "concealment" and a "scheme by the Team" that were implausible on their face. ECF 107, 134.

- Despite claiming to have "smoking gun" evidence from a computer server that supported its copyright claims, Lynwood could not identify the works-in-suit with any specificity, which elements if any were original to Rambler, or who infringed it. AC ¶¶ 9, 15; ECF 134.

- Lynwood refused to heed Defendants' warnings that the case was likely to be narrowed or dismissed, and sought to pursue scorched-earth discovery, propounding over a thousand document requests on Defendants and seeking irrelevant information grossly disproportionate to the needs of the case. ECF 103-1.

- Even after the Court ordered Lynwood to narrow its case by selecting 10 claims to

litigate, Lynwood refused to agree to a stay of discovery. ECF 112-1, Ex. A.

- Lynwood ignored the Court's warning that it was unsure how Lynwood could cure its deficiencies, filing a 167-page amended complaint that reasserted the same time-barred, deficient claims, and again failed to identify which works were copied and which defendant allegedly infringed which particular copyright. ECF 136, 141, 162.

Lynwood's efforts were driven by a desire to extract a multi-million dollar payment from the F5 Entities (or others) based on the publicly announced 2019 purchase price for NGINX—without regard for the fact that F5 did nothing other than acquire a line of software products in an arm's length transaction. The record shows that Lynwood's efforts here were unjustified. *See, e.g.*, *Mattel*, 705 F.3d at 1111 ("The district court did not abuse its discretion in awarding MGA fees for fighting against Mattel's claim 'that was stunning in scope and unreasonable in the relief it requested.'"); *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 152 F. Supp. 3d 503, 515 (E.D. Va. 2015) (awarding fees where plaintiff "brought this lawsuit in an effort to extract money through a settlement" by "aggressively pursu[ing] an unusually large damages claim").

Lynwood is not an impecunious artist or merely mistaken plaintiff. It is a "seasoned" Cypriot holding company owned or controlled by Russian billionaire Alexander Mamut. AC ¶ 452; Jacobs Decl. Ex. A (Lynwood's initial disclosures listing Alexander Mamut as key witness who would have knowledge of "Lynwood's claims in the Action," the assignment, "Lynwood's damages," and the "management, ownership, and operations of Rambler"). An award of fees would have no chilling effect on legitimate copyright claimants or impose an inequitable burden. *Gold Value Int'l Textile,* 2017 WL 8236267, at *6 ("An award of attorney's fees imposes an inequitable burden if 'in light of the losing party's financial condition, it would be inequitable to award attorney's fees.'").

For all these reasons, the F5 Entities should be awarded their fees incurred in defending against Lynwood's meritless claim of direct copyright infringement.

## II. ATTORNEY'S FEES SHOULD ALSO BE AWARDED FOR THE F5 ENTITIES' DEFENSE OF ALL "RELATED CLAIMS" DISMISSED BY THE COURT WITHOUT LEAVE TO AMEND

The reasons for awarding fees incurred directly in defending the copyright infringement

claim apply equally to the Eighth, Ninth, Twelfth, and Thirteenth Claims for Relief (the "Related Claims") dismissed without leave to amend. ECF 162. As the Ninth Circuit explained in *Shame on You Productions*, the prevailing party on a complaint alleging copyright infringement is properly awarded fees on the copyright claim and all "related claims" that "'involve a common core of facts *or* are based on related legal theories'." 893 F.3d at 669 (quoting *Thomas v. City of Tacoma*, 410 F.3d 644, 649 (9th Cir. 2005)) (emphasis in original); *see also McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009) ("where the plaintiff presents different claims for relief that 'involve a common core of facts' or are based on 'related legal theories,' the district court should not attempt to divide the request for attorney's fees on a claim-by-claim basis. . . . Instead, the court must proceed to the second part of the analysis and 'focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)). The Related Claims each turned on Lynwood's accusation that the F5 Entities acquired, further developed, and published software that infringed Lynwood copyrights.

Lynwood's own allegations demonstrate that the "action was first and foremost a copyright infringement action," warranting an award of fees for defense of all claims against the F5 Entities. *Oracle USA, Inc. v. Rimini St., Inc.*, 783 Fed. Appx. 707, 711 (9th Cir. 2019) (affirming fee award to plaintiff without apportionment for non-copyright claims because the "action was first and foremost a copyright infringement action"). *See* generally AC ¶¶ 88, 104, 375-76, 379-83, 478-99 (relying on copyright allegations to establish Lynwood's alleged entitlement to relief).

The Related Claims against the F5 Entities cited and leveraged Lynwood's copyright allegations in the amended complaint. For example, the Eighth Claim alleged the F5 Entities "aided and abetted" breaches of duty by facilitating a sale of "the NGINX Enterprise to F5 . . . in contravention of Rambler's intellectual property rights," including copyright. AC ¶ 645. The Ninth Claim for tortious interference alleged that NGINX Inc. (BVI) and NGINX Software, Inc. encouraged Sysoev to breach obligations to Rambler by selling NGINX and by "refusing to assist Rambler in protecting its intellectual property rights." AC ¶¶ 659, 662. The Twelfth Claim similarly alleged tortious interference because the F5 Entities had "covertly stolen the NGINX

Enterprise and monetized it for themselves" by publishing infringing software. AC ¶ 699. And the Thirteenth Claim for fraud accused NGINX Inc. (BVI) and NGINX Software, Inc. of concealing information about NGINX software to "then sell that enterprise to an American company," F5. AC ¶ 719; *see id.* ¶¶ 711, 716. The claims are undoubtedly "related to" Lynwood's core theory that F5's software offerings are substantially similar to and infringe Lynwood's copyrights. *Shame on You Prods.*, 893 F.3d at 669.

A fee award for the expense incurred by the F5 Entities responding to the Related Claims dismissed on the pleadings is warranted as well.

## III. FEES TOTALING $837,602.15 SHOULD BE AWARDED

In light of the strong considerations favoring fee shifting under section 505, the F5 Entities set forth below their calculation of attorney's fees incurred.[3] The F5 Entities' fees incurred are supported by detailed contemporaneous time records, which the F5 Entities are prepared to submit for "*in camera* inspection, as the Judge deems appropriate." Civ. L.R. 54-5(b)(2).

### A. The F5 Entities Incurred at Least $705,711.05 in Fees Defending Against Lynwood's Claims of Direct Copyright Infringement

The complaints' complexity and sheer volume—and Lynwood's insistence on pursuing discovery notwithstanding Defendants' strong motions to dismiss—forced the F5 Entities to incur significant attorney's fees and costs. The allegations spanned two decades and implicated dozens of witnesses in the United States and abroad. The case presented challenging choice-of-law issues, and case theories so convoluted they required charts and a glossary to keep track of which of plaintiff's theories were advanced against which defendants. *See, e.g.*, ECF 148-1. As a result, the F5 Entities' total fees incurred exceeded $1.44 million. (Jacobs Decl. ¶ 3.) The F5 entities spent more than $1.44 million defending the case and seek a total of $837,602.15 of the fees incurred in response to the claims dismissed by the Court's ruling on Defendants' consolidated motion to dismiss; fees incurred in defending the "non-prioritized" claims dismissed by Lynwood voluntarily

[3] As part of attorney's fees, the F5 Entities seek to recover fees incurred by the litigation team's two primary paralegals. "Work performed by paralegals may be compensated as part of an attorney's fee award." *Perfect 10*, 2015 WL 1746484, at *20 (citation omitted).

have been excluded from the fee request. (*Id.* ¶ 2.) Of the total fees requested, approximately $705,711.05 were incurred in response to the claim for direct copyright infringement and for other tasks untethered to any specific claim for relief. (*Id.* ¶ 4.)

F5 Entities' core litigation team included five partners, several of whom were brought in for their subject matter expertise. Among this team, F5 is not seeking fees for work performed by Morrison partner Joyce Liou, who led the defense of the trademark claims, or associates from the trademark group who worked with her. We also do not seek fees for partner Eric Tate, whose work included analysis and response to certain of Lynwood's non-prioritized claims. For other attorneys on the team, the F5 Entities seek recovery of a portion of fees incurred, based on counsel's review of the underlying invoices and the work performed. (Jacobs Decl. ¶¶ 5, 31-53.)

In preparing their fee request, the F5 Entities have identified separately the fees incurred directly in response to the claim for direct copyright infringement, and work on tasks that needed to be performed unrelated to a specific case theory or claim for relief. (*Id.* ¶¶ 4-5.) These amounts are $151,416.58 and $554,294.47, respectively. (*Id.* ¶ 4.) Fees incurred in addressing Lynwood-initiated discovery disputes, for the court-ordered mediation, and for case management are properly awarded as part of the direct costs of defending Lynwood's copyright infringement claims. *See, e.g.*, *Shame on You Prods.*, 893 F.3d at 670 (affirming fee award including costs incurred in addressing discovery requests and motions to compel before ruling on motion for judgment on pleadings); *Washington*, 2021 U.S. Dist. LEXIS 243658, at *9-16 (awarding fees following successful motions to dismiss, including fees incurred during settlement discussions while motions were pending). The F5 Entities had no choice other than to cooperate in the conduct of the litigation until the copyright claim was dismissed without leave to amend. The F5 Entities' fees on these separate but related tasks are identified in the concurrently filed Jacobs Declaration.

F5's counsel's hourly rates are set forth in the Jacobs Declaration (¶ 25). Both sides retained national counsel. As one court explained in addressing billing rates in a copyright case,

> [T]he appropriate rates for counsel in [a] copyright infringement action are the actual rates charged by counsel. "Unless counsel is working outside his or her normal area of practice, evidence that a billing rate was the usual rate the attorney charges for his or her services is evidence that the rate is comparable

> to the market rate." *Perfect 10, Inc. v. Giganews, Inc.*, No. 11-07098, 2015 WL 1746484, at *5 (C.D. Cal. Mar. 25, 2015). Further, in an action under the Copyright Act, an award based on the actual rates charged by counsel has consistently been held to be reasonable under 17 U.S.C. § 505. *See, e.g., Kourtis v. Cameron*, 358 Fed. Appx. 863, 868 (9th Cir. 2009). This is because in such complex litigation "the parties can reasonably be expected to retain nationally respected law firms and nationally respected attorneys to pursue their interest in the litigation," which will result in "higher lodestars than normally seen in this district." *Pacquiao v. Mayweather*, 2012 WL 4092684, at *2 (D.Nev. 2012) (finding actual rates paid to California attorneys were "reasonable" and awarding them).

*Oracle USA, Inc. v. Rimini St., Inc.*, 209 F. Supp. 3d 1200, 1216-17 (D. Nev. 2016).

### B. The F5 Entities Incurred at Least $131,891.10 in Additional Fees Responding to Related Claims That Turned on Whether F5 Acquired, Further Developed, and Published Allegedly Infringing Software

The fees sought for defending the Related Claims are also properly awarded based on the successful defense. ECF 162 (dismissing all five prioritized claims against the F5 Entities without leave to amend); *Shame on You Prods.*, 893 F.3d at 669 (affirming fee award pursuant to section 505 on copyright claim and all "related claims" that "involve a common core of facts *or* are based on related legal theories"). As explained above, each of the Related Claims against the F5 entities turned on Lynwood's allegation that F5 improperly acquired and misused copyrighted software. *See* Section II, *ante*. These fees, including legal analysis of Lynwood's related case theories and briefing on the motions to dismiss, totaled $131,891.10. (Jacobs Decl. ¶ 4.)

## CONCLUSION

For all these reasons, an award of $837,602.15 in fees to the F5 Entities should be issued.

Dated: September 30, 2022

MORRISON & FOERSTER LLP

By: */s/ Michael A. Jacobs*
Michael A. Jacobs

Attorneys for Defendants
F5 NETWORKS, INC., NGINX, INC. (BVI), and NGINX SOFTWARE, INC.

SF:4928135