Douglas W. Dal Cielo (CA Bar No. 157109)
ddalcielo@bwslaw.com
Patricia L. Peden (CA Bar No. 206440)
ppeden@bwslaw.com
Brian M. Affrunti (CA Bar No. 227072)
baffrunti@bwslaw.com
**BURKE, WILLIAMS & SORENSEN, LLP**
60 South Market Street, Suite 1000
San Jose, CA  95113
Telephone: (408) 606-6300
Fax: (408) 606-6333

Alexander D. Pencu (*pro hac vice*)
adp@msf-law.com
Christopher J. Major (*pro hac vice*)
cjm@msf-law.com
Jeffrey P. Weingart (*pro hac vice*)
jpw@msf-law.com
**MEISTER SEELIG & FEIN LLP**
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Fax: (646) 539-3649

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNWOOD INVESTMENTS CY LIMITED,<br><br>Plaintiff,<br><br>vs.<br><br>MAXIM KONOVALOV, IGOR SYSOEV, ANDREY ALEXEEV, MAXIM DOUNIN, GLEB SMIRNOFF, ANGUS ROBERTSON, NGINX, INC. (BVI), NGINX SOFTWARE, INC., NGINX, INC. (DE), BV NGINX, LLC, RUNA CAPITAL, INC., EVENTURE CAPITAL PARTNERS II LLC and F5 NETWORKS, INC.,<br><br>Defendants. | Case No. 3:20-CV-03778-MMC<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTIONS FOR ATTORNEYS' FEES**<br><br>Hon: Maxine M. Chesney<br>Hearing Date: December 9, 2022<br>Time: 9:00 AM<br>Courtroom: Courtroom 7, 19th Floor |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ii

INTRODUCTION ........................................................................................................1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ...........................................4

ARGUMENT ..............................................................................................................8

    I.      The Court Should Defer Ruling on Defendants' Motions for Attorneys' Fees ...........8

    II.     If the Court Does Not Defer, the Court Should Deny the Motions ............................11

            A. A Fee Award is Not Warranted under Section 505 of the Copyright Act............12

                    1.   Lynwood's Copyright Claim Was Objectively Reasonable...........................13

                    2.   Lynwood's Copyright Claim Was Not Frivolous ..........................................14

                    3.   Lynwood Acted in Good Faith .....................................................................15

                    4.   Defendants' Success on Their Motion to Dismiss Is Not Dispositive ...........17

                    5.   A Fee Award Is Unnecessary for Deterrence or Compensation.....................18

    III.    If the Court Awards Attorneys' Fees, the Award Should be Limited to Fees Defending the Copyright Infringement Claim (Count 14)............................................................20

    IV.    Defendants Failed to Support Their Alleged Fees with Detailed Billing Records......22

    V.    Defendants' Fees are Facially Unreasonable and Excessive.......................................24

CONCLUSION ...........................................................................................................24

1

## <u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

Cases

4

5

*APL Microscopic, LLC v. Steenblock, D.O., Inc.,*
  2021 WL 6496802 (C.D. Cal. Nov. 9, 2021)....................................................... 17

6

7

*Autodesk, Inc. v. Kobayashi + Zedda Architects Ltd.,*
  191 F. Supp. 3d 1007 (N.D. Cal. 2016) ............................................................... 10

8

*Bell v. Clackamas County,*
  341 F.3d 858 (9th Cir. 2003)................................................................................. 24

9

10

*Bisson-Dath v. Sony Computer Entertainment Am. Inc.,*
  2012 WL 3025402 (N.D. Cal. July 24, 2012)...................................................Passim

11

12

*Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health and Human Resources,*
  532 U.S. 598 (2001) .............................................................................................. 20

13

14

*Cobbler Nev., LLC v. Gonzales,*
  901 F.3d 1142 (9th Cir. 2018).............................................................................. 17

15

*Colby v. Newman,*
  2013 WL 12124428 (C.D. Cal. Dec. 18, 2013) ................................................... 23

16

17

*Design Data Corp. v. Unigate Enter., Inc.,*
  2014 WL 5513541 (N.D. Cal. Oct. 31, 2014)........................................... 15, 16, 19

18

19

*Dufour v. Allen,*
  2015 WL 12819170 (C.D. Cal. Jan. 26, 2015) ...................................................... 9

20

21

*Entertainment Research Group,, Inc. v. Genesis Creative Grp., Inc.,*
  122 F.3d 1211 (9th Cir. 1997)......................................................................... 20, 23

22

23

*Environmental Defense Ctr. v. Bureau of Ocean Energy Mgmt.,*
  2019 WL 10786009 (C.D. Cal. Oct. 28, 2019) ................................................... 8, 9

24

*Epikhin v. Game Insight N. Am.,*
  2016 WL 1258690 (N.D. Cal. Mar. 31, 2016) ..................................................Passim

25

26

*Erickson Productions Inc. v. Kast,*
  2021 WL 3887797 (N.D. Cal. 2021)................................................................... 22

27

28

*Ets-Hokin v. Skyy Spirits, Inc.,*
  323 F.3d 763 (9th Cir. 2003)................................................................................ 12

*Fisher v. City of San Jose*,
  2004 WL 7334930 (N.D. Cal. Aug. 13, 2004)..................................................................9

*Flowrider Surf, Ltd. v. Pacific Surf Designs, Inc.*,
  2018 WL 6830611 (S.D. Cal. Dec. 21, 2018)..................................................................8

*Fogerty v. Fantasy, Inc.*,
  510 U.S. 517 (1994)..........................................................................................12, 18, 22

*Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*,
  886 F.2d 1545 (9th Cir. 1989)........................................................................................22

*Freeman Inv. Mgmt. Co. v. Frank Russell Co.*,
  2017 WL 11420268 (S.D. Cal. Feb. 9, 2017) ..............................................................8, 9

*G.P.P., Inc. v. Guardian Protection Products, Inc.*,
  2018 WL 932087 (E.D. Cal. Feb. 16, 2018)....................................................................8

*Gregorini v. Apple, Inc.*,
  2022 WL 522307 (9th Cir. Feb. 22, 2022).......................................................................8

*Gregorini v. Apple, Inc.*,
  2020 WL 13368160 (C.D. Cal. July 21, 2020) ..............................................................17

*Hall v. Swift*,
  2018 WL 3203045 (C.D. Cal. Apr. 16, 2018)..........................................................13, 17

*Harrell v. George*,
  2012 WL 5906659 (E.D. Cal. Nov. 26, 2012) .................................................................9

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983).....................................................................................20, 22, 24

*Howard v. Pearl*,
  859 Fed.Appx. 756 (9th Cir. 2021) ...............................................................................10

*Kirtsaeng v. John Wiley & Sons, Inc.*,
  579 U.S. 197 (2016)..........................................................................................12, 13, 22

*Loomis v. Cornish*,
  2014 WL 12586734 (C.D. Cal. Mar. 17, 2014) .............................................................18

*Mandeville-Anthony v. Walt Disney Co.*,
  2011 WL 13195829 (C.D. Cal. Sept. 28, 2011)..............................................................23

*McCown v. City of Fontana*,
  565 F.3d 1097 (9th Cir. 2009).......................................................................................22

*Michael Grecco Prods., Inc. v. BDG Media, Inc.*,
   2020 WL 11629239 (C.D. Cal. Apr. 24, 2020)........................................................ 16

*Muromura v. Rubin Postaer and Assocs.*,
   2015 WL 5456583 (C.D. Cal. Sept. 17, 2015)...................................................... 17

*Oracle America, Inc. v. Hewlett Packard Enterprise Co.*,
   2019 WL 10303651 (N.D. Cal. Nov. 12, 2019).......................................... 12, 13, 15, 19

*Perfect 10, Inc. v. Giganews, Inc.*,
   2015 WL 1746484 (C.D. Cal. Mar. 24, 2015) ....................................................... 18

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
   2005 WL 2007932 (N.D. Cal. Aug. 12, 2005)............................................Passim

*Phoenix Techs. Ltd. v. VMware, Inc.*,
   2018 WL 828030 (N.D. Cal. Feb. 12, 2018)..................................................... 16, 19

*Planet Aid, Inc. v. Reveal, Center for Investigative Reporting*,
   2021 WL 4051420 (N.D. Cal. Aug. 27, 2021)...................................................... 8, 11

*Reed v. Peterson*,
   2005 WL 1522187 (N.D. Cal. June 27, 2005) .................................................... 19

*Savage v. Council on American-Islamic Relations, Inc.*,
   2008 WL 4890892 (N.D. Cal. Nov. 12, 2008) .................................................. 17

*Scott v. Meyer*,
   2010 WL 2569286 (C.D. Cal. June 21, 2010) ................................................... 18

*Sealy, Inc. v. Easy Living, Inc.*,
   743 F.2d 1378 (9th Cir. 1984)........................................................................ 22

*Seltzer v. Green Day, Inc.*,
   725 F.3d 1170 (9th Cir. 2013)......................................................................... 13

*Shame on You Prods. v. Banks*,
   893 F.3d 661 (9th Cir. 2018)........................................................................... 18

*Smith v. Weeknd*,
   2020 WL 8174617 (C.D. Cal. Sept. 4, 2020)..................................................... 12

*Sovereign Gen'l Ins. Servs., Inc. v. Scottsdale Ins. Co.*,
   2008 WL 5381813 (E.D. Cal. Dec. 23, 2008).................................................... 9

*Van Gerwen v. Guarantee Mut. Life Co.*,
   214 F.3d 1041 (9th Cir. 2000) ........................................................................ 24

*VMG Salsoul, LLC v. Ciccone*,
  824 F.3d 871 (9th Cir. 2016) ................................................................................. 12

*Washington v. ViacomCBS, Inc.*,
  2021 WL 6134375 (C.D. Cal. Dec. 9, 2021) ........................................................ 18

*Zindel v. Fox Searchlight Pictures, Inc.*,
  2018 WL 6074566 (C.D. Cal. Oct. 26, 2018) ............................................. 12, 16, 17

Statutes

17 U.S.C. § 505 ........................................................................................... 1, 3, 12, 14

17 U.S.C. § 101 ......................................................................................................... 6

Rules

Fed. R. Civ. P. 54 ..................................................................................................... 8

Plaintiff Hemma Investments CY Limited f/k/a Lynwood Investments CY Limited ("Plaintiff" or "Lynwood"), by its undersigned counsel, respectfully submits this memorandum of points and authorities in opposition to (a) the Motion for Attorneys' Fees (ECF 173) filed by Defendants F5 Networks, Inc. ("F5"), NGINX Software Inc. ("NGINX Software, Inc."), and NGINX, Inc. (BVI) ("NGINX BVI" and, together with F5 and NGINX Software, the "F5 Defendants"), and (b) the Motion for Attorneys' Fees (ECF 174) filed by Defendants Maxim Konovalov ("Konovalov"), Igor Sysoev ("Sysoev"), Maxim Dounin ("Dounin"), Andrey Alexeev ("Alexeev"), Gleb Smirnoff ("Smirnoff"), Angus Robertson ("Robertson" and, together with Konovalov, Sysoev, Dounin, Alexeev and Smirnoff, the "Individual Defendants").

Defendants Eventure Capital Partners II LLC ("Eventure"), BV NGINX, LLC ("BV NGINX" and, together with Eventure, the "Eventure Defendants"), and Defendant Runa Capital, Inc. were not named in the dismissed copyright infringement claim and did not move for attorneys' fees. Thus, for ease of reference, Lynwood refers to the F5 Defendants and Individual Defendants collectively as "Defendants."

## INTRODUCTION

The Court should defer its ruling on Defendants' Motions for Attorneys' Fees (the "Motions") until after the Ninth Circuit decides Lynwood's pending appeal. If the appeal is successful in any respect, any attorneys' fees award would have to be revisited. The Motions raise substantial issues regarding entitlement, applicability, and reasonableness of the alleged fees, and there is a dispute about the manner by which Defendants purport to prove the fees. Moreover, there is at least the potential for reversal by the Ninth Circuit, particularly as the claims were dismissed at the pleading stage. Therefore, as a matter of judicial economy, it would be more efficient to allow Lynwood's appeal to run its course and avoid the risk of multiple, and possibly inconsistent, rulings on Defendants' fee request.

If the Court will decide the Motions now, the Court should deny the Motions. The discretionary factors that guide a court's evaluation of fee requests under the Copyright Act weigh in Lynwood's favor and against a fee award. *See* 17 U.S.C. §505 ("Section 505"). First, Lynwood's position on the copyright infringement claim was not objectively unreasonable. The Court agreed

with Lynwood that the NGINX software code copyright was governed by Russian law, that Sysoev only made a claim of authorship and not ownership to the NGINX software code copyright (which are two distinct copyright principles under Russian law), and rejected Defendants' argument that the copyright claim was untimely. The Court's copyright ruling was based on a technical pleading issue, and should not be a basis for opening the door to a large fee award for Defendants under the objective reasonableness inquiry.

Second, the frivolousness factor weighs heavily against a fee award. Lynwood was alerted to its claims by a whistleblower in 2019, after which it commenced an extensive factual and legal investigation. Only after it concluded the extensive investigation did Lynwood file suit, with an extremely detailed Complaint and Amended Complaint. Moreover, Lynwood made credible legal arguments based on valid precedent to support its claims.

Third, Lynwood's motive for bringing the action was proper. It sought to pursue damages for Defendants' wrongful conduct. That is the very purpose of civil claims at law. Defendants have failed to identify any ulterior purpose that would steer this factor in their favor.

Fourth, there are no "particular circumstances" to find that a fee award would advance the policy goals of the Copyright Act to deter litigants from filing copyright claims or to compensate Defendants for their fees. The copyrighted work was indisputably developed by Rambler employees while working for Rambler. The Court's finding that Lynwood did not sufficiently identify the iterations of the protected NGINX software code is not a particular circumstance warranting deviation from the default rule against prevailing party attorneys' fees.

Fifth, while Defendants succeeded in dismissing the nine prioritized claims, only one of the dismissed claims was a copyright claim. The remaining sixteen stayed claims were dismissed via a voluntary stipulation of dismissal pursuant to which the parties agreed, and the Court ordered, that the parties would bear their own fees and costs. Moreover, Lynwood is appealing the dismissal of the nine prioritized claims. Therefore, while the degree of success factor favors Defendants, the Court should not give this factor outsized weight, and the other four factors all weigh significantly against a fee award.

Even if the Court were to award fees for the direct copyright infringement claim in Count 14, which it should not, Defendants grossly overreach by seeking fees for purportedly "related" claims that are a very large multiple of the fees they claim to have incurred defending against the direct copyright claim.  F5 Defendants seek $837,602.15 in fees, but only a fraction of the claimed fees, $151,416.58, are alleged to relate to the "copyright claim."  (ECF 173-1, ¶ 4).  Also, F5 Defendants do not specify whether the $151,416.58 in copyright fees are for the direct copyright claim in Count 14, or if the fees also relate to the other copyright claims in Counts 15 and 16, which the parties stipulated to dismiss without fees and costs.  (ECF 141, pp. 136-141).  Individual Defendants readily admit that they are seeking fees for all the copyright claims (ECF 174-1, ¶¶ 20, 28, 40 ("copyright issues"), 22, 30, 38 ("copyright claims"), even though they too agreed that each party would bear their own fees and expenses for all of the voluntarily dismissed claims, including Counts 15 and 16.  Individual Defendants assert they are entitled to $263,300.35 in fees for the "copyright claims" and $507,066.75 in fees for purportedly related claims.  At its core, Lynwood's claims are business tort claims based on Individual Defendants' breach of their employment contracts and theft of the NGINX Enterprise, and Defendants' wrongful misappropriation of business opportunities that rightfully belong to Lynwood.

In addition to reneging on their stipulation as to Counts 15 and 16 by attempting to compile the work for all copyright claims together in their fee Motions, Defendants also baselessly assert that the non-copyright claims dismissed by the Court are "related" to the direct copyright claim in Count 14 within the meaning of Section 505.  The direct copyright claim is based upon specific software code, whereas all of the other claims dismissed by the Court are based on the theft, development, and sale of the "NGINX Enterprise," and include violations of Russian employment and fiduciary duty claims as well as the aiding and abetting thereof.  The copyright infringement is only a subset of the overall conspiracy, which deprived Rambler and Lynwood of an entire business referred to in the Amended Complaint as the "NGINX Enterprise."  The Court should reject Defendants' blatant attempt to avoid the American rule and seek prevailing party attorneys' fees that have nothing to do with the Copyright Act.

In addition to the fact that the overwhelming majority of Defendants' fees were incurred for work other than on the copyright infringement claim, the fees are unreasonable. The case was decided at the pleading stage, and no document discovery or depositions were ever conducted. Yet, the F5 Defendants seek $837,602.15, with three partners, an outside Professor, and four associates all working on the matter. The Individual Defendants seek $770,367.10, with five partners and two senior associates working on the matter. All of the defendants, including the venture capital defendants who have not moved for fees, collaborated on filing a single, consolidated Motion to Dismiss the Amended Complaint. Only one of the nine dismissed claims was for copyright infringement, and that claim was addressed by Defendants in two and a half pages of text. Facially, the fees sought are inapplicable, unreasonable, duplicative, and excessive.

Moreover, Defendants have hidden the ball by refusing to turnover time records the Court and Lynwood could scrutinize for applicability, reasonableness, duplication, and excessiveness. Instead, Defendants have made it impossible for the Court and Lynwood to decipher which fees apply to the direct copyright infringement claim in Count 14. The Court should deny the Motions, and Lynwood reserves its right to discovery of the billing records for all of the fees sought by Defendants.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This action alleges a conspiracy to steal from Rambler (Lynwood's assignor) and sell for the Individual Defendants' own profit a software and services business referred to in the Amended Complaint as the "NGINX Enterprise." By 2019, the conspirators realized the object of their conspiracy – a sale of the NGINX Enterprise to F5 for $670 million through a merger pursuant to which NGINX BVI became a wholly owned subsidiary of F5. (ECF 141, ¶¶ 390-393).

In the spring of 2019, a whistleblower named Alexander Korotkov ("Korotkov"), who was formerly employed by Rambler and participated in the conspirators' attempts to exploit the NGINX Enterprise for a time, approached Rambler to inform Rambler that its former employees had misappropriated the NGINX Enterprise from Rambler and explained how the conspirators were able to conceal their activity from Rambler. (ECF 141, ¶¶ 436-447). Korotkov's disclosure sparked an extensive investigation, including a forensic technology investigation. (*Id.*, ¶ 448).

Korotkov's disclosures revealed how the conspiracy was hatched and executed, including through the use of removing servers that were never accounted for in Rambler's server inventory records, and that the conspirators used a ring-fenced server known as the "Yam" server of which Rambler was unaware.  (ECF 141, ¶ 464).  In the 2019 investigation, Rambler searched email servers that could have contained emails from 2011 and 2012; backup data; and inventory databases.  (*Id.*, ¶ 465).  Rambler also searched physical storage facilities in Russia.  (*Id.*).  Rambler and Lynwood also searched for documents concerning the software development, and for any evidence of debugging and testing of Open Source.  (*Id.*, ¶ 466).  Rambler and Lynwood also searched 120 hard drives from Rambler storage facilities.  (*Id.*, ¶ 467).

Based on information provided to Korotkov, Rambler located the Yam server in an off-sight Rambler server farm.  (*Id.*, ¶ 468).  The Yam server had been shut down and disconnected from any network.  (*Id.*).  Lynwood hired outside forensics investigations firm Group iB, a leading cyber forensics firm to restore the Yam server so its contents could be retrieved.  (*Id.*, ¶ 469).  The ring-fenced Yam server contained all of the conspirators' communications concerning their illicit scheme to steal the NGINX Enterprise from Rambler and ultimately sell it for profit.  (*Id.*).

The extensive and expensive factual and forensic investigation confirmed Korotkov's whistleblowing revelations and uncovered the conspirators' scheme, including numerous communications and documents demonstrating the extent of the scheme and its planning.  For example, in a PowerPoint presentation from 2011, which Lynwood obtained in the 2019 investigation, Sysoev, Konovalov, and Alexeev while still employed by Rambler (ECF 141, ¶ 280), outlined their plan.  Their elaborate plan was to raise initial venture capital ("VC") investment, establish the business in the United States, grow the NGINX Enterprise, and the ultimate object for the conspiracy was to sell the NGINX Enterprise to a large U.S. technology company.  (*Id.*, ¶ 19).  Notably, the Team identified F5 as one of the potential acquirers named in the power point. (*Id.*).

Lynwood also engaged numerous legal and technical experts in multiple jurisdictions to analyze the facts, potential claims and remedies arising from the conspiracy.  It was only after a very time-consuming and expensive investigation that, in good faith, Lynwood filed this action on June 10, 2020.  (ECF 1).

1    On October 1, 2020, the Court (Koh, J.) issued an Order Re: Case Narrowing bifurcating

2    this action by requiring Lynwood to select ten counts from its Complaint to prosecute immediately,

3    while the remaining sixteen counts would be prosecuted after trial on the first ten counts.  (ECF No.

4    107).   The Order Re: Case Narrowing directed Lynwood to "select 10 claims to be litigated through

5    trial."  (ECF No. 107).

6    On October 22, 2020, Lynwood filed its Submission in Compliance with Order Re:  Case

7    Narrowing (ECF No. 110), in which Plaintiff identified that it would proceed immediately with

8    former Count 1 (Civil Conspiracy against Team, Robertson, Runa Capital, E.Ventures, NGINX

9    BVI, NGINX DE, NGINX Software, Inc. and BV NGINX;[1] Count 1 (Breach of Employment

10   Obligations Owed by Konovalov to Rambler); Count 2 (Breach of Employment Obligations Owed

11   by Sysoev to Rambler); Count 4 (Breach of Konovalov's Duty to Act Fairly and Honestly with

12   Rambler); Count 7 (Aiding and Abetting by Runa Capital and E.Ventures of the Team's Fraud and

13   the Disloyal Employees' Breaches of Their Duties and Honest and Loyalty to Rambler); Count 8

14   (Aiding and Abetting by F5 of the Team's Fraud and the Disloyal Employees' Breaches of Their

15   Duties of Honesty and Loyalty to Rambler); Count 9 (Tortious Interference with Contract Against

16   Konovalov, Robertson, NGINX Software, Inc., NGINX BVI, NGINX DE, and BV NGINX); Count

17   12 (Tortious Interference with Prospective Business Advantage Against All Defendants); Count 13

18   (Fraud Against the Disloyal Employees, NGINX Software, Inc., NGINX DE, NGINX BVI, and BV

19   NGINX); and Count 14 (Berne Convention for the Protection of Literary and Artistic Works and

20   the Copyright Act (17 U.S.C. § 101, *et seq*.) based on Direct Copyright Infringement Against All

21   Defendants).  The remaining sixteen Counts (i.e., Counts 3, 5-6, 10-11, and 15-25) of the Amended

22   Complaint were stayed.

23   In March 2021, the Court (Koh, J.) granted Defendants' motions to dismiss the original

24   Complaint without prejudice to Lynwood repleading.  (ECF 134, 135).  On April 29, 2021,

25   Lynwood filed its Amended Complaint.  (ECF 141).  On May 27, 2021, Defendants filed their

26   Consolidated Motion to Dismiss the Amended Complaint (the "Motion to Dismiss"), which sought

27

28   _____

[1] Original Count 1 for civil conspiracy was not included in the Amended Complaint.  All other Counts were therefore re-numbered in the Amended Complaint.

dismissal of the nine substantive counts that were not stayed.  Of the nine claims at issue, only one (Count 14) was a copyright infringement claim.  Two and half pages worth of space in the Motion to Dismiss addressed the copyright claim.  (ECF 144, pp. 17-20).

In their Motion to Dismiss, the defendants argued that Count 14 for direct copyright infringement under the Berne Convention should be dismissed because Sysoev repudiated Rambler's ownership of the copyright, first in 2004 when he made an authorship claim, and then in 2012 when he gave an interview to a software magazine, such that the continuing violation doctrine did not apply.  (ECF 144, pp. 8-9).  In addition, the defendants argued that the Amended Complaint did not adequately describe the infringed works and lumped the infringing defendants together. (ECF 144, p. 18-19).

On August 16, 2022, the Court (Chesney, J.) entered an Order Granting Motion to Dismiss (the "Dismissal Order").  (ECF No. 162).  The Dismissal Order dismissed the nine substantive counts prioritized by Plaintiff, with prejudice.  Regarding the copyright claim, the Court agreed with Plaintiff that, under Russian law, a copyright claim can be of authorship or ownership, and that a claim by Sysoev of authorship is not contrary to Rambler's ownership claim such that no repudiation occurred through Sysoev's publication.  In addition, the Court found that Sysoev's interview in 2012 was not directed at Rambler or Lynwood and could not qualify as repudiation.  Accordingly, the Court declined to dismiss the copyright claim on statute of limitations grounds.  (ECF 162, p. 15). Instead, the Court dismissed the copyright claim finding that Lynwood failed to adequately identify the particular works copied and lumped together multiple defendants as the infringers.  (ECF 162, pp. 34-35).

On September 9, 2022, the parties filed a Stipulation of Dismissal of Remaining Claims, which enabled Plaintiff to immediately appeal the Court's Dismissal Order and expressly provided that each party would bear their own costs and expenses for the sixteen voluntarily dismissed claims. (ECF 166).  In good faith, Lynwood dropped the sixteen remaining claims and proceeded to the appeal of the prioritized claims.  On September 14, 2022, Plaintiff filed its Notice of Appeal, which appeal is being briefed before the Ninth Circuit.  The appellate briefing is expected to conclude on March 7, 2023.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ARGUMENT**

In the interest of judicial economy, the Court should defer ruling on Defendants' Motions until after the Ninth Circuit decides Lynwood's appeal.  If the Court decides the Motions, it should deny them for the reasons set forth below.

## I.   The Court Should Defer Ruling on Defendants' Motions for Attorneys' Fees

The Court should defer ruling on Defendants' Motions or deny them without prejudice until Lynwood's appeal is resolved.  *See* Fed. R. Civ. P. 54(d) (advisory committee's note to the 1993 amendment) (if an appeal on the merits of the case is taken, the district court may "rule on the claim for fees, [] defer its ruling on the motion, or [] deny the motion without prejudice, directing … a new period for filing after the appeal has been resolved").  "Where, for example, the claim for fees involves substantial issues or is likely to be affected by the appellate decision, the district court may prefer to defer consideration of the claim for fees until after the appeal is resolved." *Planet Aid, Inc. v. Reveal, Center for Investigative Reporting*, 2021 WL 4051420, at *1 (N.D. Cal. Aug. 27, 2021).  If the Ninth Circuit rules in Lynwood's favor on the appeal, then by necessity any fee order would also be impacted.   *See Gregorini v. Apple, Inc.*, 2022 WL 522307, at *1 & n.1 (9th Cir. Feb. 22, 2022) ("Because we reverse on the merits, we also necessarily reverse the district court's award of attorney's fees").

District courts in the Ninth Circuit "have widely exercised" this discretion to defer ruling on the motions for attorneys' fees, *Planet Aid, Inc.*, 2021 WL 4051420, at *1; *Freeman Inv. Mgmt. Co. v. Frank Russell Co.*, 2017 WL 11420268, *1 (S.D. Cal. Feb. 9, 2017) (collecting cases), particularly where deferring the issue of attorneys' fees would promote judicial economy. *See, e.g., Environmental Defense Ctr. v. Bureau of Ocean Energy Mgmt.*, 2019 WL 10786009, at *2 (C.D. Cal. Oct. 28, 2019) (deferring ruling on motion for attorneys' fees until after pending appeal to promote judicial efficiency); *G.P.P., Inc. v. Guardian Protection Products, Inc.*, 2018 WL 932087, *3 (E.D. Cal. Feb. 16, 2018) (concluding that motion for attorneys' fees was best adjudicated following resolution of appeal on the merits, which could affect determination of which party prevailed on which causes of action and ultimately the amount of fees and costs to which the parties were entitled); *Flowrider Surf, Ltd. v. Pacific Surf Designs, Inc.*, 2018 WL 6830611, at *3 (S.D. Cal.

Dec. 21, 2018) (denying without prejudice defendants' motion for attorneys' fees where pending appeal could impact the court's determination of whether case was "exceptional" one warranting award of attorneys' fees); *Dufour v. Allen*, 2015 WL 12819170, at *2 (C.D. Cal. Jan. 26, 2015) (after receiving briefing and hearing argument on the motion for attorneys' fees, the court exercised discretion to defer ruling on motion until resolution of pending appeal from entry of summary judgment); *Harrell v. George*, 2012 WL 5906659, at *1 (E.D. Cal. Nov. 26, 2012) (based on the pendency of an appeal on merits, the court denied motion for attorneys' fees costs without prejudice to being renewed following the appeal); *Sovereign Gen'l Ins. Servs., Inc. v. Scottsdale Ins. Co.*, 2008 WL 5381813, at *1 (E.D. Cal. Dec. 23, 2008) (same).

If Lynwood's appeal is successful, the Court's work on the Motions, including deciding whether Defendants are entitled to any fees under the Section 505 factors, assessing the reasonableness of Defendants' claimed fees, and analyzing whether they were actually incurred in defending the direct copyright claim, will have been unnecessary. *See, e.g.*, *Freeman*, 2017 WL 11420268, at *1 (deferring ruling on defendant's motion for fees because if plaintiff's appeal was successful, the Court's work on the fee motion would be wasted, and if defendant was successful on appeal, it planned to file a second motion for fees; "[t]hus, under any scenario at the Ninth Circuit, the Court's efforts would either be moot or insufficient"); *Fisher v. City of San Jose*, 2004 WL 7334930, at *1 (N.D. Cal. Aug. 13, 2004) (finding, "in the interest of efficient use of judicial and litigant resources," that it was appropriate to stay the fee issue until appeal on merits was complete, because if defendants prevailed on appeal, the fee issue would become moot, which was significant because it required the "complex task of apportioning the resources consumed through litigating each of the individual claims"). Even if Lynwood's appeal is only partially successful, that will still likely affect the amount of fees to which Defendants may be entitled. *See Environmental Defense Ctr.*, 2019 WL 10786009, at *2 (finding deferral appropriate where there were several possible outcomes on appeal).

Lynwood respectfully believes that it has a strong chance of success on appeal. The Dismissal Order was at the pleading stage. There are two elements for a copyright infringement claim – "ownership of a valid copyright" and "copying of constituent elements of the work that are

original." *Howard v. Pearl*, 859 Fed.Appx. 756, 757 (9th Cir. 2021) (reversing dismissal of copyright claim where plaintiff pled a viable claim). Lynwood's Amended Complaint contains detailed allegations regarding the infringed software code at issue (which Defendant Sysoev himself authored as a work for hire for Rambler).  Under Rule 8, Lynwood was required to identify the infringed works in a way that gives the defendants "fair notice" of the claims against it. *See Autodesk, Inc. v. Kobayashi + Zedda Architects Ltd.*, 191 F. Supp. 3d 1007, 1021-22 (N.D. Cal. 2016).  Sysoev knows what code he wrote at Rambler, and Lynwood maintains it pled enough to get discovery of the source code which would reveal every iteration Sysoev developed at Rambler.

Lynwood alleges it is the rightful owner of the work as Rambler's assignee because Sysoev wrote the code as a work made for hire for Rambler.  (ECF 141, ¶¶ 192-213; ECF 141-2, p. 5).  The Amended Complaint describes the infringed work as "Open Source NGINX," which is "web server software developed while they were employees of Rambler …"  (ECF 141, ¶ 9).  By his own admission, Sysoev "authored ninety-seven percent of Open Source NGINX as of 2011 [i.e., while he was employed by Rambler]." (ECF 141, ¶ 191).  The Amended Complaint also identifies NGINX Plus as an infringed work, which is "proprietary software code contains feature-rich extensions of Open Source NGINX that Sysoev had already begun quietly developing at Rambler, while employed by Rambler and using Rambler resources, without the company's knowledge." ECF 141, ¶ 44.  All NGINX code that Sysoev wrote while employed by Rambler is owned by Rambler (now Lynwood) and that code is what has been infringed.  *Id.*, ¶¶ 755-761.

Moreover, the Amended Complaint specifically pleads each Defendant's role in the conspiracy, and the Direct Copyright Infringement Defendants' roles in the infringement.  For example, Sysoev copied, released and distributed pre-2012 Open Source NGINX and NGINX Plus. ECF 141, ¶735.  The Disloyal Employees exited Rambler in possession of unauthorized copies of NGINX Plus.  *Id.*, ¶¶27, 54, 57, 58, 63, 258, 325.  The Team, beginning in early 2010, began commercially exploiting pre-2012 NGINX Plus by licensing copies thereof to third-party customers. *Id.*, ¶737. The NGINX entities licensed to its customers unauthorized copies of NGINX Plus that included the Pre-2012 NGINX Software.  *Id.*, ¶789.  Robertson spearheaded the unlawful commercial exploitation of the Pre-2012 NGINX Software, including the licensing of NGINX Plus

to customers. *Id.*, ¶¶367-68.  F5 continues to copy and productize Pre-2012 NGINX Software or derivatives thereof. *Id.*, ¶¶789.

Based on these and the other allegations in the Amended Complaint, Lynwood respectfully believes it may prevail on its appeal and therefore requests that the Court defer ruling on the Motions until the Ninth Circuit decides Lynwood's appeal.[2]

Moreover, no party will be harmed by a delay in resolving the motion for fees. *See, e.g., Planet Aid*, 2021 WL 4051420, at *2 (citing lack of harm from delay as another factor supporting deferral of decision on motion for fees pending appeal). There is no suggestion, for example, that absent a fee award, Defendants will be unable to cover the cost of responding to Plaintiff's appeal. In addition, the amount of fees requested by Defendants in their Motions (over $1.5 million in total) is significant, and that weighs in favor of deferring. *See Planet Aid*, 2021 WL 4051420, at *2 (distinguishing the seven-figure fee claim in that case from another case in which the court declined to defer ruling on a fee motion for $42,000).

For these reasons, the Court should defer its decision on Defendants' Motions until the Ninth Circuit decides Lynwood's appeal.

## II.   If the Court Does Not Defer, the Court Should Deny the Motions

If the Court does not defer ruling on Defendants' Motions, it should deny the Motions. Lynwood is the owner of the NGINX software, and sought redress for Defendants' infringement of Lynwood's copyright to the NGINX software.  The Court correctly held that issues of fact and foreign law precluded finding that Sysoev was anything more than the "author" of the NGINX software, not the "copyright owner." ECF 162, at 14-15.  A *bona fide* copyright ownership dispute

---

[2] While Lynwood maintains that the only claim that could possibly be the subject of a fee award is the direct copyright infringement claim, because Defendants seek fees for the other dismissed claims Lynwood notes that its appeal has at least the potential for reversing the Dismissal Order as to those claims.  For example, the last overt act doctrine applies, because contemporaneous documents appended to the Amended Complaint prove that the ultimate object of the conspiracy was a sale to a large U.S. technology company and even expressly identified F5.  The last over act occurred when the conspirators accomplished that sale in 2019, and Lynwood's claims are therefore timely.  In addition, Lynwood respectfully maintains that its tort claims are pled in sufficient detail to satisfy the pleading rules.

is grounds to deny a Section 505 fee award.  *See Oracle America, Inc. v. Hewlett Packard Enterprise Co.*, 2019 WL 10303651, at *3 (N.D. Cal. Nov. 12, 2019).

### A.    A Fee Award is Not Warranted under Section 505 of the Copyright Act

Section 505 of the Copyright Act gives the Court discretion to award a reasonable attorney's fee to a prevailing party. 17 U.S.C. § 505. A court's discretionary analysis is guided by the following non-exclusive factors: (1) the objective reasonableness of the losing party's position (including its factual and legal arguments); (2) frivolousness; (3) the losing party's motivation for bringing or maintaining the action; (4) the degree of success obtained; and (5) the need, in particular circumstances, to advance considerations of compensation and deterrence. *See VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 887 (9th Cir. 2016); *Epikhin v. Game Insight N. Am.*, 2016 WL 1258690, at *3 (N.D. Cal. Mar. 31, 2016). Courts "may not award attorney's fees as a matter of course," but rather "must make a particularized, case-by-case assessment." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016). The objective reasonableness factor is entitled to "substantial weight" in the analysis, but the district court "must give due consideration to all other circumstances relevant to granting fees." *Id.*, at 208. In applying these factors, courts are to remain faithful to the purposes of the Copyright Act, which are to "'enrich[] the general public through access to creative works'" by "striking a balance between … encouraging and rewarding authors' creations while also enabling others to build on that work." *Id.*, at 204 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 526-527 (1994)).

Lynwood's copyright infringement claim was reasonable and made on the good faith basis that it is the rightful owner of the NGINX software.    The copyright infringement claim was dismissed based solely on a perceived pleading deficiency, but this finding is insufficient to impose a punitive fee award. *See Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003) (where only factor weighing in favor of fee award was degree of success, it was proper to deny motion for fees); *accord Smith v. Weeknd*, 2020 WL 8174617, at *5 (C.D. Cal. Sept. 4, 2020); *Zindel*, 2018 WL 6074566, at *6.

1

### 1.    Lynwood's Copyright Claim Was Objectively Reasonable

Lynwood's copyright infringement claim was objectively reasonable, and the Court must give "substantial weight" to this factor. *Kirtsaeng*, 579 U.S. at 208.   A claim is objectively unreasonable only where "the party advancing it should have known from the outset that its chances of success … were slim to none." *Epikhin*, 2016 WL 1258690, at *5. That the plaintiff's claims were unsuccessful does not mean they were unreasonable. *Id.*; *see also Oracle*, 2019 WL 10303651, at *2 (quoting *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1181 (9th Cir. 2013)) ("'the mere fact that [the plaintiff] lost cannot establish his objective unreasonability"); *Hall v. Swift*, 2018 WL 3203045, at *3 (C.D. Cal. Apr. 16, 2018) ("The fact that a defendant has successfully moved to dismiss a plaintiff's copyright infringement complaint does not alone render that claim frivolous or objectively unreasonable."); *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 2005 WL 2007932, at *3 (N.D. Cal. Aug. 12, 2005) ("the fact that Plaintiff's complaint was dismissed twice is not dispositive on the 'objectively unreasonable' prong").

Several facts weigh against finding that Lynwood's copyright infringement claim was "objectively unreasonable."  First, the Court's (Koh, J.) order granting Lynwood leave to amend its original complaint shows that it found potential merit in Lynwood's copyright claim. *See, e.g.*, *Perfect 10*, 2005 WL 2007932, at *4 ("Thus by granting leave to amend, the Court believed that it was possible for Plaintiff to allege sufficient facts to state claims from which relief may be granted.… In light of the potential claims, it could not be said that Plaintiff's claims were objectively unreasonable"). Second, in this Court's ruling on Defendants' motion to dismiss the FAC, the Court credited several of Lynwood's arguments against dismissal of its copyright claim. The Court agreed that the claim was governed by Russian law (ECF 162, p. 14); it agreed that Sysoev's copyright notice referred to him only as copyright author, not copyright holder, as required by Russian law (*id.* at 15); and it rejected Defendants' argument that Rambler's ownership was repudiated in 2012 and that Lynwood's claim was therefore time-barred. *Id.* That Lynwood ultimately was unable to plead its copyright infringement claim with the specificity demanded by the Court does not make its claim objectively unreasonable. *See Perfect 10*, 2005 WL 2007932, at *3-4 (failure to sufficiently plead

additional facts that court directed plaintiff to plead when granting leave to amend did not make claims objectively unreasonable).

Defendants' arguments to the contrary lack merit. For example, Defendants contend that it was objectively unreasonable for Lynwood to "rebuff[] Defendants' warnings" and proceed with its copyright claim. (ECF 173, pp. 9-10).  A litigant's decision to decline their adversary's demand to withdraw a claim does not make the claim "objectively unreasonable."  *See, e.g.*, *Bisson-Dath v. Sony Computer Entertainment Am. Inc.,* 2012 WL 3025402, at *2 (N.D. Cal. July 24, 2012) ("the fact that Plaintiffs declined to voluntarily dismiss their case after reviewing this correspondence [from defendants warning that claims lacked merit] does not support a finding of frivolousness [or unreasonableness]. It is not surprising or unusual for a party to reject an adversary's assessment of its case").  Defendants also argue that Lynwood's litigation positions were objectively unreasonable because it pursued "decades old" claims. (ECF 173, pp. 2, 9). But the Court *denied* Defendants' motion to dismiss the copyright claim as time-barred (ECF 162, at 15).  Lynwood also asserted several good faith arguments, with supporting facts, for the delayed accrual of its non-copyright claims. (ECF 146, pp. 2-16). Thus, because Lynwood's copyright claim was not objectively unreasonable, this factor weighs against an award of attorneys' fees to Defendants under Section 505.

### 2.  Lynwood's Copyright Claim Was Not Frivolous

Because Lynwood's copyright claim was objectively reasonable, it clearly was not frivolous. *See Epikhin,* 2016 WL 1258690, at *6 (noting that standard for frivolousness is higher than the standard for objective unreasonableness). Defendants implicitly concede this point by failing to address this factor in their motions.

"A claim is not frivolous merely because it is unsuccessful." *Epikhin*, 2016 WL 1258690, at *6. Rather, a frivolous claim is "clearly baseless and involves fantastic or delusional scenarios." *Id.*; *see also Perfect 10,* 2005 WL 2007932, at *4; *Bisson-Dath*, 2012 WL 3025402, at *2.  Lynwood's copyright claim was extensively investigated and supported by detailed allegations, including facts obtained through the forensic recovery, restoration and analysis of massive amounts of data as well as information gleaned from witnesses such as Korotkov. It was by no means "fantastic or

delusional." Rather, the Court merely found that Lynwood failed to plead its copyright claim with the requisite specificity. Thus, this factor also weighs against an award of attorneys' fees.

### 3. Lynwood Acted in Good Faith

Lynwood's motivation also weighs against an award of attorneys' fees. Neither its actions leading up to the lawsuit nor its conduct during the litigation exhibited bad faith. *See Oracle*, 2019 WL 10303651, at *3. Rather, Lynwood diligently pursued what it believed in good faith to be a meritorious claim of copyright infringement to defend its rights and prevent Defendants' unlawful infringement. *See Design Data Corp. v. Unigate Enter., Inc.*, No. 12-cv-04131-WHO, 2014 WL 5513541, *3 (N.D. Cal. Oct. 31, 2014) (where plaintiff had a legitimate concern about infringement of its software, its attempt to obtain more evidence and prosecute the action did not amount to bad faith).

Defendants' arguments do not demonstrate otherwise. (ECF 173, pp. 13-14). First, Lynwood not immediately filing suit after being assigned Rambler's rights in 2015 is not evidence of an improper motive. Rather, as explained in detail in Lynwood's opposition to Defendants' motion to dismiss, Rambler (and Lynwood) did not have actual or constructive knowledge of the infringement until 2019, when Korotkov blew the whistle. (ECF 144, pp. 13-14). Upon learning the information from Korotkov, Lynwood did not immediately file suit. Instead, Rambler and Lynwood conducted an extensive and expensive investigation, including forensic analysis of abandoned computer and server hardware, data recovery, and review of troves of communications that revealed the conspiracy. (*Id*., ¶¶ 448, 464-469). Lynwood did not file suit lightly, but rather made a very large investment to confirm the facts before bringing the action.

Likewise, Lynwood's decision to refer its claims to Russian authorities for investigation does not show bad faith, but rather its conviction that the actions of Sysoev and the other Disloyal Employees violated Russian law.

Second, Lynwood's decision to file the Amended Complaint and to pursue discovery despite Defendants' and the Court's "warnings" as Defendants allege, does not amount to bad faith. *See Bisson-Dath*, 2012 WL 3025402, at *2 (reasoning that each party could have taken steps to reduce cost or delay, as is the case in virtually every litigation; "the fact that both parties aggressively

pursued their claims through pre-trial motions and discovery does not give rise to a finding of bad faith"); *Design Data Corp.*, 2014 WL 5513541, *3 (plaintiff's attempt to obtain more evidence and prosecute action did not amount to bad faith); *Michael Grecco Prods., Inc. v. BDG Media, Inc.*, No. 2:19-cv-04716-AB-KS, 2020 WL 11629239, *2 (C.D. Cal. Apr. 24, 2020) (although plaintiff failed to cure deficiencies identified by court in dismissing first amended complaint, there was no indication that resulted from plaintiff's bad faith "as opposed to the hurdles posed by the Copyright Act's statute of limitations"); *Perfect 10*, 2005 WL 2007932, at *5 (although plaintiff's amended complaint failed to allege facts that the court's first dismissal order directed it to plead, court declined to find any bad faith). Indeed, the amount of time and money that Lynwood devoted to developing and analyzing the record and pursuing its claims weighs against a finding of bad faith. *See Bisson-Dath*, 2012 WL 3025402 at *2.

Third, the pecuniary motive to recover damages is not improper. *See Phoenix Techs. Ltd. v. VMware, Inc.*, No. 15-cv-01414-HSG, 2018 WL 828030, *8 (N.D. Cal. Feb. 12, 2018) (rejecting argument that bad faith was shown by claim for damages that purportedly had "no connection with reality," observing "[n]or would a pecuniary motivation on Plaintiff's part be improper"). Nor does the timing of Lynwood's suit (coming after the announcement of F5's acquisition of NGINX) suggest an improper motive. As explained above, Lynwood did not know about the infringement until Korotkov blew the whistle in 2019, after which Lynwood promptly conducted an investigation, referred the matter to Russian authorities, and then filed suit in 2020. Other courts have rejected similar timing-based arguments where the plaintiff credibly explained the events leading up to the case's filing. *See, e.g., Zindel v. Fox Searchlight Pictures, Inc.*, No. CV-18-1435-PA (KSx), 2018 WL 6074566, at *5 (C.D. Cal. Oct. 26, 2018) (where plaintiff sought a settlement and filed suit shortly before the Academy Awards, at which the allegedly infringing film was nominated for numerous awards, timing of suit did not suggest bad faith; plaintiff credibly explained events leading up to case's filing and his attempt to reach a settlement before filing reflected not bad faith, but "[r]ather … that Plaintiff had a sincere but misguided belief in the merits of his claims."). This Court should reach the same conclusion and reject Defendants' unfounded challenges to Lynwood's motivations.

**4.    Defendants' Success on Their Motion to Dismiss Is Not Dispositive**

Defendants are not entitled to attorneys' fees merely because the Court granted their motions to dismiss. "[W]hile a defendant's complete success in defeating plaintiffs' claims 'weighs in favor of an attorney fee award … it is not dispositive. … If it was, then prevailing parties would be entitled to attorney fee awards as a matter of course. But that is not the law." *Oracle*, 2019 WL 1030365, at *3 (quoting *Bisson-Dath*, 2012 WL 3025402, at *1) (denying fees where court granted summary judgment in defendant's favor on all counts).

Courts in the Ninth Circuit regularly decline to award attorneys' fees to a defendant who succeeded in obtaining the dismissal of the plaintiff's complaint with prejudice at the pleading stage. *See, e.g., Savage v. Council on American-Islamic Relations, Inc.*, No. C-07-06076-SI, 2008 WL 4890892, at *2 (N.D. Cal. Nov. 12, 2008) (denying defendant's motion for attorney fees after dismissal of copyright claim with prejudice on motion for judgment on the pleadings); *Perfect 10*, 2005 WL 2007932, at *3-4  (denying defendants' motion for attorneys' fees following dismissal of original and first amended complaints); *see also APL Microscopic, LLC v. Steenblock, D.O., Inc.*, No. SA CV-21-00356-DOC (DFMx), 2021 WL 6496802, *2 (C.D. Cal. Nov. 9, 2021) (denying defendant's motion for fees following dismissal of copyright claim with prejudice); *Zindel*, 2018 WL 6074566, at *6 (denying fees to defendants that successfully moved to dismiss plaintiff's complaint with prejudice); *Hall,* 2018 WL 3203045, at *6 (same); *Muromura v. Rubin Postaer and Assocs.*, No. CV-12-09263-DDP (AGRx), 2015 WL 5456583, at *2 (C.D. Cal. Sept. 17, 2015) (denying fees to defendants who obtained dismissal of original, first amended, and second amended complaints for failure to state a claim). The cases Defendants cite are not good law or involved facts not present here, and they show that the Court's focus should not be on whether the claims were dismissed at the pleading stage, but rather whether they were objectively unreasonable. *See* ECF 173, p. 10 *citing Gregorini v. Apple, Inc.*, No. CV-20-406-JFW (JCx), 2020 WL 13368160 (C.D. Cal. July 21, 2020), which the F5 Defendants cite, was reversed on appeal; *see Gregorini v. Apple, Inc.*, 2022 WL 522307, at *1 & n.1 (9th Cir. Feb. 22, 2022) (holding that copyright infringement claim should not have been dismissed and "because we reverse on the merits, we also necessarily reverse the district court's award of attorneys' fees."). F5 Defendants also cite *Cobbler Nev., LLC v. Gonzales*, 901

F.3d 1142, 1149-50 (9th Cir. 2018), but there the court concluded that a fee award was appropriate because the plaintiff acted unreasonably in filing an amended complaint naming Gonzales as defendant even after it had concluded that he was not a likely infringer.  In *Shame on You Prods. v. Banks*, 893 F.3d 661, 667 (9th Cir. 2018) and *Washington v. ViacomCBS, Inc.*, No. 2:20-cv-00435-CBM-PJW, 2021 WL 6134375, at *2 (C.D. Cal. Dec. 9, 2021), the court also found the plaintiffs' claims objectively unreasonable. In neither case was the court's decision to award fees focused on the fact that the claims were dismissed at the pleading stage.  (ECF 173, p. 10).

### 5.      A Fee Award Is Unnecessary for Deterrence or Compensation

Because there is no need for deterrence or compensation on the facts of this case, this factor weighs against granting attorneys' fees to Defendants.  Deterrence is not an appropriate reason to make a fee award here because Lynwood's copyright claim was not objectively unreasonable or frivolous and Lynwood did not pursue this litigation in bad faith. Nor is it a serial plaintiff who should be deterred from bringing similar actions in the future.[3] *See, e.g., Epikhin*, 2016 WL 1258690, at *8 (finding no need to deter plaintiffs where their claims were not frivolous or objectively unreasonable and they did not act in bad faith); *Perfect 10*, 2005 WL 2007932, *5 (finding no need for deterrence where neither party had improper motive in litigating and both parties had an important economic interest; "absent bad faith, the Court cannot punish Plaintiff and other copyright holders in the future for trying to protect their copyrights."); *Loomis v. Cornish*, No. CV-12-5525-RSWL

---

[3] The cases Defendants cite are therefore easily distinguishable. (ECF 173, pp. 12-13, 16) In *Scott v. Meyer*, 2010 WL 2569286, at *3 (C.D. Cal. June 21, 2010), the plaintiff's claims were found objectively unreasonable, there was evidence of plaintiff's bad faith, and plaintiff did not oppose the motion for attorneys' fees, which made "the connotations of frivolity difficult to escape." *Id.* As a result, the court found that awarding fees was appropriate to deter non-meritorious lawsuits and compensate defendants for defending against "meritless" claims. In *Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 1746484, at *9 (C.D. Cal. Mar. 24, 2015), the court found that plaintiff's "undisputed conduct in this action has been inconsistent with a party interested in protecting its copyrights…. All of the evidence before the Court demonstrates that Perfect 10 is in the business of litigation, not protecting its copyrights or 'stimulat[ing] artistic creativity for the general public good.'" *Id.* (quoting *Fogerty*, 510 U.S. at 527). The record showed that plaintiff was a "serial plaintiff" that had filed between 20 and 30 copyright infringement lawsuits, with more than half of its revenues generated by settlements and defaults in litigation (but no successful judgments). *Id.* Thus, a fee award served the purpose of deterring serial litigants from bringing unmeritorious suits. *Id.* at *12. No such purpose would be served here.

(JEMx), 2014 WL 12586734, at *4 (C.D. Cal. Mar. 17, 2014) (where plaintiff was not objectively unreasonable in pursuing claim, "any need to deter frivolous or objectively unreasonable claims is not present here" and thus denying fee award was consistent with purposes of Copyright Act); *Reed v. Peterson*, No. C04-00228 WWS, 2005 WL 1522187, at *7 (N.D. Cal. June 27, 2005) (where plaintiff's copyright claim "while weak, was neither frivolous nor motivated by anything other than Plaintiff's desire to gain the protection of his copyrighted work that he believed he was entitled to," and legal and factual arguments were not objectively unreasonable, court found "no special need for deterrence").

As courts in this district have recognized, "plaintiffs acting in good faith with potentially meritorious claims should not be deterred from seeking to protect their copyrights based on the fear of a large attorney's fees award should the Court rule against them." *Oracle*, 2019 WL 10303651, at *3. "It is not the purpose of the Copyright Act to deter litigants from bringing potentially meritorious claims, even though those claims may be ultimately unsuccessful." *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, No. C-12-4601 EMC, 2014 1724478, at *8 (N.D. Cal. Ap. 29, 2014); *see also Design Data*, 2014 WL 5513541, at *2 ("An award of attorney's fees in this case could discourage plaintiffs like DDC from bringing cases where they have definite evidence of some infringement for fear that they will be unable to develop sufficient facts to prevail."). Awarding Defendants $1.5 million in attorneys' fees would serve no purpose other than to discourage future plaintiffs from bringing potentially meritorious claims.

Nor is there any need to compensate Defendants in order to further the purposes of the Copyright Act. "[I]n evaluating the need for compensation, courts consider whether defendants advancing 'meritorious copyright defenses' are 'encouraged to litigate them to the same extent that plaintiffs are.'" *Phoenix Techs.*, 2018 WL 828030, at *8. Because Defendants were fully incentivized to vigorously defend the suit regardless of the potential entitlement to attorneys' fees, this factor does not weigh in favor of a fee award. *See, e.g., Id.* (where defendant had ample incentive to defend against plaintiff's claims, this factor did not weigh in favor of a fee award); *Epikhin*, 2016 WL 1258690, at *8 (finding no need for a fee award to encourage defendants to litigate meritorious copyright defenses because they had "ample incentive" to vigorously defend their app, which had

been downloaded over a million times); *Bisson-Dath*, 2012 WL 3025402, at *3 (finding that fee award would not serve purposes of Copyright Act, observing that defendant "had ample incentive to vigorously defend its multibillion dollar [gaming] franchise against claims of infringement").

### III.   If the Court Awards Attorneys' Fees, the Award Should be Limited to Fees Defending the Copyright Infringement Claim (Count 14)

Under the American Rule, parties to litigation must pay their own attorneys' fees despite prevailing in the litigation. *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health and Human Resources* 532 U.S. 598, 602 (2001). One exception is where a statute provides for an award of fees. The sole basis asserted by Defendants in support of their request for attorneys' fees is the discretionary prevailing party fees authorized by Section 505 of the Copyright Act. (ECF 173, pp. 14-16; ECF 174, pp. 5-7).

A discretionary award under Section 505 is limited to fees attributable to the prosecution or defense of a copyright claim or related claims.    *Entertainment Research Group,, Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1230 (9th Cir. 1997) (limiting award of attorneys' fees only to those fees incurred in defending against copyright infringement claims) (*citing Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("congressional intent to limit awards to prevailing parties requires that…unrelated claims be treated as if they had been raised in separate lawsuits")). Section 505 does not authorize a fee award for non-copyright claims where, as here, the copyright and non-copyright claims present "distinctly different claims for relief… based on different facts and legal theories." *Id.*, *quoting Hensley*, 461 U.S. at 434. Moreover, a claimant must proffer "original time records and billing statements" to properly ensure that the requested fees relate to the copyright claims. *Id.*, at 1232 ("the district court abused its discretion by not requiring Genesis to submit its original time records and billing statements"). Defendants' failure to submit original time records and billing statements combined with their failure to establish that the non-copyright claims are "related" to Lynwood's one copyright claim is fatal to their demand for fees related to the non-copyright claims.

Lynwood's core claims concern the Individual Defendants' breach of their contractual duties owed to Rambler, claims which primarily arise under Russian employment law, and business tort claims against F5 Defendants and Individual Defendants arising from Individual Defendants' theft

and misappropriation of the NGINX Enterprise.  (ECF 141, ¶¶1-19, 214-218, 277-280).  Defendants'
conclusory assertions of purported relatedness and stray citations to recharacterized allegations fail
to establish that Lynwood's claims are "first and foremost a copyright infringement action."  (ECF
173, p. 15) and (ECF 174, pp.5-6).

Contrary to F5 Defendants' assertions, the Eighth (Aiding and Abetting Breach of Duty of
Honesty and Loyalty Under Russian Law), Ninth (Tortious Interference with a Contract), Twelfth
(Tortious Interference with a Prospective Business Advantage), and Thirteenth (Fraud) Claims for
Relief against the F5 Defendants rely on facts and legal theories that are distinct from Lynwood's
copyright claim.  (ECF 173, p. 15).  The Eighth Claim for Relief relies on the F5 Defendants'
knowledge of the Individual Defendants' employment agreements and obligation under Russian law
in support of its claim that the F5 Defendants aided and abetted the Individual Defendants' breach
of Russian law.  (ECF 141, ¶ 639 ("F5's due diligence included a review of the [Individual
Defendants'] past employment and separation agreements with Rambler"); ¶ 641 ("F5 knew about
the [Individual Defendants'] Article 53 duties to act fairly and honestly with Rambler, the [Individual
Defendants'] violations of those duties, and their fraudulent conduct against Rambler").  Likewise,
the Twelfth Claim for Relief relies on the F5 Defendants' knowledge of the Individual Defendants'
Employment Agreements, the Rambler Code of Ethics, and the Rambler Regulations in support of
Lynwood's claim that the F5 Defendants tortiously interfered with these contracts.  (ECF 141, ¶¶
680-90.).

Similarly, the First, Second, and Third (Breach of Employment Obligations Under Russian
Law); Fourth and Fifth (Duty to Act Fairly Under Russian Law); and Sixth (Aiding and Abetting
Breach of Duty of Honesty and Loyalty Under Russian Law) Claims for Relief against the Individual
Defendants all rely on the Individual Defendants' contractual duties to Rambler and their obligations
under Russian law.  (ECF 141, ¶¶ 576-81,587-92, and 597-602 (relying on breaches of Individual
Defendants' Employment Agreements, the Rambler Code of Ethics, and the Rambler Regulations in
support); ¶¶ 608 and 615 (relying on breaches or Russian Civil Code); and ¶¶ 619-20 (relying on
Russian law)).  While the non-copyright claims may cite Defendants' misappropriation of
Opensource NGINX and NGINX Plus as just one of many ways in which Defendants breached their

contractual and legal duties to Rambler and stole the NGINX Enterprise for their own profit, those claims are independent from the copyright claim.

Moreover, Defendants' Motions fail to explain how awarding fees for the non-copyright claims furthers or advances the purpose of the Copyright Act.  It would not.  The purpose of the Copyright Act is "'enrich[] the general public through access to creative works'" by "striking a balance between … encouraging and rewarding authors' creations while also enabling others to build on that work." *Kirtsaeng*, 579 U.S. at 204 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 526-527 (1994)).  The non-copyright claims are not focused on creative works.  Instead, as noted above, they are focused on the Individual Defendants' contractual and legal duties under Russian law, and the F5 Defendants' interference with same.  The Court should deny Defendants' Motions in their entirety, but even if the Court were to consider exercising its discretion in Defendants' favor, there is no basis to extend Section 505 fees to non-copyright claims.

## IV.    <u>Defendants Failed to Support Their Alleged Fees with Detailed Billing Records</u>

The Ninth Circuit cautions district courts not to "accept uncritically . . . counsel's representations concerning the time expended."  *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989); *see also Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984) ("The district court appears to have accepted uncritically plaintiff's representations concerning the time expended on this case, and it awarded the entire amount requested by plaintiff.  Such a procedure is inadequate").  The prevailing party bears the burden of proving the reasonableness of attorneys' hourly rates and hours expended (*Hensley*, 461 U.S. at 433), and must provide detailed time records documenting the tasks completed and the time spent.  *See McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) ("The party seeking the award should provide documentary evidence to the court concerning the number of hours spent, and how it determined the hourly rate(s) requested").  Particularly where a party seeking fees could only be entitled to fees for particular claims or particular portions of an action, the motion for fees must be supported by adequate documentations to permit the district court and the opposing party to assess which fees are compensable and which fees are not.  *See Erickson Productions Inc. v. Kast*, 13-cv-05472, 2021 WL 3887797, *7 (N.D. Cal. 2021).

Here, Defendants tactically chose not to submit their detailed billing records in support of their claimed fees and, instead, have only submitted affirmations from counsel that merely describe Defendants' alleged fees generally and in the aggregate.   (ECF 173-1; ECF 174-1). This is insufficient, particularly in light of Defendants' attempt to pile on fees unrelated to the sole copyright claim dismissed by the Court.

In *Mandeville-Anthony v. Walt Disney Co.*, No. CV 11-2137-VBF(JEMX), 2011 WL 13195829 (C.D. Cal. Sept. 28, 2011), the court denied defendants' motion for attorneys' fees under Section 505, in part, because defendants failed to provide "billing records or invoices to substantiate the reasonableness of any requested attorneys' fees." *Id.* at *1.  The court noted that, "[w]ithout such records, neither the Plaintiff nor the Court can assess whether the fees claimed are reasonable or were necessarily incurred." *Id.*  Thus, the *Mandeville-Anthony* court found that, without detailed billing records, "[d]efendants have not demonstrated the reasonableness of the fees requested." *Id.*

Similarly, in *Colby v. Newman*, No. CV1107413JGBRZX, 2013 WL 12124428 (C.D. Cal. Dec. 18, 2013), plaintiffs argued that defendants' requested attorneys' fees should be denied or reduced because defendants "have not provided actual billing statements." *Id.* at *5.  The *Colby* court agreed, reasoning that "[w]hile [defendants] have provided declarations that summarize the work they did, they have not provided original time records and billing statements.  Detailed billing records (e.g., hourly invoices) are generally required to assist the court in its determination of reasonable fees." *Id.* (citing *Entertainment Research Group*, 122 F.3d at 1232 ("the district court abused its discretion by not requiring ... original time records and billing statements")).

Absent detailed billing records, it is impossible for Lynwood or the Court to assess whether Defendants' asserted fees were related to their defense of Lynwood's copyright infringement claim and/or whether the alleged fees were reasonable.   Defendants' deficient filing is especially problematic, because (a) Defendants seek fees generally for "copyright claims" and "copyright issues" even though they expressly stipulated to dismissal without fees or costs for two of the three copyright claims in the Amended Complaint, and (b) Defendants improperly seek fees for unrelated, non-copyright claims.  Accordingly, the Court should deny Defendants' Motions.

1

**V.      Defendants' Fees are Facially Unreasonable and Excessive**

2

Even where a party establishes the right to a fee award, "[i]t remains for the district court to

3

determine what fee is reasonable." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).   In the Ninth

4

Circuit, district courts apply the lodestar, which is calculated by multiplying the number of hours the

5

prevailing party reasonably expended on the litigation by a reasonable hourly rate. *Bell v. Clackamas*

6

*County*, 341 F.3d 858, 868 (9th Cir. 2003).  "A district court should exclude from lodestar amount

7

hours that are not reasonably expended because they are excessive, redundant, or otherwise

8

unnecessary." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (quoting

9

*Hensley*, 461 U.S. at 433).

10

The Court issued the Dismissal Order at the pleading stage, and no document discovery or

11

depositions were ever conducted.  All of the defendants, including the venture capital defendants

12

who have not moved for fees, collaborated on filing a single, consolidated Motion to Dismiss the

13

Amended Complaint.  Only one of the nine dismissed claims was for copyright infringement, and

14

that claim was addressed in two and a half pages of text.  (ECF 144, pp. 17-20).  Yet, the F5

15

Defendants seek $837,602.15, with three partners, an outside Professor, and four associates all

16

working on the matter.  The Individual Defendants seek $770,367.10, with five partners and two

17

senior associates working on the matter.  While Defendants' attempt to camouflage their lawyers'

18

duplication, excessiveness, and unnecessary hours by holding back their billing records and instead

19

offering only generalized declarations, it is obvious from the amount of the fees requested and the

20

excessive staffing that the fees sought are inapplicable, unreasonable, duplicative, and excessive.

21

In all events, Lynwood should be entitled to review the actual billing records before any award of

22

fees is made, especially in this case where the only statutory hook for deviating from the American

23

rule is the Copyright Act, and a very small fraction of the work in the case focused on the lone

24

dismissed copyright claim.

25

**CONCLUSION**

26

The Court should defer consideration of the Motions until the Ninth Circuit decides

27

Lynwood's appeal.  If the Court decides the Motions now, the Court should deny the Motions in

28

their entirety.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED:  November 4, 2022

By:  /s/  *Alexander D. Pencu*
(Admitted *Pro Hac Vice*)
MEISTER SEELIG & FEIN LLP
125 Park Avenue, 7th Floor
New York, New York 10017
Telephone: (212) 655-3500

BURKE, WILLIAMS & SORENSEN, LLP
60 South Market Street, Suite 1000
San Jose, California 95113
Telephone: (408) 606-6300
Facsimile: (408) 606-6333


*Attorneys for Plaintiff Hemma Investments CY
Limited f/k/a Lynwood Investments CY Limited*