IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNWOOD INVESTMENTS CY LIMITED,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MAXIM KONOVALOV, et al.,<br><br>　　　　Defendants. | Case No. 20-cv-03778-MMC<br>**AMENDED\***<br>**ORDER FINDING DEFENDANTS ENTITLED TO ATTORNEYS' FEES; AFFORDING DEFENDANTS LEAVE TO SUPPLEMENT MOTIONS AS TO AMOUNT; SETTING BRIEFING SCHEDULE**<br><br>Re: Dkt. Nos. 173, 174 |

　　　　Before the Court are the following two motions, both filed September 30, 2022: (1) defendants F5, Inc., NGINX., Inc. (BVI), and NGINX Software, Inc.'s (collectively, "F5 Entities") "Motion for Attorney's Fees," and (2) defendants Maxim Konovalov, Igor Sysoev, Andrey Alexeev, Maxim Dounin, Gleb Smirnoff, and Angus Robertson's (collectively, "Individual Defendants") "Motion for Attorneys' Fees."  Plaintiff, Lynwood Investments CY Limited ("Lynwood"),[1] has filed opposition, to which defendants have replied.  The Court, having read and considered the papers filed in support of and in opposition to the motions, rules as follows.[2]

**BACKGROUND**

　　　　On June 8, 2020, Lynwood filed its initial complaint in the instant action, seeking over $750 million in purported damages resulting from an alleged conspiracy to steal "the NGINX Enterprise," a "popular web server enterprise," from Rambler Internet Holding

---

[1] On September 2, 2022, Lynwood informed the Court it changed its name to Hemma Investments CY Limited.  (See Joint Case Mgmt. Statement and Rule 26(f) Rep., Dkt. No. 165.)

[2] On December 2, 2022, the Court took the matter under submission.

\* The sole amendment is to change the date on page 15, line 17.

1  LLC ("Rambler"), a Russian software company at which the Individual Defendants, with
2  the exception of Robertson, had worked. (See Compl. ¶ 22; Am. Compl. ("AC") ¶¶ 1, 19.)
3  According to Lynwood, Rambler assigned its intellectual property rights to Lynwood in
4  2015. (See AC ¶ 457.)

5  On October 1, 2020, the Honorable Lucy H. Koh, to whom the above-titled action
6  previously was assigned, found Lynwood's initial "140-page complaint['s] set[ting] forth 26
7  causes of action against 12 defendants" made the case "unmanageably large," and
8  ordered Lynwood to "select 10 claims to be litigated through trial," with the remaining
9  claims to be "stayed pending resolution of [Lynwood's] 10 selected claims." (See Order
10 re: Case Narrowing, Dkt. No. 107.)

11 By two orders filed, respectively, on March 25, 2021, and March 30, 2021, Judge
12 Koh granted defendants' motions to dismiss the initial complaint, and accordingly,
13 dismissed the 10 non-stayed claims. Although Judge Koh afforded Lynwood leave to
14 amend the initial complaint, she warned that "failure to cure deficiencies identified" in
15 either of her orders, or in the defendants' motions to dismiss, would "result in dismissal of
16 the deficient claims with prejudice" (see, e.g., Order Granting Mot. to Dismiss with Leave
17 to Amend ("March 30, 2021, Order"), 37:5-8, Dkt. No. 135), and, in a case management
18 order filed March 30, 2021, further noted "the Court [was] unsure whether Lynwood
19 [would] be able to cure all of the deficiencies identified" (see Case Mgmt. Order, 2:2-3,
20 Dkt. No. 136).

21 On April 29, 2021, Lynwood filed the AC, a pleading consisting of 167 pages in
22 which Lynwood asserted 25 causes of action[3] against 12 defendants. On May 27, 2021,
23 defendants filed a consolidated motion to dismiss the AC. Subsequently, on January 12,
24 2022, the case was reassigned to the undersigned. Thereafter, by order filed August 16,
25 2022 ("August 16, 2022, Order"), this Court granted defendants' consolidated motion and

---

[3] Lynwood did not reassert in the AC one of its non-stayed claims.

dismissed the non-stayed claims without further leave to amend,[4] after which Lynwood, pursuant to a stipulation filed September 9, 2022, dismissed the 16 remaining claims. On September 14, 2022, Lynwood filed a notice of appeal from this Court's August 16, 2022, Order, which appeal presently is pending before the Ninth Circuit.

By their motion, the F5 Entities seek, pursuant to the Copyright Act, see 17 U.S.C. § 505, attorneys' fees in the amount of $837,602.15, specifically, $705,711.05 for defending against Lynwood's direct copyright infringement claim, and $131,891.10 for defending against four claims described by the F5 Entities as "related claims." (See F5 Entities' Mot. for Attorney's Fees; Mem. of P. & A. ("F5 Entities' Mot.") 17:2, 18:11-14 Dkt. No. 173.) Similarly, the Individual Defendants, by their motion, seek, pursuant to 17 U.S.C. § 505, attorneys' fees in the amount of $770,367.10, specifically, $263,300.35 for defending against the direct copyright infringement claim, and $507,066.75 for defending against six "related claims." (See Mot. for Attorneys' Fees by Defs. Maxim Konovalov, Igor Sysoev, Andrey Alexeev, Maxim Dounin, Gleb Smirnoff and Angus Robertson; Mem. of P. & A. ("Indiv. Defs.' Mot.") 2:18-19, 2:26-27, Dkt. No. 174.)[5]

## DISCUSSION

**A. Deferral**

In opposing the motions, Lynwood, at the outset, argues the Court "should defer its ruling . . . until after the Ninth Circuit decides [it]s pending appeal." (See Pl.'s Mem. of P. & A. in Opp'n to Defs.' Mots. for Attorneys' Fees ("Pl.'s Opp'n"), 1:16-17, Dkt. No. 178.)

---

[4] The August 16, 2022, Order contains a detailed discussion of Lynwood's factual allegations. (See August 16, 2022, Order, 1:24-3:19, Dkt. No. 162.)

[5] The Court, in discussing the arguments proffered in support of an award of attorneys' fees, has not distinguished between those made by the F5 Entities and those made by the Individual Defendants, the latter having "join[ed] in and incorporate[d] by reference" the F5 Entities' arguments that are addressed herein. (See Indiv. Defs.' Mot. 4 n.3; see also Defs. Maxim Konovalov, Igor Sysoev, Andrey Alexeev, Maxim Dounin, Gleb Smirnoff and Angus Robertson's Reply Brief in Supp. of Mot. for Attorneys' Fees, 2:8-9, Dkt. No. 181.)

An appeal from a decision on the merits does not foreclose an award of attorney's fees pending resolution of such appeal. See Masalosalo v. Stonewall Ins. Co., 718 F.2d 955, 957 (9th Cir. 1983) (holding district court "retained the power to award attorneys' fees after the notice of appeal from the decision on the merits had been filed"). "If an appeal on the merits of the case is taken, [a district] court may rule on the claim for fees, may defer its ruling on the motion, or may deny the motion without prejudice, directing . . . a new period for filing after the appeal has been resolved." See Fed. R. Civ. P. 54(d) advisory committee's notes to 1993 amendment. The Ninth Circuit, however, has expressed a preference for avoiding "piecemeal" appeals and for having "all issues arising out of a single lawsuit . . . considered in one appellate proceeding." See Metcalf v. Borba, 681 F.2d 1183, 1188 (9th Cir. 1982); see also Synopsys, Inc. v. Mentor Graphics Corp., 2015 WL 4365494, at *2 (N.D. Cal. July 16, 2015) (finding "resolution of the motion [for attorneys' fees] at this time . . . may allow for consolidation of any appeal of such decision with the pending appeal on the merits").

In determining whether to stay an award of attorneys' fees pending appeal, courts consider the following four factors: (1) "whether the stay applicant has made a strong showing that he is likely to succeed on the merits;" (2) "whether the applicant will be irreparably injured absent a stay;" (3) "whether issuance of the stay will substantially injure the other parties interested in the proceeding;" and (4) "where the public interest lies." See Hilton v. Braunskill, 481 U.S. 770, 776 (1987); see also, e.g., Spitz Techs. Corp. v. Nobel Biocare USA LLC, 2018 WL 6016149, at *1-2 (C.D. Cal. Aug. 13, 2018), aff'd, 773 F. App'x 625 (Fed. Cir. 2019) (applying four-factor Hilton test to determine whether to stay adjudication of motion for attorneys' fees pending appeal on merits). A party seeking a stay "need not satisfy all four factors." See Pers. Web Techs., LLC v. EMC Corp., 2020 WL 1557441, at *1 (N.D. Cal. Apr. 1, 2020).

As set forth below, Lynwood fails to show a stay is warranted.

As to the first factor, Lynwood has made no showing, much less a "strong" showing, that it is likely to succeed on the merits. Rather, Lynwood first states it

4

"believes that it has a strong chance of success on appeal" (see Pl.'s Opp'n, 9:26), but thereafter states it "believes it may prevail on its appeal" (see id. at 11:4 (emphasis added)), and, in any event, reasserts the same arguments in support of its direct copyright infringement claim that were rejected by Judge Koh in dismissing the non-stayed claims from the initial complaint (see Order Granting Mots. to Dismiss with Leave to Amend ("March 25, 2021, Order"), 30:19-31:3, Dkt. No. 134), and once again, rejected by this Court in dismissing the non-stayed claims from the AC (see August 16, 2022, Order, 34:10-35:19). Without more, a recitation of rejected arguments does not constitute the requisite strong showing to warrant deferral. Cf. Planet Aid, Inc. v. Reveal, Ctr. for Investigative Reporting, 2021 WL 4051420, at *2 (N.D. Cal. Aug. 27, 2021) (deferring calculation of attorneys' fees, given indication appellate court would reconsider precedent; finding plaintiffs made "substantial showing . . . as to the potential for reversal of the judgment on which defendants' entitlement to fees [was] predicated"). Lynwood's argument that "[t]he [August 16, 2022,] Order was at the pleading stage" likewise is unavailing. (See Pl.'s Opp'n, 9:26-27); see also Rentmeester v. Nike, Inc., 883 F.3d 1111, 1123 (9th Cir. 2018), overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin, 952 F.3d 1051 (9th Cir. 2020) (noting "dismissal at the pleading stage is by no means unprecedented" in copyright infringement cases). Consequently, this factor weighs against a stay.

As to the second factor, Lynwood offers no argument, let alone evidence, showing it will be irreparably harmed absent a stay. See Pers. Web Techs., 2020 WL 1557441, at *2 (noting, as example of irreparable harm, party's "limited financial resources such that ligating attorneys' fees would result in bankruptcy"). Consequently, this factor weighs against a stay.

As to the third factor, although defendants contend they "could very well be prejudiced by a stay, as a drawn-out, two-stage appeal could jeopardize their ability to recover fees" (see F5 Entities' Reply in Supp. of Their Mot. for Attorney's Fees ("F5 Entities' Reply"), 4:21-22, Dkt. No. 180), defendants have not made a sufficient showing

as to such injury. In particular, defendants argue, "Lynwood . . . is owned or controlled by Russian oligarch Alexander Mamut," and "[g]iven Russia's invasion and ongoing war against Ukraine, and the sanctions frameworks by Western nations, it is more than possible that Mamut could be sanctioned and his assets frozen outside of the F5 Entities' reach, or that he takes steps to hide or transfer assets outside the Court's jurisdiction." (See id. at 4:23-27.) Defendants do not, however, explain how any such sanctions as to Mamut, who is not named as a defendant in the instant action, would affect Lynwood's ability to pay fees, and, the Court, having been provided no information as to Lynwood's finances, "cannot definitively determine whether [d]efendants . . . would be injured by a stay." See Pers. Web Techs., 2020 WL 1557441, at *2. Consequently, this factor weighs in favor of a stay.[6]

As to the fourth factor, Lynwood, pointing out that if its appeal is successful, "the Court's work on the Motions . . . will have been unnecessary" (see Pl.'s Opp'n, 9:10-13), contends "deferring the issue of attorneys' fees would promote judicial economy" (see id. at 8:21).[7] As regards the instant case, however, the Court finds "judicial economy is better served by determining attorneys' fees promptly while the details of the proceedings are still fresh and when the [Ninth] Circuit has the opportunity to consider any appeal of the calculation at the same time as the appeal on the merits." See Spitz, 2018 WL 6016149, at *2. Consequently, this factor weighs against a stay.[8]

---

[6] The Court notes, however, a lack of evidence that any party will be injured by a stay is, standing alone, insufficient to warrant a stay. See Spitz, 2018 WL 6016149, at *2.

[7] Although defendants, citing the parties' stipulation as to a briefing schedule on the instant motions, also argues there is "a public interest in holding parties to their stipulations" (see F5 Entities' Reply, 4:13-14 (quoting Pers. Web Techs., 2020 WL 1557441, at *2)), the Court finds the cited stipulation, in affording Lynwood four weeks to respond to the motions, contained no limitation as to the arguments made in any such response, and, in particular, no preclusion as to a request therein for a stay (see Stipulation to Extend Briefing Schedule and Adjourn Hearing on Defs.' Mots. for Attorney's Fees Pursuant to 17 U.S.C. § 505, Dkt. No. 177).

[8] The four cases cited by Lynwood in which the district court, in granting a stay, relied primarily on judicial economy are distinguishable on their facts. See Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt., 2019 WL 10786009, at *2 (C.D. Cal. Oct. 28, 2019) (finding, "unlike cases . . . where the court heard an attorneys' fees motion . . . under the

In sum, only one of the Hilton factors weighs in favor of granting a stay, whereas three of those factors weigh against granting a stay.

Accordingly, the balance of factors weighing against deferral pending appeal, the request for a stay is hereby DENIED, and the Court next turns to the other issues raised by the instant motions for fees.

**B. Entitlement to Attorneys' Fees**

Under the Copyright Act, the Court has discretion to "award a reasonable attorney's fee to the prevailing party." See 17 U.S.C. § 505; see also Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994) (holding "[p]revailing plaintiffs and prevailing defendants are to be treated alike" under § 505). To "guide courts' discretion," the Supreme Court has identified "several nonexclusive factors": "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." See Fogerty, 510 U.S. at 534 n.19 (internal quotation and citation omitted). The Ninth Circuit has "added as additional considerations: the degree of success obtained, the purposes of the Copyright Act, and whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious plaintiff." See Perfect 10, Inc. v. Giganews, Inc., 847 F.3d 657, 675 (9th Cir. 2017) (internal quotation

---

single standard of the Copyright Act," district court, depending on decision by Ninth Circuit, might "need to determine attorneys' fees under multiple statutes," requiring "difficult" recalculation on remand); G.P.P., Inc. v. Guardian Prot. Prod., Inc., 2018 WL 932087, at *2 (E.D. Cal. Feb. 16, 2018) (finding deferral "prudent," given litigation had "encompassed a motion to dismiss, two amended complaints, and multiple rounds of discovery, summary judgment, and motions in limine, culminating in a week-long trial," at which "neither side prevailed on any of its claims or counterclaims for liability and damages"); FlowRider Surf, Ltd. v. Pac. Surf Designs, Inc., 2018 WL 6830611, at *3 (S.D. Cal. Dec. 21, 2018) (finding potential "impact" of appellate court's decision as to whether case qualified as "exceptional," and thus eligible for award of attorneys' fees under Patent Act, warranted stay); Freeman Inv. Mgmt. Co., LLC v. Frank Russell Co., 2017 WL 11420268, at *1 (S.D. Cal. Feb. 9, 2017) (noting "whatever the [c]ourt's ruling on [fees] motion, [d]efendant promise[d] to file a second motion for attorneys' fees if it [was] successful on appeal"; finding "under any scenario at the Ninth Circuit, the [c]ourt's efforts would either be moot or insufficient"). As to the remaining four cases on which Lynwood relies in support of a stay, the decisions lack sufficient discussion of the district court's reasoning, and, consequently, this Court has not found them persuasive.

7

1  and citation omitted).  Courts should "giv[e] substantial weight to the reasonableness of
2  [the losing party's] litigating position, but also tak[e] into account all other relevant
3  factors," see Kirtsaeng v. John Wiley & Sons, Inc., 579 U.S. 197, 210 (2016), "[t]he most
4  important factor" being "whether an award will further the purposes of the Act," see
5  Mattel, Inc v. MGA Ent., Inc., 705 F.3d 1108, 1111 (9th Cir. 2013) (citation omitted).  In
6  exercising its discretion, however, "the district court [i]s not required to discuss each
7  [factor] in depth."  See Strike 3 Holdings LLC v. Doe, 849 F. App'x 183, 186 (9th Cir.
8  2021).

### 1. Degree of Success

"This factor weighs more in favor of a party who prevailed on the merits, rather than on a technical defense."  See DuckHole Inc. v. NBCUniversal Media LLC, 2013 WL 5797204, at *2 (C.D. Cal. Oct. 25, 2013); see also Fantasy, Inc. v. Fogerty, 94 F.3d 553, 556 (9th Cir. 1996) (noting such technical defenses include "the statute of limitations, laches, or the copyright registration requirements").  "Where a defendant has prevailed on a technical defense, courts have considered whether the defendant remains subject to future claims by the plaintiff or whether the plaintiff's claims were dismissed with prejudice."  See Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC, 2017 WL 8236267, at *4 (C.D. Cal. Dec. 5, 2017), aff'd, 925 F.3d 1140 (9th Cir. 2019).

Here, Lynwood argues, the "copyright infringement claim was dismissed based solely on a perceived pleading deficiency" (see Pl.'s Opp'n, 12:21-22), whereas defendants argue the dismissal was "based on Lynwood's incurable failure to state the fundamental elements of a copyright claim" (see F5 Entities' Reply, 7:19).  The Court finds defendants' argument more persuasive.  In particular, defendants prevailed in the instant action not only because Lynwood, in asserting its claims, improperly lumped defendants together, but also twice failed to adequately identify the copyrighted work at issue.  Moreover, although the Court acknowledges such latter defense differs somewhat from defenses courts have found to be clearly on the merits, see, e.g., Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n, 953 F.3d 638, 653 (9th Cir.

United States District Court
Northern District of California

2020) (reversing denial of fee award to defendants who "prevailed on their defense of fair use, a substantive defense at the heart of copyright law"), Lynwood, by including uncopyrightable elements in its definition of the alleged copyrighted work, namely, software "conceived" but not "developed" (see AC ¶ 745), subjected its claim to a defense traditionally recognized as going to the merits, namely "decades-old principles about the unprotectability of ideas," see Mattel, Inc. v. MGA Ent., Inc., 2011 WL 3420603, at *3-4 (C.D. Cal. Aug. 4, 2011), aff'd, 705 F.3d 1108 (9th Cir. 2013) (noting "it is well-established that copyright protection does not extend to ideas").

Even assuming, arguendo, however, defendants prevailed solely on a technical defense, they succeeded in obtaining a dismissal of all of Lynwood's claims with prejudice, a fact weighing "in favor of fee-shifting." See Choyce v. SF Bay Area Indep. Media Ctr., 2014 WL 5597274, at *4 (N.D. Cal. Nov. 3, 2014), aff'd, 669 F. App'x 863 (9th Cir. 2016) (finding, where court "did not order a pleading error corrected" and instead "dismissed the claim with prejudice," defendants "achieved total success").

Accordingly, given the above circumstances, the Court finds this factor weighs in favor of a fee award.

As Lynwood argues, however, "a defendant's complete success . . . is not dispositive." (See Pl.'s Opp'n, 17:3-4); see also Bisson-Dath v. Sony Computer Ent. Am. Inc., 2012 WL 3025402, at *1 (N.D. Cal. July 24, 2012) (noting if "complete success" were dispositive, "prevailing parties would be entitled to attorney fees as a matter of course," which "is not the law"). Lynwood thus urges the Court not to "focus . . . on whether the claims were dismissed at the pleading stage, but rather whether they were objectively unreasonable" (see Pl.'s Opp'n, 17:22-23), a question to which the Court next turns.

### 2. Objective Unreasonableness

"[A] claim is objectively unreasonable where the party advancing it should have known from the outset that its chances of success were slim to none." See Michael Grecco Prods., Inc. v. BDG Media, Inc., 2020 WL 11629239, at *2 (C.D. Cal. Apr. 24,

2020) (internal quotation, citation, and alteration omitted). "Similarly, a claim that is not objectively unreasonable at the outset can become so if the litigant continues to pursue it when the litigant knew or should have known that the chance of success was slim to none." See Epikhin v. Game Insight N. Am., 2016 WL 1258690, at *5 (N.D. Cal. Mar. 31, 2016) (internal quotation, citation, and alteration omitted). "The fact that a party's position is unsuccessful," however, "is insufficient to conclude that it was . . . objectively unreasonable." See Michael Grecco, 2020 WL 11629239, at *2 (citing Seltzer v. Green Day, Inc., 725 F.3d 1170, 1181 (9th Cir. 2013)).

Here, the Court finds Lynwood's copyright claim, although not frivolous,[9] was objectively unreasonable. First, Lynwood, from the outset, should have been aware of the grounds on which its copyright claim was dismissed, namely, that asserting a copyright infringement claim without properly identifying the copyrighted work at issue, or which defendant infringed which particular copyright, rendered its chances of success slim to none. Further, as discussed below, even assuming, arguendo, Lynwood's copyright claim was not objectively unreasonable at the outset, it nevertheless had become so by the time Lynwood filed its AC. See, e.g., SOFA Ent., Inc. v. Dodger Prods., Inc., 709 F.3d 1273, 1280 (9th Cir. 2013) (finding, "[i]n light of the education [plaintiff] received as the plaintiff in [another action, plaintiff] should have known . . . its chances of success in this case were slim to none").

In particular, Lynwood, despite having such deficiencies pointed out and being afforded leave to amend, continued to include in its definition of the copyrighted work software "conceived" but not developed, see 17 U.S.C. § 102(b) (stating "[i]n no case does copyright protection for an original work of authorship extend to any idea,

---

[9] Although, as Lynwood points out, "[d]efendants implicitly concede this point" (see Pl.'s Opp'n, 14:21), a showing of frivolousness, as defendants point out, is not required for a fee award. See Integral Dev. Corp. v. Tolat, 2015 WL 674425, at *10 (N.D. Cal. Feb. 12, 2015) (noting "attorneys' fees and costs have been awarded where a party's copyright claim 'was neither frivolous nor instituted in bad faith,' but was simply 'objectively weak'") (collecting cases).

10

procedure, process, system, method of operation, concept, principle, or discovery"), failed to "identify which defendants allegedly infringed its copyright" (see March 25, 2021, Order, 30:26-31:1), and, most importantly, was unable to "identify with specificity which work or works were copied" (see Mot. to Dismiss of F5 Entities, 16:12-14, Dkt. No. 88 (quoting Iglesia Ni Cristo v. E. Cayabyab, 2018 WL 4674603, at *6 (N.D. Cal. Sept. 26, 2018)); see also Pl.'s Opp'n, 10:6-8 (asserting "Sysoev knows what code he wrote at Rambler" and it had "pled enough to get discovery of the source code" he developed there)).[10]

Accordingly, the Court finds this factor weighs in favor of a fee award.

### 3. Purposes of the Copyright Act / Deterrence and Compensation

"Faithfulness to the purposes of the Copyright Act is . . . the pivotal criterion" in determining whether to award fees. See Fantasy, 94 F.3d at 558. The Copyright Act's ultimate purpose is to "enrich[] the general public through access to creative works." See Kirtsaeng, 579 U.S. at 204; see also Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 349 (1991) (holding "[t]he primary objective of copyright is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts'" (quoting Art. I, § 8, cl. 8)). "This purpose is satisfied when the public can 'build freely upon the ideas and information' in the public domain." See Mattel, 2011 WL 3420603, at *1 (quoting Feist, 499 U.S. at 350). "To that end, defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." See Fogerty, 510 U.S. at 527. Further, "[e]ven in the absence of frivolous or unreasonable claims, [a] successful defense" can "further[] the interests of the copyright act by defeating an 'over-

---

[10] The Court finds unpersuasive Lynwood's argument that Judge Koh's "order granting [it] leave to amend its original complaint shows that it found potential merit in Lynwood's copyright claim." (See Pl.'s Opp'n, 13:15-16 (citing March 30, 2021, Order).) At the time Judge Koh issued her order, she was not in a position to know whether Lynwood had the facts necessary to cure the deficiencies she identified and, indeed, that same date, stated: "[T[he Court is unsure whether Lynwood will be able to cure" them. (See Case Mgmt. Order, Mar. 30, 2021, Dkt. No. 136.)

aggressive copyright prosecution' exemplified by 'pursuit of grossly overbroad monetary and injunctive relief.'" See Perfect 10, Inc. v. Giganews, Inc., 2015 WL 1746484, at *7 (C.D. Cal. Mar. 24, 2015), aff'd, 847 F.3d 657 (9th Cir. 2017) (quoting Mattel, 2011 WL 3420603, at *4).

Here, defendants argue, Lynwood pursued exactly that, specifically, by "seeking $750 million and destruction of all copies of NGINX software." (See F5 Entities' Mot. 12:21-22.) In support thereof, defendants have submitted evidence, to which Lynwood makes no objection, that any loss Rambler arguably incurred was no more than "around $810,000" (see Decl. of Michael A. Jacobs in Supp. of the F5 Entities' Mot. for Attorney's Fees ("Jacobs Decl."), Ex. B, Dkt. No. 173-1), a sum constituting less than one percent of the $750 million in damages Lynwood claimed (see AC, Prayer for Relief ¶ B), and, as defendants also point out, "Lynwood filed this lawsuit only after F5—a publicly traded U.S. company—acquired NGINX for $670 million in 2019" (see F5 Entities' Mot. 12:16-18 (internal citation omitted)).

Additionally, defendants contend, "Lynwood . . . pursued this lawsuit with the stated aim of effect[uat]ing the destruction of the NGINX software" (see F5 Entities' Mot. 3:14-15; see also AC, Prayer for Relief ¶ G (seeking "permanent injunction" by which defendants are ordered "to destroy all copies of [Open Source NGINX and NGINX Plus], and all derivative works thereof, made in violation of [p]laintiff's exclusive rights")), which destruction, defendants assert, "would have significantly impeded creative works and potentially disrupted a significant portion of web serving across the worldwide web" (see F5 Entities' Mot. 2:16-18), given that NGINX, which "NGINX Inc. has operated . . . for the last decade," is "the world's most widely used web server," on which "[m]illions of people and businesses rely" (see id. at 12:3-6).

Lynwood does not dispute the above contentions. Rather, Lynwood argues, there is no "need to compensate [d]efendants in order to further the purposes of the Copyright Act," as defendants "were fully incentivized to vigorously defend the suit regardless of the potential entitlement to attorneys' fees." (See Pl.'s Opp'n, 19:20-24, 20:1-3 (citing, e.g.,

12

Bisson-Dath, 2012 WL 3025402, at *3 (finding "awarding [d]efendants attorney fees would not necessarily serve the purpose of the Copyright Act" where defendants "had ample incentive to vigorously defend its multibillion dollar . . . franchise")).) Lynwood does not, however, make clear how or why defendants were "fully incentivized," and consequently, its argument fails. Cf. Epikhin, 2016 WL 1258690, at *8 (finding defendants "had 'ample incentive' to vigorously defend [its mobile application], which ha[d] been downloaded over one million times").

In any event, to the extent Lynwood may be contending defendants, in seeking "the court-ordered destruction of valuable assets" (see F5 Entities' Reply, 8:22-23), required no further incentive, the Court finds such argument, even if accepted, unavailing, given the above-discussed other considerations, all of which further the purposes of the Copyright Act. See, e.g., Perfect 10, 2015 WL 1746484, at *7 (finding defendants' successful defense advanced purpose of Copyright Act where plaintiff's "unmeritorious claims against the leading Usenet service provider in the country 'posed a serious threat to the public's access to free and competitive expression'").

Accordingly, the Court finds this factor weighs in favor of a fee award.

### 4. Conclusion: Entitlement to Attorneys' Fees

In sum, all three of the above factors weigh in favor of an award of fees.[11]

### C. Reasonableness of Fees Claimed

In making a fee award under § 505, a court must determine "a reasonable attorney's fee." See Traditional Cat Ass'n, Inc. v. Gilbreath, 340 F.3d 829, 833 (9th Cir. 2003). In making that determination, the Court uses the "lodestar method," see In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011), by which "the

---

[11] In light of the above finding, the Court does not address herein the parties' arguments pertaining to Lynwood's motivation in bringing the instant lawsuit. See Strike 3, 849 F. App'x at 186 (affirming fee award where "district court limited its analysis . . . to compensation and deterrence, ultimately concluding that [fee award] for litigating a meritorious copyright defense sufficiently advanced the goals of the Copyright Act"); see also Mattel, 2011 WL 3420603, at *1 (noting § 505 "factors are not exclusive . . . or mandatory" but "must always yield to the purposes of the Copyright Act").

13

number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation)" is multiplied by "a reasonable hourly rate for the region and for the experience of the lawyer," see id. "In determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" See McCown v. City of Fontana, 565 F.3d 1097, 1102 (9th Cir. 2009) (citation omitted). "The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and the rates claimed." See Welch v. Metro. Life Ins. Co., 480 F.3d 942, 945–46 (9th Cir. 2007).

Here, defendants' respective motions and declarations filed in conjunction therewith specify the hourly rates sought. With respect to the hours expended, however, such supporting documents lack the requisite specificity. In that regard, the F5 Entities, for example, frequently claim hours for "a variety of work." (See, e.g., Jacobs Decl. ¶ 32 (stating "[t]he team also performed a variety of work related to general defense tasks, such as fact investigation, analysis and strategy, review of key documents, joint defense communications and memoranda, and correspondence with the F5 Entities").) Without full itemization, however, the Court has no meaningful way of determining whether the total hours claimed were reasonably expended. Similarly, the Individual Defendants frequently claim hours for a combination of work (see, e.g., Decl. of Bruce W. Baber in Supp. of Indiv. Defs.' Mot. for Attorneys' Fees ¶ 25 (stating "Jeanne Fugate (62.0 hours) focused on client interviews, participation in the Rule 26(f) conference, legal research, and fact investigation")), and often lack further elaboration as to the topics researched or investigated (see, e.g., id.); see also Pop Top Corp. v. Rakuten Kobo Inc., 2022 WL 901547, at *2 (N.D. Cal. Mar. 28, 2022) (finding "description of the services rendered by each attorney [wa]s so general that . . . the court [wa]s unable to analyze whether counsel billed for excessive meetings or administrative tasks or whether there was any duplication of work").

Consequently, absent submission of contemporaneous time records, the Court is

unable to determine the appropriate amount of attorneys' fees to be awarded.  See Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc., 122 F.3d 1211, 1231 (9th Cir. 1997) (noting "district court can abuse its discretion . . . by not requiring the party requesting attorney's fees to submit any materials besides summaries of the time expended to litigate a matter").  The Court will, however, afford defendants leave to supplement their respective motions for the purpose of submitting those records.

## CONCLUSION

For the reasons stated, the Court finds defendants are entitled to an award of attorneys' fees, and affords defendants leave to supplement their motions as to the amount.

Accordingly, the Court sets the following briefing schedule:

1. Defendants' supplemental submissions shall be filed on or before January 17, 2023.[12]
2. Any supplemental opposition shall be filed on or before February 7, 2023.
3. Any supplemental replies shall be filed on or before February 21, 2023.

Unless the parties are otherwise advised, the motions will stand submitted as of February 21, 2023.

**IT IS SO ORDERED.**

Dated: December 20, 2022

MAXINE M. CHESNEY
United States District Judge

---

[12] The records may be filed under seal, but, contrary to defendants' request, are not to be submitted to the Court in camera, as Lynwood should be given the opportunity to review them in responding to the instant motions.

15