1  Douglas W. Dal Cielo (CA Bar No. 157109)
   ddalcielo@bwslaw.com
2  Patricia L. Peden (CA Bar No. 206440)
   ppeden@bwslaw.com
3  Brian M. Affrunti (CA Bar No. 227072)
   baffrunti@bwslaw.com
4  **BURKE, WILLIAMS & SORENSEN, LLP**
5  60 South Market Street, Suite 1000
   San Jose, CA  95113
6  Telephone: (408) 606-6300
   Fax: (408) 606-6333
7
8  Alexander D. Pencu (*pro hac vice*)
   adp@msf-law.com
9  Christopher J. Major (*pro hac vice*)
   cjm@msf-law.com
10 Austin D. Kim (*pro hac vice*)
   adk@msf-law.com
11 **MEISTER SEELIG & FEIN PLLC**
12 125 Park Avenue, 7th Floor
   New York, NY 10017
13 Telephone: (212) 655-3500
   Fax: (646) 539-3649
14
15 *Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNWOOD INVESTMENTS CY LIMITED,<br><br>Plaintiff,<br><br>vs.<br><br>MAXIM KONOVALOV, IGOR SYSOEV, ANDREY ALEXEEV, MAXIM DOUNIN, GLEB SMIRNOFF, ANGUS ROBERTSON, NGINX, INC. (BVI), NGINX SOFTWARE, INC., NGINX, INC. (DE), BV NGINX, LLC, RUNA CAPITAL, INC., EVENTURE CAPITAL PARTNERS II LLC and F5 NETWORKS, INC.,<br><br>Defendants. | Case No. 3:20-CV-03778-MMC<br><br>**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE F5 DEFENDANTS' MOTIONS FOR ATTORNEYS' FEES**<br><br>Hon: Maxine M. Chesney<br>Hearing Date: February 21, 2023<br>Time: 9:00 AM<br>Courtroom: Courtroom 7, 19th Floor |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

    I.     F5 Cannot Recover Fees Incurred for Non-Copyright Claims ..................................... 2

    II.    The Non-Copyright Fees Are Not Related To The Copyright Fees .............................. 3

    III.   In the Alternative, the Court Should, At a Minimum, Greatly Reduce the Unrelated Fees ............................................................................................................................... 6

    IV.   F5's Counsel's Excessive Billing Rates Preclude A Reasonableness Finding ............. 8

    V.    F5 Should Not Recover For Excessive Billing ........................................................... 11

CONCLUSION ................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

Cases

*Armstrong v. Davis*,
  318 F.3d 965 (9th Cir. 2003) .................................................................................................. 12

*Batchelder v. Geary*,
  2007 WL 2427989 (N.D. Cal. Aug. 22, 2007) .......................................................................... 9

*Big Baboon, Inc. v. SAP America, Inc.*,
  2019 WL 5088784 (N.D. Cal. Sept. 9, 2019) .......................................................................... 11

*Blum v. Stenson*,
  465 U.S. 886 (1984) ............................................................................................................ 9, 10

*Camacho v. Bridgeport Financial, Inc.*,
  523 F.3d 973 (9th Cir. 2008) .................................................................................................... 9

*Cupid Wines, Inc. v. Davies*,
  2008 WL 11400764 (C.D. Cal. May 20, 2008) ........................................................................ 3

*Ent. Research Group, Inc. v. Genesis Creative Group, Inc.*,
  122 F.3d 1211 (9th Cir. 1997) ........................................................................................... Passim

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) .................................................................................................................. 8

*Oracle USA, Inc. v. Rimini St., Inc.*,
  209 F.Supp.3d 1200 (D. Nev. 2016) ....................................................................................... 10

*Shame on You Productions, Inc. v. Banks*,
  893 F.3d 661 (9th Cir. 2018) ................................................................................................ 4, 6

*Shame on You Productions, Inc. v. Banks*,
  2016 WL 5929245 (C.D. Cal. Aug. 15, 2016) ............................................................. 4, 6, 7, 11

*Sream, Inc. v. Sahebzada*,
  2019 WL 2180224 (N.D. Cal. Mar. 6, 2019) .......................................................................... 10

*Stern v. Does*,
  2011 WL 13124449 (C.D. Cal. May 4, 2011) .......................................................................... 3

*The Traditional Cat Ass'n, Inc. v. Gilbreath*,
  340 F.3d 829 (9th Cir. 2003) ................................................................................................ 3, 8

*Venegas v. Mitchell*,
  495 U.S. 82 (1990) .................................................................................................................. 11

*Washington v. Viacomcbs, Inc.*,
  2021 WL 6134375 (C.D. Cal. Dec. 9, 2021) .............................................................................. 12

*Welch v. Metropolitan Life Ins. Co.*,
  480 F.3d 942 (9th Cir. 2007)................................................................................................ 10, 12

*Yahoo!, Inc. v. Net Games, Inc.*,
  329 F.Supp.2d 1179 (N.D. Cal. 2004) ...................................................................................... 11

Pursuant to the Court's December 20, 2022 Order (ECF 184),[1] Plaintiff Hemma Investments CY Limited f/k/a Lynwood Investments CY Limited ("Lynwood") respectfully submits this supplemental opposition to the F5's Motion for Attorneys' Fees (ECF 173, ECF 187).

**INTRODUCTION**

F5 filed a motion for attorneys' fees, seeking $837,602.15 under Section 505 of the Copyright Action. In response, Lynwood argued that the Court should deny the motion, but in the alternative that if the Court was to award fees the award must be limited to fees incurred defending against the lone Copyright claim the Court adjudicated. ECF 178, pp. 20-22. Lynwood also argued that F5's motion failed to include the legal invoices from its lawyers, which was "especially problematic" because "Defendants improperly seek fees for unrelated, non-copyright claims." ECF 178, p. 23; *see also Ent. Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1231 (9th Cir. 1997)[2] (holding "the district court erred in not requiring [the defendant] to submit its original time records and billing statements so that [the plaintiff] – and the district court – could determine whether the fees being claimed were truly for time spent in defending against the [copyright] claims").

The Court ruled that F5 is entitled to fees under Section 505 of the Copyright Act, but held that the Court and Lynwood could not properly analyze the scope of the fees recoverable because of F5's failure to submit time records from its lawyers. ECF 183, p. 14-15. The Court did not reach the issue of whether F5 could recover fees for work on claims other than the adjudicated copyright claim.[3] The time records now produced by F5 reveal that the overwhelming majority of F5's attorneys' fees were not incurred for the Copyright Act claim or any claim related thereto. Therefore,

---

[1] Defendants F5 Networks, Inc., NGINX, Inc. (BVI) and NGINX Software, Inc. (collectively, "F5") contend that they submitted their supplementation pursuant to Local Rule 7-11. However, Local Rule 7-11 applies only to "miscellaneous administrative matters, not otherwise governed by a federal statute, Federal Rule, local rule, or standing order of the assigned Judge." F5's motion is pursuant to the Copyright Act, and the Court explicitly ordered F5 to supplement its submission and Plaintiff to respond to the supplement. ECF 183, p. 15. Therefore, Local Rule 7-11 does not apply.

[2] Unless otherwise noted, case law citations in this supplemental opposition omit internal quotations and citations.

[3] In its reply in further support of its motion for fees, F5 argued that Lynwood's opposition brief did not dispute F5's entitlement to fees incurred for "general" case work. ECF 180, p. 12. That is wrong. Lynwood argued at length that F5 was only entitled to fees defending against the copyright claim. ECF 178, pp. 20-22. Moreover, as a result of F5's deficient submission that lacked detailed time records, it was impossible for Lynwood to discern what specifically related to the Copyright claim.

1  the Court should limit the award to the reasonable fees actually incurred defending against the lone
2  adjudicated copyright claim.

3  **ARGUMENT**

4  **I.  F5 Cannot Recover Fees Incurred for Non-Copyright Claims**

5  F5 mischaracterizes its $837,602.15 attorneys' fees claim as falling into two groups, which they label as "Direct Copyright Infringement" and "Related Claims" fees. ECF 173, p. 17. In reality, F5 is seeking three categories of fees: (1) $151,416.58 related to Lynwood's one copyright claim ("Copyright Fees"); (2) $131,891.10 for the remaining eight non-copyright claims ("Non-Copyright Fees"); and (3) $554,294.47 for work that is "unrelated to a specific case theory or claim for relief" ("Unrelated Fees"). *Id*.; ECF 173-1 at ¶4. F5 cites no authority to support the creation of a catch-all category to collect fees for work that F5 admits is "untethered to any specific claim for relief." ECF 173 at p. 17. The only eligible fees under Section 505 are the Copyright Fees, which F5 claims to be $151,416.58. The Court should apply the reasonableness analysis to those claimed fees, and only award F5 the portion of the $151,416.58 the Court finds reasonable.

Fee awards under Section 505 of the Copyright Act are limited to fees attributable to the prosecution or defense of a copyright claim or related claims. *The Traditional Cat Ass'n, Inc. v. Gilbreath*, 340 F.3d 829, 833-34 (9th Cir. 2003); *see also Ent. Research Group*, 122 F.3d at 1230-31 (Section 505 attorneys' fees are limited to "time spent on allowable claims"). The Unrelated Fees fall outside of Section 505, and the Court should not award them. F5 cannot collect general litigation fees F5 concedes (ECF 173, p. 17) are "untethered" to Lynwood's copyright claim. *See Stern v. Does*, 2011 WL 13124449, *5 (C.D. Cal. May 4, 2011) (limiting fee award to categories directly related to the adjudicated copyright claim); *see also Cupid Wines, Inc. v. Davies*, 2008 WL 11400764 at *2 (C.D. Cal. May 20, 2008) (rejecting request for "fees and costs related to general litigation efforts on this matter" for failure to "distinguish work on the V-Drink matter from work performed in defense of Plaintiff's claims"). F5's description that the Unrelated Fees concern a "variety of work related to general defense tasks" (ECF 173-1, ¶¶32-33) disposes of F5's attempt to recover unrelated fees that more than treble the Copyright Fees.

PTFF'S SUPPL. MEMO OF POINTS & AUTHS.                                              Case No. 3:20-CV-03778-MMC
IN OPPOSITION TO F5 DEFS' MOTIONS FOR FEES          2

F5's total reliance on *Shame on You Productions, Inc. v. Banks*, 893 F.3d 661 (9th Cir. 2018), is misplaced. ECF 173, p. 17. Reviewing the District Court record from that case demonstrates the fallacy of F5's reliance. In *Shame on You*, the parties engaged in extensive discovery motion practice, including a series of motions to compel, all of which were directly related to the plaintiff's copyright claim. *See Shame on You Productions, Inc. v. Banks*, 2016 WL 5929245, *3, 17 (C.D. Cal. Aug. 15, 2016). F5 complains about the volume of Lynwood's discovery requests, but F5 never responded to Lynwood's discovery requests. ECF 174 at pp. 12-13. Discovery has been stayed since November 3, 2020, and F5 admits the Unrelated Fees are "untethered" to Lynwood's copyright claim. ECF 117; ECF 173 at p. 17.

## II.     The Non-Copyright Fees Are Not Related To The Copyright Fees

Lynwood's central causes of action are its breach of contract claims against the Individual Defendants, which primarily arise under Russian law, and business tort claims against F5 related to the theft of the "NGINX Enterprise" developed by former Rambler employees for Rambler, and the Individual Defendants' later sale of the NGINX Enterprise to F5. ECF 141, ¶¶1-19, 214-218, 277-280; ECF 178, pp. 20-22. F5 recasts Lynwood's claims as "first and foremost a copyright infringement action" (ECF 173 p. 15), but the mere existence of some shared facts between Lynwood's copyright claim and the non-copyright claims does not render the claims "related" for purposes of Section 505 fees. *Ent. Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d at 1230 ("the mere fact that the Inflatimation [i.e., copyright] claims were part of this overall case and involved the same parties does not mean that these claims arose from the same "course and conduct" as the other claims").

In *Ent. Research Group*, the plaintiff asserted twelve causes of action, only two of which were copyright claims. *Ent. Research Group*, 122 F.3d at 1230. The Ninth Circuit held that the defendant could only recover its fees defending against the two copyright claims, because the other claims were based on different legal theories. *Id.* ("The crux of these claims, therefore, was whether such unauthorized distributions ever took place. The crux of the overall litigation and the other causes of action, on the other hand—besides the derivative copyright infringement claim—was whether an agency relationship existed between Genesis and ERG").

As in *Ent. Research Group*, Lynwood's copyright claim presents "distinctly different claims for relief" from Lynwood's non-copyright claims. Moreover, Lynwood's copyright claim is "based on different facts and legal theories" from Lynwood's fraud, aiding and abetting, and tortious interference claims against F5. *Id.*; ECF 178, pp. 20-22.

The Eighth (Aiding and Abetting Breach of Duty of Honesty and Loyalty Under Russian Law), Ninth (Tortious Interference with a Contract), Twelfth (Tortious Interference with a Prospective Business Advantage), and Thirteenth (Fraud) Claims for Relief against F5 rely on facts and legal theories that are distinct from Lynwood's copyright claim. The Eighth Claim for Relief relies on F5's knowledge of the Individual Defendants' employment agreements and obligation under Russian law in support of its claim that F5 aided and abetted the Individual Defendants' breach of Russian law. ECF 141, ¶ 639 ("F5's due diligence included a review of the [Individual Defendants'] past employment and separation agreements with Rambler"); ¶ 641 ("F5 knew about the [Individual Defendants'] Article 53 duties to act fairly and honestly with Rambler, the [Individual Defendants'] violations of those duties, and their fraudulent conduct against Rambler"). Likewise, the Twelfth Claim for Relief relies on F5's knowledge of the Individual Defendants' Employment Agreements, the Rambler Code of Ethics, and the Rambler Regulations in support of Lynwood's claim thatF5 tortiously interfered with these contracts. ECF 141, ¶¶ 680-90.

The timesheets submitted by F5 in response to the Court's Order confirm that the work performed by F5's lawyers on the copyright claim was unrelated to the work on the non-copyright claims. Only one of the five partners staffed by F5, Benjamin Fox, spent any material time addressing the copyright claim. Only one of the four Morrison & Forester associates staffed on the litigation, Cooper Spinelli, billed any material hours in Copyright Fees. Since this action was commenced, F5's lead partners, Michael Jacobs and Jessica Grant, billed a total of 5.7 hours and 16.3 hours, respectively, in Copyright Fees.[4] Mr. Fox billed 69.7 hours in Copyright Fees. Of the

---

[4] There are several discrepancies between F5's initial attorneys' fee declaration from Michael Jacobs (ECF 173) and the Morrison & Forester invoices submitted with F5's supplemental fee motion. For example, in his declaration Mr. Jacobs contends that in September 2020 he spent 3.4 hours in Copyright Fees, yet according to the color-coded Morrison & Forester invoice Mr. Jacobs only spent 1.5 hours in Copyright Fees in September 2020. ECF 187, Ex. C. For purposes of

1  total 158.7 hours in Copyright Fees billed by Morrison & Forester lawyers, 131.2 hours, or eighty-
2  three percent (83%), were billed by Mr. Fox and Mr. Spinelli.

3        The time sheets submitted by F5 disprove F5's contention that Lynwood's copyright claim
4  is interwoven and related to the non-copyright claims. If that contention were true, Mr. Fox would
5  have been at least somewhat involved in defending the non-copyright claims. ECF 173, pp. 15-16,
6  18. F5's timesheets reveal that Mr. Fox billed exactly zero minutes related to any of the purportedly
7  "related" non-copyright claims. *See generally* ECF 187, Exs. A-T. Morrison & Forester's own
8  staffing demonstrates that F5 appropriately treated Lynwood's copyright claim as separate and
9  unrelated to Lynwood's non-copyright claims. ECF 178, pp. 20-22. F5's separate treatment of the
10 copyright and non-copyright claims was appropriate because the copyright claim concerned a unique
11 set of facts and legal theories.

12       F5's repeated reliance on *Shame on You* for the relatedness argument, is also misplaced. ECF
13 173, p. 17; ECF 174, pp. 12-13. The plaintiff in *Shame on You* filed a two-count complaint for
14 copyright infringement and breach of implied contract that "turned on whether or not Defendants
15 had copied" the disputed work. *Shame on You*, 893 F.3d at 669. In *Shame on You*, the plaintiff
16 "concede[d] [that] '[t]he vast majority of this case including discovery concerned both of [p]laintiff's
17 claims equally, in that the copyright infringement and contractual claim <u>arose out of the same set of
18 facts and circumstances</u>." *Shame on You Productions, Inc. v. Banks*, 2016 WL 5929245 at *13 (C.D.
19 Cal. Aug. 15, 2016) (emphasis in original). Further, the substantive allegation supporting the
20 plaintiff's copyright infringement claim were near verbatim identical to the allegation supporting the
21 breach of implied-in-fact contract claim. *See Shame on You Productions, Inc. v. Banks*, 2:14-cv-
22 03512-MMM-JC (ECF 135), ¶29 (copyright infringement), ¶46 (breach of implied-in-fact contract).
23 Based on the plaintiff's admission of relatedness and the identical allegations that supported both
24 claims in *Shame on You*, the court concluded that "[a]s the claims are interrelated, the Court need
25 not apportion fees between them." *Shame on You*, 2016 WL 5929245 at *13.

26

27 ─────────────────────
28 addressing F5's fee motion, where there is a discrepancy between Mr. Jacobs' initial declaration and Morrison & Forester's invoices, Lynwood relies on Morrison & Forester's invoices.

No similar circumstances of relatedness exist in this action. As demonstrated by Morrison & Forester's time sheets, the siloed treatment of Lynwood's copyright claim combined with the total lack of any involvement by Mr. Fox in defending against Lynwood's non-copyright claims, confirms that the non-copyright claims do not "turn on" the copyright claim. There is no basis for the Court to find that Lynwood's copyright claim is related to the non-copyright claims, and the Court should reject F5's request for non-copyright fees should be rejected.

### III. In the Alternative, the Court Should, At a Minimum, Greatly Reduce the Unrelated Fees

F5 seeks $403,599.60 in Unrelated Fees incurred during the three-month window of July 2020 through October 2020. During this time, all twenty-six causes of action in the original complaint were at issue, including eighteen causes of action against F5. The bills produced by F5 show that during this three-month time period F5's lawyers billed for broad categories of tasks such as "general case strategy" or calls concerning generically described "pending issues" or "issues to discuss with King & Spalding." *See, e.g.*, ECF 187, Ex. A, pp. 2-3; ECF 173-1, ¶¶32-35. This sum represents nearly half of the total fees F5 seeks, and seventy-two percent (72%) of the Unrelated Fees. Necessarily, F5 lawyers' "general" work concerns the sixteen unadjudicated claims (the "Unadjudicated Claims") that Lynwood deferred by Court Order (ECF 110), and for which F5 stipulated they would not seek fees or costs (ECF 166 p. 2). Despite F5's stipulation, F5 failed to exclude any of the $403,599.60 in Unrelated Fees for "general defense work" (*see, e.g.*, ECF 173-1, ¶32), which necessarily related to the Unadjudicated Claims.

F5 claims, without explanation, that the Unrelated Fees all arise from general case work and then F5 tries to recover all of the Unrelated Fees. ECF 173, pp. 16-17. However, the general casework obviously was done for all of the claims, including the sixteen unadjudicated claims and the eight non-copyright claims the Court adjudicated. Therefore, under Supreme Court and Ninth Circuit precedent, it is incumbent on F5 to segregate its fees and only recover the fees incurred defending against the copyright claim. *See Ent. Research Group*, 122 F.3d at 1230 ("Accordingly, under the rule requiring segregation of attorney's fees, the district court should not have awarded

[the defendant] any attorney's fees incurred in doing work on these other claims") (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983).

F5's partial reduction of fees billed by Morrison & Forester's trademark team and time spent by one partner (Eric Tate) on the Unadjudicated Claims, does not address time spent by the dozen other Morrison & Forester timekeepers who billed time between July to October 2020. ECF 173, p. 22. The generic descriptions provided in Morrison & Forester's time records render it impossible for Lynwood or the Court to verify what portion of the Unrelated Fees from July 2020 through October 2020 are tied to Lynwood's copyright claim, the non-copyright claims, or the Unadjudicated Claims. Therefore, the Court should not award any of the Unrelated Fees.

In the alternative, if the Court decides that any portion of the Unrelated Fees is recoverable, then the Court should, at a minimum, reduce F5's claim for "general defense work." F5's failure to reduce its claim for fees working on the Unadjudicated Claims requires the Court to proportionally reduce its award of fees to account for the unrecoverable Unadjudicated Claims and non-copyright claims. *See Traditional Cat Ass'n*, 340 F.3d at 834 ("The fact that it is not a simple task to discern from this data precisely what fees are attributable to the copyright claim does not excuse a failure to make such an allocation"). Without waiving Lynwood's argument that no Unrelated Fees should be award, and notwithstanding F5's burden to properly segregate the fees, Lynwood proposes some methods for reducing the fees claimed by F5.

First, from July 2020 through October 2020, any general casework would have been in furtherance of all twenty-six causes of action (eighteen against F5) in the original complaint. As Defendants can only seek fees for the lone adjudicated copyright claim, a proportional reduction is appropriate. Only one of the eighteen claims against F5 in the original Complaint was the adjudicated copyright claim, and all eighteen were in play during the July 2020 through October 2020 time period. Therefore, at most, the Court should award F5 one-eighteenth (5.5%) of the Unrelated Fees for "general defense work" during the July 2020 through October 2020 time period. That totals $22,197.97. The reduction under this alternative is to reduce the July 2020 through October 2020 Unrelated Fees by $381,401.63.

As a second alternative, the Court could reduce the Unrelated Fees based on F5's stipulation that it would not seek any fees for the Unadjudicated Claims. Again, from July 2020 through October 22, 2020, there were twenty-six active causes of action in the original complaint (eighteen against F5). From and after October 22, 2020, only five claims against F5 were litigated and adjudicated. Given F5's stipulation that it would not seek fees for the Unadjudicated Claims, it would, at a minimum, be appropriate for the Court to reduce the fee claim for general case work performed during July through October 2020 in proportion of the total number of claims against F5 at that time (eighteen) versus the five adjudicated claims that were against F5. Only 27.8% of the claims against F5 were adjudicated, and F5 agreed not to seek fees for the Unadjudicated Claims. F5 should receive no more than 27.8% of its fees performing general casework while it was litigating all the claims against F5. Accordingly, at a minimum the Court should reduce the Unrelated Fees from July 2020 through October 2020 to $112,200.69 (27.8% of $403,599.60). Therefore, the reduction under this alternative is $281,398.91.

A proportional decrease is, at a minimum, required and consistent with F5's own proportional allocation of fees related to F5's motion to dismiss Lynwood's initial complaint which addressed the Unadjudicated Claims. ECF 173-1, ¶31; *see also Batchelder v. Geary*, 2007 WL 2427989 at *10 (N.D. Cal. Aug. 22, 2007) (fee request limited to 1/6 of the "fees for services rendered that cannot be allocated to a specific issue").

### IV.     F5's Counsel's Excessive Billing Rates Preclude A Reasonableness Finding

The excessive billing rates charged by the Morrison and Forester partner timekeepers precludes a finding of reasonableness. *See* ECF 173-1, ¶ 25. The reasonableness of an attorney's rate is measured by the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "The burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Id*. "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

Contrary to F5's contention, the actual rate charged by Morrison & Forester is irrelevant to the Court's determination of a "reasonable hourly rate." *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) ("We have repeatedly held that the determination of a reasonable hourly rate 'is not made by reference to the rates actually charged [by] the prevailing party.'"); ECF 173 at pp. 17-18.[5]  Rather, billing rates "should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Welch*, 480 F.3d at 946.

The billing rate for the Morrison and Forester partner timekeepers, Michael Jacobs, Jessica Grant and Benjamin Fox (together the "F5 Partners") far exceeds the prevailing rates for like-skilled professionals in the relevant legal markets.  F5 acknowledges that the according to the American Intellectual Property Law Association ("AIPLA") the mean billing rate for partners in the San Francisco area, where Michael Jacobs and Jessica Grant are based, "was $665 in 2020, and the third quartile (75%) was $903." *See* ECF 173-1 at Par. 26.  For the Los Angeles area, where Morrison and Forester's lone copyright partner on the case Benjamin Fox practices, the mean 2020 billing rate for partners was $657 and the top third quartile was $780.  The 2020 rates for the F5 Partners are $980 (Benjamin Fox), $1,000 (Jessica Grant) and $1,200 (Michael Jacobs).  F5 offers no explanation for why or how rates that are between 50% to 80% higher than the acknowledged mean billing rates and 10% to 20% higher than the third quartile rate "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11; *Sream, Inc. v. Sahebzada*, 2019 WL 2180224 at *11 (N.D. Cal. Mar. 6, 2019) (relying on the AIPLA and finding that hourly rates of $400 for partners and $275 for associates were reasonable).  F5 offers no evidence to justify of counsel Paul Goldstein's hourly rate of $840 and fees for Mr. Goldstein's work should be denied.  If allowed, Mr. Goldstein's rate should be reduced to $598.50, a discounted rate of 90% of the median billing rate for partners at private firms in the San Francisco area.

---

[5] F5 relies on the District of Nevada's decision in *Oracle USA, Inc. v. Rimini St., Inc.*, 209 F.Supp.3d 1200 (D. Nev. 2016), to argue that counsel's "actual rates" are appropriate, but this reliance is misplaced. ECF 173 at pp. 17-18. *Oracle* runs counter to binding Ninth Circuit precedent, and the Court should not rely on it in this case.

F5 does not cite a single case where any court has found that hourly rates of $980-$1,200 were found to be reasonable. *See Big Baboon, Inc. v. SAP America, Inc.*, 2019 WL 5088784 at *8 (N.D. Cal. Sept. 9, 2019) (relying on the 2017 AIPLA and finding reasonable "hourly rates of up to $450 for Partners; $375 for Of Counsel; up to $300 for Staff Attorneys; and $260 for Associates").[6] The fact that the F5 Partners happen to be associated with a "large and prestigious firm[]…has no legal significance" and does not justify the excessive premium fees F5 seeks. *Yahoo!, Inc. v. Net Games, Inc.*, 329 F.Supp.2d 1179, 1192 (N.D. Cal. 2004) (finding that $190/hour was the reasonable "average market rate" for attorneys' fees in a trademark infringement case). F5's strategic decision to retain counsel that charged above-market rates is irrelevant to the reasonableness determination because "what an attorney is free to collect under a fee agreement [is] not necessarily measured by the 'reasonable attorney's fee' that a defendant must pay pursuant to court order." *See Venegas v. Mitchell*, 495 U.S. 82, 90 (1990) (a reasonable attorney fee award "controls what the losing [party] must pay, not what the prevailing party must pay his lawyer").

In *Shame on You*, the Court found that an hourly rate for $595 was a "reasonable rate" for counsel that "has been practicing law for almost thirty years," "has more than twenty years of experience litigating copyright actions," and "has served as lead counsel in nearly twenty cases that have been tried to verdict." *Shame on You*, 2016 WL 5929245 at *14. The credentials offered by counsel in *Shame on You*, equal or exceed the credentials for the F5 Partners. *See* ECF 173-1 at Pars. 13-17. F5 offers no exceptional reason for why the F5 Partner hourly rates that on average nearly double the hourly rate found reasonable in *Shame on You* and exceed the AIPLA survey, are reasonable or consistent with prevailing hourly rates. *See Yahoo!*, 329 F.Supp.2d at 1186.

The evident excessive hourly rates charged by the F5 Partners precludes a finding of reasonableness. If any fee award is issued, Lynwood requests that the Court reduce the hourly fees for the F5 Partners to $657 for Benjamin Fox and $665 for Michael Jacobs and Jessica Grant, which

---

[6] "The 2017 AIPLA indicates that the mean billing rate for partners at private firms in the San Francisco area was $634 in 2016, and the median rate was $525," and that the "mean billing rate for associates was $476 in 2016 and the median was $488." *Big Baboon*, 2019 WL 5088784, at *8.

reduction is supported by the evidence submitted by F5 as the prevailing hourly rate in the San Francisco and Los Angeles areas. *See* ECF 173-1 at Par. 26; *see also Welch*, 480 F.3d at 946.

### V. F5 Should Not Recover For Excessive Billing

F5's entitlement to attorneys' fees is limited to "[r]easonable hours…that 'would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit of a successful recover." *Armstrong v. Davis*, 318 F.3d 965, 971 (9th Cir. 2003). F5 seeks an astounding 996 hours in fees from July 2020-April 2022, exclusive of the unallocated 964.7 hours billed on F5's motion to dismiss Lynwood's initial complaint, which F5 contends was billed at a flat rate. *See* ECF 137-1 at ¶¶31-52; ECF 187, Ex. A, pp. 14-15, Ex. B, pp. 21-22, Ex. F, pp. 11-12. In total, F5 claims to have billed 1,960.7 hours at the pleading stage, before F5 responded to Lynwood's discovery requests, and without a single hearing on any application or motion filed by the parties. The bulk of the hours were billed in two separate three-month periods from July to September 2020 and May to July 2021 when F5 moved to dismiss Lynwood's complaint and amended complaint, respectively. Otherwise, the case remained largely dormant between August 2021 and May 2022. In the cases F5 cites, which similarly involved pre-discovery motions to dismiss an initial complaint and amended complaint, courts have awarded fees for far fewer hours. For example, in *Washington v. Viacomcbs, Inc.*, 2021 WL 6134375 (C.D. Cal. Dec. 9, 2021) the court concluded that 398 hours was reasonable to respond to plaintiff's initial and amended complaint and to engage in settlement negotiations. *Id*. at *6. Here, there is no justification for the massive hours charged by F5's lawyers for mere motion practice.

### CONCLUSION

The Court should only consider the Copyright Fees for the award. The other claims are not related to the lone copyright claim adjudicated by the Court. F5 asserts the Copyright Fees total $151,416.58. The Court should reduce the total remaining Copyright Fees by forty-five percent (45%) to account for excessive hourly rates and unnecessary duplication of effort.

The Court should reject F5's claim for Non-Copyright Fees ($131,891.10), because they are unrelated to the lone copyright claim as confirmed in the timesheets submitted by F5 which demonstrate its sophisticated law firm bifurcated the staffing between the lone copyright claim and

the nine non-copyright adjudicated claims. In the alternative, if the Court decides to award any of the alleged Non-Copyright Fees by concluding they are related to the copyright claim, then the Court should greatly reduce the amount sought. The Court should reduce the total remaining Non-Copyright Fees by forty-five percent (45%) to account for excessive hourly rates and unnecessary duplication of effort.

The Court should disallow F5's claim for $554,294.47 in Unrelated Fees that F5 concedes are "untethered" to any particular claim. In the alternative, the Court should, at a minimum, greatly reduce the Unrelated Fees it awards. F5's records show that F5 is seeking $403,599.60 in Unrelated Fees incurred from July 2020 through October 2020. To account for the fact that the Unrelated Fees include fees for general work while there were eighteen claims active against F5 and only one of the claims was the adjudicated copyright claim, the Unrelated Fees must be reduced by $381,401.63. In the alternative, to account for the fees incurred addressing the thirteen Unadjudicated Claims for which F5 stipulated they would not seek fees, the Unrelated Fees must be reduced by $281,398.91. Therefore, if the Court determines that Unrelated Fees are eligible for the award, the Court should reduce them by either $281,398.91 or $381,401.63. The Court should then reduce the total remaining Unrelated Fees by forty-five percent (45%) to account for excessive hourly rates and unnecessary duplication of effort.

DATED: February 7, 2023

By: /s/ *Alexander D. Pencu*
(Admitted *Pro Hac Vice*)
MEISTER SEELIG & FEIN PLLC
125 Park Avenue, 7th Floor
New York, New York 10017
Telephone: (212) 655-3500

BURKE, WILLIAMS & SORENSEN, LLP
60 South Market Street, Suite 1000
San Jose, California 95113
Telephone: (408) 606-6300
Facsimile: (408) 606-6333

*Attorneys for Plaintiff Hemma Investments CY Limited f/k/a Lynwood Investments CY Limited*