Douglas W. Dal Cielo (CA Bar No. 157109)
ddalcielo@bwslaw.com
Patricia L. Peden (CA Bar No. 206440)
ppeden@bwslaw.com
Brian M. Affrunti (CA Bar No. 227072)
baffrunti@bwslaw.com
**BURKE, WILLIAMS & SORENSEN, LLP**
60 South Market Street, Suite 1000
San Jose, CA  95113
Telephone: (408) 606-6300
Fax: (408) 606-6333

Alexander D. Pencu (*pro hac vice*)
adp@msf-law.com
Christopher J. Major (*pro hac vice*)
cjm@msf-law.com
Austin D. Kim (*pro hac vice*)
adk@msf-law.com
**MEISTER SEELIG & FEIN PLLC**
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Fax: (646) 539-3649

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNWOOD INVESTMENTS CY LIMITED,<br><br>                     Plaintiff,<br><br>         vs.<br><br>MAXIM KONOVALOV, IGOR SYSOEV, ANDREY ALEXEEV, MAXIM DOUNIN, GLEB SMIRNOFF, ANGUS ROBERTSON, NGINX, INC. (BVI), NGINX SOFTWARE, INC., NGINX, INC. (DE), BV NGINX, LLC, RUNA CAPITAL, INC., EVENTURE CAPITAL PARTNERS II LLC and F5 NETWORKS, INC.,<br><br>                     Defendants. | Case No. 3:20-CV-03778-MMC<br><br>**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE INDIVIDUAL DEFENDANTS' MOTIONS FOR ATTORNEYS' FEES**<br><br>Hon: Maxine M. Chesney<br>Hearing Date: February 21, 2023<br>Time: 9:00 AM<br>Courtroom: Courtroom 7, 19th Floor |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION .............................................................................................................................. 1

    I.    Loadstar Calculation ................................................................................................ 2

    II.   Individual Defendants' Uncategorized Timesheets Preclude A Fee Award ................. 3

          A.  Uncategorized Time Sheets ......................................................................... 3

          B.  Case Management Fees Should Be Denied ................................................. 4

          C.  Individual Defendants' Time Records Do Not Justify $263,300.35 In Copyright Claim Fees ............................................................................... 6

          D.  Individual Defendants Are Not Entitled To Fees For Non-Copyright Claims ........ 6

          E.  Block-Billed, Over-Redacted, Duplicative, and Excessive Time Entries Cannot Be the Basis for a Fee Award ........................................................ 8

              1.  Block Billing Time Entries ............................................................. 8

              2.  Redacted Entries ......................................................................... 10

              3.  Vague Record Entries .................................................................. 10

              4.  Duplicate And Excessive Time Entries ....................................... 11

              5.  Billing Rates ................................................................................ 12

CONCLUSION ................................................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

Cases

*Banas v. Volcano Corp.*,
  47 F.Supp.3d 957 (N.D. Cal. 2014) .......................................................................................... 9

*Big Baboon, Inc. v. SAP America, Inc.*,
  2019 WL 5088784 (N.D. Cal. Sept. 9, 2019) ........................................................................... 4

*Blum v. Stenson*,
  465 U.S. 886 (1984) ................................................................................................................ 13

*Choyce v. SF Bay Area Independent Media Center*,
  2014 WL 5597274 (N.D. Cal. Nov. 3, 2014) ........................................................................... 6

*Cruz v. Starbucks Corp.*,
  2013 WL 2447862 (N.D. Cal. June 5, 2013) ......................................................................... 11

*Cupid Wines, Inc. v. Davies*,
  2008 WL 11400764 (C.D. Cal. May 20, 2008) .................................................................. 5, 6

*Ent. Research Group, Inc. v. Genesis Creative Group, Inc.*,
  122 F.3d 1211 (9th Cir. 1997) .................................................................................................. 4

*Erickson Productions Inc. v. Kast*,
  2021 WL 3887797 (N.D. Cal. Aug. 31, 2021) ........................................................................ 3

*Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*,
  886 F.2d 1545 (9th Cir. 1989) .................................................................................................. 3

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
  2016 WL 1257850 (D. Haw. Mar. 30, 2016) ...................................................................... 5, 6

*Gilead Sciences, Inc. v. Merck & Co., Inc.*,
  2017 WL 3007071 (N.D. Cal. July 14, 2017) ........................................................................ 11

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) .................................................................................................................. 3

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation*,
  2020 WL 5371404 (N.D. Cal. Sept. 8, 2020) ........................................................................ 11

*Lahiri v. Universal Music and Video Distribution Corp.*,
  606 F.3d 1216 (9th Cir. 2010) .................................................................................................. 9

*Limo Hosting v. Fiks*,
  2010 WL 55876 (N.D. Cal. Jan 4, 2010) ................................................................................. 4

*Phigenix Inc. v. Genentech Inc.*,
  2019 WL 2579260 (N.D. Cal. June 24, 2019) .................................................................................. 3

*Randles Films, LLC v. Quantum Releasing, LLC*,
  2012 WL 12884046 (C.D. Cal. Mar. 30, 2012) ............................................................................. 10

*Rodriguez v. Barrita, Inc.*,
  53 F.Supp.3d 1268 (N.D. Cal. 2014) ..................................................................................... 11, 12

*Santiago v. Equitable Ascent Financial*,
  2013 WL 3498079 (N.D. Cal. July 12, 2013) .......................................................................... 10, 11

*Shame on You Productions, Inc. v. Banks*,
  2016 WL 5929245 (C.D. Cal. Aug. 15, 2016) ............................................................................ 7, 10

*Sigma Enterprises, LLC v. Alluring Deals, LLC*,
  2017 WL 10439659 (C.D. Cal. Nov. 15, 2017) ...................................................................... 4, 8, 11

*Signature Financial, LLC v. McClung*,
  2018 WL 6843050 (C.D. Cal. Aug. 13, 2018) ............................................................................... 10

*Stern v. Does*,
  2011 WL 13124449 (C.D. Cal. May 4, 2011) ................................................................................. 5

*The Traditional Cat Ass'n, Inc. v. Gilbreath*,
  340 F.3d 829 (9th Cir. 2003) ............................................................................................................. 4

*Welch v. Metro. Life Ins. Co.*,
  480 F.3d 942 (9th Cir. 2007) ....................................................................................................... 3, 8

Pursuant to the Court's December 20, 2022 Order (ECF 184), Plaintiff Hemma Investments CY Limited f/k/a Lynwood Investments CY Limited ("Lynwood") respectfully submits this opposition to Individual Defendants'[1] supplement to their Motion for Attorneys' Fees (ECF 185).

**INTRODUCTION**

Individual Defendants seek $769,299.10 in fees as prevailing parties on Lynwood's copyright claim. They tried at first to obtain the massive fee award without submitting their lawyers' time sheets. Now that the Court forced Individual Defendants to submit the timesheets and Lynwood has had the opportunity to review them, it is clear that Individual Defendants' fee application is an improper overreach.

The uncategorized, and often block-billed, timesheets submitted by Individual Defendants make it impossible to know how much time was spent addressing any claim, let alone the copyright claim. It is evident from the timesheets that the vast majority of the fees requested are unrecoverable general litigation fees that are untethered to any claim.

Individual Defendants offer no legal authority to support their demand for hundreds of thousands of dollars of unrelated general litigation fees. First, Individual Defendants seek $263,300.35 in fees for alleged copyright-claim related work, all of which Individual Defendants claim was performed by one member of the King & Spalding legal team, Bruce Baber. Although the uncategorized King & Spalding timesheets render it impossible to determine precisely how much time Mr. Baber actually devoted to copyright claim related work, nearly all of Mr. Baber's time entries relate to general non-claim related "case management work," such as preparing client engagement letters and updating litigation budget estimates. Glaringly, of the 268.3 hours billed by Mr. Baber only 5.4 hours of the time entries, or just two percent (2%), include the word "copyright."[2] In total, across all of King & Spalding's timesheets, a mere 10.1 hours of time entries (5.4 hours from Mr. Baber and 4.7 hours by the remaining King & Spalding timekeepers) include the word

---

[1] As used herein, the Individual Defendants include Defendants Maxim Konovalov, Igor Sysoev, Andrew Alexeev, Maxim Dounin, Gleb Smirnoff and Angus Robertson.
[2] Mr. Baber's time records show 7.6 hours of time entries that include the word "copyright," but in his supplemental declaration (ECF 185-1, ¶12) he acknowledges that 2.2 of those hours relate to the unadjudicated trademark claims.

"copyright." King & Spalding's timesheets are consistent with Individual Defendants' filings in this case which devoted close to zero attention to the copyright claims. Indeed, Individual Defendants allotted a combined total of two paragraphs across two briefs to address the lone adjudicated copyright claim and all of Lynwood's unadjudicated copyright claims for which Individual Defendants have stipulated they would not seek fees. The isolated and minimal attention given to Lynwood's copyright claim confirms the fact that Individual Defendants did not view the copyright claim as the crux of the case, and demonstrates the falsity of Individual Defendants' claim that the copyright and non-copyright claims are "related" for purposes of Section 505 of the Copyright Act.

Second, Individual Defendants' demand for $505,988.75 in non-copyright claim fees is also uncategorized and plagued by pervasive deficiencies, including hundreds of hours of impermissible block-billing, duplicate and excessive time entries, and extensive redactions that leave no "meaningful way of determining whether the total hours claimed were reasonably expended." ECF 184, p. 14. Despite the Court's previous admonition of Individual Defendants to provide "elaboration as to the topics researched or investigated" (*id*.), Individual Defendants' timesheets include dozens of vague entries such as "review **REDACTED** (1.2)" and "revise **REDACTED** and emails regarding same (3.5)." In addition, the time records filed by Individual Defendants improperly group a litany of unrelated tasks into single block-billed entries.

Furthermore, Individual Defendants failed to account for work performed in connection with Lynwood's sixteen deferred claims for which Individual Defendants stipulated they would not seek fees or costs. Individual Defendants claim they proportionally reduced the gross fees sought, but the parties' stipulation does not allow for or contemplate a proportional reduction. Individual Defendants are not at liberty to unilaterally modify the terms of the parties' carefully negotiated stipulation as a matter of convenience. The absence of categorized time records combined with King & Spalding's deficient time keeping practices and Individual Defendants' failure to fully exclude the deferred claims from their fee application precludes the issuance of a fee award.

I.   **Loadstar Calculation**

The calculation of attorneys' fees is guided by the "loadstar" analysis, and fees are calculated by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly

fee. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The burden of proving the reasonableness of the loadstar figure is on the party seeking fees. *Id.* at 437; *see also Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007) (same). As discussed below, Individual Defendants' uncategorized timesheets fail to justify that $769,299.10 in fees is reasonable. Given the lack of a sufficient evidentiary basis, the Court should reject the fee request in its entirety or, in the alternative, significantly reduce any fee award to exclude non-compensable general litigation and non-copyright claim related work and to also exclude deficient time entries.

## II. Individual Defendants' Uncategorized Timesheets Preclude A Fee Award

### A. Uncategorized Time Sheets

Individual Defendants failed their "burden of showing the time spent and that it was reasonably necessary to the successful [defense of the] copyright claim[]." *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989). The Court ordered Individual Defendants to submit a "full itemization" of their time records to justify the reasonableness of the $769,299.10 in fees sought for the alleged "variety of work" performed. ECF 184, p. 14. Itemization requires more than a raw list of chronological time entries. *See Erickson Productions Inc. v. Kast*, 2021 WL 3887797, *7 (N.D. Cal. Aug. 31, 2021) (rejecting as "insufficient" invoices that "did not categorize or organize the records"). Individual Defendants claim that the requested fees fall into three categories: (1) copyright claim; (2) non-copyright claims; and (3) general "case management tasks." ECF 174, ¶7. Therefore, Individual Defendants were required to categorize the alleged "variety of work" performed and break the requested fees into the three claimed categories of fees.

The thousands of uncategorized King & Spalding timesheets render it "impossible" for the Court or Lynwood to make any reasonable determination as to which entries correspond with which categories of work performed (*e.g.*, copyright-related, non-copyright-related and general litigation). *See Phigenix Inc. v. Genentech Inc.*, 2019 WL 2579260, *11 (N.D. Cal. June 24, 2019) (requiring counsel to submit a "chart summarizing the number of hours spent by each timekeeper on certain categories of tasks (*e.g.*, discovery, motion for summary judgment, motions for fees, etc.)" to "provide the Court with a bird's-eye view of the time expended and a depiction of the staging of the case that is impossible to glean from chronological timesheets"). Individual Defendants assigned

an undefined volume of "case management" work between the copyright and non-copyright claims, without any explanation of which fees actually relate to claim-specific work or categorizing the alleged "case management" work. ECF 185-1, ¶15. Individual Defendants' failure to comply with the Court's Order, precludes a finding of reasonableness. *See Big Baboon, Inc. v. SAP America, Inc.*, 2019 WL 5088784, *8 (N.D. Cal. Sept. 9, 2019) (relying on "several tables showing how many hours each of its time keepers work, and how many hours were spent on each major task (e.g. Discovery, Invalidity Contentions, etc." to award $188,270.50 in attorneys' fees)).

Moreover, the uncategorized fees render it impossible for the Court to distinguish fees claimed for defending against Lynwood's copyright claim, fees defending the non-copyright claims, general "case management" fees, and the unadjudicated claims for which Individual Defendants stipulated they would not seek fees or costs. ECF 166, p. 2. Defendants' general chart of fees (ECF 185-1, ¶15) is insufficient as a matter of law (ECF 184, p. 14), and the deficiencies in the general chart are not cured by raw uncategorized timesheets. For these reasons, the Court should deny Individual Defendants' fee request in its entirety. *See Limo Hosting v. Fiks*, 2010 WL 55876, *2 (N.D. Cal. Jan 4, 2010) (rejecting fees where the court "could not tell from the time records for which claim the work was performed…such as drafting discovery"); *see also Sigma Enterprises, LLC v. Alluring Deals, LLC*, 2017 WL 10439659, *12 (C.D. Cal. Nov. 15, 2017) (excluding fees where the court "is unable to discern how the time spent is attributable to the case at hand"). The Court offered Individual Defendants the opportunity to supplement the record to remedy the deficiencies in their fee motion, but Individual Defendants declined the opportunity. No further chance is warranted.

**B. <u>Case Management Fees Should Be Denied</u>**

Individual Defendants improperly seek an undefined amount in "case management fees." ECF 185-1, ¶7. Section 505 of the Copyright Act provides for only those attorneys' fees attributable to defending against copyright and related claims, and does not authorize the award of undefined case management fees. *See The Traditional Cat Ass'n, Inc. v. Gilbreath*, 340 F.3d 829, 833-34 (9th Cir. 2003); *see also Ent. Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1230-31 (9th Cir. 2003) (Section 505 attorneys' fees are limited to "time spent on allowable claims"). Non-particularized general case management fees, which "do not involve Plaintiff's copyright claim

at all," are not recoverable under the Copyright Act. *See Stern v. Does*, 2011 WL 13124449, *5 (C.D. Cal. May 4, 2011) (excluding fees that "are insufficiently related to Plaintiff's copyright claim to justify their inclusion in a fee award"); *see also Cupid Wines, Inc. v. Davies*, 2008 WL 11400764 at *2 (C.D. Cal. May 20, 2008) (rejecting request for "fees and costs related to general litigation efforts on this matter" for failure to "distinguish work on the V-Drink matter from work performed in defense of Plaintiff's claims").

Individual Defendants cite *Frost-Tsuji Architects v. Highway Inn, Inc.*, 2016 WL 1257850 (D. Haw. Mar. 30, 2016) (ECF174, p. 4), but there the court allowed discovery costs based on the submission of an evidentiary basis showing the discovery was directly related to the copyright claims. *Id.*, at *3 (allowing discovery costs where the discovery was "used as evidentiary support for [the plaintiff's] second motion for reconsideration regarding its copyright infringement claim"). *Frost-Tsuji* does not stand for the proposition that general case management fees untethered to a copyright claim are recoverable. *Id.*, at *4 ("the precise question this court must decide is whether the work performed by the prevailing party…is related to a compensable claim under the Copyright Act"); *see also Stern*, 2011 WL 13124449, *5 (limiting discovery-related fees to fees directly tied to plaintiff's copyright claim).

Individual Defendants' chart of fees (ECF 185-1, ¶15) does not specifically account for the alleged "case management fees," and the uncategorized timesheets make it impossible for the Court or Lynwood to make any reasonable allocation between alleged claim-related fees and non-claim related "case management fees." Individual Defendants' method of using gross non-categorized fees and applying an across-the-board proportional allocation grossly inflates the fees actually worked on the copyright and non-copyright claims. *See e.g.* ECF 174, ¶21. For example, Individual Defendants acknowledge that Bruce Baber was their lead and only copyright counsel (ECF 174-1, *e.g.* ¶¶20-21), and the time records submitted by Individual Defendants show that Mr. Baber likely spent no more than a total of 5.4 hours addressing Lynwood's copyright claim. *See* Declaration of Alexander D. Pencu ("Pencu Declaration"), Exhibit A.

The recovery of non-claim related fees requires evidence that directly ties the non-claim related fees to a recoverable Copyright Act claim. Individual Defendants' failure to offer evidence

tying the "case management fees" to Lynwood's copyright claim (or any claim) precludes recovery of any fees. *See Cupid Wines*, 2008 WL 11400764, *2; *Frost-Tsuji Architects v. Highway Inn, Inc.*, 2016 WL 1257850, *3. In the alternative, Lynwood requests that Individual Defendants' fee request be reduced by 98%, which is reflective of the total percentage of identifiable hours of time that Mr. Baber, Individual Defendants' lone copyright attorney, spent addressing Lynwood's copyright claim (*i.e.* 5.4 hours of 268.3 hours billed). *See* Pencu Declaration, Exhibit A; *see also* ECF 174-1, ¶¶20, 24, 28, 32, 36, 40, 44, 49, 53, 57, 61, 65, 68, 71, 74, 77, 80, 83, 86, 89.

### C. Individual Defendants' Time Records Do Not Justify $263,300.35 In Copyright Claim Fees

When awarding Section 505 attorneys' fees, courts must carefully review an applicants' billing records to "ensur[e] that it only award[s] fees reasonably attributable to the copyright claim," or related claims. *Choyce v. SF Bay Area Independent Media Center*, 2014 WL 5597274, *6 (N.D. Cal. Nov. 3, 2014), *aff'd Choyce v. SF Bay Area Independent Media Center*, 669 Fed.App'x 863 (9th Cir. 2016). Individual Defendants spent virtually no effort addressing Lynwood's copyright claim. Individual Defendants' allotted one-paragraph in their motion to dismiss to address Lynwood's initial three copyright claim, (ECF 106, pp. 12-13) and one-paragraph in their reply brief to address all five of Lynwood's copyright and trademark claims (ECF 129, p. 8). Individual Defendants joined in F5's motion to dismiss Lynwood's amended complaint, and did not file a separate motion to dismiss the amended complaint. ECF 144. A demand for $263,300.35 in attorneys' fees for this minimal amount of work is patently unreasonable and unjustified.

### D. Individual Defendants Are Not Entitled To Fees For Non-Copyright Claims

To avoid repetition, Lynwood incorporates by reference Section II of its supplemental opposition to F5's motion for attorneys' fees, which addresses the unrelatedness between Lynwood's copyright and non-copyright claims. In this brief, Lynwood will address King & Spalding's time records, which further support the lack of relatedness between the copyright and non-copyright claims. As discussed above, Mr. Baber's records show that only two percent of his time entries appear to concern copyright-related work. *See supra* 5. A more detailed review of Mr. Baber's time records confirms the bare attention paid to Lynwood's copyright claim. For example, Mr. Baber

states that in July 2020 he "focused on copyright issues and procedural issues and defenses (31.5 hours)" for a claimed total of $30,789.00.  ECF 174, ¶20.  However, Mr. Baber's time entries for July 2020 include virtually no entries for copyright-related work.  The bulk of his time was spent addressing issues related to service of process, a general review of the complaint, and various video calls.  ECF 186, Ex. A.  Similarly, Mr. Baber states that during the month of September 2020, when Individual Defendants moved to dismiss Lynwood's complaint, he billed 43.8 hours on "drafting copyright sections of the Individual Defendants' motion to dismiss, and other case management."  ECF 174, ¶28.  A review of Mr. Baber's time entries for September 2020 reveal that only a 1.5 hour fraction of this time was spent researching and drafting the one-paragraph copyright section of Individual Defendants' motion to dismiss (0.4 hours on September 9, 2020, 0.5 hours on September 17, 2020, 0.6 hours on September 30, 2020).  ECF 186, Ex. C; ECF 185, ¶12(b); ECF 106, pp.12-13.  Moreover, of the 0.6 hours entered on September 30, 2020, 0.3 hours of the time was later removed as time spent on Lynwood's unadjudicated trademark claim.  ECF 185-1, ¶12.

Individual Defendants argue that Lynwood "cannot plausibly separate its copyright claims from its other claims," but Individual Defendants did just that by assigning one lawyer to spend a handful of hours addressing Lynwood's copyright claim while the rest of the team worked on the non-copyright claims.  ECF 174, p. 5; ECF 174-1, *e.g.* ¶¶20-21.  According to Mr. Baber's own declaration, he spent no time addressing any non-copyright claim, and no one on his team spent any time addressing the copyright claim.  ECF 174-1, *e.g.* ¶¶20-21.  If, as Individual Defendants now claim, the two sets of claims are "inextricably intertwined," there certainly would be substantial overlap between the copyright and non-copyright work.  ECF 174, p. 5.  Thus, this case bears no resemblance to *Shame on You Productions, Inc. v. Banks*, 2016 WL 5929245 (C.D. Cal. Aug. 15, 2016), where the plaintiff "concede[d] [that] '[t]he vast majority of the case including discovery concerned both [p]laintiff's claims equally, in that the copyright infringement and contractual claim <u>arose out of the same facts and circumstances</u>.'"  *Id*., *14 (emphasis in original).  The lack of any meaningful time spent addressing Lynwood's copyright claim belies any after-the-fact argument of relatedness or that Mr. Baber expended significant hours on the lone adjudicated copyright claim.  Moreover, Individual Defendants' failure to parse out non-claim related "case management" fees

1   from the fees claimed for the non-copyright claims further supports a denial of Individual
2   Defendants' request for $505,988.75 in purported non-copyright claim fees. ECF 185-1, ¶¶8, 15.

3   **E. Block-Billed, Over-Redacted, Duplicative, and Excessive Time Entries Cannot Be**
4   **the Basis for a Fee Award**

5   If any fee award is issued, Individual Defendants' fee award should be further reduced to
6   account for the following improper time records: (1) block billing; (2) over-redacted entries; (3)
7   duplicate time records; (4) excessive billing; and (5) vague time entries. Individual Defendants'
8   deficient time entries should be rejected in their entirety, but Lynwood identifies the following
9   deficiencies as an additional basis to reject specific portions Individual Defendants' fee request.

10   **1. Block Billing Time Entries**

11   "[B]lock billing makes it difficult to determine how much time was spent on particular
12   activities" and cannot form the basis for a reasonable attorneys fee award. *Welch v. Metro Life Ins.*
13   *Co.*, 480 F.3d 942, 948 (9th Cir. 2007); *see also Sigma Enterprises*, 2017 WL 10439659, *12-13.
14   Individual Defendants failed to address the Court's concern about Individual Defendants' "frequent[]
15   claim [of] hours for a combination of work." ECF 184, p. 14. King & Spalding's timesheets include
16   dozens of improper block-billed time entries that should be rejected. *See* Pencu Declaration, Exhibit
17   B. For example, on July 28, 2020, King & Spalding associate Matthew Dawson entered 9.2 hours
18   for the following time entry:

19   > Discuss motion to dismiss research with SE; attend conference call with SE. Brunt
20   > bet Al.; review follow-up email; review current version of docket; research issues
21   > relating to service, including review of prior filings; draft talking points relating to
22   > service; research issues relating to introduction of foreign law and related email; draft
23   > joint defense agreement; edit chart of claims and defenses; discuss the same with SE.;
24   > research issues relating to tortious interference with prospective economic advantage;
25   > research issues relating to standing.

26   ECF 186, Ex. A. Individual Defendants offer no explanation for how much time was spent on any
27   one of these dozen wide-ranging and separate tasks block billed by their lawyer. Similarly, on July
28   23, 2020, King & Spalding associate Sam Diamant entered 6.7 hours with the following time entry:

      Review and analyze document by I. Sysoev responding to Lynwood allegations; conference with J. Fugate regarding client intake interviews; conference with M. Dawson regarding status and strategy; review **REDACTED** by I.Sysoev; conference with B. Baber regarding same; review and analyze claims against individual defendants; draft and revise choice of law memorandum regarding federal claims; finalize memorandum on choice of law for internal review and sent to case team; conference with J. Fugate regarding choice of law analysis.

ECF 186, Ex. A. Block-billed time entries like the above, which include tasks ranging from client intake interviews to strategy sessions to drafting legal memoranda, make it "impossible to determine whether the time requested for any one task was reasonable." *Banas v. Volcano Corp.*, 47 F.Supp.3d 957, 967 (N.D. Cal. 2014) ("Without specifying how much spent was spent on each distinct task…there is no way for me to determine whether the time spent on any of these tasks…was reasonable").

      The examples listed above are merely representative of King & Spalding's rampant use of block billing. Lynwood has identified 182.9 hours of similar block-billed time totaling $141,054.50. *See* Pencu Declaration Ex. B. None of this time was entered by Individual Defendants' lone copyright counsel, Bruce Baber. Accordingly, by Individual Defendants' own admission, none of this time is related to Lynwood's copyright claim. ECF 174-1, *e.g.* ¶¶20-21, 24-25 (asserting that Messrs. Brun, Dawson and Diamant, and Mss. Fugate and Naglis were part of King & Spalding's "non-copyright team"). The Court should reject King & Spalding's block-billed time entries on this basis alone.

      If, in the alternative, the Court awards any fees on Individual Defendants' non-copyright claim related block-billed time, the Court should, at a minimum, reduce the block-billed time first by 50% to remove unrecoverable "case management" fees and then by a further 40% to address the improper block-billing. *See Lahiri v. Universal Music and Video Distribution Corp.*, 606 F.3d 1216, 1222-23 (9th Cir. 2010) (affirming reduction of 80% of the defendants' time entries by 30%); *see also Signature Financial, LLC v. McClung*, 2018 WL 6843050, *5 (C.D. Cal. Aug. 13, 2018) (ordering "a reduction of 40%" for block-billed time).

### 2. Redacted Entries

Over eighty-five hours of Individual Defendants' timesheets (*see* Pencu Declaration, Ex. C) contain "[h]eavy redactions [that] render it impossible for the Court to discern how much time was expended on specific tasks." *Randles Films, LLC v. Quantum Releasing, LLC*, 2012 WL 12884046, *4 (C.D. Cal. Mar. 30, 2012) (rejecting heavily redacted time entries containing entries such as "research regarding [redacted]"). This includes dozens of entries for "research **REDACTED**," "review **REDACTED**," "analysis regarding **REDACTED**," and "revise **REDACTED**." *See* Pencu Declaration, Exhibit C, *e.g.* Rows 16, 20 and 21. Individual Defendants cannot recover fees "for work whose description is kept hidden from both the Court" and Lynwood. *Randles*, 2012 WL 12884046, *4. Individual Defendants assert that the redactions concern privileged or other sensitive information, but improperly redacted time records are not the remedy for privilege concerns. For example, Individual Defendants could have "lightly redacted the time sheets so that the Court could have had at least a general idea of what work was being performed," or they could have "submitted a declaration explaining in new words the work that was done during these entries." *Id*. The broad redactions deprive Lynwood of a "meaningful opportunity to contest the validity of the fees charged" and should be excluded in their entirety. *Id*. ("the Court will not include the amounts associated with heavily redacted time sheets when calculating attorneys' fees"); *Shame on You*, 2016 WL 5929245, *16 (rejecting fee entries with descriptions such as "Communications re [REDACTED]," "Review [REDACTED]" and "Telephone conferences re [REDACTED]"). Attached as Exhibit C to the Pencu Declaration is a chart with the improperly redacted time entries that total 85.5 in hours seeking $73,228.24 in fees.

### 3. Vague Record Entries

The Court should further reduce any fee award and reject time entries that are "too vague for the Court to determine if they are reasonable." *Santiago v. Equitable Ascent Financial*, 2013 WL 3498079, *6 (N.D. Cal. July 12, 2013). "Courts in the Northern District of California have been unable to determine whether billing entries were reasonable because the entries description only consisted of 'conferences,' 'telephone calls,' or 'review of documents,' without describing the subject of the call or correspondence." *Id*. Thus, "work billed for unnamed drafts and telephone

calls with unknown parties [are] too vague to be reviewed," and are properly stricken. *Id*. Similarly, time records that include descriptions like "[r]esearch jurisdiction" or "[r]evise…documents" have been stricken as "not recoverable because they are inadequately vague. *Sigma Enterprises*, 2017 WL 10439659, *12; *see also Gilead Sciences, Inc. v. Merck & Co., Inc.*, 2017 WL 3007071, *8 (N.D. Cal. July 14, 2017) (time entries such as "work on case coordination" and "work on case strategy" found to be impermissibly vague) . Lynwood has identified 74.4 hours of impermissibly vague time entries that should be rejected. *See* Pencu Declaration Ex. D. This includes entries such as "Discuss case management," "Weekly team call," and "Research re reply brief." *See* Pencu Declaration Ex. D, *e.g.* Rows 29, 53 and 57. A majority of the vague time entries were logged by King & Spalding's non-copyright team (*i.e.*, everyone other than Bruce Baber), and those entries should be stricken on that basis. If any award is issued, the fees sought for vague time entries should be reduced by at least forty percent (40%). *See Gilead Sciences*, 2017 WL 3007071, *8 (reducing vague time entries such as "work on case arguments" by forty percent (40%)).

### 4. Duplicate And Excessive Time Entries

The King & Spalding time sheets also include what appear to be duplicate and excessive time entries for conference calls. In particular, King & Spalding's invoices include over 145 hours for vaguely described conference calls. *See e.g.* ECF 186, Ex. B (August 25, 2020 entry by Shane Brun – "weekly team call (.8)"). "[I]n general, counsel should not bill for internal communications and communicating with each other, as such time is unnecessary." *In re Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation*, 2020 WL 5371404, *10 (N.D. Cal. Sept. 8, 2020) (applying a 50% reduction to internal conference fees); *see also Rodriguez v. Barrita, Inc.*, 53 F.Supp.3d 1268, 1282 (N.D. Cal. 2014) (rejecting 63% of conference-related hours); *Cruz v. Starbucks Corp.*, 2013 WL 2447862, *8 (N.D. Cal. June 5, 2013) (reducing fees by 37% where "nearly half of the time billed by McGuiness was spent in meetings and conferences with co-counsel").

The billing entries of King & Spalding partner Quyen Ta is demonstrative of the type of excessive and duplicative time King & Spalding attorneys billed for conference calls. On July 27, 2020, Ms. Ta entered three identical 0.4 hour time entries for "Conference with S. Brun regarding

1   service issues" and two additional entries the same day totaling 0.7 hours related to the same "service
2   issues." ECF 186, Ex. A.  Also, on August 25, 2020, Ms. Ta included two identical 1.1 hour entries
3   for "Review task list (.1) prior to team call; attend weekly internal team call to discuss strategy (1.0)."
4   ECF 186, Ex. B.  On August 11, 2020, Ms. Ta entered 2.6 hours to "Attend and participate in weekly
5   team meeting." ECF 186, Ex. B.  In addition to being improperly vague, no other member of the
6   King & Spalding legal team billed more than 1.0 hour for the August 11, 2020 call.  On August 12,
7   2020, Ms. Ta entered a 4.0 hour time entry for "Attend and participate in weekly joint defense call."
8   ECF 186, Ex. B.  King & Spalding associate Sam Diamant entered a 0.5 hour entry for the same joint
9   defense call. *Id*.  F5's time sheets for the same day show that no attorney billed more than 1.0 hours
10  for the same August 12, 2020 joint defense call.  ECF 187, Ex. B.  A substantial majority of all of
11  Ms. Ta's time was spent conferencing with other lawyers.  Ms. Ta's time entries show that 64% of
12  her entered time (49.3 of 77.5 hours billed or $47.797.68) was spent on conferences.  *See* Pencu
13  Declaration Ex. E.  Ms. Ta's pattern of excessive billing for internal conferences is indicative of the
14  pervasive excessive billing by King & Spalding to speak to each other.  It is "improper to 'uncritically
15  accept'" Individual Defendants' fee request for the excessive internal conference hours, and
16  Lynwood requests that if any fee award is issued for the 145 hours of conference calls, that the hours
17  be reduced by at least fifty percent (50%). *Rodriguez*, 53 F.Supp.3d at 1282 (rejecting sixty-three
18  percent (63%) of conference-related hours).

19              **5. Billing Rates**

20          Individual Defendants offer no evidence to support Alla Naglis' rate of $990/hour.  Ms.
21  Naglis is a former King & Spalding partner based in Moscow, Russia.  Individual Defendants offer
22  no evidence of Ms. Naglis' skills or experience, such as Ms. Naglis' expertise or years of experience.
23  ECF 174-1, ¶16.  The only qualification Individual Defendants offer is that Ms. Naglis was a
24  "Russian law partner on the King & Spalding Team." *Id*.  The Court is left with no basis to consider
25  the reasonableness of Ms. Naglis' $990 hourly rate.  Thus, the Court should disallow Ms. Naglis'
26  fees. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) ("the burden is on the fee applicant to produce
27  satisfactory evidence—in addition to the attorney's own affidavit—that the requested rates are in line
28  with those prevailing in the community for similar services by lawyers of reasonably comparable

skill, experience and reputation"). Similarly, for the reasons stated in Section IV of Lynwood's supplemental opposition to F5's motion for attorneys' fees, the hourly rates for Mr. Baber ($990/hour), Jeanne Fugate ($875/hour), Quyen Ta ($890/hour) and Shane Brun ($890/hour) should be reduced to $665 per hour, which is the established median rate for private practice partners in the San Francisco region. Also, if any fee is awarded for Ms. Naglis' time, the rate should also be set at $665 per hour.

## CONCLUSION

The Court should only consider the Copyright Fees for any fee award. The other claims are not related to the lone copyright claim adjudicated by the Court. Individual Defendants failed to comply with the Court's December 20, 2020 Order, and instead produced raw time sheets that courts in this District and Circuit have held are insufficient to assess the reasonableness of a Section 505 fee award. Individual Defendants' timesheets and filings in this case confirm that their lawyers spent virtually no time addressing Lynwood's copyright claim, which proves the falsity Individual Defendants' relatedness argument.

The Court should reject Individual Defendants' demand for an undefined set of non-claim related case management fees. Individual Defendants have offered no evidence to tie the case management fees to any recoverable claim, and improperly grouped the case management fees with alleged claim-related fees. If, in the alternative, the Court determines that any fee award is appropriate, the Court should limit the fee award to reasonably determinable copyright claim related fees, which according to Individual Defendants' submissions amounts to the 5.4 hours spent by Mr. Baber at $990 per hour. Thus, the Court should reduce the fee award to $5,346.

| | | |
|---|---|---|
| 1 | DATED: February 7, 2023 | By: /s/ Alexander D. Pencu |
| 2 | | (Admitted Pro Hac Vice) |
| | | MEISTER SEELIG & FEIN PLLC |
| 3 | | 125 Park Avenue, 7th Floor |
| | | New York, New York 10017 |
| 4 | | Telephone: (212) 655-3500 |

BURKE, WILLIAMS & SORENSEN, LLP
60 South Market Street, Suite 1000
San Jose, California 95113
Telephone: (408) 606-6300
Facsimile: (408) 606-6333

*Attorneys for Plaintiff Hemma Investments CY Limited f/k/a Lynwood Investments CY Limited*