IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LYNWOOD INVESTMENTS CY LIMITED,

　　　　　Plaintiff,

　　v.

MAXIM KONOVALOV, et al.,

　　　　　Defendants.

Case No. 20-cv-03778-MMC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR ATTORNEYS' FEES**

Re: Dkt. Nos. 173, 174

Before the Court are the following two motions, both filed September 30, 2022: (1) defendants F5, Inc., NGINX., Inc. (BVI), and NGINX Software, Inc.'s (collectively, "F5 Entities") "Motion for Attorney's Fees," and (2) defendants Maxim Konovalov, Igor Sysoev, Andrey Alexeev, Maxim Dounin, Gleb Smirnoff, and Angus Robertson's (collectively, "Individual Defendants") "Motion for Attorneys' Fees."  Plaintiff, Lynwood Investments CY Limited ("Lynwood"),[1] has filed opposition, to which defendants have replied.  By order filed December 20, 2022, the Court afforded the parties leave to file supplemental briefing, which the parties subsequently filed.  (See Am. Order Finding Defs. Entitled To Attorneys' Fees; Affording Defs. Leave to Suppl. Mot. as to Amount; Setting Briefing Schedule, Dec. 20, 2022, Dkt. No. 184 ("December 20 Order").)  Having read and considered the papers filed in support of and in opposition to the motions, including the parties' supplemental briefs, the Court rules as follows.[2]

---

[1] On September 2, 2022, Lynwood informed the Court it had changed its name to Hemma Investments CY Limited.  (See Joint Case Mgmt. Statement and Rule 26(f) Rep., Dkt. No. 165.)  For purposes of clarity, the Court continues to refer to plaintiff as Lynwood, as it has in all prior orders in the above-titled action.

[2] The matter stood submitted as of February 21, 2023, the deadline for the filing of

United States District Court
Northern District of California

## BACKGROUND[3]

On June 8, 2020, Lynwood filed its initial complaint in the instant action, seeking over $750 million in damages assertedly resulting from an alleged conspiracy, between the F5 Entities and the Individual Defendants, to steal a "popular web server enterprise" from Rambler Internet Holding LLC ("Rambler"), a Russian software company at which the Individual Defendants, with the exception of Robertson, had worked.  (See Am. Compl. ("AC") ¶¶ 1, 19, Dkt. No. 141.)  According to Lynwood, Rambler assigned its intellectual property rights to Lynwood in 2015.  (See AC ¶ 457.)

By two orders filed, respectively, on March 25, 2021, and March 30, 2021, the Honorable Lucy H. Koh, to whom the above-titled action previously was assigned, granted defendants motions to dismiss the initial complaint, after which this Court, by its August 16 Order, granted defendants' motion to dismiss the AC.

By their instant motion, the F5 Entities seek, pursuant to the Copyright Act, see 17 U.S.C. § 505, attorneys' fees in the amount of $837,602.15, comprising $705,711.05 for defending against Lynwood's direct copyright infringement claim, and $131,891.10 for defending against four claims they describe as "related claims."  (See F5 Entities' Mot. for Attorney's Fees; Mem. of P. & A. ("F5 Entities' Mot.") at 17:2, 18:11-14, Dkt. No. 173); see also § 505 (providing court may "award a reasonable attorney's fee to the prevailing party" in action under Copyright Act).  Similarly, the Individual Defendants, by their motion, seek, pursuant to § 505, attorneys' fees in the amount of $769,299.10, comprising $263,300.35 for defending against the direct copyright infringement claim, and $505,998.75 for defending against six "related claims."[4]  (See Indiv. Defs.' Mot. at

supplemental replies.  (See December 20 Order at 15:16-17.)

[3] The factual and procedural background of this action is set forth in greater detail in prior orders.  (See Order Granting Mot. to Dismiss, Aug. 16, 2022, Dkt. No. 162 ("August 16 Order"); see also December 20 Order.)

[4] Initially, in their motion, the Individual Defendants sought $507,066.75 for defending against the six purportedly related claims.  (See Mot. for Attorneys' Fees by Indiv. Defs.; Mem. of P. & A. ("Indiv. Defs.' Mot.") at 2:27, Dkt. No. 174.)  Subsequently, in their supplemental briefing, they corrected that amount to $505,998.75, having

2:18-19, 2:26-27.)

**DISCUSSION**

An analysis under § 505 "entail[s] two separate determinations: first, deciding *whether* an award of attorney's fees is appropriate and, second, calculating the amount of the award." See Stern v. Does, 2011 WL 13124449, at *2 (C.D. Cal. May 4, 2011), aff'd, 512 F. App'x 701 (9th Cir. 2013) (internal quotation and citation omitted) (emphasis in original). In the instant action, the Court ruled on the first question in its December 20 Order, finding each of the defendants is entitled to an award of such fees. Absent submission of contemporaneous time records, however, the Court was unable to determine the appropriate amount of fees to be awarded. In light thereof, the Court afforded defendants leave to submit those records, and all parties were afforded leave to file supplemental briefing. The parties having done so, the Court now turns to the second question in the § 505 analysis, namely, calculating the amount of fees to be awarded.[5]

Lynwood makes two challenges to the defendants' respective requested amounts of fees. First, Lynwood argues "there is no basis to extend Section 505 fees to non-copyright claims." (See Pl.'s Mem. of P. & A. in Opp'n to Defs.' Mots. for Attorneys' Fees ("Pl.'s Opp'n") at 22:11-12, Dkt. No. 178.) Second, Lynwood argues the fees sought are "facially unreasonable and excessive." (See id. at 24:1.) The Court considers below

_____

"identified three time entries" totaling $1,068 "that should properly be deducted . . . because . . . those entries relate to work on trademark claims that is not being sought pursuant to . . . stipulation." (See Indiv. Defs.' Suppl. Submission Regarding Amount of Attorneys' Fees at 2:25-3:4, Dkt. No. 185.) Although the Individual Defendants, in subtracting the above-referenced sum, arrived at a total claimed amount of $505,988.75 (see id. at 1:14), the Court notes that a reduction of $1,068 from $507,066.75 actually results in the slightly higher figure of $505,998.75, which sum the Court has used in calculating a fee award.

[5] The Court, in discussing defendants' arguments made in the initial round of briefing, has not distinguished between those made by the F5 Entities and those made by the Individual Defendants, the latter having "join[ed] in and incorporate[d] by reference" the F5 Entities' arguments that are addressed herein. (See Indiv. Defs.' Mot. at 5 n.4; see also Indiv. Defs.' Reply Brief in Supp. of Mot. for Attorneys' Fees ("Indiv. Defs.' Reply") at 2:8-9, Dkt. No. 181.) As defendants present distinct arguments in their supplemental briefs, however, the Court discusses those arguments separately.

United States District Court
Northern District of California

United States District Court
Northern District of California

each challenge in turn and, before doing so, addresses defendants' contention that Lynwood has waived certain of the arguments it makes in support of those challenges.

### A. Waiver

At the outset, defendants contend Lynwood, by "failing to raise . . . in its opening briefing" various arguments it raises in its supplemental opposition, "waived" those arguments. (See F5 Entities' Suppl. Reply in Supp. of Their Mot. for Attorney's Fees ("F5 Entities' Suppl. Reply") at 4:5-6, Dkt. No. 199; see also Indiv. Defs.' Suppl. Reply in Supp. of Their Mot. for Attorneys' Fees ("Indiv. Defs.' Suppl. Reply") at 2:18, Dkt. No. 200.)

First, the F5 Entities argue, Lynwood waived its challenge to any fees claimed for "general defense work" (see F5 Entities' Suppl. Reply at 4:4) and also to the hourly rates sought (see id. at 9:12). In support thereof, however, the F5 Entities cite to Nathanson v. Polycom, Inc., 2015 WL 12964727 (N.D. Cal. Apr. 16, 2015), a case wherein the district court "declin[ed] to consider an issue first raised on reply," see id. at *1 (citation omitted), leaving the other party with no opportunity to respond. Here, by contrast, the F5 Entities, in their supplemental briefing, have had an opportunity to respond to any arguments Lynwood raises for the first time in its supplemental briefing.

Next, the Individual Defendants argue, Lynwood waived its challenge to fees claimed for "'hybrid' or 'case management tasks,'" work on non-copyright claims, and to defense counsel's hourly rates. (See Indiv. Defs.' Suppl. Reply at 3:10-19.) The authority on which the Individual Defendants rely, Novalk, LLC v. Kinsale Ins. Co., 2021 WL 4134741 (S.D. Cal. Sept. 10, 2021), however, likewise is distinguishable, in that the plaintiff therein failed to file any opposition, see id. at *2 (construing "[p]laintiff's failure to oppose [d]efendant's [m]otion as consent to granting the [m]otion"), whereas, in the instant case, Lynwood has filed opposition, and indeed, it has done so twice.

The Individual Defendants' additional argument likewise is unpersuasive. In particular, the Individual Defendants assert, Lynwood's supplemental opposition "exceeds the limited purpose set forth in the Court's [December 20 Order]" by "seek[ing] to litigate whether fees for 'hybrid' or 'case management' tasks . . . are recoverable," by

United States District Court
Northern District of California

1    "seek[ing] to reargue whether [they] can recover fees for non-copyright claims as a matter

2    of law," and by "belatedly attempt[ing] to challenge the hourly rates sought by counsel."

3    (See Indiv. Defs.' Suppl. Reply at 2:19-20, 3:9-10.)  Nothing in the Court's December 20

4    Order, however, limited the scope of the supplemental briefing in the manner the

5    Individual Defendants contend.  In the December 20 Order, the Court determined

6    defendants were entitled to fees but allowed supplemental briefing as to the amounts

7    claimed.  As the above-referenced three arguments pertain thereto, the Court, contrary to

8    the Individual Defendants' urging, will not "disregard the portions of Lynwood's

9    Supplemental Opposition that address [them]."  (See id. at 4:2-3.)

10         Accordingly, the Court, considering all arguments raised in the initial and

11    supplemental rounds of briefing, turns next to the first of Lynwood's above-referenced

12    challenges, namely, whether defendants may recover fees incurred in defending against

13    the non-copyright claims.

14    **B. Non-Copyright Claims**

15         Where a party seeks fees under § 505 for copyright and non-copyright claims, "the

16    first step in the calculation of a reasonable attorney's fee [is] to decide if the copyright and

17    non-copyright claims are related," in that "a party entitled to attorney's fees as a

18    prevailing party on a particular copyright claim . . . can only recover attorney's fees

19    incurred in defending against that one claim or any related claims."  See The Traditional

20    Cat Ass'n, Inc. v. Gilbreath, 340 F.3d 829, 833 (9th Cir. 2003) (internal quotation, citation,

21    and alteration omitted).

22         Here, the four non-copyright claims for which the F5 Entities seek fees as related

23    claims are Lynwood's (1) Eighth Claim for Relief, titled "Aiding and Abetting by F5 of the

24    Disloyal Employees' Fraud and Breaches of Their Duties of Honesty and Loyalty to

25    Rambler," (2) Ninth Claim for Relief, titled "Tortious Interference with Contract Against

26    Konovalov, Robertson, NGINX Software, Inc., NGINX BVI, and NGINX DE," (3) Twelfth

27    Claim for Relief, titled "Tortious Interference with Prospective Business Advantage

28    Against All Defendants," and (4) Thirteenth Claim for Relief, titled "Fraud Against the

United States District Court
Northern District of California

Disloyal Employees, NGINX Software, Inc., NGINX DE and NGINX BVI." The six non-copyright claims for which the Individual Defendants seek fees as related claims are Lynwood's (1) First Claim for Relief, titled "Breach of Employment Obligations Owed by Konovalov to Rambler," (2) Second Claim for Relief, titled "Breach of Employment Obligations Owed by Sysoev to Rambler," (3) Fourth Claim for Relief, titled "Breach of Konovalov's Duty to Act Fairly and Honestly With Rambler," as well as the above-referenced (4) Ninth Claim for Relief, (5) Twelfth Claim for Relief, and (6) Thirteenth Claim for Relief.

"To determine whether . . . claims are related," the Ninth Circuit has instructed district courts to "focus on whether the claims . . . involve a common core of facts *or* are based on related legal theories." See Shame On You Prods., Inc. v. Banks, 893 F.3d 661, 669 (9th Cir. 2018) (internal quotation and citation omitted) (emphasis in original) (finding "copyright claim" and "contract claim" related where both "turned on whether or not [d]efendants had copied" work at issue therein). "[U]nrelated claims are those that are 'entirely distinct and separate from the claims on which the plaintiff prevailed.'" See Thomas v. City of Tacoma, 410 F.3d 644, 649 n.5 (9th Cir. 2005) (internal quotation and citation omitted).

Here, Lynwood argues, the F5 Entities' timesheets "confirm" the copyright and non-copyright claims are unrelated. (See Pl.'s Suppl. Mem. of P. & A. in Opp'n to the F5 Defs.' Mots. for Attorneys' Fees ("Pl.'s Suppl. Opp'n to F5 Entities") at 4:18, Dkt. No. 194.) Specifically, Lynwood asserts, "[o]nly one of the five partners," Benjamin Fox ("Fox"), "spent any material time addressing the copyright claim" but "billed exactly zero minutes . . . to any of the purportedly 'related' non-copyright claims." (See id. at 4:20-21, 5:6-7.) If the claims were related, Lynwood argues, "Fox would have been at least somewhat involved in defending the non-copyright claims." (See id. at 5:4-5.) The Court is not persuaded. As the F5 Entities point out, "other key team members, such as co-lead counsel [Michael] Jacobs and [Jessica] Grant, as well as [Cooper] Spinelli, worked on both the copyright and [the above-referenced four claims]" (see F5 Entities' Suppl.

Reply at 3:22-24), and the F5 Entities attribute Fox's focus on the copyright claim to "efficient time management" (see id. at 3:18-19); see also Moreno v. City of Sacramento, 534 F.3d 1106, 1115 (9th Cir. 2008) (holding district court "may not attempt to impose its own judgment regarding the best way to operate a law firm, nor to determine if different staffing decisions might have led to different fee requests").

Lynwood's similar argument as to the Individual Defendants' timesheets likewise is unpersuasive.  In particular, Lynwood asserts the Individual Defendants' "lead copyright partner," Bruce Baber, "spent no time addressing any non-copyright claim," while "no one on his team [other than Baber] spent any time addressing the copyright claim" and, instead, "worked on the non-copyright claims."  (See Pl.'s Suppl. Mem. of P. & A. in Opp'n to Indiv. Defs.' Mots. for Attorneys' Fees ("Pl.'s Suppl. Opp'n to Indiv. Defs.") at 7:16-19, Dkt. No. 195; see also Decl. of Bruce W. Baber in Supp. of Indiv. Defs.' Mot. for Attorneys' Fees ("Baber Decl.") ¶ 12, Dkt. No. 174-1.)  The Court's focus, however, should not be on how work was assigned among attorneys, but, rather, "on whether the claims . . . involve a common core of facts or are based on related legal theories," see Shame On You, 893 F.3d at 669 (internal quotation and citation omitted) (emphasis in original); see also Moreno, 534 F.3d at 1115.  The Court thus turns to that question.

In Lynwood's direct copyright infringement claim, the Fourteenth Claim for Relief, Lynwood alleged it is "the owner by assignment, of all right, title and interest in and to NGINX Plus and Open Source NGINX,[6] in both source code and executable form, conceived and/or developed before the end of 2011 . . . (collectively, 'Pre-2012 NGINX Software')" (see AC ¶ 745), and that the "Direct Copyright Infringement Defendants," namely, Konovalov, Sysoev, Smirnoff, Alexeev, Dounin, NGINX Software, Inc., NGINX BVI, NGINX DE, Robertson, and F5, "directly infringed upon [Lynwood's] copyright rights in and to the Pre-2012 NGINX Software" (see AC ¶ 761) by, inter alia, "download[ing] the

---

6 As defined in the AC, "NGINX Plus" is "proprietary NGINX software code" and "Open Source NGINX" is "NGINX software released to the public as 'open source' code." (See AC ¶¶ 9, 15.)

United States District Court
Northern District of California

1   Pre-2012 NGINX Software and derivatives thereof, as well as cop[ying], distribut[ing] and

2   creat[ing] derivative works of same" (see AC ¶ 758), and "introduc[ing] 20 or more

3   commercial releases of NGINX Plus" (see AC ¶ 759).

4         In its First and Second Claims for Relief, Lynwood asserted such acts of

5   infringement constituted breaches of contractual obligations owed to Rambler by,

6   respectively, Konovalov and Sysoev (see AC ¶¶ 579, 590), and, in its Ninth Claim for

7   Relief, asserted such acts constituted tortious interference by Konovalov, Robertson,

8   NGINX Software Inc., NGINX BVI, and NGINX DE with those contractual obligations

9   owed by Sysoev (see AC ¶¶ 658-59).  Similarly, in its Fourth Claim for Relief, Lynwood

10  asserted such acts of infringement constituted breaches of Konovalov's "duties to act

11  fairly reasonably and in the best interests of Rambler" (see AC ¶¶ 606-08), and, in its

12  Eighth Claim for Relief, Lynwood asserted F5, Inc. "aid[ed] and abett[ed]" those breaches

13  (see AC ¶¶ 645-46).  In its Twelfth Claim for Relief, Lynwood asserted defendants'

14  alleged "copyright infringement" interfered with Rambler's prospective economic

15  advantage.  (See AC ¶ 694.)  Lastly, in its Thirteenth Claim for Relief, Lynwood asserted

16  Konovalov, Sysoev, Smirnoff, NGINX Software Inc., NGINX BVI, and NGINX DE

17  engaged in "fraudulent conduct" whereby they misappropriated the copyrighted work at

18  issue.  (See AC ¶¶ 721-22.)

19        As set forth above, each of the assertedly related claims shares a common core of

20  facts with the copyright claim, in that each is predicated on Lynwood's assertion that

21  defendants infringed its copyright.  See Twentieth Century Fox Film Corp. v. Ent. Distrib.,

22  429 F.3d 869, 884 (9th Cir. 2005) (finding "unfair competition and slander claims" were

23  "sufficiently related" to copyright claim where they "[we]re predicated on [plaintiff's]

24  assertion that [defendant] did not own the copyright" to the book at issue therein).  Put

25  another way, this is not a case wherein the "course of conduct" underlying the purportedly

26  related claims can be said to be "entirely distinct and separate from the course of conduct

27  that gave rise to" the claim for which statutory fees are provided.  See Schwarz v. Sec'y

28  of Health & Hum. Servs., 73 F.3d 895, 903 (9th Cir. 1995).

Similarly, Lynwood's copyright claim and the above-listed non-copyright claims, albeit having elements in addition to those of a copyright claim, are based on related legal theories.  See, e.g., Shame on You, 893 F.3d at 669 (finding copyright claim and breach of contract claim were "based on related legal theories" where they "arose out of the same set of facts and circumstances"); (see also Pl.'s Opp'n at 21:27-22:1 (acknowledging "misappropriation of Opensource NGINX and NGINX Plus [was] one of many ways in which [d]efendants breached their contractual and legal duties to Rambler")).

Accordingly, the Court finds each of the above-referenced claims is, for purposes of awarding fees under § 505, related to the copyright claim, and next turns to Lynwood's second challenge to defendants' requested fees, namely, as noted, that the amount of fees sought is unreasonable and excessive.

### C. Fees Sought

In making a fee award under § 505, a court must calculate "a reasonable attorney's fee."  See Traditional Cat, 340 F.3d at 833.  In determining that amount, the Court uses the "lodestar method," see In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011), by which "the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation)" is multiplied by "a reasonable hourly rate for the region and for the experience of the lawyer," see id.

The Court first considers below the hourly rates requested by defendants, then turns to their claimed number of hours.

#### 1. Hourly Rate

"[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."  See Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 979 (9th Cir. 2008) (internal quotation and citation omitted); see also Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984) (noting "[a] rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate").

United States District Court
Northern District of California

"Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." See Camacho, 523 F.3d at 979.

"To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community . . . ." See Blum, 465 U.S. at 895 n.11; see also Washington v. ViacomCBS, Inc., 2021 WL 6134375, at *4 (C.D. Cal. Dec. 9, 2021) (noting "sworn declarations of knowledgeable counsel who practice in the relevant market constitute probative evidence supporting the reasonableness of a fee applicant's hourly rates"). In that regard, "'[u]nless counsel is working outside his or her normal area of practice,' evidence that a billing rate was the usual rate the attorney charges for his or her services is evidence that the rate is comparable to the market rate." See Perfect 10, Inc. v. Giganews, Inc., 2015 WL 1746484, at *5 (C.D. Cal. Mar. 24, 2015), aff'd, 847 F.3d 657 (9th Cir. 2017) (alteration omitted) (quoting Moore v. James H. Matthews & Co., 682 F.2d 830, 840 (9th Cir.1982) (noting "billing rates usually reflect, in at least a general way, counsel's reputation and status")).

Here, the relevant community is the Northern District of California, where the instant case was filed. With that in mind, the Court next considers the rates requested by, respectively, the F5 Entities and the Individual Defendants.

### a. F5 Entities

The F5 Entities are represented by Morrison & Foerster LLP and seek fees for work performed by three partners, namely, Michael Jacobs ("Jacobs"), Jessica Grant ("Grant"), and Fox, at their respective hourly rates of $1,200, $1,000, and $980 for 2020, their respective hourly rates of $1,260, $1,050, and $1,029 for 2021, and, as to Jacobs, his hourly rate of $1,293.75 for 2022. (See Decl. of Michael A. Jacobs in Supp. of the F5 Entities' Mot. for Attorney's Fees ("Jacobs Decl.") ¶ 25, Dkt. No. 173-1.)[7] In addition, they

---

[7] During the time work on the instant case was performed, the rates claimed, as set forth above, increased, by relatively modest amounts, which increases the Court finds reasonable. (See Jacobs Decl. ¶ 25.)

1   seek fees, at his hourly rate of $840 for 2020 and $882 for 2021, for work performed by

2   Paul Goldstein ("Goldstein"), "of counsel to Morrison & Foerster since 1988."  (See id.

3   ¶¶ 18, 25.)[8]

4       "[I]n an action under the Copyright Act, an award based on the actual rates

5   charged by counsel has consistently been held to be reasonable under 17 U.S.C. § 505."

6   See Oracle USA, Inc. v. Rimini St., Inc., 209 F. Supp. 3d 1200, 1217 (D. Nev. 2016)

7   (finding "the appropriate rates for counsel in th[e] copyright infringement action [there at

8   issue] [were] the actual rates charged by counsel"); see also Kourtis v. Cameron, 358 F.

9   App'x 863, 868 (9th Cir. 2009) (holding "district court's calculation of an attorney's fee

10  award . . . based on the actual rates charged by [defendant's] attorneys was reasonable

11  under 17 U.S.C. § 505").

12      Here, the F5 Entities, in addition to stating the rates claimed are the rates actually

13  charged in defending the instant case, state those rates "are comparable to prevailing

14  rates in the community for like-skilled professionals" (see Jacobs Decl. at 6:19-20), and,

15  in support thereof, cite results from the American Intellectual Property Law Association

16  ("AIPLA") "Economic Survey Report" (see id. ¶ 26); see also Phigenix, 2019 WL

17  2579260, at *11 (noting "[i]n intellectual property cases, federal courts routinely rely on

18  the [AIPLA] economic survey results published every other year") (internal quotation and

19  citation omitted).  Specifically, the report "indicates that the mean billing rate for partners

20  at private firms in the San Francisco Consolidated Metropolitan Statistical Area (CMSA)

21  was $665 in 2020, and the third quartile (75%) was $903" (see Jacobs Decl. ¶ 26), while

22  the "90th percentile . . . was [at least] $1,200" (see F5 Entities' Suppl. Reply at 10:19-21

23  n.7).  The requested partner rates thus fall between the 75th and 90th percentile of billing

24  rates for intellectual property partners at private firms in San Francisco.

25  _____

26      [8] The F5 Entities also seek fees for work performed by four associates at hourly
    rates that range between $552 and $787.50, as well as fees for work performed by two
27  paralegals at hourly rates that range between $224 and $316 (see Jacobs Decl. ¶ 25),
    and have submitted evidence as to all of their qualifications and experience (see id.
28  ¶¶ 19-24).  Lynwood does not challenge these rates.

United States District Court
Northern District of California

To further show those rates are reasonable, the F5 Entities have submitted the following evidence as to the skill, experience, and reputation of the above-listed partners:

(1) Jacobs, who "graduated from Yale Law School in 1983," is "the co-founder of Morrison & Foerster's Intellectual Property Practice Group[,] . . . [ha]s been a partner for 32 years[,] was awarded the California Lawyer Attorneys of the Year award three times," and is "listed in Band 1 by *Chambers* in its California Intellectual Property category and in *Chambers Global* as a leading attorney for Intellectual Property." (See Jacobs Decl. ¶ 13.)

(2) Grant, who "graduated from the University of San Francisco School of Law in 1995," is "a nationally recognized trial lawyer" who "focuses on high-stakes business litigation matters, including complex cases involving copyright and trademark issues," and was "named by Benchmark Litigation in its Top 250 Women in Litigation 2022 list." (See id. ¶ 15.)

(3) Fox, who "graduated from the University of California at Los Angeles School of Law in 1997," has "extensive experience in high-stakes intellectual property disputes involving copyright claims," and was "recommended by The Legal 500 in the areas of Copyright and Trademark Litigation." (See id. ¶ 17.)

(4) Goldstein, who "graduated from the Columbia Law School in 1967," is the "Lillick Professor of Law at Stanford Law School," a "widely-cited expert on copyright law and author of the five-volume treatise *Goldstein on Copyright* and co-author of the treatise *International Copyright: Principles, Law and Practice* (4th ed. 2019)." (See id. ¶ 18.)

Although "declarations filed by the fee applicant do not conclusively establish the prevailing market rate[,] [t]he party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the facts asserted by the prevailing party in its submitted affidavits." See Camacho, 523 F.3d at 980 (internal quotation, citation, and alteration omitted).

Lynwood, in opposing the instant motion, argues the requested partner rates "far

United States District Court
Northern District of California

1   exceed[]" the prevailing rate (see Pl.'s Suppl. Opp'n to F5 Entities at 9:9-10), citing in

2   support thereof three cases wherein district courts awarded fees at rates considerably

3   lower than those claimed here.  In two of those cases, however, the courts were looking

4   at market rates for, respectively, the years 2002, see Yahoo!, Inc. v. Net Games, Inc.,

5   329 F. Supp. 2d 1179, 1191 (N.D. Cal. 2004), and 2014, see Shame on You Prods., Inc.

6   v. Banks, 2016 WL 5929245, at *14 (C.D. Cal. Aug. 15, 2016), aff'd, 893 F.3d 661 (9th

7   Cir. 2018), and the rates claimed in the third, although for 2018-19, were discounted by

8   the claimant to "rates from several years [earlier]," see Big Baboon, Inc. v. SAP Am., Inc.,

9   2019 WL 5088784, at *8 (N.D. Cal. Sept. 9, 2019), R. & R. adopted, 2019 WL 5102644

10  (N.D. Cal. Oct. 11, 2019), aff'd, 819 F. App'x 928 (Fed. Cir. 2020).

11       "[I]n determining the prevailing market rate a district court abuses its discretion to

12  the extent it relies on cases decided years before the attorneys actually rendered their

13  services."  See Camacho, 523 F.3d at 981 (citing Bell v. Clackamas County, 341 F.3d

14  858, 869 (9th Cir. 2003) (holding district court abused its discretion in applying market

15  rates in effect more than two years before work performed)).  The above-cited cases thus

16  have little to no relevance as to the Court's determination of a reasonable rate, and,

17  particularly, given the above-discussed evidence submitted by the F5 Entities, by which

18  they provide a detailed description of each attorney's academic background, work history,

19  areas of expertise, and, in a number of instances, professional recognitions.  (See

20  Jacobs Decl. ¶¶ 13-24; see also F5 Entities' Suppl. Reply at 11:8-15.)

21       In addition to considering the "rate prevailing in the community for similar work

22  performed by attorneys of comparable skill, experience, and reputation," see Camacho,

23  523 F.3d at 979, courts "[i]n establishing the reasonable hourly rate, . . . may take into

24  account, among other factors, (1) the novelty and complexity of the issues; (2) the special

25  skill and experience of counsel; (3) the quality of representation; and (4) the results

26  obtained," see Phigenix, 2019 WL 2579260, at *11.  Here, given the complexity of the

27  case, the qualifications and experience of the F5 Entities' attorneys, and the very

28  successful result they obtained, the Court finds the requested rates are reasonable.

**b.  Individual Defendants**

The Individual Defendants are represented by King & Spalding LLP and seek fees for work performed by four partners, namely, Bruce Baber ("Baber"), Shane Brun ("Brun"), Quyen Ta ("Ta"), and Jeanne Fugate ("Fugate"), based on hourly rates of $990, $890, $890, and $875, respectively.  (See Baber Decl. ¶¶ 12-14.)  In addition, they seek fees at an hourly rate of $990 for work performed by the "lead Russian law partner," Alla Naglis ("Naglis").  (See id. ¶ 16.)[9]  All of the claimed rates remained unchanged over the period of time during which work on the instant case was performed and, as described by the Individual Defendants, were "significantly discounted and resulted from negotiations specific to this matter."  (See id. ¶ 11.)

Additionally, the Individual Defendants have submitted evidence that "the . . . rates in this matter are 5 to 15 percent below the 2021 AmLaw 50, top 75th percentile average standard rates for litigation" (see Baber Decl. ¶ 11), and, as further support, cite to the AIPLA economic survey results for 2020, which show $903 was the third quartile rate charged by "other top IP lawyers" (see Indiv. Defs.' Suppl. Reply at 15:3-4).

Lynwood, in opposition, renews its argument that the requested rates exceed the prevailing rate.  (See Pl.'s Suppl. Opp'n to Indiv. Defs. at 13:1-5.)

As support for the reasonableness of the rates charged, the Individual Defendants have submitted the following evidence:

(1) Baber, who "received [his] J.D. *cum laude* from Duke University in 1979," has "over 40 years of experience representing clients in complex commercial and intellectual property disputes."  (See Baber Decl. ¶ 12.)

(2) Brun, who "received his J.D. in 1995 from University of California Hastings College of Law," has "over 20 years of experience specializing in intellectual

---

[9] The Individual Defendants also seek fees for work performed by two "senior associates" at an hourly rate of $775 and have submitted evidence as to their qualifications and experience.  (See Baber Decl. ¶ 15.)  Lynwood does not challenge this rate.

property and technology related matters." (<u>See</u> <u>id.</u> ¶ 13.)

(3) Ta, who received "her J.D. from the University of California (Berkeley) School of Law,"[10] completed "a two-year judicial clerkship in the U.S. District Court for the Eastern District of California," and "focuses her practice on high-stakes business disputes[,] including specializing in intellectual property litigation." (<u>See</u> <u>id.</u>)

(4) Fugate, who received "her J.D. from New York University School of Law in 2001," completed "judicial clerkships in U.S. District Court for the Southern District of New York and the U.S. Court of Appeals for the Ninth Circuit," and "specializes in complex civil litigation." (<u>See</u> <u>id.</u> ¶ 14.)

(5) Naglis "was the lead Russian law partner on the King & Spalding team . . . , with primary responsibility for the analysis of Russian law claims against the Individual Defendants and coordination with the Individual Defendants' Russian law expert witness . . . ." (<u>See</u> <u>id.</u> ¶ 16.)

In light of the above, the Court finds the actual rates charged by the above-listed partners are reasonable, <u>see</u> <u>Oracle</u>, 209 F. Supp. 3d at 1217 (noting "in an action under the Copyright Act, an award based on the actual rates charged by counsel has consistently been held to be reasonable under 17 U.S.C. § 505"), and particularly, given the complexity of this case, the qualifications and experience of the Individual Defendants' attorneys, and the very successful result they obtained, <u>see</u> <u>Phigenix</u>, 2019 WL 2579260, at *11.

With all of the above-established rates in mind, the Court next turns to the number of hours defendants claim as a basis for their fee request.

## 2. Number of Hours

"Reasonable hours are those hours that 'would have been undertaken by a

---

[10] Although the Individual Defendants do not provide the year in which Ta received her J.D., records from the State Bar of California show she was admitted in 2004.

United States District Court
Northern District of California

reasonable and prudent lawyer to advance or protect his client's interest in the pursuit of a successful recovery.'"  See Washington, 2021 WL 6134375, at *5 (quoting Armstrong v. Davis, 318 F.3d 965, 971 (9th Cir. 2003)).  Where, as here, "the plaintiff presents different claims for relief that 'involve a common core of facts' or are based on 'related legal theories,'" the Ninth Circuit has held that "the district court should not attempt to divide the request for attorney's fees on a claim-by-claim basis."  See McCown v. City of Fontana, 565 F.3d 1097, 1103 (9th Cir. 2009).  Rather, the "court must . . . 'focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'"  See id.  Hours spent "that are 'excessive, redundant, or otherwise unnecessary,'" however, are not recoverable.  See Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC, 2017 WL 8236267, at *10 (C.D. Cal. Dec. 5, 2017), aff'd, 925 F.3d 1140 (9th Cir. 2019) (quoting Welch v. Metro. Life Ins. Co., 480 F.3d 942, 946 (9th Cir. 2007)).

The Court considers below the number of hours claimed by, respectively, the F5 Entities and the Individual Defendants.

### a.  F5 Entities

The F5 Entities seek an award of fees in the total amount of $837,602.15, comprising $151,416.58 in fees "incurred directly in response to the claim for direct copyright infringement" (see F5 Entities' Mot. at 17:11-12), $131,891.10 in fees incurred in response to the above-discussed four related claims (see id. at 15:1-2, 18:10), and $554,294.47 in fees incurred for "work on tasks that needed to be performed unrelated to a specific case theory or claim for relief" (see id. at 17:11-12), to which they refer as "general defense work" (see Jacobs Decl. ¶ 32).  These amounts correspond to 174 hours, 166 hours, and 657 hours of work, respectively, for a total of 997 hours.  (See Jacobs Decl. ¶¶ 32-53.)[11]

---

[11] The above-listed hours do not include time spent "briefing the motion to dismiss the original complaint," for which work the "firm charged a capped fee of $375,000," and for which the F5 Entities seek $104,166, i.e., 5/18 of the charged sum, as part of their fee request.  (See Jacobs Decl. ¶ 31 (explaining initial complaint asserted eighteen claims

United States District Court
Northern District of California

1    As discussed earlier herein, the Court has found the F5 Entities are entitled to fees

2    for defending against the copyright claim as well as the four related claims.  As to fees

3    sought for "general defense work," the F5 Entities, arguing they "had no choice other than

4    to cooperate in the conduct of the litigation until the copyright claim was dismissed

5    without leave to amend" (see F5 Entities' Mot. at 17:21-22), assert those fees, namely,

6    "[f]ees incurred in addressing Lynwood-initiated discovery disputes, for the court-ordered

7    mediation, and for case management," are "properly awarded as part of the direct costs

8    of defending Lynwood's copyright infringement claims" (see id. at 17:14-16).

9    Contrary to Lynwood's argument that the F5 Entities "cite[] no authority to support

10   the creation of a catch-all category to collect fees" for such general defense work (see

11   Pl.'s Suppl. Opp'n to F5 Entities at 2:10-11), the F5 Entities cite cases demonstrating the

12   Court may, in its discretion, award fees for such work (see F5 Entities' Mot. at 17:17

13   (citing Shame On You, 893 F.3d at 670 (affirming fee award under § 505 for "hours . . .

14   expended in connection with . . . motions to compel discovery and . . . on preparation of

15   supplemental responses and production of documents")); id. at 17:19 (citing Washington,

16   2021 WL 6134375, at *6 (awarding fees under § 505  for "hours spent negotiating

17   settlement")); see also F5 Entities' Reply in Supp. of Their Mot. for Attorney's Fees ("F5

18   Entities' Reply") at 12:23 n.6 (citing GraceHouse Grp., LLC v. Moraleja, 2019 WL

19   2998578, at *4 (C.D. Cal. May 6, 2019) (awarding fees for "review of document requests";

20   noting "reviewing written discovery . . . is a routine part of providing a vigorous

21   defense"))).[12]

22

23   _____

     against F5 Entities, five of which were dismissed on F5 Entities' motion).)

24   [12] The cases Lynwood cites, namely, Stern and Cupid Wines, Inc. v. Davies, 2008
     WL 11400764, (C.D. Cal. May 20, 2008), are readily distinguishable on their facts.  (See
25   Pl.'s Suppl. Opp'n to F5 Entities at 2:20-22 (citing Stern, 2011 WL 13124449, at *5, aff'd,
     512 F. App'x 701 (9th Cir. 2013) (excluding hours billed for work on certain dismissed
26   claims where fees sought were for work on copyright claim and not on those dismissed
     claims)); id. at 2:22-25 (citing Cupid Wines, 2008 WL 11400764, at *1-2 (excluding "fees
27   and costs related to general litigation efforts" where they "were likely to involve
     consideration of [a] claim" court had already determined "c[ould not] be compensated")).)

28

1    In this instance, the Court finds it appropriate to award the F5 Entities fees

2    incurred for work identified as general defense work, and next considers the

3    reasonableness of the hours claimed for such work.

4    Of the $554,294.57 the F5 Entities seek for general defense work, $403,599.60 is

5    attributable to 489.9 hours performed from July 2020 through October 2020.  (See

6    Jacobs Decl. ¶¶ 32-35.)  During that time, any general defense work would have been in

7    furtherance of all eighteen causes of action that were asserted against the F5 Entities in

8    the initial complaint.  Of those eighteen claims, twelve were stayed on October 22, 2020,

9    and remained unadjudicated until Lynwood voluntarily dismissed them on September 9,

10   2022.  (See Stipulation of Dismissal of Remaining Claims, Dkt. No. 166.)[13]  As to those

11   unadjudicated claims, the parties agreed to bear their own fees and costs.  (See id.)

12   Lynwood, in challenging the reasonableness of the hours claimed for general

13   defense work, argues said work necessarily included work performed on the twelve

14   unadjudicated claims as to which the parties stipulated no fees would be sought.  In

15   response, the F5 Entities argue, "to the extent general defense work may have

16   overlapped with unadjudicated claims, the F5 Entities have already excluded such fees

17   from the total they seek" (see F5 Entities' Suppl. Reply at 6:18-20 (citing Jacobs Decl.

18   ¶ 5)), in that they "are not seeking any fees for work performed by the partner and

19   associates who led the response to Lynwood's trademark-related claims" (see id. at 6:16-

20   18; see also Jacobs Decl. ¶ 5) and "[t]he remaining [unadjudicated] claims were based on

21   the same legal theories and facts as the adjudicated claims" (see F5 Entities' Suppl.

22   Reply at 6:20-21).[14]

23

24   [13] The six claims asserted against the F5 Entities that were not stayed were the
     copyright claim, as initially pled, the four related claims, as initially pled, and a First Claim

25   for Relief, titled "Civil Conspiracy Among the Team, Robertson, Runa Capital, E.
     Ventures, NGINX BVI, NGINX DE, NGINX Software, Inc., and BV NGINX" (see Compl. at

26   86:5-7, Dkt. No. 1), which claim was dismissed on March 25, 2021, by Judge Koh, and
     which claim Lynwood did not re-assert in the AC filed April 29, 2021.

27   [14] Of the unadjudicated claims, seven were trademark claims.  The remaining

28   unadjudicated claims were the initial complaint's Twelfth Claim for Relief, titled "Tortious
     Interference with Contract Against F5," Sixteenth Claim for Relief, titled "Contributory

Under such circumstances, the Court finds the necessary deductions for the trademark claims have been made, and no further deductions based on the above-referenced stipulation need be taken, given that the remaining general defense work would have been performed irrespective of the status of the unadjudicated claims, all of which, as the F5 Entities note, were based, in essence, on the same facts and theories as the adjudicated claims.

Next, Lynwood challenges as "excessive" the number of hours claimed for work on a case that was resolved "at the pleading stage." (See Pl.'s Suppl. Opp'n to F5 Entities at 11:3, 11:10.)[15]  In response, the F5 Entities argue Lynwood's actions over the course of the litigation "forced [them] to incur significant attorney's fees and costs," totaling over $1.44 million, substantially more than the amount of fees they seek. (See F5 Entities' Mot. at 16:16-18.)

In particular, they point to Lynwood's filing of an initial complaint "contain[ing] 140 pages, 873 paragraphs, and 26 claims for relief against 12 defendants" (see id. at 4:18), which Judge Koh characterized as "unmanageably large" (see Dkt. No. 107), and which Lynwood subsequently amended to a "167-page complaint that was so prolix and confusing it required charts and addenda to decipher" (see F5 Entities' Mot. at 2:8-9).

In addition, the F5 Entities point out, Lynwood, even after Judge Koh found the case "unmanageably large," would not agree to a stay of discovery pending resolution of the defendants' motions to dismiss, and instead "sought to pursue over 1,200 document requests," which, as described by the F5 Entities, were "grossly disproportionate and improper," in that they included "requests for F5's future product lines, tax and other

---

Copyright Infringement Against All Defendants," Seventeenth Claim for Relief, titled "Vicarious Copyright Infringement Against All Defendants," Twenty-Fourth Claim for Relief, titled "False Advertising . . . as to All Defendants," and Twenty-Sixth Claim for Relief, titled "Unjust Enrichment as to all Defendants," and are based in essence on the same facts as the copyright claim and four related claims discussed above. (See Compl.)

[15] This challenge is to the claimed hours as a whole rather than to any particular subset thereof.

United States District Court
Northern District of California

1   financial records, the identities of all F5's customers and all communications with those

2   customers, all iterations of NGINX source code, and even information regarding

3   Rambler." (See id. at 5:15-21); see also Mattel, Inc. v. MGA Ent., Inc., at *8 (C.D. Cal.

4   Aug. 4, 2011), aff'd, 705 F.3d 1108 (9th Cir. 2013) (finding "[i]t [was] equitable to

5   reimburse [the defendant]" where, inter alia, "[the plaintiff] did not limit its discovery

6   requests").

7        In light of the above, and having reviewed all of the F5 Entities' contemporaneous

8   time records as well as the case record as a whole, the Court finds, with one exception

9   resulting in a $32,978.82 deduction,[16] the hours claimed were reasonably expended.

10       Accordingly, the Court finds the F5 Entities are entitled to $804,623.33 in

11  attorneys' fees.

12                              **b. Individual Defendants**

13       The Individual Defendants seek $769,299.10 in fees, comprising $263,300.35

14  incurred in connection with the direct copyright infringement claim, and $505,998.75

15  incurred in connection with the six related claims discussed earlier herein. (See Indiv.

16  Defs.' Mot. at 2:18, 2:27, 3:1.) These amounts correspond to 267.7 and 1,358.8 hours of

17  work, respectively, for a total of 1,626.5 hours (see Baber Decl. ¶¶ 24-90), which hours

18  include "fees incurred for . . . case management tasks that were necessary to both the

19  copyright claims and the related claims" (see Indiv. Defs.' Mot. at 2:28-3:1), i.e., fees

20  characterized by the Individual Defendants as "fees for case management related tasks"

21  (see Indiv. Defs.' Suppl. Reply at 6:7).

22       In challenging the amounts claimed, Lynwood first argues the Individual

23  Defendants are "reneging on their stipulation" by seeking fees on the initial complaint's

24

25       [16] The F5 Entities did not provide contemporaneous time records for the month of
26  April 2021. The Court has considered only those hours that have been substantiated by
    such records, and, consequently, will reduce the total fee award by $32,978.82, the
27  amount of fees sought for work performed in April 2021. See Hensley v. Eckerhart, 461
    U.S. 424, 433 (1983) (holding "[w]here the documentation of hours is inadequate, the
28  district court may reduce the award accordingly").

United States District Court
Northern District of California

Sixteenth and Seventeenth Claims for Relief, i.e., the unadjudicated claims for contributory copyright infringement and vicarious copyright infringement, respectively, as to which the parties agreed to bear their own fees and costs.  (See Pl.'s Opp'n at 3:17.)  In support thereof, Lynwood, citing paragraphs in a declaration wherein defense counsel refers to "copyright claims" rather than "copyright claim," argues the "Individual Defendants readily admit that they are seeking fees for all the copyright claims."  (See id. at 3:9 (citing Baber Decl. ¶¶ 22, 30, 38).)  In response, the Individual Defendants state they "are not 'reneging on their stipulation'" and "[i]nstead, . . . properly seek . . . fees incurred in connection with . . . Count 14 for direct infringement, and the [r]elated [c]laims" (see Indiv. Defs.' Reply at 6:5-8), and Lynwood points to nothing in the contemporaneous time records indicating to the contrary.

Lynwood's next argument fares no better.  In particular, Lynwood, again citing Stern and Cupid Wines, argues case management fees are not recoverable.  (See Pl.'s Suppl. Opp'n to Indiv. Defs. at 5:1-6.)  As set forth above, however, those cases are readily distinguishable.  See supra Section C.2.a.

In sum, the Court finds the Individual Defendants are not precluded from claiming the above-referenced fees.  Nevertheless, the Court's review of the contemporaneous time records submitted on their behalf reveals various deficiencies warranting reductions in the amounts claimed.

### i.   Block Billing

"Block billing is a method of time keeping by which lawyers and legal assistants enter the total time spent working on a group of tasks rather than itemizing how much time was spent on each specific task."  See Randles Films, LLC v. Quantum Releasing, LLC, 2012 WL 12884046, at *3 (C.D. Cal. Mar. 30, 2012), aff'd, 551 F. App'x 370 (9th Cir. 2014).  As the Ninth Circuit has observed, "block billing makes it more difficult to determine how much time was spent on particular activities."  See Welch, 480 F.3d at 948 (noting "fee applicant bears the burden of documenting the appropriate hours expended in the litigation").  In light thereof, "the district court may properly impose a

21

United States District Court
Northern District of California

1    reduction for block billing."  See id.; see also Lahiri v. Universal Music & Video

2    Distribution Corp., 606 F.3d 1216, 1222 (9th Cir. 2010) (finding no abuse of discretion by

3    district court that "reduced 80% of . . . billable hours by 30%" after "review[ing] samples

4    from the fee application and calculat[ing] an 80% block billing rate").

5          Here, Lynwood has identified 182.9 hours of block-billed time in the

6    contemporaneous time records submitted by the Individual Defendants, corresponding to

7    $141,054.50 in fees.  (See Decl. of Alexander D. Pencu in Supp. of Pl.'s Suppl. Opp'n to

8    Indiv. Defs.' Mot. for Attorneys' Fees ("Pencu Suppl. Decl."), Ex. B (Dkt. No. 196).)

9    Lynwood seeks a complete rejection, or, at a minimum, a 40% reduction, of these entries,

10   to account for the "improper block-billing."  (See Pl.'s Suppl. Opp'n to Indiv. Defs. at 9:20-

11   24.)  In response, the Individual Defendants argue their block-billed entries "contain

12   adequate descriptions about [the] timekeeper's activities" and thus "are sufficient to

13   evaluate whether the total block-billed hours were reasonable as a whole."  (See Indiv.

14   Defs.' Suppl. Reply at 10:7-10.)

15         Although courts, in some instances, have found "sufficiently detailed" block-billed

16   entries to be "adequate," see, e.g., Phigenix, 2019 WL 2579260, at *18, here, the tasks

17   that are block billed are of such disparate nature that the Court is unable "to determine

18   whether the time requested for any one task was reasonable," see Banas v. Volcano

19   Corp., 47 F. Supp. 3d 957, 967 (N.D. Cal. 2014).  For example, on July 28, 2020,

20   Dawson recorded an entry for 9.2 hours with the following description:

21         Discuss motion to dismiss research with SE.; attend conference call with
       SE. Brunt bet Al.; review follow-up email; review current version of docket;
22       research issues relating to service, including review of prior filings; draft
       talking points relating to service; research issues relating to introduction of
23       foreign law and related email; review draft joint defense agreement; edit
       chart of claims and defenses; discuss the same with SE.; research issues
24       relating to tortious interference with prospective economic advantage;
       research issues relating to standing.
25

26   (See Decl. of Matthew H. Dawson in Supp. of Indiv. Defs.' Admin. Mot to File Under Seal

27   ("Dawson Decl."), Ex. A at 11 (Dkt. No. 186-1).)  Without knowing how much time was

28   spent on each discrete task, e.g., reviewing a follow-up email as opposed to researching

United States District Court
Northern District of California

1  a substantive legal issue, and indeed, without knowing the subject of the follow up, the

2  Court is unable to determine if the time spent on any task, much less the total amount of

3  time spent on all tasks, was reasonable.

4  Having reviewed the 182.9 hours of block-billed entries identified by Lynwood, the

5  Court concludes that 168.3 hours, corresponding to $129,309.50 in fees, are block billed

6  in the manner described above.[17]  In light thereof, the Court exercises its discretion to

7  reduce by 20% those 168.3 hours of block-billed time identified by Lynwood.  See Welch,

8  480 F.3d at 948 (approving 20% reduction for block billing where district court relied on

9  California State Bar Committee report, "which concluded that block billing 'may increase

10  [claimed] time by 10% to 30%'").

11  Accordingly, the Court will reduce the total fee award by $25,861.90.

12  **ii.   Redactions**

13  "Heavy redactions render it impossible for the Court to discern how much time was

14  expended on specific tasks."  See Randles Films, 2012 WL 12884046, at *4.  In light

15  thereof, courts have declined to award fees for "heavily redacted time sheet entries."  See

16  id. (noting "[d]efendants must . . . have a meaningful opportunity to dispute the

17  reasonableness of time spent on each task").

18  Here, Lynwood has identified 85.5 hours, corresponding to $73,228.24 in fees,

19  associated with time entries containing heavily redacted descriptions of work.  (See

20  Pencu Suppl. Decl. Ex. C.)  For example, on September 9, 2020, Baber recorded an

21  entry for 2 hours with the description, "Emails with REDACTED regarding REDACTED;

22  follow up emails from REDACTED; further revisions to REDACTED regarding

23  REDACTED."  (See Dawson Decl. Ex. B at 7.)

24  Having reviewed the redacted entries identified by Lynwood, the Court concludes

25

26

27  [17] The remaining 14.6 hours, corresponding to $11,745 in fees, are attributable to entries the Court finds adequate albeit block-billed.  See Phigenix, 2019 WL 2579260, at *18.

28

those entries are heavily redacted in the manner exemplified above.[18]

Although the Individual Defendants argue "items were redacted to preserve the identities of potential witnesses, legal issues that have not been disclosed in briefing, and other privileged matters" (see Indiv. Defs.' Suppl. Reply at 11:10-12), the Individual Defendants were "not without options" in terms of preserving the confidentiality of such matters while providing meaningful submissions for the Court's review, see Randles Films, 2012 WL 12884046, at *4 (noting party "could have lightly redacted the time sheet entries so that the Court could have had at least a general idea of what work was being performed" or "submitted a declaration explaining in new words the work that was done during th[o]se entries").

Nonetheless, as the Individual Defendants contend, "Lynwood itself created the need for the privilege redactions." (See Indiv. Defs.' Suppl. Reply at 11:18.) Specifically, the Individual Defendants state they "offered to submit unredacted entries if Lynwood would agree that no waiver of the attorney-client privilege would result," and Lynwood declined. (See id. at 11:19-21.) Lynwood does not dispute this version of events.

Given the above circumstances, the Court finds both parties bear some responsibility for the redacted entries identified by Lynwood, and, in light thereof, finds it appropriate to reduce those hours by 50%.

Accordingly, the Court will further reduce the total fee award by $36,614.12.

### iii.   Vague Time Entries

"Work entries are inadequately vague when the district court is unable to discern how the time spent is attributable to the case at hand." See Santiago v. Equable Ascent Fin., 2013 WL 3498079, at *5 (N.D. Cal. July 12, 2013). Courts in this District have found entries inadequate as vague where those entries "only consisted of 'conferences,' 'telephone calls,' or 'review of documents' without describing the subject of the call or correspondence." See, e.g., id.; see also Gilead Scis., Inc. v. Merck & Co., 2017 WL

---

[18] Lynwood has not suggested a percentage reduction for the redacted entries.

1   3007071, at *8 (N.D. Cal. July 14, 2017) (finding "[d]escriptions such as 'work on case

2   coordination,' 'work on case strategy issue,' 'work on case facts,' and 'work on case

3   arguments'" inadequate as vague).

4       Here, Lynwood has identified 74.4 hours, corresponding to $66,790.89 in fees,

5   associated with time entries containing vague descriptions of work.  (See Pencu Suppl.

6   Decl. Ex. D.)  For example, on December 23, 2020, Fugate recorded an entry for 4 hours

7   of work described as "[a]nalyze case issues, strategy."  (See Dawson Decl. Ex. F at 6.)

8       Lynwood seeks a complete rejection of all such hours.  (See Pl.'s Suppl. Opp'n to

9   Indiv. Defs. at 11:6-7.)  Having reviewed the entries identified by Lynwood as "vague," the

10  Court concludes that approximately 70% of the entries so identified contain impermissibly

11  vague descriptions.  In light thereof, the Court exercises its discretion to reduce by 70%

12  the 74.4 hours identified by Lynwood.  See Gilead, 2017 WL 3007071, at *8 (finding

13  where "40 percent of the hours identified . . . [were] vague," a "40% reduction [was]

14  justified for vague entries").

15      Accordingly, the Court will further reduce the total fee award by $46,753.62.

16                    **iv.  Duplicate and Excessive Entries**

17      "The Ninth Circuit has approved reducing fees for unnecessary internal

18  communications."  See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod.

19  Liab. Litig., No. 7640, 2020 WL 5371404, at *10 (N.D. Cal. Sept. 8, 2020) (citing Welch,

20  480 F.3d at 949).

21      Here, Lynwood contends the contemporaneous time records submitted by the

22  Individual Defendants include "over 145 hours for vaguely described conference calls"

23  and seeks a reduction of at least 50% of these hours.  (See Pl.'s Suppl. Opp'n to Indiv.

24  Defs. at 11:16-17, 12:16-17.)  In contrast to its earlier-described challenges, Lynwood

25  does not identify all of the entries corresponding to those 145 hours, but instead, points to

26  "all time entries entered by . . . Ta" (see Pencu Suppl. Decl. ¶ 9, Ex. E), amounting to

27  77.5 hours and corresponding to $43,683.35 in fees, which entries, Lynwood contends,

28  are "demonstrative of the type of excessive and duplicative time King & Spalding

1   attorneys billed for conference calls" (<u>see</u> Pl.'s Suppl. Opp'n to Indiv. Defs. at 11:26-27).

2   Specifically, by Lynwood's calculation, "64% of [Ta's] entered time . . . was spent on

3   conferences."  (<u>See</u> <u>id.</u> at 12:11-12.)  In response, the Individual Defendants do not

4   dispute Lynwood's calculation, but explain "[t]he size and complexity of the dispute

5   required a large team to coordinate on numerous issues . . . in both the United States

6   and Russia . . . in the midst of a pandemic that precluded office meetings."  (<u>See</u> Indiv.

7   Defs.' Suppl. Reply at 13:7-11.)  Given such circumstances, the Court finds the amount of

8   conferencing identified was not, as a categorical matter, unreasonable.

9        Nonetheless, many of Ta's entries for conferencing are vague, in that they do not

10  identify the topics of discussion.  For example, on August 12, 2020, Ta recorded an entry

11  for 4 hours of work described as "[a]ttend and participate in weekly joint defense call."

12  (<u>See</u> Dawson Decl. Ex. B at 11.)  In addition, in three instances, Ta entered duplicate

13  entries, amounting to 4.1 hours.  (<u>See</u> Dawson Decl. Ex A at 10, Ex. B at 18.)

14       Having reviewed the entries identified by Lynwood as demonstrative of excessive

15  time billed for conference calls, the Court concludes that approximately 60% of the

16  entries so identified are vague.  In light thereof, the Court exercises its discretion to

17  reduce by 60% the 145 hours Lynwood contends were billed "for vaguely described

18  conference calls."  (<u>See</u> Pl.'s Suppl. Opp'n to Indiv. Defs. at 11:17.)[19]

19       Accordingly, the Court will further reduce the total fee award by $76,777.50,

20  resulting in a final award in the amount of $583,291.96.

21                              **CONCLUSION**

22       For the reasons set forth above, defendants' motions are, respectively, hereby

23  GRANTED in part and DENIED in part, as follows:

24

25       [19] Lynwood does not provide the amount of fees to which these 145 hours
26  correspond, and, as set forth earlier herein, the Individual Defendants seek fees at hourly
     rates that range between $775 and $990.  For purposes of calculating the reduction in
27  the amount of fees, the Court multiplies the 145 hours by $882.50, the average of the
     sought rates.  <u>See</u> <u>Mattel</u>, 2011 WL 3420603, at *9 (noting "[t]he Supreme Court has
28  recognized that 'rough justice' is sufficient in the context of fee awards").

United States District Court
Northern District of California

1.  The F5 Entities are awarded fees in the amount of $804,623.33.

2.  The Individual Defendants are awarded fees in the amount of $583,291.96.

3.  In all other respects, the motion is denied.

**IT IS SO ORDERED.**

Dated: April 11, 2023

MAXINE M. CHESNEY
United States District Judge