# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

LYNWOOD INVESTMENTS CY LIMITED,

      Plaintiff,

  vs.

MAXIM KONOVALOV, IGOR SYSOEV,
ANDREY ALEXEEV, MAXIM DOUNIN,
GLEB SMIRNOFF, ANGUS ROBERTSON,
NGINX, INC. (BVI), NGINX SOFTWARE,
INC., NGINX, INC. (DE), BV NGINX, LLC,
RUNA CAPITAL, INC., EVENTURE
CAPITAL PARTNERS II LLC and F5
NETWORKS, INC.,

      Defendants.

Case No. 3:20-cv-03778-MMC

**JOINT CASE MANAGEMENT
STATEMENT AND
RULE 26(f) REPORT**

Hon: Maxine M. Chesney
CMC Date: March 7, 2025
Time: 10:30 AM in San Francisco
Zoom Videoconference Only

Complaint Filed: June 8, 2020
Trial Date: None Set

Plaintiff HF Investments CY Limited f/k/a Lynwood Investments CY Limited ("Plaintiff" or "Lynwood"); Defendants F5 Networks, Inc. ("F5"), NGINX Software Inc. ("NGINX Software, Inc."), and NGINX, Inc. (BVI) ("NGINX BVI" and, together with F5 and NGINX Software, the "F5 Defendants"); and Defendants Maxim Konovalov ("Konovalov"), Igor Sysoev ("Sysoev"), Maxim Dounin ("Dounin"), Andrey Alexeev ("Alexeev"), Gleb Smirnoff ("Smirnoff"), Angus Robertson ("Robertson" and, together with Konovalov, Sysoev, Dounin, Alexeev and Smirnoff, the "Individual Defendants") (collectively, with the F5 Defendants, the "Defendants"), through their respective counsel, hereby jointly submit this Joint Case Management Statement and Rule 26(f) Report (the "Rule 26(f) Report").

## THE REMAINING PARTIES

As a result of the stipulation of the parties dated September 9, 2022 (ECF No. 166) and the Ninth Circuit's decision dated November 6, 2024 (ECF No. 205), all claims asserted by Plaintiff in the Amended Complaint (ECF No. 141) against Runa Capital, Inc., Eventure Capital Partners II LLC and BV NGINX, LLC have been dismissed with prejudice, and those entities are

therefore no longer parties to this action. The remaining defendants are the defendants against which or whom Plaintiff has asserted the Fourteenth Claim For Relief for alleged direct copyright infringement ("Count 14") pleaded in the Amended Complaint, namely the three F5 Defendants and the six Individual Defendants. (ECF No. 141 at 128-136).[1]

**Plaintiff's Introductory Statement**

The remaining claim in this case after an appeal is against Defendants for copyright infringement based upon proprietary NGINX Plus software code that was developed while the Individual Defendants were working for Rambler in Russia. NGINX Plus is a web server, load balancer, and content cache utilized by millions of websites and apps around the world. Rambler assigned all its rights in the NGINX Plus software, including its claims against Defendants, to Lynwood.

In this case, Lynwood alleges that the Individual Defendants misappropriated and infringed the NGINX Plus software and other components of the business they were secretly incubating while employed by Rambler (the "NGINX Enterprise"), and ultimately sold the NGINX Enterprise, including NGINX Plus, to F5 for roughly $670 million, to the exclusion of Rambler. Lynwood is the exclusive owner of a valid copyright in NGINX Plus under Russian and U.S. law, and Defendants continue to willfully infringe on that copyright to this day.

Now that the Ninth Circuit has sustained Lynwood's copyright infringement claim, Lynwood proposes to amend its Amended Complaint to reflect the resulting altered scope of this action. As discussed further below, Lynwood also proposes to amend the discovery requests it previously served on the Defendants to tailor the requests to the remaining claim.

For the reasons stated below, Plaintiff opposes Defendants' proposal to bifurcate

---

[1]    Defendant NGINX, Inc. (DE) has not appeared in this action. On August 14, 2020, the clerk entered default against NGINX, Inc. (DE) for failure to appear (ECF No. 71). Defendants have informed Plaintiff that NGINX, Inc. (DE) never operated, and that it is premature for Plaintiff to seek to obtain a default judgment against NGINX, Inc. (DE), given that Plaintiff has made claims of joint and several liability against NGINX, Inc. (DE) and other Defendants, and that Defendants plan to oppose any such motion that is filed before the lawsuit is resolved as to all remaining Defendants. Plaintiff reserves its right to seek judgment against NGINX, Inc. (DE), including based on the default entered by the Clerk.

discovery. Plaintiff filed this case nearly five years ago, and in all that time has not been permitted to conduct discovery. Plaintiff's copyright infringement claim has been sustained by the Ninth Circuit, and Plaintiff is entitled to take the discovery needed to prove its claim. Plaintiff should be allowed to amend the Complaint, as Defendants suggest, and the Court should lift in its entirety the stay of discovery that has been in place for the past several years so that Plaintiff can serve its revised discovery requests. Defendants should also answer the Second Amended Complaint once it is filed. At that point, if Defendants still wish to pursue bifurcation of discovery, they should be required to submit a motion seeking such relief that Plaintiff has an opportunity to oppose, rather than prematurely addressing the issue without appropriate briefing during the Case Management Conference.

Defendants' discovery-bifurcation proposal would have the initial phase of discovery consisting of F5's disclosure of the source code form of NGINX Plus. Plaintiff opposes bifurcation – as Defendants well know, the source code form of NGINX Plus alone is not sufficient to show whether NGINX Plus, or any portion thereof, or any code from which NGINX Plus is derived, was developed while any of the Defendants were still employed by Rambler.

Plaintiff's examination of the NGINX Plus code is necessary but not sufficient. Plaintiff needs other important discovery from Defendants and third parties, including, but not limited to (i) developer and coder notes and work papers related to NGINX Plus and/or predecessor code; (ii) emails, instant messages and other relevant communications about development efforts; (iii) software release notes for NGINX Plus; (iv) technical and user documentation for NGINX Plus; (v) and software version control databases; (vi) documents showing the due diligence provided to F5 in connection with the Merger; and (vii) communications with certain third-party, early customers of NGINX Plus, the whistleblower Korotkov, and others. As another example, Plaintiff should also have the opportunity to obtain from the Individual Defendants all devices and materials they used to develop NGINX Plus, including the servers and electronically stored information that they surreptitiously removed from Rambler and the "home computer" and "laptop" on which Sysoev claims to have developed NGINX, and to obtain deposition testimony

from the Defendants and third-parties, including from Netflix, one of Defendants' first paying customer in 2011, regarding the foregoing.

Bifurcated discovery in this case is unnecessary, unworkable, and severely prejudicial to Plaintiff. Software development does not incur in a vacuum. Inspection alone—or even as a first step—will not answer the broader question of how the code was developed, by whom, and when, what resources were used, or if efforts were made to conceal the true source of the development. Given the complex nature of software development, Defendants' proposal will only lead to motion practice directed to elucidating whether discovery is within scope, an outcome that benefits neither party and only burdens the Court. Forcing Plaintiff to accept extremely narrow document discovery—as hand-selected by Defendants—as a precondition to full discovery is highly prejudicial. The Rules expressly provide that discovery need not be taken in a specific order, and that Plaintiffs may take depositions at any time. Lynwood is entitled to start deposing fact witnesses, and it is not required to wait or accept Defendants' preferred timeline. Plaintiff will be prejudiced by Defendants' attempt to block such disclosures in favor of Defendants moving for summary judgment based on an incomplete record. Fed. R. Civ. P. 42(b) does not permit bifurcated discovery on these facts. Instead, the factors considered in a bifurcation request weigh heavily against bifurcation. If the Court is to consider Defendants' bifurcation request, it should order briefing rather than decide the issue at the case management conference.

### Defendants' Introductory Statement

Lynwood's suit is an attempted shakedown that should once and for all be put to rest. The Ninth Circuit affirmed this Court's dismissal of eight of the nine claims that were the subject of Lynwood's appeal, and remanded only the portion of Count 14, for direct copyright infringement, that purports to be based on "NGINX Plus 'developed' at Rambler"—*i.e.*, code for NGINX Plus that was allegedly written by a Rambler employee while employed at Rambler. *Lynwood Investments CY Limited v. Konovalov*, 2024 WL 4688895, at *6, Slip Op. at 13, 15 (9th Cir. Nov. 6, 2024) ("We construe the allegation that Sysoev 'developed' the NGINX Plus software as an allegation that the software was fixed in a tangible medium."). The Ninth Circuit affirmed the

dismissal of Count 14 to the extent it was based on either Open Source NGINX or "NGINX Plus 'conceived' at Rambler." *Id.*, Slip Op. at 13-14. The only remaining claim that Lynwood may assert must therefore be based on code for NGINX Plus—if any—that was written, *i.e.,* fixed in a tangible medium, by a Rambler employee "before the end of 2011," when defendant Igor Sysoev left the employ of Rambler. *Id.*, Slip Op. at 13.

There is no factual basis for Plaintiff's remaining partial copyright claim. Any further proceedings, including discovery, should therefore focus first on the threshold issue identified by the Ninth Circuit, namely "to determine the portions of the NIGINX Plus code finalized before Sysoev left Rambler" in 2011. *Id.*, Slip Op. at 16.

Defendants have reviewed the code for NGINX Plus and its development history. No NGINX Plus code was written by any Rambler employee while employed by Rambler—and there are therefore no "works" on which Lynwood's remaining copyright claim could be based. All of the modules that comprise NGINX Plus were written by engineers not employed by Rambler at the time they wrote the code. Discovery should therefore be phased, to focus initially on the issue of whether any NGINX Plus code was in fact written by any Rambler employee while employed by Rambler. This initial focus of discovery as a threshold gating matter is especially important because Lynwood has never identified ***any*** portion of NGINX Plus—any modules, any routines, any individual files, or any specific lines of code in NGINX Plus—that Lynwood has alleged or believes was created by a Rambler employee while employed by Rambler.

Plaintiff, however, opposes phased discovery. Plaintiff, which propounded 1,230 document requests to Defendants before discovery was stayed (ECF No. 103), instead proposes that discovery should proceed unrestricted as framed by a further revised Second Amended Complaint that Plaintiff has yet to file. Plaintiff's estimate that it will need *30* fact depositions and up to *three weeks* to try this fractional copyright claim further indicates that Plaintiff is unlikely to conduct discovery with any proportionality unless a phased discovery approach is adopted. Plaintiff's strategy bespeaks of its objective: to burden Defendants with an expensive,

lengthy lawsuit and disproportionate discovery in order to be able to extort from them an undeserved payment.

Defendants therefore propose a measured approach, consistent with the Ninth Circuit's opinion, that does not prejudice Plaintiff or increase the burdens on this Court, namely that the stay of discovery be lifted *in part*, with discovery going forward initially only as to the creation, including the "commit dates," of the code for NGINX Plus—as Plaintiff has argued in the past. *Lynwood Investments*, 2024 WL 4688895, at *6, Slip Op. at 16 ("specifically, Plaintiff alleges that commit dates can be used to determine the portions of the NGINX Plus code finalized before Sysoev left Rambler."). During this initial phase of discovery, Defendants will make available for inspection by Plaintiff's counsel under a protective order the NGINX Plus code repository and contemporaneous development documents showing creation of the NGINX Plus code. And Defendants will expect Lynwood to produce and provide discovery during this phase of any evidence that it believes supports Lynwood's allegations that NGINX Plus code was written by Rambler employees while they were employed by Rambler.

Following this phase of discovery, Defendants expect to move for summary judgment, if the case is not dismissed voluntarily. Discovery as to any other issues such as damages, F5's due diligence, Lynwood's allegations of willfulness, whether there was a "plain and express repudiation" of Rambler's alleged copyrights, the applicability of the statute of limitations, and equitable defenses, could be handled efficiently (if necessary) once the existence—or non-existence—of NGINX Plus code supporting Lynwood's claim has been addressed.

## 1. JURISDICTION AND SERVICE

### A. Plaintiff's Position

#### 1. Subject Matter Jurisdiction

This action, and more specifically Count 14 of the Amended Complaint, arises under the Copyright Laws of the United States, 17 U.S.C. §§ 1, *et seq.*, as well as the Berne Convention for the Protection of Literary and Artistic Works (the "Berne Convention"). This Court has subject matter jurisdiction over Plaintiff's claim pursuant to 28 U.S.C. §§ 1331 and 1338.

**2. Personal Jurisdiction**

On March 30, 2021, the Court issued its Order Granting Motion to Dismiss With Leave to Amend (ECF No. 135), which held that the Court has personal jurisdiction over the "Foreign Individual Defendants, *i.e.*, Konovalov, Sysoev, Alexeev and Dounin. The other Defendants have never challenged the Court's personal jurisdiction over them. Accordingly, the Court has personal jurisdiction over each of the Defendants.

**3. Service of Process**

The Defendants have been served with process in this action, and they have participated in this litigation for years without challenging service.

**B. Defendants' Position**

**1. Subject Matter Jurisdiction and Service of Process**

Defendants agree that the Court has subject matter jurisdiction under the Copyright Act and that all represented, remaining defendants have been served and appeared in the litigation.

**2. Personal Jurisdiction**

Four of the Individual Defendants (Messrs. Konovalov, Sysoev, Alexeev and Dounin, collectively, the "Foreign Individual Defendants") maintain that they are not properly subject to the Court's jurisdiction for the reasons set forth in the Individual Defendants' motion to dismiss (ECF No. 106), the papers filed in support thereof, and further evidence to be developed as the case progresses.

**2. FACTS**

**A. Plaintiff's Position:**

The factual history of this dispute is extensive and Plaintiff respectfully directs the Court to its April 29, 2021 Amended Complaint (ECF No. 141) for a more fulsome statement of the facts, which are briefly summarized here. As discussed above, Plaintiff proposes to submit a Second Amended Complaint to reflect the focus on Count 14 of the Amended Complaint and Defendants' infringement of Lynwood's copyright rights in and to NGINX Plus and its derivatives.

**B.  Defendants' Position:**

As noted above, Lynwood's suit is an attempted shakedown that should once and for all be put to rest.  NGINX Plus was developed independently by software developers who were not employed by Rambler at the time they wrote the code for what eventually became NGINX Plus.  The primary threshold issue to be addressed after the Ninth Circuit's decision is whether any NGINX Plus code was written by Rambler employees while they were employed by Rambler.

Plaintiff's strategy is transparent; its unwillingness to focus on the narrow threshold gating issue of whether any code that became part of NGINX Plus was written during the author's employment by Rambler reveals its goal of continuing to attempt to extort an unwarranted monetary payment through overly burdensome discovery.  No amount of procedural posturing by Plaintiff can alter the reality that the code for NGINX Plus was written long after Mr. Sysoev and others had left Rambler or by engineers who were not (and had never been) employed by Rambler, when they were free to use open source NGINX code and their own efforts to develop new software applications that were built on Open Source NGINX.

Defendant F5 is accused of doing nothing more than acquiring software and related corporate entities for fair value in an arm's length transaction, and the Individual Defendants are accused of business activities that were entirely proper and did not infringe any copyright of Lynwood (or Rambler).

**3.  DISPUTED LEGAL ISSUES**

**Plaintiff's Position:**

The principal disputed legal issues are:

- Whether Rambler (and now Lynwood) owned a valid copyright in NGINX Plus pursuant to Russian law;

- Whether the Defendants directly infringed on Plaintiff's copyright(s) in and to NGINX Plus pursuant to the Berne Convention for the Protection of Literary and Artistic Works and the Copyright Act (17 U.S.C. § 101, *et seq*.) as alleged in Count 14 of the Amended Complaint;

- Whether the Defendants' infringement was willful; and
- The amount of damages and/or disgorged profits, if any, owed to Plaintiff by the Defendants resulting from their unlawful direct infringement of Plaintiff's exclusive copyright rights in and to NGINX Plus and/or its derivatives.

**Defendants' Position:**

As noted above, the key threshold and likely dispositive issue is whether any NGINX Plus code was written by Mr. Sysoev or other former Rambler employees before they left Rambler.

Following resolution of that issue, if the parties' dispute survives, Defendants believe that the remaining legal issues would include:

- Whether Rambler is a necessary party to this action;
- Whether any copyrights that Lynwood claims to own are valid;
- The scope of any valid copyrights owned by Lynwood;
- Whether Lynwood is a proper successor to Rambler's alleged copyrights;
- Whether Rambler (and now Lynwood) were on notice that Mr. Sysoev claimed ownership of any non-open source code related to NGINX that he might have written during his employment at Rambler;
- The bases for Lynwood's multi-year delay in filing its lawsuit;
- The applicability of the Copyright Act's statute of limitations to what remains of Lynwood's copyright claim;
- Whether any of the remaining Defendants committed any acts of direct copyright infringement;
- The scope of any liability by each Defendant for any such acts of infringement;
- Any equitable defenses asserted by Defendants;
- Whether the Foreign Individual Defendants are subject to the jurisdiction of the Court; and
- The proper measure of damages, if any, for any acts of direct infringement committed by any of the remaining Defendants.

1    **4.  MOTIONS**

2        There are no pending motions.

3        **Plaintiff's Position:**  Plaintiff reserves its right to move for summary judgment on one or

4    more issues, claims, or defenses in accordance with this Court's Standing Orders, the Northern

5    District Local Rules, and the Federal Rules.

6        Plaintiff also reserves its right to file discovery-related motions should good faith meet

7    and confer discussions to resolve discovery disputes prove unsuccessful.

8        **Defendants' Position:**  Defendants expect to move for summary judgment of

9    noninfringement because the NGINX Plus code was not written by Mr. Sysoev or others while at

10   Rambler.  In the event the case proceeds following resolution of that threshold issue, Defendants

11   reserve their rights to move for summary judgment on one or more additional issues, claims, or

12   defenses in accordance with this Court's Standing Orders, the Local Rules, and the Federal Rules,

13   and to file discovery-related motions should good faith meet-and-confer discussions to resolve

14   discovery disputes prove unsuccessful.

15   **5.  AMENDMENT OF PLEADINGS**

16       **Plaintiff's Position:**  Plaintiff proposes to amend its Amended Complaint in light of

17   reinstatement of Count 14 against the remaining Defendants pursuant to Count 14 of the Amended

18   Complaint.

19       Plaintiff reserves all of its rights to amend under the Federal Rules.  To the extent there

20   are any subsequent deadlines for further amending Plaintiff's proposed Second Amended

21   Complaint, it should be one year from the later of the so ordering of this Case Management

22   Statement or the issuance of an order lifting the stay of discovery.

23       **Defendants' Position:**  Defendants may move to dismiss Plaintiff's proposed Second

24   Amended Complaint if appropriate, or to strike any portions that seek to expand Plaintiff's

25   remaining claim beyond the scope set forth by the Ninth Circuit, *i.e.,* a claim for direct copyright

26   infringement based on NGINX Plus code that was fixed in a tangible medium of expression by a

27   Rambler employee.

Defendants also believe that, if Lynwood's remaining claim survives initial discovery, it may be necessary for Defendants to move to add Rambler as a necessary party. Defendants note that, despite requests by Defendants that Lynwood do so, Lynwood has refused to produce Lynwood's agreements with Rambler.

## 6.  **EVIDENCE PRESERVATION**

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), have met and conferred pursuant to Federal Rule 26(f), and represent that they have taken and will continue to take reasonable and proportionate steps to preserve evidence relating to the issues reasonably evident in this action, including electronic data and materials.

## 7.  **DISCLOSURES**

The parties exchanged Initial Disclosures on September 8, 2020.

## 8.  **DISCOVERY**

### A.  **Discovery Taken to Date**

No discovery has been taken to date. On September 11, 2020, Plaintiff served document requests to six of the Defendants. Discovery was stayed by the Court's November 3, 2020 Order (ECF No. 117).

**Plaintiff's Statement:**  Plaintiff anticipates taking discovery in accordance with the Federal Rules, the Local Rules, and the Court's Standing Orders once the Court lifts the stay of discovery.

Defendants complain about the volume of discovery previously served, ignoring that the original action was much broader than the current case. Plaintiff does not seek to have Defendants respond to the pre-appeal discovery. Lynwood will revise its discovery requests to reflect the altered scope of the case and focus on Count 14 of the Amended Complaint, which will be incorporated into Plaintiff's proposed Second Amended Complaint. The Court should immediately lift the long-standing stay of discovery to allow Plaintiff to serve its revised discovery requests and otherwise proceed with discovery.

**Defendants' Statement**: Defendants propose that the stay of discovery be lifted *in part*, with the parties directed to focus first on the creation, including the "commit dates," of the NGINX Plus code, for the purpose of determining whether any NGINX Plus code was written by Mr. Sysoev or other former Rambler employees during their employment by Rambler before the end of 2011. *Lynwood Investments*, 2024 WL 4688895, at *6, Slip Op. at 13, 15.

That initial phase of discovery should be a two-way street, during which Defendants will produce, subject to a protective order, the source code for NGINX Plus, together with contemporaneous NGINX Plus development documents beyond the source code that are also potentially relevant. During that initial phase, Defendants will expect Lynwood to disclose *any* evidence known to Lynwood that it believes supports its allegations that NGINX Plus code was written by Rambler employees during their employment at Rambler.

Defendants do not believe that unrestricted discovery regarding other issues, including F5's due diligence and acquisition of NGINX Plus, any alleged "scheme" regarding a claimed "NGINX Enterprise," actions taken in the U.S. Trademark Office, Defendants' equitable and other defenses, and damages, is warranted, at least until it is determined that there is a factual basis for Lynwood's remaining partial claim.

With respect to discovery more generally, Defendants note that significant documents and witnesses in this matter are located in Russia, which refused to cooperate with U.S. judicial requests even before the invasion of Ukraine. Plaintiff previously claimed to have secured Rambler's cooperation, but has refused to produce its agreements with Rambler. There is therefore significant uncertainty about whether Defendants will have access to all necessary relevant information and witnesses in discovery. Until Defendants are able to review the Lynwood agreements with Rambler and more fully assess this issue, they will be unable to provide a fully informed response on this subject.

B. **Anticipated Discovery**

**Plaintiff's Position**: Plaintiff will serve document requests, interrogatories, and requests for admissions in accordance with the Federal Rules, Local Rules and the Court's Standing Order.

In addition, Plaintiff expects to issue third-party subpoenas under Rule 45 and potentially obtain evidence overseas through the appropriate channels. Plaintiff will also take depositions of parties, party representatives, non-parties, and expert witnesses.

Plaintiff anticipates seeking discovery on the factual allegations relevant to Count 14 of the Amended Complaint, i.e., the infringement of Plaintiff's copyright rights in and to NGINX Plus and its derivatives, as Plaintiff proposes to incorporate into a Second Amended Complaint, and regarding Defendants' answer thereto and any affirmative defenses, including the following topics:

- Source code form of NGINX Plus and related products;

- Executable code form of NGINX Plus and related products;

- Technical and user documentation for NGINX Plus and related products;

- Developer notes and work papers related to NGINX Plus and related products;

- Emails and other electronically stored information and communications concerning the development of NGINX software code that comprises and/or incorporates code that came to be known, or is known, as NGINX Plus;

- Development and/or withholding of NGINX-related software code from 2009 through 2011 by Sysoev and his co-conspirators while employed by Rambler related to load balancing, automated program health checking, web server, content caching, and API gateways;

- Servers, computers, hard drives and other electronic devices removed from Rambler's headquarters, or otherwise destroyed, by Defendants Konovalov, Sysoev, and Smirnoff in connection with their efforts to commercialize the NGINX Enterprise, including NGINX Plus and/or its derivatives;

- Defendants' scheme to lift the NGINX Enterprise, including NGINX Plus, out of Rambler and pursue it themselves;

- Defendants' destruction of evidence of their scheme;

- Assistance received by the Defendants to carry out their scheme;

- The Defendants' efforts to conceal their wrongdoing from Rambler;
- The development of NGINX Plus and/or NGINX-related software that became or was incorporated in NGINX Plus, before and after Sysoev separated from Rambler;
- Konovalov, Sysoev, and Smirnoff's employment with Rambler;
- Disclosures and representations made by the Individual Defendants, NGINX Software, Inc., NGINX (BVI), and/or any affiliate or representative thereof to actual or potential customers, potential inventors, vendors, and employees concerning the ownership or development of the NGINX Enterprise, including NGINX Plus;
- Defendants' activities in the USPTO relating to the NGINX Enterprise, including NGINX Plus;
- The formation and capitalization of entities to pursue the NGINX Enterprise;
- The management, ownership, financial records and operations of NGINX BVI and/or NGINX Software, Inc. or any affiliate thereof before the 2019 merger with F5;
- Defendants' public and private statements about the NGINX Enterprise, including NGINX Plus, and its development;
- Defendants' attempts to protect and document their alleged ownership of intellectual property used to pursue the NGINX Enterprise, including the commercialization and monetization of NGINX Plus and related products;
- All sources of financing or prospective financing solicited by Individual Defendants to fund the NGINX Enterprise, including the development and monetization of NGINX Plus;
- The commercialization of NGINX Plus and its derivatives before and after Sysoev separated from Rambler;

- Due diligence performed by Defendants in connection with F5's acquisition of NGINX BVI in March 2019 as it concerns (1) ownership rights to the NGINX software, including NGINX Plus, and all derivative software products, including attendant intellectual property and trademarks, and (2) valuations, projections and appraisals of the NGINX software and all derivative software products, and any business entities formed to commercialize the NGINX software, including NGINX Plus, and all derivative software products;

- F5's acquisition of the NGINX Enterprise, including NGINX Plus;

- All NGINX Plus products and services offered by NGINX BVI both before and after the merger;

- Customers of NGINX BVI both before and after the merger;

- The Individual Defendants' communications concerning or participation in the investigation conducted by Russian law enforcement in 2019-2020;

- Revenue and profits earned by Defendants both before and after the merger;

- Damages under the Direct Copyright Infringement claim based on Defendants' willful infringement of Plaintiff's exclusive copyright rights in and to NGINX Plus and its derivatives;

- Documents sufficient to determine the revenue and/or profits that the Direct Copyright Infringement Defendants collected as a result of their past and ongoing willful infringement of Plaintiff's exclusive copyright rights in and to NGINX Plus and its derivatives; and

- Documents and other evidence from third parties indicating customers' purchase and/or use of custom NGINX software developed while any of the Individual Defendants were employees of Rambler that became or was incorporated into NGINX Plus, including, without limitation, Netflix.

**Defendants' Position:**  As Defendants' statement above reflects, Defendants propose that discovery be focused initially on whether any NGINX Plus code was written by Mr. Sysoev or

other former Rambler employees during their employment at Rambler. Defendants further believe that the initial phase discovery should not begin until the pleadings have been completed.

If the case goes forward after this proposed initial phase, Defendants will likely pursue discovery as to the following subjects:

- Lynwood's and Rambler's alleged claim of copyright ownership;
- Rambler's internal policies and procedures during 2000 to 2012 and Rambler's enforcement of those policies;
- Rambler's personnel files for Messrs. Konovalov, Sysoev and Smirnoff and third party Alexander Korotkov;
- any agreements between Rambler or Lynwood and Korotkov;
- Rambler's knowledge of Sysoev's work on NGINX and internal Rambler communications regarding that work;
- the standing of Lynwood and involvement of its putative owner;
- notice to Rambler of Mr. Sysoev's claim to copyright in NGINX-related software;
- Rambler's knowledge of Mr. Sysoev's 2012 interview discussing NGINX, any other interviews or publications discussing NGINX, or the NGINX website;
- any agreements between Rambler and Mr. Sysoev for the development of any NGINX-related software modules;
- communications between Rambler and Lynwood or between Rambler or Lynwood and Korotkov regarding this lawsuit and the allegations in this lawsuit;
- the results of any forensic or other analysis by Lynwood of any Rambler internal communications, hardware or devices, including the so-called "Yam Server," and any information or materials recovered as a result if such analysis;
- communications and documents regarding the criminal investigation instituted in Russia on Rambler's behalf in 2019;
- the applicability of the statute of limitations;
- Defendants' equitable and other defenses;

- the reasons for Lynwood's delay in filing suit; and

- Lynwood's alleged claim for damages.

**C.  Proposed Limitations or Modifications of the Discovery Rules**

**Plaintiff's Position:**  Plaintiff proposes that each side may take up to thirty (30) fact witness depositions and to depose all testifying experts disclosed in this action.  Presently, there are nine remaining Defendants, three of which are entities and thus will require multiple depositions in addition to the depositions under Rule 30(b)(6).  In addition, Plaintiff anticipates that third parties will need to be deposed to prepare this case for trial.  Plaintiff suspects that some of the depositions may need to exceed the seven-hour time limit given the number of parties who will likely ask questions and the need for interpreters in many of the depositions.

**Defendants' Position:**  Defendants currently do not see a need for any modifications to the federal or local rules concerning the number or length of depositions or other forms of discovery, other than Defendants' proposed phasing of discovery discussed above.

Defendants note that the complexities that have historically existed in seeking discovery in Russia of Russian citizens and entities are now multiplied, given Russia's ongoing invasion and occupation of Ukraine and the geopolitical ramifications thereof.  Defendants propose addressing these issues by further conference of counsel and, if needed, briefing to the Court based on the conditions that may exist in Russia at the time, if such issues become ripe.

**D.  Protective Order and Stipulated E-Discovery Order**

The parties expect to enter into a stipulated protective order based on the Court's Model Stipulated Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets.  The parties may also discuss and propose a stipulated order regarding e-discovery.

**9.  CLASS ACTION**

This is not a class action.

1

**10. RELATED PROCEEDINGS**

2

There are no related cases or proceedings pending before any court or administrative body.

3 The nine trademark opposition and cancellation proceedings that Lynwood filed in the Trademark

4 Trial and Appeal Board of the U.S. Patent and Trademark Office in 2020[2] were consensually

5 dismissed with prejudice and terminated in 2022, following Plaintiff's dismissal with prejudice

6 of its trademark claims (Counts 17 through 24 of the Amended Complaint).

7

**11. RELIEF**

8

**Plaintiff's Position:** Plaintiff seeks:

9

1) Compensatory damages in an amount to be proven at trial, but presently believed to

10 be in excess of hundreds of millions of dollars. In its 2024 Annual Report, F5 reported that in

11 fiscal year 2024, software revenue totaled $735 million and represented 58 percent of the

12 company's product revenue. Also in fiscal 2024, according to the F5 Annual Report, F5's

13 subscription revenue totaled $624 million, or eighty-five percent (85%) of the company's

14 software revenue. In its Annual Report, F5 represents to investors that "F5 NGINX Plus", in

15 addition to other commercial, non-open source F5 NGINX products that are dependent on, are

16 integrated with, and/or that incorporate, NGINX Plus or portions or derivatives thereof, are major

17 contributors to such F5 subscription revenue. F5 describes NGINX in its Annual Report as "our

18 all-in-one high performance load balancer, web server, content cache, and API gateway for

19 modern applications . . .offered as packaged software in a subscription consumption model.

20 According to F5, other F5 commercial, non-open source NGINX-based solutions that depend on

21 and/or operate with NGINX Plus and/or NGINX Plus instances include F5 NGINX Management

22 Suite and F5 NGINX App Protect. In other words, without NGINX Plus, not only would there be

23 be no F5 revenue or profits from NGINX Plus, but revenue and profits from NGINX Management

24 Suite and F5 NGINX App Protect would also be non-existent. Accordingly, Plaintiff estimates

25 that its damages will total in the multiple hundreds of millions of dollars. Plaintiff intends to

26

---

27 [2]  Trademark Oppositions Nos. 91256286, 91263825 and 91263827 and Trademark Cancellations Nos. 92074975, 92075003, 92075006, 92075007, 92075015 and 92075027.

pursue more details with respect to revenue and profits generated by NGINX Plus and collected by the Defendants during the course of discovery in this matter.  In addition, Plaintiff reserves its rights to engage expert opinion witnesses on the issues of software code and infringement, and damages.

2)  Plaintiff is entitled to the election of its actual damages or to statutory damages pursuant to 17 U.S.C. §504(c);

3)  Enhanced damages based on the willfulness of Defendants' infringement of Plaintiff's exclusive copyright rights in and to NGINX Plus;

4)  Disgorgement of all profits earned by Defendants through their willful infringement of Plaintiff's exclusive copyright rights in and to NGINX Plus;

5)  Punitive damages;

6)  A declaratory judgment that Plaintiff owns all copyrights in and to NGINX Plus;

7)  A permanent injunction prohibiting Defendants from further infringement of Plaintiff's exclusive ownership rights of all copyright rights in and NGINX Plus, including any derivative add-on software programs;

8)  Attorneys' fees, costs and expenses incurred by Plaintiff, and

9)  Such other and further relief as the Court may deem just and proper.

**Defendants' Position**:  Defendants deny that Plaintiff is entitled to any monetary relief of any kind against Defendants.  Defendants seek their attorney's fees and costs of suit, including the fees previously awarded by the Court (ECF No. 201), which Defendants expect to seek by renewed motion once the remaining portion of the copyright claim is dismissed with prejudice.

## 12.  SETTLEMENT AND ADR

Pursuant to the Court's Order referring the parties to private mediation (ECF No. 138), the parties participated in a mediation on May 27, 2021.  The mediation was unsuccessful.  (ECF No. 145).

**13. OTHER REFERENCES**

The parties agree that this case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**14. NARROWING OF ISSUES**

The parties have met and conferred on whether issues can be further narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial, and the appropriateness of bifurcating issues, claims or defenses. The motion practice, voluntary dismissal by Plaintiff of many of its claims, and the appeal have substantially narrowed the legal issues in this case.

**15. SCHEDULING**

The parties' respective positions with respect to scheduling are shown below:

| Event / Action | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| Plaintiff to file Second Amended Complaint | 30 days following issuance of Court's CMC Order | April 7, 2025 |
| Defendants to respond to Second Amended Complaint | 30 days following filing of Second Amended Complaint | May 19, 2025 |
| Initial phase of fact discovery regarding creation of NGINX Plus code begins | No bifurcation | May 19, 2025 |
| Initial phase of fact discovery regarding creation of NGINX Plus code ends | No bifurcation | November 19, 2025 |
| Completion of all fact discovery | September 21 2026 | June 1, 2026 |
| Expert disclosures | October 30, 2026 | July 15, 2026 |
| Completion of expert discovery | December 21, 2026 | October 15, 2026 |
| Dispositive motion deadline | January 29, 2027 | November 30, 2026 |
| Final Pre-Trial Conference | April 30, 2027 | To be set by Court |

1    **16.  TRIAL**

2        **Plaintiff's Position:**  Plaintiff has demanded a trial by jury on all issues so triable.  At this

3    early stage, Plaintiff anticipates the jury trial will take one to three weeks to complete, depending

4    on the number and nature of the defenses interposed by Defendants.

5        **Defendants' Position:**  Defendants expect that the remaining copyright claim could be

6    tried in five court days.

7    **17.  DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

8        **Plaintiff:**  On June 8, 2020, Plaintiff filed its Certificate of Interested Entities or Persons

9    (ECF No. 2), and identified Rambler Internet Holdings LLC as an interested entity.  On September

10   4, 2020, Plaintiff filed an Amended Certificate of Interested Entities or Persons (ECF No. 92) that

11   identified Vitemo Holdings Limited as an entity that owns 100% of Plaintiff Lynwood.

12       **F5 Defendants:**  On July 16, 2020, the F5 Defendants filed their Certificate of Interested

13   Entities or Persons (ECF No. 38) and identified no interested entities or persons.

14       **Individual Defendants:**  On August 6, 2020, the Individual Defendants filed their

15   Certificate of Interested Entities or Persons (ECF No. 64) and identified no interested entities or

16   persons.

17   **18.  PROFESSIONAL CONDUCT**

18       Counsel of record for all parties have reviewed the Guidelines for Professional Conduct

19   for the Northern District of California.

20   **19.  OTHER**

21       As of the date of this report, the parties have not identified other matters that may facilitate

22   the just, speedy and inexpensive disposition of this case.

23

24

25

26

27

1  DATED:  February 28, 2025                By: /s/ *Alexander D. Pencu*

2                                           MEISTER SEELIG & FEIN LLP
                                            125 Park Avenue, 7th Floor
3                                           New York, New York 10017
                                            Telephone: (212) 655-3500
4                                           Fax: (646) 359-3649
                                            (Admitted *Pro Hac Vice*)
5
                                            BURKE, WILLIAMS & SORENSEN, LLP
6                                           60 South Market Street, Suite 1000
                                            San Jose, California 95113
7                                           Telephone: (408) 606-6300
                                            Facsimile: (408) 606-6333
8
                                            *Attorneys for Plaintiff*
9                                           HF Investments CY Limited f/k/a Lynwood
                                            Investments CY Limited
10

11

12  DATED:  February 28, 2025                By:  /s/ *Benjamin J. Fox*

13                                          MORRISON & FOERSTER LLP
                                            425 Market Street
14                                          San Francisco, California 94105
                                            Telephone: (415) 268-7670
15                                          Facsimile: (415) 268-7522

16                                          707 Wilshire Boulevard
                                            Los Angeles, California 90017
17                                          Telephone: (213) 892-5200
                                            Facsimile: (213) 892-5454
18
                                            *Attorneys for Defendants*
19                                          F5 Networks, Inc., NGINX, Inc. (BVI),
                                            and NGINX Software, Inc.
20

21  DATED:  February 28, 2025                By:  /s/  *Bruce W. Baber*

22                                          KING & SPALDING LLP
                                            50 California Street, Suite 3300
23                                          San Francisco, California 94111
                                            Telephone: (415) 318-1200
24                                          Facsimile: (415) 318-1300

25                                          *Attorneys for Defendants*
                                            Maxim Konovalov, Igor Sysoev,
26                                          Andrey Alexeev, Gleb Smirnoff,
                                            Maxim Dounin and Angus Robertson

27

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## CASE MANAGEMENT ORDER

The above JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT is approved as the Case Management Order for this case and all parties shall comply with its provisions.  In addition, the Court makes the further orders stated below:

   Plaintiff to file Second Amended Complaint:  _____

   Defendants to respond to Second Amended Complaint:  _____

   Initial bifurcated discovery phase regarding creation of NGINX Plus?

     Yes   _____   No   _____

     If yes, initial phase opens:  _____

     If yes, initial phase closes:  _____

   All fact discovery close:  _____

   Expert discovery close:  _____

   Dispositive motion deadline:  _____

   Final Pretrial Conference:  _____

   Other:  _____

    _____

Dated:  March __, 2025

       _____
       MAXINE M. CHESNEY
       United States District Judge

**ATTESTATION CLAUSE**

I, Alexander D. Pencu, am the ECF user whose identification and password are being used to file the foregoing Joint Amended Initial Case Management Statement.  In compliance with Rule 5-1(i)(3) of the Local Civil Rules, I hereby attest that all of the above signatories have concurred in the filing of this document.

Dated:  February 28, 2025

  */s/ Alexander D. Pencu*
Alexander D. Pencu