Alexander D. Pencu (pro hac vice)
adp@msf-law.com
Christopher J. Major (pro hac vice)
cjm@msf-law.com
Jeffrey P. Weingart (pro hac vice)
jpw@msf-law.com
MEISTER SEELIG & FEIN PLLC
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Fax: (646) 539-3649

Patricia L. Peden (State Bar No. 206440)
20-3778@cases.warrenlex.com
WARREN KASH WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNWOOD INVESTMENTS CY LIMITED,<br><br>Plaintiff,<br>v.<br><br>MAXIM KONOVALOV, IGOR SYSOEV,<br>ANDREY ALEXEEV, MAXIM DOUNIN,<br>GLEB SMIRNOFF, ANGUS ROBERTSON,<br>NGINX, INC. (BVI), NGINX SOFTWARE,<br>INC., NGINX, INC. (DE), BV NGINX, LLC,<br>RUNA CAPITAL, INC., EVENTURE CAPITAL<br>PARTNERS II LLC and F5 NETWORKS, INC.,<br><br>Defendants. | Case No. 5:24-cv-00703-PCP<br><br>**Joint Discovery Letter Brief**<br>**Re:  Case-Wide Protective Order** |

In this joint brief, the parties request a ruling on two disputes concerning a proposed

case-wide protective order: the inclusion of Designated House Counsel and the procedures for

Hon. Magistrate Judge Kandis A. Westmore
October 27, 2025
Page 2

source code inspection.

       The parties engaged in multiple video conference meet and confer sessions and have

adhered to Section 9 of the Northern District's Guidelines for Professional Conduct regarding

discovery before

submitting this joint letter. While many disputes were resolved, two issues, as detailed in the

attached letter, remain at an impasse despite the parties' efforts.


Respectfully submitted,


DATED: October 27, 2025                */s/ Patricia L. Peden*
                                   Alexander D. Pencu (pro hac vice)
                                   adp@msf-law.com
                                   Christopher J. Major (pro hac vice)
                                   cjm@msf-law.com
                                   Jeffrey P. Weingart (pro hac vice)
                                   jpw@msf-law.com
                                   MEISTER SEELIG & FEIN PLLC
                                   125 Park Avenue, 7th Floor
                                   New York, NY 10017
                                   Telephone: (212) 655-3500
                                   Fax: (646) 539-3649

                                   Patricia L. Peden (State Bar No. 206440)
                                   20-3778@cases.warrenlex.com
                                   WARREN KASH WARREN LLP
                                   2261 Market Street, No. 606
                                   San Francisco, California, 94114
                                   +1 (415) 895-2940
                                   +1 (415) 895-2964 facsimile


                                   *Attorneys for Plaintiff*

DATED: October 27, 2025                */s/ Benjamin J. Fox*
                                   MORRISON & FOERSTER LLP
                                   425 Market Street
                                   San Francisco, California 94105
                                   Telephone: (415) 268-7670
                                   Facsimile: (415) 268-7522

Hon. Magistrate Judge Kandis A. Westmore
October 27, 2025
Page 3

707 Wilshire Boulevard
Los Angeles, California 90017
Telephone: (213) 892-5200
Facsimile: (213) 892-5454

*Attorneys for Defendants*
F5 Networks, Inc., NGINX, Inc. (BVI),
and NGINX Software, Inc.

DATED: October 27, 2025                */s/ Shane Brun*
_____
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, California 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

*Attorneys for Defendants*
Maxim Konovalov, Igor Sysoev,
Andrey Alexeev, Gleb Smirnoff,
Maxim Dounin and Angus Robertson

Hon. Magistrate Judge Kandis A. Westmore
October 27, 2025
Page 4

October 27, 2025

Hon. Magistrate Judge Kandis A. Westmore
Ronald V. Dellums Federal Building & United States Courthouse
1301 Clay Street
Oakland, CA 94612

Dear Magistrate Judge Westmore:

The parties seek a ruling on two disputes regarding a proposed case-wide protective order: (1) Designated House Counsel ("DHC") and (2) source code inspection provisions. A declaration explaining each modification to the model order, along with a redline version comparing the Court's model order with the disputed language (Exh. A) are attached.

<u>**Plaintiff's Position**</u>

**A.    <u>House Counsel Should Be Permitted to View HC-AEO Materials</u>**

To make informed decisions for this case and fulfill its ethical obligations, outside counsel for Lynwood must be able to communicate with the proposed DHC, Ms. Elena Kanevskaia. Lynwood's outside counsel requires her input to contextualize communications, identify individuals, pursue follow-up questions, and develop litigation strategy. Ms. Kanevskaia is authorized to practice law, provide legal advice, and represent clients in Russian courts under the Russian legal system. She understands and agrees to the protective order's restrictions.[1]

Defendants go to great lenghs below to argue the sensitivity of their source code, but there is no dispute as to DHC's access to HC-Source Code; <u>Lynwood agrees DHC will not have direct access to HC-Source Code</u>. Rather Ms. Kanevskaia would be limited to oral reports and derivative materials.[2] Lynwood requests that DHC be permitted to view HC-AEO documents, such as communications and business documents, with additional security measures (e.g., no physical possession), in addition to receiving verbal summaries and derivative HC-Source Code information.

As the party seeking to limit access, Defendants bear the burden of showing good cause to exclude. *Newmark Realty Cap., Inc. v. BGC Partners, Inc.*, No. 16-cv-01702-BLF-SVK, 2017 WL 2591842, at *1 (N.D. Cal. June 15, 2017); *Rabin v. Google LLC*, 702 F. Supp. 3d 880, 881 (N.D. Cal. 2023).[3]

---

[1] Defendants' "insufficient information" argument misunderstands the model order. The DHC provision is included in the PO first, and then information is disclosed pursuant to the procedure in section 7.4(a)(1). Lynwood will provide the added information Defendants seek; questions Lynwood learned about when Defendants sent their section of this letter brief. That defendants need more information is not a basis for denying a DHC provision at this stage.

[2] *See* Model Order footnote 14.

[3] Defendants' reliance on *Brown Bag Software* is misplaced. 960 F.2d at 1470. There, the court balanced the risk of inadvertent disclosure to <u>competitors</u> against the risk of impaired prosecution of claims. As is the case here, Courts have found *Brown Bag* to compel access where there is a lack of competitive decisionmaker, and safeguards are in place to protect against further disclosure. *MedImpact*, 2021 WL 389820, at *4. Defendants' citation to *Teva Pharms. USA, Inc. v. Corcept Thers., Inc.*, 2025 WL 822696, at *2 (N.D. Cal. Mar. 14, 2025) is unpersuasive. The

Hon. Magistrate Judge Kandis A. Westmore
October 27, 2025
Page 5

Defendants cannot meet their burden.  During meet and confer, Defendants' primary concern was the protection of their source code and code-related documents, an issue resolved when Lynwood agreed that Ms. Kanevskaia will not directly view source code.[4] Lynwood made several other concessions, including adding a restriction in section 7.1 that Protected Materials must be stored in the United States,[5] that any archival copies permitted under the protective order be redacted to conceal source code,[6] and that viewing would take place under very restrictive terms.[7] The protective order proposed by Lynwood would provide Defendants more robust protection than the model order.[8]

Defendants appear to take issue with DHC's Russian residency. However, there is no legal basis to discriminate based on a DHC's country of origin. *See Amgen Inc. v. Sandoz Inc.*, 2017 WL 22502 ("Denial or grant of access ... cannot rest on a general assumption that one group of lawyers are more likely or less likely inadvertently to breach their duty under a protective order."). Instead, courts focus on whether the individual is a competitive decision-maker. *See MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*, 2021 WL 389820. Ms. Kanevskaia does not participate in competitive decision-making. Moreover, Lynwood is not in the software business and is not a competitor of the defendants.  As such, Ms. Kanevskaia should have access.[9]

## B.    Section 8(c) Should Be Augmented To Allow Simultaneous Code Inspections

The second disagreement concerns Lynwood's proposed modification to section 8(c) of the model order regarding source code discovery, specifically the addition of a provision for simultaneous code inspections that the model order does not address. Lynwood must compare the NGINX Plus software code produced by defendants in this action with the code defendants provided to third parties, such as Netflix, while some of them were still employed by Rambler. Because the model order does not provide for the production of software code directly to Lynwood, this comparison can only occur if the NGINX code from such third-party customers of defendants (e.g., Netflix) is preloaded onto the same inspection computer as the F5 source code for simultaneous analysis and comparison, in digital form. This will allow Lynwood to identify proprietary, non-open source NGINX code that Rambler owned as works made for hire that became part of F5 NGINX Plus, thus establishing infringement of Rambler copyright rights. Defendants object, but don't propose any way for Lynwood to compare the codes.

Lynwood amended Section 8(c) to facilitate this preloading of third-party code onto the inspection

---

opinion's lack of specificity limits its comparative value.  It is also factually distiguishable. Here, Plaintiff explains why DHC needs access.  *See supra*, paragraph 1.

[4] *See* Ex. A at section 8(b)

[5] *Id*. at section 7.1.

[6] *Id*. at section 14.

[7] *Id*. at section 8(b).

[8] *Compare* Ex. A at 7.3 and 7.3(b)(allowing DHC access) with Plaintiff's proposed restrictions.

[9] A showing of prejudice is only required when the moving party is a competitor. *MedImpact*, 2021 WL 389820, at *2 ("If the Designees are involved in competitive decision-making, the burden shifts to Defendants to demonstrate actual prejudice to their case if access is not granted."). Defendants' *Intel* and *Hirsh* cases are inapposite; they involve disclosing competitive information to decision makers in competitor companies.

Hon. Magistrate Judge Kandis A. Westmore
October 27, 2025
Page 6

computer. Lynwood's proposal added two paragraphs.[10] The first paragraph is directed to the tools its expert needs for the examination, and is not objected to by Defendants. The second makes clear that Lynwood may request to conduct a simultaneous code inspection, or an inspection where NGINX software code from third parties and F5's NGNX Plus code are both present on the inspection computer to allow the digital comparison. Under Plaintiff's proposal, all Producing Parties retain their rights and protections under the Protective Order, including the right to have a representative present at the code inspection. No Producing Party forfeits any rights or protections, including security and confidentiality protections, by participating in a simultaneous code inspection.

Defendants raised three objections during meet and confer. *First*, they claimed the provision was unclear, but they appear to have dropped that argument. Defendants also argue the provision affects non-parties not present during PO negotiations. However, case-wide protective orders are typically negotiated without non-parties, who can elect to sign the order or seek different relief. *Third*, Defendants claimed potential conflict regarding the inspection location, with F5 preferring its counsel's offices and non-parties likely wanting to host their own inspection. However, in the unlikely event a dispute arises over location, the protective order allows for another agreed-to location.[11] The Court can order inspection at a third-party location. *See Saxon Innovations, LLC v. Nokia Corp.*, No. 07-490, 2008 WL 11346472, at *4 (E.D. Tex. Aug. 18, 2008). The parties can also elect to use the services of a source code escrow agent, providing one central location for all code inspections.

Defendants' assertion that the paragraph was a late addition is an irrelevant diversion from the core issue. The need for simultaneous source code inspections was spotlighted late in discussions after Netflix told the Court that it possesses source code. Moreover, the Defendants' contradictory arguments below highlight the paragraph's necessity: Defendants first suggest that non-parties might produce code, rendering the paragraph unnecessary, and then contend that non-parties will not waive protections for their most sensitive materials, thereby making code production unlikely and inspections a necessity. Lynwood's proposal allows for either option, and the protections of the protective order are provided for both. Denying comparative software analysis is highly prejudicial, as this case depends on it. The protective order should facilitate, not obstruct, essential discovery.

**Defendants' Position**

**Lynwood Should Not Be Permitted to Disclose HC-AEO and Source Code Information to Elena Kanevskaia, a Russian National Outside the Court's Jurisdiction**

F5's NGINX software is used by millions of individuals and businesses, including Fortune 500 and leading technology companies such as Microsoft, IBM, Google, Apple, and Amazon as well as major government agencies such as the U.S. Department of Defense.[12] F5's proprietary source code and highly confidential documents related to this source code comprise highly sensitive commercial information that requires utmost security and safeguards. Improper disclosure of this information would expose F5 to serious and irreparable harm. These concerns are not merely academic—U.S. technology companies, including F5, are frequently targeted by cyber attackers in Russia and other

---

[10] *See* Ex. A at section 8(c)

[11] *See* Ex. A at section 8(c) ("or another mutually agreed upon location.").

[12] *See* https://www.f5.com/company/blog/nginx-plus-us-department-of-defense-iron-bank.

Hon. Magistrate Judge Kandis A. Westmore
October 27, 2025
Page 7

hostile nation-states and regimes.[13]  And plaintiff Lynwood is a Cypriot holding company that is apparently controlled by a Russian oligarch and billionaire.

Lynwood asks to be permitted to disclose F5's highly confidential information to a foreign national for whom Lynwood has provided no verifiable information beyond her name: Elena Kanevskaia. Lynwood states that Ms. Kanevskaia is a Russian national who resides and allegedly practices law in Russia.  But F5 has been unable to find a single public record, website, or other source that corroborates that Ms. Kanevskaia works as an attorney or is authorized to practice law anywhere.[14] Unlike a typical in-house counsel who resides in the U.S. or a country with which the U.S. has regular relations, Lynwood can provide no assurance that Ms. Kanevskaia will be subject to the Court's jurisdiction and that F5 could obtain effective remedies if she violates the protective order.[15]

Permitting Ms. Kanevskaia to access, in Russia, F5's Highly Confidential – Attorneys' Eyes Only ("HC-AEO") and Source Code Information poses unacceptable risks of improper or inadvertent disclosure of F5's highly sensitive information, which more than outweighs Lynwood's stated reasons for seeking to disclose the information to Ms. Kanevskaia.  *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) (proper review of protective orders requires examining all the risks and safeguards surrounding inadvertent disclosure).

Lynwood has offered nothing to show that Ms. Kanevskaia has specialized training or expertise such that Lynwood's outside counsel and its source code expert cannot perform any needed contextualization of communications, identification of individuals, or other tasks without Ms. Kanevskaia having access to HC-AEO and Source Code Information.  *See Brown Bag Software*, 960 F.2d at 1470 (upholding protective order that allowed independent consultant, but not in-house counsel, to access confidential information); *Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc.*, No. 24-cv-3567, 2025 WL 822696, at *2 (N.D. Cal. Mar. 14, 2025) (rejecting plaintiff's inclusion of designated house counsel provision, where plaintiff only offered "generic assertions" and "minimal descriptions" of its in-house counsel's activities and need to access defendants' highly confidential material).  Accordingly, Lynwood has not shown how it would be prejudiced if Ms. Kanevskaia cannot view HC-AEO or derivatives of Source Code Information materials.  *See, e.g.*, *Intel Corp. v. VIA Technologies, Inc.*, 198 F.R.D. 525, 527 (N.D. Cal. 2000) (denying motion to modify protective order to provide access to one designated in-house counsel, even "[t]hough [plaintiff] has alleged that [in-house counsel] will have difficulty managing outside counsel if she is not offered access to confidential material," since plaintiff "failed to make any showing that it will be prejudiced in presenting its best case."); *A. Hirsch, Inc. v. U.S.*, 657 F. Supp. 1297, 1305 (Ct. Int'l Trade 1987) ("in view of retained counsel's competence, it is not clear how plaintiffs' position will be prejudiced by excluding [in-house] counsel from access").

---

[13] *See, e.g.*, https://www.reuters.com/sustainability/boards-policy-regulation/cyber-defenders-sound-alarm-f5-hack-exposes-broad-risks-2025-10-20/; https://www.nsa.gov/Press-Room/Press-Releases-Statements/Press-Release-View/Article/3616384/russian-cyber-actors-are-exploiting-a-known-vulnerability-with-worldwide-impact/.

[14] The only information F5 has found for an Elena Kanevskaia is a LinkedIn profile for a director at a school of Russian ballet: https://www.linkedin.com/in/elena-kanevskaia-76658911/.

[15] *See* S. Saradzhyan, "US Intelligence Chiefs Stick to View of Russia as Adversary," Davis Center for Russian and Eurasian Studies, Harvard University (Mar. 27, 2025).

Hon. Magistrate Judge Kandis A. Westmore
October 27, 2025
Page 8

Lynwood's request for Ms. Kanevskaia to have access to F5's HC-AEO and Source Code information should be denied.

**Lynwood's "Simultaneous Code Inspection" Provision Should Be Rejected**

On October 17, one business day before the parties' last meeting, Lynwood for the first time proposed a new paragraph regarding "simultaneous code inspection" without any explanation. Lynwood has since stated its intention is to address third-party source code. The additional paragraph requested by Lynwood should not be included in the protective order.

First, Lynwood's new proposal is premature. F5 already agreed to Lynwood's first addition to Section 8(c) allowing Lynwood to request the preinstallation of "any software code" on the inspection computer "to be compared against the produced source code." Lynwood's second additional paragraph is moot if third parties physically produce their source code.

Second, Lynwood's proposed addition creates ambiguities and potential conflicts with other provisions of the protective order. Lynwood's addition provides that source code from multiple producing parties will be placed on "the same inspection computer," and that a representative from each producing party may be present. But Lynwood fails to reconcile this addition with the protective order's other provisions and protections for source code, including: (1) at which producing party counsel's office the inspection would occur; (2) on which entity's inspection computer the code would be loaded; and (3) which entities' permission would be needed to preload software or to create paper copies. Lynwood's provision would require F5 to forfeit rights under the protective order, such as requiring inspection at its counsel's office.[16] Lynwood argues that F5 did not provide alternative language, but this only underscores Lynwood's last-minute addition of this language at the very end of the meet-and-confer process.[17] Rather than delay the entry of a protective order to try to fix the problems in Lynwood's new proposal, the Parties and third parties should address the procedure for source code review if and when such need arises.

Finally, Lynwood's proposal imposes added burdens on and invites further disputes with third parties. No third parties have been consulted or participated in any discussions regarding this proposed addition. Lynwood argues that protective orders are typically negotiated without third parties. But Lynwood's proposed addition is not typical. It presumes substantial ongoing coordination and expenditure of resources by third parties and a willingness by third parties to relinquish protections for their most sensitive materials. It thus invites future conflicts and disputes with third parties that will lead to wasteful motion practice to fix the problems in Lynwood's hastily drafted addition. The Court should reject Lynwood's proposal.

---

[16] Lynwood's reference to the "another mutually agreed upon location" provision only highlights this problem. Section 8(c) makes the default location "an office of the Producing Party's counsel" so that the Producing Party can ensure the highest level of security and safeguards for its source code; the Producing Party is not obligated to agree to provide its code at another location.

[17] Lynwood has known it was seeking source code from third parties since issuing its subpoenas on June 10. Yet Lynwood waited until October 17, one business day before the parties' final conference regarding the protective order, to propose this new provision.

Hon. Magistrate Judge Kandis A. Westmore
October 27, 2025
Page 9

Respectfully submitted,


DATED:  October 27, 2025              */s/ Patricia L. Peden*
                                     _____
                                     Alexander D. Pencu (pro hac vice)
                                     adp@msf-law.com
                                     Christopher J. Major (pro hac vice)
                                     cjm@msf-law.com
                                     Jeffrey P. Weingart (pro hac vice)
                                     jpw@msf-law.com
                                     **MEISTER SEELIG & FEIN PLLC**
                                     125 Park Avenue, 7th Floor
                                     New York, NY 10017
                                     Telephone: (212) 655-3500
                                     Fax: (646) 539-3649

                                     Patricia L. Peden (State Bar No. 206440)
                                     20-3778@cases.warrenlex.com
                                     **WARREN KASH WARREN LLP**
                                     2261 Market Street, No. 606
                                     San Francisco, California, 94114
                                     +1 (415) 895-2940
                                     +1 (415) 895-2964 facsimile

                                     *Attorneys for Plaintiff*


DATED: October 27, 2025              */s/ Benjamin J. Fox*
                                     _____
                                     MORRISON & FOERSTER LLP
                                     425 Market Street
                                     San Francisco, California 94105
                                     Telephone: (415) 268-7670
                                     Facsimile: (415) 268-7522)

                                     707 Wilshire Boulevard
                                     Los Angeles, California 90017
                                     Telephone: (213) 892-5200
                                     Facsimile: (213) 892-5454

                                     *Attorneys for Defendants*
                                     F5 Networks, Inc., NGINX, Inc. (BVI),
                                     and NGINX Software, Inc.

Hon. Magistrate Judge Kandis A. Westmore
October 27, 2025
Page 10


DATED: October 27, 2025                    */s/ Shane Brun*

KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, California 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

*Attorneys for Defendants*
Maxim Konovalov, Igor Sysoev,
Andrey Alexeev, Gleb Smirnoff,
Maxim Dounin and Angus Robertson