UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNWOOD INVESTMENTS CY LIMITED,<br><br>    Plaintiff,<br><br>v.<br><br>MAXIM KONOVALOV, et al.,<br><br>    Defendants. | Case No. 20-cv-03778-MMC (KAW)<br><br>**ORDER RE 2/5/2026 DISCOVERY LETTER**<br><br>Re: Dkt. No. 266<br><br>[Discovery Letter No. 2] |

The sole claim in this case is Plaintiff's copyright claim based upon the NGINX Plus software code, which was allegedly developed by individual Defendants when employed at Rambler Internet Holding LLC in Russia. (*See* Sec. Amend. Compl. ("SAC") ¶ 1.) Pending before the Court is the parties' discovery letter on whether object code must be produced to Plaintiff or whether object code is only available for inspection under the Protective Order. (Discovery Letter at 4, 6.)

Section 8(c) of the Protective Order states in relevant part: "Any source code produced in discovery shall be made available for inspection, in a format allowing it to be reasonably reviewed and searched, during normal business hours or at other mutually agreeable times, at an office of the Producing Party's counsel or other mutually agreed upon location." (*See* Protective Order § 8(c), Dkt. No. 262.) Thus, the primary question is whether object code constitutes "source code" that falls under the ambit of § 8(c).

The Court found no authority that analyzed the distinction between source code and object code in the context of discovery, and the parties cite none. In the context of copyright infringement, however, the Ninth Circuit has explained:

    Computer programs can be expressed in either source code or object

|   |   |
|---|---|
| 1 | code. "Source code is the computer program code as the programmer writes it, using a particular programming language." Compendium of Copyright Office Practices, § 321.01. Source code is a high level language that people can readily understand. "Object code is the representation of the program in machine language binary which the computer executes." *Id.* at § 321.02. Source code usually must be compiled, or interpreted, into object code before it can be executed by a computer. Object code can also be decompiled into source code. Source code and object code are "two representations of the same computer program. . . ." *Id.* at § 321.03. However, source code created by decompiling object code will not necessarily be identical to the source code that was compiled to create the object code. |

*Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 779 (9th Cir. 2002) (internal modifications omitted). In short, object code "is essentially a translation of source code into something the computer can understand and execute." *Asset Mktg. Sys. v. Gagnon*, 542 F.3d 748, 755 n.5 (9th Cir. 2008); *see also Bernstein v. U.S. Dep't of State*, 922 F. Supp. 1426, 1429 n.3 ("Source code must be translated by way of a translating program into machine language before it can be read by a computer. The object code is the output of that translation."); *Beijing Meishe Network Tech. Co. v. TikTok Inc.*, No. 23-cv-06012-SI, 2025 U.S. Dist. LEXIS 170740, at *45 (N.D. Cal. Sep. 2, 2025) ("the publication of the software's object code constitutes publication of a copyrighted source code").

Accordingly, the Court finds that § 8(c) applies to object code because object code is effectively source code -- albeit, translated into a form that is readable by a computer. To find otherwise would permit a party to bypass the protections of a protective order by forcing production of the object code and then decompiling it back into source code that would otherwise only have been available during an inspection. *See Sega Enters. v. Accolade, Inc.*, 977 F.2d 1510, 1514, 1514 n.2 (9th Cir. 1992) (explaining that object code can be transformed back "into human-readable source code using a process called 'disassembly' or 'decompilation,' and that "disassembly devices are commercially available [and] widely used within the software industry"). Indeed, Plaintiff's intentions to use the object code to recreate the source code is at issue in this dispute, as Defendants state that Plaintiff had previously expressed an interest in decompiling and/or reverse engineering the object code to derive the source code. (Discovery Letter at 6.) While Plaintiff currently disclaims such an intent, the risk remains. (*See id.* at 5 (asserting that

Plaintiff has no need to use object code to recreate the source code), 6 (asserting that Plaintiff needs to evaluate the object code through examination that includes "decompilation").)

Plaintiff complains that NGINX Plus's object code is disseminated to customers with fewer restrictions than required in the Protective Order, arguing that the End User License Agreement ("EULA") permits limited reverse engineering. (Discovery Letter at 4.) As Defendants point out, the EULA prohibits reverse engineering except as legally required "for interoperability purposes," a situation not at hand here. (*Id.* at 8 n.1.)

Alternatively, Plaintiff argues that inspection of the object code is not feasible because it would take "30-40 man-days of effort across 6 to 8 machines," which cannot occur under normal inspection circumstances. (Discovery Letter at 6.) Defendants, in turn, respond that given the limited scope of the current phase of discovery -- namely whether the NGINX Plus code was written by certain individuals before the end of 2011 -- such a search could be performed on the computers that Defendants will make available during the inspection. (*Id.* at 8.) The Court is not convinced that Plaintiff's planned scope for the object code -- which apparently includes trying to understand the software's true function --  is consistent with the presiding judge's limitation of this phase of discovery to whether the NGINX Plus code was written before the end of 2011, such that deviation from the Protective Order is warranted. The Court also notes that the source code has been available to Plaintiff since January 5, 2026, yet Plaintiff has apparently not chosen to inspect it. (*Id.* at 6.)

Accordingly, the Court finds that the object code need not be produced, but that it must be available for inspection pursuant to the Protective Order.

This order disposes of Dkt. No. 266.

IT IS SO ORDERED.

Dated: February 17, 2026

KANDIS A. WESTMORE
United States Magistrate Judge