# EXHIBIT

# 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| LYNWOOD INVESTMENTS CY LIMITED, | Case No. 3:20-CV-03778-MMC (KAW) |
| Plaintiff, | **REQUEST FOR INTERNATIONAL** |
| vs. | **JUDICIAL ASSISTANCE PURSUANT** |
| | **TO THE HAGUE CONVENTION OF 18** |
| MAXIM KONOVALOV, IGOR SYSOEV, | **MARCH 1970 ON THE TAKING OF** |
| ANDREY ALEXEEV, MAXIM DOUNIN, GLEB | **EVIDENCE ABROAD IN CIVIL OR** |
| SMIRNOFF, ANGUS ROBERTSON, NGINX, | **COMMERCIAL MATTERS** |
| INC. (BVI), NGINX SOFTWARE, INC., NGINX, | |
| INC. (DE), BV NGINX, LLC, RUNA CAPITAL, | |
| Inc., EVENTURE CAPITAL PARTNERS II, LLC | |
| and F5 NETWORKS, INC., | |
| Defendants. | |

**LETTER OF REQUEST**

*Request for International Judicial Assistance*
*Pursuant to the Hague Convention of 18 March 1970 on*
*the Taking of Evidence in Civil or Commercial Matters*

By the United States District Court,
Northern District of California, Oakland Division

Hon. Kandis Westmore
United States Magistrate Judge

1  **TO**:       Rechtbank Den Haag
2                Postbus 20302
              2500 EH Den Haag
3                The Netherlands

4  **FROM**:     The Honorable Kandis Westmore
              United States Magistrate Judge
5                United States District Court for the Northern District of California, Oakland Division
6                Ronald V. Dellums Federal Building & United States Courthouse
              1301 Clay Street
7                Oakland, California 94612

The United States District Court for the Northern District of California, Oakland Division, presents its compliments to the appropriate judicial authority of the District Court in The Hague, and requests international judicial assistance to obtain testimony and documentary evidence from third parties Jet-Stream B.V. ("Jet-Stream"), a Dutch entity, and Stef van der Ziel, Chief Executive Officer of Jet-Stream, concerning the specific subject matters set forth in Schedules A and B to this Letter.

This request is made pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, as adopted and implemented in the United States of America at 28 U.S.C. § 1781. The United States District Court for the Northern District of California, Oakland Division, is a competent court of law and equity that properly has jurisdiction over this proceeding and has the power to compel the attendance of witnesses and production of documents both within and outside its jurisdiction. Jet-Stream is believed to have possession of the documents specified in Schedule A attached hereto and knowledge of the subject matters specified in Schedule B attached hereto.

The testimony and production of documents requested of Jet-Stream is intended for use at trial or other proceedings in this action, and, in the view of this Court, is relevant discovery in connection with Plaintiff's claim of infringement of its alleged copyright rights in a software program known as "NGINX Plus." The central issue for discovery in the current phase of the case is whether Defendants Igor Sysoev, Maxim Konovalov and Gleb Smirnoff (collectively, the "Former Employees"), all of whom are former employees of Rambler, a Russian company, developed and/or wrote NGINX Plus code while they were employed by Rambler, before the end of 2011. Plaintiff alleges that any such code is a work for hire owned by Rambler. The defendants in this case dispute

that the Former Employees developed or wrote any such code while they were Rambler employees and that any such code would be a work for hire owned by Rambler.  Plaintiff further alleges that the Former Employees developed, marketed, and delivered NGINX Plus code to third-party customers while they were still employed by Rambler.  The defendants deny that they did so.

Jet-Stream is a Netherlands-based provider of content delivery network ("CDN") services. Documents recently produced by third parties in this case indicate that Jet-Stream was an early customer of the Former Employees, and that the Former Employees may have produced and agreed to deliver a commercial module to Jet-Stream in late 2011.  The requested discovery is relevant to whether the Former Employees wrote any NGINX Plus software code while they were still employed by Rambler.  The discovery sought in this Letter of Request is therefore relevant discovery relating to issues of fact that will influence the final determination of Plaintiff's claims.

This request is made with the understanding that it will in no way require any person to commit any offense, or to undergo a broader form of inquiry than he or she would if the litigation were conducted in the Netherlands.

### Letter of Request

**1.  Requesting Authority/Sender**

The Honorable Kandis Westmore
United States Magistrate Judge
United States District Court for the Northern District of California
Oakland Division
Ronald V. Dellums Federal Building & United States Courthouse
1301 Clay Street
Oakland, California 94612

**2.  Central Authority of the Requested State**

Rechtbank Den Haag
Postbus 20302
2500 EH The Hague
The Netherlands

**3. Person to Whom the Executed Request is to be Returned**

Patricia L. Peden
Warren LLP
2261 Market Street No. 606
San Francisco, California 94114
Tel.: (415) 895-2940
Fax: (415) 895-2964

**4. Specification of Date by which the Requesting Authority Requires Receipt of the Response to the Letter of Request**

A response is requested by May 1, 2026, or as soon as reasonably practicable.

**5. In Conformity with Article 3 of the Convention, the Undersigned Applicant Has the Honor to Submit the Following Request:**

    **a. Requesting Judicial Authority**

United States District Court for the Northern District of California
Oakland Division
Ronald V. Dellums Federal Building & United States Courthouse
1301 Clay Street
Oakland, California 94612

    **b. To the Competent Authority of:**

The Netherlands

    **c. Name of the Case and any Identifying Number**

*Lynwood Investments CY Limited v. Maxim Konovalov, et al.*,
Case No. 20-CV-03778-MMC,
United States District Court for the Northern District of California

**6. Names and Addresses of the Parties and their Representatives**

    **a. <u>Plaintiff</u>**

HF Investments CY Limited (formerly known as Lynwood Investments CY Limited)
Saifi, 1
Porto Bello, Floor 3, Flat 302 3042
Limassol, Cyprus

        **<u>Plaintiff's Representatives</u>**

Warren LLP
Patricia Peden
2261 Market Street No. 606

---

San Francisco, California 94114
Tel.: (415) 895-2940
Email: patricia@warrenkashwarren.com

Meister Seelig & Fein PLLC
Alexander D. Pencu
Christopher J. Major
Jeffrey P. Weingart
125 Park Avenue, 7th Floor
New York, New York 10017
Tel: (212) 655-3500
Email:   adp@msf-law.com
         jpw@msf-law.com
         cjm@msf-law.com

**b.  Defendants**

Maxim Konovalov
Igor Sysoev
Andrey Alexeev
Maxim Dounin
Gleb Smirnoff
Angus Robertson
NGINX, Inc. (BVI)
NGINX Software, Inc.
F5 Networks, Inc.

**Defendants' Representatives**

Benjamin J. Fox
Mark Marciszewski
Andrew Q. Nguyen
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California 90017-3543
Telephone: (213) 892-5200
Facsimile: (213) 892-5454
BFox@mofo.com
MMarciszewski@mofo.com
AndrewNguyen@mofo.com

Eric C. Pai
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304-1018
Telephone: (650) 813-5600
Facsimile: (650) 494-0792
EPai@mofo.com

[PROPOSED] REQUEST FOR JUDICIAL ASSISTANCE                    Case No. 3:20-CV-03778

*Counsel for Defendants F5 Networks, Inc.,
NGINX, Inc. (BVI) and NGINX Software Inc.*

Shane Brun
King & Spalding LLP
50 California Street, Suite 3300
San Francisco, California 94111
Telephone: (415) 318-1200
sbrun@kslaw.com

Bruce W. Baber
King & Spalding LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, Georgia 30309
Telephone: (404) 572-4600
bbaber@kslaw.com

*Counsel for Defendants Maxim Konovalov,
Igor Sysoev, Andrey Alexeev, Maxim Dounin,
Gleb Smirnoff and Angus Robertson*

**7. Nature of the Proceedings and Summary of the Claim**

The nature of the proceeding for which the evidence is requested is a civil copyright infringement action. Plaintiff HF Investments CY Limited (formerly known as Lynwood Investments CY Limited) ("Lynwood") asserts that Defendants willfully infringed on Plaintiff's copyright rights in a software program known as NGINX Plus. Plaintiff Lynwood alleges that NGINX Plus was conceived and developed by employees of Rambler, which later assigned its claimed ownership rights to Lynwood. Plaintiff further asserts that Defendants Igor Sysoev, Maxim Konovalov and Gleb Smirnoff developed NGINX Plus as a work made for hire while they were employed by Rambler, and that NGINX Plus is owned by Rambler under Russian law. Plaintiff claims that the Former Employees stole the software to start their own company called NGINX, Inc. in or about 2011, and then sold NGINX to Defendant F5 Networks, Inc. in 2019 for $670 million. The defendants in the action dispute Lynwood's allegations and claims.

Plaintiff asserts that, by 2011, and while some or all of the Former Employees were still employed by Rambler, the Former Employees developed and were already selling custom NGINX Plus modules to customers. Plaintiff believes, based on documents recently produced by other third parties, that Jet-Stream was an early customer of the Former Employees or their new company, that

the Former Employees produced and agreed to deliver a commercial module to Jet-Stream in late 2011, and that the module(s) delivered to Jet-Stream included NGINX Plus code. The defendants deny these allegations as well.

To develop these claims further, Plaintiff seeks testimony and documents from Jet-Stream related to its business dealings with the Former Employees or their new company in 2011-2012, as set out in the attached requests. Any materially relevant evidence uncovered as a result of this Letter Request will be introduced at trial or other proceedings in the case, if admissible. All parties to the case reserve all objections to the admissibility of some or all of such evidence.

**8. Evidence to be obtained and purpose of the evidence sought**

This Court requests the Appropriate Judicial Authority of the Netherlands to compel Jet-Stream to produce to the parties and their representatives the documents responsive to the requests for production in Schedule A to this Letter Request, to the extent they are in the possession, custody or control of Jet-Stream and are not privileged under the applicable laws of the Netherlands or the United States. This Court also requests the Appropriate Judicial Authority of the Netherlands to compel Stef van der Ziel, Jet-Stream's founder and Chief Executive Officer, to appear and give a deposition on oral examination concerning the topics set forth in Schedule B to this Letter Request.

The discovery sought from Jet-Stream is relevant discovery relating to Lynwood's claim of copyright infringement. If, as Lynwood asserts, the Former Employees marketed and sold custom module(s) to Jet-Stream before the end of 2011 that included NGINX Plus code, that may be relevant to whether the NGINX Plus code was written by the Former Employees before they left Rambler.

**9. Identity and Address of Persons to be Examined**

> Jet-Stream B.V.
> Hoge der A 12, 9712 AC Groningen
> The Netherlands
> Registered with the Chamber of Commerce under number 02089083
>
> Stef van der Ziel
> Chief Executive Officer
> Jet-Stream B.V.
> Hoge der A 12, 9712 AC Groningen
> The Netherlands

**10. Questions to be Put to the Persons Examined or Statement of the Subject Matter About Which They are to be Examined**

Attached as Schedule B is a list of the subject matters about which Mr. Van der Ziel will be examined.

**11. Documents or Other Property to be Inspected**

*See* Schedule A.

**12. Any Requirement that the Evidence be Given on Oath or Affirmation and Any Specific Form to be Used**

It is respectfully requested that an examiner or other appropriate judicial officer of the Netherlands direct that the witness be duly sworn in accordance with the applicable procedures of the Netherlands, and that the testimony be taken and transcribed by a qualified court clerk (*griffer*) and videographer chosen by Lynwood's representatives.  It is further requested that the deposition be conducted in English with interpretation provided by a translator, with all costs to be paid by Lynwood.

**13. Special Methods or Procedures to be Followed**

To the extent permitted by the applicable laws of the Netherlands, this Court respectfully requests that the Appropriate Judicial Authority of the Netherlands require that the following methods and procedures be followed in connection with the deposition and document production requested herein:

  a.  The examination be conducted orally;

  b.  The parties' legal representatives or their designees be permitted to be present during the examination as provided for in Article 179(2) of the Dutch Code of Civil Procedure;

  c.  A videographer be permitted to be present during the examination and record the proceedings, as provided for in Article 180(6) of the Dutch Code of Civil Procedure;

  d.  All persons other than the parties, the parties' legal representatives or their designees, a court clerk (*griffer*) and videographer, and any judicial officer of the Netherlands be excluded from the examination;

  e.  The attorneys from the law firm of Meister Seelig & Fein PLLC and/or Warren LLP

and/or Lemstra Van der Korst N.V., acting as legal representatives of Lynwood, or their designees, be permitted to conduct the examination, as provided for in Article 179(2) of the Dutch Code of Civil Procedure, and that attorneys from the law firms of Morrison & Foerster LLP and King & Spalding LLP, acting as legal representatives of the defendants, or their designees, be permitted to examine the witness and conduct cross-examination when Lynwood's examination is complete;

f.   The attorneys conducting the examination be permitted to ask questions regarding the topics listed in Schedule B; or, if a judicial officer is conducting the examination, the parties' legal representatives or their designees be permitted to submit questions to that officer for presentment to the witness;

g.   Up to seven (7) hours be allotted for the examination of the witness; and

h.   The witness be examined as soon as practicable and the documentary evidence be produced or provided for inspection and copying by the representatives of all parties (or their designees) at least ten (10) days before the examination.

**14. Request for Notification upon Execution of the Request**

Please notify counsel regarding the time and place for the execution of the Request:

Warren LLP
Patricia Peden
2261 Market Street No. 606
San Francisco, California 94114
Tel.: (415) 895-2940
Email: patricia@warrenkashwarren.com

Meister Seelig & Fein PLLC
Alexander D. Pencu
Christopher J. Major
Jeffrey P. Weingart
125 Park Avenue, 7th Floor
New York, New York 10017
Tel: (212) 655-3500
Email:     adp@msf-law.com
              cjm@msf-law.com
              jpw@msf-law.com

Benjamin J. Fox
Mark D. Marciszewski
Andrew Q. Nguyen
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California  90017-3543
Telephone: (213) 892-5200
Facsimile: (213) 892-5454
Email: BFox@mofo.com
       MMarciszewski@mofo.com
       AndrewNguyen@mofo.com

Eric C. Pai
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California  94304-1018
Telephone: (650) 813-5600
Facsimile: (650) 494-0792
Email: EPai@mofo.com

Shane Brun
King & Spalding LLP
50 California Street, Suite 3300
San Francisco, California  94111
Telephone: (415) 318-1200
Email: sbrun@kslaw.com

Bruce W. Baber
King & Spalding LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, Georgia  30309
Telephone: (404) 572-4600
Email: bbaber@kslaw.com

**15. Request for Attendance or Participation of Judicial Personnel of the Requesting Authority at the Execution of the Letter of Request**

    No attendance of judicial personnel is requested.

**16. Specification of Privilege or a Duty to Refuse to Give Evidence Under the Law of the State of Origin**

    In addition to any privileges applicable under Dutch law, under the laws of the United States, a party may refuse to answer any question if such answer would subject him to a real and appreciable danger of criminal liability in the United States.  A party may also refuse to answer a question or produce a document if such answer or document would disclose a confidential communication between that party and his attorney(s) that was made for the purpose of obtaining legal advice.

There is a protective order in place to protect the confidentiality of any documents Jet-Stream produces.

**17. The Fees and Costs Incurred, Which are Reimbursable under the Second Paragraph of Article 14 or under Article 26 of the Convention, Will be Borne by:**

The fees and costs incurred in the execution of this Request which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by Plaintiff.

**18. Reciprocity**

The United States District Court for the Northern District of California, Oakland Division, expresses its appreciation to the District Court of The Hauge for its courtesy and assistance in this matter and states that it shall be ready and willing to assist the court of the Netherlands in a similar manner when so requested.

### Conclusion

In the spirit of comity and reciprocity, this Court hereby requests international judicial assistance in the form of this Letter of Request to obtain from Jet-Stream an oral examination, under oath, on the topics set forth in Schedule B and the production of documents responsive to the requests set forth in Schedule A. This Court expresses its willingness to provide similar assistance to the judicial tribunals of the Netherlands if future circumstances should require.

Signature and Seal of the Requesting Authority:

DATED: February __, 2026                    By: _____

                                                                Hon. Kandis Westmore
                                                                United States Magistrate Judge

Mark B. Busby, Clerk of Court

_____

by:

Deputy Clerk

[Seal]

**SCHEDULE A**

**DEFINITIONS**

The following definitions and instructions apply to the requests.

1.      "Communication" or "Communications" is defined as the transfer of information between people or entities, regardless of the method used. This includes: (1) writings or documents (such as letters, memos, emails, texts, instant messages, notes, etc.); (2) any telephone call; and (3) any conversation or meeting.

2.      "Concerning" means reflecting, relating to, mentioning, involving, describing, discussing, or factually connected to the matter discussed.

3.      "Defendants" refers, individually and collectively, to NGINX, Inc. (BVI), NGINX Software, Inc., NGINX, Inc. (DE), F5 Networks, Inc., Maxim Konovalov, Igor Sysoev, Andrey Alexeev, Maxim Dounin, Gleb Smirnoff, and Angus Robertson and persons or entities known to be acting on their behalf.

4.      "Document" or "Documents" means written or recorded information, including computer files (printouts, disks, tapes, databases, software, etc.), correspondence, emails, memos, reports, studies, statements, notes, calculations, records, plans, presentations, and every non-identical draft or copy of each document. Documents expressly include "Communications." "Document" or "Documents" are limited to those documents in Jet-Stream's possession, custody, or under its control.

5.      "Jet-Stream" means Jet-Stream B.V., with offices at Hoge der A 12, 9712 AC Groningen, The Netherlands, registered with the Chamber of Commerce under number 02089083, and its officers, directors, principals, employees, agents and persons or entities acting on its behalf. "Jet-Stream" includes subsidiaries, wholly owned or partly owned, of Jet-Stream B.V.

6.    "NGINX Open Source" or "Open Source NGINX" means  the open source software program known as "NGINX Open Source", as referenced on the Web site located at https://docs.nginx.com/nginx/admin-guide/installing-nginx/installing-nginx-open-source/#.    The definition includes all versions, components and releases of the code, in all forms, including all source code and executable code.

7.    "Proprietary NGINX" means any software developed by or for the Defendants or NGINX LLC that works with or enhances NGINX Open Source, but which was not released as part of NGINX Open Source.

## INSTRUCTIONS

1.    "And" and "or" are construed disjunctively or conjunctively as needed to encompass all responsive documents.

2.    "Any" includes "all," and "all" includes "any."

3.    The word "including" shall mean "including but not limited to."

4.    Unless otherwise indicated, all Document Requests cover the period from January 1, 2011, through December 31, 2012.

5.    Produce existing translations for all responsive documents already translated, in whole or in part.

6.     If any Request is objected to or documents are withheld based on privilege or other legal grounds, please provide an explanation of the documents withheld and the reasons for withholding them.

## DOCUMENT REQUESTS

1.    Documents concerning the "commercial partnership" between Jet-Stream and NGINX, Inc. (BVI), including documents that concern the "proprietary extensions and additional

controls," "high performance NGINX edge nodes," or "additional commercial extensions" mentioned in their joint press announcement on or about November 21, 2011 (attached as Exhibit A).

      2.    Documents concerning any agreements, contracts or statements of work between Jet-Stream and any of the Defendants or NGINX LLC.

      3.    Documents concerning invoices issued by any of the Defendants or NGINX LLC to Jet-Stream, or payments made by Jet-Stream to any of the Defendants, in 2011 or 2012.

      4.    Documents concerning Proprietary NGINX-related software, products or services provided by any of the Defendants or NGINX LLC to Jet-Stream in 2011 or 2012.

      5.    Documents concerning the development of Proprietary NGINX by any of the Defendants or NGINX LLC in 2011 or 2012.

      6.    Documents concerning Jet-Stream's testing of Proprietary NGINX in 2011 or 2012.

      7.    Documents concerning Jet-Stream's use of Proprietary NGINX in connection with streaming video from the 2012 Summer Olympics in London or the 2012 Winter Olympics in Sochi.

      8.    The NGINX Proprietary code delivered to Jet-Stream by the Defendants or NGINX LLC.

1

2

## **SCHEDULE B**

## **DEFINITIONS**

3
4
5

Unless specifically indicated or otherwise required by the context in which the terms and names are used, the following definitions and instructions apply. Capitalized terms used in these definitions are defined separately in the following definitions.

6
7
8
9

1.    "Communication" or "Communications" is defined as the transfer of information between people or entities, regardless of the method used. This includes: (1) writings or documents (such as letters, memos, emails, texts, instant messages, notes, etc.); (2) any telephone call; and (3) any conversation or meeting.

10
11

2.    "Concerning" means reflecting, relating to, mentioning, involving, describing, discussing, or factually connected to the matter discussed.

12
13
14
15

3.    "Defendants" refers, individually and collectively, to NGINX, Inc. (BVI), NGINX Software, Inc., NGINX, Inc. (DE), F5 Networks, Inc., Maxim Konovalov, Igor Sysoev, Andrey Alexeev, Maxim Dounin, Gleb Smirnoff, and Angus Robertson and persons or entities known to be acting on their behalf.

16
17
18
19

4.    "Jet-Stream" means Jet-Stream B.V., with offices at Hoge der A 12, 9712 AC Groningen, The Netherlands, registered with the Chamber of Commerce under number 02089083, and its officers, directors, principals, employees, agents and persons or entities acting on its behalf. "Jet-Stream" includes subsidiaries, wholly owned or partly owned, of Jet-Stream B.V.

20
21
22
23
24

5.    "NGINX Open Source" or "Open Source NGINX" means  the open source software program known as "NGINX Open Source", as referenced on the Web site located at https://docs.nginx.com/nginx/admin-guide/installing-nginx/installing-nginx-open-source/#.    The definition includes all versions, components and releases of the code, in all forms, including all source code and executable code.

25
26
27

6.    "Proprietary NGINX" means any software developed by or for the Defendants or NGINX LLC that works with or enhances NGINX Open Source, but which was not released as part of NGINX Open Source.

28

## DEPOSITION TOPICS

It is requested that the appropriate judicial authority for the Netherlands compel the testimony of Stef van der Ziel, the owner and CEO of Jet-Stream, on the following subjects:

1.     The documents produced by Jet-Stream in this action.

2.     The subject matter of the press announcement issued jointly on or about November 21, 2011 by Jet-Stream and NGINX, Inc. (BVI), a copy of which is attached as Exhibit A hereto.

3.     Agreements, contracts or statements of work between Jet-Stream and any of the Defendants or NGINX LLC in 2011 or 2012.

4.     Communications with any of the Defendants and/or NGINX LLC related to features or functions of Proprietary NGINX.

5.     Jet-Stream's use of Proprietary NGINX in 2011 or 2012.

6.     Payments made by Jet-Stream to any of the Defendants or NGINX LLC in 2011 or 2012.

7.     Proprietary NGINX-related software, products or services provided by any of the Defendants or NGINX LLC to Jet-Stream in 2011 or 2012.

8.     The development of Proprietary NGINX by any of the Defendants or NGINX LLC in 2011 or 2012.

9.     Jet-Stream's testing of Proprietary NGINX in 2011 or 2012.

10.    Statements attributed to Jet-Stream contained in the slide presentation attached as Exhibit B hereto.

9384\2\9840788.v4

# EXHIBIT

# A



***Source:*** *Sand Hill Communications, Inc.*

*November 21, 2011 11:00 ET*

# Open Source Web Server Leader NGINX and Market-Leading CDN Provider Jet-Stream Form Commercial Partnership

## Innovative Players Join Forces to Provide Advanced CDN and Caching Features to Telco and Enterprise Customers

SAN FRANCISCO, CA and GRONINGEN, THE NETHERLANDS--(Marketwire - Nov 21, 2011) - Open source web server developer NGINX and Jet-Stream, the award-winning market leader in Content Delivery Network (CDN) technologies and intelligence, have formed a commercial partnership to deliver enhanced CDN products and services to network operators, content publishers, telecommunications companies and enterprises.

Under the agreement, Jet-Stream will integrate the NGINX open source version into its software suite, incorporating proprietary extensions and additional controls. Jet-Stream will leverage high-performance NGINX edge nodes, capable of delivering multiple gigabits of outbound traffic per hardware server, to improve performance and reliability for customers. For its part, NGINX will provide additional commercial extensions to its open source product to fine-tune NGINX edge nodes for the CDN environment.

"Jet-Stream is the most innovative company in the multimedia content delivery space with enormous influence on this segment of the industry," said Andrey Alexeev, co-founder of NGINX. "We are very pleased to inaugurate this new partnership, which enables both our companies to provide a rich new set of performance benefits to a wider range of enterprise and telecommunications customers."

The NGINX web server currently powers 25% of the top 1,000 busiest websites in the world, and its unique ability to deliver 10-times performance improvements on existing operating

systems and hardware -- combined with lean architecture, scalability and security -- has propelled it to become the second most popular open source web infrastructure platform on the Internet. The award-winning Jet-Stream CDN technology is an advanced, next-generation solution for network operators and content publishers used by IP network operators worldwide to offload traffic on their infrastructures and to monetize premium content delivery services across a variety of fixed and mobile platforms.

"NGINX is the best-performing and most flexible caching solution on the market," said Stef van der Ziel, founder and CEO of Jet-Stream. "Our technologies and philosophies of innovation are highly complementary, and provide us with a unique opportunity to change the market by providing advanced solutions to our customers."

In addition to offering integrated products to the market, Jet-Stream will leverage NGINX's services to implement and maintain the combined offering, incorporating a license within the Jet-Stream software licenses. NGINX will open its sales channel and referral sources to Jet-Stream.

**About NGINX**
From its earliest inception, NGINX has been driven by an understanding that Internet usage would explode with an increasing expectation of instant response from online services. NGINX was designed to enable companies to adjust to this new reality of heavy Internet consumption without incurring unnecessary costs in capital investments or time. In almost 10 years of its history NGINX has developed into a powerful Internet infrastructure platform which includes a webserver for static and dynamic content, Layer 7 load-balancer, reverse proxy for HTTP, SMTP, IMAP and POP3, caching engine and SSL offloading.

NGINX has grown organically over the past 10 years of development thanks to the vision of Igor Sysoev and the enthusiasm and support of a loyal community of users and developers.

In July 2011, the company founded its commercial arm, NGINX, Inc. For more information, please visit www.nginx.com.

**About Jet-Stream**
Jet-Stream is the award-winning market leader in Content Delivery Network technologies and intelligence. Jet-Stream researches, develops and licenses next-generation CDN technologies. Jet-Stream technology is used by many IP network operators around the globe to offload traffic on their infrastructures and to monetize premium content delivery services for three-screen IPTV, mobile content, web content and OTT content. Clients of Jet-Stream are well-known telecom operators, mobile operators, cable operators, Internet access providers, wholesale carriers, broadcasters, hosting providers, enterprises and system integrators. For more information please visit http://www.jet-stream.com.

Contact Information:

Contact:
Valerie Chan

206-352-9052

# EXHIBIT

# B

**From:**     "Andrey Alekseyev" <andrew@nginx.com>
**Subject:**  Re: latest presentation files
**To:**       Kirill Sheynkman <sheynkman@greycroft.vc>
**Cc:**       igor@sysoev.ru, maxim@nginx.com
**Sent:**     Wed, 16 Mar 2011 02:03:13 +0300
Pitch AA 03-16-2011.pdf

Minor corrections/additions following Kirill comments (re: "add more customer logos"), also added a backup slide with the comments from Jetstream BV. Uploaded it to Dropbox too.

> Guys,
>
> I've uploaded the latest version to that Dropbox folder. Pdf attached.

# NGINX

## web server

Moscow/NYC, 2011

proprietary and confidential



# what is nginx?

- compact, efficient, high-performance web server
- accelerated front end for
  - large web sites
  - web and mail hosting
  - content distribution networks
- Linux, Solaris, Windows



web user

network

**nginx**

content

 # who uses nginx <u>in production</u>?

  

  

  

 

 





...and 23,000,000 other web sites,
including 15% of the top 1,000 sites on the web



# market share: <u>growing</u>

15.90% of top 1,000 sites

6.42% of top 1,000,000 sites (6.31% in feb 2011)

7.65% of 298,002,705 web sites

 top **servers** across the
million busiest sites



**nginx** across the
million busiest sites





# why nginx?

☑ *speed*

☑ scalability

☑ reliability

☑ efficiency

☑ simplicity



# what users say

Apache is like Microsoft Word, it has a million options but you only need six. Nginx does those six things, and it does five of them 50 times faster than Apache.

*- Chris Lea, Media Temple*

We are currently using Nginx 0.6.29 with the upstream hash module which gives us the static hashing we need to proxy to Varnish. We are regularly serving about 8-9k requests/second and about 1.2Gbit/sec through a few Nginx instances and have plenty of room to grow!

*- Wordpress.com*

A while back, we changed our frontend IMAP/POP proxy from perdition to nginx... [and] we've now switched over to using nginx for our frontend web proxy as well... The net result of all this is that each frontend proxy server currently maintains over 10,000 simultaneous IMAP, POP, Web & SMTP connections (including many SSL ones) using only about 10% of the available CPU.

*- FastMail.fm blog*

We were using Pound for load balancing at Justin.tv until today. It was consistently using about 20% CPU, and during spikes would use up to 80% CPU. Under extremely high load, it would occasionally freak out and break.
We just switched to Nginx, and load immediately dropped to around 3% CPU. Our pages feel a little snappier, although that might be my imagination. Not only is the config format easier to understand and better documented, but it offers a full webserver's complement of functionality. We haven't hit any spikes yet, but given the current performance I suspect it will cream Pound.

*- Emmet Shear, Justin tv*



We recently switched over our static content webserver over to Nginx, easily the most impressive webserver I've seen in years. We're running it on a machine with 8Gb of memory (along with some other stuff), but the nginx process is only using a ridiculously small 1.4Mb. In other words, it barely registers in any measurable way.

*- Philip Jacob, Stylefeeder tech blog*

# in one voice: "it's fast, it's efficient, it doesn't break"

*Sources: unsolicited feedback on wiki and blogs*



# history

- crafted to handle **500 million page requests per day**
- spring 2002: development started
- october 2004: version 0.1.0
- current public version: 0.9.5
- version 2.0: autumn 2011
- variety of 3rd party modules and extensions
- heavy usage across all web frameworks including: PHP, Ruby/ Rails, Python/Django etc.





# existing alternatives

| | | | |
|---|---|---|---|
| | apache | Linux, Solaris, Windows | Most ubiquitous general purpose web server in the world. Good performance, average scalability. Mature. Belongs to ASF ** |
| | apache traffic server | Linux | Former Inktomi Traffic Server. A proxy server. Good performance, good scalability. Complicated configuration. Belongs to ASF |
| | varnish | Linux, Solaris | Developed by FreeBSD core fellow. A proxy server. Can be hard to implement, manage, configure. Issues with CDNs |
| | tornado | Linux | Web server/framework written in high-level programming language (Python) originally for FriendFeed |
| | haproxy | Linux | A poor man load balancer and a proxy from France. GPL/LGPL licensing |
| | lighttpd | Linux | Originally developed as a proof-of-concept to solve "C10k problem". Issues with stability and quality of the code. More resource consuming |

**Apache Software Foundation (non-profit Delaware corporation, oversees a variety of software projects)



# license:<u>simplified BSD</u>

- permissive free software license
- allows **proprietary**    use (Apple, Juniper)

1. Redistributions of source code must retain the above copyright notice, this list of conditions and the following disclaimer.

2. Redistributions in binary form must reproduce the above copyright notice, this list of conditions and the following disclaimer in the documentation and/or other materials provided with the distribution.





# founders

- ## maxim konovalov – *CEO*
  – 15 years of engineering, PM and management experience,
  – CTO at Rambler,
  – Tomsk University, EMBA University of Antwerp

- ## igor sysoev – *author, principal architect, CTC*
  – 15 years of software and systems engineering experience,
  – senior system administrator at Rambler,
  – Bauman Moscow University

- ## andrey alexeev – *VP Business development*
  – 15 years of engineering, PM and management experience,
  – Director IP service network at MTS/COMSTAR (NYSE: MBT),
  – St.Petersburg Electrotechnical University, EMBA University of Antwerp



# company

- plan to incorporate in the U.S.
- presence in:
  - San Francisco
    - marketing, sales
  - Moscow, Russia
    - management, engineers
- staff
  - software developers
  - quality assurance
  - technical support



# what's a team to do

- keep open source nginx development
- support/grow user community
- net result:
  - promotion by word of mouth
  - nginx brand development
  - early adoption
  - additional source of useful ideas



# commercial products

- strategic customers need featured, predictable product support and development
- paid services, features and products
- partnership:
  - 3rd party products featuring nginx
  - professional services



# plans 2011

Q3 2011
- form and register companies
- establish offices/operations
- hire
  – one senior developer
  – one system engineer
  – one quality assurance
    engineer
- revamp development process
- book technical writer, start
  working on documentation
- gather results of customer
  opinion survey
- finalize nginx feature roadmap
  for 2011-2013
- begin marketing activity in US
  (prepare for version 2.0)

Q4 2011
- version 2.0 – first public release
  – new core
  – new API
  – loadable modules
  – distributed cache
  – html content manipulation
- version 1.0 – bug fixing,
  no new features
- hire
  – second senior developer
- negotiate for technical support
  contracts with the first clients
- sales revenue $10,000/Q4

# plan to revenues






# plans 2012

**Q1 2012**
- version 2.1
  - cdn interfaces ($$$)
  - extended statistics ($$$)
  - performance monitor ($$$)
- hire
  - three additional developers
  - one system engineer

**Q2 2012**
- version 2.2
  - web frameworks integration
  - comet/push-to-a-browser ($$$)
  - http extensions
- sales revenue $100,000/Q1-Q2

**Q3 2012**
- version 2.3
  - distributed storage support
  - cdn director ($$$)
  - advanced load balancing
  - control panel/dashboard ($$$)

**Q4 2012**
- version 2.4
  - video content transformation
  - media/streaming server ($$$)
- sales revenue $150,000/Q3-Q4



# revenue model

- technical support services for key accounts
  - subscription model
  - 8/5 and 24/7 offerings
  - prompt reaction time
  - open/track cases, obtain workaround, get emergency fix/update
- new paid features (modules, custom features)
- new products in a partnership with software and hardware vendors
  - cdn functionality
  - embedded version (e.g. with cpe vendors)
  - load balancing



# revenue model

- price tags for technical support
  - $10,000/year for 8/5
  - $20,000/year for 24/7
- why clients would buy
  - no product support can lead to no business for a serious web entrepreneur
- price tags for custom development
  - from $100,000 per FTE
- why clients would buy
  - save resources when a specific custom feature or custom setup is required



# financials

# series A
# $2,500,000



# financials

- **operating budgets**
  - payroll
  - marketing
  - administrative
- **staff**
  - management, engineers
  - marketing/sales
- **offices**
  - Moscow, class B, 100 m$^2$

# financials



- **next 18 months**
  - 15% of top 1,000,000 sites use nginx
  - 15-20 key clients use technical support services
  - feature/release roadmap fulfilled
  - strategic partnership established with software and hardware vendors
  - contracted sales revenue $500,000/year



# potential exits

- **networking vendor**
  - cisco, juniper, f5, brocade, radware
- **virtualization software vendor**
  - citrix, parallels, emc/vmware
- **infrastructure software vendor**
  - ibm, oracle, hp, ericsson
- **telco/isp/cdn**
  - at&t, level 3, comcast, akamai
- **maturity period = real $$$**
  - 4-5 years



# thank you!

# nginx components: <u>web</u>





- non-blocking
- event-driven
- single-threaded
- one master/several workers
- resource efficient
- modular

# nginx components: <u>mail</u>





- pop/imap/smtp
- ssl
- external auth
- external mailbox-to-backend mapping database



# netcraft report: <u>march 2011</u>



| Developer | February 2011 | Percent | March 2011 | Percent | Change |
|-----------|---------------|---------|------------|---------|--------|
| Apache | 660,238 | 66.42% | 659,369 | 66.32% | -0.09 |
| Microsoft | 161,189 | 16.21% | 160,069 | 16.10% | -0.11 |
| nginx | 62,762 | 6.31% | 64,221 | 6.46% | 0.15 |
| Google | 19,422 | 1.95% | 21,099 | 2.12% | 0.17 |



# strategic partnership:<u>example</u>

1) We have been testing NGINX against Squid and Varnish and NGINX clearly **came out as the most flexible, scalable and robust** solution.

2) We predict that Content Delivery Networks will not only be used for internet delivery (which will always be best effort delivery) but also for premium content delivery, for instance for IPTV and OTT services, deeply deployed into telco and enterprise networks.

This means that CDN technologies have to be upgraded from basic caching and DNS technologies to advanced distribution and geo load balancing technologies. This is not just a trend, we are selling CDNs to large telcos for exactly that reason. Our CDN technology does offer premium functions over 'regular' CDNs.

We also predict that telcos do not want to deploy yet-another-box in their network but want to work with software solutions instead. Our CDN technology is 100% software and we have an open delivery vendor strategy: we don't sell caching appliances, we focus on the CDN intelligent layer instead.

I am convinced that bundling of a commercial tuned up and fully supported version of NGINX combined with our CDN management suite **can really make a punch in the CDN space**, especially if we can align strategies, use our partnerships and if we can align road maps for the topics as described below.

*- excerpts from a CDN vendor summary on NGINX,*
*march 2011*