# EXHIBIT 8

Alexander D. Pencu (pro hac vice)
adp@msf-law.com
Christopher J. Major (pro hac vice)
cjm@msf-law.com
Jeffrey P. Weingart (pro hac vice)
jpw@msf-law.com
MEISTER SEELIG & FEIN PLLC
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Fax: (646) 539-3649

Patricia L. Peden (State Bar No. 206440)
DeMarcus B. T. Williams (State Bar No. 329756)
20-3778@cases.warrenlex.com
WARREN KASH WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNWOOD INVESTMENTS CY LIMITED,<br>Plaintiff,<br>vs.<br>MAXIM KONOVALOV, IGOR SYSOEV, ANDREY ALEXEEV, MAXIM DOUNIN, GLEB SMIRNOFF, ANGUS ROBERTSON, NGINX, INC. (BVI), NGINX SOFTWARE, INC., NGINX, INC. (DE), BV NGINX, LLC, RUNA CAPITAL, INC., EVENTURE CAPITAL PARTNERS II LLC and F5 NETWORKS, INC.,<br>Defendants. | Case No. 3:20-cv-03778-MMC<br><br>**PLAINTIFF'S FOURTH REQUEST FOR THE PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANTS** |

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff HF Investments CY Limited f/k/a Lynwood Investments CY Limited ("Plaintiff" or "Lynwood") hereby requests that Defendants produce the following documents and things for discovery and inspection at the offices of Warren Kash Warren LLP, 2261 Market Street, No. 606, San Francisco, CA, 94114, within 30

days after service hereof, in accordance with the following definitions and instructions ("Requests").

**DEFINITIONS**

Unless specifically indicated, or otherwise required by the context in which the terms and names are used, the following definitions and instructions apply. Capitalized terms used in these definitions are defined separately in the following definitions.

1. "Action" means the above-captioned action.

2. "Alexeev", "Andrey Alexeev," or "Andrew Alexeev" means defendant Andrey Alexeev, a natural person, his attorneys, agents, and/or any other person or entity acting for or on his behalf.

3. "BV NGINX, LLC," or "BV NGINX" means BV NGINX, LLC and its officers, directors, members, principals, employees, agents and all other persons or entities acting on its behalf, in addition to all subsidiaries, wholly owned or partly owned, of BV NGINX.

4. "Communication" or "Communications" means, unless otherwise specified, any of the following: (1) any letter, memorandum, electronic mail, text message, instant message, electronic message, notes, or other writing or document whether typed, long hand or otherwise generated, in any and all media, wherever or however stored, retained or recovered; (2) any telephone call between two or more persons; and (3) any conversation or meeting between two or more persons, whether or not such contact was by chance or pre-arranged, formal or informal.

5. "Concerning" shall be construed in its most inclusive sense and shall mean reflecting, pertaining to, consisting of, relating to, comprising, mentioning, pertaining to, involving, describing, discussing, detailing, supporting, contradicting, constituting, embodying, or in any way logically or factually connecting with the matter discussed. A document "relating to" a given subject is any document that reflects, constitutes, contains, embodies, pertains to, mentions, consists of, comprises, shows, comments on, evidences, describes, or in any other way references that subject.

6. "Defendants" refers, individually and collectively, to Defendants NGINX BVI, NGINX SI, NGINX DE, F5, Konovalov, Sysoev, Alexeev, Dounin, Smirnoff, and Robertson.

7. "Disloyal Employees" means, individually and collectively, Defendants Sysoev, Konovalov and Smirnoff.

8. "Document" or "documents" is synonymous in meaning and equal in scope to the usage of this term in the Federal Rule of Civil Procedure 34(a), including, without limitation, any written, printed, recorded, reproduced or graphically depicted matter in actual or constructive possession, custody, or control of Defendants whether stored on paper or otherwise.  For purposes of these requests, "document" or "documents" include computer printouts, computer files, computer disks, computer tapes and database records, computer software, or any computerized information of any other kind, correspondence, e-mail, memoranda, reports, studies, statements, notes, computations, records and plans, further including every non-identical draft of copy thereof, and any physical specimen or tangible item in the actual or constructive possession, custody, or control of Defendants including, but not limited to, research and development samples, prototypes, production samples, and all other tangible things which come within the meaning of terms "documents" or "tangible things" used in Fed. R. Civ. P. 34 or "writings and recordings" used in Fed. R. Evid. 1001.

9. "Dounin" or "Maxim Dounin" or "Maxim Sergeevich Dounin" means defendant Maxim Dounin, a natural person, his attorneys, agents, and/or any other person or entity acting for or on his behalf.

10. "F5 Networks, Inc." or "F5" means defendant F5 Networks, Inc., and its officers, directors, members, principals, employees, agents and all other persons or entities acting on its behalf, in addition to all subsidiaries, wholly owned or partly owned, of F5.

11. "Jet-Stream" means Jet-Stream BV, with offices at Hoge der A 12, 9712AC Groningen, The Netherlands, and its officers, directors, members, principals, employees, agents and all other persons or entities acting on its behalf, in addition to all subsidiaries, wholly owned or partly owned, of Jet-Stream BV.

12. "Konovalov", "Maxim Konovalov" or "Maxim Olegovich Konovalov" means defendant Maxim Konovalov, a natural person, his attorneys, agents, and/or any other person or entity acting for or on his behalf.

13. "Korotkov" or "Alexander Korotkov" means non-party Alexander Germanovich Korotkov, a natural person, his attorneys, agents, and/or any other person or entity acting for or on his behalf.

14. "Lynwood Investments CY Limited," "Lynwood," or "Plaintiff" means plaintiff Lynwood Investments CY Limited, and its officers, directors, members, principals, employees, agents and all other persons or entities acting on its behalf.

15. "NGINX Defendants" means, collectively, defendants NGINX BVI, NGINX SI, and NGINX DE.

16. "NGINX, Inc. (BVI)" or "NGINX BVI" means defendant NGINX, INC. (BVI), and its officers, directors, members, principals, employees, agents and all other persons or entities acting on its behalf, in addition to all subsidiaries, wholly owned or partly owned, of NGINX BVI.

17. "NGINX, INC. (DE)" or "NGINX DE" means defendant NGINX, INC. (DE), and its officers, directors, members, principals, employees, agents and all other persons or entities acting on its behalf, in addition to all subsidiaries, wholly owned or partly owned, of NGINX DE.

18. "NGINX LLC" means: Общество с ограниченной ответственностью "Энджиникс", Main State Registration Number (ОГРН): 1117746634279.

19. "NGINX Open Source" of "Open Source NGINX" means the open source software program known as "NGINX Open Source", as referenced on the Web site located at https://docs.nginx.com/nginx/admin-guide/installing-nginx/installing-nginx-open-source/#, and all prior and current versions, components and releases thereof, in all forms, including all source code and executable code thereof, and all related NGINX Documentation.

20. "NGINX Plus" or "NGINX+" means the software program known as "NGINX Plus" as referenced on the F5 Web site located at https://www.f5.com/products/nginx/nginx-plus and all prior and current versions, portions, components and releases thereof, in all forms, including all source code and executable code thereof, and all related NGINX Documentation.

21. "NGINX Software, Inc.," or "NGINX SI" means defendant NGINX Software, Inc., and its officers, directors, members, principals, employees, agents and all other persons or entities acting on its behalf, in addition to all subsidiaries, wholly owned or partly owned, of NGINX SI.

22. "Person" means any natural person, legal entity, or business entity, including but not limited to any corporation, partnership, proprietorship, trust, association, organization or group of persons.

23. "Pre-Exit NGINX Plus" has the meaning set forth in Paragraph 2 of the Second Amended Complaint in this Action, Dkt. No. 217, including, without limitation, all NGINX-related software developed or written by any of the Disloyal Employees from January 1, 2008 through November 12, 2012 that was not released as NGINX Open Source and/or that was incorporated into NGINX Plus at any time.

24. "Rambler Internet Holding LLC," or "Rambler" means non-party Rambler Internet Holding LLC, and its officers, directors, members, principals, employees, agents and all other persons or entities acting on its behalf, in addition to all affiliates and subsidiaries, wholly owned or partly owned, parent companies, and/or holding companies of Rambler.

25. "Robertson" or "Angus Robertson" or "Gus Robertson" means defendant Angus James Bruce Robertson, a natural person, his attorneys, agents, and/or any other person or entity acting for or on his behalf.

26. "Second Amended Complaint" means the Second Amended Complaint filed by Plaintiff on April 7, 2025 in the United States District Court for the Northern District of California in the Action, Dkt. No. 217.

27. "Smirnoff" or "Gleb Smirnoff" or "Gleb Alexandrovich Smirnoff" means defendant Gleb Smirnoff, a natural person, his attorneys, agents, and/or any other person or entity acting for or on his behalf.

28. "Sysoev" or "Igor Sysoev" or "Igor Vladimirovich Sysoev" means defendant Igor Sysoev, a natural person, his attorneys, agents, and/or any other person or entity acting for or on his behalf.

29. The "Team" means, individually and collectively, Defendants Sysoev, Konovalov, Smirnoff, Alexeev and Dounin.

30. "Thing" has the broadest meaning prescribed by Fed. R. Civ. P. 34, and includes every kind of physical specimen or tangible item, other than a document, that is in your possession, custody or control.

31. "Third party" means all persons, individuals, corporation, partnerships, and other entities of any kind which are not parties to this litigation, including customers and Investors, as well as persons acting on behalf of such third parties, including their officers, agents, employees, consultants and attorneys.

32. "You" or "your," refers to any or all of the Defendants.

**INSTRUCTIONS**

1. The terms "identify," "identity" or "identification" shall be construed as follows, when used in reference to:

    a. a natural person, his or her: full name; home address; business address; and present or last known position, business affiliation and job title or description;

    b. a company, corporation, association, partnership or any legal entity other than a natural person: its full name; and the address of its principal place of business;

    c. a document: its description (for example, letter, memorandum, reports, etc.); its date; its subject matter; the identity of its author, signer and any person who participated in its preparation; and the identity of each person to whom copies were sent and each person by whom copies were received; and its present location;

    d. an oral communication: the date and time when it occurred; the place where it occurred; a summary of the communication; the identity of each person involved in such communication; and the identity of all documents memorializing, referring or relating in any way to the subject matter of the communication.

2. The terms "all" and "each" shall be construed as all and each.

3. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the topics all responses that might otherwise be construed to be outside of its scope.

4. The word "any" shall be construed to include the word "all" and the word "all" shall be construed to include the word "any." The word "including" shall mean "including but not limited to."

5. The terms "sale" and "sold" shall be construed to include sales, and other sales arrangements such as leases, rentals, consignments, service agreements, and other similar transactions to or with any users, customers or licensees.

6. The terms "involving," "involve," and "involved" is used in its broadest sense to mean without limitation including, employing, entailing, comprehending, and/or affecting.

7. The terms "evidencing," shall be interpreted to include proving in whole or in part, tending to prove in whole or in part, indicating in whole or in part, or being probative of the existence or nature of the subject of the document requests.

8. When requested to provide or refer to a date, the responding party shall provide the exact date, month, and year if ascertainable, or if not ascertainable, the best approximation thereof.

9. The terms "users," "potential users," "customers" and "licensees," as well as their singular variants shall be construed as any user, potential user, customer, potential customer, licensee or potential licensee, regardless of where such Person actually uses or accesses a product.

10. References to any natural person shall be construed to include, in addition to the natural person, any agent, employee, representative, attorney, superior, or principal thereof.

11. References to any entity shall be construed to include, in addition to the entity, any officer, director, employee, partner, corporate parent, subsidiary, affiliate, holding company, successor, assignee, agent, representative, attorney, or principal thereof.

12. The use of the term "the" shall not be construed as limiting the Request.

13. Use of the singular shall also include the plural, and vice-versa.

14. Unless another time period is specifically indicated in a Request, all Requests for production should be construed to encompass the period beginning on January 1, 2008 through December 31, 2012.

15. Each document produced shall be segregated and identified according to the numbered Request to which it is responsive or shall be designated in some other manner sufficient

to identify to which Request it is responsive or shall be produced as it is kept in the usual course of business.

16. For all responsive documents that have already been translated into a different language, in whole or in part, the existing translations shall also be produced.

17. If any responsive document has been lost, discarded, transferred to another person or entity, destroyed, or otherwise disposed of, state in writing:

    a. the date, name and subject matter of the document;

    b. the name, address, employment and title of each person who prepared, received, reviewed, or had custody, possession or control of the document;

    c. all persons with knowledge of the contents or any portion of the contents of the document;

    d. the previous location of the document;

    e. the date of disposal or transfer of the document;

    f. the reason for disposal or transfer of the document;

    g. the manner of disposal of the document; and

    h. the names and addresses of the transferee of the document, if applicable.

18. If any Request is objected to or documents or things responsive to any Request is withheld under a claim of privilege or otherwise, with respect to each such Request, Defendants shall, in the response or objection, identify the nature of the privilege (including work product) which is being claimed and, if the privilege is being asserted in connection with a claim or defense governed by state law, set forth the state privilege rule being invoked. When any privilege is claimed, Defendants shall indicate, as to the information requested, whether any such documents exist.

19. These Requests are deemed to be continuing in nature, and Defendants are under an obligation to supplement or amend its responses promptly upon learning of additional information or information which renders Defendants' existing responses inaccurate or incomplete.

20. If a Request cannot be answered in full, then it shall be answered to the fullest extent possible, with an explanation as to why a complete answer is not provided.

WARREN KASH
WARREN LLP,
ATTORNEYS AT LAW
SAN FRANCISCO

- 8 -   CASE NO. 3:20-CV-03778-MMC
FOURTH REQUEST FOR THE PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANTS

21. These Requests, including the Definitions and Instructions, are intended to be consistent with the scope and requirements of all applicable rules and law. No Instruction or Definition provided herein is intended to constrict or expand Defendant's obligation to provide disclosures in accordance with all applicable rules of law, including Rules 26 and 34 of the Federal Rules of Civil Procedure, and Local Civil Rule 34.1.

**DOCUMENTS AND THINGS REQUESTED**

1. All Documents and Communications concerning any agreements, contracts and/or statements of work between any of the Defendants and Jet-Stream.

2. All Documents and Communications concerning software, products, and/or work product provided to Jet-Stream by any of the Defendants.

3. All Documents and Communications concerning any services (including software engineering, design, development, testing, implementation, maintenance and/or support services) provided to Jet-Stream by any of the Defendants.

4. All Documents and Communications concerning the design and development of software for Jet-Stream or Jet-Stream's customers by any of the Defendants in 2010 or 2011.

5. All Documents and Communications concerning consulting and/or development services provided by any of the Defendants to Jet-Stream in 2010 or 2011.

6. All invoices issued by any of the Defendants to Jet-Stream for services rendered in 2010 or 2011.

7. Documents sufficient to show payments made by Jet-Stream to any of the Defendants, including, without limitation, all Documents sufficient to show the reason for such payment and the services and/or products delivered by Defendants to Jet-Stream or Jet-Stream's customers in consideration for such payments.

8. All computer software in both source code and object code form used by Jet-Stream that was developed by, or on behalf of, or with the assistance of, any of the Defendants, in whole or in part, in 2010 or 2011.

9. All Communications with Jet-Stream in 2010 or 2011 concerning proprietary, non-open source custom modules and/or extensions of Open Source NGINX.

10. All Documents and Communications concerning the "proprietary extensions and additional controls" referenced in the press release dated November 21, 2011 attached as Exhibit A hereto.

11. All Documents and Communications concerning the "commercial extensions" referenced in the following sentence in the press release dated November 21, 2011 attached as Exhibit A hereto: "For its part, NGINX will provide additional commercial extensions to its open source product to fine-tune NGINX edge notes for the CDN environment."

12. All Communications with Jet-Stream in 2010 or 2011 concerning computer software that ever became part of NGINX Plus.

13. All Documents concerning computer software, which ever became part of NGINX Plus, that was delivered to Jet-Stream or Jet-Stream's customers by any of the Defendants in 2010 or 2011.

14. All computer software developed for, or delivered to, Jet-Stream, by any of the Defendants, in 2010 or 2011, that provided functionality related to video streaming, caching, URL session tracking and logging, blocking access to content dynamically, frustration of third-party caches, changing URLs on the fly, provision of detailed server performance metrics in real time, application health checks, live active monitoring, advanced load balancing, on-the-fly reconfiguration of load-balanced upstream groups, extended logging capabilities, high availability setup, adaptive media streaming, and/or user dashboard to display real-time application status and health-check information.

15. All Communications between any of the Defendants and Jet-Stream in 2010 or 2011.

| | |
|---|---|
| Date:  January 16, 2026 | Respectfully submitted, |
| | */s/ DeMarcus B. T. Williams* |
| | Alexander D. Pencu (pro hac vice) |
| | adp@msf-law.com |
| | Christopher J. Major (pro hac vice) |
| | cjm@msf-law.com |
| | Jeffrey P. Weingart (pro hac vice) |
| | jpw@msf-law.com |
| | MEISTER SEELIG & FEIN PLLC |
| | 125 Park Avenue, 7th Floor |
| | New York, NY 10017 |
| | Telephone: (212) 655-3500 |
| | Fax: (646) 539-3649 |
| | |
| | Patricia L. Peden (State Bar No. 206440) |
| | DeMarcus B. T. Williams (State Bar No. 329756) |
| | 20-3778@cases.warrenlex.com |
| | WARREN KASH WARREN LLP |
| | 2261 Market Street, No. 606 |
| | San Francisco, California, 94114 |
| | +1 (415) 895-2940 |
| | +1 (415) 895-2964 facsimile |
| | |
| | *Attorneys for Plaintiff* |

WARREN KASH WARREN LLP, ATTORNEYS AT LAW SAN FRANCISCO

- 11 -    CASE NO. 3:20-CV-03778-MMC
FOURTH REQUEST FOR THE PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANTS

# CERTIFICATE OF SERVICE

I, Kailey Fung, certify under 28 U.S.C. § 1746:

On January 16, 2026, I served the foregoing Plaintiff's Fourth Request for the Production of Documents and Things to Defendants with Exhibit A by electronic mail to counsel for F5 Networks, Inc., NGINX, Inc. (BVI), and NGINX Software, Inc.'s at JGratz@mofo.com, CSpinelli@mofo.com, BFox@mofo.com, MMarciszewski@mofo.com, and AndrewNguyen@mofo.com.

I declare under the penalty of perjury that the foregoing is true and correct. Executed on January 16, 2026, in San Francisco, California.

_____
Kailey Fung

# EXHIBIT A



**Source:** Sand Hill Communications, Inc.

November 21, 2011 11:00 ET

# Open Source Web Server Leader NGINX and Market-Leading CDN Provider Jet-Stream Form Commercial Partnership

## Innovative Players Join Forces to Provide Advanced CDN and Caching Features to Telco and Enterprise Customers

SAN FRANCISCO, CA and GRONINGEN, THE NETHERLANDS--(Marketwire - Nov 21, 2011) - Open source web server developer [NGINX](#) and [Jet-Stream](#), the award-winning market leader in Content Delivery Network (CDN) technologies and intelligence, have formed a commercial partnership to deliver enhanced CDN products and services to network operators, content publishers, telecommunications companies and enterprises.

Under the agreement, Jet-Stream will integrate the NGINX open source version into its software suite, incorporating proprietary extensions and additional controls. Jet-Stream will leverage high-performance NGINX edge nodes, capable of delivering multiple gigabits of outbound traffic per hardware server, to improve performance and reliability for customers. For its part, NGINX will provide additional commercial extensions to its open source product to fine-tune NGINX edge nodes for the CDN environment.

"Jet-Stream is the most innovative company in the multimedia content delivery space with enormous influence on this segment of the industry," said Andrey Alexeev, co-founder of NGINX. "We are very pleased to inaugurate this new partnership, which enables both our companies to provide a rich new set of performance benefits to a wider range of enterprise and telecommunications customers."

The NGINX web server currently powers 25% of the top 1,000 busiest websites in the world, and its unique ability to deliver 10-times performance improvements on existing operating

systems and hardware -- combined with lean architecture, scalability and security -- has propelled it to become the second most popular open source web infrastructure platform on the Internet. The award-winning Jet-Stream CDN technology is an advanced, next-generation solution for network operators and content publishers used by IP network operators worldwide to offload traffic on their infrastructures and to monetize premium content delivery services across a variety of fixed and mobile platforms.

"NGINX is the best-performing and most flexible caching solution on the market," said Stef van der Ziel, founder and CEO of Jet-Stream. "Our technologies and philosophies of innovation are highly complementary, and provide us with a unique opportunity to change the market by providing advanced solutions to our customers."

In addition to offering integrated products to the market, Jet-Stream will leverage NGINX's services to implement and maintain the combined offering, incorporating a license within the Jet-Stream software licenses. NGINX will open its sales channel and referral sources to Jet-Stream.

**About NGINX**
From its earliest inception, NGINX has been driven by an understanding that Internet usage would explode with an increasing expectation of instant response from online services. NGINX was designed to enable companies to adjust to this new reality of heavy Internet consumption without incurring unnecessary costs in capital investments or time. In almost 10 years of its history NGINX has developed into a powerful Internet infrastructure platform which includes a webserver for static and dynamic content, Layer 7 load-balancer, reverse proxy for HTTP, SMTP, IMAP and POP3, caching engine and SSL offloading.

NGINX has grown organically over the past 10 years of development thanks to the vision of Igor Sysoev and the enthusiasm and support of a loyal community of users and developers.

In July 2011, the company founded its commercial arm, NGINX, Inc. For more information, please visit [www.nginx.com](www.nginx.com).

**About Jet-Stream**
Jet-Stream is the award-winning market leader in Content Delivery Network technologies and intelligence. Jet-Stream researches, develops and licenses next-generation CDN technologies. Jet-Stream technology is used by many IP network operators around the globe to offload traffic on their infrastructures and to monetize premium content delivery services for three-screen IPTV, mobile content, web content and OTT content. Clients of Jet-Stream are well-known telecom operators, mobile operators, cable operators, Internet access providers, wholesale carriers, broadcasters, hosting providers, enterprises and system integrators. For more information please visit [http://www.jet-stream.com](http://www.jet-stream.com).

Contact Information:

Contact:
Valerie Chan

206-352-9052