Alexander D. Pencu (pro hac vice)
adp@msf-law.com
Christopher J. Major (pro hac vice)
cjm@msf-law.com
Jeffrey P. Weingart (pro hac vice)
jpw@msf-law.com
MEISTER SEELIG & FEIN PLLC
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Fax: (646) 539-3649

Patricia L. Peden (State Bar No. 206440)
DeMarcus B. T. Williams (State Bar No. 329756)
WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
20-3778@cases.warrenllp.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LYNWOOD INVESTMENTS CY LIMITED,<br><br>    Plaintiff,<br><br>v.<br>MAXIM KONOVALOV, IGOR SYSOEV,<br>ANDREY ALEXEEV, MAXIM DOUNIN,<br>GLEB SMIRNOFF, ANGUS ROBERTSON,<br>NGINX, INC. (BVI), NGINX SOFTWARE,<br>INC., NGINX, INC. (DE), BV NGINX, LLC,<br>RUNA CAPITAL, INC., EVENTURE CAPITAL<br>PARTNERS II LLC and F5 NETWORKS, INC.,<br><br>    Defendants. | Case No. 3:20-cv-03778-MMC<br><br>**JOINT DISCOVERY LETTER<br>BRIEF #3  RE: DEFENDANT F5'S<br>DOCUMENT PRODUCTION** |

The attached letter brief addresses a discovery dispute between Plaintiff H.F. Investments CY Limited f/k/a Lynwood Investment CY Limited's ("Plaintiff" or "Lynwood") and Defendants F5 Networks, Inc., NGINX, Inc. (BVI) and NGINX Software Inc. (collectively "F5 Defendants") concerning: (1) Plaintiff's revised proposed search terms for emails of the F5 Defendants; and (2) Requests for Production Nos. 33, 44, 81, 88-89, and 91 from Plaintiff's Second Set of Requests for Production to the F5 Defendants.

The parties engaged in multiple video conference meet and confer sessions and have adhered to Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery before submitting this joint letter.  Lead trial counsel for both parties held a telephonic meet and confer conference on March 16, 2026.  During this conference, the parties agreed that they had reached an impasse and further agreed to submit the dispute to the Court for resolution.  During the briefing period, the parties continued to meet and confer, eliminating some disputes.  The parties now seek the Court's resolution of the disputes that remain.

Dated:  March 24, 2026

Respectfully submitted,

*/s/ Christopher J. Major*

Alexander D. Pencu (pro hac vice)
adp@msf-law.com
Christopher J. Major (pro hac vice)
cjm@msf-law.com
Jeffrey P. Weingart (pro hac vice)
jpw@msf-law.com
MEISTER SEELIG & FEIN PLLC
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Fax: (646) 539-3649

Patricia L. Peden (State Bar No. 206440)
DeMarcus B. T. Williams (State Bar No. 329756)
WARREN LLP
20-3778@cases.warrenllp.com
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile

*Attorneys for Plaintiff*

Case No. 3:20-cv-03778-MMC
JOINT DISCOVERY LETTER BRIEF

Dated:  March 24, 2026

/s/ Eric C. Pai
Eric C. Pai (CA SBN 247604)
MORRISON & FOERSTER LLP
755 Page Mill Road, CA 94304-1018
Telephone: (650) 813-5600
Facsimile: (650) 494-0792
EPai@mofo.com

Benjamin J. Fox (CA SBN 193374)
Mark D. Marciszewski (CA SBN 344240)
Andrew Q. Nguyen (CA SBN 357744)
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California 90017-3543
Telephone: (213) 892-5200
Facsimile: (213) 892-5454
BFox@mofo.com; MMarciszewski@mofo.com;
AndrewNguyen@mofo.com

*Attorneys for Defendants*
F5 Networks, Inc., NGINX, Inc. (BVI),
and NGINX Software, Inc.

**Plaintiff's Position**

1.      Despite Plaintiff providing proposed search terms and custodians on 9/18/25, which the F5 Defendants ("F5") initially agreed to run, F5 continuously obstructed document production. F5 waited until 11/12/25 to first object to Lynwood's terms and then repeatedly refused to meet and confer or provide requested hit counts for weeks. F5 further stalled until 12/15/25 to reveal they only searched 6 custodians and offered a counterproposal, providing a meaningless aggregate hit count of 1.1 million while withholding term-specific data. Although Lynwood demanded hit counts on 11/17/25, F5 ignored this and other requests for meet and confers, finally providing hit counts per search term across 6 custodians on 1/20/26. Lynwood substantially revised its terms 6 times.

F5 should review and produce documents from two sets of search terms. The first is Lynwood's 1/27/26 revised 13 search terms for the 2008-2013 period. The total unique hits reported by F5 for this set is 28,550. Lynwood separated these documents and shrunk the applicable time period by 7 years based on hit counts F5 finally provided on 1/20/26 and 1/22/26. F5's only complaint about these terms is that, in the aggregate, F5 reports 85,387 total hits (i.e., not unique) out of a searchable set of 89,987. F5's assertion is misleading. The searchable set is in fact 952,870, including all documents from 2008-2020 in the 10 custodial files to which F5 claims it has access. In reality, the hit percentage for the limited time period search is just 8.9% of F5's searchable set. The second set is Lynwood's 3/16/26 revised 141 search terms for 2008 – 2020. F5 has not provided de-duplicated results for the two searches, but F5 does not challenge Lynwood's point that there is substantial if not complete overlap. Lynwood's 6 rounds of revisions reduced the total hits *from 1,096,891 to 363,776*. F5 recites its count of "emails and attachments" to state a higher number of hits. This is misleading. F5 has not reviewed the documents and has not articulated how it knows the family members of the emails are substantive attachments, rather than security notices, logos, and other non-substantive data files that do not require meaningful review.

The search terms for both time periods all contain extensive limiters to mitigate against hits on irrelevant documents. Lynwood cut the total search terms down from 236 to 154. F5 discusses 3 of Lynwood's 154 search terms. Those 3 terms seek highly relevant documents. The repositories where the conspirators stored proprietary NGINX code are critical in this case. One such repository was Github. It is not surprising that the search generates 58,427 emails, given its importance. Similarly, search terms regarding the hosting of NGINX code only returns 36,179 hits and NGINX code only returns 37,544 hits, which is proportional. Three examples out of 154 search terms is not a basis to reject Lynwood's search terms - at most, 3 terms could be trimmed.

The search terms are proportional with the needs of this complex case. *See Netskope, Inc. v. Fortinet, Inc.,* 2025 WL 3190693, *2 (N.D. Cal. Nov. 14, 2025) (producing party bears the burden of proving undue burden from search terms); *In re eBay Seller Antitrust Litig.*, 2009 WL 10694848 (N.D. Cal. July 13, 2019) (plaintiff proposed 302 proposed search terms yielding over 400,000 hits, but the court directed plaintiff to select 105 terms where the defendant already applied 300 of its own search terms and produced 1.9 million pages at a cost of over $2 million). Here, F5 has produced just 3,218 documents and claims to have not reviewed any other documents. Proportionality is further supported by F5's alleged inability to access documents from 7 of Lynwood's 17 requested custodians. And for 1 of the custodians F5 claims to have accessed – Igor Sysoev, the lead author of the code at issue – F5 identified just 41 total documents. F5 contends the custodial count could grow, but in reality F5 represents it has records for only 10 of the custodians and Lynwood already dropped 2 of them. The early NGINX LLC employees likely communicated from their NGINX company email with the Disloyal Employees, who deleted much of their Rambler communications and equipment. Dkt. No. 217 ¶¶318-327. Thus, NGINX employees are among the only sources of data from that time period. Indeed, all of the Individual Defendants combined have produced a total of 35 documents, and 0 emails. The

massive and glaring gaps in data justify reviewing more of the limited data Defendants actually still have.

Lynwood has reviewed more than 475,000 of its own documents to respond to F5's discovery. F5 asserts that Lynwood only produced "about 3,000" documents. Lynwood is making a supplemental production (of approximately 10,000 documents). Moreover, Lynwood recognized that the Individual Defendants' destruction of data at Rambler to cover their tracks necessitated a broader based search of restored data. Defendants wrongly blame Plaintiff for not accepting their overreaching redlined ESI Order. Plaintiff reasonably declined F5's proposed order because it sought blanket data exclusions—including archives and systems "no longer in use"—while Defendants simultaneously refused to identify what custodial files remained available. Plaintiff instead proceeded by identifying custodians and proposing targeted search terms, consistent with ESI Guidelines and accepted by F5 for months. F5 disingenuously claims it made source code available. This is false. F5 has blocked Lynwood's experts from inspecting the source code and reviewing any of the 3,218 documents F5 produced and marked as highly confidential, by refusing to comply with the Protective Order and permitting Lynwood's experts access. That dilatory tactic is the subject of Lynwood's separate, forthcoming motion to compel. And when F5 states that it recently proposed alternative search terms, it means 11 minutes before F5 sent its draft half of this letter. F5 has participated in 6 rounds of Lynwood editing its search terms to cut the hits by more than half. The Court should reject F5's 11th-hour attempt to unilaterally rewrite the search terms. F5's attempt to diminish the relevancy of post-2011 emails also fails. The Court addressed this issue in its Order on Lynwood's motion to compel against Netflix, holding: "to the extent the discovery requests are focused on the code that is ultimately part of the NGINX Plus code developed before the end of 2011, such discovery would appear to be within the scope of the Initial Phase Fact Discovery even if they are based on statements made in 2014." Dkt. No. 252, p. 5.

F5's cases are distinguishable or favor Lynwood. Unlike the requests in *Hastings v. Ford Motor Co.*, 2021 WL 5689108 (C.D. Cal. June 2021), *Thompson v. Swift Transp. Co. of Ariz. LLC*, 2025 WL 4058303 (C.D. Cal. Nov. 25, 2025), and *TVIIM, LLC v. McAfee, Inc.*, 2014 WL 5280966 (N.D. Cal. 2014), Lynwood's requests include limiters to code, repositories, functionality, and actors. *Wonderland Nurserygoods Co. Ltd. v. Baby Trend, Inc*., 2021 WL 8649897 (C.D. Cal. May 21, 2021), disallowed a name search without limiters but allowed non-indiscriminate terms. *In re Mosaic LLM Lit*., 2025 WL 3078831 (N.D. Cal. Nov. 4, 2025), denied additional searches where the objecting party already made a sufficient production, and the additional proposed search terms were irrelevant. In *Taylor v. Shutterfly*, Inc., 2020 WL 5232607 (N.D. Cal. Sept. 2, 2020), Plaintiff sought to use "Groupon" without limitation, unlike Plaintiff's terms calibrated with word and date limitations. *Crews v. Rivian Auto., Inc.* (C.D. Cal. June 21, 2024), does not discuss actual search terms or limiters and is too conclusory to be helpful.

**2**. The Court should overrule F5's objections to Requests 33 and 44, which seek documents and communications regarding the Disloyal Employees providing proprietary non-Open Source NGINX code and services to third parties for remuneration from 1/1/08 through 12/31/2012 (i.e., while employed at Rambler). The Disloyal Employees' profit motivated conduct concerning the exact software in issue is relevant to Lynwood's claim and liability theory. *See Rumble, Inc. v. Google LLC*, 2023 WL 3751797, *6 (N.D. Cal. May 31, 2023); *Gold v. Kaplan*, 2021 WL 6618643, *5 (C.D. Cal. Dec. 2, 2021). F5 disingenuously claims the information is only relevant to damages. Plaintiff does not seek licensing revenue over the life of NGINX Plus. Plaintiff seeks information about the Disloyal Employees writing proprietary NGINX while at Rambler as demonstrated by limiting the dates to their Rambler employment. F5's proposal to produce these documents only for "specific customers" would improperly allow F5 to withhold relevant documents.

**3.** F5 also refuses to search for documents responsive to Requests Nos. 81, 88-89, which seek documents concerning the Disloyal Employees' removal and destruction of Rambler servers and equipment. Request 91 seeks documents concerning the Rambler servers specifically identified in the Complaint. Dkt. No. 217, ¶¶310-311, 314-315, 318-327.  These requests are highly relevant because the servers and equipment were the original repositories of the proprietary NGINX Plus code.  If F5 has a high volume of documents concerning Rambler equipment, as F5's hit count report indicates, that is highly relevant (and concerning).  The potential spoliation is relevant for summary judgment and trial.  *See Bungie, Inc. v. Phoenix Digital Group LLC,* 2024 WL 4008567, **2-4 (W.D. Wash. 2024). Tellingly, F5 rejected Lynwood's request to produce documents concerning the content stored on the Rambler servers that the Individual Defendants misappropriated. Defendants never should have possessed Rambler servers or equipment, so the temporal scope of these Requests is appropriate. Lynwood should not have to rely on F5 to determine whether the misappropriated Rambler equipment contained NGINX Plus.

**Defendants' Position**

**1.  Lynwood's Search Terms Are Disproportional and Not Tailored to Phase 1.**  Lynwood seeks an order departing from standard procedures by compelling F5 to use Lynwood's unilaterally selected search terms and review, as a starting point, 575,000 emails and attachments from two sets of search terms.  *See, e.g., Crews v. Rivian Auto., Inc.*, No. CV 22-1524, 2024 WL 5689108, at *2 (C.D. Cal. June 21, 2024) (rejecting plaintiff's effort to impose broad search terms and dictate Rivian's ESI search methods); *Hastings v. Ford Motor Co.*, No. 19-cv-2217, 2021 WL 1238870, at *2 (S.D. Cal. Apr. 2, 2021) ("Nothing in Rule 34 requires … a producing party to accede to demands … particular search terms be used"); *accord Baranco v. Ford Motor Co.*, No. 17-CV-03580, 2018 WL 9869540, at *1 (N.D. Cal. Apr. 10, 2018) ("when search terms are used in ESI discovery, the parties should cooperate to select reasonable search terms").  Lynwood's approach is not proportional to the needs of the case or tailored to Phase 1 discovery.

Lynwood's first set of terms (2008-2013) returned 89,893 out of 89,987 sample documents, 99.9% of the searchable set.[1]  Its second set (2008-2020) returned 485,609 out of 952,870 documents, or 51% of the searchable set.  Even assuming total overlap between sets, Lynwood's process would require review of at least 485,609 documents for 8 custodians.  This number is likely to grow, as Lynwood sought 17 custodians and reserved its right to add the 2 custodians it claimed to have dropped.

These results stem from Lynwood's overbroad terms, which use generic references to "NGINX" that capture the NGINX entities' names, email domains, and *Open Source NGINX*.  For example:

- (NGINX* OR code*) w/5 (git OR Github) (~94K documents including family)
- NGINX* w/5 host* (~103K documents including family)
- NGINX w/7 (code* or software*) (~77K documents including family)

Courts routinely reject similar terms that capture large volumes of irrelevant material.  *See, e.g., TVIIM, LLC v. McAfee, Inc.*, No. 13-cv-4545, 2014 WL 5280966, at *2 (N.D. Cal. Oct. 15, 2014) (terms with company or product names generating 500,000 results overbroad); *Thompson v. Swift Transp. Co. of Ariz. LLC*, No. 25-cv-00503, 2025 WL 4058303, at *8 (C.D. Cal. Nov. 25, 2025) (party name returning 5,800 emails "overbroad and will result in an unduly burdensome number of irrelevant hits"); *Wonderland Nurserygoods Co. Ltd. v. Baby Trend, Inc.*, No. 14-cv-1153, 2021 WL 8649897, at *4 (C.D. Cal. May 21, 2021) ("searching for plaintiff's company name without narrowing parameters risks overproduction").

---

[1] Lynwood states incorrectly that its terms return 28,550 unique hits.  As F5 has explained to Lynwood, the "unique hits" reflect 28,550 documents returned by a single search term, but another 61,343 documents are returned by multiple search terms that F5 still must review.

Lynwood's arguments for its approach reduce largely to finger-pointing and ignore the history of negotiations. Lynwood's first search terms returned approximately 1.1 million hits out of 1.2 million documents; F5 provided counter search terms and a hit count report after Lynwood requested it. The parties then held extensive discussions concerning Lynwood's requests, the protective order, and an ESI protocol. F5 proposed following the Court's model ESI order, which would have significantly narrowed the issues in dispute. Lynwood declined and summarily rejected F5's proposed search terms, insisting that Lynwood write the terms to be used by F5, which turns the process on its head. *See, e.g.*, *Hastings*, 2021 WL 1238870, at *2.

Lynwood's assumption that the email attachments are not "substantive" documents is pure speculation and ignores that F5 would still need to review each of those attachments for responsiveness. Lynwood's conclusion that these attachments are not relevant underscores the overbreadth and undue burden of its search terms. *See In re Mosaic LLM Litig.*, No. 24-cv-1451, 2025 WL 3078831, at *3 (N.D. Cal. Nov. 4, 2025) ("search terms that will likely hit on tens of thousands of unresponsive and irrelevant documents" overly burdensome and not proportional).

Lynwood's analogy to its own unilaterally conducted document review also fails. Lynwood states that it reviewed 475,000 documents, but it has produced only about 3,000, just 1% of its review population. This result confirms its terms are not reasonably calibrated. *Taylor v. Shutterfly, Inc.*, No. 18-cv-00266, 2020 WL 5232607, at *2 (N.D. Cal. Sept. 2, 2020) (term "likely to hit an excessive number of irrelevant and non-responsive documents" not proportional). Lynwood's promise to produce another 10,000 documents would still mean that over 97% of Lynwood's reviewed documents were non-responsive. Lynwood's strategic decisions to spend endlessly on this case should not be imposed on F5. Fed. R. Civ. P. 26(b)(1).

In any event, email discovery is, at best, supplementary, especially for emails after 2011. The Court limited Phase 1 discovery to "whether any NGINX Plus code was written by defendant Sysoev or other former Rambler employees during their employment by Rambler before the end of 2011." (ECF No. 211 at 2.) F5 produced or made available the core evidence on this issue: its source code and contemporaneous development documents.[2] Lynwood has not inspected the code or identified any specific code allegedly created at Rambler. And Lynwood failed to provide the necessary expert disclosures to review source code under the protective order.

Lynwood's proposed 17 email custodians also are not tailored to Phase 1 discovery. Only six of Lynwood's requested custodians were employed at NGINX pre-2012. Lynwood's letter brief does not address the specific custodians or provide meaningful argument as to the number of custodians that are reasonable under the circumstances. *See, e.g.*, *Hastings*, 2021 WL 1238870, at *2-3 (plaintiff may not dictate specific custodians to be used by responding party). And Lynwood is also wrong that the individual defendants do not possess emails.

F5 recently proposed revised terms for documents from January 1, 2008, to June 8, 2020, across email inboxes for six custodians, each employed at NGINX on or before 2012, and four group distribution lists, which generate approximately 174,475 unique documents. Such a review is more than reasonable given the narrow Phase 1 issue. Contrary to Lynwood's argument, F5's proposal includes searching for emails up to the date of filing of the lawsuit (not only for 2011).

**2. Lynwood's RFPs 33 and 44 Are Outside Phase 1 Discovery and Unreasonable.** Requests 33 and 44 seek discovery concerning any payments for "NGINX-related software code" and "custom code and/or proprietary extensions of Open Source NGINX." The Court, however, specifically noted that payments are outside Phase 1 discovery. (3/11/2025 CMC Tr. 31:1-9 ("leaving out all the questions

---

[2] *Lynwood Invs. CY Ltd. v. Konovalov*, No. 22-16399, 2024 WL 4688895, at *6 (9th Cir. Nov. 6, 2024) ("Plaintiff alleges that commit dates can be used to determine the portions of the NGINX Plus code finalized before Sysoev left Rambler."); *see also* Lynwood's 9th Cir. Op. Br. at 53, 59.

about how much money [defendants] made and everything else until we get to that point").) Lynwood even conceded that such damages-related discovery, which it now recharacterizes as directed to "motive," was outside of Phase 1. (*Id.* at 33:13-15.)

Moreover, requests directed to "NGINX-*related* code" go beyond NGINX Plus, the only code at issue according to the Ninth Circuit and this Court. *Lynwood Invs.*, 2024 WL 4688895, at *5 (limiting Plaintiff's claim to "NGINX Plus 'developed' at Rambler," not Open-Source NGINX or software "conceived" but not written at Rambler). None of Lynwood's cited cases addresses a situation where the Court phased discovery to address a threshold issue. Compare, *e.g., Rumble, Inc. v. Google LLC*, No. 21-cv-00229, 2023 WL 3751797 (N.D. Cal. May 31, 2023) (Lynwood's cited case) *with Hoffman v. Goli Nutrition, Inc.*, No. 23-cv-06597, 2025 WL 2459081, at *2 (C.D. Cal. Aug. 25, 2025) ("The Court has inherent discretion to order phased discovery.").

F5 also proposed a compromise, over two months ago, to produce invoices sent to specific third parties (that Lynwood identified) for code that became part of NGINX Plus, if any such invoices could be located through a reasonably diligent search. Lynwood never responded.

**3. Defendants Are Not Aware of Documents Responsive to Overbroad RFPs 81, 88-89, 91.** F5 informed Lynwood that it is not aware of any documents responsive to Requests 81, 88-89, and 91, based on a reasonably diligent search. Nothing more is required at this stage. Yet to resolve this dispute, F5 also offered to search for and produce any documents that might in the future be located concerning the "removal and destruction of" servers at Rambler or "the Rambler servers specifically identified in the Complaint" (Lynwood Ltr. at 3) that can be located through a reasonable, diligent search. Lynwood's broader requests (including its counter-proposal for any other "equipment") would make further searching impractical by seeking all references to removal of "all tangible and/or intangible property" from Rambler "at any time"—with no subject matter limitation. This would encompass, e.g., the routine daily removal of a laptop when commuting home, which has no relevance to NGINX Plus, Phase 1, or any other issue. There is no basis for Lynwood's demand for all such documents without a Phase 1 limiter.