Alexander D. Pencu (pro hac vice)
adp@msf-law.com
Christopher J. Major (pro hac vice)
cjm@msf-law.com
Jeffrey P. Weingart (pro hac vice)
jpw@msf-law.com
MEISTER SEELIG & FEIN PLLC
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Fax: (646) 539-3649

Patricia L. Peden (State Bar No. 206440)
DeMarcus B. T. Williams (State Bar No. 329756)
WARREN LLP
20-3778@cases.warrenllp.com
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile

*Attorneys for Plaintiff Lynwood Investments CY Limited*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNWOOD INVESTMENTS CY LIMITED,<br>Plaintiff,<br><br>vs.<br><br>MAXIM KONOVALOV, IGOR SYSOEV,<br>ANDREY ALEXEEV, MAXIM DOUNIN, GLEB<br>SMIRNOFF, ANGUS ROBERTSON, NGINX,<br>INC. (BVI), NGINX SOFTWARE, INC., NGINX,<br>INC. (DE), BV NGINX, LLC, RUNA CAPITAL,<br>INC., EVENTURE CAPITAL PARTNERS II<br>LLC and F5 NETWORKS, INC.,<br>Defendants. | Case No. 3:20-cv-03778-MMC<br><br>**NOTICE OF MOTION AND<br>PLAINTIFF LYNWOOD<br>INVESTMENTS CY LIMITED'S,<br>MOTION TO PERMIT DISCLOSURE<br>TO EXPERT WITNESSES** |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 1, 2026, at 10:30 a.m. PST, or as soon thereafter as the matter may be heard, in Courtroom TBD of the United States District Court for the Northern District of California, Oakland Division, located at 1301 Clay Street, Suite 400S, Oakland, California 94612, before Magistrate Judge Kandis A. Westmore, Plaintiff HF Investments CY Limited f/k/a Lynwood Investments CY Limited ("Lynwood") will and hereby does move the Court, pursuant to Paragraph 7.4(c) of the Stipulated Protective Order entered in this action (Dkt. No. 260), for an order permitting Lynwood to disclose to its retained expert team information and materials designated by the F5 Defendants as "HIGHLY CONFIDENTIAL–ATTORNEYS' EYES ONLY" and/or "HIGHLY CONFIDENTIAL – SOURCE CODE."

This motion is made under Civil Local Rule 7, is based on Paragraph 7.4 of the Protective Order, including subparagraph (c), which authorizes a receiving party to seek leave of Court to disclose Protected Material to Designated House Counsel or Experts in the event of a dispute, and on such other authority as may be cited in Lynwood's accompanying Memorandum of Points and Authorities.

This motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration submitted herewith, the Stipulated Protective Order (Dkt. No. 260), the pleadings and records on file in this action, and such further argument and evidence as may be presented at or before the hearing on this motion.

Date:  March 27, 2026

Respectfully submitted,

/s/ *Patricia L. Peden*

Alexander D. Pencu (pro hac vice)
adp@msf-law.com
Christopher J. Major (pro hac vice)
cjm@msf-law.com
Jeffrey P. Weingart (pro hac vice)
jpw@msf-law.com
MEISTER SEELIG & FEIN PLLC
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Fax: (646) 539-3649

Patricia L. Peden (State Bar No. 206440)
DeMarcus B. T. Williams (State Bar No. 329756)

Case No. 3:20-cv-03778-MMC
NOTICE OF MOTION

WARREN LLP
20-3778@cases.warrenllp.com
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile

## **TABLE OF CONTENTS**

*Page*

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUE TO BE DECIDED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LEGAL STANDARD . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.    Disclosure to the Designated Experts is Reasonably Necessary . . . . . . . . . . . . . . . . . . . 4

      B.    Lynwood Fully Complied with The Protective Order's Disclosure Requirements . . . . . . 6

      C.    The F5 Defendants Improperly Sought To Convert Section 7.4's Disclosures Into Expert

           Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      D.    The F5 Defendants Cannot Meet Their Burden To Identify A Concrete Risk of Harm . . 8

      E.    The Protective Order and Acknowledgement Provide Robust Safeguards . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

## <u>TABLE OF AUTHORITIES</u>

*Cases*                                                                                   *Page*

*Advanced Micro Devices, Inc. v. LG Elecs., Inc.*,
    No. 14-1012, 2017 WL 3021018  (N.D. Cal. July 17, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4, 8, 9

*ESC‑Toy Ltd. v. Sony Interactive Entmt LLC*,
    No. 21-00778, 2022 WL 1714627 (N.D. Cal. May 27, 2022) . . . . . . . . . . . . . . . . . . . . . . . . 3-4, 10

*Olin v. Facebook, Inc.*,
    No. 18-1881, 2019 WL 5802020 (N.D. Cal. Nov. 7, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8, 9

## MEMORANDUM OF POINTS AND AUTHORITIES

### ISSUE TO BE DECIDED

The single issue to be decided is whether disclosure of HIGHLY CONFIDENTIAL–ATTORNEYS' EYES ONLY and HIGHLY CONFIDENTIAL –SOURCE CODE material to Lynwood's disclosed expert team is reasonably necessary for this litigation and whether Defendants can meet their burden under Paragraph 7.4(c) of the Stipulated Protective Order (Dkt. No. 260) (the "Protective Order") in this case to show that any risk of harm from such disclosure outweighs Lynwood's need for the disclosure.

### BACKGROUND

On February 23, 2026, Lynwood served its expert disclosures on all Defendants, identifying its retained experts, supplying the information required by Paragraph 7.4(a)(2), and formally requesting permission to disclose Defendants' HIGHLY CONFIDENTIAL–ATTORNEYS' EYES ONLY and HIGHLY CONFIDENTIAL–SOURCE CODE material to them. Lynwood's disclosed experts are a team of five (5) professionals from the consulting firm Global Data Risk LLC ("GDR"). Lynwood disclosed the resumes and engagements for each of the GDR professionals on the team, including their work outside of GDR, in full compliance with Paragraph 7.4(a)(2) of the Stipulated Protective Order.

On February 8, 2026, Lynwood made the same disclosure to non-party Netflix, Inc. ("Netflix"), which has produced documents designated as HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY and is making its source code available for inspection by Lynwood. Netflix and Defendants Igor Sysoev, Maxim Konovalov, Gleb Smirnoff, Andrei Alexeev, or Angus Robertson never objected to Lynwood's experts under the Protective Order. However, NGINX, Inc. (BVI), NGINX Software, Inc., and F5 Networks, Inc. (collectively, the "F5 Defendants") have seized on the expert disclosure mechanisms in the Protective Order to further their pattern of dilatory discovery misconduct. The F5 Defendants have no substantive objection to Lynwood's experts, and the F5 Defendants have not articulated any competitive concern with Lynwood's disclosed experts. Nevertheless, just as with the F5 Defendants' document production, the F5 Defendants have used delay tactics to prevent Lynwood's experts from performing their critical work.

//

– 1 –                         Case No. 3:20-cv-03778-MMC

In the days and weeks that followed Lynwood's disclosure of their experts, Lynwood supplemented those disclosures, responded to Defendants' follow-up questions, and participated in meet-and-confer discussions aimed at resolving any remaining concerns, while Defendants continued to withhold their consent and declined to withdraw their objections.  Lynwood's original and Amended Disclosures are included as Exhibits X-X to the Declaration of Christopher Major ("Major Decl.") (under seal) Lynwood's emails providing further detailed information to Defendants are included as Major Decl. Exhibits X-X.  Email correspondence addressing F5's questions are included as Major Decl. Exhibits X-X.

Lynwood's counsel wrote to Defendants requesting a meet and confer and proposing to present any remaining dispute through the Court's letter-brief process to avoid motion practice.  However, the F5 Defendants ignored Lynwood's correspondence.  And yet the F5 Defendants have still refused to withdraw their baseless objection to Lynwood's expert team.

On March 26, 2026, Lynwood demanded that the F5 Defendants consent to Lynwood disclosing material designated as HIGHLY CONFIDENTIAL–ATTORNEYS' EYES ONLY or HIGHLY CONFIDENTIAL–SOURCE CODE to the GDR expert team by 5:30 P.M. Pacific Time on March 26, 2026.  Specifically, at 5:04 p.m. Pacific Time on March 26, 2026, the F5 Defendants wrote to Lynwood and conceded that the F5 Defendants would withdraw their objection to two (2) members of the GDR expert team but standing on their objection to the other three (3) members of the GDR team.

To be sure, the F5 Defendants did not articulate any distinction among the GDR team or explain why the F5 Defendants were proposing different treatment for different members of the GDR team.  In addition, nothing new occurred to cause the F5 Defendants to relent as to just two (2) members of the GDR team.

Incredibly, the F5 Defendants also demanded, as a condition of withdrawing their baseless objection to three (3) members of the GDR team, that those team members agree to blanket restrictive covenants prohibiting prospective engagements in any subject area that the F5 Defendants deem to be a subject area in which F5 wishes to participate.  The F5 Defendants did not identify a single instance in which any of the three (3) GDR team members performed any work that was competitive to F5.  There is

//

no basis for any restrictive covenants in the Protective Order, and no legitimate competitive concern that would justify the F5 Defendants objecting to the remaining three (3) members of the GDR team.

The F5 Defendants' ongoing objection to three (3) members of the GDR team is disingenuous and baseless. The F5 Defendants have no competitive concern over the three (3) members against whom they are retaining their objection. Instead, it appears to Lynwood that the F5 Defendants hope that by retaining the baseless objection they can cause further delay, and needlessly disrupt and deteriorate the work of Lynwood's expert team by blocking the majority of the team from access to material that the F5 Defendants designate as Protected Material under the Protective Order.

Faced with ongoing objections that block expert access, Lynwood now seeks relief under Paragraph 7.4(c).

The Major Declaration, submitted with this motion, details the parties' attempts to resolve the matter by agreement, the F5 Defendants' stated reasons for refusing to approve Lynwood's disclosure, and Lynwood's responses to each of those reasons. *See* Major Decl., attached hereto. Lynwood made every effort to obtain the F5 Defendants' consent to disclose–or, at a minimum, have the F5 Defendants identify any competitive risk warranting its refusal to allow disclosure to Lynwood's experts. At the time this motion was filed, the F5 Defendants would neither withdraw its objections as to the remaining three (3) GDR team members nor identify a competitive risk supporting their baseless objection.

## LEGAL STANDARD

Defendants bear the burden to demonstrate that the risk of harm outweighs the need for disclosure to the expert. Protective Order ¶ 7.4(c). Courts in this District apply this precise balancing framework, demanding that the objecting party identify a concrete, non-speculative risk of competitive harm sufficient to overcome the receiving party's demonstrated need for expert access. *See Olin v. Facebook, Inc.*, 2019 WL 5802020, at *2-3 (N.D. Cal. Nov. 7, 2019); *see also Advanced Micro Devices, Inc. v. LG Elecs., Inc.*, 2017 WL 3021018, at *2-3 (N.D. Cal. July 17, 2017) (granting plaintiff's motion to disclose source code to their technical experts and rejecting the defendant's assertion that the experts would use the knowledge gained from a code inspection in future endeavors). Consistent with these decisions, generalized fears about an expert potentially working for a competitor or misusing information are insufficient; the objector must point to specific facts proving that disclosure to this

particular expert, despite the Protective Order's restrictions, creates a real risk of competitive injury. *See, e.g., ESC-Toy Ltd. v. Sony Interactive Entmt LLC*, 2022 WL 1714627, at \*2-3 (N.D. Cal. May 27, 2022); *Advanced Micro Devices, Inc.*, 2017 WL 3021018, at \*2 (holding that the protective order provided a sufficient deterrent against unauthorized disclosure of protected material).

## **ARGUMENT**

### A.      **Disclosure to the Designated Experts is Reasonably Necessary**

Disclosure of Defendants' HIGHLY CONFIDENTIAL–ATTORNEYS' EYES ONLY and HIGHLY CONFIDENTIAL–SOURCE CODE material to Lynwood's designated experts is necessary to resolve the core factual issue the Court has identified: whether any NGINX Plus code was written by the "Disloyal Employees" while employed at Rambler. The parties' Joint CMC Statement, and Judge Chesney's case-management order all frame this as the "threshold gating issue." *See* Dkt. Nos. 210, 211.

F5 has repeatedly told the Court that this question must be answered by expert inspection and analysis of the NGINX Plus code repository and related development materials. At the March 7, 2025 CMC, defense counsel explained that "you just have to start with the code that became NGINX Plus," that the repository and commit dates will be central, and that "all those questions are fair game," while F5's counsel agreed that "everyone is in agreement that the issue is when was the NGINX Plus code written and by whom."

Judge Chesney adopted that framing, ordering that "initial phase" discovery would be limited to "whether any NGINX Plus code was written by Mr. Sysoev or other former Rambler employees during their employment by Rambler," and expressly contemplated that the parties would resolve that question by examining the NGINX Plus code and its development history. The pleadings and record likewise assume expert source-code work and expert review of documents produced in discovery: Lynwood's Second Amended Complaint alleges that "Pre-Exit NGINX Plus had been developed (i.e., written)" while the Disloyal Employees were still at Rambler, and details technical features-such as active health checks, advanced load balancing, and live activity monitoring-that were migrated into NGINX Plus and its modern derivatives. *See* Dkt. No. 217 at ¶¶ 163, 492; Dkt. No. 217 *generally*.  The Joint CMC Statement explains that Lynwood must analyze "the source code form of NGINX Plus," "software

version control databases," and related engineering artifacts to determine what code was written, by whom, and when, and Defendants agreed that they would "make available for inspection by Plaintiff's counsel under a protective order the NGINX Plus code repository and contemporaneous development documents showing creation of the NGINX Plus code." Dkt. No. 209 at 3:11-23, 6:9-11. Lynwood will be inspecting Netflix's software code, and Netflix has not objected to Lynwood's experts under Section 7.4 of the Protective Order.

Moreover, while the F5 Defendants have barely scratched the surface on the documents they must produce to Lynwood, which is the source of a pending motion to compel, the F5 Defendants designated every single document produced so far as HIGHLY CONFIDENTIAL–SOURCE CODE. Lynwood's experts cannot review these documents if there is a pending objection to Lynwood's experts under Section 7.4 of the Protective Order.

Against that backdrop, it is not credible to suggest that Lynwood's experts can perform the work the Court has ordered——review of a large, complex codebase; reconstruction of commit histories; correlation with alleged pre-2012 customer deployments (e.g., Netflix); and evaluation of documentary, forensic and circumstantial evidence——-without direct access to the very Protected Material that defines NGINX Plus and its development timeline. The record already shows that code-centric evidence is indispensable, and that the F5 Defendants will designate large swaths of their document production as Protected Material under the Protective Order. As an example, Lynwood's experts must be allowed to compare NGINX Plus code to code allegedly delivered to early customers while the Disloyal Employees were still at Rambler. And Lynwood's experts must be permitted to review documents designated as HIGHLY CONFIDENTIAL–ATTORNEYS' EYES ONLY and HIGHLY CONFIDENTIAL–SOURCE CODE.

The parties' joint discovery letter-briefs confirm that answering "who wrote what, when" will require detailed static and dynamic analysis of Defendants' code, including both source and object forms. *See* Dkt. Nos. 254, 266, 287. In the same letter briefs, the F5 Defendants have repeatedly and wrongly criticized Lynwood for not yet conducting source-code inspection, underscoring that Defendants, too, view expert review of Protected Material as the necessary path to resolving Phase One. *See* Dkt. Nos. 254, 266, 287. Having taken every opportunity to tell the Court that source code review

must occur, the F5 Defendants cannot now credibly argue that it is not necessary to give Lynwood's expert team, who are all subject to the Protective Order, access to code and documents the F5 Defendants designate as Protective Material under the Protective Order. The F5 Defendants have never offered any such objection, it has only acted to prevent the access it concedes is required. Similarly, the F5 Defendants cannot use the Protective Order as both a shield and a sword by designated all their document production as HIGHLY CONFIDENTIAL–SOURCE CODE and then blocking most of Lynwood's expert team at GDR from reviewing those documents.

Lynwood's expert team cannot perform their work together and collaborate effectively if only two (2) members of the team are able to review Protected Material, including code and documents the F5 Defendants designate as Protected Material. The work of Lynwood's expert team is labor intensive, requires technical expertise, and collaboration. Therefore, it is reasonably necessary for the full GDR team to have access to Protected Material under the Protective Order.

**B.      Lynwood Fully Complied with The Protective Order's Disclosure Requirements**

The Protective Order's Section 7.4(a)(2) sets out clear and limited disclosure requirements. For expert engagements not subject to confidentiality obligations, Lynwood's experts make full and robust disclosures. Lynwood's consultants often operate through individual Limited Liability Companies (LLCs) for their professional services. These LLCs were disclosed to F5. When F5 inquired further about the LLCs and requested disclosures for work performed by those specific entities, Lynwood confirmed that all work required to be disclosed under the protective order has already been provided. The experts' work through their individual LLCs is identical to, and fully incorporated within, their existing disclosures.

The Protective Order specifically anticipates that the prior engagements of a party's experts will be subject to confidentiality obligations. *See* section 7.4(a)(2) fn. 1. Consistent with this, Lynwood's experts, who work on highly sensitive matters (especially in cybersecurity and investigations), provided sector and subject-matter descriptions for confidential engagements. Many of the experts' sensitive engagements are directly with U.S. government entities like the Department of Defense and NASA, which pose no competitive risk to F5. *See id.*

//

NOTICE OF MOTION

Lynwood fully cooperated with F5's follow-up questions, providing more specific client type, industry, and scope of work information for questioned disclosures. After this additional information was provided, F5 has not requested any further information regarding the experts' confidential engagement list. F5 has not identified any competitive threats in any of the confidential engagements.

Realizing that the F5 Defendants were going to seize on the Protective Order to baselessly stall the work of Lynwood's experts, Lynwood went above and beyond. To address the key competitive threat issue (something the F5 Defendants never even argued), and in light of the experts' confidentiality obligations, Lynwood went further than the requirements of Section 7.4(a)(2) demanded. Lynwood's counsel used public industry information to identify F5's main competitors, which included A10 Networks, Fortinet, Thales Group, Akamai, Amazon Web Services, Cloudflare, Palo Alto Networks, and Juniper Networks, and then it proactively confirmed that none of its experts' confidential engagements involved those entities. The F5 Defendants responded with an expanded list of potential competitors: Citrix, Broadcom (including VMware), Cisco, Check Point, and Radware. Although Lynwood considered the F5 Defendants' list overly broad, it investigated and confirmed that its experts had not performed any work for the companies on the F5 Defendants' expanded list.

The F5 Defendants' ongoing objections to Lynwood's experts are unwarranted and have inhibited the experts' document review and delayed the F5 source code review; the F5 Defendants consistently raise the lack of source code inspection in its letter briefs, accusing Lynwood of delay while refusing to clear its experts. Yet, Lynwood has fully complied with the Protective Order's disclosure obligations and responded to the F5 Defendants' demands. Lynwood also confirmed that its experts have no competitive conflicts, such as past or current employment with a Party or a competitor, involvement that risks misusing confidential information, or acting as competitive decision-makers. Given the complete absence of a concrete competitive risk to the F5 Defendants—-a risk the F5 Defendants have not identified—-it should have withdrawn its objections to allow Lynwood's experts unfettered review of documents and inspection of the F5 source code. Remaining consistent with their dilatory discovery conduct, the F5 Defendants chose a different, and uncooperative, path.

//

//

NOTICE OF MOTION

**C.      The F5 Defendants Improperly Sought To Convert Section 7.4's Disclosures Into Expert Discovery**

The F5 Defendants have persistently sought interrogatory-style disclosures that significantly exceed the Protective Order's requirements. For example, the F5 Defendants demanded information about whether the experts have ever worked for Rambler, Lynwood, Warren LLP, or Meister Seelig Fein PLLC, none of which are F5 competitors.  The F5 Defendants also requested disclosure of any confidential engagements involving "web server technology," a term that is overly broad and unnecessary given that the experts have already confirmed they have no competitive engagements. While such expansive questions might be suitable during a deposition to gather material for cross-examination at trial, they fall entirely outside the requirements for, and purpose of, pre-trial expert disclosures under the Protective Order.

A particularly telling example of the F5 Defendants' unwarranted demands is its request that Lynwood's experts commit to not take on any work involving web server technology or software during this litigation's pendency, a case that has already lasted nearly six years and may continue for many more. This *de facto* non-compete agreement–when all evidence clearly indicates that Lynwood's experts pose no competitive risk–is beyond the pale. The point of the disclosure is to determine if the expert is a current or anticipated employee of a party or competitor—not whether the expert will continue practicing in his or her field. Section 7.4 governs disclosures, not future employment.

**D.      The F5 Defendants Cannot Meet Their Burden To Identify A Concrete Risk of Harm**

The Protective Order places the burden squarely on F5 "to prov[e] that the risk of harm that the disclosure would entail under the safeguards proposed outweighs [Lynwood's] need to disclose the Protected Material to its Expert." *See* §7.4(c); *see also Olin* , 2019 WL 5802020, at *2-3 (holding that the party opposing expert disclosure bears the burden to prove that the risk of harm from disclosure outweighs the receiving party's need for disclosure); *Advanced Micro Devices,* 2017 WL 3021018, at *2-3 (overruling objections to expert access where the objecting party showed only speculative risk and no concrete evidence of likely misuse).  The F5 Defendants cannot meet their burden.

Lynwood's experts are not past or current employees of a Party, or of a Party's competitor, nor are they anticipated to become an employee of a Party, or of a Party's competitor. The F5 Defendants'

objections rest not on any identified competitive threat, but on speculative concerns divorced from the Protective Order's requirements. Courts in this District consistently hold that the party opposing expert disclosure must identify a concrete risk of competitive harm, not mere speculation.

In *Advanced Micro Devices,* the court overruled objections to expert disclosure, finding "no concrete evidence" the experts engaged in competitive decision-making at a competitor, despite their regular consulting and expert witness work in patent cases. *Advanced Micro Devices,* 2017 WL 3021018, at *3. The court noted it was "unlikely" to "select an expert in this space who does not consult, publish, teach, or invent in the relevant field," and emphasized that speculative claims of misuse were insufficient. *Id.*

In *Olin v. Facebook, Inc.*, the court similarly required a risk-of-harm analysis even for a proposed expert who was a former employee of a competitor. *Olin v. Facebook, Inc.*, 2019 WL 5802020, at *3. Disclosure was permitted to an expert who left Google seven years prior because there was "no reason to think there is a risk of harm." *Id.*

The F5 Defendants have identified no engagements involving F5, competitors, or competing products to NGINX Plus. The experts are not former employees of, or recent consultants for, F5 competitors. The F5 Defendants' continued demands for more details are fishing expeditions and improper attempts at taking premature expert discovery, not to identify genuine competitive threats.

Despite having no genuine competitive concern, and despite failing to even articulate such a concern, the F5 Defendants concluded the lengthy meet and confer process by demanding blanket restrictive covenants from three (3) out of the five (5) members of the GDR expert team. The F5 Defendants know there is no factual or legal basis for their unreasonable demand. Rather, it appears to Lynwood that the F5 Defendants made the demand purely to further delay the prosecution of discovery and maintain a meritless objection to Lynwood's expert team in the hope of disrupting their work. The Court should grant Lynwood's full expert team access to Protected Material and reject the F5 Defendants' meritless objections.

**E.    The Protective Order and Acknowledgement Provide Robust Safeguards**

The Protective Order already provides "robust and sufficient protections" for F5's confidential materials. Sections 7.1, 7.3, 7.4, and 8 strictly limit how HIGHLY CONFIDENTIAL information may

be used and disclosed, require source code review on secure, standalone computers under controlled conditions, and confine access to experts who execute acknowledgments to be bound by the Order. These safeguards are presumptively reasonable. *See ESC-Toy Ltd.*, 2022 WL 1714627, at *2 (noting the Court's model order is "presumptively reasonable").

Having received all information the parties and Court agreed would be sufficient to assess competitive risk, the F5 Defendants have failed to identify any concrete threat to its interests. The Court should permit disclosure so that Lynwood can move forward with the source code reviews that the F5 Defendants have told the Court is ready to proceed.

### CONCLUSION

For the foregoing reasons, Lynwood respectfully requests that the Court grant this motion and enter an order, pursuant to Paragraph 7.4(c) of the Protective Order, authorizing Lynwood to disclose information designated "HIGHLY CONFIDENTIAL –ATTORNEYS' EYES ONLY" and "HIGHLY CONFIDENTIAL – SOURCE CODE" to all identified members of Lynwood's expert team at GDR. The order should confirm that Lynwood's experts may review and analyze that material, including NGINX Plus source code, object code and related technical documents, subject to all existing safeguards and use restrictions in the Protective Order.

Lynwood further requests that the Court overrule the F5 Defendants' objections to the remaining three (3) disclosed members of Lynwood's expert team at GDR, direct the F5 Defendants to cooperate promptly in scheduling and facilitating the experts' source-code and object code inspection, and grant such other and further relief in Lynwood's favor as the Court deems just and proper.

Date:  March 27, 2026

Respectfully submitted,

/s/ *Patricia L. Peden*
Alexander D. Pencu (pro hac vice)
adp@msf-law.com
Christopher J. Major (pro hac vice)
cjm@msf-law.com
Jeffrey P. Weingart (pro hac vice)
jpw@msf-law.com
MEISTER SEELIG & FEIN PLLC
125 Park Avenue, 7th Floor
New York, NY 10017

– 10 –

Case No. 3:20-cv-03778-MMC

NOTICE OF MOTION

Telephone: (212) 655-3500
Fax: (646) 539-3649
Patricia L. Peden (State Bar No. 206440)
DeMarcus B. T. Williams (State Bar No. 329756)
WARREN LLP
20-3778@cases.warrenllp.com
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile

NOTICE OF MOTION