ccccccbcthtrhcfdkltAlexander D. Pencu (pro hac vice)
adp@msf-law.com
Christopher J. Major (pro hac vice)
cjm@msf-law.com
Jeffrey P. Weingart (pro hac vice)
jpw@msf-law.com
MEISTER SEELIG & FEIN PLLC
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Fax: (646) 539-3649

Patricia L. Peden (State Bar No. 206440)
DeMarcus B. T. Williams (State Bar No. 329756)
WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
20-3778@cases.warrenllp.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LYNWOOD INVESTMENTS CY LIMITED,<br><br>    Plaintiff,<br><br>    v.<br><br>MAXIM KONOVALOV, IGOR SYSOEV, ANDREY ALEXEEV, MAXIM DOUNIN, GLEB SMIRNOFF, ANGUS ROBERTSON, NGINX, INC. (BVI), NGINX SOFTWARE, INC., NGINX, INC. (DE), BV NGINX, LLC, RUNA CAPITAL, INC., EVENTURE CAPITAL PARTNERS II LLC and F5 NETWORKS, INC.,<br><br>    Defendants. | Case No. 3:20-cv-03778-KAW<br><br>**DECLARATION OF CHRISTOPER J. MAJOR, IN SUPPORT OF PLAINTIFF'S MOTION TO PERMIT DISCLOSURE TO EXPERT WITNESSES** |

I, Christopher J. Major, declare as follows:

1. I am a partner in the law firm Meister Seelig & Fein PLLC, and we are counsel to Plaintiff HF Investments CY Limited f/k/a Lynwood Investments CY Limited's ("Plaintiff" or "Lynwood"). As such, I am familiar with the facts and circumstances described below and I have personal knowledge thereof.

2. I respectfully submit this Declaration pursuant to Section 7.4(c) of the Stipulated Protective Order (Dkt. No. 262) (the "Protective Order") and in support of Lynwood's motion for permission to disclose to its experts material designated as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY or HIGHLY CONFIDENTIAL – SOURCE CODE.

3. On January 26, 2026, Defendants NGINX, Inc. (BVI), NGINX Software, Inc., and F5 Networks, Inc., (collectively "F5 Defendants") made their first and only document production in this action, producing 3,218 documents and designating every single page of every single document HIGHLY CONFIDENTIAL SOURCE CODE.

4. On February 6, 2026, Lynwood disclosed its experts to the F5 Defendants (as amended, Lynwood's "Expert Disclosures") pursuant to Section 7.4 of the Stipulated Protective Order (Dkt. No. 262) (the "Protective Order").  Consistent with the Protective Order, Lynwood's experts disclosed their professional engagements, providing general information when the engagement was subject to a confidentiality agreement.

5. Lynwood's disclosed experts are a team of five (5) professionals from the consulting firm Global Data Risk LLC ("GDR"). Lynwood disclosed the resumes and engagements for each of the GDR professionals on the team, including their work outside of GDR.

6. Specifically, Lynwood's February 6, 2026 Expert Disclosures identified each member of the expert team, and the city and state of their residence as required by Section 7.4 of the Protective Order.  In addition, Lynwood's Expert Disclosures included the resume of the GDR team leader.

7. On February 8, 2026, Lynwood delivered its Expert Disclosures to Netflix, Inc. ("Netflix").

8. Netflix designated its document production pursuant to Lynwood's subpoena as HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY.  Under Article 7 of the Protective Order, HIGHLY

CONFIDENTIAL – ATTORNEYS' EYES ONLY and HIGHLY CONFIDENTIAL – SOURCE CODE are treated the same for purposes of disclosing experts.

9. Netflix did not object to Lynwood's disclosed experts inspecting Netflix's HIGHLY-CONFIDENTIAL software code.  On February 17, 2026, the F5 Defendants' counsel requested additional information from Lynwood's experts. The F5 Defendants' inquiries were focused on the confidential prior engagements undertaken by Lynwood's experts.  See Dkt. No. 262, p. 12, n. 1.

10. While Defendants Igor Sysoev, Maxim Konovalov, Andrey Alexeev, Gleb Smirnoff, and Angus Robertson (the "Individual Defendants") have produced just thirty-five (35) documents so far in this action, which the Individual Defendants designated as CONFIDENTIAL, Lynwood notes that the Individual Defendants have not objected to Lynwood disclosing to its experts material the Individual Defendants designates as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY or HIGHLY CONFIDENTIAL – SOURCE CODE.

11. On February 23, 2026, Lynwood promptly supplemented its expert disclosures under Section 7.4 of the Protective Order to satisfy the F5 Defendants' inquiries.  A true and correct copy of Lynwood's Amended Expert Disclosures are attached hereto as **Exhibit 1**.  Specifically, Lynwood went beyond the requirements of Section 7.4 of the Protective Order and disclosed all of its experts' confidential engagements by describing the engagements and identifying the industry sectors involved.

12. In addition to meeting and conferring via video conference, the parties have also exchanged extensive written correspondence regarding Lynwood's Expert Disclosures and the F5 Defendants' questions and objections to same.

13. A true and correct copy of any email chain between counsel for Lynwood and counsel for the F5 Defendants ending with an email by Eric C. Pai dated March 26, 2026 is attached hereto as **Exhibit 2**.

14. A true and correct copy of an email chain between counsel for Lynwood and counsel for the F5 Defendants ending with an email by Patricia L. Peden dated March 26, 2026 is attached hereto as **Exhibit 3**.

15. On March 9, 2026, the F5 Defendants asserted an objection to Lynwood disclosing any material it designates as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY or HIGHLY

DECLARATION OF CHRISTOPER J. MAJOR

CONFIDENTIAL – SOURCE CODE to Lynwood's experts.  The F5 Defendants did not identify any conflict of interest or competitive concern with Lynwood's experts.  Instead, the F5 Defendants claimed that Lynwood's description of its experts' confidential engagements was insufficient, claimed without basis that Lynwood had not identified all its experts' client engagements, raised questions about the experts' prior testimony, and inquired whether the separate engagements of Lynwood's experts were ongoing.  *See* Exhibit 2, pp. 10-11.

16.     On March 10, 2026, Lynwood requested a meet and confer with the F5 Defendants regarding their objection to Lynwood disclosing any material the F5 Defendants designate as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY or HIGHLY CONFIDENTIAL – SOURCE CODE to its experts.  *See* Ex. 2, p. 10.

17.     On March 11, 2026, Lynwood and the F5 Defendants agreed to meet and confer via videoconference on March 13, 2026, about the F5 Defendants' objection to Lynwood disclosing to its experts any material the F5 Defendants designate as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY or HIGHLY CONFIDENTIAL – SOURCE CODE.  *See* Ex. 2, p. 9.

18.     On March 12, 2026, Lynwood wrote to the F5 Defendants providing additional information to the F5 Defendants about the prior engagements of Lynwood's experts.  Specifically, Lynwood provided further disclosure regarding several of its experts' confidential engagements as well as the prior testimony of Lynwood's lead expert.   See Exhibit 2, pp. 7-8.

19.     In addition, and although not required by the Protective Order, Lynwood conducted research from multiple sources to identify F5's competitors.  The purpose of the research was to address any potential (although unexpressed) competitive concerns by the F5 Defendants concerning Lynwood's experts.  Having identified F5's competitors, Lynwood was able to confirm with its experts that they had not performed services in exchange for remuneration for those F5 competitors within the preceding five (5) years.  On March 12, 2026, Lynwood advised the F5 Defendants that Lynwood's experts had not performed services for remuneration for those F5 competitors within the preceding five (5) years.  See Exhibit 2, pp. 7-8.

20.     On March 13, 2026, Lynwood and the F5 Defendants conducted via videoconference a meet and confer concerning F5 Defendants' objection to Lynwood disclosing to its experts any material

DECLARATION OF CHRISTOPER J. MAJOR

the F5 Defendants designate as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY or HIGHLY CONFIDENTIAL – SOURCE CODE.

21.    During the meet and confer on March 13, 2026, the F5 Defendants sought additional information about two of the previous confidential engagements of Lynwood's experts and sought clarification about the governmental engagements by Lynwood's experts.  In addition, the F5 Defendants improperly sought a blanket covenant from Lynwood's experts that they would not accept any prospective engagement with any entity that the F5 Defendants deem a competitor.  No such covenant is required by the Protective Order.  Lynwood rejected the F5 Defendants' unreasonable demand.

22.    On March 17, 2026, Lynwood provided the F5 Defendants with the additional information they requested concerning the two historical confidential engagements of Lynwood's experts about which the F5 Defendants inquired during the March 13, 2026 meet and confer.  See Exhibit 2, pp. 5-6. In that same communication, Lynwood sought confirmation from the F5 Defendants that they consent to Lynwood disclosing to its experts any material the F5 Defendants designate as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY or HIGHLY CONFIDENTIAL – SOURCE CODE.  Lynwood requested the F5 Defendants provide this confirmation by March 18, 2026.  See Exhibit 2, pp. 5-6.

23.    On March 18, 2026, the F5 Defendants refused to withdraw their objection to Lynwood's experts under Section 7.4 of the Protective Order and demanded additional information concerning Lynwood's experts.  The questions raised by the F5 Defendants went well beyond any requirements in the Protective Order.  For example, the F5 Defendants asked:  "Do any of Lynwood's experts' work or professional services involve web server technology or web server software?" The F5 Defendants also made inquiries about the limited liability companies through which Lynwood's experts conduct their consulting work, which is likewise not required by the Protective Order and in any event has been answered by Lynwood.  See Exhibit 2, pp. 3-5.

24.    In addition, on March 18, 2026, the F5 Defendants identified five additional entities that the F5 Defendants maintain are competitors of F5 and asked whether Lynwood's experts performed any services for those purportedly competitive companies within the last five (5) years.  See Exhibit 2, pp. 3-5.

25. On March 22, 2026, Lynwood wrote to the F5 Defendants and confirmed that Lynwood's experts had not performed engagements for the five (5) additional purported competitors of F5 within the preceding five (5) years. Lynwood further confirmed that "none of its disclosed experts has, in the last five years, worked on an engagement involving F5, any of the competitors identified in our March 13 correspondence or in your March 18 email, or any project designed to develop or improve a commercial product that competes with NGINX Plus." Accordingly, Lynwood asked the F5 Defendants to withdraw their objection to Lynwood's experts under Section 7.4 of the Protective Order by March 23, 2026. See Exhibit 2, pp. 2-3. The F5 Defendants ignored Lynwood's request.

26. On March 24, 2026, Lynwood wrote to the F5 Defendants again requesting that they withdraw their objection to Lynwood's experts under Section 7.4 of the Protective Order. *See* Exhibit 3, pp. 3-4. Once again, the F5 Defendants ignored Lynwood's request.

27. On March 25, 2026, Lynwood once again wrote to the F5 Defendants again requesting that they withdraw their baseless objection to Lynwood's experts under Section 7.4 of the Protective Order and advising that Lynwood would seek the Court's intervention. *See* Exhibit 3, pp. 2-3

28. The F5 Defendants have never identified any competitive risk associated with Lynwood disclosing to its experts material the F5 Defendants designate as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY or HIGHLY CONFIDENTIAL – SOURCE CODE.

29. On March 26, 2026, Lynwood demanded that the F5 Defendants consent to Lynwood disclosing material designated as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY or HIGHLY CONFIDENTIAL – SOURCE CODE to the GDR expert team by 5:30 P.M. Pacific Time on March 26, 2026. See Exhibit 3, p. 1.

30. After Lynwood's last-ditch efforts to reach an agreement, the F5 Defendants on March 26, 2026 demanded that three members of Lynwood's expert team submit to sweeping restrictive covenants barring them from prospective engagements in connection with any market space in which the F5 Defendants claim they operate or have any interest. The F5 Defendants made this request, which of course has no basis at all under the Protective Order, without ever identifying any potential competitive harm. See Exhibit 2, p. 1.

//

31. Specifically, the F5 Defendants wrote to Lynwood and conceded that the F5 Defendants would withdraw their objection to two (2) members of the GDR expert team but standing on their objection to the other three (3) members of the GDR team. F5 Defendants did not articulate any distinction among the GDR team or explain why the F5 Defendants were proposing different treatment for different members of the GDR team. See Exhibit 2, p. 1. The F5 Defendants did not identify a single instance in which any of the three (3) GDR team members performed any work that was competitive to F5. To date, the F5 Defendants have not identified a competitive risk associated with allowing these experts access to Confidential Information, despite Lynwood's requests that they do so.

32. The F5 Defendants demanded that three (3) members of the GDR expert team agree to blanket restrictive covenants prohibiting them from working in any space that the F5 Defendants claim to be involved in or interested in. F5's demands have no connection to an identified competitive risk, and appear to Lynwood to be aimed at disrupting the GDR team by creating the chaotic situation where different team members would have different access to data and information and are hindered in their ability to communicate as a team.

33. Lynwood is entitled to have its chosen experts unless F5 raises a legitimate competitive risk. Because F5 has been able to identify a competitive risk or harm if Confidential Information is disclosed to Lynwood's experts but, nonetheless, insists on maintaining its objections to Lynwood's disclosed experts, Lynwood was forced to file a motion asking the Court to permit disclosure.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true.

Date: March 27, 2026

Respectfully submitted,

*/s/ Christopher J. Major* _
Christopher J. Major