Alexander D. Pencu (pro hac vice)
adp@msf-law.com
Christopher J. Major (pro hac vice)
cjm@msf-law.com
Jeffrey P. Weingart (pro hac vice)
jpw@msf-law.com
MEISTER SEELIG & FEIN PLLC
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Fax: (646) 539-3649

Patricia L. Peden (State Bar No. 206440)
DeMarcus B. T. Williams (State Bar No. 329756)
WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
20-3778@cases.warrenllp.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LYNWOOD INVESTMENTS CY LIMITED, <br><br> Plaintiff, <br><br> v. <br><br> MAXIM KONOVALOV, IGOR SYSOEV, ANDREY ALEXEEV, MAXIM DOUNIN, GLEB SMIRNOFF, ANGUS ROBERTSON, NGINX, INC. (BVI), NGINX SOFTWARE, INC., NGINX, INC. (DE), BV NGINX, LLC, RUNA CAPITAL, INC., EVENTURE CAPITAL PARTNERS II LLC and F5 NETWORKS, INC., <br><br> Defendants. | Case No. 3:20-cv-03778-MMC <br><br> **JOINT DISCOVERY LETTER BRIEF RE: F5 DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFF'S FOURTH REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS** |

In this joint letter brief, Plaintiff H.F. Investments CY Limited f/k/a Lynwood Investments CY Limited ("Lynwood" or "Plaintiff") and Defendants F5 Networks, Inc., NGINX, Inc. (BVI), and NGINX Software, Inc. (the "F5 Defendants") request a ruling on two issues relating to the F5 Defendants' Responses and Objections to Plaintiff's Fourth Request for Production of Documents and Things.

The parties have adhered to Section 9 of the Northern District's Guidelines for Professional Conduct for discovery before submitting this joint letter.  In addition to exchanging written correspondence regarding the Fourth RFPs, on March 20, 2026, lead trial counsel participated in a meet and confer by videoconference to discuss the issues raised in the prior correspondence.  While some disputes were resolved, two issues, as detailed in the attached letter, remain at an impasse despite the parties' efforts.

Dated:  March 30, 2026                    Respectfully submitted,


                                          /s/ *Alexander D. Pencu*
                                          (Admitted *Pro Hac Vice*)
                                          MEISTER SEELIG & FEIN PLLC
                                          125 Park Avenue, 7th Floor
                                          New York, New York 10017
                                          Telephone: (212) 655-3500


                                          WARREN, LLP
                                          2261 Market Street, No. 606
                                          San Francisco, California 94114
                                          Telephone: (415) 895-2940
                                          Facsimile: (415) 895-2964

                                          *Attorneys for Plaintiff HF Investments CY Limited*
                                          *f/k/a Lynwood Investments CY Limited*


Dated:  March 30, 2026                    /s/ *Eric C. Pai*

                                          Eric C. Pai (CA SBN 247604)
                                          MORRISON & FOERSTER LLP
                                          755 Page Mill Road
                                          Palo Alto, CA 94304-1018
                                          Telephone: (650) 813-5600
                                          Facsimile: (650) 494-0792

EPai@mofo.com

Benjamin J. Fox (CA SBN 193374)
Mark D. Marciszewski (CA SBN 344240)
Andrew Q. Nguyen (CA SBN 357744)
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017-3543
Telephone: (213) 892-5200
Facsimile: (213) 892-5454
BFox@mofo.com; MMarciszewski@mofo.com;
AndrewNguyen@mofo.com

*Attorneys for Defendants*
F5 Networks, Inc., NGINX, Inc. (BVI),
And NGINX Software, Inc.

Case No. 3:20-cv-03778-MMC
JOINT DISCOVERY LETTER BRIEF

**Plaintiff's Position**

Lynwood's 4th RFPs concern Jet-Stream, B.V., a Netherlands-based provider of content delivery network (CDN) services. Jet-Stream was an early customer of NGINX, Inc. A September 2011 presentation to the NGINX Board states "**First commercial module done (for Jet-Stream CDN suit[e]**)." (emphasis added). A November 2011 press release issued by Jet-Stream and NGINX announced their "commercial partnership to deliver enhanced CDN products and services," stating that "[u]nder the agreement, **NGINX will provide additional commercial extensions** to its open source product to fine-tune NGINX edge nodes for the CDN environment." (emphasis added). The 4th RFPs seek discovery concerning this "partnership." This evidence is probative of whether Defendants wrote or directed the writing of NGINX Plus while employed at Rambler.

### 1. RFPs No. 8 and 14

RFP No. 8 requests all source and object code used by Jet-Stream that was developed by, on behalf of, or with the assistance of any of the Defendants in 2010 or 2011. RFP No. 14 requests all computer software developed for or delivered to Jet-Stream by Defendants in 2010 and 2011 that provided specific functionalities appearing in the NGINX Plus releases. In response, the F5 Defendants ("F5") state that they will make code responsive to these RFPs available for inspection only if, in their view, the code "became part of NGINX Plus."

The core dispute is that F5 seeks to define, unilaterally and conclusively, what counts as "NGINX Plus," and then limit Phase 1 discovery to the single module that F5 asserts fits its definition even though F5 concedes that other Jet-Stream code exists. The additional code matches the functionalities of NGINX Plus.  Yet F5 insists Lynwood's experts may not see that code unless F5 first blesses it as "NGINX Plus." This is backwards. "NGINX Plus" is not a static marketing label frozen in 2011; what was in, or added into, NGINX Plus changed over time, as defendants built and commercialized proprietary extensions to the open-source core. The central Phase 1 question is whether any Individual Defendant wrote NGINX Plus while employed at Rambler. That question cannot be answered by accepting F5's litigation-driven definition of "NGINX Plus" and limiting Lynwood's experts to a single "session log" module while F5 withholds other Jet-Stream code it admits exists. F5's offer to dictate which module it regards as "NGINX Plus" is not a substitute for allowing Lynwood's experts to examine the requested Jet-Stream code and track for themselves which modules, features, and functionalities were developed when, by whom, and later incorporated into what defendants sold as NGINX Plus.

These RFPs, are targeted at code that NGINX, Inc. itself described contemporaneously as "commercial" (i.e., proprietary) and CDN-related–both core NGINX Plus functionalities–and that were developed for Jet-Stream as part of an announced commercial partnership in 2011, squarely within the Phase 1 timeframe. If the code ultimately became part of NGINX Plus, it is indisputably relevant to Phase 1, as F5 concedes. But the determination of what "became part of NGINX Plus" is itself a disputed, merits-related issue that must be informed by expert analysis of the codebase and its evolution; it cannot be pre-judged by F5 at the discovery stage. *Autodesk Inc. v. ZWCAD Soft. Co. Ltd.*, 2015 WL 2454003, *2 (N.D. Cal. May 22, 2015)(ordering production of requested source code "in toto, without any preliminary review by a neutral expert" to narrow the scope of code to be produced); *Am. Fed'n of Gov't Emps, AFL-CIO v. Trump*, 2025 WL 2098628, *2 (N.D. Cal. July 25, 2025) (plaintiff entitled to discovery for its claims "rather than simply taking defendants' word for it").

The Court previously resolved this precise dispute in favor of Lynwood when it granted Lynwood's motion to compel to inspect commercial NGINX code provided by the Defendants to

1

Netflix in 2011. Dkt. No. 252. Netflix opposed Lynwood's motion arguing that the commercial NGINX code it received was not NGINX Plus. *Id.* at 8:9-27. The Court, however, correctly noted that the commercial NGINX code provided to Netflix in 2011 (i.e., Open-Connect) exhibited the same functionalities as those of NGINX Plus. *Id.* at 2:11-16, 8:18-27. Consequently, the Court granted Lynwood's motion and ordered Netflix to produce "the **requested** NGINX Plus-**related** source code…" (emphasis added). The description for the commercial NGINX code provided to Jet-Stream exhibits the same functionalities as the code provided to Netflix (proprietary extensions of Open-Source NGINX in the CDN environment). Defendants provided commercial NGINX code to both Jet-Stream and Netflix in 2011. *Id.* at 2, 8. Given these identical characteristics, the Court's prior reasoning applies with equal force here.

F5 ignores this Court's prior order and offers cases it wrongly claims support its right to exercise unilateral authority over discovery. *United States v. Cal. Inst. of TechU.*, 2020 WL 13547790, at *7 (C.D. Cal. Nov. 18, 2020) and *In re Viagra Prods. Liab. Litig.*, 2016 WL 7336411, at *1 (N.D. Cal. Oct. 14, 2016), do not allow a producing party to ignore a RFP's scope. F5's reliance on these cases confirms its wrongful intent to dictate Lynwood's discovery. Lynwood asks the Court to order F5 to make code responsive to RFPs No. 8 and 14 available for inspection without withholding responsive code based on F5's view of what "became part of NGINX Plus." Allowing F5 to fix the definition of NGINX Plus at the outset of Phase 1 and then to filter Jet-Stream code through that definition would effectively allow F5 to decide the very factual question Phase 1 is supposed to test: what NGINX-based proprietary code that became NGINX Plus was written by the Defendants while they were employed at Rambler.

### 2. RFPs No. 2-5, 9-13, and 15[1]

RFPs No. 2-5, 9-13, and 15 seek documents and communications concerning software, products, and services provided by any of the Defendants to Jet-Stream, Defendants' work for Jet-Stream, and related communications. These RFPs are probative of who developed the proprietary NGINX code, modules, and extensions.

F5 states it will produce responsive documents only if, in its judgment, the documents "relate to whether any NGINX Plus code was written by Sysoev or other former Rambler employees during their employment by Rambler before the end of 2011." F5 again declares its authority to decide whether a communication "relates" to the ultimate Phase 1 merits question, and to withhold anything it deems outside that self-defined scope. That is not how Rule 26(b)(1) works. Lynwood is entitled to discovery into "any matter that bears on, or that reasonably could lead to other matter that could bear on" the Phase 1 issue. *See S.H. Silver Co. Inc. v. Sentinel Ins. Co., Ltd*, 2025 WL 517741, *1 (N.D. Cal. Feb. 18, 2025). F5 cannot unilaterally decide in advance which Jet-Stream documents address the ultimate merits issue and withhold the rest; Plaintiff is permitted to define its requests by subject matter within the Phase 1 timeframe and to obtain discovery that may bear on, or lead to material that may bear on, the Phase 1 question. *See Optrics Inc. v. Barracuda Nets, Inc.*, 2021 WL 411349, *2 (N.D. Cal. Feb. 4, 2021) (defendant "may not unilaterally limit its production[2] of documents responsive to this request as it pleases"); *Kajeet v. Qustodio, LLC*, 2019 WL 8060078, *12 (C.D. Cal. Oct. 22, 2019) ("It is not up to one party to decide what its opponent needs to prosecute or defend an action").

---

[1] Relevant excerpts from the 4th RFPs and the F5 Responses are attached as Ex. A.

F5's proposed "filter" is improper. The Jet-Stream RFPs are limited to Phase 1's core subject-matter: a 2011 "commercial partnership" where NGINX, Inc. provided "commercial extensions to its open source product" for a CDN use case while Individual Defendants were Rambler employees. These requests seek to discover what software Defendants provided and what they communicated about it; evidence proving whether Defendants wrote NGINX Plus-type functionality before leaving Rambler. As the Court noted regarding Netflix, "there can be no real dispute that any NGINX Plus code developed by individual Defendants for Netflix in 2011 [is] directly relevant to the copyright infringement case." Dkt. No. 252 at 8. Jet-Stream is no different: a 2011 customer receiving "commercial extensions" at the heart of Lynwood's case. F5's reliance on the Netflix order to argue overbreadth and disproportionality is misplaced because the RFPs seek responsive documents from only the narrow dates of 2010 and 2011. Moreover, Netflix was a non-party and not a core defendant, like F5. *Id.* at 11:16-21.

Lynwood has further narrowed these RFPs through tailored search terms with limiters designed to capture Jet-Stream communications that discuss NGINX-based modules and extensions, not every stray reference to Jet-Stream. Defendants' own hit counts show fewer than 500 unique hits for the proposed Jet-Stream terms. Lynwood is not seeking documents relating solely to any dealings F5, Inc. itself may have had with Jet-Stream in 2010-2011, before F5 acquired NGINX; rather, Lynwood seeks documents concerning the products, services, and software that NGINX or Defendants developed for Jet-Stream in 2010-2011.

Lynwood respectfully asks the Court to order F5 (1) to make code responsive to RFPs 8 and 14 available for inspection and (2) produce documents responsive to RFPs 2-5, 9-13, and 15.

### **Defendants' Position**

Lynwood seeks the production of *all* code provided to Jet-Stream, *all* documents concerning any software, products, or services provided to Jet-Stream, and *all* communications with Jet-Stream, regardless of whether such code, documents, or communications relate to NGINX Plus—the only code at issue in this case according to the Ninth Circuit and this Court. *Lynwood Invs. CY Ltd. v. Konovalov*, 2024 WL 4688895, at *5 (9th Cir. Nov. 6, 2024) (limiting Plaintiff's claim to "NGINX Plus 'developed' at Rambler," not Open-Source NGINX or software "conceived" but not written at Rambler). F5 has agreed to produce responsive documents that relate to NGINX Plus and make available for inspection all code that ever became part of NGINX Plus. Phase 1 requires nothing more. (ECF No. 211, at 2.)[3]

**1. RFPs 8 and 14 for Jet-Stream Code Should Be Limited to NGINX Plus.**

As Lynwood acknowledges, any code provided to Jet-Stream in 2010-2011 would have predated F5's acquisition of NGINX by at least 8 years. F5 is aware of only one code module that was provided to Jet-Stream and became part of NGINX Plus: a "session log" module written by Maxim Dounin in 2011 at NGINX, 4 years after he left Rambler. F5 has made available for inspection all source code and object code for all releases of NGINX Plus, including Mr. Dounin's "session log" module. The session log module was the only module provided to Jet-Stream that became part of NGINX Plus, as the alleged "partnership" between NGINX and Jet-Stream never came to fruition. Lynwood is not entitled to any other code that's never been

---

[3] Despite the limited scope of Phase 1 discovery, Lynwood has served 179 separate RFPs during post-remand discovery. (Lynwood restarted its numbering at "1" in each set, but the RFPs at issue in this letter are from Lynwood's Fourth Set, which was preceded by 126 RFPs.)

part of any version of NGINX Plus. *Lynwood Invs.*, 2024 WL 4688895 at \*5; *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) (rejecting discovery for "fishing expeditions").

Lynwood contends that its requests target "commercial" code related to "content delivery networks" ("CDN"). But Lynwood's requests are not limited to commercial code or "content delivery networks"; Lynwood seeks *all* software and *all* code delivered to Jet-Stream. Even if Lynwood had so limited its requests, "commercial" code is a far broader category than "NGINX Plus" code. And "content delivery networks" is a generic umbrella term describing a distributed network of servers that can be used for a wide range of content, including video streaming and software downloads. Lynwood's requests would thus sweep in functionalities provided by Open Source NGINX and other non-NGINX Plus code that are plainly outside the scope of Phase 1.

F5 is not unilaterally deciding what became part of NGINX Plus. F5 has made the entire universe of code for all NGINX Plus releases available for inspection and produced all development document repositories for NGINX Plus. Lynwood can review the code to see what became part of NGINX Plus, but it has not done so. Lynwood's cited cases do not alter this conclusion. In *Autodesk, Inc. v. ZWCAD Software Co. Ltd.*, the court compelled production of defendant's source code for the product *at issue* because the case "implicate[d] the source code as a whole." 2015 WL 245003, at \*2 (N.D. Cal. May 22, 2015). Here, NGINX Plus code is the only code at issue, and F5 has made all of it available. Unlike in *Am. Fed. Gov't Emps.*, 2025 WL 2098628, at \*2 (N.D. Cal. July 25, 2025), Lynwood does not have to "tak[e] defendants' word for it"; Lynwood can review all NGINX Plus code and see for itself.

The Court previously permitted requests to Netflix that "focused on the code that is ultimately part of NGINX Plus code developed before the end of 2011." (ECF No. 252 at 5.) There, the Court concluded that Lynwood's specific requests for code related to Netflix's Open Connect system appeared to be part of NGINX Plus, based on the 2014 slide presentation by Defendant Smirnoff. (*Id.* at 8.) Lynwood's requests here are not similarly focused on code that became part of NGINX Plus. Putting aside whether the 2014 slide presentation referred to NGINX Plus, F5 does not object to making all NGINX Plus code available, including the "[f]irst commercial module" provided to Jet-Stream (the session log module). NGINX never provided to Jet-Stream "additional commercial extensions" that became part of NGINX Plus. Since Lynwood has yet to review any of the NGINX Plus or Netflix code, it has no basis for speculating that the Jet-Stream code exhibits the "same functionalities". F5 has fully complied with its obligations to provide discovery regarding the Phase 1 issue. (ECF No. 211, at 2.)

**2. RFPs 2-5, 9-11, 15 for All Jet-Stream Documents/Communications Are Beyond Phase 1.**

Consistent with the Court's order that "any *NGINX Plus code* developed by individual Defendants for Netflix in … 2011 are directly relevant," F5 agreed to produce responsive documents that relate to any NGINX Plus code.[4] (ECF No. 252 at 8; emphasis added.) But Lynwood seeks still more: *all* documents concerning any software, products, or services provided to Jet-Stream, and *all* communications with Jet-Stream. The Court rejected similar requests with respect to Netflix. (*Id.* at 11 ("'All Documents and Communications concerning' broad topics such as work product provided to Netflix by any Defendant'" overbroad, "mak[ing] it unclear whether all responsive documents will be relevant, creating a significant likelihood that the requests are not proportionate to the needs of the case").) Lynwood claims that its requests are within the scope of Phase 1 because of a purported "partnership" between Jet-Stream and

---

[4] F5 has already agreed to produce documents responsive to Request Nos. 12 and 13, which are limited by Lynwood's own text to code that "became part of NGINX Plus."

NGINX that never came to fruition, but the scope of an alleged "partnership" cannot change the scope of Phase 1 discovery as set by the Court.  F5 agreed to produce the responsive documents that are within that scope, i.e., that relate to NGINX Plus.

Courts routinely reject in phased discovery overbroad requests such as those at issue here. *See, e.g., In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig. (No. II)*, 2015 WL 5043846, at \*5 (N.D. Cal. Aug. 26, 2015) (requests regarding plaintiff's purchasing habits overbroad to phased discovery limited to plaintiff's reliance on defendant's label); *McArdle v. AT&T Mobility LLC*, 2013 WL 1190277, at \*2 (N.D. Cal. Mar. 21, 2013) (requests regarding *other* arbitrations beyond the limited scope of plaintiff's specific arbitration); *Mireskandari v. Mayne*, 2016 WL 1165896, at \*5 (C.D. Cal. Mar. 23, 2016) (requests regarding merits beyond the scope of phased discovery on jurisdictional issues).  Again, Lynwood's requests would capture documents that have nothing to do with NGINX Plus, much less whether any Rambler employee wrote such code while employed at Rambler before the end of 2011.  (ECF No. 211.)

As discussed above, F5 is not determining what became part of NGINX Plus—that is determined by the NGINX Plus source code repository.  Nor is F5 acting "unilaterally"; the parties have agreed to the definition of "NGINX Plus" with respect to other similar requests. Lynwood itself recognizes that this limitation is appropriate and that its scope can be readily determined, as Lynwood's Request Nos. 12 and 13 seek documents and communications concerning software provided to Jet-Stream that "*became part of NGINX Plus.*"

It is well-settled that the responding party—not the propounding party—determines responsiveness in the first instance.  *See, e.g.*, *United States v. California Inst. of Tech.*, 2020 WL 13547790, at \*7 (C.D. Cal. Nov. 18, 2020) (responding party determines relevance and conducts search for responsive ESI); *In re Viagra (Sildenafil Citrate) Prods. Liab. Litig.*, 2016 WL 7336411, at \*1 (N.D. Cal. Oct. 14, 2016) (responding party may use search methodology of its choice and is best positioned to do so).  Lynwood is not entitled to demand every document and communication between F5 and Jet-Stream in order for *plaintiff* to determine responsiveness.

Lynwood's cited cases are inapposite because, as discussed above, F5 is not unilaterally determining what constitutes NGINX Plus.  The procedural contexts and facts in those cases also were substantially different than the circumstances here.  *Cf. Optrics Inc. v. Barracuda Nets. Inc.*, 2021 WL 411349, at \*2 (discussing party's repeated failures to produce documents after being ordered to do so); *Kajeet v. Qustodio*, LLC, 2019 WL 8060078, at \*12 (C.D. Cal. Oct. 22, 2019) (responding party did not dispute relevance of propounding party's requests but improperly withheld responsive documents based on purported duplicative productions).

Lynwood's argument regarding email hit counts also fails.  First, the number of documents to review remains undetermined until the parties agree on (or the Court resolves) the appropriate search terms and email custodians.  Second, the hit counts generated from Lynwood's overbroad search terms say nothing about responsiveness.  *See, e.g., Martinelli v. Johnson & Johnson*, 2016 WL 1458109, at \*4-5 (E.D. Cal. Apr. 13, 2016) (a "hit" on a search term does not determine whether the document is responsive); *Gopher Media, LLC v. Spain*, 2020 WL 5752387, at \*3 (S.D. Cal. Aug. 27, 2020) (rejecting search terms "likely to capture a large volume" of "wholly irrelevant" documents as impermissibly overbroad); *Thompson v. Swift Transp. Co.*, 2025 WL 4058303, at \*8 (C.D. Cal. Nov. 25, 2025) (search terms generating large numbers of irrelevant hits overbroad).

For all the reasons discussed above, Lynwood seeks discovery outside the scope of Phase 1 as defined by the Court's order.  Its requests for such discovery should be denied.