BENJAMIN J. FOX (CA SBN 193374)
NICHOLAS R. FUNG (CA SBN 312400)
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California 90017-3543
Telephone:    213.892.5200
Facsimile:    213.892.5454
BFox@mofo.com; NFung@mofo.com

ERIC C. PAI (CA SBN 247604)
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone:    650.813.5600
Facsimile:    650.494.0792
EPai@mofo.com

*Attorneys for Defendants*
F5, INC., NGINX, INC. (BVI)
and NGINX SOFTWARE, INC.

[Plaintiff and Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNWOOD INVESTMENTS CY LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>MAXIM KONOVALOV, IGOR SYSOEV, ANDREY ALEXEEV, MAXIM DOUNIN, GLEB SMIRNOFF, ANGUS ROBERTSON, NGINX, INC. (BVI), NGINX SOFTWARE, INC., NGINX, INC. (DE), BV NGINX, LLC, RUNA CAPITAL, INC., EVENTURE CAPITAL PARTNERS II LLC and F5 NETWORKS, INC.,<br><br>Defendants. | Case No. 3:20-CV-03778-MMC<br><br>**JOINT DISCOVERY LETTER REGARDING NETFLIX SOURCE CODE PRINTOUTS** |

In this joint letter, the parties request a ruling on a dispute regarding whether plaintiff Lynwood must produce to the F5 defendants printouts of documents received from third-party Netflix following Lynwood's source code inspection.

The parties engaged in multiple video conference meet-and-confer sessions and have adhered to Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery before submitting this joint letter.  Despite their efforts, the parties remain at an impasse on the issue presented in the attached letter.

Respectfully submitted,

Dated: June 12, 2026                          By: */s/ Benjamin J. Fox*
                                              Benjamin J. Fox

                                              *Attorneys for Defendants*
                                              F5, INC., NGINX, INC. (BVI)
                                              and NGINX SOFTWARE, INC.


Dated: June 12, 2026                          By: */s/ Alexander D. Pencu*
                                              Alexander D. Pencu (*pro hac vice*)
                                              adp@msf-law.com
                                              Christopher J. Major (*pro hac vice*)
                                              cjm@msf-law.com
                                              Jeffrey P. Weingart (*pro hac vice*)
                                              jpw@msf-law.com
                                              MEISTER SEELIG & FEIN PLLC
                                              125 Park Avenue, 7th Floor
                                              New York, NY 10017
                                              Telephone: (212) 655-3500
                                              Fax: (646) 539-3649

                                              Patricia L. Peden (State Bar No. 206440)
                                              20-3778@cases.warrenlex.com
                                              WARREN KASH WARREN LLP
                                              2261 Market Street, No. 606
                                              San Francisco, California, 94114
                                              Telephone:  (415) 895-2940
                                              Fax:  (415) 895-2964

                                              *Attorneys for Plaintiff*
                                              LYNWOOD INVESTMENTS
                                              CY LIMITED

**<u>SIGNATURE ATTESTATION</u>**

Pursuant to Civil Local Rule 5-1, I, Benjamin J. Fox, attest that all signatories listed herein, and on whose behalf this filing is submitted, concur in this filing's content and have authorized this filing.

*/s/ Benjamin J. Fox*
Benjamin J. Fox

**The F5 Defendants' Position**

Lynwood recently inspected third-party Netflix's source code and requested 495 pages of printouts of the code, which Netflix produced to Lynwood pursuant to Lynwood's subpoena, noting by email to all parties that "Plaintiff's counsel has saved some print requests on the desktop, which we are reviewing for compliance with the Protective Order."

The F5 Defendants have an outstanding request for production to Lynwood, RFP No. 29, which seeks "All Documents and Communications received by You in response to any third-party subpoena You served in this action." (Ex. 1.) Lynwood's response agreed to produce such documents and did not assert any objection based on relevance, privilege, or work product:

> Plaintiff objects to this request to the extent it seeks to expand Plaintiff's obligations under Federal Rule of Civil Procedure 45. Subject to the foregoing objection, Plaintiff will provide F5 Defendants with documents and communications responsive to this request upon their receipt and review of documents received pursuant to Plaintiff's subpoenas. At present, Plaintiff has not received any Documents and Communications in response to any third-party subpoena served in this action.

(Ex. 2.) But now, Lynwood seeks to withhold the Netflix source code printouts, claiming that they constitute attorney work product. Lynwood's claim fails for five reasons, discussed below.

The code is directly relevant to the authorship issue on which Phase 1 discovery is focused. F5 is entitled to these materials, which are not work product, to challenge Lynwood's claims.

## 1.    The Netflix Source Code Selected for Printing Is Not Work Product

The source code printouts requested by F5 contain raw computer code from Netflix, not attorney work product. Lynwood's request for printouts does not transform discoverable material into work product. The work product doctrine protects an attorney's mental impressions—not underlying factual material. *See, e.g.*, *Illumina Inc. v. BGI Genomics Co.*, No. 20-cv-01465-WHO, 2020 WL 7047708, at *3 (N.D. Cal. Dec. 1, 2020); *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1026 n.4 (N.D. Cal. 2010) ("Facts are not protected by the work product doctrine."). Lynwood's reference to the code cited in its interrogatory response is a red herring: Lynwood has never represented that the code in that response is the same material contained in the printouts and declined to make that representation during meet and confer calls.

For the first time in its sections of this joint letter, Lynwood asserts that the printouts contain expert annotations, rather than simply source code selected for printing. To the extent the printouts contain expert commentary, such information can be redacted. F5 requests only the underlying Netflix source code selected for printing, which is not work product. Courts reject efforts to convert third-party materials into work product based solely on counsel's selection of those materials. *See Immigrant Defs. L. Ctr. v. Mayorkas*, No. 20-cv-09893-JGB-SHK, 2024 WL 2103964, at *13 (C.D. Cal. Apr. 2, 2024) (selected third-party records not work product where party failed to show how selection revealed attorney mental processes); *Cordoba v. Pulido*, No. 12-cv-04857-SBA, 2016 WL 11668862, at *4-5 (N.D. Cal. Sept. 21, 2016) ("collection of

1

evidence, without any creative or analytic input by an attorney or his agent" not work product); *Depina v. FedEx Ground Package Sys., Inc.*, 730 F. Supp. 3d 954, 957-58 (N.D. Cal. 2024) (third-party responses reflecting non-lawyers' thoughts not work product); *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 386 (2d Cir. 2003) ("conclusory" assertions that document subset reflected "defense strategy" insufficient).

**2.      The Protective Order Treats Printouts as Discovery Materials, Not Work Product**

The Protective Order provides that the Producing Party "shall provide all such source code in paper form including bates numbers and the label 'HIGHLY CONFIDENTIAL - SOURCE CODE.'" (Protective Order § 8(d).)  Pursuant to this provision, Netflix reviewed, numbered, and printed the source code and delivered it to Lynwood.  The Protective Order's procedure for printouts is incompatible with Lynwood's work-product claim.  This Court has allowed parties to add a separate category of protected attorney review notes to the Model Order, but Lynwood did not seek such a provision and such protection would not extend to printouts in any event.  *In re Meta Pixel Healthcare Litig.*, No. 22-cv-03580-WHO, 2023 WL 3483296, at *4-5 (N.D. Cal. May 16, 2023) (separately addressing printouts and work product "Source Code Notes").

**3.      Lynwood Waived Any Relevance or Work Product Objection in its RFP 29 Response**

Lynwood agreed to produce documents responsive to this request, which sought: "All Documents and Communications received by You in response to any third-party subpoena You served in this action."  The Netflix source code printouts are responsive.  Lynwood asserted no objection based on work product or other privilege, nor did it supplement its response to RFP No. 29.  (Ex. 2.)  "It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) (internal citation omitted).

**4.      Any Alleged Work Product Protection Was Waived by Disclosure to Netflix**

Even if work product protection applied, it was waived when Netflix reviewed the printouts. Contrary to Lynwood's contention, Netflix did not simply "print pages": Netflix told all parties it was "reviewing [the printouts] for compliance with the Protective Order."  This action constituted a "deliberate, affirmative, and selective use" of the allegedly protected material by a third party that shares no common interest with Lynwood.  *S.E.C. v. Gupta*, 281 F.R.D. 169, 171-73 (S.D.N.Y. 2012) (disclosure to non-party with no common interest waived work product, including "selection and compilation" privilege); *see also Bamberg v. KPMG, LLP*, 219 F.R.D. 33, 37 (D. Mass. 2003) (finding disclosure of selection of third-party documents to adverse entity was waiver and "disclosure to one adversary waives the work-product protection as against all other adversaries"); *Regents of Univ. of Cal. v. Micro Therapeutics Inc.*, No. C 03-05669 JW, 2007 WL 1670120, at *3 (N.D. Cal. June 6, 2007) ("disclosure of confidential communications or attorney work-product to a third party constitutes a waiver of privilege as to the items disclosed"); *In re Syncor ERISA Litig.*, 229 F.R.D. 636, 645-46 (C.D. Cal. 2005) (same).

Contrary to Lynwood's assertion, Plaintiff *is* at least potentially adverse to Netflix, who Plaintiff contends acquired "pre-exit NGINX code."  Lynwood had no agreement with Netflix that the

2

printouts were work product:  Netflix has confirmed in writing to F5 that "[Netflix] made no agreement along the lines Plaintiff suggests, and to the contrary, [it] made clear that [it] would not expect that docs left on the computer for which [it] had access would be protected by work product or privilege."[1]  Lynwood is also wrong that Netflix "declined" F5's printout request:  Netflix merely agreed that it would not produce the printouts until the parties sorted any applicable dispute and wrote to all parties that it would "defer to the parties to resolve" the dispute over the work product claim.  Lynwood's email to Netflix also acknowledged that "Netflix will not act as the arbitrator of the merit of the asserted privilege."

**5.    The Netflix Source Code Printouts Are Relevant to Phase 1 and Thus Discoverable**

Lynwood insists that F5 has not established relevance.  But to obtain the printouts, Lynwood needed to establish that the material was "relevant to a[] party's claim or defense" and within the scope of Phase 1.  Fed. R. Civ. P. 26(b)(1).  The printouts are relevant and will permit F5 to focus on the specific code Lynwood contends is fair game for use in this case.

F5 respectfully requests that the Court order Lynwood to produce the Netflix source code printouts.  If the Court concludes that portions of the printouts contain expert commentary or annotations, F5 requests that Lynwood be ordered to produce the printouts with any such commentary redacted.

**Plaintiff's Position**

This dispute reduces to a simple question:  may F5 obtain a document that Lynwood's experts created during a source-code review at the direction of counsel merely because Netflix later printed that document pursuant to the Protective Order ("PO")?  The answer is no.

F5's motion rests on a fundamental misconception.  It treats a document created by Lynwood's experts during their review of Netflix code (the "Expert Word Doc") as if it were part of Netflix's subpoena production.  It was not.  Lynwood's experts—not Netflix—created the Expert Word Doc during their review of Netflix's code at the direction of counsel.  Netflix did not create it, compile it, or produce it in response to a subpoena; it merely printed the document after its creation.

Netflix produced its source code to both parties.  During Lynwood's review, its experts—at counsel's direction—extracted, organized, and annotated code excerpts for later analysis with counsel.  Because the PO barred removing files from the review environment, Netflix printed that expert-created document.  Printing it did not transform Lynwood's work product into a Netflix production.  Indeed, F5 has the same full access to the Netflix Production that Lynwood had.  What F5 seeks is *not* access to Netflix's production, but access to *Lynwood's selection, organization, and analysis* of it.  That is opinion work product and outside F5's document request.

**A.    Netflix Code Review**

Netflix was one of NGINX's earliest customers, meaning the code in its possession is a snapshot of what existed at the time—directly relevant to the Phase 1 issue of whether the Individual Defendants wrote NGINX Plus while employed at Rambler.  In response to a subpoena, Netflix produced the Netflix Production to both parties bearing NFLX Bates numbers, with source code redacted.  Both parties have *full, equal access* to the unredacted documents through in-person review at WilmerHale's office (Netflix's counsel), under the PO.

---

[1] F5 has not attached the quoted correspondence from Netflix but will provide it upon request.

3

During Lynwood's inspection, its experts created a Word document on the Netflix-provided laptop, excerpting, reorganizing, and annotating a small fraction of the voluminous code—the discrete segments they selected, in consultation with and at the direction of counsel, for further analysis and discussion concerning Lynwood's claims. Because the PO prohibits removing materials without Netflix's permission, Lynwood requested that Netflix print that Expert Word Doc. Netflix did so, numbering it pages 1–495. That Expert Word Doc is what F5 seeks here.

F5's motion originally rested on a different premise: that Lynwood cited NFLX Bates numbers in its response to Interrogatory No. 1, and therefore had to produce those documents. That argument collapsed once Lynwood explained that the NFLX Bates numbers cited in its response are from the Netflix Production—which F5 has and can review unredacted at WilmerHale—*not* the Expert Word Doc. F5 deleted that argument from this brief, though it was previously its lead argument and sole relevance basis. Tellingly, when Lynwood proposed jointly asking Netflix to print the unredacted documents cited in Lynwood's response to Interrogatory No. 1, F5 *declined*—revealing that its intent is not to see any underlying documents. What F5 seeks is Lynwood's work product.

### B.     The Expert Word Doc Is Textbook Opinion Work Product

It is well-settled that choosing and arranging a smaller set of material from a larger universe reveals counsel's litigation theories, and is protected opinion work product. *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985) ("selection and compilation ... falls within the highly-protected category of opinion work product"); *Kalbers v. U.S. Dep't of Just.*, 166 F.4th 783, 797 (9th Cir. 2026) ("Once an attorney curates a collection of documents, that collection becomes a product itself.").

This rule applies fully to materials selected and arranged by experts in consultation with attorneys, as here. *DaVita Healthcare v. United States*, 128 Fed. Cl. 584, 591 (2016) (expert-and-counsel compilations are protected and "separate and distinct from the underlying facts and data themselves"); *In re W. States Wholesale Nat. Gas Antitrust Litig., 2*017 WL 2991347, at *2 (D. Nev. July 12, 2017) ("selection and compilation reveals counsel's thought processes").

F5 suggests any annotations can simply be redacted. But Lynwood does not contend that only the annotations are protected.[2] Selecting, organizing, and compiling code excerpts from a much larger universe of source code itself reflects attorney-directed judgments about which code may matter (precisely what *Sporck* and its progeny protect). The Expert Word Doc is not raw code reprinted; it's a new document Lynwood's experts built and annotated at counsel's direction. Under F5's theory, any such compilation would lose work-product protection the moment the producing party printed it under a PO. A PO governs source-code review mechanics; it does not determine ownership of a document or strip work-product protection.[3]

### C.     F5's Waiver Arguments Are Wrong As a Matter of Law and Fact

F5 raises two waiver arguments, both meritless. *First*, F5 argues Lynwood waived protection by not objecting to RFP 29. But that request seeks documents Lynwood "received … in response to" Netflix's subpoena. Lynwood did not receive the Expert Word Doc in response to a subpoena; its

---

[2] The annotations confirm that the Expert Word Doc is a working analysis in which Lynwood's experts, at counsel's direction, excerpted the code they judged potentially significant. The selections and annotations reflect the same mental process. Redaction cures nothing; even redacted, the document would still hand F5 a map of Lynwood's work-in-progress: which code, out of the entire Netflix Production, Lynwood's experts and counsel considered important enough for further consideration (and in what order and groupings).

[3] Lynwood is happy to submit declarations demonstrating the Expert Word Doc reflects preliminary attorney-directed expert work, but has not done so here per the Court's standing order.

experts created it during their review of the Netflix Production.  It falls outside RFP 29 by its own terms.  In any event, there can be no waiver where the documents did not yet exist.  *Bamberg v. KPMG*, 219 F.R.D. 33, 36–37 (D. Mass. 2003) (no document-request-related waiver where "identification and selection of documents … had not occurred" when response was served).  The Expert Word Doc did not exist when Lynwood responded to RFP 29 on September 29, 2025.

*Second*, F5 argues waiver because the Expert Word Doc was "disclosed" to Netflix.  This argument fails at the threshold: the ministerial act of printing the document was not a "disclosure" at all.  F5's authority confirms waiver presupposes a "deliberate, affirmative, and selective use of … work-product materials by a party," *S.E.C. v. Gupta*, 281 F.R.D. 169, 171 (S.D.N.Y. 2012), but all Netflix did was print pages under the PO.  That is, the document was created on Netflix's computer because the PO confines review to that environment, and printing (PO § 8(d)) was the prescribed mechanism for Lynwood to retain its work. In any event, work product is "not automatically waived by any disclosure to third persons"; it's waived only where disclosure is "made to an adversary in litigation or … substantially increased the opportunities for potential adversaries to obtain the information." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1120 n.8 (9th Cir. 2020).  Neither occurred.   Netflix is not Lynwood's adversary or potential adversary (and acted consistently with that position).  The contemporaneous record confirms this: before F5's inspection, Lynwood's counsel asserted work-product protection over the printouts in writing; Netflix responded that it would "process these print requests pursuant to the [PO]," "remove the print requests from the source code computer prior to Defendants review," and "defer to the parties to resolve this dispute." Netflix declined to provide F5 a copy. Waiver is judged objectively at the time of disclosure—not by a vague after-the-fact email, as F5 asserts—and no express agreement is required. *Samuels v. Mitchell*, 155 F.R.D. 195, 200–01 (N.D. Cal. 1994) (no waiver where disclosure "cannot be said to have posed a substantial danger at the time that the documents at issue would be disclosed to an adversary"; party "intended … to keep the documents confidential").

The PO is the "confidentiality agreement or similar arrangement," *Sanmina*, 968 F.3d at 1121, that grounds Lynwood's reasonable expectation of confidentiality and defeats waiver.  F5's authorities confirm this: *Bamberg* found disclosure-related waiver because the selection was disclosed to an entity the plaintiffs were actively suing, 219 F.R.D. at 37 ("clearly adverse"); *Gupta* involved "affirmative" use of work product to prepare a testifying witness *without any controls*.  281 F.R.D. at 173–75 (noting lack of confidentiality agreement).  And the PO confirms stipulating to it waives no "right [a party] otherwise would have to object to … producing any information." PO § 13.2.

### D.  F5 Cannot Compel the Document in Any Event

Production of the Expert Word Doc is also disproportionate to the needs of the case.  In *Paice, LLC v. Hyundai Motor*, 302 F.R.D. 128, 135 (D. Md. 2014), the court denied a similar request where the requesting party already had the underlying data and code (as here) and could "generate, for [itself], the substantial equivalent" of withheld work product, and independently held the materials were opinion work product reflecting "mental 'sorting,' selection, and analysis."  F5 has identified nothing it needs from the Expert Word Doc that it does not have.  Indeed, F5 admits it seeks the document to "focus on the specific code Lynwood contends is fair game."  But that is precisely the type of attorney-directed judgment that the selection-and-compilation doctrine protects.  F5 also claims the document is relevant because it purportedly shows the code on which Lynwood is relying, but that comes full circle to Interrogatory No. 1—where Lynwood *did* identify the code it claims to own.  F5 has access to every document cited in that Interrogatory response and the entire Netflix Production.  Its request for work product should be rejected.