UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LYNWOOD INVESTMENTS CY LIMITED,

Plaintiff,

v.

MAXIM KONOVALOV, et al.,

Defendants.

Case No. 20-cv-03778-MMC   (KAW)

**ORDER RE 6/12/2026 DISCOVERY LETTER**

Re: Dkt. No. 300

[Discovery Letter No. 5]

The sole claim in this case is Plaintiff's copyright claim based upon the NGINX Plus software code, which was allegedly developed by individual Defendants when employed at Rambler Internet Holding LLC in Russia.  (*See* Second Amend. Compl. ("SAC") ¶ 1.)  Pending before the Court is the parties' discovery letter concerning whether Plaintiff must produce to Defendant F5 printouts of source code received from third-party Netflix.[1]  (Discovery Letter at 1, Dkt. No. 300.)

After inspecting Netflix's source code, Plaintiff requested 495 pages to be printed out. (Discovery Letter at 1.)  These pages represent the portions of Netflix's source code that Plaintiff's experts, in consultation with Plaintiff's counsel, selected for further analysis with counsel.  (*Id.* at 3-4.)  Because Plaintiff was not permitted to remove files from the review environment without Netflix's permission, Netflix printed these pages for Plaintiff's review.  (*Id.*)  These pages represent a "small fraction of the voluminous code" produced by Netflix.  (*Id.* at 4.)

Plaintiff asserts that this selection of code is protected by the attorney work product doctrine.  (Discovery Letter at 4.)  "The work product doctrine . . . protects from discovery

---

[1] Plaintiff's footnotes failed to comply with Civil Local Rule 3-4(c)(2)(B), which requires that footnotes be in 12 point type or larger, and thus were not considered.

documents and tangible things prepared by a party or his representative in anticipation of litigation." *United States v. Torf (In re Grand Jury Subpoena)*, 357 F.3d 900, 906 (9th Cir. 2003). Thus, the doctrine "ensures that litigants cannot proceed on wits borrowed from the adversary and prevents exploitation of a party's efforts in preparing for litigation." *ACLU of N. Cal. v. United States DOJ*, 880 F.3d 473, 484 (9th Cir. 2018).

Here, the source code printouts at issue constitute the code that Plaintiff's experts, in consultation with Plaintiff's counsel, have deemed significant. Courts have found that the work product doctrine applies to the selection and compilation of a smaller set of material from a larger universe. *See Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985) ("[T]he selection and compilation of documents by counsel in this case in preparation for pretrial discovery falls within the highly-protected category of opinion work product . . . . In selecting and ordering a few documents out of thousands counsel could not help but reveal important aspects of his understanding of the case."); *Kalbers v. DOJ*, 166 F.4th 783, 797 (9th Cir. 2026) ("Once an attorney curates a collection of documents, that collection becomes a product itself."); *C.R. Dep't v. Grimmway Enters.*, 768 F. Supp. 3d 1099, 1111 (E.D. Cal. 2025) ("To the extent that defendant's request seeks a subjectively curated list of the individuals plaintiff deems to be important to its case, that information is protected by the attorney work product doctrine."). Thus, the Court finds that Plaintiff's selection of source code constitutes attorney work product, and production is not required.

Defendant makes several arguments for why the Court should find otherwise, none of which are persuasive. First, Defendant argues that the work product doctrine does not apply to the underlying factual material. (Discovery Letter at 1.) While correct, at issue here is not the underlying factual material, but Plaintiff's *selection* of materials. There is no dispute that Defendant, like Plaintiff, has access to the entirety of Netflix's source code. Thus, Defendant has the same opportunity to review Netflix's source code and independently determine what is significant.

Second, Defendant argues that Plaintiff's selection of source code is not attorney work product, but the cases it relies upon are distinguishable. (Discovery Letter at 1.) For example, in *Immigrant Defenders Law Center v. Mayorkas*, the court found that attorney work product did not

United States District Court
Northern District of California

2

apply because the party failed to explain how their review of the documents revealed insights into the mental processes of the attorney in preparation for the case.  No. 2:20-cv-09893-JGB-SHK, 2024 U.S. Dist. LEXIS 61715, at *45 (C.D. Cal. Apr. 2, 2024).  Likewise, in *Cordoba v. Pulido*, the court ordered the production of transcripts where there was no "showing that the transcription process involved any creative or analytic input from counsel."  No. 12-cv-04857-SBA (SK), 2016 U.S. Dist. LEXIS 198823, at *14 (N.D. Cal. Sep. 21, 2016).  In contrast, Plaintiff has explained the source code printouts at issue here were selected by Plaintiff's experts, in consultation with Plaintiff's counsel, thus representing source code that Plaintiff's counsel believes significant in this case.  Indeed, Defendant itself states that it seeks the source code printouts so that it can "focus on the specific code [Plaintiff] contends is fair game for use in this case." (Discovery Letter at 3.)  This is precisely the "exploitation of a party's efforts in preparing for litigation" that the attorney work product doctrine is meant to prevent.  *See ACLU of N. Cal.*, 880 F.3d at 484.

Third, Defendant argues that § 8(d) of the protective order treats printouts as discovery materials rather than work product. (Discovery Letter at 2.)  The Court is not persuaded.  Section 8(d) simply creates a process for requesting paper copies of limited portions of source code.  It does not speak to or waive the work product doctrine.

Fourth, Defendant contends that Plaintiff waived any objection based on work product doctrine when it agreed to produce documents responsive to RFP No. 29, which sought all documents and communications received in response to a third-party subpoena. (Discovery Letter at 2.)  As Plaintiff points out, the source code printouts did not exist at the time they responded to RFP No. 29, and the Court is not inclined to find waiver under such circumstances.  *See Bamberg v. KPMG, LLP*, 219 F.R.D. 33, 37 (D. Mass. 2003) (accepting the plaintiff's argument "that at the time the response was filed, no work-product had occurred" because "the identification and selection of documents . . . had not occurred at that time").

Finally, Defendant argues that the work product doctrine was waived by disclosure to Netflix. (Discovery Letter at 2.)  The Ninth Circuit has explained that "work product privilege is not automatically waived by any disclosure to third parties."  *United States v. Sanmina Corp. & Subsidiaries*, 968 F.3d 1107, 1120 n.8 (9th Cir. 2020).  Rather, "the voluntary disclosure of work

United States District Court
Northern District of California

product waives the protection only when such disclosure is made to an adversary or is otherwise inconsistent with the purpose of work-product doctrine." *Id.* at 1120. Here, it would not be reasonable to find that Plaintiff waived the work product doctrine simply by having Netflix print out specific pages of its source code; Plaintiff did not have any choice but to share its selection with Netflix in order to have those pages printed, which was also the only way for Plaintiff to remove its selected source code from the review environment. (Discovery Letter at 3-4.) The fact that Netflix then told the parties it would review the printouts "for compliance with the Protective Order" does not change that Plaintiff's identification of the printouts was not a voluntary disclosure, but one required by the protective order. Likewise, Defendant's suggestion that Plaintiff is "potentially adverse" to Netflix is not persuasive; Netflix is not a party in this case and there is no showing that litigation between Plaintiff and Netflix regarding the source code is likely.

Accordingly, the Court finds that the work product doctrine applies, such that Defendant is not entitled to the source code printouts.

This order disposes of Dkt. No. 300.

IT IS SO ORDERED.

Dated: July 9, 2026

_____
KANDIS A. WESTMORE
United States Magistrate Judge