United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNWOOD INVESTMENTS CY LIMITED,<br>Plaintiff,<br>v.<br>MAXIM KONOVALOV, et al.,<br>Defendants. | Case No. 20-cv-03778-MMC (KAW)<br>**ORDER REGARDING 6/24/2026 DISCOVERY LETTER**<br>Re: Dkt. No. 303<br>[Discovery Letter No. 7] |

The sole claim in this case is Plaintiff's copyright claim based upon the NGINX Plus software code, which was allegedly developed by individual Defendants when employed at Rambler Internet Holding LLC in Russia. (*See* Second Amend. Compl. ("SAC") ¶ 1.) The current phase of discovery is limited to whether the NGINX Plus code was written by Defendant Sysoev or other former Rambler employees before the end of 2011. (Dkt. No. 211.) Pending before the Court is Plaintiff and F5 Defendants' discovery letter concerning the source code inspection. (Discovery Letter, Dkt. No. 305.)

The Protective Order requires that "[a]ny source code produced in discovery shall be made available for inspection," and that "[t]he source code shall be made available for inspection on a secured computer in a secured room without Internet access or network access to other computers." (Protect. Order § 8(c).) Further, "[t]he Receiving Party may request, and the Producing Party . . . shall not unreasonably deny, the preinstallation and use on the inspection computer of the following: (1) a specific operating system, (2) specifically identified software tools that will assist in the review and analysis of the source code, and (3) any software code specified by the Receiving Party to be compared against the produced source code." (*Id.*) Here, the parties dispute both the hardware and software tools to be used.

**A. Hardware**

First, the parties dispute the hardware at issue. Namely, Plaintiffs complain that Defendants are only willing to provide "an ordinary laptop," whereas Plaintiffs seek to use their own custom computer. (*See* Discovery Letter at 1.) Defendants respond that to the extent Plaintiff complains that the computer lacks computing power or is otherwise incapable of conducting the review, such a claim is unfounded. (*Id.* at 3.)

The Court agrees that Defendants are responsible for providing the hardware. The protective order requires that "source code produced in discovery shall be made available for inspection . . . on a secured computer." (Protective Order § 8(c).) While not explicitly stated, it makes practical sense for the party who is producing the source code for inspection to also be responsible for providing the secured computer that the source code is located on. This security concern is highlighted by Defendants' point that should it be required to put its highly confidential source code on Plaintiff's computer, Defendants would "need to inspect for hidden storage capabilities to ensure it cannot 'copy, remove, or otherwise transfer any portion of the source code onto any recordable media or recordable device' because [Defendants would have] had no involvement in building the computer." (Discovery Letter at 4 (quoting Protective Order § 8(c).)

Defendants, of course, are also responsible for ensuring that the hardware at issue is adequate. At this juncture, however, Plaintiff's primary argument for why Defendant's hardware lacks sufficient computing power is because it is a laptop rather than a desktop. (*See* Discovery Letter at 1.) This reason alone is not enough.

**B. Software**

Again, the protective order permits the receiving party to request: (1) a specific operating system, (2) specifically identified software tools, and (3) specific software code to be compared against the produced source code. (Protective Order § 8(c).) The Court addresses each in turn.

**i. Operating System**

It is unclear if Plaintiff challenges Defendants' use of Windows. (Discovery Letter at 1.) Plaintiff has failed to identify what operating system it seeks in lieu of Windows, let alone explain why such an operating system would be required. Thus, Plaintiff has failed to meet its burden

United States District Court
Northern District of California

under the protective order.

**ii. Software Tools**

Plaintiff argues that with respect to software tools, it should be entitled to "publicly available, industry-standard software tools." (Discovery Letter at 1.) As an initial matter, the parties dispute whether Plaintiff has identified these tools. Plaintiff asserts that it provided Defendants with "public links describing every tool." (*Id.* at 2.) Defendants contend that they repeatedly asked Plaintiff to explain what each tool does and why it was required, but that Plaintiff refused to respond. (*Id.* at 4.)

At the very least, Plaintiff has failed to identify these software tools to the Court, and thus the Court is unable to decide whether these tools are reasonable. Accordingly, the Court ORDERS the parties to meet and confer **in person** during which Plaintiff must identify every tool and explain why it should be added. Defendants, in turn, must explain why they believe it is reasonable not to include a particular tool if they take such a position after hearing from Plaintiff. Should the parties continue to have disagreements, the parties shall file a joint discovery letter regarding the specific tools at issue, which must be in the following format:

| **Tool Name and Explanation of Function:** | |
|---|---|
| Plaintiff's Position for Why the Tool Should be Added | Defendant's Position for Why the Tool Should Not be Added |

The parties' explanations must be written in a way that is understandable to a layperson. If more than ten software tools are in dispute, the parties shall identify no more than ten bellwether tools for the Court's review. To assist in the meet and confer, the Court provides the following guidance.

First, the Court finds that a reasonable starting point would be the Netflix inspection. While Plaintiff argues that the Netflix inspection involved 60,000 lines of code whereas there are potentially millions of lines of code at issue here (*see* Discovery Letter at 1), this does not automatically mean that the software provided for the Netflix inspection would be insufficient for review of the source code here. In turn, to the extent the Netflix inspection involved more software tools than currently offered by Defendants, Defendants fail to explain why such tools are

United States District Court
Northern District of California

not warranted. Like Defendants, Netflix presumably also had an interest in keeping its code secure and -- especially as a third-party -- ensuring that it was not overburdened by Plaintiff's requested software tools.

Second, to the extent that the software tool concerns object code, the Court has already warned that it is "not convinced that Plaintiff's planned scope for the object code -- which apparently includes trying to understand the software's true function -- is consistent with the presiding judge's limitation of this phase of discovery to whether the NGINX Plus code was written before the end of 2011[.]" (Dkt. No. 269 at 3.) Further, Plaintiff previously disclaimed any intent of decompiling and/or reversing the object code to derive the source code. (*See id.* at 2.) Holding Plaintiff to its word, it is therefore wholly unclear why **any** reverse-engineering tools -- such as simulators or compilers -- are warranted. Plaintiff will have the burden of explaining otherwise.

Finally, it appears Plaintiff also seeks to add scripts and self-contained software packages to help run the analysis. (Discovery Letter at 2.) Plaintiff, however, acknowledges that it is entitled to "publicly available, industry standard software tools." (*Id.* at 1.) As described by Plaintiff, the scripts appear to be wholly separate, as Plaintiff states they "are merely instructions to automate Lynwood's software tools[.]" (*Id.* at 3 n.4.) Further, Defendants note that Plaintiff previously declined to identify the analysis scripts, asserting that they were "confidential work product." (*Id.* at 5.) This appears to suggest they are not publicly available tools, but custom tools created by Plaintiff for this litigation. Thus, these scripts and self-contained software packages do not appear to be software tools permitted by the protective order and therefore are not permitted at all. To the extent that they are publicly available, industry standard software tools, Plaintiff must specifically identify them.

**iii. Code**

Plaintiff argues that it should be permitted to include code against which Defendants' code will be compared. (Discovery Letter at 2.) Defendants, however, correctly point out that Plaintiff is required by the protective order to specify that code. (*Id.* at 5; *see also* Protective Order § 8(c).) Thus, Plaintiff has the initial burden of identifying which code it wants Defendants to preinstall on

United States District Court
Northern District of California

the hardware.

Plaintiff also appears to argue that this provision permits it to require the installation of scripts, software packages, and offline repository data. (Discovery Letter at 2-3.) The protective order makes clear that the software code at issue is that which is "to be compared against the produced source code." (Protective Order § 8(c).) It does not provide for the installation of *any* code like scripts and software packages that are designed to make inspection easier, or repository data to the extent it does not include code to be compared against Defendants' source code.[1]

This order disposes of Dkt. No. 303.

IT IS SO ORDERED.

Dated: August 14, 2026

KANDIS A. WESTMORE
United States Magistrate Judge

[1] The fact that Plaintiff is attempting to characterize the scripts and software packages as "software code specified by the Receiving Party to be compared against the produced source code" highlights that Plaintiff is distinguishing between these scripts/software packages and the software tools contemplated by the protective order.