ERIC D. VANDEVELDE, SBN 240699
evandevelde@gibsondunn.com
ILISSA S. SAMPLIN, SBN 314018
isamplin@gibsondunn.com
JAMES A. TSOUVALAS, SBN 325397
jtsouvalas@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

JOSEPH A. GORMAN, SBN 267553
jgorman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center
San Francisco, CA 94111-3715
Telephone: 415.393.8200
Facsimile: 415.393.8306

ALEXANDER D. PENCU (*pro hac vice*)
adp@mss-pllc.com
CHRISTOPHER J. MAJOR (*pro hac vice*)
cjm@mss-pllc.com
JEFFREY P. WEINGART (*pro hac vice*)
jpw@mss-pllc.com
MEISTER SEELIG & SCHUSTER PLLC
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: 212.655.3500
Facsimile: 646.539.3649

PATRICIA L. PEDEN, SBN 206440
DEMARCUS B. T. WILLIAMS, SBN 329756
20-3778@cases.warrenlex.com
WARREN LLP
2261 Market Street, No. 606
San Francisco, CA 94114
Telephone: 415.895.2940
Facsimile: 415.895.2964

Attorneys for Plaintiff LYNWOOD INVESTMENTS CY LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

LYNWOOD INVESTMENTS CY LIMITED,

*Plaintiff*,

*v.*

MAXIM KONOVALOV, IGOR SYSOEV, ANDREY ALEXEEV, MAXIM DOUNIN, GLEB SMIRNOFF, ANGUS ROBERTSON, NGINX, INC. (BVI), NGINX SOFTWARE, INC., NGINX, INC. (DE), BV NGINX, LLC, RUNA CAPITAL, INC., EVENTURE CAPITAL PARTNERS II LLC and F5 NETWORKS, INC.,

*Defendants*.

CASE NO. 3:20-cv-03778-MMC

**LYNWOOD'S NOTICE OF MOTION AND MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE**

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Rule 72(a) of the Federal Rules of Civil Procedure and Civil Local Rule 72-2, Plaintiff Lynwood Investments CY Limited ("Lynwood") moves for relief from portions of the Magistrate Judge's August 14, 2026 Discovery Order (Dkt. 308) (the "Order") regarding disputes over how Lynwood's experts may inspect NGINX Plus code repositories maintained by Defendant F5. Specifically, Lynwood requests that the Court modify or set aside the Order and (1) confirm that the inspection machine will run a standard Linux operating system (Ubuntu 24.04 LTS); (2) direct F5 to take custody of the still-factory-sealed workstation that Lynwood's experts purchased to conduct the necessary inspection, or direct F5 to procure, solely at Lynwood's expense, a materially equivalent machine capable of performing the inspection, which machine would remain under F5's exclusive control; (3) confirm that Lynwood's disclosed scripts, packages, and comparison datasets may be installed on the inspection machine, subject to F5's advance inspection; and (4) clarify that the Order does not limit the tools available for the inspection machine or bar the object-code examination described below.

Alternatively, the Court should vacate and remand the dispute for reconsideration by Judge Westmore after a short evidentiary hearing or the admission of competing declarations, or clarify that the Order did not definitively resolve any issue and is not ripe for consideration under Rule 72.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declarations of Erik Laykin ("Laykin Decl.") and Eric Vandevelde ("Vandevelde Decl."), and the proposed order. This motion is timely because it is filed within 14 days of the Order. Fed. R. Civ. P. 72(a); Civ. L.R. 72-2.

## I. INTRODUCTION AND RELIEF REQUESTED

Lynwood's claim turns on whether the individual Defendants wrote code while employed at Rambler that later became part of NGINX Plus. F5 says "commit logs" in its potentially hundreds of NGINX Plus code repositories show the code was written after the individual Defendants left Rambler. But as the Court has already found, commit logs establish only when code was put into a repository—not when it was written. Dkt. 252 at 9–10. Lynwood has spent 16 months obtaining NGINX code Defendants wrote and covertly sold to third parties while at Rambler. The critical next step is to compare that Rambler code with F5's NGINX Plus repositories to determine whether the same code or functionality appears there and, if so, when and in what form it was first committed.

This inspection requires capable hardware and publicly available tools that experts routinely use to analyze code—tools Lynwood's experts have used, without objection, to inspect other NGINX code produced in this case. Laykin Decl. ¶¶ 25–26, 43, 55. Keyword searches across the repositories and million lines of code will not do. The experts must filter out cosmetic edits—which make old code look new while still infringing the original—to find when core functionality was created. For context, inspecting the Netflix NGINX code earlier in this case—only 60,000 lines of code, orders of magnitude less than here—took *two weeks* and *73 tools* running on a high-powered desktop. *Id.* ¶¶ 26–27.

The Order (Dkt. 308) addresses disputes over this inspection but leaves its scope uncertain. It recognizes F5 is responsible for ensuring "adequate" hardware, finds Lynwood's requests insufficient *only* "[a]t this juncture," and directs the parties to meet and confer regarding tools. Dkt. 308 at 2–3. But F5 construes the Order to permit it to provide a Windows laptop incapable of running the necessary tools and to categorically *prohibit* tools, scripts, installation packages, and comparison datasets Lynwood's experts need and have already been using in this case. Vandevelde Decl. ¶ 15.

The Order, as construed by F5, cannot stand. *First*, it is contrary to law because it inverted the burden of proof. Section 8(c) of the Protective Order required Lynwood to identify its requested operating system, tools, and comparison code to F5—which Lynwood did months before this dispute—and barred F5 from "unreasonably deny[ing]" those requests. Dkt. 262 § 8(c). F5 never put forward a legitimate reason to deny any request—nor could it have. The run-of-the-mill inspection requests raise no security concerns, and Lynwood offered to pay for them. Yet the Order improperly faulted

Lynwood for failing to substantiate why its requests were necessary—even though the governing procedure limited Lynwood to 2.5 pages and barred the submission of supporting evidence.

*Second*, if F5 is correct that the Order finally rejected Lynwood's requests, those rulings are clearly erroneous. F5's proposed hardware cannot run the required tools; Lynwood complied with Section 8(c); the requested operating system (Linux) is the very system NGINX runs on; the scripts, packages, and datasets are simply the instructions, components, and comparison code the tools need to run; and object code cannot be inspected unless decompiled. F5 should not be permitted to cripple the inspection and prevent Lynwood from "present[ing] facts essential" to its case, Fed. R. Civ. P. 56(d).

The Court should vacate the challenged rulings; alternatively, it should remand for consideration on a complete record or clarify that the Order left these issues open for resolution.[1]

## II. ARGUMENT

The Court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). A ruling is "contrary to law" when it misapplies law, including the terms of a protective order. *On Command Video Corp. v. LodgeNet Ent. Corp*., 976 F. Supp. 917, 920 (N.D. Cal. 1997). This Court has discretion to consider evidence not presented to the magistrate judge. *See SEC v. Alternate Energy Holdings, Inc.*, 2014 WL 2515710, at *13, *16 (D. Idaho May 13, 2014) (exercising discretion to consider party's newly submitted evidence and relying on it to overrule non-dispositive order); *ABN Corp. v. Groupe PELM Int'l Corp.*, 2025 WL 1006387, at *1 (N.D. Cal. Apr. 3, 2025). Cause for exercising that discretion is at its apex here, where Lynwood's evidence was excluded by rule and pointed to expressly in the joint letter briefing.

### A. The Order Is Contrary to Law.

The Order misplaced the burden on Lynwood to justify its requested operating system and tools, when Section 8(c) requires F5 to offer a reasonable basis for rejecting them. The Protective Order works in two steps. *First*, the receiving party "may request" "the preinstallation and use on the inspection computer" of an operating system, software tools, and comparison code. Dkt. 262 § 8(c).

---

[1] Lynwood would have preferred that Judge Westmore consider this evidence, but (i) Judge Westmore's standing order (Section (14(b)(i)) does not permit submission of evidence, (ii) the local rules do not permit reconsideration of Magistrate rulings (Comm. to L.R. 7-9), and (iii) Local Rule 72 requires objections within 14 days (L.R. 72-2(d)). Lynwood thus brings this Motion to preserve its rights while working with F5 under the Order's meet-and-confer process. Vandevelde Decl. ¶ 18.

By entitling Lynwood to request each, the Protective Order implies the computer must be capable of running them. *In re Dual-Deck Video Cassette*, 10 F.3d 693, 695 (9th Cir. 1993) (protective orders read in light of their purpose). *Second*, the producing party "shall not unreasonably deny" those requests. Dkt. 262 § 8(c). Lynwood did step one: on May 29, 2026, it sent F5 its requested operating system, Linux (Ubuntu), and workstation specifications; on June 2, it itemized every tool, script, and dataset, with public links on each. Vandevelde Decl. ¶ 4, Ex. B. F5 never did step two, identifying no reasonable basis for denying *any* request—not "a single specific concern, security or otherwise." Dkt. 303 at 7. The party resisting discovery "bears the burden." *Phillips v. Gen. Motors*, 307 F.3d 1206, 1210 (9th Cir. 2002). That should have ended the dispute.

Inverting its burden, F5 instead insisted that Lynwood prove its need for each requested item, Dkt. 303 at 3–5, which the Order adopted—faulting Lynwood for failing to identify its tools and operating system "to the Court." Dkt. 308 at 2–4. But Section 8(c) obligates F5—not Lynwood—to articulate a reasonable basis for a denial of any tool. The Order thus misinterprets the governing protective order and "misapplie[s] the burden," and is contrary to law. *E.g.*, *Intex Recreation v. Bestway USA*, 2021 WL 6618494, at *6 (C.D. Cal. Nov. 10, 2021); *On Command*, 976 F. Supp. at 921;

The Order should also be vacated because it faulted Lynwood for failing to present evidence the Standing Order barred. Lynwood was confined to 2.5 pages without attachment. Standing Order ¶ 14(b)(i). It therefore could not file correspondence or its experts' analysis; it still proffered the evidence, requested a hearing, and told the Court its "experts are prepared to testify." Dkt. 303 at 1; Laykin Decl. ¶ 24. The Court did not hold a hearing or accept evidence, yet faulted Lynwood for not proving the need for its tools and operating system. Due process requires the "opportunity to be heard . . . in a meaningful manner," and faulting Lynwood for not presenting barred evidence was contrary to law. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *see ALBC v. Alabama*, 575 U.S. 254, 269–70 (2015) (vacating failure-of-proof finding made without opportunity to present evidence).

Because F5 never carried—or even attempted to carry—its burden, the Court should set aside the challenged rulings and grant Lynwood's requests for its operating system, tools, and hardware. At a minimum, it should vacate the Order and remand for a short evidentiary hearing or declarations.

**B. Each Challenged Ruling Is Clearly Erroneous.**

**1. Hardware.** The Order states F5 is responsible for ensuring "adequate" hardware but found Lynwood's objection to F5's laptop "not enough" "[a]t this juncture." Dkt. 308 at 2. If that ruling finally approved whatever Windows laptop F5 chooses, it is clearly erroneous.[2] The Protective Order requires that code be "made available for inspection, in a format allowing it to be reasonably reviewed and searched." Dkt. 262 § 8(c). F5's laptop *cannot* accomplish this: the Netflix inspection of 60,000 lines required a powerful workstation, still lacked enough computing power, and took two weeks. Laykin Decl. ¶¶ 26–27. This inspection is far more involved. *Id.* ¶¶ 28–36. On F5's laptop, required tools will fail or take months to complete operations that a proper workstation can finish in hours. *Id.*

There is no security basis for F5's refusal. Under Lynwood's plan, F5 accepts a factory-sealed machine, installs the operating system, disables every port and wireless function, fingerprints each file, monitors the review in its counsel's office, and keeps or destroys it after. Vandevelde Decl. ¶ 16. The machine is never on the internet; Lynwood's experts can only remove printouts or hand-written notes under the Protective Order. Dkt. 262 § 8(e). Computing power has no bearing on whether code can be removed. Laykin Decl. ¶ 79. Nor do courts presume a party will intentionally violate a protective order. *Gradillas Ct. Reps. v. Cherry Bekaert*, 2018 WL 2010978, at *2 (N.D. Cal. Apr. 30, 2018).

**2. Operating System and Software Tools.** The Order found that Lynwood "failed to identify" its desired operating system and software tools. Dkt. 308 at 2–3. The record refutes this. Section 8(c) directs requests to the producing party, and Lynwood made them to F5 exactly as required. Vandevelde Decl. ¶¶ 2, 6–7, Exs. A & C. F5 knew this when it told the Court that Lynwood "refuses to explain" its requests; and it knew that Lynwood could not file evidence proving otherwise. Dkt. 303 at 7–8.

F5 has no reasonable basis for rejecting Linux, the operating system NGINX was developed on, designed for, and runs on; the repositories and metadata are most reliably examined there; and many of the required forensic tools run only on Linux. Laykin Decl. ¶¶ 32, 39, 57. As for the tools, every requested tool is publicly available, standard, and of the kind software experts routinely use in code inspections. *Id.* ¶¶ 55–56, 66. Lynwood is participating in the Order's meet-and-confer process and does not ask the Court to displace that process. Vandevelde Decl. ¶¶ 15–18. But Lynwood objects to

---

[2] Lynwood does not read the Order this way; it leaves open what hardware should be used until after the parties have met and conferred about tools and operating system, given that the Order states the hardware must be "adequate" to support the tools and operating system used. Dkt. 308 at 2–3.

F5's reading of the Order as relieving F5 of its obligation to make reasonable item-specific objections. Where the inspection environment is secure, courts permit the reviewing party's full complement of standard tools. *Johnson v. Ford Motor*, 2015 WL 3687854, at *9–10 (S.D. W. Va. June 12, 2015) (overruling objections to experts' use of 50 tools because "a range of different leading tools" yields "the highest value" analysis). The Order adopted the Netflix inspection's 73 tools as "a reasonable starting point" because "Defendants fail[ed] to explain why such tools are not warranted." Dkt. 308 at 3–4. The Court should confirm Linux (Ubuntu) and require item-specific objections to each requested tool. Laykin Decl. ¶¶ 33, 66–67 & Ex. B.

**3. Scripts, Packages, Comparison Datasets.** The Order states that scripts and packages "do not appear to be software tools permitted by the protective order and therefore are not permitted" and that repository data may not be installed if "it does not include code to be compared against Defendants' source code." Dkt. 308 at 4–5 & n.1. These rulings are erroneous and rest on F5's mischaracterizations. The scripts are merely instructions directing the approved tools to perform defined steps an examiner *could* perform by hand, but not reliably across millions of lines. Laykin Decl. ¶¶ 68–73 & Ex. C. The packages are installers the tools need to run on an air-gapped machine. *Id.* ¶ 73. The datasets are the comparison code—NGINX code gathered through discovery and public repositories—that Section 8(c) permits. Dkt. 262 § 8(c); Laykin Decl. ¶¶ 75–76. Lynwood will disclose everything in advance, and F5 may inspect and test every file. Vandevelde Decl. ¶ 16. Barring them is contrary to Section 8(c).

**4. Object Code.** The Court required F5's object code to "be available for inspection." Dkt. 269 at 3. Yet, Defendants read the Order's reference to "reverse-engineering tools" to bar a decompiler (Dkt. 308 at 4)—which Lynwood needs to check the object code against the repository source code. Laykin Decl. ¶¶ 11–13, 30, 53. This check will address the "serious possibility" of inaccuracy the Court identified. Dkt. 252 at 10. Lynwood's statement that a complete production would "eliminat[e] the need to use object code to recreate it" (Dkt. 266 at 5) meant only that Lynwood would not use object code as a *substitute* for withheld source code—not that it disclaimed using object code.

## III. CONCLUSION

The Court should (a) modify or set aside the Order, (b) vacate and remand for an evidentiary hearing or reconsideration with competing declarations, or (c) confirm the Order is not final or ripe.

Respectfully submitted,

DATED: August 28, 2026

By: /s/ *Eric D. Vandevelde*

Eric D. Vandevelde, SBN 240699
Ilissa S. Samplin, SBN 314018
James A. Tsouvalas, SBN 325397
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

Joseph A. Gorman, SBN 267553
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: (415) 393-8200

Alexander D. Pencu (*pro hac vice*)
Christopher J. Major (*pro hac vice*)
Jeffrey P. Weingart (*pro hac vice*)
MEISTER SEELIG & SCHUSTER PLLC
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Facsimile: (646) 539-3649

Patricia L. Peden, SBN 206440
DeMarcus B. T. Williams, SBN 329756
WARREN LLP
2261 Market Street, No. 606
San Francisco, CA 94114
Telephone: (415) 895-2940
Facsimile: (415) 895-2964

*Attorneys for Plaintiff*
Lynwood Investments CY Limited